# 23-1084(L),

## 23-7409(CON)

IN THE UNITED STATES COURT OF APPEALS FOR THE
SECOND CIRCUIT

VDARE FOUNDATION, INC.,

*Plaintiff-Appellant,*

- v. -

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern
District of New York, Case No. 1:22-cv-01337 (FJS/CHF)

**PLAINTIFF-APPELLANT APPENDIX**
**VOLUME 3 OF 7**
**(PAGES AA0581– AA0870)**

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC.
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 888-887-1776
Email: jmw@randazza.com

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC.
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
Email: ecf@randazza.com

*Counsel for Appellant*

i

# TABLE OF CONTENTS

U.S. District Court for the Northern District of New York
Docket Sheet, Case No. 1:22-cv-01337 (FJS/CHF)……………... AA0001

Verified Complaint dated Dec. 12, 2022 [Dkt. No. 1]…………. AA0009

    Exhibit A – *Volkov v. James* Complaint [Dkt. No. 1-1]…. AA0027

Motion to Dismiss for Failure to State a Claim
dated Jan. 18, 2023 [Dkt. No. 12]…………………………………… AA0075

    Memorandum in Support of Motion [Dkt. No. 12-1]……. AA0076

    Declaration of Fuchs [Dkt. No. 12-2]……………………… AA0103

    Exhibit A – State Court Petition [Dkt. No. 12-3]……….. AA0108

    Exhibit B – 2020 Form 990 [Dkt. No. 12-4]……………. AA0118

    Exhibit C – 2019 Form 990 [Dkt. No. 12-5]……………. AA0160

    Exhibit D – 2018 Form 990 [Dkt. No. 12-6]……………. AA0191

    Exhibit E – Affirmation of E. Frish [Dkt. No. 12-7]…….. AA0220

    Exhibit F – Deed from VDARE to BCF [Dkt. No. 12-8]… AA0234

    Exhibit G – Deed from VDARE to BBB [Dkt. No. 12-9]... AA0237

    Exhibit H – BCF Certificate of Incorporation
    [Dkt. No. 12-10]……………………………………………… AA0245

    Exhibit I – BBB Certificate of Incorporation
    [Dkt. No. 12-11]……………………………………………… AA0250

    Exhibit J – Lease to BBB [Dkt. No. 12-12]……………… AA0255

    Exhibit K – Subpoena [Dkt. No. 12-13]…………………… AA0261

    Exhibit L – Facebook Report [Dkt. No. 12-14]…………… AA0279

    Exhibit M – Facebook Subpoenas [Dkt. No. 12-15]…….. AA0309

Exhibit N – Kelly Letter dated July 20, 2022
[Dkt. No. 12-16]…………………………………………….. AA0336

Exhibit O – Suvari Correspondence [Dkt. No. 12-17]…... AA0342

Exhibit P – Frisch Letter [Dkt. No. 12-18]……………... AA0368

Exhibit Q – Suvari Correspondence [Dkt. No. 12-19]…... AA0371

Exhibit R – Frisch Letter [Dkt. No. 12-20]……………... AA0375

Exhibit S – Frisch Letter [Dkt. No. 12-21]……………... AA0377

Exhibit T – Suvari Letter dated Dec. 2, 2022
[Dkt. No. 12-22] ………………………………………….. AA0379

Notice Re: Decision in Related State Case dated
Jan. 26, 2023 [Dkt. No. 15] ……………………………..……… AA0384

Text Order Treating Dkt. No. 15 as Supplement dated
Jan. 27, 2023 [Dkt. No. 16] …………………………………….. AA0398

Affidavit in Opposition to Motion to Dismiss
dated Feb. 22, 2023 [Dkt. No. 25]………………………………. AA0399

Exhibit A – Affirmation in Support of Order to Show
Cause [Dkt. No. 25-1]…………………………………….. AA0402

Exhibit B – Fuchs Email [Dkt. No. 25-2]………………... AA0415

Exhibit C – Frisch Letter [Dkt. No. 25-3]……………….. AA0417

Exhibit D – Frisch Letter [Dkt. No. 25-4]……………..... AA0419

Exhibit E – Frisch Email [Dkt. No. 25-5]……………….. AA0422

Exhibit F – Frisch Email [Dkt. No. 25-6]………………... AA0423

Exhibit G – Suvari Letter [Dkt. No. 25-7]……………….. AA0424

Exhibit H – Lease Agreement [Dkt. No. 25-8]…………… AA0428

Exhibit I – 2019 CHAR500 Form [Dkt. No. 25-9]……….. AA0433

iii

Exhibit J – Fuchs Email [Dkt. No. 25-10].................... AA0437

Exhibit K – Frisch Letter [Dkt. No. 25-11]................... AA0438

Exhibit L – Frisch Email [Dkt. No. 25-12].................. AA0440

Exhibit M – Frisch Letter [Dkt. No. 25-13].................. AA0441

Exhibit N – State Case Memorandum [Dkt. No. 25-14]... AA0442

Exhibit O – *Volokh v. James* Opinion and Order
[Dkt. No. 25-15]..................................................... AA0464

Exhibit P – Operating Agreement [Dkt. No. 25-16]........ AA0485

Exhibit Q – Bylaws of Berkeley Castle Foundation
[Dkt. No. 25-17]..................................................... AA0490

Exhibit R – Order [Dkt. No. 25-18]........................... AA0496

Exhibit S – Affirmation in Support of Application
for Stay [Dkt. No. 25-19]........................................ AA0498

Memorandum in Opposition to Motion to Dismiss dated
Feb. 22, 2023 [Dkt. No. 26] ................................... AA0521

Response in Support of Motion to Dismiss dated
Mar. 8, 2023 [Dkt. No. 27] .................................... AA0551

Notice Re: Decision in Related State Case dated
Mar. 14, 2023 [Dkt. No. 28] ................................... AA0562

Emergency Motion for Temporary Restraining Order and
Preliminary Injunction dated Mar. 21, 2023 [Dkt. No. 29]...... AA0564

Declaration of A. Frisch [Dkt. No. 29-2]...................... AA0568

Corrected Memorandum in Support of Emergency Motion
for Temporary Restraining Order and Preliminary Injunction
dated Mar. 21, 2023 [Dkt. No. 30]..................................... AA0634

iv

Order Denying Motion for Temporary Restraining Order
dated Mar. 27, 2023 [Dkt. No. 32] ..................................... AA0664

Response in Opposition to Motion for a Preliminary
Injunction dated April 10, 2023 [Dkt. No. 34] ...................... AA0666

Affidavit in Opposition to Motion for a Preliminary
Injunction dated April 10, 2023 [Dkt. No. 35] ...................... AA0684

    Exhibit A – Affidavit of Yael Fuchs [Dkt. No. 35-1]........ AA0688

    Exhibit B – Subpoena [Dkt. No. 35-2]..........................  AA0706

    Exhibit C – Frisch Letter [Dkt. No. 35-3]....................  AA0724

    Exhibit D – Frisch Letter [Dkt. No. 35-4]....................  AA0727

    Exhibit E – OAG Letter [Dkt. No. 35-5]......................  AA0729

    Exhibit F – State Court Petition [Dkt. No. 35-6]............  AA0734

    Exhibit G – Oral Argument Transcript [Dkt. No. 35-7]... AA0744

    Exhibit H – State Court Order [Dkt. No. 35-8].............. AA0780

    Exhibit I – OAG Proposed Protective Order
    [Dkt. No. 35-9]....................................................... AA0792

    Exhibit J – VDARE Motion for Stay [Dkt. No. 35-10]..... AA0802

    Exhibit K – OAG Opposition to Motion for Stay
    [Dkt. No. 35-11]....................................................... AA0980

    Exhibit L – Order Denying Stay [Dkt. No. 35-12].......... AA1044

    Exhibit M – Frisch Affirmation [Dkt. No. 35-13]........... AA1046

Reply in Support of Motion for a Preliminary Injunction
dated April 24, 2023 [Dkt. No. 38] ..................................... AA1060

Affidavit in Support of Motion for a Preliminary Injunction
dated April 24, 2023 [Dkt. No. 39] ..................................... AA1076

Exhibit A – OAG Memorandum of Law [Dkt. No. 39-1]... AA1079

Exhibit B – 11 News Article [Dkt. No. 39-2]……………... AA1102

Exhibit C – Washington Post Article [Dkt. No. 39-3]…… AA1106

Exhibit D – VDARE Article [Dkt. No. 39-4]……………… AA1110

Exhibit E – Washington Post Article [Dkt. No. 39-5]…… AA1113

Exhibit F – Declaration of Lydia Brimelow
[Dkt. No. 39-6] ………………………………………….. AA1862

Exhibit G – Affidavit of VDARE Lady Reader
[Dkt. No. 39-7] ………………………………………….. AA1874

Exhibit H – Affidavit of Federale [Dkt. No. 39-8] ………. AA1877

Notice of Motion to Strike Docket Entries dated
April 28, 2023 [Dkt. No. 42]…..…………………………………. AA1880

Memorandum in Support of Motion to Strike
[Dkt. No. 42-1]…………………………………………….. AA1881

Notice Supplement in Support of Motion for Preliminary
Injunction dated April 28, 2023 [Dkt. No. 43]…………………... AA1886

Exhibit A – Redacted Affidavit [Dkt. No. 43-1]………….. AA1887

Exhibit B – Redacted Affidavit [Dkt. No. 43-2]………….. AA1890

Text Order on Motion to Strike dated
May 2, 2023 [Dkt. No. 44]…..…………………………………… AA1893

Sur-Reply in Opposition to Motion for a Preliminary
Injunction dated May 10, 2023 [Dkt. No. 49] …………………... AA1894

Response in Support of Motion to Dismiss dated
July 27, 2023 [Dkt. No. 51] ……………………………..………. AA1904

Notice of Appeal dated July 27, 2023 [Dkt. No. 53]……………. AA1907

Response in Opposition to Motion to Dismiss
dated July 27, 2023 [Dkt. No. 54] ………………………………….. AA1909

Motion for Injunction Pending Appeal dated
Aug.24, 2023 [Dkt. No. 56] ………………………………………… AA1914

Memorandum of Law in Support of Motion for Injunction
Pending Appeal dated Aug. 24, 2023 [Dkt. No. 57]……………. AA1917

 Exhibit A – Mendelson Letter [Dkt. No. 57-1]………….. AA1940

 Exhibit B – Kelly Letter [Dkt. No. 57-2]…………………. AA1945

 Exhibit C – Mendelson Letter [Dkt. No. 57-3]………….. AA1948

 Exhibit D – Letter from F. Kelly dated
 Aug. 1, 2023 [Dkt. No. 57-4]…………………..……………... AA1951

Response in Opposition to Motion for Injunction Pending
Appeal dated Sept. 13, 2023 [Dkt. No. 58]……………………..... AA1971

 Exhibit 1 – Schimmel Letter [Dkt. No. 58-1]……………. AA1982

Notice of Appeal dated Oct. 13, 2023 [Dkt. No. 61] …………… AA1984

OAG may also institute an action or special proceeding to seek a variety of remedies relating to the operation or dissolution of not-for-profit corporations, including "[t]o enjoin, void or rescind any related party transaction, seek damages and other appropriate remedies, in law or equity, in addition to any actions pursuant to section 715 (Related party transactions) of this chapter," Not-for-Profit Corporation Law § 112(a)(10), and is authorized to "take proof and issue subpoenas" in connection with any such investigation, *id.* § 112(b)(6). Aside from these specific powers, OAG is broadly authorized to take legal action against "repeated fraudulent or illegal acts or . . . persistent fraud or illegality in the carrying on, conducting or transaction of business" and may "issue subpoenas" in connection with any such investigation. Executive Law § 63(12).

Subpoenas issued by OAG are "presumptively valid," and a challenging party has the burden of proof to establish an investigatory subpoena's invalidity. *Matter of Doe v. Kuriansky*, 91 A.D.2d 1068, 1068 (2d Dep't 1983). To satisfy that heavy burden, a party must show that the information sought by OAG's subpoena is "utterly irrelevant to any proper inquiry." *Matter of La Belle Creole Intl., S.A. v. Attorney-General of State of N.Y.*, 10 N.Y.2d 192, 196 (1961). If the legality of the conduct

4

**AA0581**

being investigated is even "arguable, then the subpoena[] issued pursuant to the Attorney-General's broad powers to investigate possible violations of [New York law] must be sustained." *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 332 (1988).

**B.      Factual and Procedural Background**

**1.      VDARE's suspected violations of New York law**

VDARE incorporated in New York in 1999. Ex. A at 1. In 2000, VDARE applied for (and, in 2001, received) charitable tax-exempt status from the federal Internal Revenue Service (IRS) under Section 501(c)(3) of the Internal Revenue Code, stating in its application that it planned to operate from offices in New York and listed two of its four directors at addresses in New York City. *Id.* at 1-2. As reported to the IRS, VDARE's mission is to "[c]reate and manage [an] internet publication." Affirm. of Yael Fuchs in Supp. of OAG's Order to Show Cause to Compel Compliance with Investigative Subpoena ¶ 15 (Dec. 16, 2022), NYSCEF Doc. No. 4 (attached hereto without accompanying exhibits as Ex. 1). It operates a website (www.vdare.com) to that end. *Id.* ¶ 17.

Despite organizing as a New York charitable not-for-profit corporation in 1999, VDARE did not register with OAG until 2009. *Id.*

5

**AA0582**

¶¶ 10-11; *see* Executive Law § 172(1) (requiring charitable organizations that "intend[] to solicit contributions from persons in this state or from any governmental agency" to register with OAG prior to any solicitation). As of the commencement of this proceeding, VDARE failed to file a required report by an independent auditor for its 2019 filings and has not filed required annual financial reports (or exemption statements) with OAG for the years 2020 or 2021, preventing OAG from exercising its oversight function over VDARE, its fiduciaries, and its assets. Ex. 1 ¶ 16; *see* Executive Law § 172(a)-(c). Nor has VDARE made required disclosures regarding the relationships of its current board members. According to VDARE's publicly available 2020 Form 990 filed with the IRS, its Board consisted of three directors: Peter Brimelow, Lydia Brimelow, and John Brimelow. Ex. 1 ¶ 20. John Brimelow is disclosed on Schedule O of Form 990 as Peter Brimelow's brother. *See id.* ¶ 19. However, Lydia Brimelow is disclosed nowhere on Form 990 as Peter Brimelow's wife, as would otherwise be required by law. *See id.*

OAG became aware of other potential improprieties in VDARE's operations through publicly reported and available materials. For example, in 2019, VDARE reported a six-fold increase in revenue, from

**AA0583**

$700,000 in 2018 to approximately $4.3 million in 2019. Ex. A at 2. Also in 2019, VDARE doubled the salary of its Chairman, Peter Brimelow, to approximately $345,000, comprising roughly one-third of VDARE's operating expenses. *Id.*; *see* Ex. 1 ¶ 35(e). VDARE pays Brimelow's salary through an independent contractor, Happy Penguins LLC (Frisch Affirm. ¶ 12), which is owned by Brimelow (Ex. 1 ¶ 35(d)). VDARE's payments to Happy Penguins LLC in 2019 exceeded Brimelow's reported salary by tens of thousands of dollars. *Id.* ¶ 35(e). VDARE also listed Peter Brimelow's residential home address in Connecticut as its corporate address while reporting over $45,000 in "office" and "occupancy" expenses paid to the Brimelows in 2019. *Id.*

In or around February 2020, VDARE purchased Berkeley Springs Castle in West Virginia as a "meeting space" for approximately $1.4 million. Ex. A at 2; Ex. 1 ¶ 23. Public reporting indicates that Brimelow and his family have used the property as their primary residence since March 2020. Ex. A at 2; Ex. 1 ¶¶ 25-27. In December 2020, VDARE conveyed the property to two West Virginia corporations incorporated by Brimelow's wife, Lydia (another VDARE director), with the Berkeley Springs Castle itself going to a non-profit corporation called Berkeley

AA0584

Castle Foundation (and the remaining land to a for-profit corporation called BBB, LLC. Ex. A at 2; Ex. 1 ¶¶ 28-33. Not only were these transactions impermissibly omitted from VDARE's 2020 Form 990 (Ex. 1 ¶ 29), under New York law each required approval and written documentation of that approval by disinterested members of the VDARE Board of Directors, *see* Not-for-Profit Corporation Law §§ 509, 715(a)(3), and should have been submitted for review and approval to OAG or to Supreme Court, *see id.* § 510(a)(3). Transfer of charitable assets to a for-profit entity without fair consideration to disqualified persons is a violation of both New York and federal law. Ex. 1 ¶ 28.

In April 2020, Facebook suspended VDARE's Facebook account based on Facebook's determination that VDARE engaged in "coordinated inauthentic behavior" by creating a network of "fake accounts to create fictitious personas . . . [,] drive traffic to off-platform sites, and evade enforcement." *Id.* ¶ 36. Facebook determined that VDARE spent approximately $114,000 buying ads to further these efforts. These expenditures could constitute a waste of charitable assets and breach of the Brimelows' fiduciary duties as VDARE officers and directors. *Id.*

## 2. VDARE's minimal and deficient responses to New York State Office of the Attorney General (OAG) subpoena

On June 24, 2022, OAG served a subpoena duces tecum on VDARE's designated agent and mailed a copy of the subpoena to VDARE's most recent address identified in annual filings with OAG's Charities Bureau. *Id.* ¶¶ 37-38. The subpoena sought documents concerning VDARE's organizational structure, compliance with conflict-of-interest policy requirements under New York law, financial operations, purchase and conveyance of the Berkeley Springs Castle, and transactions with entities controlled by its directors. Ex. A at 3; *see generally* Ex. F (Subpoena Duces Tecum to VDARE (June 23, 2022)).

On July 2, 2022, VDARE's prior counsel demanded that the subpoena be withdrawn and on July 20, 2022, served individual objections to each of the subpoena requests. Ex. 1 ¶¶ 39-41. The initial response deadline of July 24, 2022, passed without the production of a single responsive document.

On July 27, 2022, OAG clarified the subpoena requests by agreeing that the names of certain individuals, including VDARE donors and volunteer supporters, could be redacted from otherwise responsive

records. *Id.* ¶ 42. In August 2022, VDARE obtained new counsel and indicated that it intended to comply with the subpoena but that its new counsel needed additional time to collect and review potentially responsive material. *Id.* ¶ 43.

On September 19, 2022—nearly three months after the subpoena's issuance and two months after its deadline for response and production—VDARE made a production of approximately 27 redacted documents, without Bates numbers or a log explaining the basis for any of the redactions. *Id.* ¶ 44; *see* Ex. A at 3. On September 30, 2022, OAG demanded the production of a redaction log and requested that all future redactions be accompanied by such a log in the first instance. Ex. 1 ¶ 45. In the ensuing 12 weeks, VDARE made modest productions from its hard copy files, but the productions continued to have significant redactions that were not accounted for in any accompanying log. *Id.* ¶ 46; *see* Ex. A at 3. Redactions appear on almost every category of document produced, including board meeting minutes, bank statements, accounting ledgers, credit card statements, invoices from contractors, financial records for Happy Penguins LLC, and Peter and Lydia Brimelow's personal bank statements. Ex. 1 ¶ 46; *see* Ex. A at 3. As a result, OAG has had no means

10

**AA0587**

to reliably identify what has been deleted from VDARE's productions and on what legal basis such deletions were made. Ex. 1 ¶ 45.

On October 31, 2022, VDARE represented that its hard-copy document production was substantially complete (despite the absence of entire categories of requested documents from VDARE's production (*see id.* ¶ 47)) and identified for the first time 22 unique email accounts containing approximately 40 gigabytes of potentially responsive data that needed to be reviewed. *Id.* ¶ 48; *see* Ex. A at 3. VDARE stated that its review of these materials would be complete on November 21, 2022. Ex. 1 ¶ 48. But on November 21 and then again on November 28, 2022—now more than five months after the subpoena was issued and four months after the original production deadline—VDARE informed OAG that the review was taking longer than expected. *Id.* ¶ 49. On November 28, 2022, VDARE stated that it would now aim to complete this review and production by December 12, 2022. *Id.*; *see* Ex. A at 4.

On December 2, 2022, OAG sent a letter to VDARE summarizing its concerns about (among other things) VDARE's production delays, VDARE's unfounded objections to some of the specific subpoena requests, and VDARE's repeated failure to provide a privilege or redaction log. *See*

11

**AA0588**

*generally* Ex. G (Letter from OAG to VDARE (Dec. 2, 2022)). OAG agreed to a sixth deadline extension to December 12 but stated that it would seek judicial intervention if VDARE failed to complete its production by that date. *Id.* at 3.

### 3. VDARE's preemptive federal action

On December 12, 2022, VDARE did not complete its document production. In fact, it produced no documents at all. *See* Ex. 1 ¶¶ 53-54. Instead, VDARE filed a federal lawsuit in the U.S. District Court for the Northern District of New York against Attorney General James in her official capacity, contending that the subpoena *in its entirety* was issued for impermissible pretextual reasons in retaliation for VDARE's exercise of its First Amendment speech rights and violated VDARE's speech and associational rights under the First Amendment and the New York Constitution, art. I, § 8. *See* Ex. B (Verified Compl. for Declaratory & Injunctive Relief (Dec. 12, 2022)) ¶¶ 33-50. VDARE sought compensatory and punitive damages and preliminary and permanent injunctive relief but did not move the federal court for any injunctive relief while its complaint was pending.

**AA0589**

On January 18, 2023, OAG moved to dismiss the federal action, contending that VDARE's claims for damages and its claims based on the New York Constitution are barred by sovereign immunity, that the federal court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and that VDARE's complaint fails to state a First Amendment claim in any event. *See generally* Ex. J (Mem. of Law in Supp. of Def.'s Mot. to Dismiss (Jan. 18, 2023)). VDARE has sought multiple extensions on its deadline to respond to OAG's motion, and its opposition is currently due on February 22, 2023.

### 4. OAG's state-court proceeding

On December 16, 2022, OAG instituted this special proceeding in Supreme Court, New York County and moved by order to show cause to compel VDARE's compliance with the subpoena. *See* <u>NYSCEF Doc. Nos. 1-4</u>. On January 3, 2023, VDARE moved by order to show cause to dismiss or stay the state-court proceeding pending resolution of the federal litigation, contending that the subpoena was pretextual, *see* Ex. H (Affirm. of Andrew J. Frisch in Supp. of Resp't's Order to Show Cause (Jan. 3, 2023)) ¶¶ 6-22, and that the issues raised in both proceedings

**AA0590**

were duplicative, *see id.* ¶¶ 23-24. Argument on both motions was held on January 19, 2023.

On January 23, 2023, Supreme Court (Kraus, J.) issued an order denying VDARE's motion to dismiss or stay the state-court proceeding, and granting OAG's motion to compel. *See* Ex. A. Supreme Court reasoned that OAG is authorized to enforce the State's policy interest in "ensuring the robust regulation of tax-exempt charitable entities like [VDARE] . . . when misconduct is suspected" and that the subpoena "is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations." Ex. A at 6. Supreme Court noted that VDARE "admits the critical facts that first triggered [OAG's] scrutiny," such as the close family relationships among VDARE's directors and the Brimelows' use of a $1.4 million charitable asset as their personal residence. *Id.* at 7-8.

Supreme Court also concluded that VDARE had failed to carry its "initial threshold burden" of showing that the production of outstanding information in response to the subpoena would impair its First Amendment rights (as opposed to those of its donors or volunteers, which it noted OAG agreed to allow to be redacted). *Id.* at 7. The court also found

14

that the production of a redaction log posed no First Amendment concerns whatsoever, and that the identities of VDARE's contractors were essential to evaluate the legality of the transactions in which they were involved. *Id.* at 8.

Finally, Supreme Court found that VDARE had presented "no compelling basis for a stay of this proceeding in its moving papers, and acknowledged at oral argument [that] it ha[d] not sought a stay of this proceeding from the Federal District Court." *Id.* at 9. Accordingly, Supreme Court ordered VDARE (1) to comply with its outstanding subpoena obligations (while allowing redactions of the names of private attendees or private contributors to the organization); (2) reproduce previously produced documents with redactions consistent with its order along with a log identifying the basis for any remaining redactions by February 10, 2023; and (3) complete review and production of the remaining responsive electronic files along with a log identifying the basis for any redactions in that production by February 24, 2023. *Id.* at 9-10. Supreme Court also advised the parties that they may "enter into a Stipulation for the Production of Confidential Information pursuant to

**AA0592**

this order and submit said stipulation to be so-ordered by the court." *Id.* at 10.

On February 6, 2023, VDARE noticed its appeal and informed this Court that it would be moving for an emergency stay. On February 7, 2023, just three days before its first production deadline under Supreme Court's order, VDARE filed this application for interim relief and emergency stay pending appeal. On February 8, 2023, this Court issued an interim stay and ordered briefing on VDARE's application for an emergency stay pending appeal.

## ARGUMENT

### THIS COURT SHOULD DENY VDARE'S MOTION FOR A STAY PENDING APPEAL

"[T]here is no entitlement to a stay" pending appeal. *Da Silva v. Musso*, 76 N.Y.2d 436, 443 n.4 (1990). To obtain such relief, the applicant must demonstrate both a "reasonable probability of ultimate success in the action, as well as the prospect of irreparable harm" without a stay. *DeLury v. City of New York*, 48 A.D.2d 405, 405 (1st Dep't 1975). This Court also is "duty-bound to consider the relative hardships that would result from granting (or denying)" the application, *Da Silva*, 76 N.Y.2d

at 443 n.4, which in a government enforcement action entails weighing the potential prejudice to the public from a stay, *see* Mark Davies et al., 8 *New York Practice Series, Civil Appellate Practice* § 9:4 (3d ed. May 2022 update) (Westlaw). Each of these criteria weighs heavily against granting VDARE's motion.

## A. VDARE Is Unlikely to Succeed on the Merits of Its Appeal.

VDARE has failed to demonstrate a "likelihood of success on the merits" of its appeal, as is necessary to obtain a stay in this Court. *Rand v. Rand*, 201 A.D.2d 403, 403 (1st Dep't 1994); *Pirraglia v. Jofsen, Inc.*, 148 A.D.3d 648, 649 (1st Dep't 2017) (same). Indeed, this Court has been clear that a stay pending appeal is improper in cases, such as this one "where the appeal is meritless or taken primarily for the purpose of delay." *Herbert v. City of New York*, 126 A.D.2d 404, 407 (1st Dep't 1987).

### 1. Supreme Court properly denied VDARE's motion to dismiss or, in the alternative, to stay the subpoena-compliance proceeding.

Supreme Court properly denied VDARE's motion to dismiss or stay this subpoena-compliance proceeding in favor of the "first-filed" federal litigation.

Motions to dismiss premised on the prior existence of another action between the parties are governed by C.P.L.R. § 3211(a)(4), which authorizes dismissal or any other "such order as justice requires" where "there is another action pending between the same parties *for the same cause of action* in a court of any state or the United States." C.P.L.R. § 3211(a)(4) (emphasis added). Here, the federal action commenced by VDARE and the subpoena-compliance proceeding initiated by OAG four days later are not the "same cause of action": VDARE and OAG respectively seek different relief, and the relief sought by OAG in the state-court proceeding (that is, an order mandating compliance with an OAG investigative subpoena) is not even available to it in federal court. In such circumstances, New York courts must deny motions brought under C.P.L.R. § 3211(a)(4). *See Walsh v. Goldman Sachs & Co.*, 185 A.D.2d 748, 749 (1st Dep't 1992) (reversing dismissal due to prior pending action where plaintiff could not obtain complete relief in prior action); *Kent Dev. Co. v. Liccione*, 37 N.Y. 2d 899, 901 (1975).[2]

---

[2] VDARE's authorities for the proposition that the "first-filed" rule is sacrosanct in this Court (*see* Frisch Affirm. ¶ 24) are not to the contrary, as none of those cases involved circumstances where, as here, the relief sought by the plaintiff in the later-filed proceeding was unavailable to it

(*continued on the next page*)

**AA0595**

Moreover, even if the absence of the availability of relief for OAG in federal court were not dispositive of the issue (though it is), the "first-filed" rule is "not controlling" where, as here, the "commencement of the competing actions has been reasonably close in time," *L-3 Communications Corp.*, 45 A.D.3d at 9, and where "one party files the first action preemptively, after learning of the opposing party's intent to commence litigation," *id.* at 8; *see also White Light Prods. v. On the Scene Prods.*, 231 A.D.2d 90, 98 (1st Dep't 1997). Here, only four days separated the filing of the two proceedings, and VDARE filed its federal court proceeding on the very day by which OAG had demanded that VDARE complete its production so as to avoid the resort to "judicial intervention to obtain compliance." Ex. G at 3; *see L-3 Communications*, 45 A.D.3d at 8-10 (reversing dismissal of later-filed New York action, where only four

---

in the first-filed proceeding. *See, e.g.*, *Syncora Guar. Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 96 (1st Dep't 2013) (noting that the plaintiff sought "the same damages for the same alleged injuries relating to the same transaction from close corporate affiliates" in the two cases, warranting dismissal of the later-filed action); *L-3 Communications Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 5 (1st Dep't 2007) (describing how both cases involved claim for breach of contract based on the same conduct); *Ace Prop. & Cas. Ins. Co. v. Federal-Mogul Corp.*, 55 A.D.3d 479, 479 (1st Dep't 2008) (same).

days separated the lawsuits and first lawsuit was filed "preemptively, in order to gain a tactical advantage," after litigation had been threatened by the other party).

VDARE complains that this exception to the first-filed rule should not apply in the context of investigative subpoenas issued by OAG, because OAG's "resort to litigation is inherent in virtually every subpoena it issues," and thus "every person issued a subpoena by the [OAG]" would be barred from collaterally attacking that subpoena in another venue. Frisch Affirm. ¶ 26. But this premise can be restated to make the opposite point: a rule that allowed every person issued a subpoena by OAG to obtain an indefinite stay of its enforcement merely by filing a preemptive collateral challenge in federal court would reward the very "procedural gamesmanship" and "[d]elaying tactics" that this exception was designed to prevent. *White Light Prods.*, 231 A.D.2d at 98. VDARE's own conduct evidenced that it saw OAG's December 2, 2022, threat to seek "judicial intervention" in the event of VDARE's failure to comply by its self-imposed December 12 deadline (Ex. G at 3) as something more serious than the boilerplate reservation of rights found in the subpoena itself. *See* Frisch Affirm. ¶ 9 (characterizing the December 2 letter as "unduly

heavy-handed"). Aware that OAG's patience had worn thin, VDARE rushed into federal court on the very day it had committed to provide its final production in response to the subpoena, precisely to avoid a motion to compel in state court. Supreme Court properly rejected the application of the first-filed rule here in denying VDARE's motion to dismiss or stay in the alternative.

Finally, there is no merit to VDARE's contention that OAG's state-court action was itself the product of forum-shopping or "subterfuge." Frisch Affirm. ¶¶ 30, 32. In bringing this subpoena-compliance proceeding, OAG made good on its December 2 threat to seek judicial relief for VDARE's non-compliance with the subpoena in the only forum where such relief was available to it. *See, e.g., In re Dreier*, 438 B.R. 449, 459 (Bankr. S.D.N.Y. 2010) (holding that it is "not forum shopping" where a litigant has pursued litigation in "the only forum where he can press" his claim). And VDARE's allegation that OAG engaged in "subterfuge" (*see* Frisch Affirm. ¶¶ 30-31) in order to obtain a two-week extension over the holidays and due to illness to respond to VDARE's federal complaint is nonsensical. VDARE claims that it was duped into consenting to this request on December 21, 2022, because it did not know at that time of

21

**AA0598**

OAG's state-court petition filed on December 16. (*Id.* ¶ 31.) But even if OAG had control over the timing of the court's issuance of the order to show cause (and it did not), the federal court did not grant OAG's motion for an extension until December 28, 2022, *see VDARE Found.*, No. 22-cv-01337 (N.D.N.Y. Dec. 28, 2022), ECF No. 9—*six days* after VDARE became aware of the proceeding on December 22 (*see* Frisch Affirm. ¶ 31). Yet VDARE did not withdraw its consent to OAG's request at any time after learning of this alleged "subterfuge." VDARE's allegation of misconduct and "subterfuge" should be rejected.

### 2. Supreme Court properly granted OAG's motion to compel.

Supreme Court also properly granted OAG's motion to compel VDARE to comply with the duly issued subpoena.

A motion to compel compliance with a subpoena "raises only the issues of the authority of the investigating body and whether the inquiry falls within the scope of that authority." *Matter of Nicholson v. State Commn. on Jud. Conduct*, 50 N.Y.2d 597, 610 (1980); *see Matter of Giardina v. James*, 185 A.D.3d 451 (1st Dep't 2020). To establish the legitimacy of the inquiry, OAG "need only make a preliminary showing

**AA0599**

that the information sought is reasonably related to a proper subject of inquiry." *Matter of Roemer v. Cuomo*, 67 A.D.3d 1169, 1171 (3d Dep't 2009) (quotation marks omitted). Moreover, OAG "enjoys a presumption that [s]he is proceeding in good faith." *Id.*; *see Anheuser-Busch, Inc.*, 71 N.Y.2d at 332. Unless the respondent can demonstrate that "the futility of the process to uncover anything legitimate is inevitable or obvious" or that any "information sought is utterly irrelevant to any proper inquiry," the subpoena will be enforced. *Matter of Libre by Nexus, Inc. v. Underwood*, 181 A.D.3d 488, 488 (1st Dep't 2020) (quotation marks omitted).

OAG has satisfied this standard. There can be no question—and VDARE does not dispute (*see* Frisch Affirm. ¶ 8)—that the subject matter of the subpoena concerns a "proper subject of inquiry." New York has a strong public policy interest in ensuring the robust regulation of the assets of tax-exempt charitable entities like VDARE, *see Citizens United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018) (noting the "important government interests at stake" in the regulation of New York's non-profit sector), and vests significant authority in OAG to enforce those interests, *see, e.g.*, *Abrams v. New York Found. for the Homeless*, 190 A.D.2d 578, 578 (1st Dep't 1993). *See generally* Ex. A at 6.

**AA0600**

Moreover, the categories of information sought by OAG (and withheld by VDARE)—the identities of VDARE's contractors, and other redacted information appearing on the likes of bank statements, board minutes, accounting ledgers, credit card statements, invoices from contractors, and financial records for related parties—are "reasonably related" to the State's regulatory interest in the operations of charitable non-profit corporations and specifically in identifying and rooting out improper related party transactions. *See, e.g.*, Not-for-Profit Corporation Law §§ 509-511-a (regulation of real property transactions by non-profit corporations); *id.* §§ 515(a)-(b) (distribution of organization's income or profits to directors and officers, including compensation); *id.* §§ 715, 715-a (related party transactions and conflicts-of-interests); Executive Law art. 7-a (solicitation of funds); Estates, Powers and Trusts Law§ 8.1.4(a), (i) (supervision of non-profit corporations organized for charitable purposes, including "whether or not property held for charitable purposes has been and is being properly administered"). *See generally* Ex. A at 6-7.

Finally, the publicly reported conduct by VDARE more than justifies the State's inquiry. *See Matter of Evergreen Assn., Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2d Dep't 2017) (requiring "an authentic factual basis

24

**AA0601**

to warrant the investigation"); *see also Matter of American Dental Coop., Inc. v. Attorney-General of State of N.Y.*, 127 A.D.2d 274, 280 (1st Dep't 1987) (noting that while OAG must show "some factual basis for [her] investigation," she "is not required to demonstrate probable cause or disclose the details of [her] investigation"). OAG has identified required omissions about the relationships between and among VDARE's directors from its regulatory filings; potential irregularities regarding the compensation paid to VDARE's Chairman, Peter Brimelow, through a separate entity owned by Mr. Brimelow himself; and the questionable use of VDARE's single-biggest asset—the Berkeley Springs Castle in West Virginia—as a personal residence by Brimelow and his family, and subsequent disposition of that property to entities owned or controlled by VDARE director Lydia Brimelow. *See generally* Ex. 1 ¶¶ 19-36; Ex. A at 2-3. These publicly reported incidents call into question VDARE's compliance with the State's requirements for non-profit corporations.

VDARE does not meaningfully argue that the information at issue "is utterly irrelevant to any proper inquiry" by OAG.[3] *Matter of Libre*, 181

---

[3] VDARE cites one only example of a request that is "far afield from legitimate regulatory oversight": deposition transcripts and document

*(continued on the next page)*

A.D.3d at 488 (quotation marks omitted). Instead, it claims that the investigation itself is "retaliatory"—that VDARE is being targeted "for reasons other than regulatory compliance"—because OAG has taken unspecified "unduly aggressive positions" in the course of negotiating the scope and timing of VDARE's response to the subpoena, and because the investigation has coincided with the effective date of a statute aimed at "hateful conduct" on social media as well as the issuance of subpoenas to Facebook and Meta by a newly established "Hate Crimes Unit" within the Office. Frisch Affirm. ¶¶ 19-20. But none of these contentions evinces retaliatory conduct by OAG, particularly in light of the public information that provided a factual basis for OAG's inquiry.

Shifting gears, VDARE next claims that it is entitled to withhold a narrower swath of the information at issue—i.e., "the identities of

---

productions from recent litigation between Peter Brimelow and/or VDARE and the *New York Times* regarding whether certain articles by the *Times* about Brimelow and VDARE were defamatory. Frisch Affirm. ¶ 22. But it was reasonable for OAG to surmise that such materials might have touched on the operations of VDARE, which does fall squarely within the "legitimate regulatory oversight" of OAG. *Cf. Wiseman v. American Motors Sales Corp.*, 103 A.D.2d 230, 237 (2d Dep't 1984) (disclosure "should not be prohibited" where the request "is made in good faith and the information sought is reasonably calculated to lead to the discovery of admissible proof").

26

**AA0603**

contractors who did business with VDARE"—because the disclosure and publicization of those identities could threaten VDARE's "very existence," thereby impinging on its First Amendment rights.[4] Frisch Affirm. ¶ 11. This argument fails for several reasons.

*First*, VDARE has not advanced any evidence of a nexus between the First Amendment harm it alleges and its production of information in response to the subpoena. *See Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 93 (1982) (noting that the person from whom disclosure is sought must establish a "reasonable probability" that disclosure of donors' or members' identities "'will subject them to threats, harassment, or reprisals from either Government officials or private parties'" (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976))); *John Doe No. 1 v. Reed*, 561 U.S. 186, 201 (2010) (compelling disclosure of same-sex marriage ballot petition signatures where plaintiffs provided "scant

---

[4] VDARE makes no argument justifying the numerous redactions it has made to board meeting minutes, bank statements, accounting ledgers, credit card statements, and financial records, or as to its failure to produce responsive documents from the e-mail data that it has identified. To the extent this Court is inclined to grant emergency relief as to the order granting the motion to compel on First Amendment grounds, it should require VDARE to produce any withheld material or information that does not reflect the identity of any VDARE contractor.

evidence or argument beyond the burdens they assert disclosure would impose on R–71 petition signers or the signers of other similarly controversial petitions"). It identifies several purported instances where contractors terminated relationships with VDARE as a result of the "reputational and professional harm" they suffered due to their association with the organization. Frisch Affirm. ¶ 11. But even assuming these terminations were the result of contractors being "deterred by the public enmity attending publicity," *Brown*, 459 U.S. at 98, and not by the contractors' own "disagreement with VDARE's views"[5] (Frisch Affirm. ¶ 11), VDARE fails to explain why the production of the contractors' identities *to the government* would bring about the publicity that VDARE contends would cause it constitutional harm—particularly given Supreme Court's invitation to enter into a confidentiality agreement (*see* Ex. A at 10; Ex. L (Stipulation and [Proposed] Order for the Production of

---

[5] VDARE does not enjoy a First Amendment right to obtain services from providers who are themselves unwilling to associate with its views. *See, e.g.*, *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state.").

28

**AA0605**

Confidential Information)) that would restrict OAG's ability to publicize
or utilize such information outside of its investigation.

VDARE's vague allegation that OAG allegedly disclosed confidential
information connected to an investigation of "another conservative not-
for-profit entity in OAG's cross hairs" (Frisch Affirm. ¶ 16) is insufficient
in this regard. For one, VDARE gets the reported facts of this alleged
incident wrong. According to the reporting cited by VDARE, the material
in question was a "donor tax filing" initially filed with the IRS.[6] These
tax returns are also filed with OAG and the New York Department of
State annually as a matter of course. *See* Executive Law §§ 172-b(7),
172-e(4). Nothing in the article cited by VDARE suggests that the
organization in question was being "investigated" or was in the "cross
hairs" of OAG. In any event, the existence of a protective order here would
provide recourse to VDARE in the event of an unauthorized disclosure.

------

[6] The Editorial Board, *All About Nikki Haley's Donors*, Wall St. J.
(Sept. 4, 2022), https://www.wsj.com/articles/all-about-nikki-haleys-
donors-new-york-attorney-general-letitia-james-stand-for-america-
11662065044; Alex Isenstadt, *Document Reveals Identity of Donors Who
Secretly Funded Nikki Haley's Political Nonprofit*, POLITICO (Aug. 26,
2022), https://www.politico.com/news/2022/08/26/donors-secretly-funded-
nikki-haleys-nonprofit-00053963. All URLs were last visited on February
22, 2023.

**AA0606**

*Second*, even if VDARE could show a nexus between complying with the subpoena and its alleged First Amendment harm, VDARE is still unlikely to succeed on its appeal because the disclosure obligation nevertheless satisfies constitutional "exacting scrutiny" under *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021). "Under that standard, there must be 'a substantial relation between the disclosure requirement and a sufficiently important governmental interest,'" *id.* at 2383 (quoting *Reed*, 561 U.S. at 196), and the disclosure requirement must "be narrowly tailored to the interest it promotes, even if it is not the least restrictive means of achieving that end," *id.* at 2384.

Here, the State's interest in ensuring that VDARE is not being used to enrich its insiders is unquestionably important, and the obligation to comply with a subpoena request for the identities of those who have been paid by the organization—particularly in light of public reporting that calls into question VDARE's conduct on this issue—is substantially related to that interest. The disclosure obligation is also narrowly tailored in that: (1) it was imposed by subpoena following public reporting about

**AA0607**

VDARE's potential misconduct;[7] (2) it is limited to contractors and does not seek the identities of donors, volunteers, or other unpaid contributors;[8] (3) per Supreme Court's order, it can be made subject to a protective order that would restrict OAG's ability to use the information for other purposes or disclose the information to third parties; and (4) it is necessary for OAG to be able to evaluate whether impermissible related party transactions have taken place at VDARE.

VDARE contends that the obligation can be narrowed further by requiring VDARE to produce the identities of only those contractors "who might qualify as 'related' within the meaning of Section 715." Frisch Affirm. ¶ 17. But that would allow VDARE to make its own unilateral determination of relatedness—the very legal question that is the subject of the investigation—a scenario that would undermine, rather than further, the State's interests in ensuring that VDARE is being properly

---

[7] *Compare Bonta*, 141 S. Ct. at 2386 (donor disclosure obligation not narrowly tailored where it was imposed annually on all registered charities and where the information was not an "integral part of California's fraud detection efforts").

[8] *Compare Matter of Evergreen Assn.*, 153 A.D.3d at 93 (subpoena seeking information from crisis pregnancy center where organization "did not engage in any commercial transactions and provided all services pro bono, relying heavily on unpaid volunteers").

run.[9] Next, VDARE offers an alternative that is narrower still: production of unredacted contractor identities *in camera* to the court, for the court to then determine what contractors were "related parties." Frisch Affirm. ¶ 18; *see* Ex. L. But that proposal would put the *court* in the position of investigating potential misconduct by a charitable investigation and deciding an ultimate legal issue in the case without the benefit of briefing or analysis by the parties. It would also impose a least restrictive means requirement that is at odds with the "exacting scrutiny" standard in *Bonta*, 141 S. Ct. at 2384.

**B. Equitable Factors Weigh against Staying Supreme Court's Order That VDARE Comply with Its Outstanding Subpoena Obligations.**

Equitable considerations and the public interest weigh heavily against staying the preliminary injunction pending VDARE's meritless appeal.

---

[9] *Compare Matter of Evergreen Assn.*, 153 A.D.3d at 101 (narrowing OAG's requests for information to those "which pertain to the potential provision of medical or medical-related services," *not* to those which are responsive to the ultimate investigative question of whether Evergreen was engaging in the unauthorized practice of medicine.)

### 1. VDARE will not be harmed—irreparably or otherwise—by complying with the order.

To obtain a stay pending appeal, VDARE was required to show that it faces "the prospect of irreparable harm" in the absence of a stay. *DeLury*, 48 A.D.2d at 405. Here, VDARE has failed to make any evidentiary showing that complying with the subpoena would interfere with its First Amendment rights, much less that it would be irreparably harmed by such compliance. Nor has VDARE acted with the urgency that would suggest that it even believes that complying with the subpoena would cause it harm. Accordingly, VDARE has provided no basis for this Court to stay the enforcement of Supreme Court's order.

*First*, VDARE has demonstrated no cognizable harm arising from compliance with Supreme Court's order. VDARE's application for stay to this Court consists of an attorney affirmation that largely regurgitates the evidence presented in an attorney affirmation submitted to the court below. *See generally* Frisch Affirm.; Ex. H. No officer or director of VDARE has provided any direct evidence of harm. Nor has VDARE submitted any evidence (even anonymously) on behalf of a contractor, donor, or volunteer explaining that VDARE's compliance with Supreme Court's order will deter that third party from continuing to work with VDARE. All that is

33

before the Court is the say-so of VDARE's counsel, and references to various media reports suggesting that the *publicization* of a contractor's relationship with VDARE could deter it from working with VDARE in the future.[10] *See* Frisch Affirm. ¶¶ 11-13. This paltry showing is insufficient to establish VDARE's entitlement to a stay.

VDARE's contention that it faces irreparable harm due to the State's ostensibly "retaliatory" investigation (*see* Frisch Affirm. ¶¶ 9-10, 19-22) suffers from a similar lack of proof. Merely alleging, without evidence, that OAG has taken "unduly aggressive positions" in seeking compliance with an otherwise legitimate and narrowly tailored subpoena is not enough to establish irreparable injury. Nor does the arrival of the effective date of a statute "aimed at 'hateful conduct'" on social media (Frisch Affirm. ¶ 19) evidence that OAG's investigation is somehow irreparably harmful: what the identities of VDARE's contractors have to do with that statute is unaddressed by VDARE's application.[11] And

---

[10] Notably, these reports are equally susceptible to the inference that contractors have declined to work with VDARE because of their own disagreement with VDARE's advocacy, in which case VDARE's harm has nothing to do with OAG's subpoena or Supreme Court's order.

[11] That statute, General Business Law § 394-ccc, requires "social media networks"—defined as "service providers, which, for profit-making

(*continued on the next page*)

34

**AA0611**

finally, the requested stay in this case—even if granted—would have no bearing on the enforceability of OAG's independent subpoena to Facebook and Meta for information regarding VDARE's suspension from that platform. Therefore, VDARE's complaints about that subpoena have no relevance to this stay application.

*Second*, VDARE has not acted with the urgency in this litigation, or in the parallel federal litigation, that would suggest that it believes its very existence to be placed at risk by Supreme Court's order, as it now claims to be the case (*see* Frisch Affirm. ¶ 5). Not only did VDARE wait six months before attempting to seek relief in federal court (on the flimsiest of notions that the State's allegedly improper motives only then became apparent), but it also did not seek emergency relief in that court despite the pendency of this proceeding, and waited more than two weeks

---

purposes, operate internet platforms" designed to allow content-sharing—to maintain a mechanism for users to report hateful conduct and to maintain a policy for how they will respond to such reports. *Id.* § 394-ccc(1)(b), (2), (3). At minimum, VDARE does not fall within the ambit of this statute because it does not operate an internet platform "for profit-making purposes." In any event, a preliminary injunction was recently entered against the enforcement of this statute. *See Volokh v. James*, No. 22-cv-10195, 2023 WL 1991435, at *11 (S.D.N.Y. Feb. 14, 2023).

35

**AA0612**

after the issuance of Supreme Court's order—until just days before its first production deadline under that order—before seeking emergency relief in this Court. These delays call into question whether VDARE truly considers itself likely to be harmed by compliance with OAG's subpoena, and now with Supreme Court's order, or whether VDARE is instead utilizing various options in its toolbox of delay.

### 2. The relative hardships of the parties weigh in favor of denying VDARE's application.

This Court also is "duty-bound to consider the relative hardships that would result from granting (or denying)" the application, *Da Silva*, 76 N.Y.2d at 443 n.4, which in a government enforcement action entails weighing the potential prejudice to the public from a stay, *see* Davies et al., *supra*, § 9:4. This criterion weighs heavily against an appellate stay here.

A stay would prolong OAG's investigation—already delayed by VDARE's dilatory conduct in responding to the subpoena—by months, as the appeal on the merits will require time to be calendared, briefed, argued, and eventually decided by this Court. "Constant delays occasioned by unmeritorious motions to quash followed by routine appeals can lead

not only to the loss of evidence and the fading of witnesses' memories, but also may completely frustrate the course of legitimate investigation into potentially criminal" or otherwise improper activity. *Virag v. Hynes*, 54 N.Y.2d 437, 443 (1981). There is a strong "public[] interest in the fair and expeditious administration" of the laws governing charitable entities in New York, *cf. id.* at 444, particularly given that VDARE continues to solicit donations from residents of New York (and elsewhere).[12] Delayed resolution of OAG's investigation into the propriety of VDARE's various uses of its solicited funds risks harming the public interest. In light of the absence of any irreparable harm occasioned by the denial of a stay, and the harm to the public interest attendant to the entry of a stay, the Court should deny VDARE's application.

---

[12] *See* VDARE.com, https://vdare.com/donate.

**AA0614**

## CONCLUSION

This Court should deny a stay pending appeal.

Dated:  New York, New York
        February 22, 2023

                              Respectfully submitted,

                              LETITIA JAMES
                                *Attorney General*
                                *State of New York*
                              Attorney for Respondent

                      By: _____
                              ANDREA W. TRENTO
                              Assistant Solicitor General

                              28 Liberty Street
                              New York, NY 10005
                              (212) 416-8656
                              andrea.trento@ag.ny.gov

ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
ANDREA W. TRENTO
  *Assistant Solicitor General*
    *of Counsel*

38

**AA0615**

# EXHIBIT 1

AA0616

Case 1:22-cv-01337-EJS-Orient Document 29-2, Filed 06/21/23 44 Page 50 of 66

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------x

PEOPLE OF THE STATE OF NEW YORK, by                Index No. _____
LETITIA JAMES, Attorney General of the
State of New York,
                                          Petitioner,      **AFFIRMATION OF GOOD**
                                                           **FAITH AND IN SUPPORT**
                                                           **OF THE ATTORNEY**
                    -against-                               **GENERAL'S ORDER TO**
                                                           **SHOW CAUSE TO COMPEL**
VDARE FOUNDATION, INC.,                                     **COMPLIANCE WITH AN**
                                          Respondent.       **INVESTIGATIVE**
                                                           **SUBPOENA**

-----------------------------------------------------------------x

       YAEL FUCHS, an attorney duly admitted to the Bar of this State, affirms under penalties

of perjury pursuant to Civil Practice Law and Rules § 2106 as follows:

       1.      I am an Assistant Attorney General in the Office of Letitia James, Attorney

General of the State of New York, who appears on behalf of the People of the State of New York

in this special proceeding.

       2.      I submit this Affirmation in support of the Office of the Attorney General's

application by order to show cause seeking expedited relief in connection with an investigative

subpoena *duces tecum* (the "Subpoena") issued by the Attorney General in connection with an

investigation of Respondent VDARE Foundation, Inc. ("VDARE").

       3.      I am familiar with the facts and circumstances set forth in this affirmation, which

are based upon my personal knowledge and information contained in the files of the Office of the

Attorney General ("OAG").

       4.      As set forth below and in the accompanying Verified Petition and Memorandum

of Law, in connection with a lawful law enforcement investigation, the Attorney General has

issued an investigative subpoena and endeavored to resolve the issue of VDARE's compliance

with that subpoena and has been unable to reach a resolution. The OAG now seeks an order

pursuant to CPLR § 2308(b) to enforce its non-judicial subpoena without further delay.

5.      As set forth in greater detail in the accompanying Memorandum of Law, the

Attorney General is vested with expansive oversight authority of not-for-profit entities, their

representations to donors and potential donors, and their use of charitable assets under the New

York Not-for-Profit Corporation Law, the Estates, Powers and Trusts Law and the Executive

Law.

6.      Respondent VDARE is a not-for-profit corporation organized under the laws of

the State of New York. VDARE was previously known as the Lexington Research Institute,

Limited, and incorporated in New York under that name in 1999. A true and correct copy of

VDARE's Certificate of Incorporation is attached hereto as Exhibit A.

7.      VDARE's Certificate of Incorporation provides that:

        ***

        5. Notwithstanding any other provisions of these articles, the Corporation is organized
        exclusively for charitable, educational, and literary purposes and intends at all times to
        qualify as exempt from federal income tax under section 501(c)(3) of the United States
        Internal Revenue Code, as now in effect or as subsequently amended. Accordingly, the
        Corporation shall not be operated for pecuniary profit or financial gain, no part of the net
        earnings of the Corporation shall inure to the benefit of any private individual, no
        substantial part of the Corporation's activities shall consist of carrying on propaganda or
        otherwise attempting to influence legislation, and the Corporation shall not participate or
        intervene in any political campaign on behalf of (or in opposition to) any candidate for
        public office.

        6. The Corporation may pay reasonable compensation to any person for services rendered
        to the Corporation in furtherance of its lawful purposes.

Ex. A at 1.

8.      In 2000, VDARE, then still known as the Lexington Research Institute, Limited,

applied for recognition as a tax-exempt organization by the Internal Revenue Service (IRS). A

Case 1:22-cv-01337-EJS-GWH Document 29-2, Filed 08/21/23 Page 52 of 66

true and correct copy of VDARE's Form 1023 Application for Recognition of Exemption is attached hereto as Exhibit B.

9.     VDARE was recognized as tax-exempt (under I.R.C. section 501(c)(3)) by the IRS in or about May 2001.  A true and correct copy of an IRS confirmation letter addressed to the Lexington Research Institute Limited dated August 9, 2005 is attached hereto as Exhibit C.

10.     In 2009, VDARE registered as a charity with the Charities Bureau of the Office of the Attorney General, under both the Estates, Powers and Trusts Law ("EPTL") and under the Executive Law.  A true and correct copy of VDARE's CHAR 410 initial registration form is attached hereto as Exhibit D.

11.     VDARE filed its initial registration with the Charities Bureau in 2009, despite having begun operations in New York in 2000.  New York law requires that charities register with the Charities Bureau prior to any solicitation in New York, Exec. Law § 172, and within six months "after any property held by [a trustee] or any income therefrom is required to be applied to charitable purposes," EPTL § 8-1.4(d).

12.     In its CHAR 410, VDARE described its purpose as "creat[ing] and manag[ing] internet publications." Ex. D at 3.

13.     As a charity operating and soliciting in New York, VDARE is required to file annually a CHAR500 Registration Form.  The CHAR500 must be signed by two officers and asks for self-reporting regarding certain basic information, including the organization's contact information, the number and identity of board members, and information relating to fundraising.

14.     The CHAR 500 also requires that organizations file and certify a copy of their annual IRS Form 990.  According to the IRS, the Form 990 "is the IRS' primary tool for gathering information about tax-exempt organizations, educating organizations about tax law

AA0619

Case 1:24-cv-01823-PKC-JAM   Document 29-2   Filed 08/21/24   Page 53 of 66

requirements and promoting compliance. Organizations also use the Form 990 to share information with the public about their programs." https://www.irs.gov/charities-non-profits/form-990-resources-and-tools (last visited December 14, 2022).

15.     As part of its required filings with the IRS and the Charities Bureau, VDARE, since its belated registration, files an IRS Form 990 and certifies to its accuracy each year. According to VDARE's IRS Form 990, the organization's mission is to "Create and manage internet publication."  True and correct copies of VDARE's Form 990 for 2018-2020 are attached hereto as Exhibits E-G.

16.     As of the date of this Affirmation, VDARE has not filed its 2020 or 2021 CHAR500 Forms, which would include the IRS Form 990 as an attachment, and is delinquent in its required annual registration with the Charities Bureau.

17.     VDARE reports on its Form 990 that its website is WWW.VDARE.COM.  Exs. E-G.

18.     According to VDARE's Form 1023 Application filed with the IRS and the Charities Bureau, Peter Brimelow ("Brimelow") is the "Director/CEO/Chairman" of VDARE. Ex. B at 3.  Maggie Brimelow is listed as Secretary/Treasurer on VDARE's Form 1023 Application. *Id.*  Upon information and belief, Maggie Brimelow was Peter Brimelow's wife prior to her death in 2004.

19.     For certain years, Lydia Brimelow is listed as "Secretary, Treasurer and Publisher" of VDARE on VDARE's Char500 filed with the Charities Bureau.  Upon information and belief, Lydia Brimelow is Peter Brimelow's current wife.  This relationship is not listed on Schedule L or Schedule O of the 2020 IRS Form 990, as is required by law.  Lydia Brimelow is listed as a director of VDARE in its IRS Form 990 for 2020, but not in other years.  John

Case 1:22-cv-01337-FJS-CFH   Document 29-2   Filed 08/21/23   Page 54 of 66

Brimelow is Peter Brimelow's brother and is listed as a director of VDARE in its Form 990 for 2018-2020. *See* Exs. E-G.

20.     As set forth in its IRS 990 for 2020, the most recent filing that is publicly available, VDARE's board and management for 2020 consisted entirely of members of the Brimelow family: Peter, Lydia, and John.  Ex. G.

21.     VDARE and its current and past board members are the subject of an ongoing investigation by the Attorney General concerning potential financial improprieties, including unlawful related party transactions between VDARE and affiliated entities, officers and board members, excessive compensation, private inurement, and violations of statutory and common law governance standards.

22.     In February 2020, VDARE was publicly reported to have bought a historic, 9,300-square foot castle in a West Virginia resort town for $1.4 million.  *See* Rick Steelhammer, Berkeley Springs Castle Becomes Conference Site for VDARE, an Organization to 'Keep America American,' Charleston Gazette-Mail (Mar. 7, 2020), available at https://www.wvgazettemail.com/news/berkeley-springs-castle-becomes-conference-site-for-vdare-an-organization-to-keep-america-american/article_170131e9-db7c-500f-8a57-91e1fcc1ad66.html (last visited December 14, 2022).

23.     In a February 2020 public announcement on VDARE.com, VDARE described the castle as a meeting space "where we can meet and share ideas without fear of deplatforming." *See* Lydia Brimelow, Lydia Brimelow: We Got the Keys to the Castle!, VDARE.COM (Feb. 26, 2020), https://vdare.com/articles/lydia-brimelow-we-got-the-keys-to-the-castle (last visited December 14, 2022).

24.     Months later, Brimelow continued to represent to donors that the castle was a necessity—stating in a solicitation that VDARE "had to buy the Berkeley Springs Castle." *See* "VDARE.com Editor Peter Brimelow: Please Give By Credit Card BEFORE MIDNIGHT—While You Still Can!", https://vdare.com/articles/vdare-com-editor-peter-brimelow-please-give-by-credit-card-before-midnight-while-you-still-can (last visited December 14, 2022).

25.     Upon information and belief, Peter Brimelow, Lydia Brimelow, and their three children moved into the Berkeley Springs Castle and have been using it as their primary family residence since March 2020.

26.     On VDARE.com, the Brimelows have posted photos of the family celebrating holidays at the castle such as the 4th of July (https://vdare.com/posts/the-brimelow-family-wishes-you-a-happy-independence-day (last visited December 14, 2022)), and Christmas Eve (https://vdare.com/articles/peter-brimelow-merry-christmas-from-vdare-com-f3d0cb33-af41-4d90-93b9-c82cd46c5950 (last visited December 14, 2022)).

27.     In a post dated December 4, 2020, a VDARE.com contributor reported visiting the castle and noted that "Peter and Lydia Brimelow have moved in and spend most of their time there with their [children]….". *See* https://vdare.com/radio-derb/castling-with-vdare-com-senate-visa-giveaway-covid-hypocrisy-and-students-cancel-black-etc (last visited December 14, 2022).

28.     Public filings indicate that, in December 2020, VDARE conveyed the entirety of the Berkeley Springs Castle property in two separate transactions to two West Virginia corporations that had been incorporated by Lydia Brimelow five months earlier.  VDARE conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a putative non-profit corporation. VDARE conveyed the remaining land, consisting of eight

parcels, to BBB, LLC, a for-profit corporation. Transfer of charitable assets to a for-profit entity

without fair consideration is a violation of both New York and federal law.  True and correct

copies of these deeds are attached as Exhibit H and I.

29.      This transaction is not reported on the VDARE 2020 IRS Form 990, as required

by law, nor was it submitted to the Charities Bureau for approval, as required by Sections 510

and 511 of the Not-for-Profit Corporation Law.

30.      According to records on file with the West Virginia Secretary of State, Lydia

Brimelow incorporated BCF as a West Virginia domiciled nonprofit on July 21, 2020. A copy of

the Business Organization Detail page for BCF from the West Virginia Secretary of State's

website is attached as Exhibit J.

31.      BCF was recognized as a tax-exempt organization by the IRS by notice dated

January 20, 2022.  A copy of BCF's tax exemption recognition notice is attached hereto as

Exhibit K.

32.      Using the tagline "When nothing but a castle will do," BCF offers to rent the

castle as an event space through its website. According to that website, BCF began taking event

reservations in summer 2020.



AA0623

https://www.berkeleyspringscastle.com/contact.html (last visited December 14, 2022).

33.     According to records on file with the West Virginia Secretary of State, Lydia

Brimelow incorporated BBB, LLC as a West Virginia domiciled for-profit corporation on July

21, 2020.  Lydia Brimelow is listed as BBB, LLC's organizer and manager.  The organization's

only listed business purpose is "Real Estate and Rental and Leasing—Real Estate—Lessors of

Real Estate." A copy of the Business Organization Detail page from the West Virginia Secretary

of state is attached as Exhibit L.

34.     Announcements posted to VDARE.com in October 2021 indicate that the castle's

"First Public Event" was an "Auction Preview Party" showcasing items from the castle that the

Brimelows were selling in a private auction, including swords, a riding helmet, and a butter

churn.  *See* "Come To Our First Public Event! Castle Auction: Saturday, October 16th" *at*

https://vdare.com/posts/come-to-our-first-public-event-castle-auction-saturday-october-16th

("VDARE.com bought the Berkeley Castle furnished, and we're retaining many of the beautiful

pieces for Castle use. But there are just so many we can't use them all! So, in partnership with

local auction house J Lawyer, we're offering the rest up to our friends and supporters.") (last

visited December 14, 2022) *and* "Downsizing For The Historical Berkeley Springs Castle" at

https://www.jlawyerauctions.com/auctions/detail/bw70268 (last visited December 14, 2022).

35.     Following the public reporting of the castle purchase, personnel in the Office of

the Attorney General reviewed VDARE's Form 990s and other publicly available documents.

The OAG identified several areas of concern which may constitute violations of VDARE's

bylaws and/or New York law.  For example, and without limitation:

a.      According to its IRS Form 990 for 2019, VDARE raised over $4.2 million

        in contributions and grants in 2019, which is more than eight times its

8

AA0624

publicly reported 2018 revenue and more than ten times its publicly reported 2017 revenue. VDARE did not file a report by an independent auditor for that year, as required for organizations soliciting in New York with revenue of over $1,000,000. VDARE claimed an exemption from the requirement on the grounds that it raised less than the requisite $25,000 from New York donors.

b.  According to VDARE's disclosures in Schedule J of the 990, VDARE does not appear to have any process in place for determining Brimelow's salary.

c.  According to VDARE's IRS Form 990 for 2019, Brimelow's reported compensation for 2019 nearly doubled from 2018, to $345,364 — an amount equivalent to nearly half of VDARE's total program service budget for the year.

d.  According to Schedule L of VDARE's 990, rather than pay Brimelow directly, VDARE pays Brimelow's salary through an independent contractor, Happy Penguins LLC, which VDARE reports is owned by Brimelow. Under this arrangement, Peter Brimelow, VDARE's chief executive, is technically a Happy Penguins "leased employee" rather than a VDARE employee.

e.  In 2019, VDARE paid Happy Penguins more than Peter Brimelow's annual salary. Although Brimelow's reported salary for 2019 was $345,364, VDARE also reported paying Happy Penguins LLC $411,003. In 2019, VDARE also listed the Brimelows' residential home address in

Litchfield, Connecticut as its corporate address while reporting $36,142 in "office expenses" and $8,664 in "occupancy expenses" on its Form 990 — additional compensation to the Brimelows that was not properly reported. These financial arrangements may violate express conflict provisions in the N-PCL and VDARE's bylaws.

f.  Lydia Brimelow's position in the organization is inconsistently and incompletely reported.  To the extent that she serves as an officer or director of VDARE, that family relationship, which should be disclosed, is not reported on VDARE's Form 990.

g.  The VDARE Form 990 for 2020 contains additional statements which raise significant issues about compliance with governing law and use of charitable assets.  For example, in response to Form 990, Part VI, Line 11b: Form 990 Review Process Schedule O represents that "No review was or will be conducted."  The IRS 990 at Section VI, question 12 represents that there is a conflict of interest policy (as required by New York Not-for-Profit Law) but the explanation of that policy is nowhere addressed on Schedule O, as required by the IRS. Schedule J, which requires disclosure of certain benefits to officers, leaves blank the question whether the officer receives a housing allowance or residence for personal use. Schedule L, which requires disclosures of transactions with interested persons, makes no mention either of Lydia Brimelow's salary from VDARE or of the transaction providing a residence for use by the Brimelows.

10

AA0626

Case 1:22-cv-01337-FJS-CFH   Document 29-2   Filed 08/21/23   Page 60 of 66

36.     In April 2020, Facebook suspended VDARE's Facebook account based on
Facebook's determination that VDARE engaged in "coordinated inauthentic behavior" by
creating a network of "fake accounts to create fictitious personas…drive traffic to off-platform
sites, and evade enforcement." According to Facebook's analysis, VDARE's network consisted
of "19 Pages, 15 Facebook accounts, and 1 Group" accounting for 207,700 followers. Facebook
determined that VDARE's network spent "around $114,000" buying ads to further its inauthentic
behavior.  If true, this could constitute a waste of charitable assets and breach of the Brimelows'
fiduciary duties as VDARE officers.  VDARE sued Facebook, alleging defamation, when
Facebook published a copy of its 2020 report, and VDARE attached a copy of the report to its
federal complaint.  A true and correct copy of the April 2020 "Coordinated Inauthentic Behavior
Report," as filed by VDARE, is attached as Exhibit M.

37.     On June 24, 2022, the Attorney General personally served a subpoena *duces
tecum* on VDARE by delivery to VDARE's designated agent for service, the Secretary of State
of New York, in compliance with CPLR 311 and N-PCL § 306.  A true and correct copy of the
Subpoena is attached hereto as Exhibit N.

38.     On June 24, 2022, the Attorney General mailed a copy of the Subpoena, by U.S.
Mail Certified Return Receipt to the address identified in VDARE's most recent annual filing
with the Charities Bureau (276 Cacapon Road, Berkeley Springs, West Virginia 25411), together
with a copy of the Affidavit of Service prepared by OAG Investigator Donald C. Anselment and
a cover letter confirming the nature of the document. A true and correct copy of the Attorney
General's June 24, 2022 letter is attached hereto as Exhibit O.

11

**AA0627**

<u>Efforts to Obtain Subpoena Compliance Since July 2022</u>

39.     VDARE responded to receipt of the Attorney General's Subpoena by immediately insisting that the Subpoena be withdrawn as unlawful:  on July 2, 2022, VDARE's then-counsel Frederick Kelly confirmed receipt of the Subpoena, demanded that the Subpoena be withdrawn in its entirety, and requested information regarding, *inter alia*, the subject matter of the investigation and the relevance of the documents sought in the Subpoena.  True and correct copies of Kelly's July 2, 2022 email and its attachments are attached hereto as Exhibit P.

40.     On July 18, 2022, counsel from the Attorney General's Office met telephonically with Kelly.  During that call, Kelly asked the OAG to provide information regarding the nature of the investigation and expressed concerns regarding certain Subpoena requests, including requests that he believed were overbroad or called for production of documents protected by the attorney-client privilege.  OAG counsel responded to Kelly's questions, with a reservation of rights, and identified concerns regarding: (1) the purchase and use of the castle; (2) benefits conferred upon the Brimelows; (3) whether the VDARE board is properly overseeing the finances of the organization; and (4) whether the organization is using charitable assets in accordance with its mission.  The OAG also stated that to the extent counsel believed that production would invade attorney-client privilege, the Subpoena did not seek privileged communications and expressly instructed counsel to withhold such documents and provide a privilege log.

41.     On July 20, 2022, Kelly sent a second letter to the OAG, by which VDARE renewed its request that the Subpoena be withdrawn and set forth individual objections to many of the Subpoena's individual requests on the grounds of overbreadth, vagueness, attorney-client

12

**AA0628**

privilege, and that its requests sought the identities of VDARE readers, writers, and donors. A true and correct copy of VDARE's July 20, 2022 letter is attached hereto as Exhibit Q.

42.    On July 27, 2022, the Attorney General responded by email to the objections raised in VDARE's July 20 letter. With a reservation of rights, counsel for the OAG attempted to address VDARE's concerns by clarifying individual Subpoena requests and agreeing that the names of certain individuals, including VDARE contributors and volunteer supporters, could be redacted from otherwise responsive records. A true and correct copy of the OAG email dated July 27, 2022 is attached hereto as Exhibit R.

43.    In August 2022, VDARE retained substitute counsel — attorney Andrew Frisch — and indicated through that new counsel that it intended to comply with the Subpoena. Frisch contacted the OAG by phone and letter to identify himself as VDARE's new representative in connection with the Subpoena response and he requested additional time to collect and review potentially responsive material for production. In a letter on September 19, 2022, Frisch wrote: "I do not stand by my predecessor counsel's position that the Subpoena be withdrawn." He noted that there existed "a significant volume of electronically-stored and hard copy documents that need to be reviewed" and he confirmed that he had prepared the first of what he expected would be multiple rolling production deliveries. He also confirmed that he had redacted certain information in his first production delivery but had not "had ample time to fully evaluate bases underlying the redactions." A true and correct copy of Frisch's letter dated September 19, 2022 is attached hereto as Exhibit S.

44.    VDARE made its first production of responsive material to the OAG on September 19, 2022, nearly two months after the Subpoena's originally stated deadline for completion of all production. The September 19 production contained 27 documents produced

13

AA0629

Case 1:22-cv-01337-RJS-GWG Document 29-2 Filed 08/24/23 Page 58 of 66

without Bates numbers and bearing unmarked redactions. No log was provided with the production to identify or explain how and why the documents had been redacted.

45.     The OAG requested a redaction log for VDARE's production immediately upon receiving the September 19 delivery and has repeated that request in the three months since. In an email on September 30, 2022, the OAG expressly insisted that productions be delivered in the form called for by the Subpoena and that all redactions be accompanied by "a log identifying the Bates range for any pages on which redactions appear, the legal basis for those redaction, and a general description of the category of information being withheld." The OAG's September 30 email explained that, without a redaction log, the Office had no means to "reliably identify what has been deleted from the material [VDARE was] producing and on what legal basis." A true a correct copy of the OAG's September 30, 2022 email is attached as Exhibit T.

46.     In twelve weeks since its first delivery, VDARE has produced approximately 6,000 pages of material from its hard copy records that it identifies as responsive to the Subpoena. It has redacted that material without offering any legal basis for individual redactions or any explanation of how otherwise responsive material has been identified and segregated for redaction. The redactions are extensive, and they have been applied across almost every category of document produced, including VDARE board meeting minutes, VDARE bank statements, internal VDARE accounting ledgers, VDARE credit card statements, invoices sent to VDARE, financial records for the limited liability company (Happy Penguins LLC) from which VDARE has historically leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and Lydia Brimelow. In one instance, VDARE appears to have redacted a magazine subscription renewal form addressed to Peter Brimelow that it also marked as Confidential.

Case 1:24-cv-01384-PGG-OTW Document 29-2 Filed 08/21/23 Page 54 of 66

47.     On October 31, 2022, Lydia Brimelow certified to the OAG that, with limited

exceptions, VDARE's production from its hard copy files was complete.  A true and correct

copy of Brimelow's October 31 certification is attached as Exhibit U.  As certified, VDARE's

hard copy production contains no responsive material from the following categories of record

called for by the Subpoena:  (i) solicitation materials sent by VDARE to potential contributors;

(ii) documents related to the setting or adjusting VDARE's officer compensation; (iii) documents

concerning past or future VDARE events located at the Berkeley Springs Castle property; (iv)

documents concerning Director and Officer liability insurance held by VDARE for the benefit of

its Board; (v) documents sufficient to demonstrate who controls VDARE's financial accounts;

and (vi) communications between VDARE and its accountants.

48.     On October 31, 2022, VDARE also identified 22 unique email accounts that

together contained approximately 40 gigabytes of potentially responsive electronically-stored

information.  VDARE counsel stated on October 31 that review of those accounts would be

completed on or before November 21, 2022.  A true and correct copy of the October 31, 2022

letter to the OAG from VDARE counsel is attached, without its attached list of email account

names, as Exhibit V.

49.     VDARE did not produce any material from its electronic files as promised on

November 21.  In letters dated November 21 and November 28, attached as Exhibits W and X,

VDARE counsel reported to the OAG that its email review was taking longer than expected.  In

its November 28 letter, VDARE counsel identified December 12, 2022 as a new deadline — set

without input or consent from the OAG — by which it would complete an email production.  No

such production was ever provided.

AA0631

Case 1:22-cv-01337-FJS-CFH Document 29-2 Filed 08/21/23 Page 65 of 66

50.     The OAG has met with VDARE counsel, in person and by phone, on multiple

occasions in the months since VDARE made its first September 2022 production.  VDARE

counsel has assured the OAG throughout that he was working diligently to comply with the

Subpoena.  The OAG has expressed concern over production delay in each of its contacts with

VDARE counsel and has objected repeatedly to VDARE's continuing production of redacted

material without any identified explanation of or legal basis for redaction.

51.     On December 2, 2022, counsel for the OAG summarized its concerns with the

pace and scope of VDARE's production to date in a letter addressed to VDARE counsel.  A true

and correct copy of the December 2, 2022 letter is attached as Exhibit Y.

52.     As of the date of this filing, the Subpoena's deadline for production has been

extended no fewer than six times — most recently to December 12, 2022.  In total, these

adjournments extended the Subpoena's stated response deadline by approximately twenty weeks.

53.     As of the date of this filing, VDARE has not produced any material from the 22

individual VDARE email accounts that it identified on October 31 as containing potentially

responsive material.

54.     As of the date of this filing, VDARE has refused to produce any log identifying

the material in its production that it has redacted and the legal basis on which it is withholding

the redacted information.

55.     On December 12, 2022, the same date that VDARE counsel independently

selected for complete production of responsive VDARE email, VDARE filed a lawsuit in the

U.S. District Court for the Northern District of New York seeking to have the Attorney General's

investigative Subpoena declared unconstitutional.  A true and correct copy of VDARE's

December 12, 2022 Verified Complaint is attached as Exhibit Z.  The OAG believes that

VDARE's claims in that action are without merit and will seek to dismiss the complaint.

56.    In accordance with CPLR Rule 2217(b), I affirm that the Attorney General has

not previously requested the relief sought by this application.

Dated: New York, New York
        December 16, 2022

LETITIA JAMES
Attorney General of the State of New York

By:

_____
Yael Fuchs
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8391
yael.fuchs@ag.ny.gov

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

VDARE FOUNDATION, INC.

$\qquad$ *Plaintiff,*

$\qquad$ - against -

$\qquad\qquad\qquad\qquad\qquad$ Civil Action No. 22-cv-1337 (FJS/CFH)

LETITIA JAMES, in her official capacity
as Attorney General of the State of New York,

$\qquad$ *Defendant.*

----------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION
# TO DEFENDANT'S MOTION TO DISMISS

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . 3

A. New Developments in State Court Show the . . . . . . . . . 4
Merit and Validity of VDARE's Complaint

B. The Inference of State Retaliation for VDARE's Exercise . . . . . . 8
of its Constitutional Rights of Speech and Association

1. The Attorney General's Targeting of VDARE as Part of What . . . . 8
She Expressly Describes as Her "Oversight" of Speech

2. VDARE Turned to this Court for Relief While Complying with the . . . 11
OAG's Subpoena Only After the OAG took Positions that Risked
Irreparable Constitutional Harm and VDARE's Ability to Conduct Business

3. The OAG Rejected VDARE's Proposed Middle Grounds . . . . . 15

4. The OAG on December 2, 2022, Demanded that VDARE Disclose . . . 16
Protected Information, One Day Before a New Law Targeting
"Hateful Conduct" Became Effective

5. The OAG's Pretextual Claims of "Organizational Misconduct" . . . . 17

Argument

The OAG May Not Defeat this Court's Jurisdiction By Initiating . . . . . . 22
A State Proceeding After an Aggrieved Litigant Seeks Federal Relief

1. Abstention Does Not Apply . . . . . . . . . . 22

2. A Litigant May Not Press New York's Law on Res Judicata . . . . 24
While Violating New York's First-Filed Rule

3. Sovereign Immunity Does Not Bar Relief . . . . . . . 27

4. Standard of Review . . . . . . . . . 29

Conclusion . . . . . . . . . . . 30

2

**AA0635**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

VDARE FOUNDATION, INC.

                            *Plaintiff,*                Civil Action No: 11-cv-1337 (FJS/CFH)

            - against -

LETITIA JAMES, in her official capacity
as Attorney General of the State of New York,

                            *Defendant.*

----------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

On December 12, 2022, Plaintiff VDARE FOUNDATION, INC. ("VDARE")
initiated this action against the Attorney General of the State of New York (the "Attorney
General" or the "OAG") for declaratory and injunctive relief to protect its ability to continue to
do business and its rights of free speech and association guaranteed by the federal and state
constitutions.  On January 18, 2023, the OAG moved to dismiss this action.  This Memorandum
of Law and the accompanying declaration of VDARE's counsel and exhibits thereto are
submitted in opposition to the OAG's motion to dismiss.

<u>Introduction</u>

The circumstances of this case are unprecedented because a state law enforcement

3

**AA0636**

officer has expressly proclaimed her right and intent to conduct "oversight" of the content of

speech of organizations like VDARE while advancing a professed need for regulatory oversight

of charities.  Precisely because VDARE respects the OAG's broad authority to conduct

regulatory oversight as the OAG sees fit, it was complying with its investigative subpoena and

was near completing its compliance when it demanded disclosures which implicate VDARE's

federal and state constitutional rights to speech and association.  Though VDARE had no

objection to disclosing identities of related contractors within the meaning Section 715 of New

York's Not-for-Profit Corporation Law nor the amounts paid to and services rendered by other

contractors, the OAG demanded disclosure of the identities of VDARE's content providers and

other contractors which would put them at risk and threaten VDARE's ability to continue to

conduct business.

       The OAG could have agreed with one of the middle grounds proposed by

VDARE described below without prejudice to its right to revisit the issue or propose one of its

own.  Its steadfast refusal to do so coupled with an unjustifiable claim to need constitutionally-

protected information without narrow tailoring or any showing of specific investigative need

shows that far more is afoot than a small charity's governance.  The OAG's conduct of this

matter, described in VDARE's complaint and herein, proves precisely what the OAG denies: it

seeks disclosure of the identities of its content providers and other contractors exclusively or

substantially so that VDARE will be unable to continue to express a viewpoint with which it

disagrees.  The parties are before this Court because the OAG refuses to separate its regulatory

oversight of a charity with a professed right of oversight of the content of speech.

A.    *New Developments in State Court Show the Merit and Validity of VDARE's Complaint*

**AA0637**

Since VDARE initiated this action, related developments in the Supreme Court of the State of New York, County of New York (the "state court") underscore the merit and validity of VDARE's complaint.  On December 14, 2022, two days *after* VDARE initiated this action, the OAG initiated a special proceeding in state court to compel VDARE's compliance with the OAG's investigative subpoena (the OAG's petition in state court is attached as Exhibit C to its motion to dismiss, Docket No. 12-3; the OAG's subpoena is attached as Exhibit K to its motion to dismiss, Docket No. 12-13).  *See James v. VDARE Foundation, Inc.*, N.Y. County Index No. 453196/2022.  VDARE responded to the OAG's petition in state court by moving to stay the newly-filed proceeding [Frisch Declaration,[1] Exhibit A] based on New York's "first-filed" rule pending resolution of this federal action or at least until decision on the OAG's motion to dismiss this action.  *See Ace Prop. & Cas. Ins. Co. v. Fed.-Mogul Corp.*, 55 A.D.3d 479, 480 (1st Dep't 2008) (New York's well-settled "first-filed" rule requires that the "court which has first taken jurisdiction . . . . is the one in which the matter should be determined and it is a violation of the rules of comity to interfere.").  VDARE otherwise opposed the OAG's demand that it disclose information protected by the constitutional rights to free speech and association.  Frisch Declaration, Exhibit A.

On January 23, 2023, the state court denied VDARE's motion for a stay and granted the OAG's motion to compel.  Docket No. 15 (the OAG's filing in this Court of the state court's order).  On February 8, 2023, on application by VDARE, the Appellate Division, First Department, stayed the state court's order of January 23, 2023, pending further briefing and decision.  Frisch Declaration, Exhibit R.  The OAG's opposition is to be filed by February 22,

---

[1] "Frisch Declaration" refers to the Declaration of VDARE's counsel filed herewith.

2023, and VDARE's reply by February 27, 2023.

   The proceedings in state court demonstrate the sufficiency of VDARE's claim of unconstitutional retaliation and the irreparable constitutional harm VDARE will suffer if it is denied federal redress.  Federal deference to state investigative authority does not extend to state retaliation for exercise of constitutionally-protected speech and association.  Nor does such deference leave federal courts powerless to protect federal constitutional rights.  As demonstrated in VDARE's complaint [Docket No. 1] and herein, VDARE has established that the OAG is targeting VDARE because of its aversion to the content of its protected speech.

   No reasonable inference other than unconstitutional retaliation is warranted by the OAG's conduct of this matter.  For example, the OAG represented to this Court in its motion to dismiss this case that its subpoena to VDARE does "*not* seek any information regarding the development or publication of VDARE's online content."  Docket No. 12-1 at 8-9 (emphasis in original).  Simultaneously, the OAG took the contrary and  constitutionally offensive position in state court that "the identities of contractors - - including writers who contribute to the website - - these are precisely the records the OAG must examine in its investigation of VDARE's organizational misconduct."  Frisch Declaration, Exhibit N at 16.  Apart from taking contradictory positions in two different courts, the OAG's purported rationale for the demanded disclosure does not fit its rationale:  a vendor's provision of services to VDARE and a writer's provision of content to VDARE's website have no automatic connection to any legitimate investigative need.

   Also troubling is the OAG's claim that this Court is bound by an order in a state court proceeding, which it initiated only *after* VDARE sought constitutional protection in this

6

**AA0639**

Court.  Especially revealing is the OAG's unseemly subterfuge in secretly rushing to state court to secure a favorable order before this Court hears and rules on its motion to dismiss.  VDARE filed its complaint in this Court on December 12, 2022, simultaneously emailing a courtesy copy of its papers to the OAG in advance of formal service, which provided the OAG with three weeks (until January 4, 2023) to respond.  *See* F. R. C. P. 12(a)(1)(A)(I).  Frisch Declaration, Exhibit A at 2.  On December 21, 2022, a full two weeks before the OAG's response was due on January 4, 2023, the OAG requested and secured VDARE's consent to an extension of its deadline to respond in federal court, from January 4 to 18, 2023.  In so doing, the OAG claimed (in an email) that the extension was necessary because of the holidays and an attorney who had taken ill:  "Because of the holidays and a member of our team who has COVID, we would appreciate an extension until Jan 18 to respond to VDARE's complaint in the NDNY.  Can you please confirm your consent?"  *See* Frisch Declaration, Exhibit A at 2, Exhibit B.

Unbeknownst to VDARE when it consented to the extension on December 21 2022, however, the OAG had already initiated its special proceeding in state court the week before (on December 16, 2022) with a proposed order to show cause.  Frisch Declaration, Exhibit A at 2.  The state court issued the OAG's order to show cause on December 22, 2022, scheduling and conducting oral argument on its motion to compel on January 19, 2023, just two business days before the state court quickly granted the OAG's motion to compel and denying VDARE's application for a stay of the state proceeding based on this first-filed federal action.  Docket No. 15.

The OAG cites no case rewarding a litigant's "race to res judicata" [*see Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)], or permitting a litigant to

7

**AA0640**

cherry-pick from a state's protocols for dueling lawsuits by pressing the state's law on res judicata after violating the state's first-filed rule.  *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 97 (2d Cir. 2023) (courts should ask "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"); *F.T.C. v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004) ("applying res judicata here would likely reward gamesmanship").  Res judicata is designed "to prevent serial forum-shopping" [*Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981)], not reward it.  The OAG would not have rushed to state court to attempt an end-run around this Court's jurisdiction if VDARE's claim of unconstitutional retaliation was truly unfounded.

B.    *The Inference of State Retaliation for VDARE's Exercise*
      *of its Constitutional Rights of Speech and Association*

      1.  *The Attorney General's Targeting of VDARE as Part of What*
          *She Expressly Describes as Her "Oversight" of Speech*

          "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).  "The analysis for a retaliation claim under the First Amendment and under Article I § 8 of the New York State Constitution is the same."  *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 321 (S.D.N.Y. 2019).

          Imposing on "associational rights . . . .  cannot be justified on the ground that the regime is narrowly tailored to investigating charitable wrongdoing."  *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2389 (2021).  Subpoenas which could have "a chilling effect

8

**AA0641**

on its associations with its employees and potential clients" by breaking anonymity are invalid. *See, e.g.*, *Brown v. Socialist Workers '74 Committee* (Ohio), 459 U.S. 87, 96 (1982) ("Even individuals who receive disbursements for 'merely' commercial transactions may be deterred by the public enmity attending publicity, and those seeking to harass may disrupt commercial activities on the basis of expenditure information. Because an individual who enters into a transaction with a minor party purely for commercial reasons lacks any ideological commitment to the party, such an individual may well be deterred from providing services by even a small risk of harassment."); *New York State Senate Republican Campaign Comm. v. Sugarman*, 165 A.D.3d 1536, 1540–41 (3d Dep't 2018) (the subpoena's demands capture materials that are "extraneous to the central purposes of [respondent's] inquiry . . . and/or unnecessarily infringe on petitioners' First Amendment rights of political expression and association") (*quoting Matter of Kalkstein v. DiNapoli*, 228 A.D.2d 28, 30 (3d Dep't 1997) (quotation marks omitted); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of both public and private points of view, particularly controversial ones" and holding that an order requiring an association to produce a membership list interfered with the First Amendment freedom of association); *Evergreen Ass'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 100 (2d Dep't 2017) (applying strict scrutiny where anti-abortion advocacy group served with the Attorney General's investigatory subpoena alleged that subpoena compliance would "have a chilling effect on [the group's] associations with its employees and potential clients" as well as at least one hospital). *See also Ronsenblatt v. Baer,* 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.")

9

**AA0642**

VDARE's Verified Complaint sufficiently states a claim against the OAG for unconstitutional retaliation.  The OAG's targeting of VDARE follows the Attorney General's creation of a "Hate Crimes Unit," which she claimed would "strengthen *oversigh*t, because we see how much hate is being fueled by content on the internet."  Complaint at ¶13 (emphasis added).  She joined in a letter to Facebook demanding that it increase censorship against "hate speech and hate organizations," resulting in at least one other case in federal court apart from this case challenging her pursuit of speech with which she disagrees.  Complaint at ¶14 (attaching complaint in *Volokh v. James*, 1:22-cv-10195 (S.D.N.Y.)).  Just last week, the OAG was enjoined in *Volokh* from enforcing a new law aimed at speech.  *See* Frisch Declaration, Exhibit O at 1 ("Speech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground is hateful; but the proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'") (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017)).

Just before the OAG issued its subpoena to VDARE, the OAG's Special Counsel for Hate Crimes issued separate subpoenas to Meta, the parent company of Facebook, and Facebook Payments.  Complaint at ¶¶16-18.  The OAG thereafter issued a subpoena to VDARE through its Charities Bureau, including a demand for "Copies of the transcripts to each deposition in the litigation between [VDARE founder] Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings."  This demand refers to a lawsuit for libel filed by Brimelow against the New York Times for calling him an "open white nationalist."  Complaint ¶23.

These expressed statements and actions of the OAG, which it does not and cannot

**AA0643**

deny, preceded and are attendant its demand that VDARE produce "the identities of contractors - - including writers who contribute to the website," which it claims, without any legitimate basis, "are precisely the records the OAG must examine in its investigation of VDARE's organizational misconduct."  Frisch Declaration, Exhibit N at 16.  Unless the Appellate Division reverses the state court's stayed order, and absent relief in this Court, an order compelling VDARE to produce this constitutionally protected information will stand.

2.   *VDARE Turned to this Court for Relief While Complying with the OAG's Subpoena Only After the OAG took Positions that Risked Irreparable Constitutional Harm and VDARE's Ability to Conduct Business*

Notwithstanding concerns of VDARE's predecessor counsel that the OAG's subpoena was a pretext aimed at VDARE's right to express positions critical of governmental officials and policy, VDARE's new counsel pledged compliance.  Recognizing the OAG's broad discretion to exercise regulatory oversight of charities registered in New York and issue investigative subpoenas, between September and November 2022 VDARE produced over 6,000 pages of documents to the OAG as part of a rolling production after completing review of documents maintained in hard copy and electronically [Complaint at ¶25] - - the universe of responsive documents so maintained.   Frisch Declaration, Exhibit S at 6.  By December 2022, VDARE had engaged a vendor to secure its 40 gigabytes of emails (the equivalent of millions of pages) for its counsel's review; had identified email custodians to the OAG; and counsel's review for responsive emails was well under way.  Frisch Declaration, Exhibit A at 6, Exhibit S at 6.

In otherwise complying with the OAG's subpoena, VDARE disputed the subpoena's demand for the identities of contractors who did business with VDARE.  The

11

**AA0644**

subject matter of VDARE's principal activity - - commentary about immigration policy of the United States disseminated to the public through its website at www.VDARE.com - - is controversial.  As VDARE demonstrated in state court without dispute, VDARE's lawful speech has led to and continues to cause retaliation against people and entities associated with it and attendant reputational and professional harm.  Contractors providing services essential to VDARE's very existence have refused to continue to do business with VDARE, including venues which have cancelled contracts with VDARE to host conferences, sometimes because of disagreement with VDARE's views, but typically because of their aversion to public protests. These harms to VDARE have made it increasingly difficult for VDARE to find alternative contractors to stay in business.  *See* Frisch Declaration, Exhibit A at 4 (citing *"VDARE responds to conference cancellation at Cheyenne Mountain Resort,"* www.kktv.com, Aug. 15, 2017 ("Cheyenne Mountain Resort [in Colorado] will not be hosting the VDARE Foundation in April of next year. We remain committed to respecting the privacy of guests at the resort."); Kristine Phillips, The Washington Post, Jan 26, 2017 ("Tenaya Lodge, a resort on the border of Yosemite National Park, canceled [VDARE's] booking after receiving complaints about the organization's views."); *"Cancelled Tucson Conference Produces Five-Figure Settlement - - VDARE.com To Announce New Venue Soon!"* www.vdare.com, Mar. 7, 2018.

Likewise, multiple businesses providing services essential to VDARE's continued operations have terminated their relationships with VDARE, including Mailchimp and Constant Contact (providers of email marketing services), Paypal, Amazon, Google Ads, and other lesser-known businesses.  VDARE created an entity called "Happy Penguins LLC" for the sole purpose of paying VDARE's employees so that they could identify a non-controversial

12

**AA0645**

entity (Happy Penguins) - - and not VDARE - - as their employer.  *See* Frisch Decl, Exhibit __

(attached VDARE's Internal Revenue Form 990 for 2019 (identifying "Happy Penguins LLC /

Peter Brimelow" (VDARE's founder) as a service providing leased employees).  Frisch

Declaration, Exhibit A at 4-5.

   The threat to VDARE's rights to free speech and association is ongoing and

presents a genuine risk of irreparable harm.  As recently as January 4, 2023, the Washington Post

published an article entitled, *"A 'hate castle' or welcome neighbor? VDare divides a West*

*Virginia town.  In Berkeley Springs, the purchase of an iconic castle by VDare, which some*

*consider a hate group, has led to angst and ugliness,"* Washington Post, Jan. 4, 2023.

Comments to the article posted at *www.washingtonpost.com* contain multiple instances of public

abuse of and threats to VDARE's neighbors in West Virginia solely because their favorable

opinions of VDARE or its principals were quoted in the article.  Some comments identify those

quoted in the article by name; claim that those with favorable opinions of VDARE's principals

must necessarily be white supremacists; and threatened them with commercial retaliation and not

to "spend money in their town."  One especially vile public comment called out an elderly

proprietor of a local business as a "filthy racist" because she was quoted in the article as

defending VDARE's principals.  Frisch Declaration, Exhibit S at 8.

   The OAG made no genuine effort in state court and refused VDARE's repeated

requests to show why its request for these identities could not be narrowly tailored.  *See*

*Evergreen Assn.,* 153 A.D.3d at 87 (citing *Shelton v. Tucker*, 364 U.S. 478, 488 (1960)) (the

Attorney General's legitimate investigative purpose "cannot be pursued by means that broadly

stifle fundamental personal liberties when the end can be more narrowly achieved," and applying

**AA0646**

strict scrutiny where compliance with the OAG's subpoena would "have a chilling effect on [the group's] associations with its employees and potential clients" as well as at least one hospital); *Sugarman*, 165 A.D.3d at 1540–41 (the subpoena's demands capture materials that are "extraneous to the central purposes of [respondent's] inquiry . . . and/or unnecessarily infringe on petitioners' First Amendment rights of political expression and association") (citing *Evergreen* and quoting *Matter of Kalkstein v. DiNapoli,* 228 A.D.2d 28, 30 (3d Dep't 1997) (quotation marks omitted)). *See also NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of both public and private points of view, particularly controversial ones" and requiring association to produce membership list interfered with First Amendment freedom of association).

Likewise constitutionally offensive - - and irrational - - is the OAG's analogy of VDARE's vendors and content providers to the copyright violator in *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010), who declined to reveal his name after the copyright holder tracked him via his computer's IP address. *See* OAG Memo at 15. The OAG relies on *Arista's* principle that anonymity may not be used to mask violations of the law [*see* Frisch Declaration, Exhibit S at 16], but none of VDARE's vendors nor content providers are alleged to have violated the law nor to have helped VDARE to do so. The OAG's demand that VDARE reveal their identities is more than an overreach: it warrants the inference that the OAG is after VDARE *because* of its speech and is demanding that it reveal identities of its vendors and content providers because either it intends to put it out of business or is otherwise hostile to the rights of those with whom it disagrees.

Before constitutionally-protected disclosures may be compelled, more is

14

**AA0647**

required than a general claim of investigative need. Instead, **anonymous Internet speech is protected by the First Amendment unless a party seeking enforcement of a subpoena first establishes** "a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff" so that a court may then "assess and compare the magnitude of the harms that would be caused" to freedom of speech and the defendant's commercial interests." *See Mirz v. Yelp, Inc.*, 2021 U.S. Dist. LEXIS 160961 (S.D.N.Y. Aug. 25, 2021); *"Anonymous criticism helped make America great: Trump's critic is utilizing a practice employed by many of the Founding Fathers to protect truth from power,"* The Washington Post, Sept. 8, 2018 ("anonymous publication has been an essential feature of American democracy since its beginning. It has long allowed vulnerable voices to participate in public politics and speak truth to power. Indeed, anonymous debate was at the center of the revolutionary politics that led to American independence, the U.S. Constitution and the Bill of Rights, which enshrined the press freedoms that continue to protect anonymous speech today."). Frisch Declaration, Exhibit S at 16-17.

The OAG - - and the state court - - also elected not to address or even mention VDARE's concern about the OAG's apparent disclosure of constitutionally-protected information in another investigation of a conservative not-for-profit entity. On August, 26, 2022, Politico published confidential information about donors to this other entity in the OAG's cross hairs. Thereafter, on October 11, 2022, members of the United States Congress wrote to United States Attorney General Merrick Garland, requesting investigation of apparently undue disclosures provided to or otherwise obtained by the OAG. Frisch Declaration, Exhibit A at 7.

*3. The OAG Rejected VDARE's Proposed Middle Grounds*

15

**AA0648**

Before seeking relief in this Court, VDARE attempted to accommodate the OAG by proposing two middle grounds, both of which were summarily rejected. *First*, VDARE proposed that it disclose the identities of all contractors who might qualify as "related" within the meaning of Section 715 of New York's Not-for-Profit Corporation Law and otherwise produce all information for all contractors about services provided and the amounts paid to each, without prejudice to the OAG's right to revisit the issue. The OAG would presumably have no investigative need for the identities of unrelated contractors near VDARE's headquarters in West Virginia (or elsewhere) earning *de minimis* compensation, or unrelated providers of general services such as website hosting, among other unrelated contractors. While the OAG rejected this middle ground, VDARE nonetheless provided it with an independent auditor's report which identified contractors which might qualify as related. Frisch Declaration, Exhibit A at 5-6, Exhibit S at 10.

*Second*, after the OAG initiated the state court action in response to VDARE's complaint in this Court, VDARE alternatively proposed that it produce a fully unredacted list of contractors to the state court *in camera* (a protocol used in *Matter of Evergreen*, 153 A.D.3d at 87), subject to the OAG's request for disclosure of the identities of any particular unrelated contractor upon a showing of a narrowly-tailored investigative need. This proposed middle ground was also rejected. Frisch Declaration, Exhibit S at 10-11.

4. *The OAG on December 2, 2022, Demanded that VDARE Disclose Protected Information, One Day Before a New Law Targeting "Hateful Conduct" Became Effective*

On December 2, 2022, the OAG demanded that VDARE, within ten days, disclose constitutionally-protected information, reveal previously-redacted information in the

16

**AA0649**

first 6,000 pages of production, complete review of its 40 gigabytes of emails, and produce a complete redaction log for the entirety of its production. Frisch Declaration, Exhibit G. The OAG made her demand *one day before* December 3, 2022, the effective date of New York State's new law - - General Business Law ("G.B.L.") Section 394-ccc - - aimed at "hateful conduct," defined as the use of social media to vilify, humiliate, or incite violence. VDARE does not use social media (or any outlet) to vilify, humiliate, nor incite violence against anyone.

The OAG's demand on December 2, 2022, and its attendant claim of non-compliance despite VDARE's production of all responsive documents maintained in hard copy and electronically and its ongoing review of its emails, was not the first temporal connection between the OAG's professed regulatory oversight of VDARE while signaling another agenda. As described above, the OAG's subpoena to VDARE came on the heels of its subpoenas to Facebook Payments and Meta, which followed the Attorney General's public statements of her resolve to "strengthen oversight" of certain non-violent speech.

It was not until December 12, 2022, when the inference of the OAG's targeting of VDARE for reasons other than regulatory compliance was inescapable, did VDARE initiate this action to protect itself and its rights of speech and association guaranteed by the federal and state constitutions.

5.  *The OAG's Pretextual Claims of "Organizational Misconduct"*

The OAG's claim of "organizational misconduct" is palpably pretextual. For example, a purported impetus for the OAG's investigation was VDARE's purchase in 2020 of a castle-styled property in West Virginia. VDARE did not dispute the OAG's discretion to conduct oversight of a charity's purchase of such a property and instead addressed the issues in

17

**AA0650**

its disclosures and offered to meet immediately with the OAG to discuss it. Frisch Declaration, Exhibit A at 15, Exhibit S at 17. The OAG's rejection of VDARE's offer to begin meeting immediately with VDARE's counsel about the castle undermines its claim that its overriding concern is ongoing misuse or dissipation of charitable assets.

VDARE explained, as otherwise publicly reported, that VDARE acquired the castle to host conferences and thereby eliminate the risk that VDARE's events could only be conducted at the whim of independent venue owners. *See* Frisch Declaration, Exhibit A at 8 (citing Rachel Olding, *"Tourist Town Desperate to Reopen Faces Another Battle"* Daily Beast (May 29, 2020) (noting that VDARE's founder, Peter Brimelow, "said they plan to use the castle for meetings and as a studio - - handy considering at least three hotels have canceled conference contracts on VDARE after learning of the group's views."); *see also* NYSCEF Docket No. 4 (Affirmation of the OAG in support of its motion to compel) at 5 (citing VDARE's public report of purchase of castle for use as a meeting place "without fear of deplatforming").

The OAG questioned the use of the castle itself as housing for the Brimelows and their three children. Among documents produced by VDARE is a lease agreement establishing that the Brimelows paid rent to live in a cottage on the castle grounds beginning in April 2021. Frisch Declaration, Exhibit A at 8, Exhibit H. Before the cottage was habitable, the Brimelows paid rent for them and their three children to live in the castle for a period of months after moving to West Virginia from Connecticut. *See* Frisch Declaration, Exhibit A at 8, Exhibit S at 18. VDARE's counsel proposed a meeting with the OAG as part of a presentation to show that the Brimelows paid rent to live in the castle, used the castle as a residence only until their cottage was made habitable for lease, and that the Brimelows *never*

18

**AA0651**

derived any financial gain from the castle. Frisch Declaration, Exhibit S at 18. The OAG rejected VDARE's proposal.

Similarly, the OAG has insinuated that the Brimelows incorporated two entities, the Berkeley Castle Foundation and BBB, LLC, to camouflage misuse or dissipation of charitable assets, but VDARE produced the bylaws for the Berkeley Castle Foundation and an operating agreement for BBB, LLC, both of which identify VDARE as fully supporting or owning both entities. Frisch Declaration, Exhibits P and Q. The OAG in her submission to state court made no reference to either document. As noted above, the OAG rejected VDARE's invitation to begin meeting with its counsel about the castle immediately, instead pressing her demands for disclosures of VDARE's contractors. The OAG's selective presentation of facts supports VDARE's claim of the OAG's use of regulatory oversight to camouflage the Attorney General's expressed intent to target speech.

Other professed concerns about VDARE also fail to demonstrate any connection between the constitutionally-protected information and any true investigative need. For example, the OAG argued in state court in support of its motion to compel that Lydia Brimelow is identified on filings as VDARE's "Secretary, Treasurer and Publisher," but not identified as Peter Brimelow's wife on VDARE's Internal Revenue Service Form 990. Peter and Lydia Brimelow, however, share the same last name, holding themselves out as husband and wife on the same VDARE website which the OAG reviewed to find information supporting its investigation, and, on information and belief, file their income tax returns jointly as husband and wife with the same Internal Revenue Service with which VDARE files Form 990. Frisch Declaration, Exhibit A at 9, Exhibit S at 19. The OAG asserted no connection between this

19

**AA0652**

purported misstep in completing an IRS form and the identities of VDARE's vendors or content providers.

Similarly, the OAG insinuated that Peter Brimelow's compensation reported in VDARE's 2019 IRS Form 990 was atypically high [NYSCEF Docket No. 3 at 9], but omitted that VDARE's total contributions for 2019 were $4,259,309 [see Frisch Declaration, Exhibit A at 9-10, Exhibit S at 19], a far substantially greater amount than in other years. The OAG also insinuated malfeasance from an auction of furnishings from the castle [NYSCEF Docket No, 4 at 8], but, on information and belief, the entirety of *de minimis* proceeds from the auction inured to VDARE's benefit. Frisch Declaration, Exhibit S at 19-20. None of this innuendo from the OAG justified its demand for the identities of vendors and content providers.

Nor did the mechanics of VDARE's compliance warrant the OAG's demand for constitutionally-protected information. In demanding on December 2, 2022, that VDARE complete its production and identify all contractors without redactions by December 12, 2022, the OAG complained that VDARE had inconsistently applied redactions without a log identifying the bases for the redactions. But the OAG had itself agreed to "a rolling production," which enabled VDARE - - acting in good faith - - to reassess the need for redactions as its review continued. VDARE's counsel expressly told the OAG that it had redacted some information in earlier installments of the rolling production which upon later review had been unnecessary. Frisch Declaration, Exhibit A at 10.

Nor did the OAG's complaint about delays in VDARE's production warrant its demand for constitutionally protected information or any inference of bad faith. By the time of the OAG's letter of December 2, 2022, VDARE had completed production of documents

**AA0653**

maintained in hard copy and electronically and review of 40 gigabytes of emails was well under way. VDARE is literally a mom-and-pop operation, run by parents of three home-schooled children, represented by a solo practitioner with no legal or administrative staff. *See* Frisch Declaration, Exhibit A at 10-11. The types of mechanical issues of compliance about which the OAG complained are typically solvable, especially where the respondent is close to completing compliance.

While the OAG alleged with rhetorical flourish that redactions had been made to almost every category of document produced [NYSCEF Docket No. 3 at 9], the vendors, content providers, and donors whose identities were redacted are inextricable parts of VDARE's business - - as VDARE's counsel had expressly advised the OAG. *See* Frisch Declaration, Exhibit A at 11, Exhibit S at 20-21 (VDARE's counsel emailing the OAG that "the identities of VDARE's donors, content providers, and vendors who provide services to VDARE in its locality or are otherwise indispensable to its work are inextricably intertwined with some of its financial records. For example, some of these entities are identified in bank statements in lists of monthly transactions and associated copies of checks. The work to provide such financial records with redactions is labor-intensive and time-consuming and is ongoing."). Even if a redaction log after the final installment of the rolling production did not the satisfy the OAG's indiscriminate preferred timing, it did not justify the OAG's immediate demand for constitutionally-protected disclosures far afield from any true investigative need.

**AA0654**

<u>Argument</u>

<u>The OAG May Not Defeat this Court's Jurisdiction By Initiating
A State Proceeding After an Aggrieved Litigant Seeks Federal Relief</u>

"[T]he obligation of federal courts to hear cases within their jurisdiction is

'virtually unflagging.'" *Trump v. James*, 2022 WL 1718951 at *23 (N.D.N.Y. May 27, 2022)

(quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d Cir. 2022).  VDARE chose this

federal forum to seek redress for its constitutional grievances - - the first-filed judicial proceeding

arising from the OAG's targeting of VDARE.  None of the OAG's proffered roadblocks prevent

this Court from hearing VDARE's constitutional grievances.

In addition, VDARE is not claiming that the First Amendment prohibits the use of

an administrative subpoena as an investigative tool [*see* OAG Memo at 14], but that the OAG's

conduct constitutes unconstitutional retaliation; in fact, VDARE was complying with the

subpoena before the OAG demanded protected information.  If the OAG's position is correct,

state actors could unconstitutionally retaliate with impunity.  VDARE initiated this case precisely

because the OAG's conduct rebutted the presumption of regularity.

1.    *Abstention Does Not Apply*

The OAG argues that VDARE seeks "to turn a state-law discovery dispute into a

federal case," which interferes with "ongoing state-court litigation."  But the OAG initiated the

state court proceeding *after* VDARE filed its complaint in violation of the state's first-filed rule

and created the purported interference of which it now complains.

Abstention applies to certain pre-existing *proceedings*, not the issuance of a "non-

self executing" state attorney general's investigative subpoena, nor an attorney general's

22

**AA0655**

administrative proceeding to enforce one.  *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 US 350, 370 (1989).  In *Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*, 27 F.4th 886 (3d Cir. 2022), the Third Circuit rejected abstention where the plaintiff alleged that a subpoena was retaliation for Smith & Wesson's exercise of its constitutional rights. The state attorney general was only "investigating possible violations" of the Consumer Fraud Act, had not alleged any substantive wrongdoing, and only alleged violation of a procedural rule related to the production of documents.  The court ruled that abstention was not proper because the "production order was not 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Id* (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81-82 (2013); *see also Google, Inc. v. Hood*, 822 F.3d 212, 223 (5th Cir. 2016) (rejecting abstention of state attorney general's administrative subpoena because "we cannot agree . . . that an executive official's service of a non-self-executing subpoena creates an ongoing state judicial proceeding.").

The Supreme Court's most recent guidance in *Sprint Commc'ns* explains that abstention "extends . . . no further" than three "exceptional circumstances":  (1) "state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. at 73.   None of these circumstances is present here.

In fact, the holding of *Smith and Wesson* was favorably cited by this Court in *Trump v. James.* 2022 WL 1718951 (N.D.N.Y. May 27, 2022).  This Court in *Trump v. James* agreed that, like *Smith and Wesson*, "the New York proceeding is not a civil enforcement

23

**AA0656**

proceeding akin to a criminal prosecution," and implied it would have rejected abstention over the subpoena itself.   It only abstained based "in light of the . . . order holding Mr. Trump in contempt," because civil contempt order fall into the category of "powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments."

"[T]he weight of the First Amendment issues involved counsels against abstaining." *Hartford Courant Co. v. Pellegrino*, 380 F. 3d 83, 100 (2d Cir. 2004).  "Abstention would serve no purpose because a state cannot have a legitimate interest in discouraging the exercise of constitutional rights." *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994).  *See also Felmeister v. Office of Attorney Ethics*, 856 F. 2d 529, 534 (3d Cir. 1988) ("[W]e have serious doubts as to whether Burford abstention ever would be appropriate where substantial first amendment issues are raised.").

Abstention would serve no purpose because a state cannot have a legitimate interest in discouraging the exercise of constitutional rights.*"  Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994); see also *Felmeister v. Office of Attorney Ethics*, 856 F. 2d 529, 534 (3d Cir. 1988) ("[W]e have serious doubts as to whether Burford abstention ever would be appropriate where substantial first amendment issues are raised."); *Hartford Courant Co. v. Pellegrino*, 380 F. 3d 83, 100 (2d Cir. 2004)  ("the weight of the First Amendment issues involved counsels against abstaining.").

2.  *A Litigant May Not Press New York's Law on Res Judicata*
    *While Violating New York's First-Filed Rule*

In opposing a stay of the state court proceeding pending resolution of VDARE's federal case against the OAG or at least pending decision on its motion to dismiss this case), the

OAG did not dispute that VDARE initiated this case before the OAG initiated its special proceeding in state court.  New York's well-settled "first-filed" rule requires that the "court which has first taken jurisdiction" - - this Court - - "is the one in which the matter should be determined and it is a violation of the rules of comity to interfere."  *Ace Prop. & Cas. Ins. Co. v. Fed.-Mogul Corp.*, 55 A.D.3d at 480; *accord L-3 Commc'ns Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 7 (1st Dep't 2007) (same); *accord Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 95 (1st Dep't 2013) (same); C.P.L.R. 3211(a)(4).

      New York's first-filed rule and res judicata exist in tandem.  They are both part of New York's protocols for dueling lawsuits between the same parties.  "The rule favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience, is supported by reasons just as valid when applies to the situation where one suit *precedes the other by a day* as they are in a case where a year intervenes between the suits."  *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), abrogated on unrelated grounds *by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (internal citations and quotations omitted) (emphasis added).

      Instead of acknowledging that VDARE had a right to choose its forum under settled law in New York, or otherwise consenting to a stay at least to accommodate a decision by this Court on the OAG's motion to dismiss this case, the OAG analogized VDARE to a commercial plaintiff precipitously seeking tactical advantage by choosing a forum inconvenient to an aggrieved commercial opponent and argued that it was improper for VDARE to seek federal relief after the OAG threatened enforcement on December 2, 2022.  Frisch Declaration, Exhibit S at 13.  The analogy pressed by the OAG General was misplaced for at

AA0658

least three independent reasons.

   *First*, unlike a commercial plaintiff who rushes to an inconvenient forum as soon as its opponent signals an intent to litigate, the OAG's resort to litigation is inherent in virtually every subpoena she issues. *See* Docket 12-13 (the Subpoena issued to VDARE in June 2022 included the standard warning that the OAG General can seek enforcement for disobedience). The OAG's analogy to commercial litigation would serve to bar every person to whom it issues a subpoena from ever seeking federal redress in every case no matter how irreparable the federal constitutional harm.

   *Second*, apart from the subpoena's inclusion of the standard warning of its right to seek enforcement, the OAG began expressly threatening VDARE with a motion to compel as early as September 8, 2022, before its new counsel had even begun to undertake VDARE's compliance with the subpoena - - three months before December 10, 2022, when VDARE filed its federal case. *See* Frisch Declaration, Exhibit S at 13-14, Exhibit K ("We are prepared to offer reasonable extensions of time reflecting your obligations, but without any production, we are not prepared to continue to extending the deadline and will seek judicial relief ourselves to move this process forward.").

   *Third*, unlike a commercial litigant who chooses a geographically inconvenient forum to vindicate its interests in a financial transaction, VDARE chose federal court to vindicate its federal constitutional rights - - and did so here in Albany where the OAG maintains an executive office.

   In urging application of res judicata, the OAG glosses over the doctrine's application to "previous" actions [*see, e.g., Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285

(2d Cir. 2000)] and the effect of "prior" actions [*Gherardi v. State of New York*, 161 Fed. Appx. 60, 61 (2d Cir. 2005)] in the cases which it cites. Docket 15 at 2-3. The OAG does so because VDARE's action came first, and the use of the words "previous" and "prior" to describe actions in New York must be interpreted in the context of New York's first-filed rule. The OAG interprets the standard as if it means to encourage litigants to race to initiate new litigation to quickly obtain the first ruling. The OAG cites no case condoning this type of gamesmanship.

But even if New York's first-filed rule can be so readily evaded, a judgment first in time does not control where the policy favoring preclusion of the second action is clearly and convincingly overcome, as here, where it fails "to yield a coherent disposition of the controversy" or sustains the apparent invalidity of a personal liberty. Restatement (Second) of Judgments § 26 (1982). So here. The state court barely mentioned the substantial claim of unconstitutional retaliation made here nor require the OAG to show what legitimate investigative need could conceivably justify constitutionally-protected disclosures without at least some narrow tailoring or specific articulated need. The state court inexplicably concluded that VDARE raised constitutional objections only on behalf of its donors [Docket 15 at page 10 of 14], but VDARE repeatedly raised objections to disclosure of contractors and content providers as violations of the constitutional rights of speech and association [*see, e.g.*, Frisch Declaration, Exhibits C and D], which the state court failed to address in any adequate, coherent, or reasoned way.

3.     *Sovereign Immunity Does Not Bar Relief*

Sovereign immunity is inapplicable here because VDARE seeks prospective relief for an ongoing violation of federal law. See *Verizon Maryland Inc. v. Public Serv. Comm. of Maryland,* 535 U.S. 635 (2002) (*quoting Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261,

27

**AA0660**

296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment); *Clark v. DiNapoli,* 510 Fed. Appx. 49, 51 (2d Cir. 2013).

        An exception to immunity allows a federal court to issue an injunction against a state official in her official capacity who is acting contrary to federal law. *Ex parte Young,* 209 U.S. 123 (1908); *New York Health and Hospitals Corporation et al. v. Perales,* 50 F.3d 129 (2d Cir.1995). This exception is utilized "when there is a specific conflict between the federal mandate and the state plan or practice that a federal right is implicated," *Doe v. Pfrommer,* 148 F.3d 73, 80-81 (2d Cir.1998), and is authorized to "vindicate the supremacy of [federal] law." *Ward v. Thomas,* 207 F.3d 114, 119 (2d Cir.2000). Under the doctrine of *Ex parte Young,* a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that [her] complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." *Clark v. DiNapoli,* 510 Fed. Appx. at 51 (2d Cir.2013) (internal quotation marks and citation omitted). The Supreme Court has held that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Maryland Inc. v. Public Serv. Comm. of Maryland,* 535 U.S. at 635. "[D]eclaratory relief, while equitable in nature, is barred by the Eleventh Amendment 'when it would serve to declare only past actions in violation of federal law; retroactive declaratory relief cannot be properly characterized as prospective.' " *Neroni v. Coccoma,* 2014 WL 2532482 at *9 (N.D.N.Y. June 5, 2014) (quoting *Kent v. New York,* 2012 WL 6024998 at *7 (N.D.N.Y. Dec. 4, 2012) (internal quotation

**AA0661**

marks and citation omitted)).

    4.    *Standard of Review*

       "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).  The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

       To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc*., 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See *EEOC v. Port Auth*., 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

       VDARE has amply satisfied these standards.

CONCLUSION

For these reasons, the Attorney General's motion to dismiss should be denied.

Dated:  February 22, 2023

/s/ Andrew J. Frisch
Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
afrisch@andrewfrisch.com

Attorney for Plaintiff

30

**AA0663**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

VDARE FOUNDATION, INC.,

                     **Plaintiff,**

        **v.**                             **1:22-CV-1337**
                                              **(FJS/CFH)**

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                     **Defendant.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **THE LAW OFFICES OF ANDREW J. FRISCH, PLLC**<br>40 Fulton Street, 17th Floor<br>New York, New York 10038<br>Attorneys for Plaintiff | **ANDREW J. FRISCH, ESQ.** |
| **OFFICES OF FREDERICK C. KELLY, III**<br>One Harriman Square<br>P.O. Box 60<br>Goshen, New York 10924<br>Attorneys for Plaintiff | **FREDERICK C. KELLY, ESQ.** |
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**<br>28 Liberty Street – 19th Floor<br>New York, New York 10005<br>Attorneys for Defendant | **RICHARD SAWYER, AAG**<br>**YAEL FUCHS, AAG**<br>**CATHERINE SUVARI, AAG** |

**SCULLIN, Senior Judge**

### ORDER

On March 21, 2023, Plaintiff filed a motion asking the Court to issue an Order that

Defendant show cause why the Court should not issue a Temporary Restraining Order and/or a

preliminary injunction restraining Defendant from enforcing an Order of the State Supreme

Court compelling Plaintiff to comply with Defendant's investigative subpoena. *See generally* Dkt. No. 29. After conferring with counsel, at which time counsel for Defendant agreed not to further enforce its investigative subpoena until this Court entered its decision regarding Plaintiff's motion for a preliminary injunction, the Court hereby

**ORDERS** that Plaintiff's motion for a temporary restraining order, *see* Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that Defendant shall file her opposition to Plaintiff's motion for a preliminary injunction, *see* Dkt. No. 29, on or before **April 10, 2023**; and the Court further

**ORDERS** that Plaintiff shall file its reply to Defendant's opposition to its motion for a preliminary injunction on or before **April 17, 2023**; and the Court further

**ORDERS** that the Court shall decide the motion based on the parties' submissions.

**IT IS SO ORDERED.**

Dated: March 27, 2023
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

**AA0665**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VDARE FOUNDATION, INC.,

                Plaintiff,

      -vs-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                Defendant.

_____

**22-cv-1337 (FJS/CFH)**

## DEFENDANT'S OPPOSITION
## TO PLAINTIFF'S EMERGENCY MOTION
## FOR A PRELIMINARY INJUNCTION

**LETITIA JAMES**
New York State Attorney General
28 Liberty St. New York, NY 10005

By:
      JAMES SHEEHAN
      Assistant Attorney General
      NDNY Attorney Bar Roll # 516406
      YAEL FUCHS
      Assistant Attorney General
      NDNY Attorney Bar Roll # 702160
      RICK SAWYER*
      Special Counsel, Civil Rights Bureau

      *Appearing pro hac vice

**AA0666**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ................................................................ 2

STANDARD OF REVIEW .................................................................................................. 4

    I.         VDARE cannot show irreparable harm ............................................................ 5

    II.       VDARE will not prevail on the merits. ............................................................ 8

    III.     The public interest favors denial of a preliminary injunction where a state court has already compelled compliance with an ongoing investigation. ................................................ 12

CONCLUSION ................................................................................................................. 14

AA0667

# TABLE OF AUTHORITIES

*Allah v. Latona*, No. 6:16-cv-6596 EAW, 2019 WL 13194187 (W.D.N.Y. Apr. 11, 2019).......... 5

*Americans for Prosperity v. Bonta*, 141 S. Ct. 2373 (2021) ........................................................ 13

*Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87 (1982).................................... 6, 7

*Chandler v. Graham*, No. 9:16-cv-0348 (DNH/ATB), 2016 WL 4411407 (N.D.N.Y. Aug. 19, 2016) ..................................................................................................................................... 5

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985)............................................................. 7

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001)............................................................. 9

*Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017).................................. 13

*Exxon Mobil Corp. v. Healey*, 28 F.4th 383 (2d Cir. 2022).................................................. 12, 13

*Forte v. Kanekia Am. Corp.*, 110 A.D.2d 81 (2d Dep't 1985) .................................................... 9

*Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7 (2d Cir. 1985) ......................................... 8

*Mohamad v. Rajoub*, 767 F. App'x 91 (2d Cir. 2019)........................................................... 9, 13

*Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17-cv-8028 (JMF), 2018 WL 2089342 (S.D.N.Y. May 3, 2018)......................................................................................................................... 8

*Monserrate v. New York State Senate*, 599 F.3d 148 (2d Cir. 2010)........................................... 4

*Mullins v. City of New York*, 307 F. App'x 585 (2d Cir. 2009).................................................... 5

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ............................................................................... 10

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................................ 4

*Purdie v. Supervisor, Admin. Mail Room, Auburn Corr. Facility*, No. 9:09-cv-951 (FJS/ATB), 2010 WL 148639 (N.D.N.Y. Jan. 13, 2010)......................................................................... 4, 5

*SAM Party of N.Y. v. Kosinski*, 987 F.3d 267 (2d Cir. 2021) ................................................... 12

*Scarbrough v. Evans*, No. 9:09-cv-0850 (NAM) (DEP), 2010 WL 1608950 (N.D.N.Y. Apr. 20, 2010) ..................................................................................................................................... 5

*Sciangula v. Montegut*, 165 A.D.3d 1188 (2d Dep't 2018)........................................................ 13

**AA0668**

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110 (2d Cir. 1995) ........................................... 9

*Smith & Wesson Brands, Inc. v. Grewal*, No. 20-cv-19047 (EP) (ESK), 2022 WL 17959579
   (D.N.J. Dec. 27, 2022) ............................................................................................. 12

*Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886 (3d Cir. 2022)............. 11

*The Plaza PH2001 LLC v. Plaza Residential Owner LP*, 98 A.D.3d 89 (1st Dep't 2012) ........... 9

*Trump v. James*, No. 1:21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022)
   ..................................................................................................................... passim

*U.S. Bank, N.A. v. Deshuk-Flores*, 163 A.D.3d 603 (2d Dep't 2018) ........................................ 13

*Virag v. Hynes*, 54 N.Y.2d 437 (1981) ............................................................................ 13

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) ............................................................................ 4

AA0669

**INTRODUCTION**

Plaintiff VDARE Foundation has asked this Court for the extraordinary remedy of a preliminary injunction to halt a state-court-ordered document production after *twice* seeking and failing to obtain that same relief from the state courts. To meet its burden of proof, VDARE was required to develop a factual record by testimony or sworn affidavits. But VDARE has not presented *any* evidence beyond a single irrelevant attorney affirmation concerning public filings attached to his motion.

VDARE has therefore failed to meet its burden of showing irreparable harm. Already, VDARE has produced thousands of pages of documents revealing some of the very information it now claims will lead to injury. Yet, despite that history, VDARE has not come forward with a single affidavit or document showing that subpoena compliance has caused the harm it describes or that compliance with the state-court production order will cause future injury. VDARE delayed for months before filing this preliminary injunction motion and failed to move for emergency relief even after several rounds of briefing in state and federal court. As this long delay indicates, VDARE cannot establish any imminent, irreparable harm that would require a preliminary injunction. Both VDARE's failure to meet its evidentiary burden and its delay are independently fatal to its claim of irreparable harm.

VDARE's motion also fails to meet the other two requirements for a preliminary injunction—likelihood of success on the merits and advancing the public interest. VDARE's First Amendment retaliation lawsuit is meritless, precluded by res judicata, and foreclosed by VDARE's own admissions that the OAG's investigation was justified. And the public interest will be served by allowing the OAG to conclude its investigation into VDARE's possible misuse of charitable assets and by respecting the principles of res judicata.

**AA0670**

## BACKGROUND AND PROCEDURAL HISTORY

On June 23, 2022, the OAG served an investigative subpoena on VDARE, a New York-chartered nonprofit, as part of an investigation into VDARE's possible misuse of charitable assets. Fuchs Aff. at ¶ 7. The OAG's investigation began after public reporting revealed that VDARE spent $1.4 million in charitable funds on a medieval-style castle, provided the castle as a residence to its chairman Peter Brimelow and his wife, Lydia Brimelow (also a director), and conveyed the castle property to two shell corporations controlled by the Brimelows. *Id.* at ¶ 4, 6. The OAG then discovered further irregularities in VDARE's publicly reported financial information and inaccuracies and delinquencies in public filings with the OAG's Charities Bureau. *Id.* at 5, 6. Such conduct, if confirmed, would constitute serious violations of New York law. *Id.* at 4–6.

VDARE initially refused to comply with the OAG's subpoena. By September 2022, however, it agreed to a rolling production of responsive documents. Fuchs Aff., Ex. C. By December 2022, VDARE had produced approximately 6,000 pages of haphazardly redacted documents revealing the identities of many of its vendors. Fuchs Aff. at ¶ 9. After numerous delays, VDARE agreed to finish its production by December 12, 2022. Fuchs Aff., Ex. D. The OAG requested that VDARE keep its promise by completing production by that date and asked that VDARE produce a redaction log accounting for its unexplained redactions. Fuchs Aff., Ex. E. The OAG warned that VDARE's failure to meet those obligations would cause the OAG to petition New York Supreme Court for an order compelling subpoena compliance. *Id.*

On December 12, 2022, rather than complete its subpoena obligations, VDARE filed a complaint in this Court. D.E. 1 (Compl.). Despite pleading a claim for a preliminary injunction, it took no steps to move for emergency protection. VDARE admitted in its complaint that it had

2

been partially complying with the Attorney General's subpoena since August 2022, producing 6,000 pages of material, and asserted its "desire to make as robust a production as possible." *Id.* at ¶¶ 25, 27.

On December 16, four days after VDARE sued, the Attorney General petitioned New York Supreme Court to compel VDARE's compliance with the subpoena. Fuchs Aff., Ex. F. VDARE again took no action to seek preliminary relief in this Court, a fact it confirmed when questioned by Justice Sabrina Kraus at oral argument. Fuchs Aff., Ex. G at 24:12–21. On January 23, 2023, Justice Kraus denied VDARE's request to stay or dismiss the state action and ruled in the Attorney General's favor on all issues, directing VDARE to complete production of all outstanding material by February 24, 2023. Fuchs Aff., Ex. H. The New York Supreme Court proposed that VDARE agree to a protective order governing subpoena disclosure, and the OAG drafted and filed a proposed order. *Id.* at 10; Fuchs Aff., Ex. H. VDARE did not enter into the protective order and took no action to seek a preliminary injunction in this Court. Fuchs Aff. at ¶ 15.

On February 7, 2023, VDARE applied to the Appellate Division, First Department, for an emergency stay pending appeal. Fuchs Aff., Ex. J. The OAG opposed, arguing that VDARE had failed to put forward any evidence of irreparable harm and that it was unlikely to succeed on the merits. Fuchs Aff., Ex. K. The OAG emphasized that a stay would prolong the OAG's already delayed investigation by months, to the detriment of the public interest in expeditious investigations and in ensuring compliance with New York law. *Id.* at 36–37. On March 9, the Appellate Division denied VDARE's stay request. Fuchs Aff., Ex. L. Since then, VDARE has taken no steps to perfect its appeal and is in violation of the Supreme Court order compelling production by February 24. Fuchs Aff., Ex. G at 10.

3

**AA0672**

While the state court petition remained pending, on January 18, 2023, the OAG moved to dismiss VDARE's complaint in this Court. D.E. 12. VDARE opposed the motion on February 22, once again taking no steps to obtain preliminary relief from this Court. On March 8, 2023, one day before the Appellate Division denied VDARE's state stay motion, the OAG filed its Reply in this Court identifying a new, separate basis for dismissal of VDARE's federal claims: the state court already considered and rejected the same constitutional arguments VDARE raises here, requiring dismissal on res judicata grounds. *See* D.E. 27. Less than a year ago, this Court dismissed nearly identical First Amendment claims on just those grounds *See Trump v. James*, No. 1:21-cv-1352 (BKS/CFH), 2022 WL 1718951, at *16–19 (N.D.N.Y. May 27, 2022).

Ignoring two separate rulings in the state action that have examined and rejected its claim of irreparable constitutional harm, on March 21, VDARE asked this Court for a preliminary injunction sanctioning its ongoing defiance of a New York Supreme Court compliance order.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010). The movant bears the burden of establishing that (a) it is likely to succeed on the merits; (b) it is likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in its favor; and (d) an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The final two factors—the balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The movant must meet its burden with evidence—mere allegations "are not sufficient to entitle [the movant] to preliminary injunctive relief." *Purdie v. Supervisor, Admin. Mail Room, Auburn Corr. Facility*, No. 9:09-cv-951 (FJS/ATB), 2010 WL 148639, at *4 (N.D.N.Y. Jan. 13, 2010).

I. **VDARE cannot show irreparable harm.**

VDARE has not put forth *any* evidence that complying with the OAG's subpoena will cause irreparable harm. In connection with this motion, it has not submitted a single affidavit, document, or anything beyond bare allegations to support such an argument. That failure alone justifies denying this motion. *See, e.g.*, *Purdie*, 2010 WL 148639, at *4; *Allah v. Latona*, No. 6:16-cv-6596 EAW, 2019 WL 13194187, at *4 (W.D.N.Y. Apr. 11, 2019) ("Because the Court finds that Plaintiff has not supported his request for preliminary injunctive relief with proper evidence, his motion for a preliminary injunction is denied."); *Chandler v. Graham*, No. 9:16-cv-0348 (DNH/ATB), 2016 WL 4411407, at *2 (N.D.N.Y. Aug. 19, 2016) (denying preliminary injunction where plaintiff "failed to substantiate any allegations of irreparable harm with evidence"); *Scarbrough v. Evans*, No. 9:09-cv-0850 (NAM) (DEP), 2010 WL 1608950, at *3 (N.D.N.Y. Apr. 20, 2010) (denying preliminary injunction because "Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief").

It is not sufficient, as VDARE assumes, to rely on mere allegations of a First Amendment injury to show irreparable harm. *See* D.E. 30 at 9. The Second Circuit has held that, while a presumption of harm may be acceptable in *some* First Amendment suits, such a presumption is proper only where "a rule or regulation *directly* limits speech," such as by placing an impermissible prior restraint on a speaker. *Mullins v. City of New York*, 307 F. App'x 585, 587 (2d Cir. 2009) (cleaned up). By contrast, "where a plaintiff alleges injury from an action that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury." *Id.* (cleaned up). VDARE has not alleged prior restraint on its speech *or* associational

**AA0674**

rights—it must therefore come forward with evidence proving a connection between the OAG's subpoena and any purported harm.

VDARE has failed to meet that burden. Citing the "public enmity attending publicity" found by the Supreme Court in *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 96 (1982), VDARE's motion claims that its vendors will face a "risk of harassment" if it complies with the OAG's subpoena. D.E. 30 at 8. But VDARE does not present any evidence sufficient to meet the threshold in *Brown* of establishing a "reasonable probability" that disclosing vendors' identities "will subject them to threats, harassment, or reprisals from either Government officials or third parties." *Brown*, 459 U.S. at 93, 101–02. VDARE's motion cites two isolated news articles as examples of retribution against its contractors, D.E. 30 at 8, but neither example comes close to proving that VDARE suffered any injury due to government reprisal or public animosity toward VDARE's First Amendment associational rights.[1] As VDARE has admitted elsewhere, many contractors refuse VDARE service based on "disagreement with VDARE's views"—i.e., the contractors' *own* exercise of First Amendment rights—not

---

[1] In VDARE's first example, D.E. 30 at 9 n.2, the New York Times fired Razib Khan as a regular contributor based on concerns about his "full body of work," not his affiliation with VDARE, and even invited him to continue submitting Op-Ed pieces notwithstanding that alleged affiliation. *See* Gawker, The New York Times *Terminates Contract With Razib Kahn* (March 19, 2015), https://tktk.gawker.com/the-new-york-times-terminates-contract-with-razib-khan-1692542060 (last visited April 10, 2023). In VDARE's second example, D.E. 30 at 9 n.3, a hotel cancelled VDARE's conference to protect the "safety and security of [its] guests and employees." *See* Tucson Local Media, *White nationalist group has conference cancelled in Oro Valley* (Oct. 24, 2017), https://www.tucsonlocalmedia.com/business/article_611806ca-b8e6-11e7-a7d2-870df31cc290.html (last visited April 10, 2023). The hotel's decision came two months after a similar gathering in Charlottesville turned deadly. *See, e.g.*, New York Times, *Man charged after white nationalist rally in Charlottesville ends in violence* (Aug. 12, 2017), https://www.nytimes.com/2017/08/12/us/charlottesville-protest-white-nationalist.html (last visited April 10, 2023). Neither example establishes public animosity toward VDARE as the cause for any harm.

6

**AA0675**

any fear of associating with the organization. Fuchs Aff., Ex. M at ¶ 9.

VDARE also fails to explain how subpoena compliance will even cause the kind of publicity it fears. The OAG seeks certain vendor data as part of its lawful investigation into VDARE's compliance with New York's laws governing charitable assets—not to publicize that information in the kind of public database decried in *Brown*. *See Brown*, 459 U.S. at 90 (describing Ohio statute's requirement of keeping names and addresses of political party contributors and vendors "open to public inspection for at least six years"). VDARE itself admits that gathering such information can be appropriate for an investigation like the one the OAG is conducting. *See* D.E. 30 at 11. Any residual fear that vendor identities will be improperly disclosed can be resolved by the agreed protective order the OAG has proposed in state court. Fuchs Aff., Ex. I. VDARE's claim to First Amendment injury is therefore wholly speculative.

Nor has VDARE asserted or established that its partial subpoena compliance has caused any injury. Since September 2022, VDARE has produced over 6,000 pages of haphazardly redacted documents for the OAG's review. Those documents include the names and addresses of numerous vendors, and yet plaintiffs have made no record of any harm to any of those entities. Fuchs Aff. at ¶ 9. Had VDARE any real concern about irreparable harm, it should have sought preliminary relief well before disclosing such information.

VDARE's delay in seeking a preliminary injunction independently justifies denying this motion. Because a preliminary injunction is predicated on the need for immediate court intervention, the Second Circuit has repeatedly held that "delay alone may justify denial." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *see*

**AA0676**

*also Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) ("Lack of diligence, standing alone, may…preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm."); *Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17-cv-8028 (JMF), 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) (observing "courts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months" and collecting cases (cleaned up)).

The OAG served its subpoena in June 2022. If its concerns were real, VDARE should have sought emergency relief as soon as service was complete, but instead it partially complied with the subpoena and disclosed 6,000 pages of documents, including many vendor identities. It could have moved for this Court's protection on December 12, 2022, when it filed this action, or four days later, when the OAG petitioned state court to compel compliance. Instead, VDARE took its chances in state court, where it twice lost its bid for a preliminary injunction. Its belated effort to ask this Court to revisit those decisions, after sitting on its rights for months, cannot justify emergency intervention.

## II. VDARE will not prevail on the merits.

As described in the OAG's fully briefed motion to dismiss, VDARE's only legal claim—First Amendment retaliation—is definitively precluded by res judicata, foreclosed by VDARE's own admissions, and substantively baseless. *See* D.E. 12-1; D.E. 27 at 6–10. VDARE has no response to those arguments and cannot show a likelihood of success on the merits.

The state court has already ruled against VDARE on each of the dispositive issues in this case. For VDARE to prevail on its retaliation claim, it must show that unlawful First Amendment retaliation was the but-for cause of the OAG's subpoena. *See, e.g.*,

**AA0677**

*Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (holding that once good cause

for an investigation has been established "an inquiry into the underlying motive…need

not be undertaken"); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995)

(similar). The state court, however, has already found that VDARE has *not* established

any First Amendment injury from the subpoena and that the OAG's investigation is fully

justified by good cause. Fuchs Aff., Ex. H at 5–9. This Court must accept those rulings

under the doctrine of res judicata, and VDARE's claim necessarily fails. *See Trump*, 2022

WL 1718951, at *16–19.[2]

VDARE now argues that res judicata should not apply for equitable reasons

because VDARE distrusts the impartiality of the state court. *See* D.E. 30 at 10, 12–13.

But the Second Circuit has rejected such arguments, holding, "There is simply no

principle of law or equity which sanctions the rejection by a federal court of the salutary

principle of res judicata." *Mohamad v. Rajoub*, 767 F. App'x 91, 93 (2d Cir. 2019)

(cleaned up). VDARE also asserts that only actions filed earlier in time can be entitled to

res judicata effect in parallel actions, *see* D.E. 30 at 11, but that is not the law. *See, e.g.*,

*Forte v. Kanekia Am. Corp.*, 110 A.D.2d 81, 86 (2d Dep't 1985) (holding that for the

purposes of res judicata, "the effective date of a final judgment is the date of its rendition,

without regard to the date of the commencement of the action in which it is rendered or

the action in which it is to be given effect"); Restatement (Second) Judgments § 14, Cmt.

A (observing that a judgment has res judicata effect even when "the action in which it is

---

[2] The fact that the Supreme Court's order is currently on appeal does not affect its finality for res judicata purposes. *See, e.g.*, *The Plaza PH2001 LLC v. Plaza Residential Owner LP*, 98 A.D.3d 89, 98 (1st Dep't 2012) (holding "the pending appeal did not alter the applicability of the doctrine of res judicata").

rendered was commenced later than the pending action").

VDARE's own admissions independently defeat its retaliation claim. As VDARE has itself conceded, the OAG's investigation into VDARE's use of charitable funds was a justifiable use of its subpoena authority. D.E. 26 at 4, 11, 17–18. VDARE disagrees on the scope of the OAG's investigation, *see* D.E. 30 at 11 ("VDARE has not claimed that its constitutional concerns about content providers and contractors could never yield to investigatory oversight, just that more is required"), but its fundamental agreement that the OAG can and should investigate the type of misuse of charitable funds at issue here underscore the reasonableness of the OAG's investigation. Such admissions independently defeat the but-for causation requirement for VDARE's First Amendment retaliation claim. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

Finally, on the merits, the self-interested transactions between VDARE and its principals—including the transfer of a $1.4 million medieval-style castle to two unrelated corporations controlled by those principals, and the use of a shell LLC controlled by the principals to conceal certain transactions—fully justifies the OAG's investigation under its jurisdiction to protect charitable assets. *See* D.E. 12-1 at 19–21; D.E. 27 at 7–8. As the state court found, the OAG's subpoena was tailored to "demand the type of material that will permit [the OAG] to determine whether [VDARE] complied with the law, including documents necessary to determine "whether there has been any diversion of charitable assets." Fuchs Aff., Ex. H at 6–7. Uncovering the identities of individuals who have received payments from VDARE goes to the heart of the OAG's investigation. VDARE's directors Peter and Lydia Brimelow control at least three separate entities that have received questionable assets transfers, and the identities of VDARE's payees are critical

10

**AA0679**

information for determining whether VDARE employs adequate financial controls to prevent waste and self-dealing. At an organization where board members and former board members are also known contributors (and all three current board members come from the same family), the OAG is also entitled to probe the identities of paid contributors to assess board independence and related-party transactions. Fuchs. Aff., Ex. A at ¶¶ 19–20. By contrast, VDARE may redact the names of unpaid, volunteer contributors whose identities don't raise such concerns.

VDARE ignores all of these arguments in its request for emergency relief. VDARE's motion barely mentions its only legal claim—First Amendment retaliation— and never discusses its elements. Its argument for success on the merits focuses instead on arguments the state court has already rejected concerning the scope of the OAG's subpoena. The state court explicitly found the subpoena's scope was justified and caused VDARE no harm. Fuchs Aff., Ex. H at 7–9. In addition to being unrelated to VDARE's retaliation cause of action, those arguments are beyond this Court's review under the doctrine of res judicata. *See Trump*, 2022 WL 1718951, at 16–19.

The remainder of VDARE's legal arguments concern the red herring of whether the Court may abstain under the *Younger* abstention doctrine. *See* D.E. 30 at 5–7 (citing *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886 (3d Cir. 2022)). The OAG has never argued that *Younger* abstention should apply to this case. *See* D.E. 12-1 at 13–14 (OAG arguing for *Burford* abstention in its motion to dismiss). But to weigh the likelihood of success on the merits for this preliminary injunction motion, the Court need not determine whether *any* kind of abstention applies. VDARE's First Amendment retaliation claim is both barred by res judicata—because the state court

**AA0680**

already ruled on every dispositive issue—and meritless—because the OAG's

investigation was fully justified. In *Trump*, this Court held that the res judicata effect of a

nearly identical subpoena compliance order, standing alone, was an independent and

sufficient grounds for dismissing a First Amendment lawsuit like this one. *See Trump*,

2022 WL 1718951, at 14, 16–17. And in *Smith & Wesson*, the case VDARE most heavily

relies upon, the District of New Jersey ultimately dismissed the plaintiff's First

Amendment challenge to a state-court subpoena compliance order on the same res

judicata grounds—even after the Third Circuit determined *Younger* abstention did not

apply. *Smith & Wesson Brands, Inc. v. Grewal*, No. 20-cv-19047 (EP) (ESK), 2022 WL

17959579, at *5–9 (D.N.J. Dec. 27, 2022); *see also Exxon Mobil Corp. v. Healey*, 28

F.4th 383, 388–89, 398–402 (2d Cir. 2022) (reaching the same conclusion under

Massachusetts law). As those cases make clear, the question of abstention is irrelevant to

the issues the Court must now address.

III. **The public interest favors denial of a preliminary injunction where a state court has already compelled compliance with an ongoing investigation.**

Finally, VDARE cannot establish that an injunction would be in the public

interest. Although protecting First Amendment rights is a paramount public interest, that

is "no help" to a plaintiff like VDARE "that is not likely to succeed on its First

Amendment claim." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021)

(internal citation and quotation marks omitted).

By contrast, the OAG's governmental interests favor denying a preliminary

injunction. A preliminary injunction will needlessly prolong the OAG's investigation—

already delayed by VDARE's dilatory conduct in responding to the subpoena. Delayed

resolution of the OAG's investigation into the propriety of VDARE's use of its charitable

assets risks harming the public interest in protecting such assets—especially in light of

VDARE's continued solicitations in New York and elsewhere. *See, e.g.*, *Virag v. Hynes*,

54 N.Y.2d 437, 443 (1981) (observing that unmeritorious court delays to lawful

investigations "can lead not only to the loss of evidence and the fading of witnesses'

memories, but also may completely frustrate the course of legitimate investigation").

Separately, respecting the doctrine of res judicata will advance the public interest.

*See, e.g.*, *Mohamad*, 767 F. App'x at 93 ("The doctrine of res judicata serves vital public

interests beyond any individual judge's ad hoc determination of the equities in a

particular case.").[3] VDARE baldly asserts that the state court "inexplicably deferred to

the OAG" and failed to evaluate VDARE's First Amendment arguments. D.E. 30 at 12.

But that is simply not true—the state court explicitly considered and rejected VDARE's

arguments in a well-reasoned decision citing the very cases VDARE now claims it

ignored. *See* Fuchs Aff., Ex. H at 5, 8–9 (citing *Evergreen Ass'n, Inc. v. Schneiderman*,

153 A.D.3d 87 (2d Dep't 2017), and *Americans for Prosperity v. Bonta*, 141 S. Ct. 2373

(2021)). It is well established that state courts are just as competent as federal courts to

rule on constitutional questions. *See, e.g.*, *Trump*, 2022 WL 1718951, at *11, 19. By

---

[3] VDARE claims that the OAG has taken inconsistent positions on whether New York's
first-filed rule or res judicata applies here, but the OAG's position has been fully consistent with
state law. New York law instructs courts to disregard the first-filed rule when the forms of relief
available in each action are incompatible, as they were here (where this Court lacked jurisdiction
to compel compliance with a state subpoena). *See, e.g.*, *U.S. Bank, N.A. v. Deshuk-Flores*, 163
A.D.3d 603, 604–05 (2d Dep't 2018). By contrast, res judicata applies even where the two
causes of action "seek different relief." *Sciangula v. Montegut*, 165 A.D.3d 1188, 1190 (2d Dep't
2018) (cleaned up); *see also Exxon Mobil*, 28 F.4th at 401 (reaching the same conclusion under
Massachusetts law). Here, there is no real dispute about whether the claims overlap for the
purposes of res judicata—VDARE has admitted that its "Federal Complaint is based on many of
the same underlying issues raised by OAG's special proceeding in [state court]." D.E. 12-7
(Frisch Aff.) at 12; *see also Trump*, 2022 WL 1718951, at *19.

giving the state court's decision the deference required by federal and state law, this

Court will advance the public interest in finality and advance comity between New

York's federal and state courts.

### CONCLUSION

For the reasons described above, VDARE's motion for emergency injunctive relief

should be denied.

Dated: April 10, 2023

LETITIA JAMES
Attorney General for the State of New York
*Attorney for State Defendants*
<u>s/ Rick Sawyer</u>
Rick Sawyer
Special Counsel, Civil Rights Bureau

14

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VDARE FOUNDATION, INC.,

                     Plaintiff,

       -vs-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                  Defendant.

_____

**22-cv-1337 (FJS/CFH)**

**DECLARATION OF
YAEL FUCHS
IN OPPOSITION
TO PLAINTIFF'S
PRELIMINARY
INJUNCTION
MOTION**

YAEL FUCHS, a citizen of the United States and a resident of the State of New York,

affirms under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.       I am an Assistant Attorney General in the Office of Letitia James, Attorney

General of the State of New York, who appears on behalf of the People of the State of New York

in this special proceeding. I serve as a Co-Section Chief of the Enforcement Section of the

Charities Bureau.

2.       I submit this declaration in support of the Office of the Attorney General's

opposition to Plaintiff's motion for a preliminary injunction in the above-captioned case.

3.       I am familiar with the facts and circumstances set forth in this affirmation, which

are based upon my personal knowledge and information contained in the files of the Office of the

Attorney General ("OAG").

4.       In 2022, the OAG's Charities Bureau began an investigation of Plaintiff VDARE

Foundation, a New York-chartered non-profit, based in part on public reporting that VDARE had

spent $1.4 million of charitable funds on a medieval-style castle in West Virginia; provided that

castle as a residence to its chairman, Peter Brimelow, his wife and fellow-director, Lydia

**AA0684**

Brimelow, and their family; and conveyed the castle property to two West Virginia corporations controlled by the Brimelows. These transactions raised serious concerns about self-dealing and board independence and, if confirmed, could constitute serious violations of New York law.

5.      Further review of VDARE's publicly filed documents showed further financial irregularities, possible false reporting, and violations of reporting requirements under New York law governing charitable non-profits. Such conduct, if confirmed, would constitute serious violations of New York law.

6.      A more complete description of the basis for the OAG's VDARE investigation is included in my December 16, 2022 affidavit, a true and correct copy of which is attached as **Exhibit A.**

7.      On June 23, 2022, the OAG served an investigative subpoena on VDARE as part of its investigation, a true and correct copy of which is attached as **Exhibit B**.

8.      A true and correct copy of VDARE counsel's September 19, 2022 letter to the OAG is attached as **Exhibit C.**

9.      By December 2022, VDARE had produced approximately 6,000 pages of documents in response to the OAG's subpoena. Those documents were heavily redacted, and the redactions were haphazard. Although VDARE represented that it was redacting the names of its vendors, numerous documents included unredacted vendor names.

10.      A true and correct copy of VDARE's November 28, 2022 letter to the OAG is attached as **Exhibit D.**

11.      A true and correct copy of the OAG's letter to VDARE counsel on December 2, 2022 is attached as **Exhibit E.**

AA0685

12.     A true and correct copy of the petition filed by the Attorney General on the docket of *People of the State of New York v. VDARE*, Index No. 453196/20022, Dkt. No. 1 (Sup. Ct. N.Y. Cnty.) is attached as **Exhibit F**.

13.     A true and correct copy of the January 19, 2023 transcript of oral argument before Justice Sabrina Kraus concerning the OAG's petition and VDARE's motion to dismiss is attached as **Exhibit G.**

14.     A true and correct copy of the January 23, 2023 order denying VDARE's motion to dismiss and granting the OAG's request to compel subpoena compliance is attached as **Exhibit H.**

15.     Although the OAG drafted a proposed protective order to govern VDARE's subpoena production, VDARE never agreed to the order.

16.     A true and correct copy of the proposed protective order filed by the OAG in New York Supreme Court on January 25, 2023 is attached as **Exhibit I.**

17.     A true and correct copy of VDARE's February 7, 2023 application for a stay pending appeal is attached as **Exhibit J.**

18.     A true and correct copy of the OAG's opposition to VDARE's stay request is attached as **Exhibit K.**

19.     A true and correct copy of the order of the Appellate Division, First Department, denying VDARE's stay request is attached as **Exhibit L.**

20.     A true and correct copy of the affirmation filed by VDARE's counsel on the docket of *People of the State of New York v. VDARE*, Index No. 453196/20022, Dkt. No. 37 (Sup. Ct. N.Y. Cnty.) is attached as **Exhibit M**.

AA0686

Dated: New York, New York
April 10, 2023

LETITIA JAMES
Attorney General of the State of New York

By:

_____
Yael Fuchs
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8391
yael.fuchs@ag.ny.gov

4

**AA0687**

**EXHIBIT A**

AA0688

Case 1:22-cv-01337-JLS-JJM Document 33-13 filed 04/10/23 Page 97 of 18

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

PEOPLE OF THE STATE OF NEW YORK, by          Index No. _____
LETITIA JAMES, Attorney General of the
State of New York,

                                Petitioner,

       -against-

VDARE FOUNDATION, INC.,

                      Respondent.

**AFFIRMATION OF GOOD FAITH AND IN SUPPORT OF THE ATTORNEY GENERAL'S ORDER TO SHOW CAUSE TO COMPEL COMPLIANCE WITH AN INVESTIGATIVE SUBPOENA**

------------------------------------------------------------------x

       YAEL FUCHS, an attorney duly admitted to the Bar of this State, affirms under penalties of perjury pursuant to Civil Practice Law and Rules § 2106 as follows:

       1.      I am an Assistant Attorney General in the Office of Letitia James, Attorney General of the State of New York, who appears on behalf of the People of the State of New York in this special proceeding.

       2.      I submit this Affirmation in support of the Office of the Attorney General's application by order to show cause seeking expedited relief in connection with an investigative subpoena *duces tecum* (the "Subpoena") issued by the Attorney General in connection with an investigation of Respondent VDARE Foundation, Inc. ("VDARE").

       3.      I am familiar with the facts and circumstances set forth in this affirmation, which are based upon my personal knowledge and information contained in the files of the Office of the Attorney General ("OAG").

       4.      As set forth below and in the accompanying Verified Petition and Memorandum of Law, in connection with a lawful law enforcement investigation, the Attorney General has issued an investigative subpoena and endeavored to resolve the issue of VDARE's compliance

Case 1:22-cv-01337-JLR-OTW Document 23-13 Filed 04/10/23 Page 87 of 18

with that subpoena and has been unable to reach a resolution.  The OAG now seeks an order

pursuant to CPLR § 2308(b) to enforce its non-judicial subpoena without further delay.

     5.     As set forth in greater detail in the accompanying Memorandum of Law, the

Attorney General is vested with expansive oversight authority of not-for-profit entities, their

representations to donors and potential donors, and their use of charitable assets under the New

York Not-for-Profit Corporation Law, the Estates, Powers and Trusts Law and the Executive

Law.

     6.     Respondent VDARE is a not-for-profit corporation organized under the laws of

the State of New York.  VDARE was previously known as the Lexington Research Institute,

Limited, and incorporated in New York under that name in 1999.  A true and correct copy of

VDARE's Certificate of Incorporation is attached hereto as Exhibit A.

     7.     VDARE's Certificate of Incorporation provides that:

     ***

5. Notwithstanding any other provisions of these articles, the Corporation is organized
exclusively for charitable, educational, and literary purposes and intends at all times to
qualify as exempt from federal income tax under section 501(c)(3) of the United States
Internal Revenue Code, as now in effect or as subsequently amended. Accordingly, the
Corporation shall not be operated for pecuniary profit or financial gain, no part of the net
earnings of the Corporation shall inure to the benefit of any private individual, no
substantial part of the Corporation's activities shall consist of carrying on propaganda or
otherwise attempting to influence legislation, and the Corporation shall not participate or
intervene in any political campaign on behalf of (or in opposition to) any candidate for
public office.

6. The Corporation may pay reasonable compensation to any person for services rendered
to the Corporation in furtherance of its lawful purposes.

Ex. A at 1.

     8.     In 2000, VDARE, then still known as the Lexington Research Institute, Limited,

applied for recognition as a tax-exempt organization by the Internal Revenue Service (IRS).  A

Case 1:22-cv-01837-JLR-OTW Document 33-13 Filed 04/10/23 Page 97 of 18

true and correct copy of VDARE's Form 1023 Application for Recognition of Exemption is attached hereto as Exhibit B.

9.     VDARE was recognized as tax-exempt (under I.R.C. section 501(c)(3)) by the IRS in or about May 2001.  A true and correct copy of an IRS confirmation letter addressed to the Lexington Research Institute Limited dated August 9, 2005 is attached hereto as Exhibit C.

10.     In 2009, VDARE registered as a charity with the Charities Bureau of the Office of the Attorney General, under both the Estates, Powers and Trusts Law ("EPTL") and under the Executive Law.  A true and correct copy of VDARE's CHAR 410 initial registration form is attached hereto as Exhibit D.

11.     VDARE filed its initial registration with the Charities Bureau in 2009, despite having begun operations in New York in 2000.  New York law requires that charities register with the Charities Bureau prior to any solicitation in New York, Exec. Law § 172, and within six months "after any property held by [a trustee] or any income therefrom is required to be applied to charitable purposes," EPTL § 8-1.4(d).

12.     In its CHAR 410, VDARE described its purpose as "creat[ing] and manag[ing] internet publications." Ex. D at 3.

13.     As a charity operating and soliciting in New York, VDARE is required to file annually a CHAR500 Registration Form.  The CHAR500 must be signed by two officers and asks for self-reporting regarding certain basic information, including the organization's contact information, the number and identity of board members, and information relating to fundraising.

14.     The CHAR 500 also requires that organizations file and certify a copy of their annual IRS Form 990.  According to the IRS, the Form 990 "is the IRS' primary tool for gathering information about tax-exempt organizations, educating organizations about tax law

Case 1:22-cv-01837-JLR-JW   Document 35-13   Filed 04/10/23   Page 57 of 18

requirements and promoting compliance. Organizations also use the Form 990 to share information with the public about their programs." https://www.irs.gov/charities-non-profits/form-990-resources-and-tools (last visited December 14, 2022).

15.     As part of its required filings with the IRS and the Charities Bureau, VDARE, since its belated registration, files an IRS Form 990 and certifies to its accuracy each year. According to VDARE's IRS Form 990, the organization's mission is to "Create and manage internet publication." True and correct copies of VDARE's Form 990 for 2018-2020 are attached hereto as Exhibits E-G.

16.     As of the date of this Affirmation, VDARE has not filed its 2020 or 2021 CHAR500 Forms, which would include the IRS Form 990 as an attachment, and is delinquent in its required annual registration with the Charities Bureau.

17.     VDARE reports on its Form 990 that its website is WWW.VDARE.COM.  Exs. E-G.

18.     According to VDARE's Form 1023 Application filed with the IRS and the Charities Bureau, Peter Brimelow ("Brimelow") is the "Director/CEO/Chairman" of VDARE. Ex. B at 3.  Maggie Brimelow is listed as Secretary/Treasurer on VDARE's Form 1023 Application. *Id.*  Upon information and belief, Maggie Brimelow was Peter Brimelow's wife prior to her death in 2004.

19.     For certain years, Lydia Brimelow is listed as "Secretary, Treasurer and Publisher" of VDARE on VDARE's Char500 filed with the Charities Bureau.  Upon information and belief, Lydia Brimelow is Peter Brimelow's current wife.  This relationship is not listed on Schedule L or Schedule O of the 2020 IRS Form 990, as is required by law.  Lydia Brimelow is listed as a director of VDARE in its IRS Form 990 for 2020, but not in other years.  John

Brimelow is Peter Brimelow's brother and is listed as a director of VDARE in its Form 990 for
2018-2020. *See* Exs. E-G.

20.      As set forth in its IRS 990 for 2020, the most recent filing that is publicly
available, VDARE's board and management for 2020 consisted entirely of members of the
Brimelow family: Peter, Lydia, and John.  Ex. G.

21.      VDARE and its current and past board members are the subject of an ongoing
investigation by the Attorney General concerning potential financial improprieties, including
unlawful related party transactions between VDARE and affiliated entities, officers and board
members, excessive compensation, private inurement, and violations of statutory and common
law governance standards.

22.      In February 2020, VDARE was publicly reported to have bought a historic,
9,300-square foot castle in a West Virginia resort town for $1.4 million.  *See* Rick Steelhammer,
Berkeley Springs Castle Becomes Conference Site for VDARE, an Organization to 'Keep
America American,' Charleston Gazette-Mail (Mar. 7, 2020), available at
https://www.wvgazettemail.com/news/berkeley-springs-castle-becomes-conference-site-for-
vdare-an-organization-to-keep-america-american/article_170131e9-db7c-500f-8a57-
91e1fcc1ad66.html (last visited December 14, 2022).

23.      In a February 2020 public announcement on VDARE.com, VDARE described the
castle as a meeting space "where we can meet and share ideas without fear of deplatforming."
*See* Lydia Brimelow, Lydia Brimelow: We Got the Keys to the Castle!, VDARE.COM (Feb. 26,
2020), https://vdare.com/articles/lydia-brimelow-we-got-the-keys-to-the-castle (last visited
December 14, 2022).

AA0693

24.     Months later, Brimelow continued to represent to donors that the castle was a

necessity—stating in a solicitation that VDARE "had to buy the Berkeley Springs Castle." *See*

"VDARE.com Editor Peter Brimelow: Please Give By Credit Card BEFORE MIDNIGHT—

While You Still Can!", https://vdare.com/articles/vdare-com-editor-peter-brimelow-please-give-

by-credit-card-before-midnight-while-you-still-can (last visited December 14, 2022).

25.     Upon information and belief, Peter Brimelow, Lydia Brimelow, and their three

children moved into the Berkeley Springs Castle and have been using it as their primary family

residence since March 2020.

26.     On VDARE.com, the Brimelows have posted photos of the family celebrating

holidays at the castle such as the 4th of July (https://vdare.com/posts/the-brimelow-family-

wishes-you-a-happy-independence-day (last visited December 14, 2022)), and Christmas Eve

(https://vdare.com/articles/peter-brimelow-merry-christmas-from-vdare-com-f3d0cb33-af41-

4d90-93b9-c82cd46c5950 (last visited December 14, 2022)).

27.     In a post dated December 4, 2020, a VDARE.com contributor reported visiting

the castle and noted that "Peter and Lydia Brimelow have moved in and spend most of their time

there with their [children]….". *See* https://vdare.com/radio-derb/castling-with-vdare-com-

senate-visa-giveaway-covid-hypocrisy-and-students-cancel-black-etc (last visited December 14,

2022).

28.     Public filings indicate that, in December 2020, VDARE conveyed the entirety of

the Berkeley Springs Castle property in two separate transactions to two West Virginia

corporations that had been incorporated by Lydia Brimelow five months earlier.  VDARE

conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a

putative non-profit corporation. VDARE conveyed the remaining land, consisting of eight

Case 1:22-cv-01837-PJS-DEH Document 33-13 Filed 04/10/23 Page 7 of 18

parcels, to BBB, LLC, a for-profit corporation. Transfer of charitable assets to a for-profit entity without fair consideration is a violation of both New York and federal law. True and correct copies of these deeds are attached as Exhibit H and I.

29.     This transaction is not reported on the VDARE 2020 IRS Form 990, as required by law, nor was it submitted to the Charities Bureau for approval, as required by Sections 510 and 511 of the Not-for-Profit Corporation Law.

30.     According to records on file with the West Virginia Secretary of State, Lydia Brimelow incorporated BCF as a West Virginia domiciled nonprofit on July 21, 2020. A copy of the Business Organization Detail page for BCF from the West Virginia Secretary of State's website is attached as Exhibit J.

31.     BCF was recognized as a tax-exempt organization by the IRS by notice dated January 20, 2022. A copy of BCF's tax exemption recognition notice is attached hereto as Exhibit K.

32.     Using the tagline "When nothing but a castle will do," BCF offers to rent the castle as an event space through its website. According to that website, BCF began taking event reservations in summer 2020.



AA0695

https://www.berkeleyspringscastle.com/contact.html (last visited December 14, 2022).

33.    According to records on file with the West Virginia Secretary of State, Lydia

Brimelow incorporated BBB, LLC as a West Virginia domiciled for-profit corporation on July

21, 2020.  Lydia Brimelow is listed as BBB, LLC's organizer and manager.  The organization's

only listed business purpose is "Real Estate and Rental and Leasing—Real Estate—Lessors of

Real Estate." A copy of the Business Organization Detail page from the West Virginia Secretary

of state is attached as Exhibit L.

34.    Announcements posted to VDARE.com in October 2021 indicate that the castle's

"First Public Event" was an "Auction Preview Party" showcasing items from the castle that the

Brimelows were selling in a private auction, including swords, a riding helmet, and a butter

churn.  *See* "Come To Our First Public Event! Castle Auction: Saturday, October 16th" *at*

https://vdare.com/posts/come-to-our-first-public-event-castle-auction-saturday-october-16th

("VDARE.com bought the Berkeley Castle furnished, and we're retaining many of the beautiful

pieces for Castle use. But there are just so many we can't use them all! So, in partnership with

local auction house J Lawyer, we're offering the rest up to our friends and supporters.") (last

visited December 14, 2022) *and* "Downsizing For The Historical Berkeley Springs Castle" at

https://www.jlawyerauctions.com/auctions/detail/bw70268 (last visited December 14, 2022).

35.    Following the public reporting of the castle purchase, personnel in the Office of

the Attorney General reviewed VDARE's Form 990s and other publicly available documents.

The OAG identified several areas of concern which may constitute violations of VDARE's

bylaws and/or New York law.  For example, and without limitation:

    a.    According to its IRS Form 990 for 2019, VDARE raised over $4.2 million

       in contributions and grants in 2019, which is more than eight times its

publicly reported 2018 revenue and more than ten times its publicly
reported 2017 revenue. VDARE did not file a report by an independent
auditor for that year, as required for organizations soliciting in New York
with revenue of over $1,000,000. VDARE claimed an exemption from the
requirement on the grounds that it raised less than the requisite $25,000
from New York donors.

b.   According to VDARE's disclosures in Schedule J of the 990, VDARE
does not appear to have any process in place for determining Brimelow's
salary.

c.   According to VDARE's IRS Form 990 for 2019, Brimelow's reported
compensation for 2019 nearly doubled from 2018, to $345,364 — an
amount equivalent to nearly half of VDARE's total program service
budget for the year.

d.   According to Schedule L of VDARE's 990, rather than pay Brimelow
directly, VDARE pays Brimelow's salary through an independent
contractor, Happy Penguins LLC, which VDARE reports is owned by
Brimelow. Under this arrangement, Peter Brimelow, VDARE's chief
executive, is technically a Happy Penguins "leased employee" rather than
a VDARE employee.

e.   In 2019, VDARE paid Happy Penguins more than Peter Brimelow's
annual salary. Although Brimelow's reported salary for 2019 was
$345,364, VDARE also reported paying Happy Penguins LLC $411,003.
In 2019, VDARE also listed the Brimelows' residential home address in

9

Case 1:22-cv-01337-DLC Document 25-1 Filed 04/10/23 Page 247 of 18

Litchfield, Connecticut as its corporate address while reporting $36,142 in "office expenses" and $8,664 in "occupancy expenses" on its Form 990 — additional compensation to the Brimelows that was not properly reported. These financial arrangements may violate express conflict provisions in the N-PCL and VDARE's bylaws.

f.  Lydia Brimelow's position in the organization is inconsistently and incompletely reported. To the extent that she serves as an officer or director of VDARE, that family relationship, which should be disclosed, is not reported on VDARE's Form 990.

g.  The VDARE Form 990 for 2020 contains additional statements which raise significant issues about compliance with governing law and use of charitable assets. For example, in response to Form 990, Part VI, Line 11b: Form 990 Review Process Schedule O represents that "No review was or will be conducted." The IRS 990 at Section VI, question 12 represents that there is a conflict of interest policy (as required by New York Not-for-Profit Law) but the explanation of that policy is nowhere addressed on Schedule O, as required by the IRS. Schedule J, which requires disclosure of certain benefits to officers, leaves blank the question whether the officer receives a housing allowance or residence for personal use. Schedule L, which requires disclosures of transactions with interested persons, makes no mention either of Lydia Brimelow's salary from VDARE or of the transaction providing a residence for use by the Brimelows.

10

Case 1:22-cv-01337-EJS Document 25-1 Filed 04/10/23 Page 227 of 18

36.     In April 2020, Facebook suspended VDARE's Facebook account based on Facebook's determination that VDARE engaged in "coordinated inauthentic behavior" by creating a network of "fake accounts to create fictitious personas…drive traffic to off-platform sites, and evade enforcement." According to Facebook's analysis, VDARE's network consisted of "19 Pages, 15 Facebook accounts, and 1 Group" accounting for 207,700 followers. Facebook determined that VDARE's network spent "around $114,000" buying ads to further its inauthentic behavior.  If true, this could constitute a waste of charitable assets and breach of the Brimelows' fiduciary duties as VDARE officers.  VDARE sued Facebook, alleging defamation, when Facebook published a copy of its 2020 report, and VDARE attached a copy of the report to its federal complaint.  A true and correct copy of the April 2020 "Coordinated Inauthentic Behavior Report," as filed by VDARE, is attached as Exhibit M.

37.     On June 24, 2022, the Attorney General personally served a subpoena *duces tecum* on VDARE by delivery to VDARE's designated agent for service, the Secretary of State of New York, in compliance with CPLR 311 and N-PCL § 306.  A true and correct copy of the Subpoena is attached hereto as Exhibit N.

38.     On June 24, 2022, the Attorney General mailed a copy of the Subpoena, by U.S. Mail Certified Return Receipt to the address identified in VDARE's most recent annual filing with the Charities Bureau (276 Cacapon Road, Berkeley Springs, West Virginia 25411), together with a copy of the Affidavit of Service prepared by OAG Investigator Donald C. Anselment and a cover letter confirming the nature of the document. A true and correct copy of the Attorney General's June 24, 2022 letter is attached hereto as Exhibit O.

<u>Efforts to Obtain Subpoena Compliance Since July 2022</u>

39.     VDARE responded to receipt of the Attorney General's Subpoena by immediately insisting that the Subpoena be withdrawn as unlawful:  on July 2, 2022, VDARE's then-counsel Frederick Kelly confirmed receipt of the Subpoena, demanded that the Subpoena be withdrawn in its entirety, and requested information regarding, *inter alia*, the subject matter of the investigation and the relevance of the documents sought in the Subpoena.  True and correct copies of Kelly's July 2, 2022 email and its attachments are attached hereto as Exhibit P.

40.     On July 18, 2022, counsel from the Attorney General's Office met telephonically with Kelly.  During that call, Kelly asked the OAG to provide information regarding the nature of the investigation and expressed concerns regarding certain Subpoena requests, including requests that he believed were overbroad or called for production of documents protected by the attorney-client privilege.  OAG counsel responded to Kelly's questions, with a reservation of rights, and identified concerns regarding: (1) the purchase and use of the castle; (2) benefits conferred upon the Brimelows; (3) whether the VDARE board is properly overseeing the finances of the organization; and (4) whether the organization is using charitable assets in accordance with its mission.  The OAG also stated that to the extent counsel believed that production would invade attorney-client privilege, the Subpoena did not seek privileged communications and expressly instructed counsel to withhold such documents and provide a privilege log.

41.     On July 20, 2022, Kelly sent a second letter to the OAG, by which VDARE renewed its request that the Subpoena be withdrawn and set forth individual objections to many of the Subpoena's individual requests on the grounds of overbreadth, vagueness, attorney-client

privilege, and that its requests sought the identities of VDARE readers, writers, and donors. A true and correct copy of VDARE's July 20, 2022 letter is attached hereto as Exhibit Q.

42.    On July 27, 2022, the Attorney General responded by email to the objections raised in VDARE's July 20 letter. With a reservation of rights, counsel for the OAG attempted to address VDARE's concerns by clarifying individual Subpoena requests and agreeing that the names of certain individuals, including VDARE contributors and volunteer supporters, could be redacted from otherwise responsive records. A true and correct copy of the OAG email dated July 27, 2022 is attached hereto as Exhibit R.

43.    In August 2022, VDARE retained substitute counsel — attorney Andrew Frisch — and indicated through that new counsel that it intended to comply with the Subpoena. Frisch contacted the OAG by phone and letter to identify himself as VDARE's new representative in connection with the Subpoena response and he requested additional time to collect and review potentially responsive material for production. In a letter on September 19, 2022, Frisch wrote: "I do not stand by my predecessor counsel's position that the Subpoena be withdrawn." He noted that there existed "a significant volume of electronically-stored and hard copy documents that need to be reviewed" and he confirmed that he had prepared the first of what he expected would be multiple rolling production deliveries. He also confirmed that he had redacted certain information in his first production delivery but had not "had ample time to fully evaluate bases underlying the redactions." A true and correct copy of Frisch's letter dated September 19, 2022 is attached hereto as Exhibit S.

44.    VDARE made its first production of responsive material to the OAG on September 19, 2022, nearly two months after the Subpoena's originally stated deadline for completion of all production. The September 19 production contained 27 documents produced

without Bates numbers and bearing unmarked redactions.  No log was provided with the

production to identify or explain how and why the documents had been redacted.

45.     The OAG requested a redaction log for VDARE's production immediately upon

receiving the September 19 delivery and has repeated that request in the three months since.  In

an email on September 30, 2022, the OAG expressly insisted that productions be delivered in the

form called for by the Subpoena and that all redactions be accompanied by "a log identifying the

Bates range for any pages on which redactions appear, the legal basis for those redaction, and a

general description of the category of information being withheld."  The OAG's September 30

email explained that, without a redaction log, the Office had no means to "reliably identify what

has been deleted from the material [VDARE was] producing and on what legal basis."  A true a

correct copy of the OAG's September 30, 2022 email is attached as Exhibit T.

46.     In twelve weeks since its first delivery, VDARE has produced approximately

6,000 pages of material from its hard copy records that it identifies as responsive to the

Subpoena.  It has redacted that material without offering any legal basis for individual redactions

or any explanation of how otherwise responsive material has been identified and segregated for

redaction.  The redactions are extensive, and they have been applied across almost every

category of document produced, including VDARE board meeting minutes, VDARE bank

statements, internal VDARE accounting ledgers, VDARE credit card statements, invoices sent to

VDARE, financial records for the limited liability company (Happy Penguins LLC) from which

VDARE has historically leased Peter Brimelow's services, and bank statements to accounts held

personally by Peter and Lydia Brimelow.  In one instance, VDARE appears to have redacted a

magazine subscription renewal form addressed to Peter Brimelow that it also marked as

Confidential.

Case 1:25-cv-01337-DLC Document 26-1 Filed 04/10/25 Page 245 of 18

47.     On October 31, 2022, Lydia Brimelow certified to the OAG that, with limited exceptions, VDARE's production from its hard copy files was complete.  A true and correct copy of Brimelow's October 31 certification is attached as Exhibit U.  As certified, VDARE's hard copy production contains no responsive material from the following categories of record called for by the Subpoena:  (i) solicitation materials sent by VDARE to potential contributors; (ii) documents related to the setting or adjusting VDARE's officer compensation; (iii) documents concerning past or future VDARE events located at the Berkeley Springs Castle property; (iv) documents concerning Director and Officer liability insurance held by VDARE for the benefit of its Board; (v) documents sufficient to demonstrate who controls VDARE's financial accounts; and (vi) communications between VDARE and its accountants.

48.     On October 31, 2022, VDARE also identified 22 unique email accounts that together contained approximately 40 gigabytes of potentially responsive electronically-stored information.  VDARE counsel stated on October 31 that review of those accounts would be completed on or before November 21, 2022.  A true and correct copy of the October 31, 2022 letter to the OAG from VDARE counsel is attached, without its attached list of email account names, as Exhibit V.

49.     VDARE did not produce any material from its electronic files as promised on November 21.  In letters dated November 21 and November 28, attached as Exhibits W and X, VDARE counsel reported to the OAG that its email review was taking longer than expected.  In its November 28 letter, VDARE counsel identified December 12, 2022 as a new deadline — set without input or consent from the OAG — by which it would complete an email production.  No such production was ever provided.

50.    The OAG has met with VDARE counsel, in person and by phone, on multiple

occasions in the months since VDARE made its first September 2022 production.  VDARE

counsel has assured the OAG throughout that he was working diligently to comply with the

Subpoena.  The OAG has expressed concern over production delay in each of its contacts with

VDARE counsel and has objected repeatedly to VDARE's continuing production of redacted

material without any identified explanation of or legal basis for redaction.

51.    On December 2, 2022, counsel for the OAG summarized its concerns with the

pace and scope of VDARE's production to date in a letter addressed to VDARE counsel.  A true

and correct copy of the December 2, 2022 letter is attached as Exhibit Y.

52.    As of the date of this filing, the Subpoena's deadline for production has been

extended no fewer than six times — most recently to December 12, 2022.  In total, these

adjournments extended the Subpoena's stated response deadline by approximately twenty weeks.

53.    As of the date of this filing, VDARE has not produced any material from the 22

individual VDARE email accounts that it identified on October 31 as containing potentially

responsive material.

54.    As of the date of this filing, VDARE has refused to produce any log identifying

the material in its production that it has redacted and the legal basis on which it is withholding

the redacted information.

55.    On December 12, 2022, the same date that VDARE counsel independently

selected for complete production of responsive VDARE email, VDARE filed a lawsuit in the

U.S. District Court for the Northern District of New York seeking to have the Attorney General's

investigative Subpoena declared unconstitutional.  A true and correct copy of VDARE's

Case 1:22-cv-01337-PGG-OTW Document 65-1 Filed 04/10/23 Page 28 of 18

December 12, 2022 Verified Complaint is attached as Exhibit Z.  The OAG believes that

VDARE's claims in that action are without merit and will seek to dismiss the complaint.

56.     In accordance with CPLR Rule 2217(b), I affirm that the Attorney General has

not previously requested the relief sought by this application.


Dated: New York, New York
        December 16, 2022


LETITIA JAMES
Attorney General of the State of New York

By: _____

_____
Yael Fuchs
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8391
yael.fuchs@ag.ny.gov

17

**EXHIBIT B**



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
28 LIBERTY STREET
NEW YORK, NEW YORK 10005

## *SUBPOENA DUCES TECUM*
## THE PEOPLE OF THE STATE OF NEW YORK

To:     Custodian of Records
        VDARE Foundation, Inc.
        447 South Street
        Litchfield, CT 06759

**YOU ARE HEREBY COMMANDED**, pursuant to the laws of the State of New York and all business and excuses being laid aside, to produce to the Office of the Attorney General of the State of New York, Letitia James, 28 Liberty Street, New York, New York 10005, in accordance with the Instructions and Definitions below, any and all documents requested in the attached Schedule that are in Your possession, custody or control, including documents in the possession, custody and control of entities that You own or control in whole or in part. Your production of documents in response to this subpoena should be addressed to the attention of Catherine Suvari, Assistant Attorney General, Charities Bureau, and may be submitted by mail or electronic mail provided it is received by **July 25, 2022**, or any agreed upon adjourned date thereafter.

**PLEASE TAKE NOTICE** that the Attorney General deems the documents and testimony requested by this subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**PLEASE TAKE FURTHER NOTICE** that disobedience of this subpoena by failing to deliver the documents and information requested in the attached schedule on the date, time and place stated above or any agreed adjourned date and time may subject VDARE Foundation, Inc. ("VDARE") to prosecution under New York law.

**PLEASE TAKE FURTHER NOTICE** that VDARE shall immediately implement a litigation hold preserving all documents relating to the subject matter of this subpoena, including all documents concerning the specific documents demanded herein. VDARE shall also issue document preservation letters for all documents relating to the subject matter of this subpoena to the following individuals: Peter Brimelow, Lydia Brimelow, John Brimelow, Scott McConnell, John O'Sullivan, Joseph (Joe) Fallon, John Wall, T.M. Byxbee Company, P.C., and Labyrinth, Inc. (Additional subpoenas may follow.)

**WITNESS, the Honorable Letitia James**, Attorney General of the State of New York, this 23rd day of June, 2022.

By: /s/ *Catherine Suvari*

Catherine Suvari
Assistant Attorney General, Charities Bureau
Catherine.Suvari@ag.ny.gov
(212) 416-6172

**AA0708**

# SCHEDULE

## A. Instructions

1. Please produce the Documents described in Section C of this schedule, in the accordance with the Instructions (Section A), Definitions (Section B) and Format (Section D) described below.

2. Time Frame. Except as otherwise noted, this subpoena applies to all Documents in effect, created, recorded, compiled, transmitted or received from **January 1, 2016 through the present** (the "Relevant Period").

3. Continuing Obligation. The obligation to produce Documents pursuant to this Subpoena is a continuing one. Responsive Documents located any time after a response is due or submitted shall be promptly produced at the place and in the manner specified herein.

4. All Documents shall be produced either as kept in the ordinary course of business or with an accompanying cover letter that includes a description of the Documents being produced and their contents, the source from which the Documents have been produced, and the number(s) of the request(s) in Section C to which each Document produced is responsive.

5. Documents No Longer in Your Possession. If any Document requested was formerly in Your possession, custody or control but is no longer available or no longer exists, submit a statement in writing and under oath that: (i) describes in detail the nature of the Document and its contents; (ii) identifies the person who prepared the Document; (iii) identifies all persons who have seen or had possession of the Document; (iv) specifies the date on which the Document was prepared, transmitted or received; (v) specifies the date on which the Document became unavailable; (vi) specifies the reason why the Document is unavailable, including whether it has been misplaced, lost, destroyed or transferred, and, if it has been destroyed or transferred, specifies the conditions of and reasons for such destruction or transfer and the persons who requested and performed the destruction or transfer; and (vii) identifies all persons with knowledge of any portion of the contents of the Document.

6. Privilege. If any Document requested is withheld on the ground of privilege or other legal doctrine, submit with the production a statement in writing and under oath (e.g., a privilege log) that provides, for each Document withheld: (i) a description of the nature of the Document and its contents; (ii) the date of the Document; (iii) the Document's authors and recipients; and (iv) the legal ground for withholding it from production. If the legal ground is attorney-client privilege, please also indicate the names of the attorneys involved in the Document and the nature of their involvement (e.g., as authors). Such statement (or log) shall accompany each production. Further, for each Document withheld pursuant to this paragraph, the relevant production shall include placeholder pages equivalent in number to the page-length of the withheld Document.

7. Format for Production. Unless otherwise specified and agreed to by the Office of the Attorney General, responsive Documents shall be produced in electronic form in

accordance with the instructions and criteria set forth in Section D and Attachment 1 below.

8. <u>Certification.</u> In order for Your response to this subpoena to be complete, it must include a completed version of the attached Certification. In accordance with CPLR 3122-a, the Certification must be sworn in the form of an affidavit and subscribed by a qualified witness charged with the responsibility for maintaining the records, stating in substance that (a) s/he is the duly authorized custodian or other qualified witness and has the authority to make the certification; (b) to the best of his/her knowledge, after reasonable inquiry, the records or copies thereof are accurate versions of the documents described in this subpoena that are in Your possession, custody, or control; (c) to the best of his/her knowledge, after reasonable inquiry, the records or copies produced represent all the documents described in this subpoena, or if they do not represent a complete set of the documents subpoenaed, an explanation of which documents are missing and a reason for their absence is provided; and (d) the records or copies produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and that it was the regular course of business to make such records.

## B. Definitions

1. "All" shall mean "each and every."

2. "And" and "or" shall be construed disjunctively or conjunctively, as necessary to bring within the scope of a request all responses and Documents that might otherwise be deemed outside the scope of that request.

3. "Any" shall mean "any and all."

4. "Communications" shall refer to any oral, written, in person, or any other form of relay, transmission, or transference of information by any means whatsoever including but not limited to by way of mail, computer, telephone, cellular or mobile phone, voice mail, electronic mail, radio, video, sound recordings, television, telefax, telex, social media, or any other medium, and shall include any Document that abstracts, digests, transcribes, records, or reflects any of the foregoing.

5. "Concerning" or "relating to" shall mean concerning, relating to, referring to, referencing, describing, evidencing, or constituting, either directly or indirectly and in whole or in part.

6. "Documents" is used in the broadest sense of the term and shall mean all records and other tangible media of expression of any nature, including:  originals, drafts or finished versions; annotated or nonconforming or other copies, however created, produced or stored (manually, mechanically, electronically or otherwise); electronic mail ("email"), instant messages, Blackberry or other wireless device messages; voicemail; books, papers, files, notes, correspondence, memoranda, reports, records, journals, summaries, registers, account statements, analyses, plans, manuals, policies, telegrams, faxes, wires,

telephone logs, telephone messages, or message slips; minutes, notes, records or transcriptions of conversations, communications or meetings; video and audio tapes; disks and other electronic media; microfilm, microfiche; storage devices; press releases; contracts, agreements; calendars, date books, appointment books and diaries; notices and confirmations.  A draft or non-identical copy is a separate Document. Documents existing in electronic form shall include all items that may have been removed from the email accounts, directories or other locations in which they are ordinarily stored to any other servers, folders, files, archives, or backup devices, whether or not deleted.

7. "VDARE", "You", or "Your" shall mean VDARE Foundation, Inc. and (i) any of its directors, officers, agents, employees, consultants, representatives, attorneys, and other persons acting on its behalf, (ii) any predecessors, successors, parent corporations, subsidiaries, divisions, assigns, "d/b/a" names, and affiliates, including Lexington Research Institute, and (iii) any entities that, directly or indirectly, control, are controlled by, or are under common control with VDARE Foundation, Inc., including by possessing, directly or indirectly, the power to direct or cause the direction of VDARE Foundation, Inc.'s management and policies, whether through membership, the ownership of voting securities, by contract, or otherwise.

8. The singular form of any word shall include the plural and vice versa.

9. Any word used but not defined in this Schedule shall be construed consistently with its common meaning.

## C.  Documents to be Produced

1. Copies of VDARE's certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports, from 1999 through the present.

2. Copies of the two most recent IRS Form 990s filed by VDARE with the Internal Revenue Service.

3. Copies of the transcripts to each deposition taken in the litigations between Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings.

4. Documents sufficient to Identify (i) the names and addresses of VDARE's current and former employees, their titles, and their dates of employment; (ii) VDARE's current and former volunteers, their titles, and their dates of service; (iii) VDARE's current and former independent contractors and their dates of service; and (iv) VDARE's current and former officers and directors, their titles, and the period during which they held their positions.

5. All minutes of any meetings convened by the full VDARE Board of Directors or any committee thereof from 1999 through the present.

6. All Documents circulated for Board consideration or review.

7. All Documents concerning (i) compensation, including salary, wages, expense reimbursements, royalties, fees, bonuses, deferred compensation, pension and retirement

funds paid to any Officers and/or Directors; (ii) reimbursements or payments made to any Officer and/or Directors of or for travel-related expenses (e.g., automobile purchases or leases, fuel, tolls, parking, and non-automobile transportation such as air and subway fare); (iii) insurance benefits (e.g., medical, dental, automobile, life, malpractice and disability) paid to any Officers and/or Directors; (iv) vacation pay, and/or vacation, sick, and personal leave time or payment therefor paid to any Officers and/or Directors; (v) severance pay or benefits paid to any Officers and/or Directors; (vi) any other payment or reimbursement paid to any Officers and/or Directors for services performed by them on behalf of VDARE, including any solicitation of funds; and (vii) all forms W-2 and 1099 issued to any Officers and/or Directors.

8. Documents reflecting any solicitation of funds on VDARE's behalf, in any format, e.g., hard copy mailers or solicitations or online fundraising such as GoFundMe or Kickstarter.

9. All VDARE written policies, manuals, and/or procedures, including all policies related to conflicts of interest.

10. All Documents concerning or relating to setting, directing, paying, or adjusting any Officer's compensation.

11. All Documents concerning or relating to setting, directing, paying, or adjusting the compensation for Peter Brimelow, or any other employee, officer, director, consultant or vendor of VDARE.

12. All Documents concerning or reporting conflicts of interest "required to be disclosed annually" as set forth in responses to Question 12(b) on Part VI of VDARE's 2019 Form 990.

13. All Documents concerning or reflecting any effort by VDARE to "regularly and consistently monitor and enforce compliance with" the conflicts of interest policy as set forth in response to Question 12(c) on Part VI of VDARE's 2019 Form 990.

14. All Documents concerning or reflecting the purchase of 276 Cacapon Road, Berkeley Springs, West Virginia by or on behalf of VDARE.

15. All Documents concerning or reflecting any representation to the State of West Virginia, the Town of Bath, West Virginia, or the County of Morgan, West Virginia regarding the taxation and/or use of 276 Cacapon Road, Berkeley Springs, West Virginia for charitable purposes.

16. All Documents concerning VDARE events (recorded or live) conducted at or broadcast from the 276 Cacapon Road, Berkeley Springs, West Virginia property, including all Communications (including emails and text messages), all records of any sales made during the event(s), and Documents sufficient to account for all funds received and disbursed because of such events.

17. All Documents concerning VDARE events (recorded or live) scheduled to be conducted at or broadcast from the 276 Cacapon Road, Berkeley Springs, West Virginia property, including all Communications (including emails and text messages) and Documents sufficient to account for all funds received and disbursed because of such scheduled events.

18. All Documents recording, reporting, considering or addressing conflicts of interest as reported on Schedule O of any IRS 990 form.

19. All director and officer insurance policies and any Documents relating to claims made on such policies.

20. Any claims for indemnification or defense by officers or directors upon VDARE.

21. All financial records of VDARE, including its books and records, general ledger, bank statements, credit card statements, debit card statements and receipts, copies of checks (front and back), canceled checks, account opening Documents, and Communications.

22. Documents sufficient to identify VDARE's bank accounts, credit card accounts, website accounts, and accounts with credit card processing.

23. Documents sufficient to identify all persons who have or had access to and/or control of VDARE's bank accounts, credit card accounts, website accounts, and accounts with credit card processing.

24. All audits, reports, reviews, corrective action plans or correspondence (including emails and text messages) issued to VDARE by any accounting firm or auditor, administrator, monitor, or any local, state, or federal agency or governmental or administrative entity.

25. Copies of any orders, judgments, cease and desist letters, or other Documents issued by any governmental entity or court regarding any alleged or confirmed wrongdoing, and any written settlement agreements executed in connection with the same.

26. Documents sufficient to identify any personal or business relationship between any current or former officer, director, or employee of VDARE, on the one hand, and any officer, director, employee, or contractor of VDARE, on the other hand.

27. All Communications between VDARE and the IRS, or between VDARE and any other local or state taxation authority.

28. All Communications between VDARE and any state or federal agency.

29. All Communications between VDARE and any of its accountants or auditors.

30. All Communications by VDARE or any of its agents regarding the Berkeley Castle Foundation, including all emails and text messages exchanged by VDARE, its principals, or agents, and any copies of any documents filed with any state or federal agency by VDARE or its agent on behalf of Berkeley Castle Foundation, Inc.

31. All Communications by VDARE or any of its agents regarding the BBB, LLC, including all emails and text messages exchanged by VDARE, its principals, or agents, and any copies of any documents filed with any state or federal agency by VDARE or its agent on behalf of BBB, LLC.

32. All records of transactions between BBB LLC and VDARE including books and records, general ledger, bank statements, credit card statements, copies of checks (front and back), canceled checks, and Communications.

33. All records of transactions between Berkeley Castle Foundation, Inc. and VDARE including its books and records, general ledger, bank statements, credit card statements, copies of checks (front and back), canceled checks, and Communications.

**AA0713**

34. Copies of BBB LLC's certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports from BBB's incorporation to the present, in the custody and control of VDARE, its principals, or its agents.

35. Copies of Berkeley Castle Foundation, Inc. certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports, from Berkeley Castle Foundation's incorporation to the present, in the custody and control of VDARE, its principals, or its agents.

36. All records relating to real estate transactions between VDARE and Berkeley Castle Foundation, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

37. All records relating to real estate transactions between VDARE and Berkeley Springs Castle, LLC, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

38. All records relating to real estate transactions between VDARE and BBB, LLC, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

39. All records of renovations, improvements, construction, landscaping, or any other work done since February 14, 2020, on the real property described in the February 14, 2020 deed between Berkeley Springs Castle, LLC, and VDARE. Such records shall include without limitation all invoices, contracts, estimates, bids, requests for bids, copies of checks (front and back), and Communications.

40. All records concerning the October 16, 2021 "Castle Auction," including all Communications (including emails and text messages), all records of sales made, copies of checks (front and back), valuations of auction items, and Documents sufficient to account for all funds received and disbursed because of the Auction.

41. All records of and Communications concerning any loans VDARE made to Berkeley Castle Foundation, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text correspondence.

42. All records of and correspondence concerning any loans VDARE made to BBB, LLC, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text Communications.

43. All records of and Communications concerning any loans Peter or Lydia Brimelow (individually or collectively) made to VDARE, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text correspondence.

44. All records of and correspondence concerning any loans VDARE made to Peter or Lydia Brimelow (individually or collectively), including promissory notes, mortgages, deeds of

**AA0714**

trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text Communications.

**AA0715**

### D. Format for Production

Unless otherwise specified and agreed to by the Office of the Attorney General, all responsive documents must be produced in Concordance format in accordance with the following instructions.

1. <u>Concordance Production Components</u>. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 2:

   - *Metadata Load File*
   - *Extracted or OCR Text Files*
   - *Single-Page Image Files*
   - *Opticon Load File*
   - *Native Files*.

2. <u>Production File Requirements</u>.

   A. ***Metadata Load File***

   - Required file format:

     - UTF-8
     - .dat file extension
     - Field delimiter: (ASCII decimal character 20)
     - Text Qualifier: þ (ASCII decimal character 254). Multiple value field delimiter: ; (ASCII decimal character 59)

   - The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 1.

   - Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.

   - ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.

   - Accepted date formats:

     - mm/dd/yyyy
     - yyyy/mm/dd
     - yyyymmdd

   - Accepted time formats:

    ▪   hh:mm:ss (if not in 24-hour format, You must indicate am/pm)
    ▪   hh:mm:ss:mmm

B. *Extracted or OCR Text Files*

- You must produce individual document-level text files containing the full extracted text for each produced document.

- When extracted text is not available (for instance, for image-only documents) You must provide individual document-level text files containing the document's full OCR text.

- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 5000 files.

C. *Single-Page Image Files (Petrified Page Images)*

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files. See Section 7.E below for instructions on producing native versions of documents You are unable to convert.

- Image documents that exist only in non-TIF formats must be converted into TIF files. The original image format must be produced as a native file as described in Section 7.E below.

- For documents produced only in native format, You must provide a TIF placeholder that states "Document produced only in native format."

- Each single-page TIF file must be endorsed with a unique Bates number.

- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).

- Required image file format:
  - CCITT Group 4 compression
  - 2-Bit black and white
  - 300 dpi
  - Either .tif or .tiff file extension.

- TIF files must be divided into subfolders containing no more than 5000 files. Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

**AA0717**

D. ***Opticon Load File***

- Required file format:
  - Field delimiter: , (ASCII decimal character 44)
  - No Text Qualifier
  - .opt file extension

- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):

  - ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
  - VOLUME – this value is optional and may be left blank.
  - RELATIVE PATH – the filepath to each single-page image file on the production media.
  - DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
  - FOLDER BREAK – defines the first page of a folder. The only possible values for this field are "Y" or blank.
  - BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
  - PAGE COUNT – this value is optional and may be left blank.

- ***Example***:

  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E. ***Native Files***

- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.

- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and the original file extension.

- For documents produced only in native format, You must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."

- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.

AA0718

- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.

- You may be required to supply a software license for proprietary documents produced only in native format.

3. <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:

- data\ (contains production load files)
- images\ (contains single-page TIF files, with subfolder organization)
  - \0001, \0002, \0003…
- natives\ (contains native files, with subfolder organization)
  - \0001, \0002, \0003…
- text\ (contains text files, with subfolder organization)
  - \0001, \0002, \0003…

4. <u>De-Duplication</u>. You must perform global de-duplication of stand-alone documents and email families.

5. <u>Paper or Scanned Documents</u>. Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd. The resulting electronic files should be produced in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the Notice to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

6. <u>Structured Data</u>. Structured data includes but is not limited to relational databases, transactional data, and xml pages. Spreadsheets are not considered structured data. You must first speak to the Assistant Attorney General whose telephone number appears on the Notice.

   <u>Relational Databases</u>

   - Database tables should be provided in d or other machine-readable, non-proprietary format, with each table in a separate data file. Each data file must have an accompanying data dictionary that explains the meaning of each column name and explains the values of any codes used.

   - Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the data dictionary.

   - Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one another.

**AA0719**

7. <u>Media and Encryption</u>. All document sets over 2 GB must be produced on CD, DVD, or hard-drive media. All production media must be encrypted with a strong password, which must be delivered independently from the production media. Document sets under 2 GB may be delivered electronically. The OAG offers a secure cloud storage option that can be set up to receive media on a one-time basis, or the OAG will download media from the providing parties' server.

**AA0720**

# ATTACHMENT 1
## Required Fields for Metadata Load File

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004… |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |
| TEXTFILE | Relative file path of the plain text file on the production media. | .\Text_Folder\Folder\...\BEGDOC.txt |
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number… |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |

**AA0721**

| SUBJECT | Subject line of the email. | |
|---|---|---|
| DATERCVD | Date and time that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date and time that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;… |
| NUMATTACH | Number of attachments. | |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, Corel WordPerfect… |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | |
| REVISION | Number of revisions to a document. | 18 |
| DATECREATED | Date and time that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date and time that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | |
| PGCOUNT | Number of pages per document. | |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | |
| SHA1HASH | SHA1 hash value | |
| MSGINDEX | Email message ID | |
| CONVERSATIONINDEX | Email Conversation Index | |

**AA0722**

## Certification of Business Records

State of _____ )
                 ) ss.:
County of _____ )

_____, being duly sworn, deposes and says:

1.  I am the duly authorized custodian or other qualified witness of the business records of
    _____.

    I am familiar with the business practices and procedures of _____
    and have the authority to make this certification.

2.  To the best of my knowledge, after reasonable inquiry, the records produced in response
    to the subpoena are accurate versions of the documents described in the subpoena that are
    in my possession, custody or control.

3.  To the best of my knowledge, after reasonable inquiry, the records represent all the
    documents described in the subpoena duces tecum except that the following documents
    are missing for the reason stated:

    _____

4.  The records produced were made by the personnel or staff of the business, or persons
    acting under their control, in the regular course of business, at the time of the act,
    transaction, occurrence or event recorded therein, or within a reasonable time thereafter,
    and it was the regular course of business to make such records.

Sworn to before me this ____

day of _____, 2022

_____
Notary Public

**AA0723**

**EXHIBIT C**

The Law Offices of
## ANDREW J. FRISCH, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
212-285-8000

September 19, 2022

*Via email (Yael.Fuchs@ag.ny.gov; Catherine.Suvari@ag.ny.gov)*

Yael Fuchs, Assistant Attorney General
Catherine Suvari, Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, New York 10005

    *Re: Subpoena to VDare Foundation, Inc.*

Dear Counsel:

        As I advised you via telephone on August 23, 2022, VDare Foundation, Inc. ("VDare") has engaged me as new counsel to respond to your Subpoena, dated June 24, 2022 (the "Subpoena"). VDare formally retained me within a week of our call. I appreciate your courtesies in accommodate my pre-existing commitments in other matters. As I continue to get up to speed and review documents, my hope is that we can meet and confer to address and attempt to resolve any areas of dispute.

        While I stand by VDare's objections to the Subpoena set forth by predecessor counsel that Subpoena requests are overbroad, vague, and require disclosures protected by the First Amendment, I do not stand by predecessor counsel's position that the Subpoena be withdrawn. With reliance on VDare's full reservation of all rights and any and all objections, I have today forwarded documents to a discovery vendor. My understanding is that the vendor cannot format the documents as specified in the Subpoena by today, but I expect that I can more readily arrange for production in another form, so please let me know your preference.

        I have been able to confer with the client meaningfully and begun to review documents only within the last ten or so days. My review of documents continues so that I can identify and produce any additional documents responsive to your Subpoena. Thus, I expect that the documents produced today will constitute the first installment of a rolling production. There is a significant volume of electronically-stored and hard copy documents that need to be reviewed so that any additional documents responsive to the Subpoena can be identified. I expect to be able to tell you by this week's end when another installment can be made. As to redactions in the documents produced today, I have not had ample time fully to evaluate bases underlying the redactions, including attorney-client privilege and First Amendment concerns. I

have opted instead to produce an installment of documents today and will circle back on the redactions once my evaluations are complete. I expect that I can report back on this issue by next Monday.

        In the course of marshaling documents responsive to the Subpoena, an additional objection has come to light. Some of the requested documents relate to the Berkeley Springs Castle Foundation ("BSCF"), a distinct entity apparently domiciled in West Virginia, which is not the named target of the Subpoena and has not itself been served. In the ordinary course, VDare has no blanket legal right or practical ability to access BSCF's records -- and no possession, custody, or control of BSCF's records. VDare has transacted with BSCF, and so some documents relating to BSCF reside within VDare. VDare is willing to endeavor to procure and produce other responsive documents from BSCF, provided that your Office acknowledges and agrees that such efforts by VDare: (I) prejudice none of VDare's rights and waive none of VDare's objections; (ii) will not be construed by your Office to negate the corporate distinction between VDare and BSCF; and (iii) similarly do not waive or prejudice any objection that BSCF might itself assert in the future if your Office purports to serve BSCF with process.

        VDare hereby requests, pursuant to New York Public Officers Law Sections 87(2)(d) and 89(5)(a), and for reasons of business confidentiality, that this communication and the accompanying materials, which are all designated "Confidential," be maintained in confidence by you and your Office and not be disclosed publicly whether in response to a request under Article 6 of the New York Public Officers Law or otherwise. If this communication or the accompanying documents are the subject of such a request, please so advise me before making any such disclosure at 212-285-8000.

        Very truly yours,

        /s/ *Andrew J. Frisch*
        Andrew J. Frisch

Enclosures
(under separate cover)

**AA0726**

**EXHIBIT D**

The Law Offices of
ANDREW J. FRISCH, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
212-285-8000

November 28, 2022

*Via email (Yael.Fuchs@ag.ny.gov; Catherine.Suvari@ag.ny.gov)*

Yael Fuchs, Assistant Attorney General
Catherine Suvari, Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, New York 10005

    *Re: Subpoena to VDare Foundation, Inc.*

Dear Counsel:

        As I reported in my letter to you of November 21, 2022, response to your Office's subpoena to VDARE involving emails is taking longer than anticipated. I am aiming to complete that part of the response to the subpoena by December 12, 2022.

        Very truly yours,

        /s/ *Andrew J. Frisch*
        Andrew J. Frisch

**AA0728**

**EXHIBIT E**

AA0729



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CHARITIES BUREAU

212.416.6172
Catherine.Suvari@ag.ny.gov

December 2, 2022

**Via Email To: afrisch@andrewfrisch.com**

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038

Re:  *Subpoena to VDARE Foundation dated June 23, 2022*

Andy:

        I write to address significant deficiencies in VDARE's production response to the above-referenced subpoena.  As explained below, we have serious concerns regarding: (1) ongoing delay and your repeated failure to abide by deadlines that you yourself proposed; (2) VDARE's failure to produce certain categories of documents based on unsubstantiated objections; and (3) redactions in the production for which you have not provided any legal justification and which appear to be applied haphazardly.  VDARE is also delinquent in its required annual filings with this office: annual submissions for both 2020 and 2021, including the audited financials that you acknowledged in your November 21, 2022 cover letter, are all overdue.

        Pursuant to Rule 4.4(b) of the Rules of Professional Conduct, we are also notifying you that you have produced material in your November 21 delivery that may be protected by an attorney-client privilege.  *See* VF 4777-4780.

Continuing Production Delay

        You have noted throughout your reports this Fall that you were first retained for this matter in August 2022 and that we agreed to extend the subpoena's stated deadline in response to your requests for more time to collect and review material.  You now appear to be setting — and moving — your own chosen deadlines for VDARE's subpoena compliance:  on October 25, you even remarked by email that our reference to previously-agreed deadlines was "not productive" and "divert[ed]" you from "subpoena-related tasks" on which you were working.

        We are now more than three months into your representation of VDARE and more than five months since the date VDARE was served with the subpoena.  In the past eight weeks alone, we have had the following assurances from you, none of which proved true:  (i) that you would substantially complete hard copy production by October 31 (Oct. 6); (ii) that you would provide, on or before October 31, a privilege/ redaction log that identified each marked redaction in the production and the legal basis for those redactions (Oct. 6); (iii) that the "lion's share of documents" had been reviewed and sent to the vendor for a substantially complete production by October 31 (Oct. 20); (iv) that "95% or so" of VDARE's hard copy documents were in process at the vendor and "well underway aiming for substantial compliance on October 31 or before" (Oct. 21); (v) that

40 gigabytes of potentially responsive email records, as well as "more documents potentially responsive to the subpoena" could be reviewed and produced on or before November 21, including on a rolling basis (Oct. 31). In the last ten days, you have announced instead that email review is suddenly taking "longer than anticipated" and that you will "aim[ ] to complete that part of the response to the subpoena by December 12, 2022."

As of the date of this letter, you have produced a total of roughly 6,000 pages of Bates-stamped material, the first section of which you have produced three separate times and all of which bears extensive unlabeled redactions to which we have repeatedly objected. The material produced to date does not appear to include any significant volume of email from the VDARE accounts that you first identified to us on October 31 and does not identify which of the subpoena's requests each document responds to. Please complete the production of both hard copy and ESI documents, in the form called for by the subpoena, by **December 12, 2022**.

VDARE's Unsubstantiated Objections to Certain Subpoena Requests

In July 2022, we took steps to clarify several of the subpoena's requests in response to VDARE's stated privacy concern for donors and volunteers, but we have consistently objected to a generalized assertion of sensitivity and have emphasized that we do not agree to the withholding of documents and information on that basis.

Your production cover letter on October 31 stated that "VDARE is concerned that disclosures risk further impairment to freedoms of speech and association of itself and others." We note that the requests you identified in your October 31 letter as intrusive on fundamental liberties included the request for VDARE Board meeting minutes (Req. No 5), the request for *outgoing* solicitation materials sent on VDARE's behalf (Req. No. 8), the request for documents identifying the individual(s) who control VDARE financial accounts (Req. No. 23), and the request for documents concerning physical renovation of VDARE's West Virginia castle property (Req. No. 39). You have not articulated how — and we do not agree that — these requests implicate any constitutional speech or associational concern for VDARE donors or content providers. To the extent any of these documents have been withheld from your productions to date, we demand complete delivery by December 12, 2022.

VDARE's Failure to Provide a Privilege/Redaction Log

We have asked several times that you provide a privilege/ redaction log to identify the legal basis on which VDARE is redacting or withholding particular material, and we asked specifically in our conference on October 6 that you provide such a log on or before October 31. Such a log is necessary for us to understand and evaluate VDARE's basis for redacting or withholding information. Your October 31 letter offered only the assurance that you expected to complete your redactions to responsive financial records by November 21 and that you would be in the best position to explain those redactions after you had completed them. On November 21, you stated without explanation that you would identify redactions in the production "once the project is complete." We still have not received a log.

We have explained in several exchanges with you that we will not agree in advance to special treatment for a subset of vendor information that you and/or VDARE independently identify as sensitive: VDARE must articulate particular categories of material covered by any individual request that it believes cannot be lawfully demanded and provide substantive explanation of how the disclosure being sought would operate to chill VDARE's protected associational or speech rights. We will meet and confer on this issue again only after production of a written privilege-redaction log to serve as the basis for meaningful review. Please produce such a log by **December 12, 2022**.

We also note that, in your letter of September 26, 2022, you asserted that subpoena requests for employee, vendor, and contract information violate First Amendment rights held by those

**AA0731**

entities because "[m]ost of [VDARE's] employees and contractors are writers and editors for the site." The documents that you have produced to date have been redacted far beyond the limits of any editorial content: you have redacted, among other things, (i) contact information for an architectural firm hired to review potential renovations at the Berkely Springs Castle property (VF 4427-4428; VF 4766-4767), (ii) the contact name, but not address, of a Switzerland-based firm hired to perform, according to its own invoice, "standard software development and server administration," (VF 3980-3981), (iii) the name of VDARE's bookkeeper, which appears to be separately disclosed in your production on a publicly-filed IRS Form I-9 prepared to confirm Lydia Brimelow's eligibility as an employee of Happy Penguins LLC (ex. VF 4280, VF 4282); (iv) contact information contained in a public magazine subscription renewal form sent to Peter Brimelow (VF 4187) (also marked as Confidential); (v) bank statements to accounts held by entities *other* than VDARE, including Happy Penguins LLC and Peter and Lydia Brimelow, as individuals (VF 4346-4348, VF 4338-4343); and the contact information for an individual or company hired to perform "VDARE Admin" services (VF 4017, VF 4274). These redactions are accompanied by the unredacted disclosure of numerous other VDARE contractors, vendors, and employees identified in VDARE's records, so that your stated treatment of redaction appears inconsistent, to say the least, and raises serious concerns about the legal basis for any such redactions.

<u>VDARE's Failure to Provide Mandatory Filings</u>

As we have previously noted, VDARE is delinquent in its filing of its 2020 Char500 and schedules, including the IRS Form 990. That filing was due in November 2021. VDARE's filing for 2021 was due on November 29, 2022 and has not been received. Attached to this letter is a notice of delinquency from our Registration Section.

We have discussed each of the above issues with you on several occasions and have agreed to significant deadline extensions to accommodate your requests for additional time to review. We reserve all rights regarding our position on your client's non-compliance with the subpoena and will seek judicial intervention to obtain compliance if the documents and information listed here are not produced by December 12, 2022.

Sincerely,

*/s/ Kate Suvari*

Kate Suvari
Assistant Attorney General

Encl.

cc:    Assistant Attorney General Yael Fuchs

3

**AA0732**



### STATE OF NEW YORK

### OFFICE OF THE ATTORNEY GENERAL

| Letitia James | Division of Social Justice |
| --- | --- |
| Attorney General | Charities Bureau |

December 2, 2022

Vdare Foundation
PO Box 211
Litchfield, CT 06759

**Re:    Vdare Foundation**
**Delinquent Filing – Action Requested**
**Registration Number: 41-37-83**

Dear Sir or Madam:

This letter is to notify you that the above organization is delinquent in filing its annual financial reports with the New York Attorney General's Charities Bureau. New York law requires registered organizations to file annually Form CHAR500, IRS Form 990 and, if applicable, an independent certified public accountant's audit or review report and pay an annual filing fee.

In order to resolve the delinquency, the organization must submit its delinquent filings, with a copy of this letter, to the Charities Bureau within **thirty (30) days** of the above date. According to our records, the following filings are delinquent:

- **Fiscal Year Ended 12/31/2020: CHAR500 Annual Filing – complete online.**
- **Fiscal Year Ended 12/31/2021: CHAR500 Annual Filing – complete online.**

A portal for electronic filing is posted on our webpage www.charitiesnys.com – online filing is required. Please be advised that Article 7-A of the Executive Law prohibits a delinquent organization from raising funds in New York, including through government grants. In addition, failure to submit all required filings may subject the organization to cancellation of its registration.

If you believe that the organization has already submitted its required filings or if it is no longer conducting activities or soliciting contributions in New York, please notify this office in writing upon receipt of this letter and include a copy of this letter with your response. Please mail your response to the attention of Stephenie Brathwaite. If you have any questions concerning this request, please contact the Charities Bureau by phone at (212) 416-8401 or by email to Stephenie.Brathwaite@ag.ny.gov.

Sincerely,

Hanna Rubin
Director-Registration Section
Charities Bureau

28 Liberty St., New York, NY 10005  (212) 416-8401 Fax (212) 416-8393
http://www.charitiesnys.com

# AA0733

**EXHIBIT F**

**AA0734**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

PEOPLE OF THE STATE OF NEW YORK, by        Index No. _____
LETITIA JAMES, Attorney General of the
State of New York,        **VERIFIED PETITION**

                                        Petitioner,

                -against-

VDARE FOUNDATION, INC.,

                                        Respondent.

---------------------------------------------------------------x

Petitioner, the People of the State of New York by Letitia James, Attorney General of the

State of New York, as and for its Petition, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.        The Office of the Attorney General is presently conducting an investigation of

Respondent VDARE Foundation, Inc. ("VDARE"), a not-for-profit corporation incorporated and

registered to solicit in New York, pursuant to the New York Not for Profit Corporation Law,

Estates, Powers and Trusts Law, Executive Law, and other applicable law governing New York

State charities.

2.        Commencement of the Attorney General's investigation followed public reports

that VDARE had purchased a medieval-style castle in West Virginia and that its founder and his

family were residing in the castle.  The Attorney General then reviewed VDARE's regulatory

filings, including the organization's IRS Form 990 and CHAR 500 official filings, and publicly

available information regarding VDARE and its operation.

3.        On June 24, 2022, in connection with its investigation, the Attorney General

served a subpoena *duces tecum* on VDARE that sought documents and information relating to,

1

Case 1:22-cv-01337-DJS-DEH Document 33-63 Filed 04/10/23 Page 37 of 10

*inter alia*, VDARE's governance, recent financial transactions, and regulatory disclosures (the "Subpoena"). To date, VDARE has produced only limited material from its hard copy files — heavily redacted without any corresponding log or legal justification — and has produced nothing from what it identifies as 40 gigabytes of potentially responsive electronic files.

4. The Attorney General's investigation into potential misconduct by VDARE and its officers and directors will be irreparably harmed if VDARE is permitted to defy a lawfully issued subpoena.

5. The Attorney General has attempted in good faith, unsuccessfully, to clarify the scope of its investigative demands and to address stated concerns from VDARE counsel regarding VDARE supporters and/or unpaid authors who choose to speak anonymously.

6. The Attorney General now petitions this Court for an order: (i) compelling VDARE to comply without delay with the June 23, 2022 subpoena; (ii) ordering all documents produced to be unredacted (except for agreed upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate.

## **PARTIES**

7. The Attorney General is responsible for overseeing the activities of New York not-for-profit corporations and the conduct of their officers and directors, in accordance with the New York Not for Profit Corporation Law, the New York Estates, Powers and Trusts Law, and the New York Executive Law.

8. Respondent VDARE is a not-for-profit charitable organization organized under the laws of the State of New York and with its principal place of business in Berkeley Springs,

AA0736

Case 1:22-cv-01337-DJS-DEH Document 23-63 Filed 04/10/23 Page 97 of 10

West Virginia.  VDARE has registered with the Attorney General's Office and submitted annual

filings as part of that registration since 2009.

## JURISDICTION, APPLICABLE LAW, AND VENUE

9.      The Attorney General brings this special proceeding on behalf of the People of

the State of New York pursuant to the New York Not for Profit Corporation Law, Estates,

Powers and Trusts Law, Executive Law, and CPLR Article 4.

10.      Pursuant to N-PCL § 112 (b)(6), the Attorney General "may take proof and issue

subpoenas in accordance with the civil practice law and rules" in connection with investigations

of potential misconduct giving rise to the remedies set forth in N-PCL § 112(a).

11.      Pursuant to EPTL § 8-1.4(i), the Attorney General "may investigate transactions

and relationships of trustees for the purpose of determining whether or not property held for

charitable purposes has been and is being properly administered. The attorney general, his or her

assistants, deputies or such other officers as may be designated by him or her, are empowered to

subpoena any trustee, agent, fiduciary, beneficiary, institution, association or corporation or other

witness, examine any such witness under oath and, for this purpose, administer the necessary

oaths, and require the production of any books or papers which they deem relevant to the

inquiry."

12.      Pursuant to Executive Law § 63(12), the Attorney General "is authorized to take

proof and make a determination of the relevant facts and to issue subpoenas in accordance with

the civil practice law and rules" in connection with investigations of potential repeated

fraudulent or illegal acts.

13.      Pursuant to Executive Law § 175, the Attorney General "is authorized to take

proof, issue subpoenas and administer oaths in the manner provided in the civil practice law and

rules" in connection with investigations of potential misconduct in violation of Article 7-A of the Executive Law, which concerns the solicitation and collection of funds for charitable purposes.

14.     Venue is properly set in New York County pursuant to CPLR §§ 503, 505, and 509, because Petitioner is resident in New York County and has selected New York County, and because Petitioner is a public authority whose facilities involved in the action are located in New York County.

## FACTS

15.     VDARE and its current and past board members are the subject of an ongoing investigation by the Attorney General concerning potential financial improprieties, including unlawful related party transactions between VDARE and affiliated entities, officers and board members, excessive compensation, private inurement, and violations of statutory and common law governance standards.

16.     On June 24, 2022, the Attorney General personally served a subpoena *duces tecum* on VDARE by delivery to VDARE's designated agent for service, the Secretary of State of New York, in compliance with CPLR 311 and N-PCL § 306.  The Subpoena set a return date for production of documents of July 25, 2022.

17.     On June 24, the Attorney General mailed a copy of the Subpoena, by U.S. Mail Certified Return Receipt to the address identified in VDARE's most recent annual filing with the Charities Bureau (276 Cacapon Road, Berkeley Springs, West Virginia 25411), together with a copy of the Affidavit of Service prepared by OAG Investigator Donald C. Anselment and a cover letter confirming the nature of the document.

AA0738

18.     On July 2, VDARE counsel confirmed receipt of the Subpoena, requested that the Subpoena be withdrawn in its entirety, and requested information regarding, *inter alia*, the subject matter of the investigation and the relevance of the documents sought in the Subpoena.

19.     On July 18, 2022, counsel from the Attorney General's Office met telephonically with VDARE counsel.  During that call, VDARE counsel asked the OAG to provide information regarding the nature of the investigation and expressed concerns regarding certain requests, including requests that he believed were overbroad or called for production of documents protected by the attorney-client privilege.  OAG counsel responded to VDARE counsel's questions, with a reservation of rights, and identified concerns regarding: (1) the purchase and use of the castle; (2) benefits conferred upon VDARE principals; (3) whether the VDARE board is properly overseeing the finances of the organization; and (4) whether the organization is using charitable assets in accordance with its mission.  The OAG also stated that to the extent counsel believed that production would invade attorney-client privilege, the Subpoena did not seek privileged communications and expressly instructed counsel to withhold such documents and provide a privilege log.

20.     On July 20, 2022, VDARE counsel sent a second letter to the OAG, by which VDARE renewed its request that the Subpoena be withdrawn and set forth individual objections to many of the Subpoena's individual requests on the grounds of overbreadth, vagueness, attorney-client privilege, and that its requests sought the identities of VDARE readers, writers, and donors.

21.     On July 27, 2022, the Attorney General responded by email to the objections raised in VDARE's July 20 letter.  With a reservation of rights, counsel for the OAG attempted to address VDARE's concerns by clarifying individual Subpoena requests and agreeing that the

5

Case 1:22-cv-01837-JLS-JJM Document 33-5 Filed 04/10/23 Page 7 of 10

names of certain individuals, including VDARE contributors and volunteer supporters, could be redacted from otherwise responsive records.

22.     As of the date of this filing, the Attorney General has consented to extend the Subpoena's deadline for production no fewer than six times — most recently to December 12, 2022 — following requests by VDARE counsel that production be delayed to accommodate vacation, holidays, and other competing work obligations.  In total, the Attorney General's agreed adjournments extended the Subpoena's stated response deadline by approximately twenty weeks.

23.     VDARE began production in September 2022 and has produced approximately 6,000 pages from its hard copy records since.  It has redacted that material without offering any legal basis for individual redactions or any explanation for how material was chosen for redaction.  The redactions are extensive, and they have been applied across almost every category of document produced.

24.     The OAG has met with VDARE counsel, in person and by phone, on multiple occasions to discuss the Subpoena requests.  VDARE counsel has assured the OAG throughout that VDARE was working diligently to comply with the Subpoena.  The OAG has expressed concern over production delay in each of its contacts with VDARE counsel and has objected repeatedly to VDARE's continuing production of redacted material without any identified explanation of or legal basis for redaction.

25.     As of the date of this Petition, VDARE has identified 22 unique email accounts as containing potentially responsive material and has not produced any of those files for the Attorney General's review.

Case 1:22-cv-01837-JS-LGH Document 23-63 Filed 04/10/23 Page 87 of 10

26.     As of the date of this Petition, VDARE has refused to produce any log identifying the material in its production that it has redacted and the legal basis on which it is withholding the redacted information.

27.     Accordingly, the Attorney General now asks the Court to issue appropriate orders pursuant to CPLR § 2308 to ensure that VDARE will promptly comply with the Attorney General's investigative requests.

**CLAIM FOR RELIEF**
**Compelling Subpoena Compliance – CPLR § 2308**

28.     The Attorney General repeats and re-alleges the preceding paragraphs, as though fully set forth herein.

29.     The Subpoena was issued pursuant to a legally-authorized investigation for which there is a factual basis, and the requests in the Subpoena are reasonably related to that investigation.

30.     VDARE has interposed no cognizable basis for delaying or withholding responsive document productions to the Attorney General.

31.     As a result, VDARE should be ordered to comply with the Subpoena without further delay.

WHEREFORE, Petitioner respectfully requests that a judgment and order be entered:  (i) compelling VDARE to comply without delay with the June 23, 2022 subpoena; (ii) ordering all documents produced to be unredacted (except for agreed upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate.

7

**AA0741**

Dated: New York, New York
      December 16, 2022

LETITIA JAMES
Attorney General of the State of New York

By: _Jones G. Sheehan_

James G. Sheehan
Yael Fuchs
Catherine Suvari
28 Liberty Street
New York, New York 10005
(212) 416-8490
James.Sheehan@ag.ny.gov

8

## VERIFICATION

STATE OF NEW YORK     }
                         } ss.:
COUNTY OF NEW YORK   }

JAMES G. SHEEHAN, being duly sworn, deposes and says:

I am an Assistant Attorney General in the office of Letitia James, Attorney General of the State of New York (the "Attorney General"). I am duly authorized to make this Verification.

I have read the foregoing petition and am acquainted with the contents thereof based upon the Office of the Attorney General's review of the facts alleged in the petition and the investigative materials contained in the files of the Attorney General's office. To my knowledge based on such acquaintance with the facts, the petition is true.

The reason this Verification is not made by Plaintiff is that Plaintiff is a body politic and the Attorney General is its duly authorized representative.

JAMES SHEEHAN
Assistant Attorney General

NOTARY PUBLIC

Sworn to before me this
16th day of December, 2022

BELYNDA K. ZIGREST
Notary Public - State of New York
01ZI6349654
Qualified in Albany County
My Comm. Expires October 24, 20 24

1

**EXHIBIT G**

AA0744

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK - CIVIL TERM - PART 57
 2    - - - - - - - - - - - - - - - - - - - - -X

 3            PEOPLE OF THE STATE OF NEW YORK, BY
              LETITIA JAMES, ATTORNEY GENERAL OF THE
 4            STATE OF NEW YORK,
                                                     INDEX NUMBER:
 5                             Petitioner,           453196/2022

 6                    - against -

 7            VDARE FOUNDATION, INC.,

 8                             Respondent.
      - - - - - - - - - - - - - - - - - - - - -X
 9
                                          Virtual Teams Meeting
10            ORAL ARGUMENTS            New York, New York
                                          January 19, 2023
11

12    B E F O R E :

13
          HONORABLE SABRINA B. KRAUS, JUSTICE OF THE SUPREME COURT
14

15    A P P E A R A N C E S :

16            LETITIA JAMES,ESQ.
              Attorney General of the State of New York
17            28 Liberty Street
              New York, New York  10005
18
          BY:  CATHERINE SUVARI, ESQ.
19

20            THE LAW OFFICE OF ANDREW J. FRISCH, PLLC
              Attorneys for the Defendants
21            40 Fulton Street, 17th Floor
              New York, New York  10038
22
          BY:  ANDREW J. FRISCH, ESQ.
23

24    ALSO PRESENT:                       YAEL FUCHS

25                                         LORETTA KRAVCHENKO
                                           SENIOR COURT REPORTER
```

P R O C E E D I N G S

```
 1              THE COURT:  Okay.  Good morning, everybody.
 2  Why don't we start out by having the attorneys note
 3  their appearance for the record.
 4              MS. SUVARI:  Sure.  This is Catherine Suvari, Your
 5  Honor.  I am from the AG's office on behalf of the State of New
 6  York.  And I believe my colleague is on, Yael Fuchs, also from
 7  my office as well.
 8              MR. FRISCH:  Good morning.  For the Respondents, VDARE
 9  Foundation, Andrew Frisch, F-r-i-s-c-h.  Good morning.
10              THE COURT:  Okay.  I also have a James Sheehan listed.
11              MR. SHEEHAN:  That's correct, Your Honor.  This is
12  James Sheehan from the Attorney General's office as well.
13              THE COURT:  All right.  I'm going to give you some
14  time to present oral argument on your positions.
15              But before you start there, I want to highlight some
16  things that I'd like to hear from you about during the course of
17  those oral arguments.
18              So, specifically, the Petitioner has argued that the
19  Federal action is not duplicative of this proceeding, because
20  they can't get the relief in federal court that they are seeking
21  in this proceeding.
22              And I did not see Respondent address that argument at
23  all.  So I would like Respondent to advise whether they dispute
24  that that's correct.
25              And if they to do dispute that that's correct, I would
```

```
 1  like each side to tell me what the legal authority is behind
 2  their position on that point.
 3          I would also like to know whether the Respondent asked
 4  the federal court to stay this action or proceeding.
 5          And then Petitioner's Order to Show Cause seems to
 6  request a blanket order compelling compliance with the subpoena.
 7  But, in the papers Petitioner seems to acknowledge that some
 8  carve outs or sections are appropriate, for example, they ask
 9  about the redaction log.  There are other carve outs or
10  acknowledgements of adjustments made to the Petitioner that the
11  Petitioner acknowledges may be appropriate.
12          So I may request Petitioner to send me a proposed
13  order at the conclusion of this, because it's not clear from the
14  Order to Show Cause specifically what order they are requesting
15  from the Court.
16          And then, finally, I would like the Respondent to
17  address whether a confidentiality agreement or order might not
18  cover their concerns about donors or contractors or vendors
19  being disclosed, and suffering negative business consequences as
20  a result of that.
21          So having said that, I'm going to let the Petitioner
22  go first.
23          MS. SUVARI:  Thank you, Your Honor.  This is Cate
24  Suvari again.  I'd like to start, if I can, with some basics
25  about who we are and exactly what is going on so the context for
```

PROCEEDINGS

```
 1   these arguments is as clear as possible.
 2            The Attorney General began this proceeding to enforce
 3   a Civil Pre-Complaint Investigative Subpoena that it has issued
 4   to the VDARE Foundation.
 5            And VDARE is a New York formed not-for-profit
 6   corporation, whose stated charitable mission is to create and
 7   manage an internet publication housed at VDARE.com.
 8            The Attorney General's review and its subpoena to
 9   VDARE last summer followed from public reports that VDARE had
10   spent roughly $1.4 million in charitable assets to buy a castle
11   in West Virginia that its chairman promptly moved his family
12   into.
13            The Attorney General reviewed public reports of that
14   transaction, and examined VDARE's regulatory filings with this
15   office; And in that process identified significant control
16   issues that formed the focus of this investigation.
17            And that sequence is reviewed in detail in the Fuchs'
18   affirmation that was submitted in support of our petition, which
19   is Docket No. 4, beginning at page 5.
20            Our subpoena seeks categories of documents and
21   information that are related to VDARE's governance, and to its
22   financial operation as a New York not-for-profit.
23            There are several features of our subpoena that we
24   think are especially important to note.  The first is that
25   regulatory compliance is a mandatory rule.  And the issue of
```

1    should we choose to subpoena or not are not in dispute here.

2              They are incorporated in New York roughly 25 years

3    ago.

4              It registers with the Attorney General's Charities

5    Bureau to operate and solicit in New York, and has been doing

6    that for roughly 15 years.

7              And it does not dispute the Attorney General's

8    authority to regulate not-for-profit corporations generally, or

9    VDARE in particular.

10             The Attorney General also served it's investigative

11   subpoena pursuant to very well-established subpoena authority

12   that VDARE also does not dispute.

13             The Attorney General's subpoena in a proceeding like

14   this is entitled to a presumption of good faith.

15             So VDARE, as the subpoenaed party, bears the burden of

16   demonstrating that our office's subpoena should not be enforced.

17             VDARE has not moved to quash or modify the subpoena in

18   roughly six months between service and the start of this

19   proceeding.

20             VDARE has also partially complied with the subpoena

21   for months; and that's something that is discussed in our

22   submissions and VDARE's.  It has produced roughly 6,000 pages of

23   material already.

24             And it has insisted throughout and insists again

25   through it's submissions to this Court that it intended to fully

P R O C E E D I N G S

```
 1   comply.  There is no record of harm to VDARE during that process

 2   before this Court.

 3            The reason that we are here now is because of the

 4   delay in the production process, and VDARE's decisions about

 5   withholding material that might otherwise be responsive have

 6   required us to seek the Court's intervention to obtain

 7   compliance with our subpoena.

 8            And the Attorney General's office specifically warned

 9   VDARE that it would pursue that relief if needed in a letter

10   that was sent to VDARE on December 2nd.  That fact is very

11   significant under the case law that is cited in both our

12   briefing and VDARE's regarding this Court's consideration of a

13   discretionary dismissal.

14            Specifically, what has been happening in the

15   production in the last six months, it began in late September,

16   VDARE had asked for and received multiple extensions from our

17   office in the summer of 2022, and began producing at the start

18   of the fall.

19            But by October, they had begun setting increasingly

20   later deadlines, and missing those deadlines along the way.

21            The final date by which VDARE had proposed to complete

22   production, and that's the September 12th date, it opted to sue

23   our office instead.

24            The sequence of exchanges from summer through fall,

25   and our response to VDARE's request for extension is reviewed in
```

1  detail in our office's December 2nd letter to VDARE's counsel.
2  That is attached to Exhibit Y to the Fuch's affirmation, which
3  is Docket No. 29.  And VDARE does not dispute that chronology.
4        I think it's important to emphasize that VDARE could
5  have asserted constitutional concerns with the subpoena at
6  anytime from July of last year forward.
7        It is only when VDARE was threatened with a Motion to
8  Compel by our office that they alleged that our investigation
9  was, in fact, protectoral or baseless.
10        There are also particular problems with the material
11  that has been produced to date.  The first is the redactions
12  that Your Honor mentioned already.  VDARE has extensively
13  redacted the hardcopy material that it has produced.
14        And it has repeatedly declined to produce a log that
15  would identify to our office, even in broad strokes, the
16  categories of material being redacted and the legal bases for
17  those redactions.  You can see our office's request for that log
18  in the letter back and forth that is attached to the Fuch's
19  affirmation.
20        In our view it's very significant that when given an
21  opportunity to explain its redactions and its objections to the
22  request for a log in this proceeding, VDARE has chosen only to
23  argue that the proceeding should be dismissed, because it filed
24  in federal court four days earlier, and because it views the
25  subpoena as the retaliatory pretext.

```
 1            VDARE has also, separately from the redaction

 2    question, identified an enormous volume of electronic material

 3    that may be responsive to the subpoena.  VDARE first set that

 4    estimate at the end of October, that's the 40 gigabytes of

 5    potentially responsive ESI material.  And it has not produced

 6    anything from that source in two-plus months since.

 7            So considering this proceeding and our office's

 8    request from the Court, the standard of review here has been

 9    very well established.

10            Court review of agency investigative subpoenas like

11    ours is very differential.  The Court looks for a reasonable

12    basis for the investigation, and reasonably targeted demands;

13    both are met here.

14            The basis for our investigation is outlined in our

15    supporting materials, and, frankly, not disputed.  The facts

16    that have prompted our review are not really in dispute in any

17    of VDARE's submissions either.

18            Our investigation is targeting conduct of a New York

19    not-for-profit corporation that may be unlawful under New York

20    Non-Profit Law; not constitutionally protected speech at

21    VDARE.com; and not the social-associational activity by VDARE's

22    supporters.

23            And our subpoena's requests have been very carefully

24    drafted to identify documents and information that are relevant

25    to that review only.  So we did not call for material or
```

P R O C E E D I N G S

```
1    information related to VDARE's location at VDARE.com.

2            And we have not asked for identifying information

3    about anonymous VDARE contributors or identities, for example.

4            What we are asking is material and information about

5    VDARE's governance; about its internal controls; about its

6    spending; about its compensation practices; financial controls;

7    and financial transactions.

8            Typically, those are all topics that are squarely

9    within the realm of what our office is responsible for reviewing

10   at an organization like VDARE.

11           With respect to the question of whether our disclosure

12   demands are proper, including VDARE's constitutional concerns,

13   those issues can and should be addressed in this proceeding.

14   This Court is fully empowered to consider any constitutional

15   concern raised by the subpoena.

16           And, in fact, the same federal court that VDARE has

17   asked to join enforcement of the subpoena, the Northern District

18   of New York said as much just last year.

19           And that case, which is Trump versus James, is cited

20   in our opposition to VDARE's Motion For Dismissal, which is at

21   Docket No. 55.

22           VDARE has not addressed in any of its submissions the

23   availability of full relief for both parties through this court.

24   And it has not identified any barrier to asserting

25   constitutional arguments here.  Instead, it is asking only for
```

1   deference to the action that it filed.

2           I'd like to address, if I can, the standard for a

3   discretionary dismissal.  I think the first and critical point

4   is that dismissal in the case of two simultaneous actions under

5   CPLR 3211 is discretionary.  The Court may dismiss, but need not

6   dismiss in deference to a first-filed matter.

7           THE COURT:  I'm going to stop you, I'm going to ask

8   you to move on.  I'm not really inclined to dismiss.  If

9   anything, I would be inclined to stay.  So I don't think you

10  needs to spend a lot of time on the discretionary dismissal.

11          MS. SUVARI:  The last thing I'd like to turn to, if I

12  can, is whether a first amendment harm has actually been shown

13  here.  And it's argued that there is no showing of harm in front

14  of the Court.

15          VDARE has sought in its exchanges with us to

16  unilaterally withhold some universe of unidentified material

17  based on its own, you know, general reference to confidential

18  content at VDARE.com, and its own assertion that disclosure

19  would be problematic for VDARE's operation as a not-for-profit

20  corporation.

21          THE COURT:  Right.

22          MS. SUVARI:  In looking at what has been held, their

23  redactions sweep very broadly; and this is something that's also

24  reviewed in our papers.  The categories of material that are

25  being covered, and I think we've itemized some of them:  Board

P R O C E E D I N G S

1  meeting Minutes; bank statements; accounting ledgers, things

2  like that.  None of those are connected to protected First

3  Amendment speech, for example.

4          And without access to that kind of material it is

5  impossible for our office to conduct the review that it has

6  undertaken which looks at spending, conflicts of interests,

7  governance controls at an organization that we are responsible

8  for regulating.

9          THE COURT:  Right, but aren't they really arguing that

10  the whole reason that you're investigating them is because of

11  their unpopular speech or positions, and they tie that into the

12  Attorney General's public pronouncements about wanting to go

13  after hate crimes and perpetrators of hate speech?

14          MS. SUVARI:  They are asserting that, Your Honor.

15          But it's our position, Your Honor, that there's no --

16  first of all, that this is a lawful investigation with a

17  reasonable basis, of course.  And there is no showing of any of

18  the kind of connections that they are alleging in the record

19  before this Court.  And, in fact, in our view the subpoena on

20  its face demonstrates that that's not what we're looking at

21  here.

22          And I think it's important also to emphasize that we

23  have been responsive to concerns expressed by VDARE during our

24  back and forth with them about what will be produced and when.

25  So in the very first weeks after serving the subpoena, we were

 1    in touch with Counsel for VDARE to clarify that we were not

 2    looking for, for example, anonymous donor identifying --

 3    anonymous donor information.  We were not targeting

 4    speech-related activity at VDARE.

 5           And we have really only insisted in the course of the

 6    production process that VDARE identify and log the material that

 7    it's choosing to withhold.  And, also, to explain the bases for

 8    that withholding in a more specific way than just, you know, we

 9    have constitutionally-significant interests that are being

10    intruded upon.

11           So it's our position that the response that we've

12    gotten so far is inadequate; it's inconsistent with what the

13    CPLR requires.  And we have been forced to come to the court to

14    press that position, and to clothe compliance with the subpoena

15    that we believe that, clearly, it's in our authority to issue.

16           THE COURT:  Mr. Frisch.

17           MR. FRISCH:  Thank you, Your Honor.  Thank you.

18           Let me just start by echoing something that Your Honor

19    said about the remedy that we seek.  While I don't want to

20    prejudice my client's position by talking about the law of a

21    discretionary dismissal, at the same time I agree that if the

22    Court issues a remedy to VDARE here, it should be just a stay,

23    not dismissal.

24           The Attorney General has identified in its papers

25    certain arguments that it's going to be making in federal court.

1   It filed its Motion to Dismiss yesterday, and I haven't had a

2   chance -- I looked at the papers briefly, they were filed

3   yesterday after six.

4           If they are right that there's no basis for a Federal

5   suit, if they are right -- They say that they believe Judge

6   Scullin in Albany will agree with them, then he'll grant a

7   dismissal and we'll be back.

8           But I think the right remedy -- and I will talk about

9   the specifics in a moment -- The right remedy here, and the

10  remedy I'd urge the Court to fashion, is simply to stay this

11  pending litigation on the Attorney General's Motion to Dismiss,

12  and see what happens.  There will be no prejudice if we take a

13  little bit of time to see that play out.

14          And what we're seeking in that suit is that this has

15  become -- It is clear to us, at least, while we had suspicions

16  initially at least that this was retaliatory, unconstitutionally

17  retaliatory.  It is the Attorney General's letter, the December

18  2nd letter, which changed the landscape and precipitated the

19  Federal suit.  We could have brought a federal suit earlier.

20  But it was the December 2nd letter and the positions taken,

21  which I'll talk more about in a moment, that was the triggering

22  event for the federal lawsuit.

23          So let me talk about some of the specifics.  So, first

24  of all, the Attorney General in their papers has challenged the

25  first filing rule as inapposite.  But we're not seeking -- and

14

```
 1   this is at least today -- Well, we put in our papers that we're
 2   seeking a stay, not dismissal, so that's one.
 3           Second, this is not a commercial litigation where one
 4   party is seeking an unfair tactical advantage by suing a
 5   commercial litigant in an inconvenient forum.
 6           This is federal and state, Albany and Manhattan.  And
 7   we are alleging claims under the Federal Constitution, and the
 8   State Constitution.
 9           So even if this Court, even if the State Court were to
10   resolve federal constitutional claims against us, we would still
11   have the option of going to federal court.
12           So our view is that this is a more efficient and
13   appropriate way to deal with the overarching issues.
14           Look, I understand that on its face what Ms. Suvari
15   has said about what the subpoena looks like on its face, but
16   some context is relevant.
17           And it's not just the Attorney General's stated
18   position.  It's that the letter of December 2, which in my view
19   was somewhat heavy handed -- And I'll talk about the specifics
20   in a moment -- is the day before, December 3rd, the effective
21   date of the hate crimes, the hate conduct statute.
22           It seems to me that there's a lot of things here that
23   lawyers can -- should be able to deal with, they should be able
24   to work out things like the identities of a contract.
25           THE COURT:  Can I interrupt for one moment.
```

P R O C E E D I N G S

```
 1            Does anybody know the NYSCEF document number for the
 2  December 2nd letter?
 3            MR. FRISCH:  It's Exhibit G.
 4            THE COURT:  I didn't hear what you said, sir.
 5            MR. FRISCH:  It's Exhibit G, and I believe that it's
 6  NYSCEF 34.  I think I might have --
 7            MS. SUVARI:  It's also an exhibit to our information,
 8  Your Honor, at Docket 28.
 9            THE COURT:  Thank you.  Please continue.
10            MR. FRISCH:  Thank you.  So I think the kind of things
11  that we are talking about now in terms of substance of the
12  subpoena are the kind of things that lawyers can work out.
13            I'm going to talk first about the identity of
14  contractors, timing and redaction log, and I'll try and do it as
15  concisely as I can.  We've identified payments to contractors.
16  We've identified services rendered.  And we've identified
17  contractors that might qualify as so-called related parties
18  under, I believe, Section 715 of the New York Not-For-Profit
19  corporation law.
20            We've proposed a middle ground that, you know, we just
21  give them the related parties for now and a full reservation of
22  rights.  But we ended up -- Even after they rejected that middle
23  ground proposal, we gave it to them anyway.
24            And the proposal was, essentially, let us deal with
25  these contractors given the unusual landscape of our position as
```

P R O C E E D I N G S

```
 1    we go forward.  You don't have to, you know, give up anything,
 2    reserve your rights.  Let's just take it a step at a time and
 3    finish the production, and see where we are.
 4          If there's a particular need or a particular interest
 5    in the identity of a particular contractor beyond the related
 6    party ones, well, let's talk about it.  But that's not --
 7          THE COURT:  But that seems to be completely opposite
 8    to your conduct of filing the Federal suit.
 9          MR. FRISCH:  Well, I'll come to that.  I'll come to
10    how I think December 2nd changed the landscape.
11          Look, one of things the Attorney General says in their
12    papers is that there's no real no concern about the identity of
13    these contractors, that's not true.  It is a matter of public
14    record that entities like Amazon and PayPal and others have
15    deplatformed VDARE.  Others have declined to work with them.
16          Just two weeks ago there was an article in the
17    Washington Post in which some local business people, I think one
18    was a chef, one was a proprietor of a local store, with a
19    subject of public ridicule, and the comments to the article.  So
20    this is a real concern.
21          Before I get to the December 2nd letter, let me talk
22    about timing to the redaction letter.  And I've said this,
23    right, when I came into the case in September, I went to their
24    office and met with them.  And I told them at the time that my
25    direction to the client is to comply; I'm new to the case; I'm a
```

P R O C E E D I N G S

1  solo practitioner; I have competing court commitments; and that
2  I'm a person of good faith.
3         My client is literally a mom-and-pop operation.  They
4  have three kids who they home school.  In order to look at the
5  hardcopy documents, they had to get boxes out of their garage
6  and out of storage.  One of them was waterlogged, I had to let
7  it dry before I could go through it.
8         The only thing we've redacted, with the exception of
9  one or two attorney-privileged things, are the identities of
10 these contractors, that's it.  Nothing else has been redacted
11 from this, other than, again, in those one or two instances.
12 And we've put that in writing time and time again.
13        So I don't understand what the Attorney General's
14 position is that we haven't explained the redactions.  If
15 there's a particular page or multiple pages -- I don't think
16 this is so, but I understand.
17        If there's something that is not clear to them or they
18 can't read something or they are not clear, they can just pick
19 up the phone for me.
20        I wish I could have done all of this faster.  You
21 know, I set for myself in good faith ambitious deadlines.  I
22 don't think it's productive for either side to have to burden
23 this Court with a Motion about timing.
24        You know, I'd like to think that we are all lawyers
25 acting in good faith.  And they know that, especially because I

**AA0761**

P R O C E E D I N G S                                                    18

```
 1   completed the hardcopy, and completed the non-e-mail electronic
 2   production.  And I'm doing my best.  There's 40 gigabytes, I'm
 3   reviewing all of this myself.  I'm not a law firm.
 4            And, yes, I could have done it faster.  And maybe I
 5   was wrong to set ambitious deadlines, but I did as a way of
 6   showing good faith.
 7            And let me talk about the redaction log.  Redaction
 8   logs, at least in my experience, come after the production is
 9   complete, which makes perfect sense here.  Because as I've gone
10   forward -- When I first looked at the first batch of documents,
11   I redacted things that as I went forward and had a greater
12   understanding of the matter and the case, I decided going
13   forward that I'm not going to redact those names anymore.
14   Either they are already within the public view, or with regard
15   to employees I have not redacted them going forward.  Needless
16   to say, we're --
17            THE COURT:  Let me just stop you.
18            A moment ago you said the only thing redacted was
19   contractors.
20            Now, you're saying that there were employees also
21   previously redacted?
22            MR. FRISCH:  Initially, that's right.  But, as we've
23   gone forward --
24            THE COURT:  So then your statement that the only thing
25   redacted was contractors was not accurate?
```

**AA0762**

PROCEEDINGS

```
1              MR. FRISCH:  It's not accurate to the extent that
2    there were a few hundred pages very early on that have some
3    redaction of those employees.  So as I've gone forward, I have
4    not redacted those names.
5              So I stand corrected, Judge, you're right about that.
6              So, in any event, redaction logs come later.  It is --
7    they characterize my good-faith basis to -- They made an
8    invitation to do a rolling production; I'm doing that, I'm
9    moving forward.
10             So as I've gone forward I am not redacting things, as
11   we discussed, that I've redacted earlier.  That's not haphazard,
12   that's just a function of doing a rolling production, and trying
13   to get through a massive amount of material.
14             And I think at this point given the nature of the
15   redactions it's -- And to have to do a privilege log while I'm
16   still going through 40 gigabytes of e-mails is unreasonable;
17   it's an unreasonable demand.
18             Here is the problem:  I understand that they are
19   entitled to apart from the issues that have arisen at least as
20   of December 2nd, to issue a subpoena.  We didn't challenge the
21   subpoena.
22             I also offered to go in and begin a conversation, not
23   to bind anyone but to begin a conversation about their
24   regulatory concerns.  All of which I believe, including the
25   castle, can be addressed.  And I understand that they are not
```

1    going to want to resolve anything until they get more documents.

2              But I offered to go in and begin that conversation,

3    and start walking them through why I do not believe these are

4    regulatory concerns.  They rejected it.  They have a right to,

5    they don't have to do it that way.

6              Their position on December 2nd changed the landscape

7    in my view, and gave us cause to go to federal court and put the

8    brakes on this.  And say, Look, the only thing that we're

9    redacting with the exception of some employees' names early on,

10   just a handful of them, are the names of these contractors which

11   we don't want to disclose.  Which even to the Attorney General,

12   and even with confidentiality, in our view it requires a

13   different level of scrutiny because of the particular landscape

14   where not only are contractors and conference venues reluctant

15   to have their association with VDARE public, but we've cite in

16   our papers an instance where confidential information,

17   apparently, was provided to the Attorney General in another

18   case, and found it itself in the public sphere.  That is also a

19   concern, and the Attorney General has not addressed that.

20             I think that -- You know, we didn't move for a stay of

21   this proceeding, we could have.  I suppose we could still could,

22   if need be.  But our hope was that if we go to federal court,

23   and were heard on these issues that we can figure this out, and

24   simply see where we are with the federal case.

25             The December 2nd letter, I want to go back to that

P R O C E E D I N G S

```
 1   because it took us by somewhat -- It took us by surprise, and it
 2   certainly changed the landscape for us.
 3          Because while we were making the hardcopy production
 4   and working on the e-mails, and trying to complete production,
 5   they essentially said, You have 10 days.  Notwithstanding that
 6   the Attorney General asked me to put it in writing again, which
 7   I had already done.  Put in writing your objection to the
 8   identity of contractors; and I did it again.
 9          And I feel that was kind of a setup because as soon as
10   I put it in writing, they said, Well, December 2nd, you have 10
11   days, until December 12th to get us a complete redaction log,
12   and finish going through the 40 Gigabytes of e-mails.
13          It's not -- In my experience, this is not the way
14   these types of investigations go.  None of us may be happy with
15   the day-to-day progress of an investigation with compliance or
16   of compliance, but the parties work it out.
17          They work out things like a particular entity's
18   concern about the identity of contractors.  You get some now,
19   and if there's an issue you deal with it later.  You deal with
20   issues of timing when you have these circumstances.  I'm a small
21   outfit, a solo-practitioner on what really is a major project.
22          And you deal with a redaction log, if you need it,
23   later on.  Meanwhile, if you can't read something, call me; I'm
24   an approachable guy.
25          I want to be sure that I responded to the questions
```

P R O C E E D I N G S

1    that Your Honor mentioned upfront.

2              THE COURT:  So you haven't really responded to the

3    first question which is Petitioner's claim that the federal

4    court can't order enforcement of the subpoena, and, therefore,

5    the action is not duplicative and shouldn't be stayed.

6              MR. FRISCH:  Well, first of all, the issue -- Number

7    one, I have not looked at their Motion to Dismiss.  I haven't

8    looked at their papers.  And I haven't had a second to -- I

9    haven't even had a moment to digest them.

10             But the over arguing point is that our claim is that

11   the investigation, their conduct of it as of late has revealed

12   it to be unconstitutionally retaliatory.

13             Before we go forward, before we start talking about

14   providing responsive documents that contain the identities of

15   contractors, which we believe is a problem which will serve and

16   contribute to helping to put us out of business, and that we

17   shouldn't have to disclose absent a need.

18             I think the federal judge needs to review the

19   Complaint, and make a determination whether the Attorney General

20   is correct that the claim, as the papers say, is frivolous; I

21   disagree with that.

22             THE COURT:  Wait.

23             So I want that question specifically answered, so you

24   are -- It sounds to me like you are conceding that they are

25   correct that they can't get enforcement of the subpoena in

1   federal court.

2         MR. FRISCH:  I disagree with that because I think that

3   there's a number of things that could happen in federal court.

4   I need to look at their papers first.  My --

5         THE COURT:  Well, those arguments were made in the

6   papers filed in this case for VDARE.

7         I mean, I, obviously, haven't read the Motion to

8   Dismiss in the federal court case.  So I'm just addressing

9   myself to the argument that they raised in opposition to your

10  Motion For Dismissal or a stay.

11        MR. FRISCH:  I think that we cannot deal with their

12  compliance arguments until there's an initial determination or a

13  determination as to whether our claims of unconstitutional

14  retaliation are resolved.

15        THE COURT:  But you concede that the federal court

16  could not order compliance with the subpoena?

17        MR. FRISCH:  I'm not sure that I concede that.

18        I think that a federal court could address whether or

19  not our claim of -- and maybe -- I'm not trying to talk past

20  your question.  Just bear with me and let me talk out loud what

21  I'm thinking, and then we can back up.

22        So here is what could happen:  The federal judge could

23  say, You know what they are making compliance, here is what I'm

24  going to do:  I think they're right, I reject your claim of

25  Unconstitutional Retaliation.  But I agree with you that there's

24

```
 1   a claim that there's a higher level of scrutiny in identifying
 2   these contractors absent a need.
 3           So in that instance, essentially, while it may not be
 4   an actual Compulsion Order, essentially the effect of it would
 5   be that a Federal Judge is saying, This is protected.  The
 6   disclosure of the identities of these contractors is protected.
 7   Even though, again, hypothetically, I reject your claim of
 8   Unconstitutional Retaliation.
 9           So that may not be a specific direct answer to Your
10   Honor's question, but I think practically that's how it would
11   play out, or it could play out I should say.
12           THE COURT:  You said that you didn't ask for a stay of
13   this case in the federal court case.
14           Was there a request for an initial stay of enforcement
15   of the subpoena with your initial filing, like a TRO type of
16   request pending?
17           I mean, I know that there was a motion pending for
18   that.  But was there any kind of request to stay an enforcement
19   of the subpoena pending a termination of the Motions?
20           MR. FRISCH:  The answer is no.  There's injunctive
21   relief sought in the Complaint, but not in TRO.
22           THE COURT:  Okay.  Ms. Suvari, do you want to respond
23   to anything?
24           MS. SUVARI:  I do just want to respond quickly, if I
25   can, Your Honor.
```

**AA0768**

P R O C E E D I N G S                                          25

```
 1              First, in giving you the document, the critical

 2    December 2nd letter --

 3              THE COURT:  I have it.

 4              MS. SUVARI:  -- it is said Docket No. 29.

 5              And I think the letter is significant for two reasons.

 6    One, it does recite in some detail our exchanges with VDARE.  It

 7    includes, for example, a paragraph, you know, reaffirming that

 8    we have been discussing redactions and VDARE's approach to

 9    asserting protections for months.

10              And that we have now come to a point, as of December

11    2nd, where we need to see some more specific articulation of

12    exactly what was being withheld.

13              And that's based in part on what we had seen by them

14    in their actual production.  And there is a whole resuscitation

15    of what appeared to have been redacted that was a far afield of

16    particular contractor names, for example, if that, in fact, is

17    the primary concern.

18              But the other thing that's significant about this

19    letter is that it responds to the letter from VDARE on November

20    28th, which proposed the December 12th production deadline.

21    That is a deadline that came from VDARE, not from our office.

22              And if you read through back and forth in October and

23    November, you can see that VDARE is proposing deadlines, missing

24    its own proposals, and proposing new deadlines.

25              And then, finally, on November 28th says, and this is
```

**AA0769**

P R O C E E D I N G S

```
 1   at Docket number 28, I am working through the ESI material.  I
 2   propose to complete production of that material by December
 3   12th.
 4           So our letter on the 2nd essentially agrees to that
 5   plan, insists that redaction log be prepared at the same time.
 6   And then it says at the end, If this new deadline is not met, we
 7   will seek relief in court to enforce the subpoena.
 8           So it's not a change in the landscape.  It is not, you
 9   know, a sudden change of position from our office.  It is,
10   essentially, you know, a final warning that we cannot continue
11   to watch the target of an ongoing investigation make sort of
12   unilateral decisions about what will and will not be shared
13   within categories of material that we view as very relevant to
14   the questions we're investigating about:  The financial
15   operation of this corporation; the potential of related-party
16   conflicts, and things like that.
17           And it signals that we will come to court if we need
18   to.  And, in fact, this proceeding, this formal proceeding is
19   exactly the mechanism for seeking enforcement of a subpoena.  It
20   is perfectly capable of considering constitutional issues under
21   the New York Constitution or the Federal Constitution.
22           So it offers complete relief on all of these questions
23   to both parties in a way that federal court does not.
24           And I do also want to clarify that what VDARE is
25   saying in the Federal action is not that, you know, the subpoena
```

PROCEEDINGS                                                              27

```
 1   should be modified.  It is saying that the entire investigation
 2   should, effectively, be enjoined.  So that is a very different
 3   position than what's is being discussed today, which is largely
 4   a discovery dispute in our view.
 5            THE COURT:  And, specifically, the order that you're
 6   asking for from the Court then is that -- Are you asking them to
 7   -- Are you asking me to order them to do what they said they
 8   were going to do in the letter that you responded to on 12/2?
 9            MS. SUVARI:  Your Honor, we have asked in our petition
10   for an Order compelling compliance; and that's a very broad
11   request.
12            THE COURT:  Right.
13            MS. SUVARI:  I think we would be perfectly prepared to
14   send in a more specific order.
15            What we are really looking for is judicial supervision
16   because we find ourselves in a position of -- I don't know,
17   constantly having a back and forth about deadlines; and watching
18   the subject of our investigation fail to meet those deadlines
19   again and again.  So we're looking for some structure and some
20   enforcement of those commitments.
21            Also, I do want to offer that we would be happy to
22   submit our briefing, our recent briefing in the federal court
23   case, for the Court's review if that would be helpful.  So then
24   you can see our positions with respect to the availability of
25   any relief to be there in that action.
```

**AA0771**

P R O C E E D I N G S

```
1              THE COURT:  Okay.  So I'm going to reserve decision.
2              I would like the Petitioner to submit -- If it's
3     possible to do this today, I would appreciate that -- to submit
4     a proposed order that's more specific than the broad relief
5     that's requested in the Order to Show Cause.
6              And Mr. Frisch, I'm going to ask you, also, to submit
7     a proposed order, not staying it, because obviously that's not a
8     complicated order to issue, but if I were going to order
9     enforcement of the subpoena, what would you like that order to
10    look like?  What carve outs or protections to your clients would
11    you like to see in such an order?  So if you would submit a
12    proposed order along those lines.
13             And then if the parties want to submit to me the
14    Motion papers that have been filed in the federal court action,
15    certainly, I'd be happy to read that.
16             So you could either file all of this on NYSCEF, and/or
17    you can e-mail it to my court attorney.  I don't know if you
18    have her e-mail address.
19             MS. SUVARI:  I'm sure we could find it, Your Honor, if
20    you could tell us who that is.
21             THE COURT:  I'll give it to you.  It's Tara Tszap,
22    it's T-s-z-a-p, @Nycourts.gov.
23             MR. FRISCH:  And you said T-s-z-a-p, Your Honor?
24             THE COURT:  Correct.
25             I mean, I will look on NYSCEF, but I don't get a
```

P R O C E E D I N G S

1  verification when you file stuff on NYSCEF.

2        MR. FRISCH:  Your Honor, would you permit me to make

3  one comment in response to Ms. Suvari's rebuttal?

4        THE COURT:  Sure.

5        MR. FRISCH:  The only thing I want to say is -- Well,

6  there's probably more than one thing, but I don't want to

7  overstay my welcome.

8        Ms. Suvari wove into her discussion that the

9  identities of contractors are necessary or part of their

10  investigation.  And I think given the landscape of the case,

11  given the particular things that are happening in the real

12  world, at the very least we think the matter should be stayed to

13  see where we are with the federal case.

14        But, at the very least they should be required to

15  explain why that is; why the identity of non-related contractors

16  is necessary.  There might be a particular instance where they

17  have concerns about the amount of money paid, or they think it's

18  a related party or something else that I can't think of.  But,

19  that's the heart of controversy.

20        And I just want to state again, apart from Your Honor

21  called me on the fact that there were some employee's names

22  initially redacted, I think it's been reviewed, ultimately, they

23  will be unredacted going forward.  If we continue, I'll have to

24  go back and unredact them.

25        But the only redactions, apart from one or two

P R O C E E D I N G S

```
 1   attorney-client things and the Board Minutes are identity of
 2   contractors, and not all of them.  Just ones that are already in
 3   the public sphere, or for which there are otherwise confidential
 4   concerns.  And it's a real issue, it's a genuine issue with
 5   regard to VDARE.
 6        THE COURT:  I don't mean to continue this,
 7   necessarily, but I really don't -- Normally, I mean, it's very
 8   typical when these kinds of concerns are present for the parties
 9   to enter a confidentiality agreement which would cover the
10   Respondent's concerns, and provide for remedy in the event that
11   there was -- you know, you said there was one case where you
12   believe that there was a leak from the AG's office.  But a
13   confidentiality agreement or order would provide your client
14   with, you know, a redress for that, or it would certainly, you
15   know, be something that the Court would take very seriously if
16   there was an allegation that such an order was breached.
17        MR. FRISCH:  The problem is that I don't understand
18   why they need to know the identities of these contractors.  As
19   soon as they reach out to them, or as soon as they take any
20   step, and they haven't answered the question about the leaking
21   and the other investigation, it could literally put VDARE out of
22   business.  There are sub-service providers where they have been
23   deplatformed to such an extent.  And there's just a limited
24   number -- and like in one instance that I'm thinking of, one.
25   But in all of these instances, there are limited service
```

**AA0774**

```
 1   providers out there.  It's not as if they can turn and go to the
 2   next, and go to the next.  And even that is time consuming and
 3   difficult.
 4           Sorry if I'm overstaying my welcome, Your Honor; I
 5   don't want to do that.  Your Honor has been generous with your
 6   time.
 7           But I think some of these same things came up in the
 8   Evergreen case, which we cite in our papers.  A confidentiality
 9   agreement is not necessarily an answer.  We could do the same
10   thing with donors.  We could do the same thing with the writers,
11   and the commentary contributors.
12           THE COURT:  But they are not looking for that
13   information now.
14           MR. FRISCH:  But it shows that confidentiality is not
15   always the answer.
16           If they have a particular reason, I've invited them to
17   say it to me.  What is it you need with regard to these
18   non-related contractors?  Why is it important that you have that
19   information?
20           My only point, given the extra time Your Honor has
21   given me, is to highlight that as an issue here, which I think
22   is unresolved.  And I think that it requires more than them
23   saying, We want it, or we're entitled to it.  Why do you want
24   it?  Why are you entitled to it?
25           And this is not, you know, stonewalling the
```

**AA0775**

1   compliance.  We've given you all of the hardcopies.  I was on my

2   way to going through all 40 gigabytes; I was too ambitious in

3   setting a deadline.  Although, we were well on our way to

4   completing that.

5           This is the only issue, and they have not explained

6   either why they need it or why we can't visit it later down the

7   line after you've completed the rest of your investigation; it's

8   a really serious problem.

9           THE COURT:  Ms. Suvari, do you want to address that

10  question?

11          MS. SUVARI:  I would like to address that very quickly

12  if I can, Your Honor.

13          I don't think that is a fair presentation of what has

14  been done in VDARE's production to date, or the position that

15  our office has taken.

16          With respect to the question of why we need to see

17  complete financial records of this organization, the answer is

18  because that is the exact problem we're focused on here.  And

19  this is an organization, and, you know, the bases for this

20  concern is detailed in all of our papers to the Court.  This is

21  an organization that has already effectively conceded that there

22  are significant transactions moving internal assets from control

23  at VDARE into things, for example, like for-profit corporations

24  created by VDARE principals.

25          So the charitable assets are moving from VDARE into

1   something that is no longer a charitable entity; and that is run

2   by the current VDARE president exclusively.

3          So it is impossible for us to conduct a meaningful

4   review when we are being given records that are very heavily

5   redacted, far beyond -- You know, in listening to this

6   presentation today I think you could get the sense that we are

7   getting complete disclosure except for particular names, and

8   that is absolutely not the case.  The December 2nd letter from

9   our office makes that clear, we are getting material that has --

10  you know, that is blacked out, it's entirely blocked out on

11  certain pages, there are hundreds of pages with redactions that

12  are falling on things like credit card statements, bank account

13  statements for accounts held by VDARE's principals personally,

14  not by VDARE, not related to contractors.

15         So the sense that we are down to one particular

16  category of information I think is not accurate.  And that is

17  part of why we have been pressing in the way that we have for a

18  more specific showing from VDARE in the form of a redaction log

19  that would allow us to actually evaluate what they are saying

20  about the material that they are trying to withhold, and the

21  bases for withholding it.  So I just want to make sure that

22  that's clear on today's record.

23         THE COURT:  So you disagree with Mr. Frisch's

24  characterization that the only thing that has been redacted is

25  the names of unrelated contractors?

```
 1                MS. SUVARI:  We are, Your Honor.

 2                And we have said that to VDARE in our letter exchanges

 3  with him.

 4                MR. FRISCH:  Okay.  And I dispute that, Your Honor.

 5                THE COURT:  Okay.  And the 600 pages -- I don't know

 6  why I'm asking, but the 600 pages is not attached anywhere as an

 7  exhibit to what's been filed; correct?

 8                MS SUVARI:  Which 600 pages are you referring to?  You

 9  mean the redacted pages?

10                THE COURT:  Yes.

11                MS. SUVARI:  No, we have not submitted samples from

12  their hardcopy production.

13                THE COURT:  All right.  Thank you both for your

14  arguments, I appreciate them.  I am going to reserve decision.

15                If you could upload and/or e-mail those additional

16  documents by the end of the day, I would greatly appreciate it.

17                MR. FRISCH:  Your Honor, I have to leave.  I have a

18  court appearance in the Brooklyn Federal Court in the afternoon.

19  So if I could have until tomorrow to submit --  I think what

20  Your Honor wants is what a proposed order would look like if you

21  order enforcement, and I can do that.

22                If Your Honor will permit, I can do it by the close of

23  business tomorrow.

24                THE COURT:  All right, that's fine.

25                MR. FRISCH:  Thank you.
```

**AA0778**

```
1              MS. SUVARI:  Thank you, Your Honor.  Bye-bye.

2                    *      *      *      *

3              The foregoing is hereby certified to be a true and

4    accurate transcript of the proceedings as transcribed from the

5    stenographic notes.

6                    *      *      *      *

7

8              _____

9                    LORETTA KRAVCHENKO
                      SENIOR COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**E**XHIBIT **H**

Case 1:22-cv-01337-JLS-JJM   Document 35-3   Filed 04/10/23   Page 97 of 12

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | **HON. SABRINA KRAUS** | PART 57TR |
| | *Justice* | |

-------------------------------------------------X

INDEX NO. 453196/2022

MOTION DATE 1/19/2023

MOTION SEQ. NO. 001 002

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK

Plaintiff,

- v -

VDARE FOUNDATION, INC.,

Defendant.

-------------------------------------------------X

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 33, 53, 56, 57, 59, 60, 61

were read on this motion to/for                    ENFORCEMENT                    .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 58

were read on this motion to/for                    DISMISSAL                    .

## BACKGROUND

Petitioner commenced this special proceeding to compel compliance with a subpoena

duces tecum dated June 23, 2022 (the "Subpoena") issued in conjunction with an investigation

into the activities of Respondent, a not-for-profit corporation.

## ALLEGED FACTS

Respondent is a New York charitable not-for-profit corporation that incorporated in New

York in 1999. In 2000, Respondent, then known as, the Lexington Research Institute, Limited,

applied for and received recognition of its tax-exempt status from the IRS as a 501(c)(3)

charitable entity. Respondent did not register with the Attorney General's office until 2009.

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 1 of 11

**AA0781**

1 of 11

Case 1:22-cv-01837-JLS-JJM Document 85-85 Filed 04/10/23 Page 87 of 12

In its application for federal tax-exempt status, Respondent stated its plan to operate from offices in New York and listed two of its four directors at addresses in New York City. Respondent described its primary purpose as creating a publication web page and magazine, with editorial content focusing on foreign and domestic policy issues.

In 2019, Respondent reported a six-fold increase in revenue, from $700,000 in 2018 to approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-advised fund. In early 2020, Respondent spent $1.4 million of these newly received funds on the purchase of the Berkeley Springs Castle, a medieval-style castle located in West Virginia.

Public postings by Respondent Chairman Peter Brimelow and others indicate that he and his family have used the castle as their primary residence since at least March 2020. During this same period, Respondent also substantially increased payments to Brimelow and to third-party, for-profit companies he controls. In 2019, Brimelow's reported salary more than doubled and comprised roughly one third of Respondent's operating expenditures. Respondent separately reported spending tens of thousands of dollars on office expenses in 2019, as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based at Brimelow's residential home address.

In December 2020, Respondent conveyed the entirety of the Berkeley Springs Castle property to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a Respondent director, five months earlier. Respondent conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a non-profit corporation. Respondent conveyed the remaining land, consisting of eight parcels, to BBB, LLC, a for-profit corporation.

Based on the information it had obtained, the Attorney General began an investigation of Respondent and its leadership for potential violations of the New York law applicable to

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 2 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

AA0782
2 of 11

charities. The Subpoena seeks: documents concerning Respondent's organizational structure;

compliance conflict-of-interest policy requirements under New York law, and financial

operations; its purchase and conveyance of the Berkeley Springs Castle; and transactions

between Respondent and entities controlled by the Brimelows.

Respondent originally took the position that the Subpoena was unlawful and should be

withdrawn. On September 19, 2022, new counsel for Respondent agreed to comply with the

Subpoena but asserted that a significant volume of electronically-stored and hard copy

documents needed to be reviewed. Respondent made its first production that day consisting of 27

documents produced without Bates numbers and bearing unmarked redactions. No log was

provided to identify or explain the redactions.

In the twelve weeks since its first September delivery, Respondent has produced

approximately 6,000 pages from its hard copy records. It has redacted that material without any

explanation for how material was chosen for redaction. Petitioner assets that the redactions are

extensive and have been applied across almost every category of document produced, including

board meeting minutes, bank statements, internal accounting ledgers, credit card statements,

invoices, financial records for the limited liability company (Happy Penguins LLC) from which

Respondent has historically leased Peter Brimelow's services, and bank statements to accounts

held personally by Peter and Lydia Brimelow.

On October 31, 2022, Lydia Brimelow represented that, with limited exceptions,

Respondent's hard copy production was complete, and identified 22 unique email accounts

containing approximately 40 gigabytes of potentially responsive electronically stored

information. Respondent's counsel stated that review of that material would be completed by

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 3 of 11

AA0783

3 of 11

Case 1:22-cv-01337-FJS-CFH  Document 33-3  Filed 04/10/23  Page 5 of 12

November 21, 2022. Respondent subsequently proposed December 12, 2022, as a new deadline for completing email production.

On December 2, 2022, Petitioner wrote to Respondent, summarizing its concerns with the pace and scope of the production, including its extensive redactions, and demanded that Respondent complete its subpoena compliance and produce a redaction log by December 12, 2022.

On December 12, 2022, Respondent filed an action in United States District Court for the Northern District of New York against Petitioner [*VDARE Foundation, Inc. v. James*, 1:22-cv-01337 (FJS)], alleging, among other things, that Petitioner's demands for certain disclosures threaten Respondent's ability to conduct business; and that Petitioner's subpoena is a retaliatory pretext aimed at interfering with Respondent's rights to freedom of speech and association. The federal complaint seeks a declaration that Subpoena violates Respondent's first amendment rights, an injunction preventing Petitioner's enforcement of the Subpoena and damages.

On December 16, 2022, Petitioner commenced this special proceeding.

## PENDING APPLICATIONS FOR RELIEF

Petitioner seeks an order compelling Respondent to comply with the investigative Subpoena duces tecum dated June 23, 2022.

Respondent has moved for an order dismissing this proceeding, or alternatively staying the proceeding pending resolution of the Federal Action.[1]

On January 19, 2023, the court heard oral argument on the motions and reserved decision. For the reasons stated below, Petitioner's motion to compel is granted and Respondent's motion for a stay or dismissal is denied.

---

[1] At argument Respondent withdrew its request for dismissal and limited its request to a stay pending the Federal Court litigation.



Case 1:22-cv-01837-JLS-JJM Document 33-83 Filed 04/10/23 Page 57 of 12

## DISCUSSION

The requirements for the issuance of an investigatory subpoena duces tecum are "(1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry" (*Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d 143, 147, 541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski,* 59 N.Y.2d 35, 462 N.Y.S.2d 836, 449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.,* 23 N.Y.2d 916, 298 N.Y.S.2d 315, 246 N.E.2d 166).

*Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2017).

The Attorney General has broad and well-established authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law §§ 63(12), 175; N-PCL § 112; EPTL § 8-1.4(m). *See also Temple of the Lost Sheep*, 148 Misc. 2d at 828–29. "Moreover, in evaluating the Attorney General's justification for the issuance of a subpoena, there is a presumption that (s)he is acting in good faith" (*Matter of Dental Coop. v. Attorney–General of State of N.Y.,* 127 A.D.2d 274, 280; *see Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d at 147). The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828

CPLR §2308(b) provides "… if a person fails to comply with a subpoena which is not returnable in a court, the issuer or the person on whose behalf the subpoena was issued may move in the supreme court to compel compliance. If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars."

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith. *Ryan*

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 5 of 11

AA0785

5 of 11

Case 1:22-cv-01337-JLR-OTW Document 35-8 Filed 04/10/23 Page 7 of 12

*v. Lefkowitz*, 18 N.Y.2d 977, 979 (1966); *Hogan v. Cuomo*, 67 A.D.3d 1144, 1145 (3d Dep't 2009); *Anheuser-Busch. Inc. v. Abrams*, 71 N.Y.2d 327, 332 (1988)), aff'd 205 A.D.3d 625 (2022).

Petitioner's subpoena request must demonstrate a "reasonable relationship to the subject matter under investigation and the public interest to be served." *Giardina v. James*, 185 A.D.3d 451 (1st Dep't 2020). A party must respond to an investigative subpoena unless the information sought is "utterly irrelevant to any proper inquiry." *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 331–32 (1988).

New York State has a public policy interest in ensuring the robust regulation of tax-exempt charitable entities like Respondent and Petitioner has authority to supervise and investigate such entities when misconduct is suspected.

Petitioner's Subpoena is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations. The Not-for-Profit Corporation Law, for example, provides that entities like Respondent may be formed only for charitable purposes, *see*, *e.g.*, N-PCL §§ 202, 204, 205, and that charitable assets may not be distributed to members, directors or officers, N-PCL § 515(a). Charitable entities are also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition" of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-PCL § 715); and a process for managing conflicts of interest. (N-PCL § 715-a).

The Subpoena's requests demand the type of material that will permit Petitioner to determine whether Respondent has complied with these requirements, including complete copies

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY Page 6 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

AA0786
6 of 11

of Respondent's annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review. The documents called for will permit Petitioner to determine whether there has been any diversion of charitable assets—for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries. Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that, inter alia, a charity does not solicit contributions under false pretenses or use the contributions it receives in a manner that is not "substantially consistent" with the charity's stated purposes. See generally Executive Law § 172-d.

Respondent has raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights (*see Matter of Full Gospel Tabernacle v. Attorney–General of State of N.Y.,* 142 A.D.2d 489, 493, 536 N.Y.S.2d 201; *St. German of Alaska E. Orthodox Catholic Church v. United States,* 653 F.Supp. 1342, 1346–1347 [S.D.N.Y.]; *see also Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL–CIO,* 72 N.Y.2d 307, 532 N.Y.S.2d 722, 528 N.E.2d 1195). However, Respondent makes this argument on behalf of its donors and Petitioner has agreed, initially to redact donors' and volunteers' identities. Respondent has not established that the Subpoena would impair Respondent's own First Amendment rights.

Additionally, Respondent's filings themselves underscore the reasonableness of the Subpoena. Respondent admits the critical facts that first triggered Petitioner's scrutiny— Peter Brimelow, Respondent's founder and director, and his wife, Lydia Brimelow, also a director,

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 7 of 11

AA0787

7 of 11

Case 1:22-cv-01875-JLS-JHR Document 23-83 Filed 04/10/23 Page 9 of 12

used and continue to use a $1.4 million charitable asset as their personal residence. See Frisch Aff. (Doc. No. 37).

Respondent argues that the Brimelows paid rent to live in the cottage beginning in April 2021, however the lease is between Lydia Brimelow and BBB, LLC, a West-Virginia for-profit corporation she manages, and Lydia Brimelow signed the document as both landlord and tenant. Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia Brimelow as manager).

Respondent's motion and accompanying papers fail to meet its burden of establishing the Subpoena's invalidity. Respondent, which has partially complied with the subpoena for months, has not established why providing a redaction log for its already-produced documents raises any First Amendment concerns or why continuing production would pose a threat to its existence.

Although Respondent argues that redactions are required to protect the identities of contractors—including writers who contribute to the website—these are precisely the records the Petitioner seeks to examine in its investigation of Respondent's alleged organizational misconduct. To the extent anonymity is used to mask violations of the law, "it is unprotected by the First Amendment." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010).

For example, the only board member among four who is not a Brimelow family member is a known contributor. The Attorney General may probe this contributor's compensation as part of its investigation of conflicts of interest and board independence. And the Attorney General may seek the identities of other contributors to determine whether further conflicts of interest may exist.

Respondent's reliance on *Americans for Prosperity v. Bonta*, 141 S.Ct. 2373 (2021), is equally unavailing. That decision concerned only donor disclosures in statewide annual filing

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 8 of 11

AA0788
8 of 11

Case 1:22-cv-01337-DG-JRC Document 65-8 Filed 04/10/23 Page 210 of 12

requirements, while expressly permitting subpoenas seeking the same information as part of a

targeted investigation. *See Ams. for Prosperity Found.*, 141 S. Ct. at 2386–87. Moreover,

Petitioner has indicated a willingness to enter into a stipulation /order of confidentiality to further

address any of Respondent's concerns.

Finally, Respondent presents no compelling basis for a stay of this proceeding in its

moving papers, and acknowledged at oral argument it has not sought a stay of this proceeding

from the Federal District Court.

Based on the foregoing, Respondent's motion for a stay is denied and Petitioner's motion

to compel is granted.

WHEREFORE it is hereby:

ORDERED Respondent VDARE Foundation, Inc. ("VDARE") shall comply with the

Subpoena, subject to the agreement of July 27, 2022, memorialized in Exhibit R to the

Affirmation of Yael Fuchs at Dkt. No. 22, that VDARE may redact the following from

otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE)

attendees present at VDARE events conducted at or broadcast from the 276

Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying

information in any responsive record of private contributions to the organization and/or

purchases from the October 16, 2021 "Castle Auction" (transaction amounts, dates, and

other details must be disclosed); and it is further

ORDERED that such redactions are without prejudice to Petitioner's right to seek

modification of these agreed redaction terms by written application to the Court on notice to

VDARE; and it is further

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY        Page 9 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

**AA0789**
9 of 11

Case 1:22-cv-01337-JSR-OTW Document 55-8 Filed 04/10/23 Page 217 of 12

ORDERED that on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to Petitioner, in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log; and it is further

ORDERED that on or before February 24, 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter (Dkt. No. 26); on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production; and it is further

ORDERED that the parties, if so advised, may forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court; and it is further

ORDERED that, within 20 days from entry of this order, Petitioner shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh);]; and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 10 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

AA0790
10 of 11

ORDERED that this constitutes the decision and order of this court.

2023012314542958KRAU56C740D2CD5844BFE88AF03FF4E118495

_____
**1/23/2023**
**DATE**

_____
**SABRINA KRAUS, J.S.C.**

| CHECK ONE: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 11 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

**AA0791**
11 of 11

**EXHIBIT I**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the
State of New York,

                                        Petitioner,

                    -against-

VDARE FOUNDATION, INC.,

                                        Respondent.

Index No. 453196/2022

(Kraus, J.S.C.)

STIPULATION AND
[PROPOSED] ORDER FOR
THE PRODUCTION OF
CONFIDENTIAL
INFORMATION

---

This matter having come before the Court by stipulation of Petitioner the People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), and Respondent The VDARE Foundation, Inc. ("VDARE") (individually a "Party" and together, the "Parties") for the entry of a confidentiality order limiting the review, copying, dissemination and filing of confidential and/or proprietary documents and information to be produced by VDARE in response to the investigative subpoena dated June 23, 2022 (served June 24, 2022) and issued by OAG; and the Parties, by, between and among their respective counsel, having stipulated and agreed to the terms set forth herein, and good cause having been shown;

    IT IS hereby ORDERED that:

    1.    This Stipulation is being entered into to facilitate the production, exchange and discovery of documents and information that the Parties agree merit confidential treatment (hereinafter the "Documents" or "Testimony").

    2.    VDARE may designate Documents produced, or Testimony given, in connection with this action as "confidential," either by notation on each page of the Document so designated, statement on the record of the examination, or written advice to the respective undersigned counsel for the Parties hereto, or by other appropriate means.

**AA0793**

3.      As used herein, "Confidential Information" shall mean all Documents and Testimony, and all information contained therein, and other information designated as confidential, if such Documents or Testimony contain proprietary business information or other sensitive information the disclosure of which would, in the good faith judgment of VDARE or its counsel, be detrimental to the conduct of VDARE's business or the business of any contractor engaged by VDARE to provide professional services to VDARE.

4.      OAG may, at any time, notify VDARE that OAG does not concur in the designation of a document or other material as Confidential Information.  If VDARE does not agree to declassify such document or material within seven (7) days of the written request, OAG may move before the Court for an order declassifying those documents or materials.  If no such motion is filed, such documents or materials shall continue to be treated as Confidential Information.  If such motion is filed, the documents or other materials shall be deemed Confidential Information unless and until the Court rules otherwise.  Notwithstanding anything herein to the contrary, VDARE bears the burden of establishing the propriety of its designation of documents or information as Confidential Information.  To the extent OAG is successful on a motion for declassify such documents or materials, OAG shall be entitled to the legal fees and costs incurred in making such motion.

5.      Notwithstanding VDARE's designation, documents and information produced to OAG that have been designated as "Confidential Information" may be subject to disclosure pursuant to, without limitation, New York Public Officers Law § 87 and New York Criminal Procedure Law § 245. Confidential Information as defined herein may be provided by OAG to law enforcement agencies in response to inquiries or as part of a referral in connection with an actual or potential law enforcement investigation without prior notice to VDARE.  In such instance, OAG

will notify the recipient of VDARE's confidentiality designation and will provide them with a copy of this Agreement.

6.     Upon a request by VDARE, OAG will deem "Confidential Information" produced to OAG to be subject to a request by VDARE for an exemption under New York Public Officers Law §§ 87(2)(b) and 89(2) or 87(2)(d), which provides certain protections from disclosure under the Freedom of Information ("FOIL") as outlined in New York Public Officers Law § 89(5).  Unless such "Confidential Information" has been declassified in accordance with paragraph 4 above, "upon the request of any person for a record excepted from disclosure," OAG will: provide notice to VDARE of its intention to determine whether the exception will be granted or whether any other exemptions under FOIL apply;  permit VDARE, within ten business days of receipt of such notice, to submit a written statement of the necessity for granting or continuing the exception; and within seven days of OAG's receipt of VDARE's written statement, or of the expiration of the ten-day period for VDARE's submission of such statement, issue a written determination granting, continuing or terminating the exception and stating reasons therefor. Finally, in connection with any FOIL request, OAG will provide VDARE with a reasonable opportunity to object, or seek court protection, as provided in New York Public Officers Law § 89(5)(b), in addition to any other remedy which may exist at law or in equity.

7.     Where OAG is required pursuant to New York Criminal Procedure Law § 245.20(2) to disclose "Confidential Information" in connection with a criminal matter, OAG will notify the recipient of VDARE's confidentiality designation, will provide them with a copy of this Agreement. OAG will not be deemed to have violated this Stipulation for failing to provide notice to VDARE.

**AA0795**

8. Except with the prior written consent of VDARE, by Order of the Court or as otherwise required by law, including without limitation as set forth in paragraph 7 above, Confidential Information shall not be furnished, shown or disclosed to any person or entity except to:

(a) personnel of the Parties actually engaged in this investigation or other proceeding herein and who have been advised of their obligations hereunder;

(b) counsel for the Parties to this action and their associated attorneys, paralegals and other professional and non-professional personnel (including support staff and outside copying services) who are directly assisting such counsel in the course of this investigation, are under the supervision or control of such counsel, and who have been advised by such counsel of their obligations hereunder;

(c) expert witnesses or consultants retained by the Parties or their counsel to furnish technical or expert services in connection with this investigation or to give testimony with respect to the subject matter of this investigation or in connection with any other proceeding herein;

(d) the Court and court personnel;

(e) witnesses and their counsel in any interview or examination taken by OAG, as well as any officer before whom such examination is taken, including stenographic reporters and any necessary secretarial, clerical or other personnel of such officer;

(f) any governmental body within the State of New York, any other State of the United States (collectively, "Governmental Body") pursuant to a law enforcement request, whether by subpoena or otherwise; and

(g) any other person agreed to by VDARE.

9. Confidential Information shall be utilized by OAG and its counsel only for

purposes of this investigation, regulation of any person or entity subject to OAG regulatory oversight, and any other litigation, investigations, and/or referrals to law enforcement agencies for law enforcement purposes, and otherwise for no other purposes.

10.      All investigative examinations shall presumptively be treated as Confidential Information and subject to this Stipulation during the examination and for a period of thirty (30) days after a transcript of said examination is received by counsel for each of the Parties. At or before the end of such thirty-day period, the examination shall be classified appropriately.  If any portion of an examination designated as Confidential Information is challenged, it shall be subject to the procedures set forth in paragraph 4, *supra*.

11.      Filing:

(a)      A Party who seeks to file with the Court any examination transcripts or other documents which have previously been designated as comprising or containing Confidential Information shall file the document, pleading, brief, or memorandum on the NYSCEF system in redacted form until the Court renders a decision on any motion to seal (the "Redacted Filing"). If VDARE fails to move to seal within seven (7) days of the Redacted Filing, the Party making the filing shall take steps to replace the Redacted Filing with its corresponding unredacted version.

(b)      If VDARE makes a timely motion to seal, and the motion is granted, the filing Party shall ensure that all documents (or, if directed by the court, portions of documents) that are the subject of the order to seal are filed in accordance with the procedures that govern the filing of sealed documents on the NYSCEF system.  If VDARE's timely motion to seal is denied, then the Party making the filing shall take steps to replace the Redacted Filing with its corresponding unredacted version.

(c)      Any Party filing a Redacted Filing in accordance with the procedure set forth in this

paragraph 11 shall, contemporaneously with or prior to making the Redacted Filing, provide the other Parties and the Court with a complete and unredacted version of the filing.

(d)     All pleadings, briefs or memoranda which reproduce, paraphrase or disclose any materials which have previously been designated by a party as comprising or containing Confidential Information shall identify such documents by the production number ascribed to them at the time of production.

12.     With the exception of any Governmental Body or other person or entity that receives Confidential Information pursuant to a disclosure by the OAG as set forth in paragraph 5 above, any person receiving Confidential Information shall not reveal or discuss such information to or with any person not entitled to receive such information under the terms hereof and shall use reasonable measures to store and maintain the Confidential Information so as to prevent unauthorized disclosure.

13.     Any document or information that may contain Confidential Information that has been inadvertently produced without identification as to its "confidential" nature as provided in paragraphs 2 and/or 10 of this Stipulation, may be so designated by the party asserting the confidentiality privilege by written notice to the undersigned counsel for OAG identifying the document or information as "confidential" within a reasonable time following the discovery that the document or information has been produced without such designation.

14.     Extracts and summaries of Confidential Information shall also be treated as confidential in accordance with the provisions of this Stipulation.

15.     The production or disclosure of Confidential Information shall in no way constitute a waiver of VDARE's right to object to the production or disclosure of other information in this investigation or in any other proceeding. Nothing in this Stipulation shall operate as an admission

**AA0798**

by any Party that any particular document or information is, or is not, confidential. Failure to challenge a Confidential Information designation shall not preclude a subsequent challenge thereto.

16.     In connection with their review of electronically stored information and hard copy documents for production (the "Documents Reviewed") the Parties agree as follows:

(a)     to implement and adhere to reasonable procedures to ensure documents reviewed that are protected from disclosure pursuant to CPLR 3101(c), 3101(d)(2) and 4503 ("Protected Information") are identified and withheld from production.

(b)     if Protected Information is inadvertently produced, VDARE shall take reasonable steps to correct the error, including a request to OAG for its return.

(c)     upon request by VDARE for the return of Protected Information inadvertently produced OAG shall promptly return the Protected Information and destroy all copies thereof. Furthermore, OAG shall not challenge either the adequacy of VDARE's document review procedure or its efforts to rectify the error, and OAG shall not assert that its return of the inadvertently produced Protected Information has caused it to suffer prejudice.

17.     This Stipulation is entered into without prejudice to the right of any Party to seek relief from, or modification of, this Stipulation or any provisions thereof by properly noticed motion to the Court or to challenge any designation of confidentiality as inappropriate under the Civil Practice Law and Rules or other applicable law.

18.     This Stipulation shall continue to be binding after the conclusion of this investigation except that there shall be no restriction on documents that are used as exhibits in Court (unless such exhibits were filed under seal); and (b) that OAG may seek the written permission of VDARE or further order of the Court with respect to dissolution or modification of

**AA0799**

the Stipulation. The provisions of this Stipulation shall, absent prior written consent of the parties, continue to be binding after the conclusion of the investigation.

19.     Nothing herein shall be deemed to waive any privilege recognized by law or shall be deemed an admission as to the admissibility in evidence of any facts or documents revealed in the course of disclosure.

20.     This Stipulation shall not be interpreted in a manner that would violate any applicable rules of professional conduct.

21.     If OAG is called upon to produce Confidential Information in order to comply with a court order, subpoena, or other direction by a court, administrative agency, or legislative body, OAG shall (a) give written notice by overnight mail and either email or facsimile to the counsel for VDARE within five (5) business days of receipt of such order, subpoena, or direction, and (b) give VDARE five (5) business days to object to the production of such Confidential Information, if VDARE so desires. Notwithstanding the foregoing, nothing in this paragraph shall be construed as requiring any party to this Stipulation to subject itself to any penalties for noncompliance with any court order, subpoena, or other direction by a court, administrative agency, or legislative body.

22.     This Stipulation may be changed by further order of this Court and is without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.

23.     This Stipulation may be signed in counterparts, which, when fully executed, shall constitute a single original, and electronic signatures shall be deemed original signatures.

**AA0800**

Dated: _____, 2023      LETITIA JAMES
Attorney General of New York


By: _____
    James G. Sheehan
    Yael Fuchs
    Catherine Suvari
    Assistant Attorneys General
    28 Liberty Street
    New York, NY 10005
    Tel: (212) 416-xxxx

*Attorneys for Petitioner State of New York*


Dated: _____, 2023      LAW OFFICES OF ANDREW J. FRISCH, PLLC


By: _____
    Andrew J. Frisch
    40 Fulton Street, 17th Floor
    New York, New York 10038
    Tel: (212) 285-8000

*Attorneys for Respondent VDARE Foundation, Inc.*

**AA0801**

**EXHIBIT J**

**AA0802**

FILED: APPELLATE DIVISION - 3RD DEPT 02/07/2023 01:35 PM 2023-00672
NYSCEF DOC. NO. 3                                                  RECEIVED NYSCEF: 02/07/2023

**SUMMARY STATEMENT ON APPLICATION FOR**
**EXPEDITED SERVICE AND/OR INTERIM RELIEF**
(SUBMITTED BY MOVING PARTY)

Date: February 6, 2023                                   Case # 2023-00672

Title of Matter: Attorney General of the State of New York, Petitioner,          Index/Indict/Docket # 453196/2022

v. VDARE Foundation, Inc., Respondent

Appeal by Respondent from

Order ☑  Judgment ☐  Decree ☐   of   Supreme ☐  Surrogate's ☐  Family ☐

County New York

Court entered on Jan 23, 20 23

Name of Judge Sabrina Kraus

Notice of Appeal filed on Feb 6, 20 23

If from administrative determination, state agency _____

Nature of action or proceeding: Special proceeding to compel subpoenaed disclosures

Provisions of: ☑ order  ☐ judgment  ☐ decree   appealed from _____

(1) denial of respondent's application to stay matter pending respondent's first-filed federal case; and (2) grant of petitioner's motion to compel

This application by appellant respondent is for stay of Order (1) denying stay of proceeding pending resolution of respondent's first-filed federal case and (2) granting motion to compel and ordering disclosures on February 10 and 24, 2023.

If applying for a stay, state reason why requested The court below declined to stay this matter pending resolution of respondent's first-filed federal claim against the Attorney General and compelled constitutionally protected disclosures

Has any undertaking been posted No          If "yes", state amount and type _____

Has application been made to court below for this relief No        If "yes", state Disposition _____

Has there been any prior application here in this court No        If "yes", state dates and nature _____

Has adversary been advised of this application Yes        Does he/she consent No

**AA0803**

| Attorney for Movant | | Attorney for Opposition |
|---|---|---|

Name    Andrew J. Frisch, The Law Offices of Andrew J. Frisch, PLLC       **Yael Fuchs, Office of Attorney General**

Address   40 Fulton Street, 17th Floor        28 Liberty Plaza

 New York, New York 10038        New York, New York 10005

Tel. No.   212-285-8000 (cell 917-826-4668)        212-416-8391

Appearing by    Andrew J. Frisch        AAG Yael Fuchs

**(Do not write below this line)**

DISPOSITION

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

| _____ | _____ |
|---|---|
| Justice | Date |

Motion Date _____ Opposition _____ Reply _____

EXPEDITE _____ PHONE ATTORNEYS _____ DECISION BY _____

ALL PAPERS TO BE SERVED PERSONALLY.

                                   _____

                                         Court Attorney

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
- ---------------------------------------------------------------- x

People of the State of New York, by LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

                     Petitioner-Appellee,

                  - against -

VDARE FOUNDATION, INC.

                   Respondent-Appellant.

- ---------------------------------------------------------------- x

**Appellate Division
Docket No. 2023-00672**

**New York County
Index No. 453196/2022**


### AFFIRMATION IN SUPPORT OF APPLICATION
### FOR A STAY AND INTERIM RELIEF PENDING APPEAL


                      Andrew J. Frisch
                      The Law Offices of Andrew J. Frisch, PLLC
                      40 Fulton Street, 17th Floor
                      New York, New York 10038
                      (212) 285-8000
                      *afrisch@andrewfrisch.com*

                      *Attorney for Respondent-Appellant*

**AA0805**

Table of Contents

Introduction............................................................................................. 4

A.    The OAG's Demand for Immediate Disclosure of Constitutionally Protected
      Information Extraneous to Any Legitimate Investigative Need Warrants the
      Inference that the OAG's Pursuit of VDARE is Retaliation for
      VDARE's Exercise of its Constitutional Rights................................................... 5

B.    The OAG's Erroneous Challenge to New York's First-Filed Rule ........................ 12

C.    The Court Below Unduly Deferred to the OAG at the Expense of VDARE's
      Right to Seek Redress in Federal Court for the State's Unconstitutional
      Retaliation and Demand for Disclosures of Constitutionally Protected
      Information Extraneous to Any Truly Overriding Investigative Need .................... 15

Conclusion.......................................................................................... 22

**AA0806**

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
- ---------------------------------------------------------------- x

People of the State of New York, by LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

                            Petitioner-Appellee,

                    - against -

VDARE  FOUNDATION,  INC.

                       Respondent-Appellant.

- ---------------------------------------------------------------- x

**Appellate Division
Docket No.**

**New York County
Index No. 453196/2022**

## AFFIRMATION IN SUPPORT OF APPLICATION
## FOR A STAY AND INTERIM RELIEF PENDING APPEAL

        **ANDREW J. FRISCH**, an attorney duly admitted to practice in the courts of

the

State of New York since 1985, affirms the following statements to be true under penalty of

perjury:

        1.      I am the principal of The Law Offices of Andrew J. Frisch, PLLC, counsel

to Respondent-Appellant VDARE Foundation, Inc. ("VDARE").  I make this affirmation in

support of VDARE's motion for an order pursuant to CPLR 5519(c), as well as this Court's

inherent power in aid of its appellate jurisdiction [*see Pokoik v. Dep't of Health & Human Servs.*

*of County of Suffolk*, 220 A.D.2d 13, 16 (2d Dep't 1996) (citing *Matter of Schneider v. Aulisi*, 307

N.Y.2d 376 (1954)], staying enforcement of an order of the Supreme Court, New York County

(Kraus, J.), dated January 23, 2023 (the "Order," attached hereto as **Exhibit A**).  The court

below erred in that it:

(a) denied VDARE's application to stay the proceeding pending resolution of VDARE's first-filed action against the Attorney General of the State of New York (the "OAG") in *VDARE Foundation, Inc. v. Letitia James*, 1:22-cv-01337 (N.D.N.Y.) (Scullin, U.S.D.J.) (*see* complaint in which is attached hereto as **Exhibit B**); and

(b) compelled VDARE, on ***February 10 and 24, 2023***, to produce materials to the OAG protected by the rights to speech and association guaranteed by the federal and state constitutions.

2.     This Affirmation is based on personal knowledge, true and correct copies of documents attached hereto as exhibits, the record of this matter below, and on information and belief as noted herein.

3.     On January 25, 2023, the OAG filed Notice of Entry of the Order. **Exhibit**

**C**.  On February 6, 2023, VDARE filed a Notice of Appeal.  **Exhibit D**.  On February 6, 2023, I advised the OAG that this application would be made to the Court.  **Exhibit E.**

<u>Introduction</u>

4.     VDARE is a non-profit foundation organized and existing under the laws of the State of New York with a principal place of business in Berkeley Springs, West Virginia. Undersigned counsel was engaged by VDARE in late August 2022 to comply with and otherwise respond to an investigative subpoena issued to VDARE by the OAG on or about June 24, 2022 (the "Subpoena," attached hereto as **Exhibit F**).

5.     On December 12, 2022, VDARE initiated its action against the OAG in federal court [**Exhibit B**] to protect its ability to continue to do business and its rights of speech and association guaranteed by the federal and state constitutions.  The OAG responded to VDARE's federal action with a motion to dismiss, which is not yet fully briefed.  **On December**

4

**AA0808**

16, 2022, less than a week after VDARE initiated its federal action, the OAG commenced the proceeding below against VDARE, seeking to compel the very disclosures identified in VDARE's federal complaint as threatening its existence.

6.    The OAG's conduct and the court's Order support VDARE's view that a federal court should hear and resolve VDARE's claims of unconstitutional retaliation before VDARE is compelled to produce constitutionally-protected information to the OAG.  VDARE should not be required to produce such material even if its claim of retaliation is rejected absent an adequate justification for such information and the OAG's narrow tailoring of its demands to fit legitimate investigative need.

7.    For these reasons, and as further detailed below, this Court should stay the Order pending resolution of VDARE's appeal to this Court.  At the very least, this Court should stay so much of the Order that compels disclosures of the information at issue.  If the Court is unable to rule on this application for a stay until on or after **February 9, 2023**, the day before the first disclosures must be made pursuant to the Order, the Court should stay the Order at least until 72 hours after this application is resolved.

A. The OAG's Demand for Immediate Disclosure of Constitutionally
   Protected Information Extraneous to Any Legitimate Investigative
   Need Warrants the Inference that the OAG's Pursuit of VDARE is
   Retaliation for VDARE's Exercise of its Constitutional Rights

8.    While VDARE was briefly represented by an attorney who challenged the validity of the Subpoena, undersigned counsel upon entering the matter as replacement counsel assured the OAG of VDARE's intended compliance.  Recognizing the OAG's broad discretion to exercise regulatory oversight of charities registered in New York and issue investigative subpoenas, between September and November 2022 VDARE produced over 6,000 pages of

5

**AA0809**

documents to the OAG after completing review of documents maintained in hard copy and electronically - - the universe of responsive documents so maintained.  By December 2022, VDARE had engaged a vendor to secure its 40 gigabytes of emails (the equivalent of millions of pages) for undersigned counsel's review; had identified email custodians to the OAG; and undersigned counsel's review for responsive emails was well under way.

9.      On December 2, 2022, however, the OAG took unduly heavy-handed positions that demanded disclosures of constitutionally-protected information, threatened VDARE's ability to conduct business, and unfairly inferred VDARE's bad faith from the mechanics of VDARE's then-ongoing compliance.  *See* Letter from the OAG to VDARE's counsel, NYSCEF Docket No. 44, attached hereto as **Exhibit G**.  The OAG's letter demanded that VDARE, within ten days, disclose its constitutionally protected information, reveal previously-redacted information in the first 6,000 pages of production, complete review of the 40 gigabytes of emails, and produce a complete redaction log for the entirety of its production.  *Id.*

10.     Only then, on December 12, 2022, when it appeared that the OAG was targeting VDARE for reasons other than regulatory compliance, VDARE initiated a federal action against the OAG to protect itself and its rights of speech and association guaranteed by the federal and state constitutions.

11.     In otherwise complying with the OAG's Subpoena, VDARE disputed the Subpoena's demand for the identities of contractors who did business with VDARE.  The subject matter of VDARE's principal activity - - commentary about immigration policy of the United States disseminated to the public through its website at www.VDARE.com - - is controversial. As VDARE demonstrated below without dispute, VDARE's lawful speech has led to and

6

**AA0810**

continues to cause reputational and professional harm to people and entities associated with it.
Contractors providing services essential to VDARE's very existence have refused to continue to
do business with VDARE, including venues which have cancelled contracts with VDARE to
host conferences, sometimes because of disagreement with VDARE's views, but typically
because of their aversion to public protests. These harms to VDARE have made it increasingly
difficult for VDARE to find alternative contractors to stay in business. *See* NYSCEF Docket
No. 37 (Affirmation of VDARE's Counsel) at 4, attached hereto as **Exhibit H** (citing *"VDARE
responds to conference cancellation at Cheyenne Mountain Resort,"* Aug. 15, 2017 ("Cheyenne
Mountain Resort [in Colorado] will not be hosting the VDARE Foundation in April of next year.
We remain committed to respecting the privacy of guests at the resort."); Kristine Phillips, The
Washington Post, Jan 26, 2017 ("Tenaya Lodge, a resort on the border of Yosemite National
Park, canceled [VDARE's] booking after receiving complaints about the organization's views.");
*"Cancelled Tucson Conference Produces Five-Figure Settlement - - VDARE.com To Announce
New Venue Soon!"* Mar. 7, 2018).

        12.      Likewise, multiple businesses providing services essential to VDARE's
continued operations have terminated their relationships with VDARE, including Mailchimp and
Constant Contact (providers of email marketing services), Paypal, Amazon, Google Ads, and
other lesser known businesses. **Exhibit H** at 4-5. VDARE created an entity called "Happy
Penguins LLC" for the sole purpose of paying VDARE's employees so that they could identify a
non-controversial entity (Happy Penguins) - - and not VDARE - - as their employer. *See*
VDARE's Internal Revenue Form 990 for 2019 (identifying "Happy Penguins LLC / Peter
Brimelow" (VDARE's founder) as a service providing leased employees). See **Exhibit H** at 4-5.

**AA0811**

13.     VDARE demonstrated below that the threat to its rights to free speech and association is ongoing and constitutes a genuine risk of irreparable harm.  As recently as January 4, 2023, the Washington Post published an article entitled, *"A 'hate castle' or welcome neighbor? VDare divides a West Virginia town.  In Berkeley Springs, the purchase of an iconic castle by VDare, which some consider a hate group, has led to angst and ugliness,"* Washington Post, Jan. 4, 2023. *See* NYSCEF Docket No. 58 (Reply Affirmation of VDARE's Counsel) at 6-7, attached hereto as **Exhibit I**).  Comments to the article posted at *www.washingtonpost.com* contain multiple instances of public abuse of and threats to VDARE's neighbors in West Virginia solely because their favorable opinions of VDARE or its principals were quoted in the article.  Some comments identify those quoted in the article by name; claim that those with favorable opinions of VDARE's principals must necessarily be white supremacists; and threatened them with commercial retaliation and not to "spend money in their town."  One especially vile public comment called out an elderly proprietor of a local business as a "filthy racist" because she was quoted in the article as defending VDARE's principals.  **Exhibit I** at 7.

14.     As discussed *infra*, the court below granted the OAG's motion to compel identities of unrelated contractors and  VDARE's content providers - - writers and contributors who provide content for VDARE's website.  The court below did so despite the OAG's explicit concession in federal court that disclosure of the identities of content providers is beyond the Subpoena's scope.  As part of the OAG's submissions below in support of its motion to compel, the OAG emailed the court a copy of its papers in federal court in support of its [currently pending] motion to dismiss VDARE's federal case.  The OAG therein confirmed that its "VDARE Subpoena did *not* seek any information regarding the development or publication of

8

VDARE's online content." *See VDARE v. James*, 22-cv-1337 (N.D.N.Y.), Docket No. 12-1 (attached hereto as **Exhibit J**) at 8-9 (OAG's emphasis in original). Just as the court below ignored VDARE's genuine constitutional concerns about its continued ability to do business if compelled to disclose identities of unrelated contractors to the OAG, the court below also ignored the OAG's own concession that the Subpoena did not demand disclosure of information about publication of VDARE's online content. The court below compelled the disclosures anyhow.

15. Further, the OAG made no genuine effort below and refused VDARE's repeated requests to show why its request for these identities could not be narrowly tailored. *See Matter of Evergreen Assn., Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017) (citing *Shelton v. Tucker*, 364 U.S. 478, 488 (1960)) (the Attorney General's legitimate investigative purpose "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved," and applying strict scrutiny where compliance with the OAG's subpoena would "have a chilling effect on [the group's] associations with its employees and potential clients" as well as at least one hospital); *New York State Senate Republican Campaign Comm. v. Sugarman*, 165 A.D.3d 1536, 1540–41 (3d Dep't 2018) (the subpoena's demands capture materials that are "extraneous to the central purposes of [respondent's] inquiry . . . and/or unnecessarily infringe on petitioners' First Amendment rights of political expression and association") (citing *Matter of Evergreen* and quoting *Matter of Kalkstein v. DiNapoli,* 228 A.D.2d 28, 30 (3d Dep't 1997) (quotation marks omitted)). *See also NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of both public and private points of view, particularly controversial ones" and requiring association to produce

**AA0813**

membership list interfered with First Amendment freedom of association).

16.     The OAG - - and the court below - - failed to address VDARE's concern about the OAG's apparent disclosure of constitutionally-protected information in another investigation.  On August, 26, 2022, Politico published confidential information about donors to another conservative not-for-profit entity in the OAG's cross hairs.  Thereafter, on October 11, 2022, members of the United States Congress wrote to United States Attorney General Merrick Garland, requesting investigation of apparently undue disclosures provided to or otherwise obtained by the OAG.  *See* **Exhibit H** at 7.

17.     VDARE attempted to accommodate the OAG by proposing two middle grounds below, both of which were summarily rejected.  *First*, VDARE proposed that it disclose the identities of all contractors who might qualify as "related" within the meaning of Section 715 of New York's Not-for-Profit Corporation Law and otherwise produce all information for all contractors about services provided and the amounts paid to each, without prejudice to the OAG's right to revisit the issue.  The OAG would presumably have no investigative need for the identities of unrelated contractors near VDARE's headquarters in West Virginia (or elsewhere) earning *de minimis* compensation, or unrelated providers of general services such as website hosting, among other unrelated contractors.  While the OAG rejected this middle ground, VDARE nonetheless provided the OAG with an independent auditor's report which identified contractors which might qualify as related.

18.     *Second*, VDARE alternatively proposed that it produce a fully unredacted list of contractors to the court below *in camera* (a protocol used in *Matter of Evergreen)*, subject to the OAG's request for disclosure of the identities of any particular unrelated contractor upon a

10

**AA0814**

showing of a narrowly-tailored investigative need. **Exhibit K.** The court below summarily rejected this proposal without explanation.

19. VDARE initiated its federal case only after the OAG's demand for constitutionally-protected information and its other unduly aggressive positions warranted the inference that the OAG was using its investigative authority in whole or in part as retaliatory state action for VDARE's exercise of its rights to speech and association. For example, the OAG claimed VDARE's non-compliance with the OAG's investigative subpoena on December 2, 2022 [*see* **Exhibit G**], just *one day* before December 3, 2022, the effective date of New York State's new law - - General Business Law ("G.B.L.") Section 394-ccc - - aimed at "hateful conduct," defined as the use of social media to vilify, humiliate, or incite violence. VDARE does not use social media (or any outlet) to vilify, humiliate, nor incite violence against anyone.

20. The OAG's claim of noncompliance on December 2, 2022, the day before the effective date of New York's new law, December 3, 2022, was not the first temporal connection between the OAG's professed regulatory oversight of VDARE while signaling another agenda. As alleged in VDARE's federal complaint, the OAG issued the Subpoena to VDARE in June 2022 just after the OAG's newly created "Hate Crimes Unit" issued separate subpoenas to both Facebook and Facebook's parent company, seeking information about VDARE with specific reference to purported hate speech. **Exhibit B** at ¶¶ 16-18.

21. As alleged in VDARE's federal complaint, the Attorney General in 2020 joined in a letter to Facebook demanding that it increase censorship against "hate speech and hate organizations." **Exhibit B** at ¶ 14. The Attorney General in 2020 also proclaimed - - expressly - - that she created her Hate Crimes Unit "*to strengthen oversight*, because we see how

11

**AA0815**

much hate is being fueled by content on the internet. We're calling on these companies to regulate hate speech and strengthen their policies.  They can do more to fight these things - racism, the spread of disinformation and hate." **Exhibit B** at ¶ 13 (emphasis added).

22.    In fact, the Subpoena itself requests documents far afield from any legitimate regulatory oversight.  For example, the OAG demanded "Copies of the transcripts to each deposition in the litigation between VDARE founder Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings."  This demand refers to a lawsuit for libel filed by Brimelow against the New York Times for unjustifiably branding him an "open white nationalist."  **Exhibit B** at ¶ 23.

23.    The undue deference afforded the OAG by the court below notwithstanding the inference of the OAG's unconstitutional retaliation - - and the court's rush to grant the OAG's motion to compel in its entirety in the face of genuine constitutional concerns - - underscore why VDARE chose federal court to seek constitutional relief.

B.    <u>The OAG's Erroneous Challenge to New York's First-Filed Rule</u>

24.    In opposing a stay of this proceeding pending resolution of VDARE's federal case against the OAG (or at least pending decision on the OAG's motion to dismiss VDARE's federal case), the OAG did not dispute that VDARE initiated its federal case before the OAG initiated its special proceeding below.  New York's well-settled "first-filed" rule requires that the "court which has first taken jurisdiction" - - in this case, United States District Court for the Northern District of New York - - "is the one in which the matter should be determined and it is a violation of the rules of comity to interfere." *Ace Prop. & Cas. Ins. Co. v.*

*Fed.-Mogul Corp.*, 55 A.D.3d 479, 480 (1st Dep't 2008); *accord L-3 Commc'ns Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 7 (1st Dep't 2007) (same); *accord Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 95 (1st Dep't 2013) (same); C.P.L.R. 3211(a)(4).

25. Instead of acknowledging that VDARE had a right to choose its forum under settled law in New York, or otherwise consenting to a stay at least to accommodate decision on the OAG's [currently pending] motion to dismiss VDARE's federal case, the OAG analogized VDARE to a commercial plaintiff precipitously seeking tactical advantage by choosing a forum inconvenient to an aggrieved commercial opponent [*see* NYSCEF Docket No. 57, OAG's Memorandum of Law, Jan. 18, 2023 at 2 (citing *White Light Prods. v. On the Scene Prods.*, 231 A.D. 2d 90, 100 (1st Dep't 1997)], and argued that it was improper for VDARE to seek federal relief after the OAG threatened enforcement on December 2, 2022. *See* NYSCEF Docket No. 57 at 1. The analogy pressed by the OAG was misplaced for at least three independent reasons.

26. *First*, unlike a commercial plaintiff who rushes to an inconvenient forum as soon as its opponent signals an intent to litigate, the OAG's resort to litigation is inherent in virtually every subpoena it issues. *See* **Exhibit F** at 1 (the Subpoena issued to VDARE in June 2022 included the OAG's standard warning that it can seek enforcement for disobedience). The OAG's analogy to commercial litigation would serve to bar every person issued a subpoena by the OAG from ever seeking federal redress in every case no matter how irreparable the federal constitutional harm threatened by the OAG.

27. *Second*, apart from the Subpoena's inclusion of the OAG's standard warning of its right to seek enforcement, the OAG began expressly threatening VDARE with a

13

**AA0817**

motion to compel as early as September 8, 2022, before undersigned counsel had even begun to undertake VDARE's compliance with the OAG's subpoena - - three months before December 10, 2022, when VDARE filed its federal case. *See* Email from the OAG to undersigned counsel, September 8, 2022, attached as **Exhibit K** ("We are prepared to offer reasonable extensions of time reflecting your obligations, but without any production, we are not prepared to continue to extending the deadline and will seek judicial relief ourselves to move this process forward.").

28.     *Third*, unlike a commercial litigant who chooses a geographically inconvenient forum to vindicate its interests in a financial transaction, VDARE chose federal court to vindicate its federal constitutional rights - - and did so in Albany where the OAG maintains an executive office. *See https://ag.ny.gov/contact-attorney-general-letitia-james*.

29.     Likewise misplaced was the OAG's reliance below on *Trump v. James*, 2022 WL 1718951 (N.D.N.Y. May 27, 2022) [*see* NYSCEF Docket No. 57 at 2], in which the former president sought redress in federal court only *after* he had defied multiple orders for contempt and a state action was already ongoing. No such actions preceded VDARE's federal case. As *Trump v. James* itself makes clear, "the obligation of federal courts to hear cases within their jurisdiction is 'virtually unflagging'" absent pre-existing state litigation. *Id.* at *23 (quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d Cir. 2022).

30.     Especially revealing was the OAG's subterfuge in delaying the federal case while secretly rushing to state court. VDARE filed its federal case on December 12, 2022, simultaneously emailing a courtesy copy of its papers to the OAG in advance of formal service, which provided the OAG with three weeks (until January 4, 2023) to respond. *See* F. R. C. P. 12(a)(1)(A)(I). On December 21, 2022, a full two weeks before the OAG's response was due

on January 4, 2023, the OAG requested and secured VDARE's consent to an extension of the

OAG's deadline to respond in federal court, from January 4 to 18, 2023.  In so doing, the OAG

claimed (in an email) that the extension was necessary because of the holidays and an attorney

who had taken ill: "Because of the holidays and a member of our team who has COVID, we

would appreciate an extension until Jan 18 to respond to VDARE's complaint in the NDNY.

Can you please confirm your consent?"  *See* **Exhibit H** at 2-3.

31.     Unbeknownst to VDARE when it consented to the extension on December

21 2022, however, the OAG had already initiated this special proceeding the week before (on

December 16, 2022) with a proposed order to show cause.  The court below issued the OAG's

order to show cause on December 22, 2022, scheduling oral argument on the OAG's state

motion to compel on January 19, 2023, two business days before the court below denied

VDARE's application for a stay based on its first-filed federal action and compelled the

disclosures.

32.     It is the OAG, not VDARE, which forum-shopped for undue tactical

advantage - - further warranting the inference that more is afoot here than a small charity's

regulatory compliance.

C.     The Court Below Unduly Deferred to the OAG at the Expense of VDARE's
       Right to Seek Redress in Federal Court for the State's Unconstitutional
       Retaliation and Demand for Disclosures of Constitutionally Protected
       Information Extraneous to Any Truly Overriding Investigative Need

33.     Despite judicial deference afforded the OAG, nothing about the OAG's

professed concerns in its letter to VDARE of December 2, 2022, nor its subsequent motion to

compel in the court below demonstrated either a legitimate investigative need for the

constitutionally-protected information nor any true attempt at narrow tailoring.  To the contrary,

15

**AA0819**

the OAG took the constitutionally offensive position that "the identities of contractors - - including writers who contribute to the website - - these are precisely the records the OAG must examine in its investigation of VDARE's organizational misconduct." NYSCEF Docket No. 3 at 16. The OAG's conclusion does not fit its rationale: a vendor's provision of services to VDARE or a writer's provision of content to its website has no automatic connection to any legitimate investigative need. The OAG took the Orwellian position that its demands were narrowly tailored [NYSCEF Docket No. 3 at 16] when it made no effort at all to narrowly tailor them and rejected VDARE's proposed middle grounds out of hand.

      34. Likewise constitutionally offensive - - and irrational - - was the OAG's analogy below of VDARE's vendors and content providers to the copyright violator in *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010), who declined to reveal his name after the copyright holder tracked him via his computer's IP address. The OAG relied on *Arista's* principle that anonymity may not be used to mask violations of the law [*see* NYSCEF Docket No. 3 at 16], but none of VDARE's vendors nor content providers are alleged to have violated the law nor to have helped VDARE to do so. The OAG's demand that VDARE reveal their identities is more than an overreach: it warrants the inference that the Attorney General may be after VDARE *because* of its speech and is demanding that it reveal identities of its vendors and content providers because either she intends to put it out of business or is otherwise hostile to the rights of those with whom she disagrees.

      35. Before constitutionally-protected disclosures may be compelled, more is required than a general claim of investigative need. Instead, **anonymous Internet speech is protected by the First Amendment unless a party seeking enforcement of a subpoena first**

**AA0820**

establishes "a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff" so that a court may then "assess and compare the magnitude of the harms that would be caused" to freedom of speech and the defendant's commercial interests." *See Mirz v. Yelp, Inc.*, 2021 U.S. Dist. LEXIS 160961 (S.D.N.Y. Aug. 25, 2021); *"Anonymous criticism helped make America great: Trump's critic is utilizing a practice employed by many of the Founding Fathers to protect truth from power,"* The Washington Post, Sept. 8, 2018[1] ("anonymous publication has been an essential feature of American democracy since its beginning. It has long allowed vulnerable voices to participate in public politics and speak truth to power. Indeed, anonymous debate was at the center of the revolutionary politics that led to American independence, the U.S. Constitution and the Bill of Rights, which enshrined the press freedoms that continue to protect anonymous speech today.").

36.    The state of the record did not permit the court below to rule on the merit of the OAG's professed regulatory concerns about VDARE, but nor did it warrant unfettered judicial deference to every inference pressed by the OAG. For example, a purported impetus for the OAG's investigation (as first disclosed by the OAG to VDARE shortly after issuance of the Subpoena) was VDARE's purchase in 2020 of a castle-styled property in West Virginia. VDARE did not dispute the OAG's discretion to conduct oversight of a charity's purchase of such a property and instead addressed the issues in its disclosures and offered to meet immediately with the OAG to discuss it. VDARE explained, as otherwise publicly reported, that

---

[1] Available at *https://www.washingtonpost.com/outlook/2018/09/08/anonymous-criticism-helped-make-america-great/*

**AA0821**

VDARE acquired the castle to host conferences and thereby eliminate the risk that VDARE's events could only be conducted at the whim of independent venue owners. *See* **Exhibit H** at 8 (citing Rachel Olding, *"Tourist Town Desperate to Reopen Faces Another Battle"* Daily Beast (May 29, 2020)[2] (noting that VDARE's founder, Peter Brimelow, "said they plan to use the castle for meetings and as a studio - - handy considering at least three hotels have canceled conference contracts on VDARE after learning of the group's views."); *see also* NYSCEF Docket No. 4 (Affirmation of the OAG in support of its motion to compel) at 5 (citing public reports of purchase of castle for use as a meeting place "without fear of deplatforming").

37.     The OAG questioned the use of the castle itself as housing for the Brimelows and their three children.  Among documents produced by VDARE to the OAG is a lease agreement establishing that the Brimelows paid rent to live in a cottage on the castle grounds beginning in April 2021.  Before the cottage was habitable, the Brimelows and their three children paid rent to live in the castle for a period of months after moving to West Virginia from Connecticut.  *See* **Exhibit H** at 8-9.  Upon locating and producing the Brimelows' lease agreement for the cottage, the undersigned proposed a meeting with the OAG to begin addressing the OAG's concerns [*see* NYSCEF Docket No. 4 at 6] that the Brimelows used the castle as a residence even after their cottage was made hospitable for lease or that the Brimelows *ever* derived any financial gain from the castle.

38.     Nothing about the castle, however, warranted the OAG's demand for identities of contractors and content providers absent narrow tailoring and a true showing of

---

[2] Available at *https://www.thedailybeast.com/berkeley-springs-west-virginia-freaks-out-after-vdare-founder-buys-its-castle*.

investigative need, especially while the OAG is simultaneously representing to a federal judge that VDARE was not required to provide information regarding the "publication of VDARE's online content." *See* **Exhibit J** at 8-9.

39.     Even with judicial deference afforded the OAG, other professed concerns about VDARE failed to demonstrate any connection between the constitutionally-protected information and any true investigative need.  At least some of the OAG's claims of malfeasance were either transparently pretextual or seemed designed to cast VDARE in the worst possible light whether or not truly warranted.  For example, the OAG argued in support of its motion to compel that Lydia Brimelow is identified on filings as VDARE's "Secretary, Treasurer and Publisher," but not identified as Peter Brimelow's wife on VDARE's Internal Revenue Service Form 990. *See* NYSCEF Doc. 4 at 4-5.  Peter and Lydia Brimelow, however, share the same last name, holding themselves out as husband and wife on the same VDARE website which the OAG reviewed to find information supporting its investigation, and, on information and belief, file their income tax returns jointly as husband and wife with the same Internal Revenue Service with which VDARE files Form 990. *See* **Exhibit H** at 9.  Once again, the OAG asserted no connection between this purported misstep in completing an IRS form and the identities of VDARE's vendors or content providers.

40.     Similarly, the OAG insinuated that Peter Brimelow's compensation reported in from VDARE's 2019 IRS Form 990 was atypically high [NYSCEF Docket No. 3 at 9], but conveniently omitted that VDARE's total contributions for 2019 were $4,259,309 [see **Exhibit H** at 9-10], a far substantially greater amount than in other years.  The OAG also insinuated malfeasance from an auction of furnishings from the castle [NYSCEF Docket No, 4 at

19

**AA0823**

8], but, on information and belief, the entirety of *de minimis* proceeds from the auction inured to VDARE's benefit.  **Exhibit H** at 9-10.  None of this innuendo from the OAG justified its demand for the identities of vendors and content providers.

       41.    Nor did the mechanics of VDARE's compliance warrant the OAG's demand for constitutionally-protected information.  In demanding on December 2, 2022, that VDARE complete its production and identify all contractors without redactions by December 12, 2022, the OAG complained that VDARE had inconsistently applied redactions without a log identifying the bases for the redactions.  But the OAG had itself agreed to "a rolling production" [*see* **Exhibit H** at 10], which enabled VDARE - - acting in good faith - - to reassess the need for redactions as its review continued.  VDARE's counsel expressly told the OAG that it had redacted some information in earlier installments of the rolling production which upon later review had been unnecessary.  *Id.*

       42.    Despite the OAG's innuendo that VDARE is acting in bad faith and has deliberately withheld responsive documents [*see* NYSCEF Docket No. 4 at 15], VDARE's counsel has represented in affirmations that the only redactions are to the information discussed herein plus a handful based on attorney-client privilege (and the identity of donors, to which the OAG has agreed) - - and that review of the 40 gigabytes of emails is the only remaining task to complete compliance.  While the OAG alleged with rhetorical flourish that redactions had been made to almost every category of document produced [NYSCEF Docket No. 3 at 9], the vendors, content providers, and donors whose identities were redacted are inextricable parts of VDARE's business - - as VDARE's counsel had expressly advised the OAG.  *See* **Exhibit H** at 11 (VDARE's counsel emailing the OAG that "the **identities of VDARE's donors, content**

**AA0824**

providers, and vendors who provide services to VDARE in its locality or are otherwise indispensable to its work are inextricably intertwined with some of its financial records. For example, some of these entities are identified in bank statements in lists of monthly transactions and associated copies of checks. The work to provide such financial records with redactions is labor-intensive and time-consuming and is ongoing."). Even if a redaction log after the final installment of the rolling production does not the satisfy the OAG's indiscriminate preferred timing, it did not justify the OAG's immediate demand for constitutionally-protected disclosures far afield from any true investigative need.

43.     Nor did the OAG's complaint about delays in VDARE's production warrant its demand for constitutionally protected information or any inference of bad faith. By the time of the OAG's letter of December 2, 2022, VDARE had completed production of documents maintained in hard copy and electronically and review of 40 gigabytes of emails was well under way. VDARE is literally a mom-and-pop operation, run by parents of three home-schooled children, represented by a solo practitioner with no legal or administrative staff. *See* **Exhibit H** at 10-11. The types of mechanical issues of compliance about which the OAG complained are typically solvable, especially where the respondent is close to completing compliance.

44.     While the OAG had not proffered a confidentiality agreement to govern VDARE's production presumably because constitutionally-protected information need not be provided to the state under any circumstance absent narrow tailoring and a compelling state interest in the specific information, the court below *sua sponte* invited the parties to enter into such an agreement. The OAG's subsequently proposed agreement [attached hereto as **Exhibit**

21

**AA0825**

L] does not protect the identities of VDARE's contractors nor bar the OAG from issuing subpoenas to them - - precisely the type of state action which is unconstitutional unless preceded by narrow tailoring and a showing of legitimate investigative need. The OAG's proposed agreement explicitly permits the OAG to use constitutionally protected disclosures to contact and interview witnesses without seeking VDARE's permission or prior judicial approval.

45.     In denying to stay the proceeding initiated by the OAG pending VDARE's first-filed federal action, the court below neither addressed New York's first-filed rule nor VDARE's federal claim against the OAG for retaliation for exercise of its constitutional rights. In granting the OAG's motion to compel, the court below did not address VDARE's concerns about irreparable harm to its ability to conduct business and constitutional rights to speech and association and, instead, accepted the OAG's misplaced analogy to the identity of the copyright violator in *Arista*.

<u>Conclusion</u>

46.     This Court has the "inherent power to grant a stay" of proceedings pending appeal "in aid of its appellate jurisdiction." *Pokoik v. Dep't of Health & Human Servs. of County of Suffolk*, 220 A.D.2d at 16; *see also Schwartz v. New York City Housing Authority*, 219 A.D.2d 47, 48 (2d Dep't 1996) (an appellate court has "inherent power to grant a stay of acts

or proceedings" that "will disturb the status quo and tend to defeat or impair [the court's] appellate jurisdiction").

47.     This Court may also "stay all proceedings to enforce the judgment or

order

22

**AA0826**

appealed from pending an appeal" under C.P.L.R. 5519(c). "[T]he granting of stays pending appeal in such cases is, for the most part, a matter of discretion." *Grisi v. Shainswit*, 119 A.D.2d 418, 421 (1st Dep't 1986). The Court's discretion "will be influenced by any relevant factor, including the presumptive merits of the appeal and any exigency or hardship confronting any party." Practice Commentaries, C.P.L.R. C5519:4; *see also Town of Orangetown v. Magee*, 218 17 A.D.2d 733, 734 (2d Dep't 1995) (staying enforcement of judgment pending appeal under § 5519(c)).

48. For these reasons, this Court should stay the Order pending resolution of VDARE's appeal to this Court. At the very least, this Court should stay so much of the Order that compels disclosure of the information at issue. If the Court is unable to rule on this application for a stay until on or after **February 9, 2023**, the day before the first disclosures must be made pursuant to the Order, the Court should stay the Order at least until 72 hours after this application is resolved.

Dated: February 6, 2023

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Respondent*

23

**AA0827**

# Exhibit A

AA0828

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**  **HON. SABRINA KRAUS** | **PART** **57TR** |
| *Justice* | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK | **INDEX NO.** | 453196/2022 |
| | **MOTION DATE** | 1/19/2023 |
| Plaintiff, | **MOTION SEQ. NO.** | 001 002 |
| - v - | | |
| VDARE FOUNDATION, INC., | **DECISION + ORDER ON MOTION** | |
| Defendant. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 33, 53, 56, 57, 59, 60, 61

were read on this motion to/for _____ENFORCEMENT_____.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 58

were read on this motion to/for _____DISMISSAL_____.

## BACKGROUND

Petitioner commenced this special proceeding to compel compliance with a subpoena duces tecum dated June 23, 2022 (the "Subpoena") issued in conjunction with an investigation into the activities of Respondent, a not-for-profit corporation.

## ALLEGED FACTS

Respondent is a New York charitable not-for-profit corporation that incorporated in New York in 1999. In 2000, Respondent, then known as, the Lexington Research Institute, Limited, applied for and received recognition of its tax-exempt status from the IRS as a 501(c)(3) charitable entity. Respondent did not register with the Attorney General's office until 2009.

**AA0829**

In its application for federal tax-exempt status, Respondent stated its plan to operate from offices in New York and listed two of its four directors at addresses in New York City. Respondent described its primary purpose as creating a publication web page and magazine, with editorial content focusing on foreign and domestic policy issues.

In 2019, Respondent reported a six-fold increase in revenue, from $700,000 in 2018 to approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-advised fund. In early 2020, Respondent spent $1.4 million of these newly received funds on the purchase of the Berkeley Springs Castle, a medieval-style castle located in West Virginia.

Public postings by Respondent Chairman Peter Brimelow and others indicate that he and his family have used the castle as their primary residence since at least March 2020. During this same period, Respondent also substantially increased payments to Brimelow and to third-party, for-profit companies he controls. In 2019, Brimelow's reported salary more than doubled and comprised roughly one third of Respondent's operating expenditures. Respondent separately reported spending tens of thousands of dollars on office expenses in 2019, as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based at Brimelow's residential home address.

In December 2020, Respondent conveyed the entirety of the Berkeley Springs Castle property to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a Respondent director, five months earlier. Respondent conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a non-profit corporation. Respondent conveyed the remaining land, consisting of eight parcels, to BBB, LLC, a for-profit corporation.

Based on the information it had obtained, the Attorney General began an investigation of Respondent and its leadership for potential violations of the New York law applicable to

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 2 of 11

**AA0830**
2 of 11

Case 1:22-cv-20133-FDS Document 35-10 Filed 04/20/23 Page 290 of 178

charities. The Subpoena seeks: documents concerning Respondent's organizational structure; compliance conflict-of-interest policy requirements under New York law, and financial operations; its purchase and conveyance of the Berkeley Springs Castle; and transactions between Respondent and entities controlled by the Brimelows.

Respondent originally took the position that the Subpoena was unlawful and should be withdrawn. On September 19, 2022, new counsel for Respondent agreed to comply with the Subpoena but asserted that a significant volume of electronically-stored and hard copy documents needed to be reviewed. Respondent made its first production that day consisting of 27 documents produced without Bates numbers and bearing unmarked redactions. No log was provided to identify or explain the redactions.

In the twelve weeks since its first September delivery, Respondent has produced approximately 6,000 pages from its hard copy records. It has redacted that material without any explanation for how material was chosen for redaction. Petitioner assets that the redactions are extensive and have been applied across almost every category of document produced, including board meeting minutes, bank statements, internal accounting ledgers, credit card statements, invoices, financial records for the limited liability company (Happy Penguins LLC) from which Respondent has historically leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and Lydia Brimelow.

On October 31, 2022, Lydia Brimelow represented that, with limited exceptions, Respondent's hard copy production was complete, and identified 22 unique email accounts containing approximately 40 gigabytes of potentially responsive electronically stored information. Respondent's counsel stated that review of that material would be completed by

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 3 of 11

**AA0831**
3 of 11

November 21, 2022. Respondent subsequently proposed December 12, 2022, as a new deadline for completing email production.

On December 2, 2022, Petitioner wrote to Respondent, summarizing its concerns with the pace and scope of the production, including its extensive redactions, and demanded that Respondent complete its subpoena compliance and produce a redaction log by December 12, 2022.

On December 12, 2022, Respondent filed an action in United States District Court for the Northern District of New York against Petitioner [*VDARE Foundation, Inc. v. James*, 1:22-cv-01337 (FJS)], alleging, among other things, that Petitioner's demands for certain disclosures threaten Respondent's ability to conduct business; and that Petitioner's subpoena is a retaliatory pretext aimed at interfering with Respondent's rights to freedom of speech and association. The federal complaint seeks a declaration that Subpoena violates Respondent's first amendment rights, an injunction preventing Petitioner's enforcement of the Subpoena and damages.

On December 16, 2022, Petitioner commenced this special proceeding.

## **PENDING APPLICATIONS FOR RELIEF**

Petitioner seeks an order compelling Respondent to comply with the investigative Subpoena duces tecum dated June 23, 2022.

Respondent has moved for an order dismissing this proceeding, or alternatively staying the proceeding pending resolution of the Federal Action.[1]

On January 19, 2023, the court heard oral argument on the motions and reserved decision. For the reasons stated below, Petitioner's motion to compel is granted and Respondent's motion for a stay or dismissal is denied.

---

[1] At argument Respondent withdrew its request for dismissal and limited its request to a stay pending the Federal Court litigation.



Case 1:22-cv-01337-FJS-CFH Document 35-10 Filed 04/20/23 Page 297 of 178

## DISCUSSION

The requirements for the issuance of an investigatory subpoena duces tecum are "(1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry" (*Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d 143, 147, 541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski,* 59 N.Y.2d 35, 462 N.Y.S.2d 836, 449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.,* 23 N.Y.2d 916, 298 N.Y.S.2d 315, 246 N.E.2d 166).

*Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2017).

The Attorney General has broad and well-established authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law §§ 63(12), 175; N-PCL § 112; EPTL § 8-1.4(m). *See also Temple of the Lost Sheep*, 148 Misc. 2d at 828–29. "Moreover, in evaluating the Attorney General's justification for the issuance of a subpoena, there is a presumption that (s)he is acting in good faith" (*Matter of Dental Coop. v. Attorney–General of State of N.Y.,* 127 A.D.2d 274, 280; *see Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d at 147). The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828

CPLR §2308(b) provides "… if a person fails to comply with a subpoena which is not returnable in a court, the issuer or the person on whose behalf the subpoena was issued may move in the supreme court to compel compliance. If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars."

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith. *Ryan*

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY               Page 5 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

**AA0833**
5 of 11

*v. Lefkowitz*, 18 N.Y.2d 977, 979 (1966); *Hogan v. Cuomo*, 67 A.D.3d 1144, 1145 (3d Dep't 2009); *Anheuser-Busch. Inc. v. Abrams*, 71 N.Y.2d 327, 332 (1988)), aff'd 205 A.D.3d 625 (2022).

Petitioner's subpoena request must demonstrate a "reasonable relationship to the subject matter under investigation and the public interest to be served." *Giardina v. James*, 185 A.D.3d 451 (1st Dep't 2020). A party must respond to an investigative subpoena unless the information sought is "utterly irrelevant to any proper inquiry." *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 331–32 (1988).

New York State has a public policy interest in ensuring the robust regulation of tax-exempt charitable entities like Respondent and Petitioner has authority to supervise and investigate such entities when misconduct is suspected.

Petitioner's Subpoena is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations. The Not-for-Profit Corporation Law, for example, provides that entities like Respondent may be formed only for charitable purposes, *see*, *e.g.*, N-PCL §§ 202, 204, 205, and that charitable assets may not be distributed to members, directors or officers, N-PCL § 515(a). Charitable entities are also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition" of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-PCL § 715); and a process for managing conflicts of interest. (N-PCL § 715-a).

The Subpoena's requests demand the type of material that will permit Petitioner to determine whether Respondent has complied with these requirements, including complete copies

**453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. Motion No. 001 002**    **Page 6 of 11**

**AA0834**
6 of 11

of Respondent's annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review. The documents called for will permit Petitioner to determine whether there has been any diversion of charitable assets—for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries. Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that, inter alia, a charity does not solicit contributions under false pretenses or use the contributions it receives in a manner that is not "substantially consistent" with the charity's stated purposes. See generally Executive Law § 172-d.

Respondent has raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights (*see Matter of Full Gospel Tabernacle v. Attorney–General of State of N.Y.,* 142 A.D.2d 489, 493, 536 N.Y.S.2d 201; *St. German of Alaska E. Orthodox Catholic Church v. United States,* 653 F.Supp. 1342, 1346–1347 [S.D.N.Y.]; *see also Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL–CIO,* 72 N.Y.2d 307, 532 N.Y.S.2d 722, 528 N.E.2d 1195). However, Respondent makes this argument on behalf of its donors and Petitioner has agreed, initially to redact donors' and volunteers' identities. Respondent has not established that the Subpoena would impair Respondent's own First Amendment rights.

Additionally, Respondent's filings themselves underscore the reasonableness of the Subpoena. Respondent admits the critical facts that first triggered Petitioner's scrutiny— Peter Brimelow, Respondent's founder and director, and his wife, Lydia Brimelow, also a director,

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 7 of 11

AA0835

7 of 11

used and continue to use a $1.4 million charitable asset as their personal residence. See Frisch Aff. (Doc. No. 37).

Respondent argues that the Brimelows paid rent to live in the cottage beginning in April 2021, however the lease is between Lydia Brimelow and BBB, LLC, a West-Virginia for-profit corporation she manages, and Lydia Brimelow signed the document as both landlord and tenant. Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia Brimelow as manager).

Respondent's motion and accompanying papers fail to meet its burden of establishing the Subpoena's invalidity. Respondent, which has partially complied with the subpoena for months, has not established why providing a redaction log for its already-produced documents raises any First Amendment concerns or why continuing production would pose a threat to its existence.

Although Respondent argues that redactions are required to protect the identities of contractors—including writers who contribute to the website—these are precisely the records the Petitioner seeks to examine in its investigation of Respondent's alleged organizational misconduct. To the extent anonymity is used to mask violations of the law, "it is unprotected by the First Amendment." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010).

For example, the only board member among four who is not a Brimelow family member is a known contributor. The Attorney General may probe this contributor's compensation as part of its investigation of conflicts of interest and board independence. And the Attorney General may seek the identities of other contributors to determine whether further conflicts of interest may exist.

Respondent's reliance on *Americans for Prosperity v. Bonta*, 141 S.Ct. 2373 (2021), is equally unavailing. That decision concerned only donor disclosures in statewide annual filing

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. Motion No. 001 002

Page 8 of 11

AA0836

8 of 11

requirements, while expressly permitting subpoenas seeking the same information as part of a

targeted investigation. *See Ams. for Prosperity Found.*, 141 S. Ct. at 2386–87. Moreover,

Petitioner has indicated a willingness to enter into a stipulation /order of confidentiality to further

address any of Respondent's concerns.

Finally, Respondent presents no compelling basis for a stay of this proceeding in its

moving papers, and acknowledged at oral argument it has not sought a stay of this proceeding

from the Federal District Court.

Based on the foregoing, Respondent's motion for a stay is denied and Petitioner's motion

to compel is granted.

WHEREFORE it is hereby:

ORDERED Respondent VDARE Foundation, Inc. ("VDARE") shall comply with the

Subpoena, subject to the agreement of July 27, 2022, memorialized in Exhibit R to the

Affirmation of Yael Fuchs at Dkt. No. 22, that VDARE may redact the following from

otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE)

attendees present at VDARE events conducted at or broadcast from the 276

Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying

information in any responsive record of private contributions to the organization and/or

purchases from the October 16, 2021 "Castle Auction" (transaction amounts, dates, and

other details must be disclosed); and it is further

ORDERED that such redactions are without prejudice to Petitioner's right to seek

modification of these agreed redaction terms by written application to the Court on notice to

VDARE; and it is further

**453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY**
**GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.**
**Motion No. 001 002**

**Page 9 of 11**

**AA0837**
9 of 11

ORDERED that on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to Petitioner, in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log; and it is further

ORDERED that on or before February 24, 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter (Dkt. No. 26); on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production; and it is further

ORDERED that the parties, if so advised, may forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court; and it is further

ORDERED that, within 20 days from entry of this order, Petitioner shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh);]; and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 10 of 11

AA0838
10 of 11

ORDERED that this constitutes the decision and order of this court.

202301231454Z958KRAUS6C2749D2CD5844BFE88AF03FF4E118495

| **1/23/2023** | | | **SABRINA KRAUS, J.S.C.** |
|---|---|---|---|
| **DATE** | | | |

| CHECK ONE: | X | CASE DISPOSED | NON-FINAL DISPOSITION | |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | FIDUCIARY APPOINTMENT | REFERENCE |

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 11 of 11

**AA0839**

11 of 11

# Exhibit B

AA0840

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

.....................................................................x

VDAREFOUNDATION   INC.

       *Plaintiff,*

      against

LETITIA JAMES  in her official capacity
as Attorney General of the State of New York,

      *Defendant.*

.....................................................................x

Civil Action No:    -cv-

**1:22-DW-1337**    ('+4/$'))

# VERIFIED COMPLAINT
## FOR DECLARATORY  AND INJUNCTIVE RELIEF

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
  ew York  New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Plaintiff*

1

**AA0841**

## PARTIES

1.      Plaintiff VDARE Foundation Inc. ( VDARE") is a non-profit foundation recognized by the IRS as a 501(c)(3) educational organization organized and existing under the laws of the State of ew York, but with a principal place of business in Berkeley Springs West Virginia.

2.      VDARE was founded to support the efforts of VDARE.com a non-profit web magazine.  VDARE is a charity registered in the State of ew York.  VDARE is literally a mom-and-pop operation, run by Peter and Lydia Brimelow, husband and wife, with limited staff and resources.

3.      Defendant Letitia James has been the Attorney General of the State of ew York since she was sworn into office on January **1,** 2019.  Her office is located in Albany New York.  She is sued here in her official capacity.  She was Attorney General at all times relevant to this Complaint and has final policymaking authority with respect to her office and is responsible for the hiring, screening training retention supervision, discipline counseling and control of the attorneys under her command.  Her name appears as the Attorney General on all the subpoenas at issue in this matter.

### JURISDICTION AND VENUE

**4.**      Pursuant to 28 U.S.C. § 1331 the Court has subject matter jurisdiction because this action involves claims based on the First and Fourteenth Amendments to the United States Constitution and because this action seeks to prevent state officials from interfering with federal rights.  Further, subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations under color of state law of rights privileges, and immunities secured by the United States

AA0842

Constitution. This Court has supplemental jurisdiction over state law claims asserted in this action under 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) as the Attorney General has a principal office within it.

5.      There is a present and actual controversy between the parties.

6.      The relief requested is authorized pursuant to 28 U.S.C. § 1343(a)(4) (recovery of damages or equitable relief or any other such relief for the protection of civil rights), 28 U.S.C. § 2201 and 2202 (declaratory and other appropriate relief) 42 U.S.C. § 1983 (deprivation of rights, privileges, and immunities secured by the Constitution) and 42 U.S.C. § 1988 (awards of attorneys' fees and costs).

### The Attorney General's Violation of VDARE's First Amendment Rights

7.      VDARE's founder, Peter Brimelow, is a well-known magazine editor, political commentator columnist and author whose career spans five decades. **He** has served as an editor and writer at the Wall Street Journal, Financial Post, Macleans, Barron's Fortune Forbes National Review, and MarketWatch. He is a recipient of the Gerald Loeb Award for Distinguished Business and Financial Journalism, was a media fellow at the Hoover Institution and has been described as "a star of the conservative movement in the 2000s. He is the author of four well-regarded books, including Alien Nation: Common Sense About America's Immigration Disaster (I995), a national bestseller in the United States. He also wrote The Patriot Game: National Dreams and Political Realities (1986) a book on Canadian politics that is credited with spurring the creation of the Reform Party of Canada in 1987; as well as The Wall Street Gurus: How You Can Profit from Investment ewsletters· and The Worm in the Apple: How the Teacher Unions Are Destroying American Education.

3

8.    Brimelow with an editorial collective of several other journalists started VDARE.com to publish articles critical of the immigration policy of the United States. Throughout its existence VDARE has published pieces that criticize current United States immigration policy for various reasons and from a variety of angles and perspectives. VDARE's editorial position in favor of limiting immigration is not based on any sort of aversion to immigrants. Brimelow is himself an immigrant and a naturalized United States citizen. Many of VDARE's editors and contributors, current and former are immigrants or foreign nationals. Stories originally published in VDARE have been positively cited by the ew York Times, the Harvard Journal on Law and Public Policy and many other publications.

9.    VDARE is not without detractors. VDARE has repeatedly been tarred with pejoratives such as 'white nationalist," and' racist. VDARE rejects these labels. Whatever the views of VDARE's detractors its speech is non-violent and lawful and protected by the First Amendment to the United States Constitution.

10.    Use of pejoratives to describe VDARE has led to significant reputational and professional harm for those associated with it. On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE s existence have opted to stop providing services. Venues which have agreed to host VDARE's conferences have faced pressure campaigns and threats. Such venues have sometimes cancelled contracts with VDARE.

11.    To protecl iLs rights of sp ech and association VDARE is vigilant about maintaining the privacy of those associated with it and does not disclose their identities unless required by law.

4

**AA0844**

## THE ATTORNEY GENERAL HAS EXPRESSED DESIRE
## TO IMPEDE SPEECH SIMILAR TO VDARE'S

12.     The Attorney General, as the State's principal law enforcement officer, should be a stalwart steward of the First Amendment, protecting the right to expression of viewpoints and advocacy of positions about government policy. It is her obligation to distinguish viewpoints protected by the First Amendment with which she disagrees from calls to violence or other non-protected types of expression. *See Ro enberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819  828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional. ).

13.     On January 8, 2020, the Attorney General told reporters that her then newly-created 'Hate Crimes Unit" wouJd 'focus on social media companies:' "We are going to strengthen oversight  because we see how much hate is being fueled by content on the internet. We re calling on these companies to reguJate hate speech and strengthen their policies. They can do more to fight these things - racism, the spread of disinformation and hate. ' *See https:/lwww. haaretz. comlus-news/2020-0 J-08/ty-articlelpremium/new-york-anti-semitism-crisis-jews-violence-trump/00000l 7f-e39c-d568-ad7f-j3.ff3b320000*

14.     On August 5, 2020, the Attorney General joined in a letter to Facebook demanding that it increase censorship against  hate speech  and hate organizations:

> *Although Facebook ha  developed policies against hate speech and organizations that peddle it, we remain concerned that Facebook's policies on Dangerou Individuals and Organizations, including but not limited to its policies on white nattonalisr and while supremacisr  content, are not enforced quickly and comprehensively enough.*

**15.**     The Attorney General s desire to suppress free speech has led to ongoing litigation. In *Volokh v. James,* social media platforms and websites have noted her antipathy towards

5

**AA0845**

free speech - - citing her desire to use the law to prevent what she describes as 'dangerous and corrosive ideas to spread." *See* Exhibit A at ¶ 18.

## The Attorney General Targets VDARE

16.     On May 13 2022, the Attorney General's Special Counsel for Hate Crimes subpoenaed Meta the parent company of Facebook for information about VDARE. Specifically, the subpoena demanded:

1. All account opening documents for the Facebook Accounts.

2. Documents sufficient to identify the individuals who opened the Facebook Accounts.

3. All documents concerning the grounds on which the Facebook Accounts were terminated.

4. A true and correct copy of the document entitled 'April 2020 Coordinated Inauthentic Behavior Report.

5. All documents relating to the finding that VDARE engaged in 'coordinated inauthentic behavior' in its use of Facebook and other Meta platforms.

6. Documents sufficient to identify the Facebook Pages accounts and Group used by VDARE in their "coordinated inauthentic behavior" as described by the "April 2020 Coordinated Inauthentic Behavior Report.

7. Documents sufficient to identify the COVID-19-related conspiracies and hate speech about Asian Americans shared through the network of fake accounts VDARE created and identified by the 'April 2020 Coordinated Inauthentic Behavior Report. '

8. All documents indicating that VDARE violated the terms of service of Facebook or other Meta platforms.

9. All complaints made to Facebook or another Meta platform during the Rel vant Period concerning any allegations that VDARE violated the platform s terms of service.

6

**AA0846**

10. All documents from investigations by Meta, its predecessors or agents into allegations that VDARE violated the terms of service of Facebook or other Meta platforms.

11. Documents sufficient to identify the amount, date, purpose, payor name and payor address for any payment made to VDARE by Facebook Pay or any other Meta payment platform.

12. All documents reflecting withdrawals by VDARE from Facebook Pay or any other Meta payment platform including the amount date withdrawing person or entity and recipients of each withdrawal.

13. All documents relating to any other transfers by VDARE to or from Facebook Pay or any other Meta payment platform including the source, recipients, dates, and amounts of such transfers to the extent not previously described herein.

14. Documents sufficient to identify the final balance(s), if any in VDARE s Facebook Pay or any other Meta payment account.

15. All account closing documents for VDARE's Facebook Pay or any other Meta payment account.

16. Documents sufficient to identify any advertisements placed by VDARE within the Relevant Period on Facebook or any other Meta platform.

17. Documents sufficient to identify the total cost of advertisements placed by VDARE within the Relevant Period on Facebook or any other Meta platform.

18. Documents sufficient to identify the audiences targeted by VDARE s advertising within the Relevant Period on Facebook or any other Meta platform.

19. Documents sufficient to identify the number of users to whom VDARE s advertising was delivered within the Relevant Period on Facebook or any other Meta platform. Please note that this request does not call for production of the identity of any user who received VDARE s advertising.

17. None of the documents that the Attorney General demanded from Meta appear reasonably related to any unlawful activity by VDARE. Speech characterized by the Attorney General as "hate speech" and 'misinformation" does not render it unprotected by the First Amendment. While VDARE disagrees with Facebook that it ever engaged in "coordinated inauthentic behavior," even such purported behavior does not constitute a

7

**AA0847**

criminal or civil violation.

18.    On June 14 2022 the same Special Counsel for Hate Crimes issued a subpoena to Facebook Payments demanding:

> 1. Documents sufficient to identify the amount date, purpose payor name and payor address for any payment made to VDARE by Facebook Payments, Inc. or any other Meta payment platform.

> 2. All documents reflecting withdrawals by VDARE from Facebook Payments, Inc., or any other Meta payment platform, including the amount, date withdrawing person or entity and recipients of each withdrawal.

> 3. All documents relating to any other transfers by VDARE to or from Facebook Payments, Inc. or any other Meta payment platform including the source, recipients, dates, and amounts of such transfers, to the extent not previously described herein.

> 4. Documents sufficient to identify the final balance(s) if any m VDARE's Facebook Payments Inc., or any other Meta payment account.

> 5. All account closing documents for VDARE's Facebook Payments Inc. or any other Meta payment account.

19.    VDARE was notified of this subpoena by Facebook s counsel, not by the Attorney General, a violation by the Attorney General of the Stored Communications Act which requires "with prior notice from the governmental entity to the subscriber or customer if the governmental entity" for administrative subpoenas. 18 U.S.C. § 2703(b).

20.    The Facebook Payments and Meta subpoenas collectively asked for information about payments made to VDARE, which would have inevitably disclosed confidential information about VDARE's donors. In addition, asking for information about the names of those who operated the accounts would have identified the names of those who anonymously post from the social media accounts.

21.    Had Facebook and Meta supplied the information that the Attorney General demanded  the rights under the First Amendment of donors and commentators would have

8

**AA0848**

been violated.

## The Attorney General's Charities Bureau Subpoena

22.     On June 24 2022, before Meta or Facebook Payments produced documents the Attorney General's Charities Bureau issued a subpoena to VD*ARE,* identifying 44 categories of demanded documents.

23.     Among many other things, the Attorney General demanded "Copies of the transcripts to each deposition in the litigation between Peter Brimelow and/or VD*ARE* and the ew York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings." This demand referred to a lawsuit for libel filed by Brimelow against the ew York Times for calling him an "open white nationalist,' which he is not.

24.     On July 20, 2022 after a meet-and-confer with Assistant Attorneys General on July 18, 2022, an attorney then advising VDARE on responding to the Attorney General s subpoenas requested in writing that the she withdraw her subpoenas on grounds that they were pretexts aimed at VDARE's rights under the First Amendment of the United States Constitution to express positions critical of governmental officials and policy. The Attorney General declined to withdraw the subpoenas.

25.     In August 2022 before a revised return date, VDARE engaged new counsel and directed him to comply with the Attorney General s subpoena. The Attorney General acknowledged new counsel's need to get up to speed and his competing commitments and requested that VDARE produce' very basic corporate records" to demonstrate VDARE's intent to comply in advance of a rolling production. ' Between September 19 and November 21, 2022 VDARE produced about 6 000 pages of documents in response to the

9

**AA0849**

Attorney General s subpoena to VDARE after completing review of documents maintained by VDARE electronically and in hard copy.

26. While making and before completing the production, VDARE advised the Attorney General of its position that production of the identities of many of its contractors would violate the First Amendment to the United States Constitution. VDARE explained to the Attorney General that some contractors would face retribution if their association with VDARE was revealed and that VDARE otherwise risked losing services of contractors indispensable to its existence if their identities were disclosed as has happened in the past. VDARE cited the Attorney General to *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449 460, 462 (1958) (protecting the right of advocacy of both public and private points of view, particularly controversial ones and holding that an order requiring association to produce membership list interfered with First Amendment freedom of association); and *Evergreen Ass'n, Inc. v. Schneiderman* 153 A.D.3d 87 100 (2d Dept 2017) (applying strict scrutiny where anti-abortion advocacy group served with the Attorney General's investigatory subpoena alleged that subpoena compliance would "have a chilling effect on [the group's] associations with its employees and potential clients as well as at least one hospital). *See also Ronsenblatt v. Baer,* 383 U.S. 75 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free lest criticism of government itself be penalized.")

27. VDARE proposed that U1t: Attorney General identify specific comracLors about which she might be concerned; and VDARE could otherwise identify any contractor which might qualify as a "related party" within the meaning of ew York law. VDARE

10

**AA0850**

expressed its desire to make as robust a production as possible proposing that the issue of disclosure of contractors' identities could be revisited if it did not prove to be an adequate solution or if a specific need arose. The Attorney General rejected VDARE's proposals and requested that VDARE further articulate its objection to disclosure of the identities of vendors.

28.     By letter dated October 31, 2022, VDARE again articulated its objection to disclosure of the identities of contractors and requested that the parties meet-and-confer on the issue.   VDARE advised the Attorney General that the identities of VDARE's contractors are indispensable to its work, and their identities inextricably intertwined with financial records, including on lists of banking transactions and associated copies of checks.  VDARE had otherwise advised the Attorney General that the work of its counsel a solo practitioner reviewing all of VDARE's documents himself, to provide documents with redactions was labor-intensive, time-consuming, and ongoing.  VDARE proposed in its letter of October 31  2022 that the parties meet-and-confer to determine if they could find at least a temporary resolution of the issue.

29.     VDARE advised the Attorney General that its concerns were heightened by a letter dated October 11 2022 sent by members of Congress to Attorney General Merrick Garland requesting investigation of apparently undue disclosure of confidential information provided to or otherwise obtained by the Attorney General in another matter. On August, 26, 2022, Politico published confidential information about donors to a conservative political non-profit, Stand for America  Inc.  Ac ording to reports, the information came from the Attorney General s office, though the exact leaker is unknown. *https://lwww.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-*

11

*letitia-james-stand-for-america-ll 662065044.*

30.     Meanwhile in early October 2022 the Attorney General requested that VDARE provide a general outline of electronically-stored files (emails) that VDARE would need to collect for review and produce and begin collecting. VDARE did so, advising that the universe of such files amounted to over 40 gigabytes of data providing a list of email custodians, and otherwise keeping the Attorney General updated as to the status of the review. The emails like VDARE's paper documents, contain information about the identities of contractors whose association with VDARE is not required for any legitimate oversight of VDARE by the Attorney General, and the disclosure of which *would* violate First Amendment protections and risk VDARE s existence.

31.     As for the Attorney General's subpoenas to Facebook Payments and Meta, while VDARE questioned the legitimate purpose of the Attorney General's demands, VDARE withdrew its objection to disclosures provided that no personal identifying information was disclosed and the anonymity of its donors and contributors was protected.

32.     On December 2, 2022, the Attorney General demanded full compliance with its subpoena to VDARE by December 12, 2022, or would deem VDARE to be in non-compliance. Though VDARE had advised the Attorney General about its concerns about unnecessary disclosure of identifies of contractors, the Attorney General demanded that their identities be disclosed. Though the Attorney General had encouraged VDARE to make a rolling production as documents were reviewed resulting in later decisions not to redact some information that had earlier been redacted the Attorney General questioned the validity of VDARE's concerns. Though VDARE had advised the Attorney General that redactions of identities of contractors were intertwined with its records and were

**AA0852**

otherwise time-consuming and labor intensive to apply  the Attorney General demanded by December 12, 2022 a log identifying each redaction of each contractor s identify in VDARE's production (and its prospective production of emails) as a precondition to a meet-and-confer about VDARE's constitutional objection to unnecessary disclosure of identities of contractors.

33.     The Attorney General s position threatens VDARE s existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected speech.

**COUNT ONE**
**Declaratory Relief under the First Amendment**

34.     VDARE repeats and re-alleges every allegation in the preceding paragraphs as though frilly set forth herein.

35.     Long established First Amendment precedent establishes the right to associate with a group for "advocacy of both public and *private points of view, particularly controversial ones.' NAACP v. Alabama ex rel. Patterson,* 357 U.S. at 460 (emphasis added). This right is infringed when the identities of anonymous members of a controversial group are sought through a government subpoena. *See id.* at 462 (order requiring association to produce membership list interfered with First Amendment freedom of association).

**36.**     Imposing on "associational rights" ...  "cannot be justified on the ground that the regime is narrowly tailored to investigating charitable wrongdoing." *American for Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2389 (2021).

**37.**     Subpoenas which could have  a chilling effect on its associations with its employees and potential clients' by breaking anonymity are invalid. *See, e.g. Evergreen*

13

*Ass'n, Inc. v. Schneiderman* 153 A.D.3d at 100. *See also Brown v. Socialist Workers '74*

AA0854

*Committee (Ohio)* 459 U.S. 87  96 (1982)  ( Even individuals who receive disbursements for 'merely commercial transactions' may be deterred by the public enmity attending publicity, and those seeking to harass may disrupt commercial activities on the basis of expenditure information.  Because an individual who enters into a transaction with a minor party purely for commercial reasons lacks any ideological commitment to the party, such an individual may well be deterred from providing services by even a small risk of harassment.' )

38.      The Attorney General has failed to recognize the rights of speech and association of VDARE  and  its  contractors  and  has  rejected  reasonable  proposals  to  accommodate VDARE s concerns  which helps demonstrate  the Attorney General s true agenda.

## COUNT TWO

**(Violation of VDARE's First and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 by Retaliating Against VDARE Based on Exercise of Its Rights of Freedom of Speech and of Association)**

39.      VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

40.      The First Amendment  which applies to the Attorney General by operation of the Fourteenth Amendment, secures VDARE's right to free speech, including its right to express political beliefs about immigration and related polices of the United States, regardless of whether the Attorney General agrees.

41.      The Attorney General  has expressed her desire to use her power to limit speech with which she disagrees and has cited the First Amendment as an obstacle  to her goal.

42.      The Attorney Generals subpoena to VDARE  is an offshoot  of the Attorney General's targeting  of VDARE  because of its viewpoints.

43.      Government action in retaliation for the exercise of protected speech violates the First Amendment of the United States Constitution.  *See Mozzochi v. Borden,* 959 F.2d 1174  1179 (2d Cir. 1992).

**AA0855**

44.    "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss a plaintiff must allege ' (1) that the speech or conduct at issue was protected (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adver e action.' *Dolan v. Connolly* 794 F.3d 290, 294 (2d Cir. 2015).

45.    VDARE s expressed viewpoints about immigration and related subjects are protected by the First Amendment.

46.    Subpoenas can constitute the basis of adverse action to show retaliation. *See, e.g. Molefi* v. *Oppenheimer Tr.,* o. 03 CV 5631 FBVVP, 2007 WL 538547, at *4 (E.D.. Y. Feb. 15 2007).

47.    The Attorney General has targeted VDARE in retaliation for constitutionally protected speech.

**COUNT THREE**

**(Violation of VDARE's Rights Under Article I, Section 8 of the New York State Constitution by Retaliating Against VDARE Based on Exercise of Its Rights of Freedom of Speech and Association)**

48.    VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

49.    Article I, Section 8 of the New York State Constitution secures VDARE's right to free speech, including its right to express political beliefs concerning immigration policy

50.    'The analysis for a retaliation claim under the First Amendment and under Article I§ 8 of the New York State Constitution is the same. *Kuczinski* v. *City of New York* 352 F. Supp. 3d 314 321 (S.D.N.Y. 2019). The Attorney Generals targeting of VDARE constitutes retaliation under the United States and New York Constitutions.

16

**AA0856**

## COUNT FOUR

### (Preliminary and Permanent Injunctions)

51.     VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

52.     VDARE seeks and is entitled to a preliminary injunction prior to judgment in this case and a permanent injunction thereafter barring the Attorney General from enforcing her unconstitutional demands.

53.     VDARE will suffer irreparable harm absent such injunctive relief, including disclosure of identities of contractors, which disclosure cannot be undone.

54.     VDARE is likely to prevail on the merits in this litigation.

55.     The balance of equities favors VDARE.

56.     The public interest favors VDARE as the public interest itself lies squarely with the vigorous exercise of First amendment rights.

### DEMAND FOR JURY TRIAL

VDARE hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE VDARE respectfully requests judgment:

I.     On the First Cause of Action, declaring the Subpoenas' attempt to compel First Amendment speech and associational rights unconstitutional

II.     On the Second Cause of Action for compensatory and punitive damages in an amount to be determined at trial;

III.     On the Third Cause of Action, for compensatory and punitive damages in an amount to be determined at trial;

17

**AA0857**

  1v.  On the Fourth Cause of Action, to enjoin the Defendant from enforcing

     the subpoena;

  v.  For the costs of this action  attorney's fees and such other further and

     different relief as this court deems just and proper.

Dated:  December 12  2022


Respectfully submitted,

*/s/ Andrew J  Frisch*
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street  17th Floor
New York,   ew York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Plaintiff*

**AA0858**

## VERIFICATION OF LYDIA BRIMELOW

Pursuant to 28 U.S.C. 1746, Lydia Brimelow declares as follows:

  1.  I am President of VDARE Foundation, Inc., the Plaintiff herein, and a citizen of the United States.

  2.  I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief

  3.  I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

 Executed on December 12, 2022

Lydia Brimelow

**AA0859**

# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PEOPLE OF THE STATE OF NEW YORK, by LETITIA
JAMES, Attorney General of the State of New York,

                                   Petitioner,

                    -against-

**VDARE** FOUNDATION, INC.,

                                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. 453196/2022

Hon. Sabrina B. Kraus

**Notice of Entry of**
**Decision and Order**

Mot. Seqs. 001 & 002

         **PLEASE TAKE NOTICE** that attached is a true copy of a Decision and Order on

Motion Sequence Nos. 001 and 002 by the Hon. Sabrina Kraus, dated January 23, 2023, which

was duly entered in this action and filed in the office of the Clerk of the Supreme Court, New

York County, on the 23rd day of January, 2023 (Dkt. No. 63).

DATED: January 25, 2023

                                  Respectfully submitted,

                                   LETITIA JAMES
                                   *Attorney General*
                                   *of the State of New York*

                                   *Is Catherine Suvari*

                                   _____

                                   Catherine Suvari
                                   Assistant Attorney General
                                   NYS Office of the Attorney General
                                   28 Liberty Street
                                   New York, New York 10005
                                   Tel. (212) 416-6172
                                   Catherine.S uvari@ag.ny.gov

Case 1:22-cv-01134-UsDtcTmenDocument 36-10 3Filed004/10/2338Page 26f of 178

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | **HON. SABRINA KRAUS** | PART **57TR** |
| | *Justice* | |

----×

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK

                          Plaintiff,

                     −v−

VDARE FOUNDATION, INC.,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -×

| | |
|---|---|
| INDEX NO. | 453196/2022 |
| MOTION DATE | 1/19/2023 |
| MOTION SEQ. NO. | 001 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 33, 53, 56, 57, 59, 60,61

were read on this motion to/for                    ENFORCEMENT

The following e-filed documents, listed by NYSCEF document number (Motion 002) 36, 37, 38, 39, 40, 41,42,43,44,45,46,47,48,49, 50,51, 52,54, 55, 58

were read on this motion to/for                    **DISMISSAL**

## BACKGROUND

Petitioner commenced this special proceeding to compel compliance with a subpoena duces tecum dated June 23, 2022 (the "Subpoena") issued in conjunction with an investigation into the activities of Respondent, a not-for-profit corporation.

## ALLEGED FACTS

Respondent is a New York charitable not-for-profit corporation that incorporated in New York in 1999. In 2000, Respondent, then known as, the Lexington Research Institute, Limited, applied for and received recognition of its tax-exempt status from the IRS as a 50l(c)(3) charitable entity. Respondent did not register with the Attorney General's office until 2009.

**AA0862**

In its application for federal tax-exempt status, Respondent stated its plan to operate from offices in New York and listed two of its four directors at addresses in New York City. Respondent described its primary purpose as creating a publication web page and magazine, with editorial content focusing on foreign and domestic policy issues.

In 2019, Respondent reported a six-fold increase in revenue, from $700,000 in 2018 to approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-advised fund. In early 2020, Respondent spent $1.4 million of these newly received funds on the purchase of the Berkeley Springs Castle, a medieval-style castle located in West Virginia.

Public postings by Respondent Chairman Peter Brimelow and others indicate that he and his family have used the castle as their primary residence since at least March 2020. During this same period, Respondent also substantially increased payments to Brimelow and to third-party, for-profit companies he controls. In 2019, Brirnelow's reported salary more than doubled and comprised roughly one third of Respondent's operating expenditures. Respondent separately reported spending tens of thousands of dollars on office expenses in 2019, as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based at Brime1ow's residential home address.

In December 2020, Respondent conveyed the entirety of the Berkeley Springs Castle property to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a Respondent director, five months earlier. Respondent conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a non-profit corporation. Respondent conveyed the remaining land, consisting of eight parcels, to BBB, LLC, a for-profit corporation.

Based on the information it had obtained, the Attorney General began an investigation of Respondent and its leadership for potential violations of the New York law applicable to

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY        Page 2 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

2 of 11

AA0863

charities. The Subpoena seeks: documents concerning Respondent's organizational structure;
compliance conflict-of-interest policy requirements under New York law, and financial
operations; its purchase and conveyance of the Berkeley Springs Castle; and transactions
between Respondent and entities controlled by the Brimelows.

Respondent originally took the position that the Subpoena was unlawful and should be
withdrawn. On September 19, 2022, new counsel for Respondent agreed to comply with the
Subpoena but asserted that a significant volume of electronically-stored and hard copy
documents needed to be reviewed. Respondent made its first production that day consisting of 27
documents produced without Bates numbers and bearing unmarked redactions. No log was
provided to identify or explain the redactions.

In the twelve weeks since its first September delivery, Respondent has produced
approximately 6,000 pages from its hard copy records. It has redacted that material without any
explanation for how material was chosen for redaction. Petitioner assets that the redactions are
extensive and have been applied across almost every category of document produced, including
board meeting minutes, bank statements, internal accounting ledgers, credit card statements,
invoices, financial records for the limited liability company (Happy Penguins LLC) from which
Respondent has historically leased Peter Brimelow's services, and bank statements to accounts
held personally by Peter and Lydia Brimelow.

On October 31, 2022, Lydia Brimelow represented that, with limited exceptions,
Respondent's hard copy production was complete, and identified 22 unique email accounts
containing approximately 40 gigabytes of potentially responsive electronically stored
information. Respondent's counsel stated that review of that material would be completed by

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDAR.E FOUNDATION, INC.
Motion No. 001 002

Page 3 of 11

AA0864

November 21, 2022. Respondent subsequently proposed December 12, 2022, as a new deadline for completing email production.

On December 2, 2022, Petitioner wrote to Respondent, summarizing its concerns with the pace and scope of the production, including its extensive redactions, and demanded that Respondent complete its subpoena compliance and produce a redaction log by December 12, 2022.

On December 12, 2022, Respondent filed an action in United States District Court for the Northern District of New York against Petitioner [*VDARE Foundation, Inc.* v. *James,* 1:22-cv-01337 (FJS)], alleging, among other things, that Petitioner's demands for certain disclosures threaten Respondent's ability to conduct business; and that Petitioner's subpoena is a retaliatory pretext aimed at interfering with Respondent's rights to freedom of speech and association. The federal complaint seeks a declaration that Subpoena violates Respondent's first amendment rights, an injunction preventing Petitioner's enforcement of the Subpoena and damages.

On December 16, 2022, Petitioner commenced this special proceeding.

## PENDING APPLICATIONS FOR RELIEF

Pf:titioner seeks an order compelling Respondent to comply with the investigative Subpoena duces tecum dated June 23, 2022.

Respondent has moved for an order dismissing this proceeding, or alternatively staying the proceeding pending resolution of the Federal Action.[1]

On January 19, 2023, the court heard oral argument on the motions and reserved decision. For the reasons stated below, Petitioner's motion to compel is granted and Respondent's motion for a stay or dismissal is denied.

---

[1] At argument Respondent withdrew its request for dismissal and limited its request to a stay pending the Federal Court litigation.

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

## DISCUSSION

The requirements for the issuance of an investigatory subpoena duces tecum are "(l) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry" *(Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d 143,147,541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski,* 59 N.Y.2d 35,462 N.Y.S.2d 836,449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.,* 23 N.Y.2d 916,298 N.Y.S.2d 315,246 N.E.2d 166).

*Evergreen Ass'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 96 (2017).

The Attorney General has broad and weU-established authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law §§ 63(12), 175; N-PCL § 112; EPTL § 8-l .4(m). *See also Temple of the Lost Sheep,* 148 Misc. 2d at 828-29. "Moreover, in evaluating the Attorney General's justification for the issuance of a subpoena, there is a presumption that (s)he is acting in good faith" *(Matter of Dental Coop. v. Attorney-General of State of N.Y.,* 127 A.D.2d 274, 280; *see Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d at 147). The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828

CPLR §2308(b) provides "... if a person fails to comply with a subpoena which is not returnable in a court, the issuer or the person on whose behalf the subpoena was issued may move in the supreme court to compel compliance. If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars."

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith. *Ryan*

453196/2022 **PEOPLE OF** THE **STATE** OF **NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF** THE **STATE** OF **NEW YORK vs. VDARE FOUNDATION, INC.** Motion No. 001 002

Page S of 11

AA0866

*v. Lefkowitz,* 18 N.Y.2d 977, 979 (1966); *Hogan v. Cuomo,* 67 A.D.3d 1144, 1145 (3d Dep't 2009); *Anheuser-Busch. Inc. v. Abrams,* 71 N.Y.2d 327, 332 (1988)), affd 205 A.D.3d 625 (2022).

Petitioner's subpoena request must demonstrate a "reasonable relationship to the subject matter under investigation and the public interest to be served." *Giardina v. James,* 185 A.D.3d 451 (1st Dep't 2020). A party must respond to an investigative subpoena unless the information sought is "utterly irrelevant to any proper inquiry." *Anheuser-Busch, Inc. v. Abrams,* 71 N.Y.2d 327, 331-32 **(1988).**

New York State has a public policy interest in ensuring the robust regulation of tax.-exempt charitable entities like Respondent and Petitioner has authority to supervise and investigate such entities when misconduct is suspected.

Petitioner's Subpoena is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations. The Not-for-Profit Corporation Law, for example, provides that entities like Respondent may be formed only for charitable purposes, *see, e.g.,* N-PCL §§ 202,204,205, and that charitable assets may not be distributed to members, directors or officers, N-PCL § 515(a). Charitable entities are also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition" of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-PCL § 715); and a process for managing conflicts of interest. (N-PCL § 715-a).

The Subpoena's requests demand the type of material that will permit Petitioner to determine whether Respondent has complied with these requirements, including complete copies

453196/202.2  **PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF** THE **STATE** OF **NEW YORK vs. VDARE FOUNDATION, INC.** Motion No. 001 002
Page 6 of 11

AA0867

of Respondent's annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review. The documents called for will permit Petitioner to determine whether there has been any diversion of cha itable assets-for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries. Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that, inter alia, a charity does not solicit contributions under false pretenses or use the contributions it receives in a manner that is not "substantially consistent" with the charity's stated purposes. See generally Executive Law § 172-d.

Respondent has raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights *(see Matter of Full Gospel Tabernacle v. Attorney-General a/State of NY,* 142 A.D.2d 489,493,536 N.Y.S.2d 201; *St. German of Alaska E. Orthodox Catholic Church v. United States,* 653 F.Supp. 1342, 1346-1347 [S.D.N.Y.]; *see also Matter of Grand Jury Subpoenas/or Locals 17,'135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO,* 72 N.Y.2d 307,532 N.Y.S.2d 722,528 N.E.2d 1195). However, Respondent makes this argument on behalf of its donors and Petitioner has agreed, initially to redact donors' and volunteers' identities. Respondent has not established that the Subpoena would impair Respondent's own First Amendment rights.

Additionally, Respondent's filings themselves underscore the reasonableness of the Subpoena. Respondent admits the critical facts that first triggered Petitioner's scrutiny-Peter Brime]ow, Respondent's founder and director, and his wife, Lydia Brimelow, also a director,

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 7 of 11

AA0868

used and continue to use a $1.4 million charitable asset as their personal residence. See Frisch

Aff. (Doc. No. 37).

Respondent argues that the Brimelows paid rent to live in the cottage beginning in April

2021, however the lease is between Lydia Brimelow and BBB, LLC, a West-Virginia for-profit

corporation she manages, and Lydia Brimelow signed the document as both landlord and tenant.

Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia

Brimelow as manager).

Respondent's motion and accompanying papers fail to meet its burden of establishing the

Subpoena's invalidity. Respondent, which has partially complied with the subpoena for months,

has not established why providing a redaction log for its already-produced documents raises any

First Amendment concerns or why continuing production would pose a threat to its existence.

Although Respondent argues that redactions are required to protect the identities of

contractors-including writers who contribute to the website-these are precisely the records the

Petitioner seeks to examine in its investigation of Respondent's alleged organizational

misconduct. To the extent anonymity is used to mask violations of the law, "it is unprotected by

the First Amendment." *Arista Recs., LLC v. Doe 3,* 604 F.3d 110, 118 (2d Cir. 2010).

For example, the only board member among four who is not a Brimelow family member

is a known contributor. The Attorney General may probe this contributor's compensation as part

of its investigation of conflicts of interest and board independence. And the Attorney General

may seek the identities of other contributors to determine whether further conflicts of interest

may exist.

Respondent's reliance on *Americans for Prosperity v. Bonta,* 141 S.Ct. 2373 (2021), is

equally unavailing. That decision concerned only donor disclosures in statewide annual filing

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 8 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

AA0869

requirements, while expressly permitting subpoenas seeking the same information as part of a

targeted investigation. *See Ams.for Prosperity Found.,* 141 S. Ct. at 2386-87.  Moreover,

Petitioner has indicated a willingness to enter into a stipulation /order of confidentiality to further

address any of Respondent's concerns.

Finally, Respondent presents no compe11ing basis for a stay of this proceeding in its

moving papers, and acknowledged at oral argument it has not sought a stay of this proceeding

from the Federal District Court.

Based on the foregoing, Respondent's motion for a stay is denied and Petitioner's motion

to compel is granted.

WHEREFORE it is hereby:

ORDERED Respondent VDARE Foundation, Inc. ("VDARE") shall comply with the

Subpoena, subject to the agreement of July 27, 2022, memorialized in Exhibit R to the

Affirmation of Yael Fuchs at Dkt. No. 22, that VDARE may redact the fo11owing from

otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE)

attendees present at VDARE events conducted at or broadcast from the 276

Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying

information in any responsive record of private contributions to the organization and/or

purchases from the October 16, 2021 "Castle Auction" (transaction amounts, dates, and

other details must be disclosed); and it is further

ORDERED that such redactions are without prejudice to Petitioner's right to seek

modification of these agreed redaction terms by written application to the Court on notice to

VDARE; and it is further

**AA0870**