# 23-1084(L),

## 23-7409(CON)

IN THE UNITED STATES COURT OF APPEALS FOR THE
SECOND CIRCUIT

VDARE FOUNDATION, INC.,

*Plaintiff-Appellant,*

- v. -

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern
District of New York, Case No. 1:22-cv-01337 (FJS/CHF)

**PLAINTIFF-APPELLANT APPENDIX**
**VOLUME 4 OF 7**
**(PAGES AA0871– AA1160)**

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC.
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 888-887-1776
Email: jmw@randazza.com

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC.
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
Email: ecf@randazza.com

*Counsel for Appellant*

i

# TABLE OF CONTENTS

U.S. District Court for the Northern District of New York
Docket Sheet, Case No. 1:22-cv-01337 (FJS/CHF)……….…... AA0001

Verified Complaint dated Dec. 12, 2022 [Dkt. No. 1]……….... AA0009

    Exhibit A – *Volkov v. James* Complaint [Dkt. No. 1-1]…. AA0027

Motion to Dismiss for Failure to State a Claim
dated Jan. 18, 2023 [Dkt. No. 12]………………………………. AA0075

    Memorandum in Support of Motion [Dkt. No. 12-1]……. AA0076

    Declaration of Fuchs [Dkt. No. 12-2]……………………. AA0103

    Exhibit A – State Court Petition [Dkt. No. 12-3]………... AA0108

    Exhibit B – 2020 Form 990 [Dkt. No. 12-4]……………. AA0118

    Exhibit C – 2019 Form 990 [Dkt. No. 12-5]……………. AA0160

    Exhibit D – 2018 Form 990 [Dkt. No. 12-6]……………. AA0191

    Exhibit E – Affirmation of E. Frish [Dkt. No. 12-7]…….. AA0220

    Exhibit F – Deed from VDARE to BCF [Dkt. No. 12-8]… AA0234

    Exhibit G – Deed from VDARE to BBB [Dkt. No. 12-9]... AA0237

    Exhibit H – BCF Certificate of Incorporation
    [Dkt. No. 12-10]…………………………………………. AA0245

    Exhibit I – BBB Certificate of Incorporation
    [Dkt. No. 12-11]…………………………………………. AA0250

    Exhibit J – Lease to BBB [Dkt. No. 12-12]……………. AA0255

    Exhibit K – Subpoena [Dkt. No. 12-13]…………………. AA0261

    Exhibit L – Facebook Report [Dkt. No. 12-14]…………. AA0279

    Exhibit M – Facebook Subpoenas [Dkt. No. 12-15]…….. AA0309

Exhibit N – Kelly Letter dated July 20, 2022
[Dkt. No. 12-16]…..…………………………………… AA0336

Exhibit O – Suvari Correspondence [Dkt. No. 12-17]…... AA0342

Exhibit P – Frisch Letter [Dkt. No. 12-18]………………. AA0368

Exhibit Q – Suvari Correspondence [Dkt. No. 12-19]…... AA0371

Exhibit R – Frisch Letter [Dkt. No. 12-20]………………. AA0375

Exhibit S – Frisch Letter [Dkt. No. 12-21]………………. AA0377

Exhibit T – Suvari Letter dated Dec. 2, 2022
[Dkt. No. 12-22] …………………………………………. AA0379

Notice Re: Decision in Related State Case dated
Jan. 26, 2023 [Dkt. No. 15] …………………………..……… AA0384

Text Order Treating Dkt. No. 15 as Supplement dated
Jan. 27, 2023 [Dkt. No. 16] …………………………………… AA0398

Affidavit in Opposition to Motion to Dismiss
dated Feb. 22, 2023 [Dkt. No. 25]………………………………… AA0399

Exhibit A – Affirmation in Support of Order to Show
Cause [Dkt. No. 25-1]……………………………………. AA0402

Exhibit B – Fuchs Email [Dkt. No. 25-2]…………………. AA0415

Exhibit C – Frisch Letter [Dkt. No. 25-3]…………………. AA0417

Exhibit D – Frisch Letter [Dkt. No. 25-4]……………….... AA0419

Exhibit E – Frisch Email [Dkt. No. 25-5]…………………. AA0422

Exhibit F – Frisch Email [Dkt. No. 25-6]…………………. AA0423

Exhibit G – Suvari Letter [Dkt. No. 25-7]….……………. AA0424

Exhibit H – Lease Agreement [Dkt. No. 25-8]…………. AA0428

Exhibit I – 2019 CHAR500 Form [Dkt. No. 25-9]……….. AA0433

iii

Exhibit J – Fuchs Email [Dkt. No. 25-10].................... AA0437

Exhibit K – Frisch Letter [Dkt. No. 25-11].................. AA0438

Exhibit L – Frisch Email [Dkt. No. 25-12].................. AA0440

Exhibit M – Frisch Letter [Dkt. No. 25-13]................. AA0441

Exhibit N – State Case Memorandum [Dkt. No. 25-14]... AA0442

Exhibit O – *Volokh v. James* Opinion and Order
[Dkt. No. 25-15]........................................... AA0464

Exhibit P – Operating Agreement [Dkt. No. 25-16]........ AA0485

Exhibit Q – Bylaws of Berkeley Castle Foundation
[Dkt. No. 25-17].......................................... AA0490

Exhibit R – Order [Dkt. No. 25-18]........................... AA0496

Exhibit S – Affirmation in Support of Application
for Stay [Dkt. No. 25-19]................................ AA0498

Memorandum in Opposition to Motion to Dismiss dated
Feb. 22, 2023 [Dkt. No. 26] ................................. AA0521

Response in Support of Motion to Dismiss dated
Mar. 8, 2023 [Dkt. No. 27] ................................. AA0551

Notice Re: Decision in Related State Case dated
Mar. 14, 2023 [Dkt. No. 28] ................................ AA0562

Emergency Motion for Temporary Restraining Order and
Preliminary Injunction dated Mar. 21, 2023 [Dkt. No. 29]...... AA0564

Declaration of A. Frisch [Dkt. No. 29-2]...................... AA0568

Corrected Memorandum in Support of Emergency Motion
for Temporary Restraining Order and Preliminary Injunction
dated Mar. 21, 2023 [Dkt. No. 30]...................... AA0634

Order Denying Motion for Temporary Restraining Order
dated Mar. 27, 2023 [Dkt. No. 32] ..................................... AA0664

Response in Opposition to Motion for a Preliminary
Injunction dated April 10, 2023 [Dkt. No. 34] ...................... AA0666

Affidavit in Opposition to Motion for a Preliminary
Injunction dated April 10, 2023 [Dkt. No. 35] ...................... AA0684

    Exhibit A – Affidavit of Yael Fuchs [Dkt. No. 35-1]........ AA0688

    Exhibit B – Subpoena [Dkt. No. 35-2].......................... AA0706

    Exhibit C – Frisch Letter [Dkt. No. 35-3].................... AA0724

    Exhibit D – Frisch Letter [Dkt. No. 35-4]................... AA0727

    Exhibit E – OAG Letter [Dkt. No. 35-5]...................... AA0729

    Exhibit F – State Court Petition [Dkt. No. 35-6]........... AA0734

    Exhibit G – Oral Argument Transcript [Dkt. No. 35-7]... AA0744

    Exhibit H – State Court Order [Dkt. No. 35-8]............. AA0780

    Exhibit I – OAG Proposed Protective Order
    [Dkt. No. 35-9]...................................................... AA0792

    Exhibit J – VDARE Motion for Stay [Dkt. No. 35-10]..... AA0802

    Exhibit K – OAG Opposition to Motion for Stay
    [Dkt. No. 35-11]..................................................... AA0980

    Exhibit L – Order Denying Stay [Dkt. No. 35-12].......... AA1044

    Exhibit M – Frisch Affirmation [Dkt. No. 35-13]........... AA1046

Reply in Support of Motion for a Preliminary Injunction
dated April 24, 2023 [Dkt. No. 38] ..................................... AA1060

Affidavit in Support of Motion for a Preliminary Injunction
dated April 24, 2023 [Dkt. No. 39] ..................................... AA1076

Exhibit A – OAG Memorandum of Law [Dkt. No. 39-1]... AA1079

Exhibit B – 11 News Article [Dkt. No. 39-2]…………….... AA1102

Exhibit C – Washington Post Article [Dkt. No. 39-3]…… AA1106

Exhibit D – VDARE Article [Dkt. No. 39-4]……………… AA1110

Exhibit E – Washington Post Article [Dkt. No. 39-5]…… AA1113

Exhibit F – Declaration of Lydia Brimelow
[Dkt. No. 39-6] ……………………………………………….. AA1862

Exhibit G – Affidavit of VDARE Lady Reader
[Dkt. No. 39-7] ……………………………………………….. AA1874

Exhibit H – Affidavit of Federale [Dkt. No. 39-8] ………. AA1877

Notice of Motion to Strike Docket Entries dated
April 28, 2023 [Dkt. No. 42]…….…………………………………. AA1880

Memorandum in Support of Motion to Strike
[Dkt. No. 42-1]………………………………………………. AA1881

Notice Supplement in Support of Motion for Preliminary
Injunction dated April 28, 2023 [Dkt. No. 43]…………………... AA1886

Exhibit A – Redacted Affidavit [Dkt. No. 43-1]…………. AA1887

Exhibit B – Redacted Affidavit [Dkt. No. 43-2]…………. AA1890

Text Order on Motion to Strike dated
May 2, 2023 [Dkt. No. 44]……………………………………………. AA1893

Sur-Reply in Opposition to Motion for a Preliminary
Injunction dated May 10, 2023 [Dkt. No. 49] …………………... AA1894

Response in Support of Motion to Dismiss dated
July 27, 2023 [Dkt. No. 51] ……………………………...………... AA1904

Notice of Appeal dated July 27, 2023 [Dkt. No. 53]……………. AA1907

Response in Opposition to Motion to Dismiss
dated July 27, 2023 [Dkt. No. 54] ...................................... AA1909

Motion for Injunction Pending Appeal dated
Aug.24, 2023 [Dkt. No. 56] ............................................... AA1914

Memorandum of Law in Support of Motion for Injunction
Pending Appeal dated Aug. 24, 2023 [Dkt. No. 57]............... AA1917

    Exhibit A – Mendelson Letter [Dkt. No. 57-1].............. AA1940

    Exhibit B – Kelly Letter [Dkt. No. 57-2]...................... AA1945

    Exhibit C – Mendelson Letter [Dkt. No. 57-3].............. AA1948

    Exhibit D – Letter from F. Kelly dated
    Aug. 1, 2023 [Dkt. No. 57-4].......................…..................... AA1951

Response in Opposition to Motion for Injunction Pending
Appeal dated Sept. 13, 2023 [Dkt. No. 58]........................... AA1971

    Exhibit 1 – Schimmel Letter [Dkt. No. 58-1]................ AA1982

Notice of Appeal dated Oct. 13, 2023 [Dkt. No. 61] ............... AA1984

Case 1:22-cv-01337-JSR Document 35-10, Filed 04/16/23 Page 70 of 178.

ORDERED that on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to Petitioner, in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log; and it is further

ORDERED that on or before February 24, 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter (Dkt. No. 26); on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production; and it is further

ORDERED that the parties, if so advised, may forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court; and it is further

ORDERED that, within 20 days from entry of this order, Petitioner shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre **Street,** Room 119); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh):]; and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

AA0871

ORDERED that this constitutes the decision and order of this court.

20230123145420SBKRAUS5077G692CD58448FE88AF63FF4E118495

SABRINA KRAUS, J.S.C.

_1/23/2023_
DATE

| CHECK ONE: | | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY | | REFERENCE |

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs.  VDARE FOUNDATION, INC. Motion No.  001 002

Page 11 of 11

**AA0872**

# Exhibit D

AA0873

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x

People of the State of New York by LETITIA JAMES
AITORNEY GENERAL OF THE STATE OF NEW YORK,

Petitioner

- against -

VDARE FOUNDATIO INC.

Respondent.

New York County
Index No. 453196/2022

------------------------------------------------------------ x

PLEASE TAKE OTICE that respondent VDARE FOUNDATION, INC. hereby

appeals to the Appellate Division of the Supreme Court of the State of New York, First Judicial

Department, from a decision and order of the Supreme Court, New York (Sabrina Kraus, J.S.C.),

dated and entered January 23 2023, a copy of which is annexed hereto. The appeal is taken from

each and every part of the decision and order as well as the whole thereof.

Dated: February 6, 2023
New York, New York

Respectfully submitted,

*/s/ Andrew J. Frisch*
Andrew J. Frisch
The Law Office of Andrew J. Frisch, PLLC
40 Fulton Street, 17" Flor
New York, New York 10038
(212) 285-8000
*t!frisch@andre1,1ifri.cl?.com*

*Allorneysfor Re pondenl*

To: Office of the Attorney General

**AA0874**

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. SABRINA KRAUS** | **PART** | **57TR** |
| | *Justice* | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| | **INDEX NO.** | 453196/2022 |
| PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK | **MOTION DATE** | 1/19/2023 |
| | **MOTION SEQ. NO.** | 001 002 |

Plaintiff,

- v -

VDARE FOUNDATION, INC.,

**DECISION + ORDER ON MOTION**

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 33, 53, 56, 57, 59, 60,61

were read on this motion to/for     ENFORCEMENT

The following e-filed documents, listed by NYSCEF document number (Motion 002) 36, 37, 38, 39, 40, 41,42,43,44,45,46,47,48, 49, 50, 51, 52, 54, 55, 58

were read on this motion to/for     DISMISSAL

## BACKGROUND

Petitioner commenced this special proceeding to compel compliance with a subpo na.

duces tecum dated June 23, 2022 (the" ubpoena") issued in conjunction with an investigation

into the activiti   of R spondent, a not-for-profit corporation.

## ALLEGED FACTS

Respondent is a   ew York charitable not-for-profit corporation that incorporated in   ew

York in 1999. In 2000, Respondent, th n known as. th  Lexington Research Institute, Limited,

applied for and received recognition of its tax-exempt status from the IRS as a 501(c)(3)

charitable entity. Respondent did not register with the Attorney General's office until 2009.

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 1 of 11

**AA0875**

In its application for federal tax-exempt status, Respondent stated its plan to operate from offices in New York and listed two of its four directors at addresses in    ew York City. Respondent described its primary purpose as creating a publication web page and magazine, with editorial content focusing on foreign and domestic policy issues.

In 2019, Respondent reported a six-fold increase in revenue from $700 000 in 2018 to approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-advised fund. In early 2020, Respondent spent $1.4 million of these newly received funds on the purchase of the Berkeley Springs Castle a medieval-style castle located in West Virginia.

Public postings by Respondent Chairman Peter Brimelow and others indicate that he and his family have used the castle as their primary residence since at least March 2020. During this same period Respondent also substantially increased payments to Brimelow and to third-party for-profit companies he controls. In 2019, Brirnelow s reported salary more than doubled and comprised roughly one third of Respondent's operating expenditures. Respondent separately reported spending tens of thousands of dollars on office expenses in 2019 as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based at Brimelow's residential home address.

In December 2020 Respondent conveyed the entirety of the Berkeley Springs Castle property to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a Respondent director five months earlier. Respondent conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF) a non-profit corporation. Respondent conveyed the remaining land consisting ot' eight parcels, to BBB  LL  , a for-profit corporation.

Based on the information it had obtained the Attorney General began an investigation of Respondent and its leadership for potential violations of the New York law applicable to

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY    Page 2 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

AA0876

charities. The Subpoena seeks: documents concerning Respondent's organizational structure;
compliance conflict-of-interest policy requirements under New York law and financial
operations; its purchase and conveyance of the Berkeley Springs Castle; and transactions
between Respondent and entities controlled by the Brimelows.

Respondent originally took the position that the Subpoena was unlawful and should be
withdrawn. On September 19 2022, new counsel for Respondent agreed to comply with the
Subpoena but asserted that a significant volume of electronically-stored and hard copy
documents needed to be reviewed. Respondent made its first production that day consisting of 27
documents produced without Bates numbers and bearing unmarked redactions. o log was
provided to identify or explain the redactions.

In the twelve weeks since its first September delivery Respondent has produced
approximately 6 000 pages from its hard copy records. It has redacted that material without any
explanation for how material was chosen for redaction. Petitioner assets that the redactions are
extensive and have been applied across almost every category of document produced, including
board meeting minutes, bank statements internal accounting ledgers credit card statements
invoices financial records for the limited liability company (Happy Penguins LLC) from which
Respondent has historically leased Peter Brimelow's services, and bank statements to accounts
held personally by Peter and Lydia Brimelow.

On October 31 2022 Lydia Brimelow represented that, with limited exceptions
Respondent s hard copy production was complete, and identified 22 unique email accounts
containing approximately 40 gigabytes of potentially responsive electronically stored
information. Respondent's counsel stated that review of that material would be completed by

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 3 of 11

AA0877

November 21, 2022. Respondent subsequently proposed December 12, 2022, as a new deadline for completing email production.

On December 2, 2022, Petitioner wrote to Respondent, summarizing its concerns with the pace and scope of the production, including its extensive redactions, and demanded that Respondent complete its subpoena compliance and produce a redaction log by December 12, 2022.

On December 12, 2022, Respondent filed an action in United States District Court for the orthern District of New York against Petition r [*VDARE Foundation, Inc. v. James* 1:22-cv-O1337 (F**JS)],** alleging, among other things, that Petition r's demand for certain disclosures threaten Respondent's ability to conduct business; and that Petitioner's subpoena is a retaliatory pretext aimed at interfering with Respondent's rights to freedom of speech and as ociation. The federal complaint seeks a declaration that Subpoena iolates Respondent's first amendment rights, an injunction preventing Petitioner's enforcement of the Subpoena and damages.

On Dec mber 16, 2022 Petition r comm need this special proc eding.

## PENDING APPLICATIONS FOR RELIEF

Petition r s eks an order compelling Respondent to comply with the investigative Subpoena duces tecum dated June 23, 2022.

Respondent has moved for an order dismissing this proceeding or alternati ly staying the proceeding pending resolution of the Federal Action. [1]

On Januaiy 19, 2023, the court heard oral argument on the motions and reserved decision. *For* the reasons stated below, Petitioner' motion to compel is grant ct and R spondent's motion for a stay or dismissal is denied.

---

[1] At argument Respondent withdrew its request for dismissal and limited its reque t to a stay pending the Federal Court litigation.

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 4 of 11

AA0878

## DISCUSSION

The requirements for the issuance of an investigatory subpoena duces tecum are "(l) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry" *(Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d 143, 147, 541 .Y.S.2d 856; citing *Matter of Levin v. Murawski,* 59 N.Y.2d 35,462 .Y.S.2d 836,449 .E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y County Lawyers' Assn.,* 23 .Y.2d 916, 298 N.Y.S.2d 315,246 .E.2d 166).

*Evergreen Ass'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 96(2017).

The Attorney General has broad and well- stablished authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law§§ 63(12), 175; N-PCL § 112; EPTL § 8-l.4(m). *See also Temple of the Lost Sheep,* 148 Misc. 2d at 828-29. "Moreover, in evaluating the Attorney General's justification for the issuance of a subpoena, there is a presumption that (s)he is acting in good faith" *(Matter of Dental Coop. v. Attorney-General of State of N.Y,* 127 A.D.2d 274, 280; *see Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d at 147). The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828

CPLR §2308(b) provides "... if a person fails to comply with a subpoena which is not returnable in a court, the issuer or the person on whose behalf the subpoena was issued may move in the supreme court to compel compliance. If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars."

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith. *Ryan*

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. Motion No. 001 002

Page 5 of 11

*v. Lefkowitz,* **18** N.Y.2d 977,979 (1966); *Hogan v. Cuomo,* 67 A.D.3d 1144, 1145 (3d Dep't 2009); *Anheuser-Busch. Inc. v. Abrams,* 71 .Y.2d 327, 332 (1988)), affd 205 A.D.3d 625 (2022).

Petitioner's subpoena request must demonstrate a "reasonable relationship to the subject matter under investigation and the public interest to be served." *Giardina v. James,* 185 A.D.3d 451 (1st Dep't 2020). A party must respond to an investigative subpoena unless the information sought is "utterly irrelevant to any proper inquiry." *Anheuser-Busch, Inc. v. Abrams,* 71 .Y.2d 327, 331-32 (1988).

ew York State has a public policy interest in ensuring the robust regulation of tax-exempt charitable entities like Respondent and Petitioner has authority to supervise and investigate such entities when misconduct is suspected.

Petitioner's Subpoena is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations. The Not-for-Profit Corporation Law, for example, provides that entities like Respondent may be formed only for charitable purposes, *see, e.g.,* N-PCL §§ 202, 204, 205, and that charitable assets may not be distributed to members, directors or officers, N-PCL § 5l5(a). Charitable entities are also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition" of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-PCL § 715); and a process tor managing contlicts of interest. (N-PCL § 715-a).

The Subpoena's requests demand the type of material that will permit Petitioner to determine whether Respondent has complied with these requirements, including complete copies

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                    Page 6 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

AA0880

Case 1:23-cv-01334-JSR Document 55-10 Filed 04/10/23 Page 80 of 178

of Respondent's annual regulatory filings financial transaction records compensation records and records of Board meetings and review. The documents called for will permit Petitioner to determine whether there has been any diversion of charitable assets-for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries. Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that inter alia, a charity does not solicit contribution under false pretenses or use the contributions it receives in a manner that is not' substantially consistent" with the charity's stated purposes. See generally Executive Law§ 172-d.

Respondent has raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights *(see Matter of Full Gospel Tabernacle v. Attorney-General of State of N.Y.,* 142 A.D.2d 489,493,536 N.Y.S.2d 201; *St. German of Alaska E. Orthodox Catholic Church v. United States,* 653 F.Supp. 1342 1346-1347 [S.D.N.Y.]; *see also Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO,* 72 N.Y.2d 307, 532 N.Y.S.2d 722, 528 N.E.2d 1195). However, Respondent makes this argument on behalf of its donors and Petitioner has agreed, initially to redact donors' and volunteers' identities. Respondent has not established that the Subpoena would impair Respondent's own First Amendment rights.

Additionally, Respondent s filings themselves underscore the reasonableness of the ubpoena. Respondent admits the critical facts that first triggered Petitioner's scrutiny- Peter Brimelow, Respondent's founder and director and his wife, Lydia Brimelow also a director

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 7 of 11

AA0881

used and continue to use a 1.4 million charitable asset as their personal residence. See Frisch Aff. (Doc. No. 37).

Respondent argues that the Brimelows paid rent to live in the cottage beginning in April 2021, however the lease is between Lydia Brimelow and BBB LLC, a West-Virginia for-profit corporation she manages, and Lydia Brimelow signed the document as both landlord and tenant. Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia Brimelow as manager).

Respond nt's motion and accompanying papers fail to meet its burden of establishing the Subpoena's invalidity. Respondent which has partially complied with the subpoena for months, has not established why providing a redaction log for its already-produced documents raises any First Amendment concerns or why continuing production would pose a threat to its existence.

Although Respondent argues that redactions ar required to protect the identities of contractors-including writers who contribute to the website-these are precisely the records the Petition r seeks to examine in it in estigation of Re pendent's alleged organizational misconduct. To the extent anonymity is used to mask violations of the law, "it is unprotected by the First Amendment." *Arista Recs., LLC v. Doe 3,604* F.3d 110 118 (2d Cir. 2010).

For example, the only board member among four who is not a Brimelow family member is a known contributor. The Attorney General may probe this contributor's comp n ation a part of its investigation of conflicts of interest and board indep ndenc . And the Attorney General ma seek the identities of other contributors to determin whether further conflicts of interest may xisc.

Respondent' reliance on *Americans for Prosperity v. Banta,* 141 S.Ct. 2373 (2021), is equally tmavailing. That decision concerned only donor disclosures in statewide annual filing

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. Motion No. 001 002

Page 8 of 11

AA0882

requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation. *See Ams. for Prosperity Found.,* 141 S. Ct. at 2386-87. Moreover, Petitioner has indicated a willingness to enter into a stipulation /order of confidentiality to further address any of Respondent's concerns.,

Finally Respondent presents no compelling basis for a stay of this proceeding in its moving papers and acknowledged at oral argum nt it bas not sought a stay of this proceeding from the Federal District Court.

Based on the foregoing, Respondent's motion for a stay is denied and Petitioner's motion to compel is granted.

WHEREFORE it is hereby:

ORDERED R spondent VDARE Foundation, Inc. ("VDARE") shall comply with the Subpoena, subj ct to the agreement of July 27, 2022, memorialized in Exhibit R to the Affirmation of Yael Fuch at Dkt. o. 22, that VDARE may redact the following from oth rwise responsive material: (i) the names of any actual or anticipated private (nonVDARE) attendees present at VDARE events conducted at or broadcast from the 276 Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying information in any respon ive record of private contributions to the organization and/or purchases from the October 16, 2021 "Castle uction" (transaction amounts, dates, and other details must be disclosed); and it is further

ORDERED that such redactions are without prejudice to Petitioner' right to seek modification of th se agreed redaction terms by written application to th owt on notice to VDARE; and it is further

**453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. Motion No. 001 002**     Page 9 of 11

**AA0883**

Case 1:22-cv-01334-JSR Document 35-10, Filed 04/10/22 Page 33 of 178

ORDERED that on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to Petitioner, in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3l 22(b) log; and it is further

ORDERED that on or before February 24 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter (Dkt. No. 26); on or before February 24 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3l 22(b) to identify the redactions, if any, applied to such production· and it is further

ORDERED that the parties if so advised, may forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court· and it is further

ORDERED that, within 20 days from entry of this order, Petitioner shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing' page on the court's website at the address www.nycourts.gov/supctmanh);] and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

AA0884

ORDERED that this constitutes the decision and order of this court.

2023012314547DSBKRAUSACC904DD2CD5844BFE88AF03FF4E118495

_____
1/23/2023

DATE

**SABRINA** KRAUS, J.S.C.

CHECK ONE:                    [X] CASE DISPOSED        [ ] NON-FINAL DISPOSITION
                             [X] GRANTED      [ ] DENIED    [ ] GRANTED IN PART      [ ] OTHER
APPLICATION:                  [ ] SETTLE ORDER            [ ] SUBMIT ORDER
CHECK IF APPROPRIATE:         [ ] INCLUDES TRANSFER/REASSIGN   [ ] FIDUCIARY APPOINTMENT   [ ] REFERENCE

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 11 of 11

**AA0885**

# upr.em.e Qtnurt nf t4.e tut.e nf N.ew lnrk

# l\pp.ellut.e iiutsinn: First iuhirial i.epurtm.ent

Informational Statement (Pursuant to 22 YCRR 1250.3 [a]) - Civil

C.I.e ritle: Set l'onh IllL' titk of the c.:ase as it appears 011 tliL' summons. notin.· ot''pc.:tit1011 or onk-r to shO\\ c.:ause b 11hich the mailer 11.h or is lo be c.:tllllllllL'llced 'or a. amended

**For Court of Original Instance**

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK

- against -

VDARE FOUNDATION, INC.

Date Notice of Appeal Filed

**For Appellate Division**

| Case Type | | Filing Type | | |
|---|---|---|---|---|
| D Civil Action | D CPLR article 78 Proceeding | Appeal | | D Transferred Proceeding |
| ☐ CPLR article 75 Arbitration | Special Proceeding Other | D Original Proceedings | | ☐ CPLR Article 78 |
| | D Habeas Corpus Proceeding | D CPLR Article 78 | | D faecutive Law § 298 |
| | | 0 Eminent Domain | | 0 CPLR 5704 Review |
| | | D Labor Law 220 or 220-b | | |
| | | 0 Public Officers Law§ 36 | | |
| | | 0 Real Property Tax Law§ 1278 | | |

**N.tturc of Suit:** Check up to three of the folkm ing categories\\ hich best relkcl the natun: of thl.' case

| D Administrative Review | D Business Relationships | D Commercial | D Contracts |
|---|---|---|---|
| D Declaratory Judgrnent | ☐ Domestic Relations | D Election Law | ☐ Estate Matters |
| ☐ Family Court | D Mortgage Foreclosure | Miscellaneous | ☐ Prisoner Discipline & Parole |
| D **Real Property** *(other than foreclosure)* | D Statutory | D Taxation | ☐**Torts** |

Informational Statement - Civil

**AA0886**

Appea

| Paper Appealed From (Check one only): | If an appeal has been taken from more than one order or judgment by the filing of this notice of appeal, please indicate the below information for each such order or judgment appealed from on a separate sheet of paper. |
|---|---|

| D Amended Decree | D Determination | D Order | D Resettled Order |
|---|---|---|---|
| ☐ Amended Judgement | ☐ Finding | ☐ Order & Judgment | ☐ Ruling |
| ☐ Amended Order | D Interlocutory Decree | ☐ Partial Decree | ☐ Other (specify): |
| Decision | ☐ Interlocutory Judgment | D Resettled Decree | |
| ☐ Decree | D Judgment | 0 Resettled Judgment | |

| Court: | Su reme Court | County: | New York |
|---|---|---|---|
| Dated: | 01/23/2023 | Entered: January 23, 2023 | |
| Judge (name in full): Sabrina Kraus | | Index No.:453196/2022 | |
| Stage: ☐ Interlocutory  ☐ Final ☐ Post-Final | | Trial: ☐ Yes  ☐ No  If Yes: ☐ Jury ☐ Non-Jury | |

Prior Unperfected Appeal and Related Case Information

Are any appeals arising in the same action or proceeding currently pending in the court?   ☐ Yes  II No
If Yes, please set forth the Appellate Division Case Number assigned to each such appeal.

Where appropriate, indicate whether there is any related action or proceeding now in any court of this or any other jurisdiction, and if so, the status of the case:
A related matter is pending in United States District Court for the Northern District of New York in VDARE Foundation, Inc. v. Letitia James in her official capacity as the Attorney General of the State of New York, 1:22-cv-01337-FJS-CFH. The Attorney General's motion to dismiss the proceeding is pending and not yet fully briefed.

Original Proceeding

| Commenced by: ☐ Order to Show Cause ☐ Notice of Petition ☐ Writ of Habeas Corpus | Date Filed: |
|---|---|

Statute authorizing commencement of proceeding in the Appellate Division:

Proceeding Transferred Pursuant to CPLR 7804(g)

| Court: | Choose Court | County: | Choose County |
|---|---|---|---|
| Judge (name in full): | | Order of Transfer Date: | |

CPLR 5704 Review of Ex Parte Order:

| Court: | Choose Court | County: | Choose County |
|---|---|---|---|
| Judge (name in full): | | Dated: | |

Description of Appeal, Proceeding or Application and Statement of Issues

Description: If an appeal, briefly describe the paper appealed from. If the appeal is from an order, specify the relief requested and whether the motion was granted or denied. If an original proceeding commenced in this court or transferred pursuant to CPLR 7804(g), briefly describe the object of proceeding. If an application under CPLR 5704, briefly describe the nature of the ex parte order to be reviewed.
Appellant appeals from an order of the Supreme Court, New York County (Kraus, J.), dated January 23, 2023, which (a) denied VDARE's application to stay the proceeding below pending resolution of VDARE's first-filed action against the Attorney General of the State of New York (the "OAG") in VDARE Foundation, Inc. v. Letitia James, 1:22-cv-01337 (N.D.N.Y.) (Scullin, U.S.D.J.); and (b) granted the OAG's motion to compel VDARE, beginning on February 10, 2023, to produce materials to the OAG protected by the rights to speech and association guaranteed by the federal and state constitutions.

Informational Statement - Civil

**AA0887**

Issues: Specify the issues proposed to be raised on the appeal, proceeding, or application for CPLR 5704 review, the grounds for reversal, or modification to be advanced and the specific relief sought on appeal.

Appellant's on appeal intends to argue that the court should have (a) stayed this proceeding pending resolution of Appellant's first-filed action against the OAG in VDARE Foundation, Inc. v. Letitia James, 1:22-cv-01337 (N.D.N.Y.) (Scullin, U.S.D.J.); and (b) denied the OAG's motion to compel VDARE, beginning on February 10, 2023, to produce materials to the OAG protected by the rights to speech and association guaranteed by the federal and state constitutions.

**Party Information**

Instructions: Fill in the name of each party to the action or proceeding, one name per line. If this form is to be filed for an appeal, indicate the status of the party in the court of original instance and his, her, or its status in this court, if any. If this form is to be filed for a proceeding commenced in this court, fill in only the party's name and his, her, or its status in this court.

| No. | Party Name | Original Status | Appellate Division Status |
|---|---|---|---|
| 1 | VDARE FOUNDATION, INC. | Respondent | Appellant |
| 2 | Attorney General of the State of New York | Petitioner | Respondent |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |

Informational Statement - Civil

AA0888

| Attorney Information | | | | |
|---|---|---|---|---|
| Instructions: Fill in the names of the attorneys or firms for the respective parties. If this form is to be filed with the notice of petition or order to show cause by which a special proceeding is to be commenced in the Appellate Division, only the name of the attorney for the petitioner need be provided. In the event that a litigant represents herself or himself, the box marked "Pro Se" must be checked and the appropriate information for that litigant must be supplied in the spaces provided. | | | | |

| Attorney/Firm Name: Andrew J. Frisch/ The Law Offices of Andrew J. Frisch, PLLC | | | | |
|---|---|---|---|---|
| Address: 40 Fulton Street, 17th Floor | | | | |
| City: New York | State: New York | Zip: 10038 | Telephone No: 212-285-8000 | |
| E-mail Address: afrisch@andrewfrisch.com | | | | |
| Attorney Type: | Retained ☐ | Assigned D | Government ☐ | Pro Se ☐ Pro Hae Vice |
| Party or Parties Represented (set forth party number(s) from table above): / | | | | |

| Attorney/Firm Name: Assistant Attorney General Yael Fuchs/ Attorney General of the State of New York | | | | |
|---|---|---|---|---|
| Address: 28 Liberty Street | | | | |
| City: New York | State: New York | Zip: 10005 | Telephone No: 212-416-8391 | |
| E-mail Address: yael.fuchs@ag.ny.gov | | | | |
| Attorney Type: D | Retained D | Assigned | Government ☐ | Pro Se ☐ Pro Hae Vice |
| Party or Parties Represented (set forth party number(s) from table above): | | | | |

| Attorney/Firm Name: | | | | |
|---|---|---|---|---|
| Address: | | | | |
| City: | State: | Zip: | Telephone No: | |
| E-mail Address: | | | | |
| Attorney Type: | Retained ☐ | Assigned ☐ | Government D | Pro Se D Pro Hae Vice |
| Party or Parties Represented (set forth party number(s) from table above): | | | | |

| Attorney/Firm Name: | | | | |
|---|---|---|---|---|
| Address: | | | | |
| City: | State: | Zip: | Telephone No: | |
| E-mail Address: | | | | |
| Attorney Type: | Retained ☐ | Assigned ☐ | Government ☐ | Pro Se ☐ Pro Hae Vice |
| Party or Parties Represented (set forth party number(s) from table above): | | | | |

| Attorney/Firm Name: | | | | |
|---|---|---|---|---|
| Address: | | | | |
| City: | State: | Zip: | Telephone No: | |
| E-mail Address: | | | | |
| Attorney Type: | Retained ☐ | Assigned D | Government ☐ | Pro Se ☐ Pro Hae Vice |
| Party or Parties Represented (set forth party number(s) from table above): | | | | |

| Attorney/Firm Name: | | | | |
|---|---|---|---|---|
| Address: | | | | |
| City: | State: | Zip: | Telephone No: | |
| E-mail Address: | | | | |
| Attorney Type: | Retained ☐ | Assigned D | Government ☐ | Pro Se ☐ Pro Hae Vice |
| Party or Parties Represented (set forth party number(s) from table above): | | | | |

Informational Statement - Civil

**AA0889**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------- x

People of the State of ew York, by LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,


                              Petitioner,


                 - against -                          **New York County**
                                                      **Index No. 453196/2022**


VDARE FOUNDATIO , INC.

                              Respondent.


------------------------------------------------------------------- x

### AFFIRMATION OF SERVICE

**ANDREW J. FRISCH,** an attorney duly admitted to practice in the courts of the State of

ew York since 1985 affirms the following statements to be true under penalty of perjury:

1.  I am an attorney duly admitted to practice in the State of ew York, am over the age

of 18 years, and am not a party to this action.

2.  On February 6, 2023, I served the within OTICE OF APPEAL via YSCEF within

the State of ew York addressed to counsel of record for the Office of the Attorney General as

set forth in a Notice of Appearance at NYSCEF Docket o. 34:

Yael Fuchs, Co-Section Chief, Enforcement
Charities Bureau Assistant Attorney General
28 Liberty Street
New York, New York 10005
*yael.fuchs@ag.ny.gov*


Dated: February 6, 2023


                              *Isl Andrew J Frisch*
                              Andrew J. Frisch


### AA0890

# Exhibit E

AA0891

The Law Offices of
## ANDREW J. FRISCH, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
212-285-8000

February 6, 2023

*Via Electronic Mail*

Yael Fuchs, Co-Section Chief, Enforcement
Charities Bureau Assistant Attorney General
28 Liberty Street
New York, New York 10005
*yael.fuchs@ag.ny.gov*
:

      *Re:  Attorney General of the State of New York v. VDARE Foundation, Inc.;*
        *Index Number 453196/2022*

Counsel:

      I write to provide you with notice that my office will be presenting an order to show cause to the Appellate Division of the Supreme Court of the State of New York, First Department, located at 27 Madison Avenue, New York, New York 10010, on a date and time to be set by the Appellate Division.

      The order to show cause will seek relief pursuant to CPLR 5519 and the inherent powers of the Court staying enforcement of an order dated January 23, 2023.

      A copy of the supporting papers will be provided to you when they are complete.

      Respectfully submitted,

      */s/ Andrew J. Frisch*
      Andrew J. Frisch

**AA0892**

# Exhibit F

AA0893



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
28 LIBERTY STREET
NEW YORK, NEW YORK 10005

### *SUBPOENA DUCES TECUM*
### THE PEOPLE **OF** THE STATE **OF** NEW YORK

To:     Custodian of Records
        VDARE Foundation, Inc.
        447 South Street
        Litchfield, CT 06759

     **You  ARE HEREBY COMMANDED,** pursuant to the  laws of the State of New York and all business and excuses being laid aside, to produce to the Office of the Attorney General  of the State of New York, Letitia James, 28 Liberty Street, New York, New York 10005, in accordance with the Instructions and Definitions below, any and all documents requested in the attached Schedule that are in Your possession, custody or control, including documents in the possession, custody and control of entities that You own or control in whole or in part. Your production  of documents in response to this subpoena should be addressed to the attention of Catherine Suvari, Assistant Attorney General, Charities Bureau, and may be submitted by mail or electronic mail provided it is  received  by **July 25, 2022,** or any agreed upon adjourned  date thereafter.

     **PLEASE TAKE NOTICE** that the Attorney General deems the documents and testimony requested by this subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

     **PLEASE TAKE FuRTHER NOTICE** that disobedience of tbjs subpoena by failing to deliver the documents and information requested in the attached schedule on the date, time and place stated above or any agreed adjourned date and time may subject VDARE Foundation, Inc. ("VDARE") to prosecution under New York law.

     **PLEASE TAKE FURTHER NOTICE** that VDARE shall immediately implement a litigation hold preserving all documents relating to the subject matter of this subpoena, including all documents concerning the specific documents demanded herein. VDARE shall also issue document preservation letters for all documents relating to the subject matter of this subpoena to the   following individuals: Peter Brimelow,  Lydia Brimelow,  John Brimelow,  Scott McConnell, John O'Sullivan, Joseph (Joe) Fallon, John Wall, T.M. Byxbee Company, P.C., and Labyrinth, Inc. (Additional subpoenas may follow.)

**AA0894**

**WITNESS, the Honorable Letitia James**, Attorney General of the State of New York, this 23rd day of June, 2022.

By: <u>/s/ *Catherine Suvari*</u>

Catherine Suvari
Assistant Attorney General, Charities Bureau
Catherine.Suvari@ag.ny.gov
(212) 416-6172

**AA0895**

# SCHEDULE

## A. Instructions

1. Please produce the Documents described in Section C of this schedule, in the accordance with the Instructions (Section A), Definitions (Section B) and Format (Section D) described below.

2. <u>Time Frame.</u> Except as otherwise noted, this subpoena applies to all Documents in effect, created, recorded, compiled, transmitted or received from **January l, 2016 through the present** (the "Relevant Period").

3. <u>Continuing Obligation.</u> The obligation to produce Documents pursuant to this Subpoena is a continuing one. Responsive Documents located any time after a response is due or submitted shall be promptly produced at the place and in the manner specified herein.

4. All Documents shall be produced either as kept in the ordinary course of business or with an accompanying cover letter that includes a description of the Documents being produced and their contents, the source from which the Documents have been produced, and the number(s) of the request(s) in Section C to which each Document produced is respons1ve.

5. <u>Documents No Longer in Your Possession.</u> If any Document requested was formerly in Your possession, custody or control but is no longer available or no longer exists, submit a statement in writing and under oath that: (i) describes in detail the nature of the Document and its contents; (ii) identifies the person who prepared the Document; (iii) identifies all persons who have seen or had possession of the Document; (iv) specifies the date on which the Document was prepared, transmitted or received; (v) specifies the date on which the Document became unavailable; (vi) specifies the reason why the Document is unavailable, including whether it has been misplaced, lost, destroyed or transferred, and, if it has been destroyed or transferred, specifies the conditions of and reasons for such destruction or transfer and the persons who requested and performed the destruction or transfer; and (vii) identifies all persons with knowledge of any portion of the contents of the Document.

6. <u>Privilege.</u> If any Document requested is withheld on the ground of privilege or other legal doctrine, submit with the production a statement in writing and under oath (e.g., a privilege log) that provides, for each Document withheld: (i) a description of the nature of the Document and its contents; (ii) the date of the Document; (iii) the Document's authors and recipients; and (iv) the legal ground for withholding it from production. If the legal ground is attorney-client privilege, please also indicate the names of the attorneys involved in the Document and the nature of their involvement (e.g., as authors). Such statement (or log) shall accompany each production. Further, for each Document withheld pursuant to this paragraph, the relevantproduction shall include placeholder pages equivalent in number to the page-length of the withheld Document.

7. <u>Format for Production.</u> Unless otherwise specified and agreed to by the Office of the Attorney General, responsive Documents shall be produced in electronic form in

3

## AA0896

accordance with the instructions and criteria set forth in Section D and Attachment 1 below.

8. <u>Certification</u>. In order for Your response to this subpoena to be complete, it must include a completed version of the attached Certification. In accordance with CPLR 3122-a, the Certification must be sworn in the form of an affidavit and subscribed by a qualified witness charged with the responsibility for maintaining the records, stating in substance that (a) s/he is the duly authorized custodian or other qualified witness and has the authority to make the certification; (b) to the best of his/her knowledge, after reasonable inquiry, the records or copies thereof are accurate versions of the documents described in this subpoena that are in Your possession, custody, or control; (c) to the best of his/her knowledge, after reasonable inquiry, the records or copies produced represent all the documents described in this subpoena, or if they do not represent a complete set of the documents subpoenaed, an explanation of which documents are missing and a reason for their absence is provided; and (d) the records or copies produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and that it was the regular course of business to make such records.

## B. Definitions

1. "All" shall mean "each and every."

2. "And" and "or" shall be construed disjunctively or conjunctively, as necessary to bring within the scope of a request all responses and Documents that might otherwise be deemed outside the scope of that request.

3. "Any" shall mean "any and all."

4. "Communications" shall refer to any oral, written, in person, or any other form of relay, transmission, or transference of information by any means whatsoever including but not limited to by way of mail, computer, telephone, cellular or mobile phone, voice mail, electronic mail, radio, video, sound recordings, television, telefax, telex, social media, or any other medium, and shall include any Document that abstracts, digests, transcribes, records, or reflects any of the foregoing.

5. "Concerning" or "relating to" shall mean concerning, relating to, referring to, referencing, describing, evidencing, or constituting, either directly or indirectly and in whole or in part.

6. "Documents" is used in the broadest sense of the term and shall mean all records and other tangible media of expression of any nature, including: originals, drafts or finished versions; annotated or nonconforming or other copies, however created, produced or stored (manually, mechanically, electronically or otherwise); electronic mail ("email"), instant messages, Blackberry or other wireless device messages; voicemail; books, papers, files, notes, correspondence, memoranda, reports, records, journals, summaries, registers, account statements, analyses, plans, manuals, policies, telegrams, faxes, wires,

**AA0897**

telephone logs, telephone messages, or message slips; minutes, notes, records or transcriptions of conversations, communications or meetings; video and audio tapes; disks and other electronic media; microfilm, microfiche; storage devices; press releases; contracts, agreements; calendars, date books, appointment books and diaries; notices and confirmations. A draft or non-identical copy is a separate Document. Documents existing in electronic form shall include all items that may have been removed from the email accounts, directories or other locations in which they are ordinarily stored to any other servers, folders, files, archives, or backup devices, whether or not deleted.

7. "VDARE", "You", or "Your" shall mean VDARE Foundation, Inc. and (i) any of its directors, officers, agents, employees, consultants, representatives, attorneys, and other persons acting on its behalf, (ii) any predecessors, successors, parent corporations, subsidiaries, divisions, assigns, "d/b/a" names, and affiliates, including Lexington Research Institute, and (iii) any entities that, directly or indirectly, control, are controlled by, or are under common control with VDARE Foundation, Inc., including by possessing, directly or indirectly, the power to direct or cause the direction of VDARE Foundation, Inc.'s management and policies, whether through membership, the ownership of voting securities, by contract, or otherwise.

8. The singular form of any word shall include the plural and vice versa.

9. Any word used but not defined in this Schedule shall be construed consistently with its common meaning.

**C. Documents to be Produced**

1. Copies of VDARE's certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports, from 1999 through the present.

2. Copies of the two most recent [RS Form 990s filed by VDARE with the Internal Revenue Service.

3. Copies of the transcripts to each deposition taken in the litigations between Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings.

4. Documents sufficient to Identify (i) the names and addresses of VDARE's current and fonner employees, their titles, and their dates of employment; (ii) VDARE's current and former volunteers, their titles, and their dates of service; (iii) VDARE's current and former independent contractors and their dates of service; and (iv) VDARE's current and former officers and directors, their titles, and the period during which they held their positions.

5. All minutes of any meetings convened by the full VDARE Board of Directors or any committee thereof from 1999 through the present.

6. All Documents circulated for Board consideration or review.

7. All Documents concerning (i) compensation, including salary, wages, expense reimbursements, royalties, fees, bonuses, deferred compensation, pension and retirement

funds paid to any Officers and/or Directors; (ii) reimbursements or payments made to any Officer and/or Directors of or for travel-related expenses (u.,automobile purchases or leases, fuel, tolls, parkjng, and non-automobile transportation such as air and subway fare); (iii) insurance benefits (u., medical, dental, automobile, life, malpractice and disability) paid to any Officers and/or Directors; (iv) vacation pay, and/or vacation, sick, and personal leave time or payment therefor paid to any Officers and/or Directors; (v) severance pay or benefits paid to any Officers and/or Directors; (vi) any other payment or reimbursement paid to any Officers and/or Directors for services performed by them on behalf of VDARE, including any solicitation of funds; and (vii) all forms W-2 and 1099 issued to any Officers and/or Directors.

8.  Documents reflecting any solicitation of funds on VDARE's behalf, in any format, . hard copy mailers or solicitations or online fundraising such as GoFundMe or Kickstarter.

9.  All VDARE written policies, manuals, and/or procedures, including all policies related to conflicts of interest.

10. All Documents concerning or relating to setting, directing, paying, or adjusting any Officer's compensation.

11. All Documents concerning or relating to setting, directing, paying, or adjusting the compensation for Peter Brimelow, or any other employee, officer, director, consultant or vendor of VDARE.

12. All Documents concerning or reporting conflicts of interest "required to be disclosed annually" as set forth in responses to Question I2(b) on Part VJ of VDARE's 2019 Form 990.

13. All Documents concerning or reflecting any effort by VDARE to "regularly and consistently monitor and enforce compliance with" the conflicts of interest policy as set forth in response to Question 12(c) on Part VI ofVDARE's 2019 Form 990.

14. All Documents concerning or reflecting the purchase of 276 Cacapon Road, Berkeley Springs, West Virginia by or on behalf ofVDARE.

15. All Documents concerning or reflecting any representation to the State of West Virginia, the Town of Bath, West Virginia, or the County of Morgan, West Virginia regarding the taxation and/or use of 276 Cacapon Road, Berkeley Springs, West Virginia for charitable purposes.

16. All Documents concerning VDARE events (recorded or live) conducted at or broadcast from the 276 Cacapon Road, Berkeley Springs, West Virginia property, including all Communications (including emails and text messages), all records of any sales made during the event(s), and Documents sufficient to account for all funds received and disbursed because of such events.

17. All Documents concerning VDARE events (recorded or live) scheduled to be conducted at or broadcast from the 276 Cacapon Road, Berkeley Springs, West Virginia property, including all Communications (including emails and text messages) and Documents sufficient to account for all funds received and disbursed because of such scheduled events.

18. All Documents recording, reporting, considering or addressing conflicts of interest as reported on Schedule O of any IRS 990 form.

19. All director and officer insurance policies and any Documents relating to claims made on such policies.

20. Any claims for indemnification or defense by officers or directors upon VDARE.

21. All financial records of VDARE, including its books and records, general ledger, bank statements, credit card statements, debit card statements and receipts, copies of checks (front and back), canceled checks, account opening Documents, and Communications.

22. Documents sufficient to identify VDARE's bank accounts, credit card accounts, website accounts, and accounts with credit card processing.

23. Documents sufficient to identify all persons who have or had access to and/or control of VDARE's bank accounts, credit card accounts, website accounts, and accounts with credit card processing.

24. All audits, reports, reviews, corrective action plans or correspondence (including emails and text messages) issued to VDARE by any accounting firm or auditor, administrator, monitor, or any local, state, or federal agency or governmental or administrative entity.

25. Copies of any orders, judgments, cease and desist letters, or other Documents issued by any governmental entity or court regarding any alleged or confirmed wrongdoing, and any written settlement agreements executed in connection with the same.

26. Documents sufficient to identify any personal or business relationship between any current or former officer, director, or employee of VDARE, on the one hand, and any officer, director, employee, or contractor of VDARE, on the other hand.

27. All Communications between VDARE and the IRS, or between VDARE and any other local or state taxation authority.

28. All Communications between VDARE and any state or federal agency.

29. All Communications between VDARE and any of its accountants or auditors.

30. All Communications by VDARE or any of its agents regarding the Berkeley Castle Foundation, including all emails and text messages exchanged by VDARE, its principals, or agents, and any copies of any documents filed with any state or federal agency by VDARE or its agent on behalf of Berkeley Castle Foundation, Inc.

31. All Communications by VDARE or any of its agents regarding the BBB, LLC, including all emails and text messages exchanged by VDARE, its principals, or agents, and any copies of any documents filed with any state or federal agency by VDARE or its agent on behalf of BBB, LLC.

32. All records of transactions between BBB LLC and VDARE including books and records, general ledger, bank statements, credit card statements, copies of checks (front and back), canceled checks, and Communications.

33. All records of transactions between Berkeley Castle Foundation, Inc. and VDARE including its books and records, general ledger, bank statements, credit card statements, copies of checks (front and back), canceled checks, and Communications.

**AA0900**

34. Copies of BBB LLC's certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports from BBB's incorporation to the present, in the custody and control of VDARE, its principals, or its agents.

35. Copies of Berkeley Castle Foundation, Inc. certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports, from Berkeley Castle Foundation's incorporation to the present, in the custody and control of VDARE, its principals, or its agents.

36. All records relating to real estate transactions between VDARE and Berkeley Castle Foundation, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

37. All records relating to real estate transactions between VDARE and Berkeley Springs Castle, LLC, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

38. All records relating to real estate transactions between VDARE and BBB, LLC, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

39. All records of renovations, improvements, construction, landscaping, or any other work done since February 14, 2020, on the real property described in the February 14, 2020 deed between Berkeley Springs Castle, LLC, and VDARE. Such records shall include without limitation all invoices, contracts, estimates, bids, requests for bids, copies of checks (front and back), and Communications.

40. All records concerning the October 16, 2021 "Castle Auction," including all Communications (including emails and text messages), all records of sales made, copies of checks (front and back), valuations of auction items, and Documents sufficient to account for all funds received and disbursed because of the Auction.

41. All records of and Communications concerning any loans VDARE made to Berkeley Castle Foundation, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text correspondence.

42. All records of and correspondence concerning any loans VDARE made to BBB, LLC, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text Communications.

43. All records of and Communications concerning any loans Peter or Lydia Brimelow (individually or collectively) made to VDARE, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text correspondence.

44. All records of and correspondence concerning any loans VDARE made to Peter or Lydia Brimelow (individually or collectively), including promissory notes, mortgages, deeds of

**AA0901**

Case 1:22-cv-01337-JS-CHH Document 33-10, Filed 04/10/23 Page 101 of 178

trust, agreements, records of repayment, copies of checks (front and back), bank
statements, email, and text Communications.

**AA0902**

### D. Format for Production

Unless otherwise specified and agreed to by the Office of the Attorney General, all responsive documents must be produced in Concordance format in accordance with the following instructions.

1. <u>Concordance Production Components.</u> A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 2:

   - *Metadata Load File*
   - *Extracted or OCR Text Files*
   - *Single-Page Image Files*
   - *Opticon Load File*
   - *Native Files.*

2. <u>Production File Requirements.</u>

   A. ***Metadata Load File***

   - Required file format:

         UTF-8
         .dat file extension
         Field delimiter: (ASCII decimal character 20)
         Text Qualifier: þ (ASCII decimal character 254). Multiple value field delimiter: ; (ASCII decimal character 59)

   - The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 1.

   - Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.

   - ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.

      **Accepted date formats:**

         mm/dd/yyyy
         yyyy/mm/dd
         yyyymmdd

   - Accepted time formats:

**AA0903**

hh:mm:ss (if not in 24-hour format, You must indicate am/pm)
hh:mm:ss:mmm

B. *Extracted or OCR Text Files*

- You must produce individual document-level text files containing the full extracted text for each produced document.

- When extracted text is not available (for instance, for image-only documents) You must provide individual document-level text files containing the document's full OCR text.

- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 5000 files.

C. *Single-Page Image Files (Petrified Page Images)*

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files. See Section 7.E below for instructions on producing native versions of documents You are unable to convert.

- Image documents that exist only in non-TIF formats must be converted into TIF files. The original image format must be produced as a native file as described in Section 7.E below.

- For documents produced only in native format, You must provide a TIF placeholder that states "Document produced only in native format."

- Each single-page TIF file must be endorsed with a unique Bates number.

- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).

- Required image file format:

  - CCITT Group 4 compression
    2-Bit black and white
    300 dpi
    Either .tif or .tiff file extension.

- TIF files must be divided into subfolders containing no more than 5000 files. Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

11

**AA0904**

Case 1:22-cv-01337-JS-CLP Document 55-10, Filed 04/10/23 Page 104 of 178

D. **Opticon Load File**

- Required file format:

  - Field delimiter: , (ASCII decimal character 44)
  - No Text Qualifier
    .opt file extension

- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):

  - ALIAS or IMAGEKEY - the unique Bates number assigned to each page of the production.
  - VOLUME- this value is optional and may be left blank.
  - RELATIVE PATH - the ftlepatb to each single-page image file on the production media.
  - DOCUMENT BREAK - defines the first page of a document. The only possible values for this field are "Y" or blank.
  - FOLDER BREAK - defines the first page of a folder. The only possible values for this field are "Y" or blank.
  - BOX BREAK - defines the first page of a box. The only possible values for this field are "Y" or blank.
  - PAGE COUNT - this value is optional and may be left blank.

- **Example:**

      ABC0000 I ,,TMAGES\0001\ABC0000l .tif,Y,,,2
      ABC00002,,IMAGES\0001\ABC00002.tif,,,,
      ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
      ABC00004,,TMAGES\0002\ABC00004.tif,Y,,,I

E. **Native Files**

- Non-printable or non-print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.

- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and the original file extension.

- For documents produced only in native format, You must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."

- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.

**AA0905**

- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.

- You may be required to supply a software license for proprietary documents produced only in native format.

3. <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:

- data\ (contains production load files)

- images\ (contains single-page TIF files, with subfolder organization)

    \0001, \0002, \0003...

- natives\ (contains native files, with subfolder organization)

    \0001, \0002, \0003...

- text\ (contains text files, with subfolder organization)

    \0001, \0002, \0003...

4. <u>De-Duplication</u>. You must perform global de-duplication of stand-alone documents and email families.

5. <u>Paper or Scanned Documents.</u> Documents that exist only in paper format must be scanned to single-page **TIF** files and OCR'd. The resulting electronic files should be produced in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the Notice to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

6. <u>Structured Data</u>. Structured data includes but is not limited to relational databases, transactional data, and xml pages. Spreadsheets are not considered structured data. You must first speak to the Assistant Attorney General whose telephone number appears on the Notice.

   <u>Relational Databases</u>

- Database tables should be provided in d or other machine-readable, non-proprietary format, with each table in a separate data file. Each data file must have an accompanying data dictionary that explains the meaning of each column name and explains the values of any codes used.

- Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the data dictionary.

- Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one another.

**AA0906**

7.  <u>Media and Encryption.</u>  All document sets over 2 GB must be produced on CD, DVD, or hard-drive media. All production media must be encrypted with a strong password, which must be delivered independently from the production media. Document sets under 2 GB may be delivered electronically. The OAG offers a secure cloud storage option that can be set up to receive media on a one-time basis, or the OAG will download media from the providing parties' server.

**AA0907**

# ATTACHMENT 1
## Required Fields for Metadata Load File

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | BC000I |
| ENDDOC | Bates number assigned to the last page of the document. | IABC0002 |
| REGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.,* should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC000J |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family *i.e.,* should be the same as ENDDOC of the last child document). | ABC0008 |
| IPARENTDOC | BEGDOC of parent document. | ABC000I |
| (:HILDDOCS | st of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004... |
| (:OMMENTS | Additional document comments, such as passwords for encrypted files. | |
| INATIVEFILE | Relative file path of the native file on the production media. | \Native File\Folder\...\BEGDOC.ext |
| TEXTFILE | Relative file path of the plain text file on the production media. | \Text_Folder\Folder\...\BEGDOC.txt |
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, IBox Number... |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited "y ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname >; ... |
| K::C | 11 cc: members, delimited by";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname >; ... |
| BCC | All bee: members, delimited by";" when field has multiple values | Firstname Lastname < FLastoame @domain >; Firstname Lastname < FLastoame @domain >; ... |

15

**AA0908**

| SUBJECT | Subject line of the email. | |
|---|---|---|
| DATERCVD | Pate and time that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or bh:mm:ss |
| DATESENT | Date and time that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; b.h:mm:ss AM/PM or hh:mm:ss |
| iCALBEGDATE | !Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | nate that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; bh:mm:ss AM/PM or hh:mm:ss |
| IATT ACHMENTS | OC.,ist of filenames of all attachments, elimited by";" when field has multiple alues. | AttachmentFileName.; AttachmentFi leName.docx; AttachmentFileName.pdf;... |
| INUMATTACH | !Number of attachments. | |
| IRECORDTYPE | General type of record. | N AGE; LOOSE E-MAIL; E-MAIL; E-DOC; MAGE ATTACHMENT; LOOSE E-MATL IATT ACHMENT; E-MAIL ATTACHMENT; IE-DOC ATTACHMENT |
| IFOLDERLOC | Priginal folder path of the produced kiocument. | IDrive:\Folder\...\...\ |
| !FILENAME | Priginal filename of the produced kiocument. | !Filename.ext |
| IDOCEXT | Original file extension. | '1tml, xis, pdf |
| IDOCTYPE | !Name of the program that created the produced document. | 'Adobe Acrobat, Microsoft Word, Microsoft 'Excel, Corel WordPerfect.. |
| rnTLE | !Document title (if entered). | |
| AUTHOR | !Name of the document author. | |
| REVISION | INumber of revisions to a document. | 18 |
| DATECREATED | !Date and time that a document was .,reated. | .nm/dd/yyyy, yyyy/mm/dd, pr yyyymmdd; hh:mm:ss AM/PM orhh:mm:ss |
| DATEMOD | Date and time that a document was last modified. | mn/dd/yyyy, yyyy/mm/dd, pr yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | |
| PGCOUNT | Number of pages per document. | |
| IMPORTANCE | Email priority level if set. | OC..ow, Normal, High |
| MD5HASH | MD5 hash value computed from native flle (a/le/a file fingerprint). | |
| **SHAIHASH** | SHA I hash value | |
| MSGINDEX | Email message ID | |
| iCONVERSATJONTNDEX | Email Conversation Index | |

**AA0909**

### Certification of Business Records

State of _____,

                        )ss.:

County of _____ _,

_____, being duly sworn, deposes and says:

1. I am the duly authorized custodian or other qualified witness of the business records of

   _____

   I am familiar with the business practices and procedures of _____ and have the authority to make this certification.

2. To the best of my knowledge, after reasonable inquiry, the records produced in response to the subpoena are accurate versions of the documents described in the subpoena that are in my possession, custody or control.

3. To the best of my knowledge, after reasonable inquiry, the records represent all the documents described in the subpoena duces tecum except that the following documents are missing for the reason stated:

   _____

4. The records produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and it was the regular course of business to make such records.

Sworn to before me this

day of _____ , 2022

                                          _____
                                          Notary Public

**AA0910**

# Exhibit G



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CHARITIES BUREAU

212.416.6172
Catherine.Suvari@ag.ny.gov

December 2, 2022

**Via Email To: afrisch@andrewfrisch.com**

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038

Re:  *Subpoena to VDARE Foundation dated June 23, 2022*

Andy:

I write to address significant deficiencies in VDARE's production response to the above-referenced subpoena.  As explained below, we have serious concerns regarding: (1) ongoing delay and your repeated failure to abide by deadlines that you yourself proposed; (2) VDARE's failure to produce certain categories of documents based on unsubstantiated objections; and (3) redactions in the production for which you have not provided any legal justification and which appear to be applied haphazardly.  VDARE is also delinquent in its required annual filings with this office: annual submissions for both 2020 and 2021, including the audited financials that you acknowledged in your November 21, 2022 cover letter, are all overdue.

Pursuant to Rule 4.4(b) of the Rules of Professional Conduct, we are also notifying you that you have produced material in your November 21 delivery that may be protected by an attorney-client privilege.  *See* VF 4777-4780.

Continuing Production Delay

You have noted throughout your reports this Fall that you were first retained for this matter in August 2022 and that we agreed to extend the subpoena's stated deadline in response to your requests for more time to collect and review material.  You now appear to be setting — and moving — your own chosen deadlines for VDARE's subpoena compliance:  on October 25, you even remarked by email that our reference to previously-agreed deadlines was "not productive" and "divert[ed]" you from "subpoena-related tasks" on which you were working.

We are now more than three months into your representation of VDARE and more than five months since the date VDARE was served with the subpoena.  In the past eight weeks alone, we have had the following assurances from you, none of which proved true:  (i) that you would substantially complete hard copy production by October 31 (Oct. 6); (ii) that you would provide, on or before October 31, a privilege/ redaction log that identified each marked redaction in the production and the legal basis for those redactions (Oct. 6); (iii) that the "lion's share of documents" had been reviewed and sent to the vendor for a substantially complete production by October 31 (Oct. 20); (iv) that "95% or so" of VDARE's hard copy documents were in process at the vendor and "well underway aiming for substantial compliance on October 31 or before" (Oct. 21); (v) that

40 gigabytes of potentially responsive email records, as well as "more documents potentially responsive to the subpoena" could be reviewed and produced on or before November 21, including on a rolling basis (Oct. 31). In the last ten days, you have announced instead that email review is suddenly taking "longer than anticipated" and that you will "aim[ ] to complete that part of the response to the subpoena by December 12, 2022."

As of the date of this letter, you have produced a total of roughly 6,000 pages of Bates-stamped material, the first section of which you have produced three separate times and all of which bears extensive unlabeled redactions to which we have repeatedly objected. The material produced to date does not appear to include any significant volume of email from the VDARE accounts that you first identified to us on October 31 and does not identify which of the subpoena's requests each document responds to. Please complete the production of both hard copy and ESI documents, in the form called for by the subpoena, by **December 12, 2022**.

<u>VDARE's Unsubstantiated Objections to Certain Subpoena Requests</u>

In July 2022, we took steps to clarify several of the subpoena's requests in response to VDARE's stated privacy concern for donors and volunteers, but we have consistently objected to a generalized assertion of sensitivity and have emphasized that we do not agree to the withholding of documents and information on that basis.

Your production cover letter on October 31 stated that "VDARE is concerned that disclosures risk further impairment to freedoms of speech and association of itself and others." We note that the requests you identified in your October 31 letter as intrusive on fundamental liberties included the request for VDARE Board meeting minutes (Req. No 5), the request for *outgoing* solicitation materials sent on VDARE's behalf (Req. No. 8), the request for documents identifying the individual(s) who control VDARE financial accounts (Req. No. 23), and the request for documents concerning physical renovation of VDARE's West Virginia castle property (Req. No. 39). You have not articulated how — and we do not agree that — these requests implicate any constitutional speech or associational concern for VDARE donors or content providers. To the extent any of these documents have been withheld from your productions to date, we demand complete delivery by December 12, 2022.

<u>VDARE's Failure to Provide a Privilege/Redaction Log</u>

We have asked several times that you provide a privilege/ redaction log to identify the legal basis on which VDARE is redacting or withholding particular material, and we asked specifically in our conference on October 6 that you provide such a log on or before October 31. Such a log is necessary for us to understand and evaluate VDARE's basis for redacting or withholding information. Your October 31 letter offered only the assurance that you expected to complete your redactions to responsive financial records by November 21 and that you would be in the best position to explain those redactions after you had completed them. On November 21, you stated without explanation that you would identify redactions in the production "once the project is complete." We still have not received a log.

We have explained in several exchanges with you that we will not agree in advance to special treatment for a subset of vendor information that you and/or VDARE independently identify as sensitive: VDARE must articulate particular categories of material covered by any individual request that it believes cannot be lawfully demanded and provide substantive explanation of how the disclosure being sought would operate to chill VDARE's protected associational or speech rights. We will meet and confer on this issue again only after production of a written privilege-redaction log to serve as the basis for meaningful review. Please produce such a log by **December 12, 2022**.

We also note that, in your letter of September 26, 2022, you asserted that subpoena requests for employee, vendor, and contract information violate First Amendment rights held by those

2

**AA0913**

Case 1:22-cv-01337-JS-CfnsfDfcument 35-10, Filed 04/10/23 5 Page 2973 of 178

entities because "[m]ost of [VDARE's] employees and contractors are writers and editors for the site." The documents that you have produced to date have been redacted far beyond the limits of any editorial content: you have redacted, among other things, (i) contact information for an architectural firm hired to review potential renovations at the Berkely Springs Castle property (VF 4427-4428; VF 4766-4767), (ii) the contact name, but not address, of a Switzerland-based firm hired to perform, according to its own invoice, "standard software development and server administration," (VF 3980-3981), (iii) the name of VDARE's bookkeeper, which appears to be separately disclosed in your production on a publicly-filed IRS Form I-9 prepared to confirm Lydia Brimelow's eligibility as an employee of Happy Penguins LLC (ex. VF 4280, VF 4282); (iv) contact information contained in a public magazine subscription renewal form sent to Peter Brimelow (VF 4187) (also marked as Confidential); (v) bank statements to accounts held by entities *other* than VDARE, including Happy Penguins LLC and Peter and Lydia Brimelow, as individuals (VF 4346-4348, VF 4338-4343); and the contact information for an individual or company hired to perform "VDARE Admin" services (VF 4017, VF 4274). These redactions are accompanied by the unredacted disclosure of numerous other VDARE contractors, vendors, and employees identified in VDARE's records, so that your stated treatment of redaction appears inconsistent, to say the least, and raises serious concerns about the legal basis for any such redactions.

<u>VDARE's Failure to Provide Mandatory Filings</u>

As we have previously noted, VDARE is delinquent in its filing of its 2020 Char500 and schedules, including the IRS Form 990. That filing was due in November 2021. VDARE's filing for 2021 was due on November 29, 2022 and has not been received. Attached to this letter is a notice of delinquency from our Registration Section.

We have discussed each of the above issues with you on several occasions and have agreed to significant deadline extensions to accommodate your requests for additional time to review. We reserve all rights regarding our position on your client's non-compliance with the subpoena and will seek judicial intervention to obtain compliance if the documents and information listed here are not produced by December 12, 2022.

Sincerely,

*/s/ Kate Suvari*

Kate Suvari
Assistant Attorney General

Encl.

cc:     Assistant Attorney General Yael Fuchs

3

**AA0914**



**STATE OF NEW YORK**

**OFFICE OF THE ATTORNEY GENERAL**

Letitia James                                        Division of Social Justice
Attorney General                                     Charities Bureau

                                                     December 2, 2022

Vdare Foundation
PO Box 211
Litchfield, CT 06759

     **Re:**    **Vdare Foundation**
             **Delinquent Filing – Action Requested**
             **Registration Number: 41-37-83**

Dear Sir or Madam:

      This letter is to notify you that the above organization is delinquent in filing its annual financial reports with the New York Attorney General's Charities Bureau. New York law requires registered organizations to file annually Form CHAR500, IRS Form 990 and, if applicable, an independent certified public accountant's audit or review report and pay an annual filing fee.

      In order to resolve the delinquency, the organization must submit its delinquent filings, with a copy of this letter, to the Charities Bureau within **thirty (30) days** of the above date. According to our records, the following filings are delinquent:

      • **Fiscal Year Ended 12/31/2020: CHAR500 Annual Filing – complete online.**
      • **Fiscal Year Ended 12/31/2021: CHAR500 Annual Filing – complete online.**

      A portal for electronic filing is posted on our webpage www.charitiesnys.com – online filing is required. Please be advised that Article 7-A of the Executive Law prohibits a delinquent organization from raising funds in New York, including through government grants. In addition, failure to submit all required filings may subject the organization to cancellation of its registration.

      If you believe that the organization has already submitted its required filings or if it is no longer conducting activities or soliciting contributions in New York, please notify this office in writing upon receipt of this letter and include a copy of this letter with your response. Please mail your response to the attention of Stephenie Brathwaite. If you have any questions concerning this request, please contact the Charities Bureau by phone at (212) 416-8401 or by email to Stephenie.Brathwaite@ag.ny.gov.

                           Sincerely,

                           Hanna Rubin
                           Director-Registration Section
                           Charities Bureau

# Exhibit H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,                                          Index No. 453196/2022

                              Petitioner,          Motion Sequence No. 2
                                                   (VDARE's motion for dismissal
          - against -                              or, alternatively, a stay)

VDARE FOUNDATION, INC.,

                              Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIRMATION IN SUPPORT OF RESPONDENT'S ORDER TO SHOW CAUSE
TO DISMISS OR, ALTERNATIVELY, STAY THIS PROCEEDING PENDING
RESOLUTION OF THE DUPLICATIVE AND OVERLAPPING FEDERAL CASE

Andrew J. Frisch, an attorney duly admitted to practice law in the State of New

York since 1985, affirms the following statements to be true under penalties of perjury:

Introduction

1.      I am counsel to VDARE Foundation, Inc. ("VDARE"), a non-profit

foundation organized and existing under the laws of the State of New York with a principal place

of business in Berkeley Springs, West Virginia.  The undersigned was engaged by VDARE in

late August 2022 to comply with and otherwise respond to an investigative subpoena issued to

VDARE by the Attorney General of the State of New York ("OAG") on or about June 24, 2022.

This Affirmation is based on personal knowledge, documents attached as exhibits which are true

and accurate copies of the originals, and otherwise on information and belief as noted.

2.      On December 12, 2022, VDARE filed an action in United States District

Court for the Northern District of New York against the OAG [*VDARE Foundation, Inc. v.*

*James*, 1:22-cv-01337 (FJS)], alleging, among other things, that the OAG's demands for certain disclosures in response to its subpoena (a) threaten VDARE's ability to conduct business; and (b) reveal the OAG's subpoena to be a retaliatory pretext aimed at interfering with VDARE's rights to freedom of speech and association guaranteed by the United States and New York Constitutions. VDARE's federal complaint seeks declaratory and injunctive relief. *See* VDARE's Complaint in United States District Court (the "Federal Complaint"), attached hereto as Exhibit A.

3.      On December 16, 2022, less than a week *after* December 12, 2022, when VDARE filed its Federal Complaint against the OAG (and simultaneously emailed a courtesy copy to the OAG in advance of formal service), the OAG commenced this special proceeding against VDARE, seeking to compel the very disclosures identified in VDARE's Federal Complaint that threaten its existence and further demonstrating that the OAG's arguments in support of its investigative subpoena are pretextual.

4.      It was not until December 22, 2022, that the OAG first notified VDARE that it had initiated this special proceeding, the day *after* the OAG (on December 21, 2022) requested and secured VDARE's consent to an extension of the OAG's deadline in federal court to respond to VDARE's Federal Complaint. In securing VDARE's consent to an extension of the OAG's deadline in federal court, the OAG did not disclose that it had filed this special proceeding the week before and was apparently awaiting this Court's issuance of an order to show cause, instead claiming: "Because of the holidays and a member of our team who has COVID, we would appreciate an extension until Jan 18 to respond to VDARE's complaint in the NDNY. Can you please confirm your consent?" *See* Email from the OAG to the undersigned,

Case 1:22-cv-01337-JSR-SN Document 35-10 Filed 04/18/23 Page 2 of 178

dated December 21, 2022, attached hereto as Exhibit B.

5.     This affirmation is respectfully submitted in support of VDARE's

application, pursuant to CPLR 3211(a)(4), that this special proceeding be dismissed or,

alternatively, stayed until VDARE's pending federal action is resolved.

I.     *VDARE Sought Relief in United States District Court Only After the*
       *OAG's True Motive for Conducting this Investigation Became Apparent,*
       *And the OAG's Position Threatened VDARE's Ability to Conduct Business*

       (A)  *VDARE's proposed middle ground and to meet and confer*

6.     Between September and November 2022, VDARE's undersigned counsel

completed review of records maintained by VDARE electronically and in hard copy and

produced over 6,000 pages to the OAG responsive to its investigative subpoena.  Before

December 2022, VDARE's counsel had provided the OAG with a list of email custodians and was

in the process of completing compliance with the OAG's subpoena by identifying responsive

emails from a universe of 40 gigabytes (the equivalent of millions of pages).

7.     While working towards completing compliance with the OAG's subpoena,

VDARE's counsel advised the OAG that disclosure of the identities of its employees and contractors

would violate constitutional guarantees of free speech and association.  The subject matter of

VDARE's principal activity - - commentary about immigration policy of the United States

disseminated to the public through its website at www.VDARE.com - - is controversial.  VDARE's

lawful speech has led to reputational and professional harm to people and entities associated with it.

In addition, contractors providing services essential to VDARE's survival have refused to continue to

do business with VDARE, including venues which cancelled contracts with VDARE to host

conferences, sometimes because of disagreement with VDARE's views, and sometimes because of

fear of protests. These harms to VDARE have made it increasingly difficult for VDARE to find alternatives to continue to stay in business. *See* Letter from the undersigned to the OAG, dated September 26, 2022, attached hereto as Exhibit C; Letter from the undersigned to the OAG, dated October 31, 2022, attached hereto as Exhibit D; Email from the undersigned to the OAG, dated October 20, 2022, attached hereto as Exhibit E.

        8.    The OAG knows or should know that VDARE's controversial speech exposes it to reprisals from those who disagree or fear protests from those who disagree. *See, e.g.*, *"VDARE responds to conference cancellation at Cheyenne Mountain Resort,"* Aug. 15, 2017[1] ("Cheyenne Mountain Resort [in Colorado] will not be hosting the VDARE Foundation in April of next year. We remain committed to respecting the privacy of guests at the resort."); Kristine Phillips, The Washington Post, Jan 26, 2017 ("Tenaya Lodge, a resort on the border of Yosemite National Park, canceled [VDARE's] booking after receiving complaints about the organization's views.")[2]; *"Cancelled Tucson Conference Produces Five-Figure Settlement - - VDARE.com To Announce New Venue Soon!"* Mar. 7, 2018.[3]

        9.    Likewise, multiple businesses providing services essential to VDARE's continued operations have terminated their relationships with VDARE, including Mailchimp and Constant Contact (providers of email marketing services), Paypal, Amazon, Google Ads, and

---

[1] Available at *https://www.kktv.com/content/news/Mayor-Suthers-responds-to-planned-VDARE-conference-in-Colorado-Springs-440537563.html*

[2] Available at *https://www.washingtonpost.com/news/post-nation/wp/2017/01/26/a-resort-canceled-a-white-nationalist-groups-first-ever-conference-because-of-its-views/*

[3] Available at *https://vdare.com/articles/cancelled-tucson-conference-produces-five-figure-settlement-vdare-com-to-announce-new-venue-soon*

many smaller businesses.[4]  VDARE created an entity called "Happy Penguins LLC" for the sole

purpose of paying VDARE's employees so that they could identify a non-controversial entity

(Happy Penguins) - - and not VDARE - - as their employer.  *See* VDARE's Internal Revenue

Form 990 for 2019[5] (identifying "Happy Penguins LLC / Peter Brimelow" (VDARE's founder)

as a service providing leased employees).

10.    While simultaneously working to comply with the OAG's subpoena and

producing documents responsive to the OAG's subpoena, VDARE's counsel provided the OAG

with precedent that established the constitutionally-protected interests.  Exhibit C (citing *NAACP*

*v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of

both public and private points of view, particularly controversial ones" and holding that an order

requiring association to produce membership list interfered with First Amendment freedom of

association); and *Evergreen Ass'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 100 (2d Dep't 2017)

(applying strict scrutiny where anti-abortion advocacy group served with the Attorney General's

investigatory subpoena alleged that subpoena compliance would "have a chilling effect on [the

group's] associations with its employees and potential clients" as well as at least one hospital);

*see also Rosenberger v. Rector & Visitors of the Univ. of Va. ,* 515 U.S. 819, 828 (1995)

("Discrimination against speech because of its message is presumed to be unconstitutional.");

---

[4] *See https://vdare.com/posts/we-ve-been-purged-from-mail-chimp-vice-gloats-deplatforming-works-update-we-re-back; https://vdare.com/posts/emergency-message-to-vdare-com-readers-from-peter-brimelow; see also "Tourist Town Desperate to Reopen Faces Another Battle" infra.*

[5] *Available at https://www.charitiesnys.com/RegistrySearch/getcontent?guid= {20D3F877-0000-CCBA-A2A6-DE59F92CA6EF}&orgid=41-37-83&title=IRS%20Annual%20R eturn&project=Charities.*

5

*Rosenblatt v. Baer,* 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.").

11.     On October 15, 2022, VDARE requested that the OAG explain its purpose in seeking information about contractors in an effort "to narrow issues and move things along." Email from the undersigned to the OAG, dated October 15, 2022, attached hereto as Exhibit F. While the OAG declined to provide any such explanation, VDARE proposed a middle ground to the OAG that addressed the OAG's ostensibly legitimate investigative interest while protecting VDARE's concerns - - with reservation of the OAG's right to revisit the issue at a later date if necessary. VDARE proposed that it identify contractors who are related parties as defined by Article 715 of the New York Not-for-Profit Corporation Law who earn more than $10,000 annually; and would "consider identifying other employees or contractors involved in specific transactions with which your office might be concerned." Email of the undersigned to the OAG, dated October 20, 2022, attached hereto as Exhibit E ("To the extent you continue to have a problem with this protocol for this subset of vendors, we can revisit the issue as your work continues and see if we can resolve it later. I would like to make as robust a production as I can now and deal with this issue later, to the extent that my way forward for now proves not to be a permanent solution.").

12.     The OAG rejected VDARE's proposed middle ground. The OAG invited VDARE to provide objections in writing to specific requests in the OAG's subpoena, giving the impression that the OAG was keeping an open mind about the issue. VDARE provided objections to specific requests by letter dated October 31, 2022, requesting an opportunity to meet and confer toward resolving the issue. *See* Letter of the undersigned to the OAG, dated Oct. 31, 2022, attached

Case 1:22-cv-01337-JLS-JJM Document 35-10, Filed 04/10/23 Page 292 of 178

hereto as Exhibit D). Even then, VDARE did not take a blanket approach to its continuing objections, but disclosed the identities of all of its employees as part of its continuing production, the identities of contractors who appeared to be related parties within the meaning of Article 715 of the New York Not for Profit Corporation Law (without regard to amount earned), as well as others whose associations with VDARE were apparently already publicly known.

13.    In the undersigned's letter to the OAG dated October 31, 2022 (Exhibit D), VDARE expressed concern to the OAG about its apparent disclosure of constitutionally protected information in another investigation. On October 11, 2022, members of the United States Congress wrote to United States Attorney General Merrick Garland, requesting investigation of apparently undue disclosures provided to or otherwise obtained by the OAG. On August, 26, 2022, Politico had published confidential information about donors to another conservative non-for-profit in the OAG's cross hairs which was reportedly leaked by the OAG.[6]

14.    Despite VDARE's completion of its review of records maintained electronically and in hard copy and attendant production of over 6,000 pages of documents, VDARE's continuing analysis of 40 gigabytes of emails, and its request to meet and confer on disclosure of the identifies of contractors, the OAG notified VDARE's counsel on December 2, 2022, that it required VDARE to complete production by December 12, 2022. Exhibit G. On December 12, 2022, as noted above, VDARE commenced a lawsuit in the Northern District of New York against the OAG. Exhibit A.

---

[6] *See https://www.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-letitia-james-stand-for-america.*

Case 1:22-cv-01138-JSe-CMHe Document 33-10, Filed 04/10/23e Page 293 of 178

(B) *The OAG rejected VDARE's offer to immediately address the OAG's purported concern about VDARE's purchase and use of a property*

15. The purported impetus for the OAG's investigation (as disclosed by the OAG to VDARE's counsel) is VDARE's purchase in 2020 of a castle-styled property in Berkeley Springs, West Virginia, to host conferences in order to eliminate the risk that VDARE's conferences could only be conducted at the whim of independent venue owners. *See* Rachel Olding, *"Tourist Town Desperate to Reopen Faces Another Battle"* Daily Beast (May 29, 2020)[7] (noting that VDARE's founder, Peter Brimelow, "said they plan to use the castle for meetings and as a studio - - handy considering at least three hotels have canceled conference contracts on VDARE after learning of the group's views.").

16. After VDARE purchased the castle, a cottage on the castle's grounds in which the Brimelows intended to live was not yet habitable so the Brimelows (Peter and Lydia Brimelow and their three young children) moved from their home in Connecticut and lived in the castle for a period of months until the cottage was ready for them. Among documents produced to the OAG as part of the 6,000 pages (and separately in undersigned's email to the OAG) is a lease agreement establishing that the Brimelows paid rent to live in the cottage beginning in April 2021. *See* Lease Agreement, attached hereto as Exhibit H. Upon locating and producing the Brimelows' lease agreement for the cottage to the OAG, the undersigned proposed a meeting with the OAG to begin addressing the OAG's professed concerns about VDARE's purchase of the castle. The OAG rejected that invitation, expressly deferring even an initial discussion about the castle until after VDARE produced all documents deemed by the OAG to be responsive to its subpoena.

---

[7] Available at *https://www.thedailybeast.com/berkeley-springs-west-virginia-freaks-out-after-vdare-founder-buys-its-castle*.

Case 1:22-cv-01337-JSR-OTW Document 35-10, Filed 04/10/23 Page 124 of 178

*(C) Additional concerns expressed by the OAG are
pretextual and unfairly insinuate malfeasance*

17.     The OAG has authority to inquire and request documents from charities registered in New York State, but it may not seek to supercede a previously-filed federal case with unfair insinuations of malfeasance nor by demanding constitutionally-protected information far afield from legitimate oversight.

18.     A few examples are illustrative.  The OAG notes in support of its motion that Lydia Brimelow is identified on filings as VDARE's "Secretary, Treasurer and Publisher," but not identified as Peter Brimelow's wife on VDARE's Internal Revenue Service Form 990.  AAG Fuchs Affirmation [NYSCEF Doc. 4] at 19.  Peter and Lydia Brimelow, however, are publicly known to be married and, on information and belief, file their income tax returns jointly as husband and wife with the same Internal Revenue Service with which VDARE files Form 990.  The OAG asserts no connection between this purported misstep in completing an IRS form and the identities of VDARE's contractors.

19.     Similarly, the OAG insinuates that Peter Brimelow's compensation reported in from VDARE's 2019 IRS Form 990 was atypically high [AAG Fuchs Affirmation at 9], but conveniently omits that VDARE's total contributions for 2019 were $4,259,309 [VDARE's Form CHAR500 for 2019, attached hereto as Exhibit I][8], a far substantially greater amount than in other years.  Likewise, the OAG insinuates malfeasance from an auction of furnishings from the castle [AAG Fuchs Affirmation at 8], but, on information and belief, the entirety of *de minimis* proceeds from the auction went for VDARE's benefit.  None of this innuendo from the OAG

---

[8] Available at *https://www.charitiesnys.com/RegistrySearch/getcontent?guid=
{30D3F877-0000-CB55-8F8C-8ED446FA3F08}&orgid=41-37-83&title=Annual%20Filing%20
for%20Charitable%20Organizations&project=Charities*

9

justifies its demand for the identities of contractors and, instead, demonstrates that the OAG's

investigation is pretextual.

> (D)  *The OAG's complaints about inconsistencies in redactions
>       ignore that the OAG encouraged a rolling production*

20.     In the OAG's letter of December 2, 2022, demanding that VDARE complete

its production and identify all contractors without redactions by December 12, 2022, the OAG

complained that VDARE had inconsistently applied redactions, which had not been accompanied by

a log identifying the bases for the redactions.  But the OAG had agreed to "a rolling production"

[Email from the OAG to the undersigned, dated August 23, 2022, attached hereto as Exhibit J],

which permitted VDARE to act in good faith and reassess the need for redactions as its review

continued.  *See, e.g.*, Letter from the undersigned to the OAG, dated September 19, 2022, attached

hereto as Exhibit K ("As to redactions in the documents produced today, I have not had ample time

fully to evaluate bases underlying the reactions . . . I have opted instead to produce an installment of

documents today and will circle back on the redactions once my evaluations are complete."); Exhibit

E ("These issues . . . are not present for every vendor, so I am trying to identify precisely which

vendors present a problem.").

> (v)  *The OAG faulted VDARE for attempting to meet its own ambitious deadlines despite
>      knowing that VDARE is a mom-and-pop operation represented by a solo practitioner*

21.     As of December 2, 2022, when the OAG declined VDARE's proposal that

the parties meet and confer in response to VDARE's letter of October 31, 2022, and, instead,

demanded that production be completed within ten days, all that remained was resolution of

VDARE's objection to disclosure of contractors' identities and production of emails responsive to

the subpoena (and attendant redactions of contractors' identities).  Though the OAG's motion infers

undue delay in VDARE's production, the OAG is fully aware that VDARE "is literally a mom-an-

<div align="center">10</div>

pop operation, with an actual mom who home schools three children, represented by a solo practitioner with no staff," who reviewed all VDARE records himself to determine responsiveness. Email from the undersigned to the OAG, dated September 30, 2022, attached hereto as Exhibit L. VDARE's legitimate efforts to protect its contractors and business interests by redacting identities of contractors was and remains labor-intensive and time-consuming, as VDARE reported to the OAG. Letter from the undersigned to the OAG, dated Oct. 31, 2022, attached hereto as Exhibit D ("The identities of VDARE's donors, content providers, and vendors who provide services to VDARE in its locality or are otherwise indispensable to its work are inextricably intertwined with some of its financial records. For example, some of these entities are identified in bank statements in lists of monthly transactions and associated copies of checks. The work to provide such financial records with redactions is labor-intensive and time-consuming and is ongoing."). Meanwhile, as to the OAG's request for a log of redactions and their bases, the extent of redactions of identities of contractors was significant, favoring one log of redactions after production was complete. Letter from the undersigned to the OAG, dated Nov. 21, 2022, attached hereto as Exhibit M.

22. The undersigned set ambitious deadlines in a good faith effort to show diligence and compliance and, as of December 2, 2022, had completed review and produced 6,000 pages of VDARE's records maintained electronically and in hard copy. Completion of review of emails was in sight when the OAG, on December 2, 2022, unreasonably demanded that VDARE complete all steps necessary for compliance within ten days, apparently requiring that it either disclose the identities of all contractors without redactions or provide a full list of all such redactions from the 6,000 pages and responsive emails, and thereafter moved to compel compliance without meeting and conferring as requested by the undersigned on October 31, 2022, as required by the Court's local rules - - notwithstanding VDARE's previously filed Federal Complaint.

11

II    *Issues Raised by the OAG in this Special Proceeding Duplicate and Overlap*
      *Issues Raised by VDARE's First-filed Federal Complaint Against the OAG*

23.    VDARE sought relief in federal court only after the OAG's approach to its

subpoena threatened VDARE's ability to conduct business and revealed that the OAG is using its

subpoena power as a pretext. VDARE's Federal Complaint is based on many of the same

underlying issues raised by the OAG's subsequent special proceeding in this Court.

24.    Thus, VDARE's Federal Complaint (Exhibit A), among other things that

duplicate and overlap with this special proceeding, (a) alleges that the OAG unreasonably

demands disclosure of identities of contractors indispensable to VDARE's work without any

apparent legitimate investigatory purpose; (b) alleges settled principles of constitutional law cited

by VDARE to the OAG in redacting identities of contractors; (c) alleges the OAG's demand on

December 2, 2022, that VDARE complete its production without redactions by December 12, 2022,

and without the meet-and-confer proposed by VDARE's counsel on October 31, 2022; and

(d) alleges VDARE's concern about the OAG's leaking of confidential information in another

matter.

25.    As noted above, undersigned counsel consented to the OAG's request for

an extension of time for the OAG to respond to VDARE's Federal Complaint, which request did

not disclose that the OAG had initiated this special proceeding. As of the date of this filing, the

OAG's response to VDARE's federal complaint is due by January 18, 2023.

26.     I affirm that the relief sought by VDARE in this application has not

previously been requested in this Court.

Dated: January 3, 2023

                                        */s/ Andrew J. Frisch*
                                        Andrew J. Frisch
                                        The Law Offices of Andrew J. Frisch, PLLC
                                        40 Fulton Street, 17th Floor
                                        New York, New York 10038
                                        (212) 285-8000
                                        *afrisch@andrewfrisch.com*

                                        *Attorneys for Respondent*

13

# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------- x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

                        Petitioner,

            - against -

VDARE FOUNDATION, INC.,

                        Respondent.

------------------------------------------- x

Index No. 453196/2022
Hon. Sabrina B. Kraus

Motion Sequence 2 (dismissal/stay)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, STAY THIS PROCEEDING PENDING RESOLUTION OF THE DUPLICATIVE AND OVERLAPPING FEDERAL CASE

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Respondent*

**AA0931**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

Index No. 453196/2022

Hon. Sabrina B. Kraus

Petitioner,

Motion Sequence 2 (dismissal/stay)

- against -

VDARE FOUNDATION, INC.,

Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
DISMISS OR, ALTERNATIVELY, STAY THIS PROCEEDING PENDING
RESOLUTION OF THE DUPLICATIVE AND OVERLAPPING FEDERAL CASE

This Memorandum of Law is submitted on behalf of Respondent VDARE

Foundation, Inc. ("VDARE") in further support of dismissal of this special proceeding filed by

the Attorney General of the State of New York ("OAG") on December 16, 2022, or,

alternatively, for a stay pending resolution of VDARE's duplicative and overlapping federal case

previously filed on December 12, 2022, and in reply to the OAG's opposition, filed on January

11, 2023 (NYSCEF Docket No. 55).

A.     *The OAG Fails to Show How It is Prejudiced by VDARE's Choice of Forum*

VDARE filed its federal lawsuit against the OAG only after the OAG's letter to

VDARE's counsel of December 2, 2022 [*see* NYSCEF Docket No. 44, "Exhibit G" to

2

Affirmation in Support of VDARE's Motion to Dismiss or Stay[1]] revealed the OAG's claims of

noncompliance to be pretexts.  Unlike the authority principally cited by the OAG in opposition to

dismissal or stay of this special proceeding, *Trump v. James*, 2022 WL 1718951 (N.D.N.Y. May

27, 2022), VDARE did not seek federal relief *after* any state proceeding or state enforcement

action was already ongoing, but to vindicate its constitutional rights and to protect itself from the

OAG's pretextual misuse of its regulatory authority.  As *Trump v. James* itself makes clear, "the

obligation of federal courts to hear cases within their jurisdiction is 'virtually unflagging'" absent

pre-existing state litigation.  *Id.* at \*23 (quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d

Cir. 2022).[2]

        While VDARE had the right to seek redress in either federal or state court, the

OAG declines to explain how it is prejudiced by VDARE's choice to seek redress in the

Northern District of New York.  If the OAG is right that VDARE's federal lawsuit will be

dismissed, the proof will be in the pudding when the Honorable Frederick J. Scullin, Jr., the

District Judge to whom VDARE's case is assigned, rules on the OAG's motion.  Meanwhile, this

Court should stay this special proceeding pending decision on the OAG's motion to dismiss

---

[1]  The Affirmation of VDARE's counsel in support of VDARE's motion to dismiss or
stay this special proceeding and the exhibits thereto are fully incorporated herein.

[2]  Unlike this case, pending proceedings in *Trump v. James* included various contempt
and other orders, which were defied by the former president a year prior to his commencement of
his action in federal court, including: (1) an order dated September 23, 2020, directing Eric
Trump to appear for a deposition and the Trump Organization to produce documents in
accordance with certain privilege rulings, which the state court later modified as to privilege
rulings on October 7, and December 15, 2020; (2) an order dated February 17, 2022, granting the
OAG's motion to compel the depositions of the former president, Ivanka Trump, and Donald
Trump, Jr., and the production of documents; and (3) an order dated April 26, 2022, holding the
former president in contempt for failure to adequately comply with the order directing the
production of documents.  *See Trump v. James,* 2022 WL 1718951.

VDARE's federal claims (expected to be filed today, January 18, 2023) and, if the OAG's

motion is denied, pending resolution of VDARE's federal case.  *See Hyatt v. State of Cal.*

*Franchise Tax Bd.*, 105 A.D.3d 186, 200–201 (2d Dept. 2013) (even where an entity like the

OAG has a regulatory interest, a subpoena seeking information as opposed to an enforcement

action should yield where the entity is pressing a demand that is unreasonable and from which

the respondent is entitled to protection.).

B.    *The Timing of the OAG's Pursuit of VDARE Supports VDARE's Motion for*
      *Dismissal or a Stay and Its Federal Claim of Unconstitutional Retaliation*

        The OAG's opposition to dismissal or a stay of this proceeding ignores the

context and timing of the OAG's pursuit of VDARE.  The OAG claimed VDARE's non-

compliance with the OAG's investigative subpoena on December 2, 2022 [*see* Exhibit G], just

*one day* before December 3, 2022, the effective date of New York State's new law - - General

Business Law ("G.B.L.") Section 394-ccc - - aimed at "hateful conduct," defined as the use of

social media to vilify, humiliate, or incite violence.  VDARE does not use social media or any

outlet to vilify, humiliate, nor incite violence against anyone.

        The OAG's claim of noncompliance on December 2, 2022, the day before the

effective date of New York's new law, December 3, 2022, is not the first temporal connection

between the OAG's professed regulatory oversight of VDARE while using its power as a pretext

to pursue it for its speech.  As alleged in VDARE's federal complaint (NYSCEF Docket No. 38,

"Exhibit A" to Affirmation in Support of VDARE's Motion to Dismiss or Stay), the OAG issued

its subpoena to VDARE in June 2022 just after its newly created "Hate Crimes Unit" issued

subpoenas to both Facebook and Facebook's parent company, seeking information about

VDARE with specific reference to purported hate speech.  Exhibit A at ¶¶ 16-18.

Meanwhile, as alleged in VDARE's federal complaint, the Attorney General in 2020 joined in a letter to Facebook demanding that it increase censorship against "hate speech and hate organizations."  Exhibit A at ¶ 14.  The Attorney General in 2020 also proclaimed - - expressly - - that she created her Hate Crimes Unit "*to strengthen oversight*, because we see how much hate is being fueled by content on the internet. We're calling on these companies to regulate hate speech and strengthen their policies.  They can do more to fight these things - racism, the spread of disinformation and hate."  Exhibit A at ¶ 13 (emphasis added).  Here, the OAG is misusing its power of regulatory oversight to regulate - - and limit - - constitutionally-protected speech.

Even the OAG's subpoena to VDARE requests documents far afield from any legitimate regulatory oversight, revealing the OAG's true agenda.  Among many other things, the OAG demanded "Copies of the transcripts to each deposition in the litigation between VDARE founder Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings."  This demand refers to a lawsuit for libel filed by Brimelow against the New York Times for calling him an "open white nationalist," which he is not.  Exhibit A at ¶ 23.

Despite suspicion that the OAG might be targeting VDARE because of its speech, VDARE completed production of over 6,000 pages of documents maintained electronically and in hard copy in response to the OAG's investigative subpoena; was on its way to completing analysis of 40 gigabytes of emails to identify more responsive documents; and proposed a middle ground for the *only* substantive issue in dispute:  the identities of some contractors.  VDARE

produced information about contractors, including services performed and amount paid by VDARE for such services, but objected to disclosing the *identifies* of all of VDARE's contractors absent at least some explanation of the OAG's specific investigative need for any particular contractor's identity.  Even though VDARE's proposed middle ground permitted the OAG to reserve all rights, the OAG rejected VDARE's proposal, proffering a laundry list of pretextual complaints. *See* Exhibit G.  Meanwhile, without condition, VDARE again demonstrated its good faith by disclosing the identifies of all contractors that might qualify as "related" parties within the meaning of Section 715 of the New York Not-for-Profit Corporation Law.

The OAG rejected VDARE's proposed middle ground not *despite* VDARE's concern that undue disclosures threatened VDARE's ability to conduct business, but because of it:  the OAG's letter of December 2, 2022 - - and its pretextual nitpicking about VDARE's compliance - - makes clear that the OAG's goal is to put VDARE out of business.

C.       *As New York State's Chief Law Enforcement Officer, the Attorney General Knows or Should Know that VDARE Faces Reprisals Because of its Speech*

Even without VDARE's repeated objections to the OAG's demand for disclosure of identities of contractors, it is publicly known that multiple entities have terminated relationships with VDARE often from of fear of reprisals to themselves for their association with VDARE.  VDARE's concerns are indisputably genuine.  As recently as January 4, 2023, the Washington Post published an article entitled, *"A 'hate castle' or welcome neighbor? VDare divides a West Virginia town.  In Berkeley Springs, the purchase of an iconic castle by VDare, which some consider a hate group, has led to angst and ugliness,"* Washington Post, Jan. 4,

2023.[3]  Comments to the article posted at *www.washingtonpost.com* contain multiple instances of public ridicule of VDARE's neighbors in West Virginia whose favorable impressions of VDARE and its principals were quoted in the article.  Some comments identify quoted people by name; claim that those favorably impressed by the Brimelows must necessarily be white supremacists; and express intent not to do business with them and not to "spend money in their town."  One especially vile public comment called out an elderly proprietor of a local business as a "filthy racist" because she was quoted in the article as defending VDARE and its principals.[4]

The OAG neither disputes nor claims to be unaware, as alleged in VDARE's papers in support on this motion, that multiple businesses providing services essential to VDARE's continued operations have terminated their relationships with VDARE, including Mailchimp and Constant Contact (providers of email marketing services), Paypal, Amazon, Google Ads, and many other businesses.  VDARE created an entity called "Happy Penguins LLC" for the sole purpose of paying VDARE's employees so that they could identify a non-controversial entity (Happy Penguins) - - and not VDARE - - as their employer.  *See* VDARE's Internal Revenue Form 990 for 2019 (identifying "Happy Penguins LLC / Peter Brimelow" (VDARE's founder) as a service providing leased employees).  *See* NYSCEF Docket No. 37, Affirmation of VDARE's counsel at ¶ 9.

The OAG is aware of the risks to VDARE's ability to conduct business if identities of contractors are disclosed.  The OAG's conduct of its investigative subpoena

---

[3]  Available at *https://www.washingtonpost.com/dc-md-va/2023/01/03/vdare-berkeley-springs-castle-brimelows/*

[4]  Available in *Comments* to *https://www.washingtonpost.com/dc-md-va/2023/01/03/vdare-berkeley-springs-castle-brimelows/*

Case 1:22-cv-01337-JLS-JJM Document 55-10, Filed 04/10/23 Page 207 of 178

establishes that its claims of purported noncompliance are a pretext aligned with or indifferent to those risks.

D.    *The OAG's Claims of Purported Noncompliance Are Pretextual*

             In opposing relief, the OAG reprises its claims of "haphazard" redactions and delayed production while continuing to ignore the context: VDARE accepted the OAG's invitation to make a rolling production and set sometimes ambitious deadlines for itself as a showing of good faith. Rather than acknowledge VDARE's good faith efforts to comply, the OAG brands VDARE's later decisions not to redact names previously redacted as "haphazard;" claims undue delay despite VDARE's completion of its production of over 6,000 pages of documents maintained in hard copy or electronically; and claims noncompliance from VDARE's failure to produce documents maintained in its 40 gigabytes of emails, which VDARE's counsel was analyzing and on the way to completing when the OAG threw down the gauntlet with its letter of December 2, 2022, the day before the effective date of G.B.L. § 394-ccc, New York State's new "hateful conduct" law.

E.    *The OAG Fails to Show Prejudice from Application of New York's "First-Filed" Rule*

             The OAG's opposition fails to explain why this Court should not honor New York's well-settled rule and practice that the "court which has first taken jurisdiction" - - in this case, the Northern District of New York - - "is the one in which the matter should be determined and it is a violation of the rules of comity to interfere." *Ace Prop. & Cas. Ins. Co. v. Fed.-Mogul Corp.*, 55 A.D.3d 479, 480 (1st Dep't 2008); *accord L-3 Commc'ns Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 7 (1st Dep't 2007); *accord Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 95 (1st Dep't 2013) (same).

It is precisely because VDARE chose redress in federal court and because issues decided in VDARE's first-filed federal case may be entitled to preclusive effect in this case [*see Buechel v. Bain*, 97 N.Y.2d 295, 304, 315 (2001)], that "a stay is warranted to 'preserve judicial resources, further the interest of justice by preventing inequitable results and promote orderly procedure by furthering the goals of comity and uniformity.'" *National Rifle Assn. of Am. v North,* 2020 N.Y. Misc. LEXIS 6979 at *18 *(quoting Concord Assoc., L.P. v EPT Concord, LLC*, 101 A.D.3d 1574, 1575 (3rd Dep't, 2012).

<u>Conclusion</u>

For all of these reasons and those previously stated, this Court should dismiss this special proceeding or stay it pending resolution of VDARE's first-filed federal case.

Dated: January 18, 2023

Respectfully submitted,

*/s/ Andrew J. Frisch*
Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Respondent*

9

# Exhibit J

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VDARE FOUNDATION, INC.,

                    Plaintiff,

       -vs-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                    Defendant.

_____

**22-cv-1337 (FJS/CFH)**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

**LETITIA JAMES**
New York State Attorney General
28 Liberty St. New York, NY 10005

By:    JAMES SHEEHAN
        Assistant Attorney General
        NDNY Attorney Bar Roll #516406
        YAEL FUCHS
        Assistant Attorney General
        NDNY Attorney Bar Roll # 702160
        CATHERINE SUVARI*
        Assistant Attorney General
        RICHARD SAWYER*
        Special Counsel, Civil Rights Bureau

        *Pro hac vice applications forthcoming

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................ 4

    New York law authorizes the Attorney General to investigate apparent unlawful conduct at registered charities like VDARE. ............................................................................. 4

    Public filings indicate that VDARE used charitable funds to buy a medieval-style castle in West Virginia, permits its directors to live in it, and conveyed it to two corporations established by one of those directors. ................................................................... 5

    The Attorney General begins investigating VDARE, issues subpoenas, and VDARE resists compliance. .......................................................................................................... 8

STANDARD OF REVIEW ...................................................................................... 11

ARGUMENT ........................................................................................................... 12

    I. Sovereign immunity bars the majority of Plaintiff's claims. ............................... 12

    II. Abstention is appropriate given the ongoing state-court litigation concerning VDARE's subpoena compliance. .......................................................................................... 13

    III. The First Amendment does not prohibit the use of an administrative subpoena to investigate potential unlawful conduct by a New York-regulated charity. ............... 14

    IV. VDARE has not alleged a plausible First Amendment retaliation claim ........... 17

        B.  VDARE has not and cannot plead "but for" causation because no First Amendment claim can arise from an objectively justified investigation. ............................ 19

        C.  VDARE has failed to plead that illicit animus caused an injury. ................... 21

    V. Count Four must also be dismissed. ................................................................ 22

CONCLUSION ........................................................................................................ 22

**AA0942**

# TABLE OF AUTHORITIES

## Cases

*Abrams v. N.Y. Found. for the Homeless*, 190 A.D.2d 578 (1st Dep't 1993)......................... 15, 19

*Alleyne v. N.Y. State Educ. Dep't*, 691 F.Supp.2d 322 (N.D.N.Y. 2010)...................................... 12

*Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273 (E.D.N.Y. 2013) ............................................ 12

*Am. Savings Bank, FSB v. UBS Fin. Servs., Inc.*, 347 F.3d 436 (2d Cir. 2003) .......................... 17

*American Disposal Services, Inc. v. O'Brien*, 839 F.2d 84 (2d Cir.1988)...................................... 14

*Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021) .................................. 3, 15, 16

*Arista Recs., LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) .............................................................. 15

*Aron v. Becker*, 48 F. Supp. 3d 347 (N.D.N.Y 2014)...................................................................... 12

*Avery v. DiFiore*, 2019 WL 3564570 (S.D.N.Y. Aug. 6, 2019) ..................................... 12, 19, 21

*Awan v. Ashcroft*, No. 09-cv-1653, 2010 WL 3924849 (E.D.N.Y. Sept. 28, 2010) ................ 5, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 11

*Bimber's Delwood, Inc. v. James*, 496 F. Supp. 760 (W.D.N.Y. 2020) ........................................ 22

*Brown v. Socialist Workers '74 Comm. (Ohio)*, 459 U.S. 87 (1982)............................................. 16

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). .............................................................................. 13

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018)..................................................... 15

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) .................................................. 20, 21, 22

*Dorsett v. Cnty. of Nassau*, 732 F.3d 157 (2d Cir. 2013) .............................................................. 18

*Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017) ................................. 3, 16

*Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018)............................... 19

*Finch v. N.Y. State Off. of Children and Family Servs.*, 499 F. Supp. 2d 521 (S.D.N.Y. 2007)... 12

*Hartman v. Moore*, 547 U.S. 250 (2006)......................................................................... 18, 19, 20

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) .............................. 19

*Levy v. Lewis*, 635 F.2d 960 (2d Cir.1980) ................................................................ 14

*Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639 (2d Cir. 2009) ................................... 14

*Matter of Hogan v. Cuomo*, 67 A.D.3d 1144 (3d Dep't 2009) .................................... 21

*Nat'l Rifle Assoc. v. Vullo*, 49 F.4th 700 (2d Cir. 2022) ............................................ 21

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ............... 14

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ..................................................... 18, 19, 21

*Orange Trans. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311 (W.D.N.Y. 2020) . 11

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ............................ 12, 13

*People by James v. Nat'l Rifle Assoc.*, 75 Misc. 3d 1000 (Sup. Ct. N.Y. Cnty. 2022) .......... 18, 21

*People by James v. VDARE Found., Inc.*, Index No. 453196/2022 (Sup. Ct. N.Y. Cnty. Dec. 16, 2022) ................................................................................... 11, 17, 21

*People by Underwood v. Trump*, 62 Misc. 3d 500 (Sup. Ct. N.Y. Cnty. 2018) ................ 18

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110 (2d Cir. 1995) .......................................... 20

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) .................... 5, 20

*Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178 (2d Cir. 1991) ............................. 13

*Trump v. James*, 21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022) .......... 13

*United States v. Konstantakakos*, 121 F. App'x 902 (2d Cir. 2005) ............................. 19

*Wayte v. United States*, 470 U.S. 598 (1985) ............................................................ 20

*Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011) ....................................................... 22

**Statutes**

42 U.S.C. § 1983 ................................................................................................. 12, 13

EPTL § 8-1.4(i); .......................................................................................................... 5

Exec. Law § 175 ............................................................................................................. 5

iv

Exec. Law § 63(12) ................................................................................................................5

N-PCL § 1008(a)(15) .............................................................................................................5

N-PCL § 1101 ........................................................................................................................5

N-PCL § 1102 ........................................................................................................................5

N-PCL § 1109(b) ...................................................................................................................5

N-PCL § 1115(a) ...................................................................................................................5

N-PCL § 112(b)(6) ................................................................................................................5

N-PCL § 509 ........................................................................................................................20

N-PCL § 510 ........................................................................................................................20

N-PCL § 511 ........................................................................................................................20

N-PCL § 511-a .....................................................................................................................20

N-PCL § 706 ..........................................................................................................................5

N-PCL § 714 ..........................................................................................................................5

N-PCL § 715 ....................................................................................................................5, 20

N-PCL § 717 ..........................................................................................................................5

N-PCL § 720 ..........................................................................................................................5

N-PCL, Art. 5 .........................................................................................................................5

U.S. Constitution, Amendment XI .......................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................................12

Fed. R. Evid. 201 .............................................................................................................5, 20

AA0945

## PRELIMINARY STATEMENT

Plaintiff VDARE Foundation, Inc., a New York-chartered non-profit, has asked the Court to end the Attorney General's lawful investigation into VDARE's apparent pattern of self-dealing and financial misconduct by nullifying a valid state administrative subpoena. But neither the First Amendment nor any other provision of law justifies such a drastic measure, and the Court's intervention would seriously harm New York State's interest in enforcing its non-profit law. The Attorney General has a statutory responsibility to protect charitable property controlled by organizations, like VDARE, under its jurisdiction. Publicly available information fully justifies its investigation here.

The Attorney General began investigating VDARE after its own public filings, statements, and published media reports revealed a possible pattern of self-dealing, misleading donor solicitation, misuse of charitable assets, and false reporting. As one example, VDARE apparently used charitable funds to purchase the $1.4 million medieval-style Berkeley Springs Castle and promptly conveyed the property to two corporations established by one of its directors. That director and her husband, the organization's founder and also a director, admittedly used the castle as a family residence. These transactions, among others, raise serious questions regarding VDARE's governance and use of charitable assets.

In June 2022, the Attorney General served an investigative subpoena on VDARE for records relating to the Berkeley Springs Castle transactions, other related-party transactions, VDARE's corporate structure, record keeping, and relevant governance policies. VDARE did not move to quash or modify the subpoena and partially complied for months. Its counsel repeatedly requested deadline extensions and promised to complete production by December 12, 2022. The Attorney General asked VDARE to provide a redaction log by that date to better

understand the extensive and haphazard redactions in VDARE's document productions. But VDARE did not complete production, as promised, or provide a redaction log on December 12. Instead, it ceased complying with the subpoena and filed this lawsuit.

VDARE's complaint completely ignores the indicia of self-dealing and other regulatory misconduct that drew the Attorney General's scrutiny. Those facts are detailed at length in a pending state-court petition to compel subpoena compliance. *See* Fuchs Aff., Ex. A. VDARE cannot use its status as a publisher of controversial opinions as a pretext for diversion or waste of charitable assets, and it should not be permitted to use this Court's power to circumvent the Attorney General's lawful investigation.

All of VDARE's claims are without merit and should be dismissed.

*First*, VDARE's claims for monetary damages, and its claims under the New York Constitution (Counts 2 and 3) are barred by the Eleventh Amendment and sovereign immunity and should be dismissed for lack of jurisdiction.

*Second*, the state-court proceeding pending before Justice Sabrina B. Kraus is the proper venue for raising the subpoena objections that VDARE wants this Court to consider. Given the comprehensive regulatory scheme governing New York charities and the State's clear interest in investigating potential violations of that law, the Court should abstain from deciding those issues under the *Burford* abstention doctrine.

*Third*, even if this Court considers VDARE's claims, VDARE has failed to plausibly allege that the Attorney General's subpoena violates the First Amendment (Count 1). In this investigation of self-dealing and misuse of charitable assets, the Attorney General's subpoena reasonably seeks the identities of those who have received payments from VDARE. VDARE has not and cannot cite a single example of a federal court granting the extraordinary relief requested

7

AA0947

here—nullifying a lawfully issued subpoena on the basis that financial and governance records must be kept secret from a state agency investigating possible misuse of funds. On the contrary, the Supreme Court recently ratified such investigative tools in the *Americans for Prosperity* decision cited by VDARE. *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021). Unlike the federal cases cited by VDARE, the Attorney General is conducting a targeted investigation, not requiring blanket disclosures, and the information sought by the subpoena will not be made publicly available. Nor does the state-court case VDARE cites, *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017), justify enjoining this investigation. There, in an appeal of a state-court special proceeding (akin to the one pending in this case), the Appellate Division affirmed the Attorney General's subpoena and permitted the investigation to go forward while placing limited restrictions on the subpoena's scope. Nothing in that decision justifies an order under § 1983 declaring the Attorney General's investigation "unconstitutional."

*Fourth*, VDARE's complaint fails to plausibly allege a First Amendment retaliation claim. Illegal conduct, like the possible self-dealing under investigation, is not protected by the First Amendment. And because good cause exists for the Attorney General's subpoena, VDARE cannot show that any improper motive was the but-for cause of the investigation. Nor has VDARE shown any injury from the investigation, despite months of partial compliance and the haphazard disclosure by counsel of many contractors' identities.

*Finally*, because VDARE's other claims must be dismissed, its request for an injunction must also be denied.

For these reasons, the Court should dismiss this action in its entirety.

8

**AA0948**

# BACKGROUND

## New York law authorizes the Attorney General to investigate apparent unlawful conduct at registered charities like VDARE.

VDARE incorporated as a not-for-profit charitable corporation under the laws of New York and is registered as a charity under New York law. Compl. ¶¶ 1–2. VDARE does not dispute that it operates subject to the Attorney General's oversight as a New York regulated non-profit entity.

Under New York law, the Attorney General has a duty to protect "the public interest in charitable property." *Schneiderman v. Tierney*, No. 451489/2014, 2015 WL 2378983, at *2 (Sup. Ct. N.Y. Cnty. May 18, 2015). The law gives the Attorney General "broad supervisory and oversight responsibilities over charitable assets and their fiduciaries." *In re McDonell*, 195 Misc. 2d 277, 278-79 (Sup. Ct. N.Y. Cnty. 2002); *see also Abrams v. Found. for the Homeless*, 190 A.D.2d 578 (1st Dep't 1993); *Spitzer v. Lev*, No. 400989/2002, 2003 WL 21649444, at *3 (Sup. Ct. N.Y. Cnty. June 5, 2003); *In re McDonnell*, 195 Misc. 2d 277, 278–79 (Sup. Ct. N.Y. Cnty. 2002). This includes "preventing fraud and self-dealing in charities" by launching investigations and enforcement actions. *Citizens United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018).

As the State's chief law enforcement officer, "there is no doubt that the Attorney-General has a right to conduct investigations to determine if charitable solicitations are free from fraud and whether charitable assets are being used properly for the intended beneficiaries." *Abrams v. Temple of the Lost Sheep*, 148 Misc. 2d 825, 828–29 (Sup. Ct. N.Y. Cnty. 1990); *see also People by James v. Nat'l Rifle Assoc. of Am., Inc.*, 75 Misc. 3d 1000, 1005 (Sup. Ct. N.Y. Cnty. 2022). Under both the Not-For-Profit Corporation Law and the Estates, Powers, and Trusts Law, the Attorney General may pursue such investigations through investigative subpoenas to New York

**AA0949**

charities, like VDARE, and to any third parties that may have relevant documents or information. *See* EPTL § 8-1.4(i); N-PCL § 112(b)(6); *see also* Exec. Law §§ 63(12) (authorizing subpoenas directed at uncovering fraud and illegality), 175 (authorizing subpoenas for investigations of fraud in charitable solicitations). Issuing such subpoenas is a preliminary step to determine whether cause exists for the Attorney General to take further enforcement action, which could include directing restitution, unwinding transactions, requiring an accounting, removing officers, or dissolving the entity. *See, e.g.,* N-PCL §§ 706, 714, 715, 717, 720, 1008(a)(15), 1101, 1102, 1109(b), and 1115(a); *see also* N-PCL, Art. 5.

**Public filings indicate that VDARE used charitable funds to buy a medieval-style castle in West Virginia, permits its directors to live in it, and conveyed it to two corporations established by one of those directors.**

According to VDARE, it is "a mom-and- pop operation run by Peter and Lydia Brimelow, husband and wife." Compl. ¶ 2. VDARE's 2020 IRS Form 990—the most recent available—confirms that the organization is overseen exclusively by the Brimelow family: Peter Brimelow serves as its chairman, Lydia Brimelow as president, and John Brimelow as a director. Fuchs Aff., Ex. B at 7.[1] On that same form, VDARE lists its only activity as "[c]reate[ing] and manag[ing] internet publication." Fuchs Aff., Ex. B at 1.

Publicly available documents suggest that VDARE has grown significantly in recent

---

[1] On a motion to dismiss, the Court may consider the pleading, information incorporated into the pleading by reference, and any document upon which the pleading relies. *Geron v. Seyfarth Shaw LLP*, 736 F.3d 213, 219 (2d Cir. 2013). Specifically, the Court may consider a document where a complaint "relies heavily upon its terms and effect" or "[w]here the plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint…." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The Court may also consider matters that are subject to judicial notice, including properly recorded deeds, *Awan v. Ashcroft*, No. 09-cv-1653, 2010 WL 3924849, at *2 (E.D.N.Y. Sept. 28, 2010), newspaper articles, and regulatory filings, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). *See* Fed. R. Evid. 201.

years, and the organization now reports millions of dollars in charitable donations and hundreds

of thousands of dollars in compensation for Peter Brimelow. In 2019, VDARE reported $4.2

million in donations to the IRS, an eightfold increase over its reported 2018 revenue. *See* Fuchs

Aff., Ex. C, D. And Peter Brimelow's reported compensation jumped from $181,675 in 2018 to

$345,364 in 2019. *Id.* In 2020, VDARE reported paying more than $300,000 in compensation to

Peter and Lydia Brimelow. Fuchs Aff., Ex. B.

On February 14, 2020, VDARE purchased a medieval-style castle in Berkley Springs,

West Virginia. Shortly after the purchase, Lydia Brimelow confirmed that VDARE bought the

castle with donor funds, writing that "donors stepped forward in an unprecedented way" to

enable the purchase. *Lydia Brimelow: We Got the Keys to the Castle!*, VDARE.com,

https://vdare.com/articles/lydia-brimelow-we-got-the-keys-to-the-castle (last visited Dec. 12,

2022).. She described the castle as a "meeting space," and wrote that "[h]aving a space where we

can meet and share ideas without fear of deplatforming will make a difference so material it is

hard to overstate." *Id.*

But statements published on VDARE's website within months of the purchase indicate

that Peter and Lydia Brimelow were not using the castle as a meeting space but instead as their

family's full-time residence. The Brimelows posted family photos celebrating the Fourth of July

and Christmas Eve in the castle. *The Brimelow Family Wishes You a Happy Independence Day*,

https://vdare.com/posts/the-brimelow-family-wishes-you-a-happy-independence-day (last visited

Dec. 20, 2022); *Merry Christmas from VDARE.com!*, VDARE.com,

https://vdare.com/articles/peter-brimelow-merry-christmas-from-vdare-com-f3d0cb33-af41-

4d90-93b9-c82cd46c5950 (last visited Dec. 20, 2022). And, describing a visit to the castle, a

VDARE contributor wrote that "Peter and Lydia Brimelow have moved in and spend most of

their time there." *Radio Derb: Castling with VDARE.com*, VDARE.com,

https://vdare.com/radio-derb/castling-with-vdare-com-senate-visa-giveaway-covid-hypocrisy-and-students-cancel-black-etc (last visited Dec. 20, 2022). In a state-court filing, VDARE's

counsel admitted that Peter and Lydia Brimelow lived in the castle "for a period of months" and

stated that they still live on the castle's grounds. *See* Fuchs Aff., E.

Later in 2020, Lydia Brimelow executed two transfers on behalf of VDARE conveying

the entire castle property—a $1.4 million charitable asset—to two West Virginia corporations

she had founded earlier that year. *See* Fuchs Aff., Exs. F–I. One deed filed with the Morgan

County, West Virginia, Register of Deeds conveyed the castle itself and the land it occupies to

the Berkeley Castle Foundation, Inc., a not-for-profit established by Lydia Brimelow. Fuchs Aff.,

Exs. F, H. A second deed conveyed the remaining eight parcels of surrounding land to BBB,

LLC, a for-profit corporation also established by Lydia Brimelow. Fuchs Aff., Exs. G, I. The

sole signatory for both deeds was Lydia Brimelow. Fuchs Aff., Exs. F, G. Under the tagline

"When nothing but a castle will do," the Berkeley Castle Foundation now advertises the castle as

a for-rent event space. https://www.berkeleyspringscastle.com/contact.html (last visited

December 14, 2022). According to a publicly filed contract signed by Lydia Brimelow (as both

landlord and tenant), the Brimelows now pay monthly "rent" to BBB, the for-profit corporation,

to reside on the castle property. Fuchs Aff., Ex. J. In other words, the Brimelows used charitable

funds to purchase property in which they reside, transferred the grounds to a for-profit

corporation they control, and now pay rent to that company, in essence to themselves.

There is a host of potential violations of New York charities law implicated in this series

of transactions. As an example, transferring or approving a transfer of charitable assets from a

charitable New York not-for-profit corporation to a for-profit entity without fair compensation is

**AA0952**

a violation of New York and federal law and a breach of the fundamental fiduciary responsibilities of directors and officers. *See generally* Fuchs Aff., Ex. A (petition to compel subpoena in state court). The castle transactions were not reported on VDARE's 2020 IRS Form 990, as required by federal and New York law, nor were they submitted to the Charities Bureau or the New York Supreme Court for approval, as required by N-PCL §§ 510, 511, and 511a. *See* Fuchs Aff. at B. Even had they been submitted, neither the Charities Bureau nor the Court would have the authority to approve such a transaction because VDARE had no independent directors who could have approved it. *See* N-PCL § 510.

### The Attorney General begins investigating VDARE, issues subpoenas, and VDARE resists compliance.

On June 24, 2022, the Attorney General served VDARE with an investigative subpoena seeking information related to VDARE's purchase and conveyance of the Berkeley Springs Castle and other transactions between VDARE, the Brimelows, and entities they control (the "VDARE Subpoena"). Compl. ¶ 22; Fuchs Aff., Ex. K at 5–9. The VDARE Subpoena also sought information related to VDARE's compliance with New York law governing charities, including VDARE's structure, conflict -of -interest policies, charitable solicitations, and financial operations. Fuchs Aff., Ex. K at 5–9.[2]

The VDARE Subpoena did *not* seek any information regarding the development or

---

[2] The Attorney General also served subpoenas on Meta, Facebook's parent company, for information related to allegations that VDARE had engaged in what Facebook characterized as "coordinated inauthentic behavior," activity that could constitute breaches of fiduciary duty under New York law. Compl. ¶¶ 16, 17. Facebook's "Coordinated Inauthentic Behavior Report" described this misconduct as "us[ing] fake accounts to create fictitious personas, post in Groups, manage Pages, drive traffic to off-platform sites, and evade enforcement." Compl. ¶¶ 16, 17; Fuchs Aff. Ex. L at 16. Contrary to VDARE's assertion, *see* Compl. ¶ 19, the Facebook Subpoenas did *not* call for information protected by 18 U.S.C. § 2703(b), and explicitly said so on their face. *See* Fuchs Aff., Ex. M at 4, ¶ 10.

**AA0953**

publication of VDARE's online content. *Id.* Nonetheless, VDARE's counsel initially refused to comply with the subpoena at all, describing it as "incredibly unlawful." Compl. ¶ 24; Fuchs Aff. Ex. N. To address VDARE's expressed concerns, the Attorney General agreed to permit limited redactions omitting names and address information for donors and uncompensated volunteers. *See* Fuchs Aff. Ex. O. But VDARE's counsel continued to refuse compliance.

In August 2022, VDARE retained new counsel and allegedly directed him to comply with the VDARE Subpoena. Compl. ¶ 25. In a letter on September 19, 2022, the new counsel identified "a significant volume of electronically-stored (sic) and hard copy documents that need to be reviewed" for production. Compl. ¶ 25; Fuchs. Aff., Ex. P. The parties also agreed on amending the scope of the Facebook Subpoenas to omit donors' identifying information. Compl. ¶ 31.

On September 19, 2022, nearly two months after the VDARE Subpoena's initial deadline, VDARE's counsel finally produced a mere 27 heavily redacted documents without Bates numbers. *See* Fuchs Aff., Exs. P, Q. VDARE provided no log to identify or explain the redactions. *See* Fuchs Aff., Ex. Q; Compl. ¶¶ 28, 32. By email, the OAG requested a redaction log describing the legal basis for each redaction and the category of information being withheld—information to which it is entitled under law. *Id.* Without such redactions, the email explained, the OAG had no means to "reliably identify what has been deleted…and on what legal basis." Fuchs Aff., Ex. Q..

In the nine weeks between September 19 and November 21, VDARE produced only about 6,000 pages of documents, including many duplicates. Compl. ¶ 25. The productions consisted primarily of documents from VDARE's paper files and did not include the 40 gigabytes of emails or other electronically stored data identified by VDARE's counsel. Compl.

**AA0954**

¶¶ 25, 30. The documents also bore numerous redactions, and VDARE again did not provide a redaction log. Compl. ¶¶ 28, 32. According to VDARE, despite having more than six months to work, completing production and compiling a redaction log had not been possible because redacting documents is "labor-intensive and time-consuming." Compl. ¶¶ 28, 32. VDARE's counsel then missed an agreed November 21, 2022 deadline for electronic file production. On November 28, he wrote that email production would be complete by December 12, 2022. *See* Fuchs Aff., Ex. S.

After several attempts to resolve the dispute regarding redactions and to obtain a complete production, *see* Compl. ¶¶ 26–28, 30–31, on December 2, 2022, the OAG requested a complete production and redaction log by December 12, the date set by VDARE's counsel, Compl. ¶ 32; *see* Fuchs. Aff., Exs. S, T. The OAG's letter identified three areas of deficiencies: "(1) ongoing delay and…repeated failure to abide by deadlines that [VDARE itself] proposed; (2) VDARE's failure to produce certain categories of documents based on unsubstantiated objections; and (3) redactions in the production for which [VDARE has] not provided any legal justification and which appear to be applied haphazardly." Fuchs Aff., Ex. T at 1. The letter identified redactions to, among other things, the "contact information for an architectural firm hired to review potential renovations at the Berkeley Springs Castle property," "bank statements to accounts held by entities *other* that VDARE," including bank accounts for the Brimelows' privately controlled LLC, and "contact information for an individual hired to perform 'VDARE Admin' services." *Id.* at 3. The OAG observed:

> These redactions are accompanied by the unredacted disclosure of numerous other VDARE contractors, vendors, and employees identified in VDARE's records, so that your stated treatment of redaction appears inconsistent, to say the least, and raises serious

concerns about the legal basis for any such redactions.

*Id.*

On December 12, 2022, rather than provide a redaction log or make its required production, VDARE filed the present lawsuit. Despite months of partial compliance with the subpoena and promises to complete production, VDARE now claims that the Attorney General's efforts to compel timely and full compliance "threatens VDARE's existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected (sic) speech." Compl. ¶ 33.

On December 16, 2022, after VDARE missed its own proposed production deadline of December 12, the OAG began a state-court proceeding to compel compliance. *See People by James v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. No. 1 (Sup. Ct. N.Y. Cnty. Dec. 16, 2022). Justice Sabrina B. Kraus of the New York County Supreme Court ordered VDARE to show cause and to respond by January 12, 2023; argument is set for January 19. *See People v. VDARE*, Index No. 453196/2022, Dkt. No. 33 (Sup. Ct. N.Y. Cnty. Dec. 21, 2022).

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Orange Trans. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 318 (W.D.N.Y. 2020), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint's allegations are generally taken as true, a plaintiff must provide "more than labels and conclusions…. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*, quoting *Twombly*, 550 U.S. at 555. "A plaintiff must show more than a sheer possibility that a defendant has acted unlawfully." *Avery v.*

**AA0956**

*DiFiore*, 2019 WL 3564570, at *2 (S.D.N.Y. Aug. 6, 2019) (cleaned up).

"The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013) (cleaned up).

## ARGUMENT

### I. Sovereign immunity bars the majority of Plaintiff's claims.

Sovereign immunity bars VDARE's claims seeking compensatory and punitive damages under 42 U.S.C. § 1983 (Count Two) and its claims under the New York Constitution (Count Three). Those claims must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

VDARE sued the Attorney General in her official capacity only, and all of its claims for monetary relief under § 1983 are therefore barred by the Eleventh Amendment and must be dismissed. *See, e.g.*, *Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y 2014) (holding that the Eleventh Amendment bars § 1983 suits against the State of New York and state officers in their official capacities); *Finch v. N.Y. State Off. of Children and Family Servs.*, 499 F. Supp. 2d 521, 536 (S.D.N.Y. 2007) (holding "a suit against a State official in [her] official capacity is, in effect, a suit against the state itself, which is barred." (cleaned up)).

Sovereign immunity also bars VDARE's claim under the New York Constitution (Count Three). "Sovereign immunity bars state constitutional claims against the state, its agencies, or against its employees in their official capacity, regardless of the relief sought." *Alleyne v. N.Y. State Educ. Dep't*, 691 F.Supp.2d 322, 335 (N.D.N.Y. 2010) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105–106 (1984)). That includes injunctive or declaratory relief

17

**AA0957**

against a state officer—unlike suits under federal law, such relief is not permitted for claims under state law. *Pennhurst*, 465 U.S. at 106. The Court must therefore dismiss VDARE's state-law claim for lack of jurisdiction.

## II. Abstention is appropriate given the ongoing state-court litigation concerning VDARE's subpoena compliance.

This action is an explicit attempt by VDARE to turn a state-law discovery dispute into a federal case, and, by extension, evade scrutiny for possible violations of New York state law. VDARE's request that this Court enjoin the Attorney General's subpoena constitutes an unwarranted federal intrusion into New York's oversight of charitable entities that raises serious federalism and comity concerns. Given the pending subpoena enforcement action, VDARE's claims here, including the constitutional issues it raises, may be litigated as defenses in the state forum. This is a clear example of an instance where abstention is justified. *See Burford v. Sun Oil Co*., 319 U.S. 315 (1943); *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir. 1991);*see also Trump v. James*, 21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022) (dismissing a § 1983 lawsuit brought to nullify a state administrative subpoena and holding "[a] state's interest in enforcing its own laws and investigating their violation cannot seriously be disputed" (cleaned up)).

### A. The Court should abstain under the *Burford* abstention doctrine.

In *Burford v. Sun Oil Co*., 319 U.S. 315 (1943), the Supreme Court held that where "timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings…where the 'exercise of federal review…would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361

**AA0958**

(1989) (internal citation and quotation marks omitted).

*Burford* abstention applies to prevent federal courts from "interfering with state efforts…in an area of comprehensive regulation or administration," even where a federal question may be present. *American Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir.1988) (noting also that abstention may be appropriate "in deference to parallel state court proceedings….in order to further the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." (cleaned up)). *See also Levy v. Lewis*, 635 F.2d 960, 963–64 (2d Cir.1980). Burford abstention applies when "the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009), and charities regulation certainly qualifies.

New York has a comprehensive statutory scheme for the oversight of charitable not-for-profits, which empowers the Attorney General to carry out the important state interest of ensuring proper governance and proper use of charitable assets to fulfill a legitimate charitable mission. Following an initial investigation, the Attorney General served a lawful investigative subpoena on VDARE. The ongoing proceeding in New York State Supreme Court is the appropriate place to assess VDARE's assertions that the Attorney General's claims of illegal conduct lack merit or infringe constitutional rights.

In light of the foregoing, the Court should abstain here.

### III.   The First Amendment does not prohibit the use of an administrative subpoena to investigate potential unlawful conduct by a New York-regulated charity.

VDARE cannot cite a single case where a federal court has granted the extraordinary relief VDARE seeks under Count One: an order declaring "unconstitutional" a state administrative subpoena investigating a registered charity's self-dealing and diversion of charitable funds, solely on the basis that the subpoena infringes on an asserted First Amendment

19

**AA0959**

right to keep contractors' identities a secret. To the contrary, the leading case VDARE cites,

*Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021), explicitly endorsed the use of

such investigative tools. There, the Court found that the state "has an important interest in

preventing wrongdoing by charitable organizations," and the Attorney General could use

subpoenas and audit letters to combat "misuse, misappropriation, and diversion of charitable

assets…false and misleading charitable solicitations [and] other improper activities by charities."

*Id.* at 2386 (cleaned up). Anonymity *can* be an important First Amendment right, but when it is

used to mask violations of the law, "it is unprotected by the First Amendment." *Arista Recs.,*

*LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (affirming decision not to quash *federal*

subpoena on First Amendment grounds because it would reveal the identity of alleged copyright

violator); *see also Abrams v. N.Y. Found. for the Homeless*, 190 A.D.2d 578, 578 (1st Dep't

1993) ("The mere utterance of First Amendment privileges by a purported eleemosynary

[charitable] organization cannot shield defendants from the scrutiny of the Attorney-General.").

 Here, in an investigation of potential misuse of charitable assets, complete review of

transaction parties, organizational spending, and governance and financial controls is critical.

Public records have already disclosed more than a million dollars in transactions between

VDARE and two corporations established—and controlled—by VDARE's directors. As

described above, such transactions could not have been approved by a disinterested board—

because the board consisted entirely of Brimelows—and thus violated New York law. Without

review of VDARE's actual financial operation and its control by the Brimelows, the Attorney

General cannot fulfill her mandate of "preventing fraud and self-dealing in charities." *Citizens*

*United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018). No authority has ever held that

**AA0960**

the Constitution applies the sort of blanket immunity to such scrutiny that VDARE requests here.

The cases VDARE cites are not to the contrary. *Americans for Prosperity* prohibited only mandated donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation. 141 S. Ct. 2386–87. Here, that decision is doubly irrelevant because the OAG has issued a valid subpoena (as that case endorsed) and has already agreed to redactions to unrelated donor identifying information (the only category of First Amendment-protected information at issue there). Similarly, *Brown v. Socialist Workers '74 Comm. (Ohio)* invalidated a statutory requirement that a political party report *all* of its donors and contractors for a list that would be "open to public inspection for at least six years." 459 U.S. 87, 89–90 (1982). Like *Americans for Prosperity*, that case did not even address, let alone call into question, a state's authority to issue targeted investigative subpoenas as part of a statutorily authorized, pre-complaint regulatory investigation. And VDARE has not come close to identifying a commensurate harm to that law's six-year public inspection requirement. It has not and cannot allege a *single* instance of the Attorney General publicizing confidential information obtained through a valid subpoena. Finally, despite VDARE's misleading characterization, *see* Compl. ¶ 37, *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017), did *not* hold that the Attorney General's subpoena was "invalid." There, the court upheld the Attorney General's subpoena and enforced compliance but narrowed the scope of some of the subpoena's demands. *Id.* at 101–03. Such fine-tuning is a far cry from what VDARE seeks here—complete invalidation of the VDARE Subpoena.[3]

VDARE's request in Count One for an order declaring the VDARE Subpoena

---

[3] VDARE is free to raise similar arguments in the state-court proceeding if it believes some of the subpoena's requests violate the First Amendment. What it cannot do—and *Evergreen* did not

"unconstitutional" should accordingly be dismissed for failure to state a claim.

## IV. VDARE has not alleged a plausible First Amendment retaliation claim.

VDARE's cursory allegation of "pretext" is not supported by any plausible allegation of

fact and cannot overcome the presumption of regularity accorded to the Attorney General's

review. The Attorney General began investigating VDARE after it became apparent that the

organization had used charitable funds to buy a castle for its directors to use as a family

residence. Public records further showed that VDARE conveyed the entire castle property to two

corporations established by director Lydia Brimelow and that the only signatory to those deeds

was Lydia Brimelow herself. Fuchs Aff. Exs. E–H. Those transactions should have been

disclosed to the IRS and reviewed by the Attorney General's office but were not. Those facts

suggested of self-dealing, misappropriation, and breach of fiduciary duties by VDARE's

directors, and false filings by VDARE with the Charities Bureau, in violation of New York law.

Other potential violations of law were apparent from the face of documents VDARE submitted

to the IRS and the Attorney General's Office. *See generally* Fuchs Aff., Ex. A; *People by James

v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. Nos. 3, 4 (Sup. Ct. N.Y. Cnty. Dec. 16,

2022) (setting forth the Attorney General's basis to investigate).

Under Count Two, VDARE argues that the First Amendment shields it from such

scrutiny because of an asserted retaliatory motive. But it is not "within the province of the courts

---

do—is use this Court to invalidate the entire subpoena on a nebulous First Amendment ground.
To the extent the Court believes the subpoena requires fine-tuning, the issue is not yet ripe for
consideration because the same issue is pending in state court, and this Count should still dismiss
on prudential ripeness grounds. *See, e.g.*, *Am. Savings Bank, FSB v. UBS Fin. Servs., Inc.*, 347
F.3d 436, 440 (2d Cir. 2003) (dismissing appeal as unripe, holding the issues it raised were "ill-
suited for judicial resolution at this stage" because other remedies were available). Finally,
*Evergreen* is fully distinguishable because the investigation at issue in that case did not entail
allegations of financial misconduct and self-dealing, like those against VDARE, that require
disclosure of financial records, including records of payments made, and governance documents.

to subjectively determine the motivation of a government agency in commencing an enforcement proceeding, or to dismiss the proceeding because of the political disagreements of the parties." *People by Underwood v. Trump*, 62 Misc. 3d 500, 509 (Sup. Ct. N.Y. Cnty. 2018). VDARE has failed to plead, as it must to succeed, that "animus and bias were the *sole* motivating factors for initiating the investigation." *Id.*; *see also People by James v. Nat'l Rifle Assoc.*, 75 Misc. 3d 1000, 1005 (Sup. Ct. N.Y. Cnty. 2022) (rejecting a First Amendment retaliation claim because "the 'nonretaliatory grounds' were more than sufficient to justify the Attorney General's investigation") (emphasis added).

To state a First Amendment retaliation claim, VDARE must adequately plead that "(1) [it] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [its] exercise of that right; and (3) the defendant's actions caused [it] some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

VDARE fails to plead all three elements. *First*, the alleged wrongdoing at issue in the Attorney General's investigation is not First Amendment-protected activity and VDARE does not allege any injury through the Attorney General's subpoena into its protected online speech or the identities of its readers or donors. *Second*, VDARE has not, and cannot, plead that the Attorney General's investigation was illegitimate. VDARE's allegations cannot overcome the "presumption of regularity" afforded the Attorney General's actions. *See Hartman v. Moore*, 547 U.S. 250, 263 (2006). *Third*, VDARE has not pleaded that retaliatory animus was the but-for cause of any injury. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (emphasis in

original).

**A.      Illegal conduct is not protected by the First Amendment.**

VDARE does not and cannot contend that possible self-dealing, looting of charitable

assets, and false filings are protected by the First Amendment. *See, e.g.*, *Illinois, ex rel. Madigan*

*v. Telemarketing Assocs.*, *Inc.*, 538 U.S. 600, 612 (2003); *Exxon Mobil Corp. v. Schneiderman*,

316 F. Supp. 3d 679, 710 (S.D.N.Y. 2018) ("Ensuring that 'accurate information' reaches the

market and the public is consistent with a *bona fide* investigation—not retaliation."); *see also*

*United States v. Konstantakakos*, 121 F. App'x 902, 905 (2d Cir. 2005) ("[I]t has long been

established that the First Amendment does not shield knowingly false statements made as part of

a scheme to defraud."); *N.Y. Found. for the Homeless*, 190 A.D.2d at 578.

The VDARE Subpoena calls primarily for documents related to VDARE's governance,

financial controls, and financial relationships with VDARE directors and their corporations, and

it is aimed at discovering financial misconduct. The subpoena does not call for documents

related to VDARE's editorial content—its First Amendment-protected activity. VDARE may not

use its status as a publisher of controversial opinion as a pretext for its directors to divert or

waste charitable assets. Allegations of such misconduct are a proper target of an investigation.

**B.      VDARE has not and cannot plead "but for" causation because no First
          Amendment claim can arise from an objectively justified investigation.**

The retaliation claim also fails because VDARE has not, and cannot, plead that the

Attorney General's investigation lacked a legitimate basis. Under settled precedent, a First

Amendment retaliation claim requires proving that the investigation would not have taken place

"but for" a retaliatory motive—in other words, the investigation had no legitimate legal or

factual basis. *Nieves*, 139 S. Ct. at 1722 (citing *Hartman*, 547 U.S. at 259–260); *see also Avery*,

2019 WL 3564570, at *3 (applying *Nieves* on a motion dismiss). Conversely, when an

investigation has a legitimate cause, a retaliation claim necessarily fails. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("[B]ecause defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive…need not be undertaken."); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (similar). The requirement of "but for" causation advances the "presumption that a prosecutor has legitimate grounds for the action [she] takes." *Hartman*, 547 U.S. at 263 (citing *Wayte v. United States*, 470 U.S. 598, 607–08 (1985)).

The Court can take judicial notice of public records, public filings, and public statements made by VDARE providing ample justification for the Attorney General's subpoena. Fed. R. Evid. 201; *Awan*, 2010 WL 3924849, at *2; *Staehr*, 547 F.3d at 425. Public records indicate that VDARE purchased a $1.4 million medieval-style castle in West Virginia, and public statements by VDARE suggest that it was bought with donor funds. *Supra*, 2–3. Additional statements by VDARE and published on its website indicate that VDARE's directors, Peter and Lydia Brimelow, use that castle as a family residence. *Id.* Public records show that VDARE conveyed the castle to two corporations owned and controlled by Lydia Brimelow, and the only signatory on both deeds was Lydia Brimelow herself. *Supra*, 3–4. And a document filed publicly by VDARE indicates that the Brimelows pay "rent" to BBB, LLC, the for-profit corporation Lydia Brimelow established, to reside on the castle grounds. *Supra*, 4. Those "related-party" transactions required disinterested board approval, disclosure on VDARE's IRS Form 990, and the submission of a petition by VDARE for review and approval by the Attorney General or N.Y. Supreme Court. *See* N-PCL §§ 509, 510, 511, 511-a, 715; Internal Revenue Service Filing Information, Intermediate Sanctions—Excise Taxes, at https://www.irs.gov/charities-non-profits/charitable-organizations/intermediate-sanctions-excise-taxes (last visited Dec. 15, 2022). Based on public records, none of those steps appears to have been taken. *See generally* Fuchs

**AA0965**

Aff., Ex. A; *People by James v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. Nos. 3, 4

(Sup. Ct. N.Y. Cnty. Dec. 16, 2022) (setting forth the Attorney General's basis to investigate).

Those facts more than justify the Attorney General's investigation. Under New York law,

the factual basis for an investigative subpoena "need not be sufficient to *establish* fraud or

illegality, or even provide probable cause, as long as the futility of the process is not inevitable or

obvious." *Matter of Hogan v. Cuomo*, 67 A.D.3d 1144, 1146 (3d Dep't 2009) (emphasis added).

It is enough, as here, that available information provide a reasonable basis for further

investigation. Because the Attorney General's investigation has a legitimate basis, VDARE's

retaliation claims fail, and it does not matter whether VDARE has pleaded any alternative

motivation, no matter how nefarious. *See Nieves*, 139 S. Ct. at 1722; *Avery,* 2019 WL 3564570,

at *3; *Nat'l Rifle Ass'n*, 75 Misc. 3d at 1005.[4]

### C.    VDARE has failed to plead that illicit animus caused an injury.

Finally, VDARE's claims also fail because it has not plausibly alleged an actionable

injury. *Dorsett*, 732 F.3d at 160. VDARE's only alleged injury is the conclusory assertion that

the OAG's investigation "threatens VDARE's existence." Compl. ¶¶ 30, 33. This is not

adequate—such "cursory" allegations are insufficient to "establish facial plausibility." *Zherka v.*

---

[4] The Court need not reach this question, *see Curley*, 268 F.3d at 73, but VDARE has also failed to plead *any* First Amendment animus. The out-of-context quotes from the Attorney General related to oversight of "social media companies" like Facebook do not establish any animus toward VDARE. *See* Compl. ¶¶ 13, 14; *Nat'l Rifle Assoc. v. Vullo*, 49 F.4th 700, 714–18 (2d Cir. 2022) (holding First Amendment permits a government official to speak about "her preferred course of action…it gives her the freedom to advocate for it"). VDARE has not and cannot plead a single example of the Attorney General abusing her authority by retaliating against an individual or entity based on their speech. The lawsuit VDARE cited—and attached to its complaint—concerns the constitutionality of a duly enacted state law that the Attorney General has yet to enforce. Compl. ¶ 15. The Attorney General has argued that the law is constitutional, but the outcome of that proceeding has no bearing on the serious but unsupported assertion made here—that the Attorney General has launched a baseless investigation to punish VDARE for protected speech.

**AA0966**

*Amicone*, 634 F.3d 642, 647 (2d Cir. 2011). Moreover, VDARE has been complying partially

with the VDARE Subpoena for months without any discernable injury to it or its contractors—

despite "the unredacted disclosure of numerous other VDARE contractors, vendors, and

employees identified in VDARE's records." Fuchs Aff., Ex. T at 3. Given the absence of any

First Amendment chill or other injury notwithstanding the investigation already under way,

VDARE cannot show that it has suffered an actionable injury. *See Curley*, 268 F.3d at 73.

For these reasons, the First Amendment claims fail.

**V.      Count Four must also be dismissed.**

Because VDARE's substantive claims (Counts One through Three) must be dismissed for

lack of jurisdiction and fail to state a claim, its request for an injunction (Count Four) must also

be denied as moot. VDARE has not moved for a preliminary injunction, and any such motion

would be futile because it has not and cannot meet its burden of showing "a clear or substantial

likelihood of success on the merits and a strong showing of irreparable harm." *Bimber's*

*Delwood, Inc. v. James*, 496 F. Supp. 760, 761 (W.D.N.Y. 2020) (cleaned up).

**CONCLUSION**

For the reasons set forth above, the Complaint should be dismissed in its entirety. In the

event any claims survive, the Attorney General respectfully requests 30 days to submit an

answer.

Dated: January 18, 2023

LETITIA JAMES
Attorney General for the State of New York
*Attorney for State Defendants*
s/ Yael Fuchs
Yael Fuchs
Co-Chief, Enforcement Section, Charities

27

**AA0967**

# Exhibit K

AA0968

**Andrew Frisch**

| | |
|---|---|
| **From:** | Fuchs, Yael <Yael.Fuchs@ag.ny.gov> |
| **Sent:** | Thursday, September 8, 2022 5:18 PM |
| **To:** | Andrew Frisch |
| **Cc:** | Suvari, Catherine; Sawyer, Richard; Frederick C. Kelly (fckellylaw@protonmail.com) |
| **Subject:** | RE: VDare |
| **Attachments:** | OAG Subpoenas duces tecum to Facebook Payments, Inc. and Meta Platforms, Inc. |

Andy,

Thank you for your email. The Attorney General served its subpoena on VDARE on June 24, over two months ago. To date, we have not received a production of any kind, and or indication that any production is forthcoming. In fact, Mr. Kelly continues to assert in our discussions that the Attorney General's subpoena is barred by the First Amendment, even after we met several times and have taken steps to narrow certain requests and to clarify that no request calls for the identification of anonymous donors or unpaid VDARE supporters. We have already adjourned the subpoena's stated production deadline three times in response to both your and Mr. Kelly's stated scheduling conflicts this summer.

When we spoke again on Tuesday of this week, we asked you to confirm by COB today whether VDARE would be prepared to provide even an initial production by the subpoena's current agreed deadline (tomorrow). We proposed that such a production could include very basic corporate records-copies of the federal Form 990s that VDARE is required to file with this office as a registered New York charity, for example, or copies of VDARE Board meeting minutes, or (in response to Mr. Kelly's concerns about the nexus between certain requests and the suspected misconduct) basic documents regarding the purchase of the castle. We explained that such a production could demonstrate good faith on VDARE's part in connection with your current request for additional time to respond.

We understand from your email that VDARE will not be making any production tomorrow. You have not offered any explanation for why you could not confer with your client regarding their basic obligations since your retention, or why Mr. Kelly could not have begun to prepare basic categories of documents during the roughly two and a half months since VDARE received the subpoena. We are prepared to offer reasonable extensions of time reflecting your obligations, but without any production, we are not prepared to continue extending the deadline and will seek judicial relief ourselves to move this process forward.

With respect to the subpoenas to Facebook and Meta, I direct your attention to Ms. Suvari's email of Sept 6 (attached for your reference), which provides our agreement to certain modifications. We reserve all rights.

Regards,
Yael

**From:** Andrew Frisch <afrisch@andrewfrisch.com>
**Sent:** Thursday, September 8, 2022 2:02 PM
**To:** Fuchs, Yael <Yael.Fuchs@ag.ny.gov>
**Cc:** Suvari, Catherine <Catherine.Suvari@ag.ny.gov>; Sawyer, Richard <Richard.Sawyer@ag.ny.gov>; Frederick C. Kelly (fckellylaw@protonmail.com) <fckellylaw@protonmail.com>
**Subject:** VDare

[EXTERNAL]

Counsel:

1

**AA0969**

# Exhibit L

Case 1:22-cv-01374-JS-CFH Document 53-10, Filed 04/10/23 Page 170 of 178

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the
State of New York,

Petitioner,

-against-

VDARE FOUNDATION, INC.,

Respondent.

Index No. 453196/2022

(Kraus, J.S.C.)

STIPULATION AND
[PROPOSED] ORDER FOR
THE PRODUCTION OF
CONFIDENTIAL
INFORMATION

---

This matter having come before the Court by stipulation of Petitioner the People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), and Respondent The VDARE Foundation, Inc. ("VDARE") (individually a "Party" and together, the "Parties") for the entry of a confidentiality order limiting the review, copying, dissemination and filing of confidential and/or proprietary documents and information to be produced by VDARE in response to the investigative subpoena dated June 23, 2022 (served June 24, 2022) and issued by OAG; and the Parties, by, between and among their respective counsel, having stipulated and agreed to the terms set forth herein, and good cause having been shown;

IT IS hereby ORDERED that:

1.      This Stipulation is being entered into to facilitate the production, exchange and discovery of documents and information that the Parties agree merit confidential treatment (hereinafter the "Documents" or "Testimony").

2.      VDARE may designate Documents produced, or Testimony given, in connection with this action as "confidential," either by notation on each page of the Document so designated, statement on the record of the examination, or written advice to the respective undersigned counsel for the Parties hereto, or by other appropriate means.

**AA0971**

3. As used herein, "Confidential Information" shall mean all Documents and Testimony, and all information contained therein, and other information designated as confidential, if such Documents or Testimony contain proprietary business information or other sensitive information the disclosure of which would, in the good faith judgment of VDARE or its counsel, be detrimental to the conduct of VDARE's business or the business of any contractor engaged by VDARE to provide professional services to VDARE.

4. OAG may, at any time, notify VDARE that OAG does not concur in the designation of a document or other material as Confidential Information. If VDARE does not agree to declassify such document or material within seven (7) days of the written request, OAG may move before the Court for an order declassifying those documents or materials. If no such motion is filed, such documents or materials shall continue to be treated as Confidential Information. If such motion is filed, the documents or other materials shall be deemed Confidential Information unless and until the Court rules otherwise. Notwithstanding anything herein to the contrary, VDARE bears the burden of establishing the propriety of its designation of documents or information as Confidential Information. To the extent OAG is successful on a motion for declassify such documents or materials, OAG shall be entitled to the legal fees and costs incurred in making such motion.

5. Notwithstanding VDARE's designation, documents and information produced to OAG that have been designated as "Confidential Information" may be subject to disclosure pursuant to, without limitation, New York Public Officers Law § 87 and New York Criminal Procedure Law § 245. Confidential Information as defined herein may be provided by OAG to law enforcement agencies in response to inquiries or as part of a referral in connection with an actual or potential law enforcement investigation without prior notice to VDARE. In such instance, OAG

**AA0972**

will notify the recipient of VDARE's confidentiality designation and will provide them with a copy of this Agreement.

6.      Upon a request by VDARE, OAG will deem "Confidential Information" produced to OAG to be subject to a request by VDARE for an exemption under New York Public Officers Law §§ 87(2)(b) and 89(2) or 87(2)(d), which provides certain protections from disclosure under the Freedom of Information ("FOIL") as outlined in New York Public Officers Law § 89(5). Unless such "Confidential Information" has been declassified in accordance with paragraph 4 above, "upon the request of any person for a record excepted from disclosure," OAG will: provide notice to VDARE of its intention to determine whether the exception will be granted or whether any other exemptions under FOIL apply; permit VDARE, within ten business days of receipt of such notice, to submit a written statement of the necessity for granting or continuing the exception; and within seven days of OAG's receipt of VDARE's written statement, or of the expiration of the ten-day period for VDARE's submission of such statement, issue a written determination granting, continuing or terminating the exception and stating reasons therefor. Finally, in connection with any FOIL request, OAG will provide VDARE with a reasonable opportunity to object, or seek court protection, as provided in New York Public Officers Law § 89(5)(b), in addition to any other remedy which may exist at law or in equity.

7.      Where OAG is required pursuant to New York Criminal Procedure Law § 245.20(2) to disclose "Confidential Information" in connection with a criminal matter, OAG will notify the recipient of VDARE's confidentiality designation, will provide them with a copy of this Agreement. OAG will not be deemed to have violated this Stipulation for failing to provide notice to VDARE.

**AA0973**

8. Except with the prior written consent of VDARE, by Order of the Court or as otherwise required by law, including without limitation as set forth in paragraph 7 above, Confidential Information shall not be furnished, shown or disclosed to any person or entity except to:

(a) personnel of the Parties actually engaged in this investigation or other proceeding herein and who have been advised of their obligations hereunder;

(b) counsel for the Parties to this action and their associated attorneys, paralegals and other professional and non-professional personnel (including support staff and outside copying services) who are directly assisting such counsel in the course of this investigation, are under the supervision or control of such counsel, and who have been advised by such counsel of their obligations hereunder;

(c) expert witnesses or consultants retained by the Parties or their counsel to furnish technical or expert services in connection with this investigation or to give testimony with respect to the subject matter of this investigation or in connection with any other proceeding herein;

(d) the Court and court personnel;

(e) witnesses and their counsel in any interview or examination taken by OAG, as well as any officer before whom such examination is taken, including stenographic reporters and any necessary secretarial, clerical or other personnel of such officer;

(f) any governmental body within the State of New York, any other State of the United States (collectively, "Governmental Body") pursuant to a law enforcement request, whether by subpoena or otherwise; and

(g) any other person agreed to by VDARE.

9. Confidential Information shall be utilized by OAG and its counsel only for

purposes of this investigation, regulation of any person or entity subject to OAG regulatory oversight, and any other litigation, investigations, and/or referrals to law enforcement agencies for law enforcement purposes, and otherwise for no other purposes.

10.     All investigative examinations shall presumptively be treated as Confidential Information and subject to this Stipulation during the examination and for a period of thirty (30) days after a transcript of said examination is received by counsel for each of the Parties. At or before the end of such thirty-day period, the examination shall be classified appropriately. If any portion of an examination designated as Confidential Information is challenged, it shall be subject to the procedures set forth in paragraph 4, *supra*.

11.     Filing:

(a)     A Party who seeks to file with the Court any examination transcripts or other documents which have previously been designated as comprising or containing Confidential Information shall file the document, pleading, brief, or memorandum on the NYSCEF system in redacted form until the Court renders a decision on any motion to seal (the "Redacted Filing"). If VDARE fails to move to seal within seven (7) days of the Redacted Filing, the Party making the filing shall take steps to replace the Redacted Filing with its corresponding unredacted version.

(b)     If VDARE makes a timely motion to seal, and the motion is granted, the filing Party shall ensure that all documents (or, if directed by the court, portions of documents) that are the subject of the order to seal are filed in accordance with the procedures that govern the filing of sealed documents on the NYSCEF system. If VDARE's timely motion to seal is denied, then the Party making the filing shall take steps to replace the Redacted Filing with its corresponding unredacted version.

(c)     Any Party filing a Redacted Filing in accordance with the procedure set forth in this

**AA0975**

paragraph 11 shall, contemporaneously with or prior to making the Redacted Filing, provide the other Parties and the Court with a complete and unredacted version of the filing.

(d)     All pleadings, briefs or memoranda which reproduce, paraphrase or disclose any materials which have previously been designated by a party as comprising or containing Confidential Information shall identify such documents by the production number ascribed to them at the time of production.

12.     With the exception of any Governmental Body or other person or entity that receives Confidential Information pursuant to a disclosure by the OAG as set forth in paragraph 5 above, any person receiving Confidential Information shall not reveal or discuss such information to or with any person not entitled to receive such information under the terms hereof and shall use reasonable measures to store and maintain the Confidential Information so as to prevent unauthorized disclosure.

13.     Any document or information that may contain Confidential Information that has been inadvertently produced without identification as to its "confidential" nature as provided in paragraphs 2 and/or 10 of this Stipulation, may be so designated by the party asserting the confidentiality privilege by written notice to the undersigned counsel for OAG identifying the document or information as "confidential" within a reasonable time following the discovery that the document or information has been produced without such designation.

14.     Extracts and summaries of Confidential Information shall also be treated as confidential in accordance with the provisions of this Stipulation.

15.     The production or disclosure of Confidential Information shall in no way constitute a waiver of VDARE's right to object to the production or disclosure of other information in this investigation or in any other proceeding. Nothing in this Stipulation shall operate as an admission

by any Party that any particular document or information is, or is not, confidential. Failure to challenge a Confidential Information designation shall not preclude a subsequent challenge thereto.

16.     In connection with their review of electronically stored information and hard copy documents for production (the "Documents Reviewed") the Parties agree as follows:

(a)     to implement and adhere to reasonable procedures to ensure documents reviewed that are protected from disclosure pursuant to CPLR 3101(c), 3101(d)(2) and 4503 ("Protected Information") are identified and withheld from production.

(b)     if Protected Information is inadvertently produced, VDARE shall take reasonable steps to correct the error, including a request to OAG for its return.

(c)     upon request by VDARE for the return of Protected Information inadvertently produced OAG shall promptly return the Protected Information and destroy all copies thereof. Furthermore, OAG shall not challenge either the adequacy of VDARE's document review procedure or its efforts to rectify the error, and OAG shall not assert that its return of the inadvertently produced Protected Information has caused it to suffer prejudice.

17.     This Stipulation is entered into without prejudice to the right of any Party to seek relief from, or modification of, this Stipulation or any provisions thereof by properly noticed motion to the Court or to challenge any designation of confidentiality as inappropriate under the Civil Practice Law and Rules or other applicable law.

18.     This Stipulation shall continue to be binding after the conclusion of this investigation except that there shall be no restriction on documents that are used as exhibits in Court (unless such exhibits were filed under seal); and (b) that OAG may seek the written permission of VDARE or further order of the Court with respect to dissolution or modification of

the Stipulation. The provisions of this Stipulation shall, absent prior written consent of the parties, continue to be binding after the conclusion of the investigation.

19.     Nothing herein shall be deemed to waive any privilege recognized by law or shall be deemed an admission as to the admissibility in evidence of any facts or documents revealed in the course of disclosure.

20.     This Stipulation shall not be interpreted in a manner that would violate any applicable rules of professional conduct.

21.     If OAG is called upon to produce Confidential Information in order to comply with a court order, subpoena, or other direction by a court, administrative agency, or legislative body, OAG shall (a) give written notice by overnight mail and either email or facsimile to the counsel for VDARE within five (5) business days of receipt of such order, subpoena, or direction, and (b) give VDARE five (5) business days to object to the production of such Confidential Information, if VDARE so desires. Notwithstanding the foregoing, nothing in this paragraph shall be construed as requiring any party to this Stipulation to subject itself to any penalties for noncompliance with any court order, subpoena, or other direction by a court, administrative agency, or legislative body.

22.     This Stipulation may be changed by further order of this Court and is without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.

23.     This Stipulation may be signed in counterparts, which, when fully executed, shall constitute a single original, and electronic signatures shall be deemed original signatures.

Dated: _____, 2023        LETITIA JAMES
                                   Attorney General of New York


By: _____
        James G. Sheehan
        Yael Fuchs
        Catherine Suvari
        Assistant Attorneys General
        28 Liberty Street
        New York, NY 10005
        Tel: (212) 416-xxxx

*Attorneys for Petitioner State of New York*


Dated: _____, 2023        LAW OFFICES OF ANDREW J. FRISCH, PLLC


By: _____
        Andrew J. Frisch
        40 Fulton Street, 17th Floor
        New York, New York 10038
        Tel: (212) 285-8000

*Attorneys for Respondent VDARE Foundation, Inc.*

**AA0979**

**EXHIBIT K**

AA0980

FILED: APPELLATE DIVISION – 1ST DEPT 02/22/2023 08:46 PM    2023–00672

NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 02/22/2023

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION – FIRST DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,
by Letitia James, Attorney General
of the State of New York                         Mot. No. 691

                                                 Case No. 2023-00672
            *Petitioner-Respondent,*

                    v.                           Supreme Court
                                                 New York County
                                                 Index No. 453196/2022
VDARE FOUNDATION, INC.,

            *Respondent-Appellant.*

---

## MEMORANDUM OF LAW IN OPPOSITION TO APPLICATION FOR A STAY PENDING APPEAL

                                    LETITIA JAMES
                                      *Attorney General*
                                      *State of New York*
                                    Attorney for Respondent
ESTER MURDUKHAYEVA             28 Liberty Street
  *Deputy Solicitor General*       New York, NY 10005
ANDREA W. TRENTO               (212) 416-8656
  *Assistant Solicitor General*
     *of Counsel*                  Dated: February 22, 2023

**AA0981**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

PRELIMINARY STATEMENT ............................................................ 1

BACKGROUND ................................................................................... 3

    A.   Statutory Background ................................................................. 3

    B.   Factual and Procedural Background ....................................... 5

          1.   VDARE's suspected violations of New York law .............. 5

          2.   VDARE's minimal and deficient responses to New York State Office of the Attorney General (OAG) subpoena .......................................................................... 9

          3.   VDARE's preemptive federal action ................................ 12

          4.   OAG's state-court proceeding........................................... 13

ARGUMENT ...................................................................................... 16

    THIS COURT SHOULD DENY VDARE'S MOTION FOR A STAY PENDING APPEAL .................................................................... 16

    A.   VDARE Is Unlikely to Succeed on the Merits of Its Appeal. ................................................................................... 17

          1.   Supreme Court properly denied VDARE's motion to dismiss or, in the alternative, to stay the subpoena-compliance proceeding.................................................... 17

          2.   Supreme Court properly granted OAG's motion to compel. ...................................................................... 22

**AA0982**

**Page**

B. Equitable Factors Weigh against Staying Supreme Court's Order That VDARE Comply with Its Outstanding Subpoena Obligations. ........................................ 32

1. VDARE will not be harmed—irreparably  or otherwise—by complying with the order. ........................ 33

2. The relative hardships of the parties weigh in favor of denying VDARE's application. ..................................... 36

CONCLUSION ........................................................................... 38

AA0983

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Abrams v. New York Found. for the Homeless,*
    190 A.D.2d 578 (1st Dep't 1993)........................................................23

*Ace Prop. & Cas. Ins. Co. v. Federal-Mogul Corp.,*
    55 A.D.3d 479 (1st Dep't 2008)..........................................................19

*Americans for Prosperity Foundation v. Bonta,*
    141 S. Ct. 2373 (2021)..................................................................30-32

*Anheuser-Busch, Inc. v. Abrams,*
    71 N.Y.2d 327 (1988)...............................................................5, 23

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio),*
    459 U.S. 87 (1982).....................................................................27-28

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943)........................................................................13

*Citizens United v. Schneiderman,*
    882 F.3d 374 (2d Cir. 2018)............................................................23

*Da Silva v. Musso,*
    76 N.Y.2d 436 (1990).............................................................16-17, 36

*DeLury v. City of New York,*
    48 A.D.2d 405 (1st Dep't 1975)..................................................16, 33

*Herbert v. City of New York,*
    126 A.D.2d 404 (1st Dep't 1987).......................................................17

*Hudgens v. NLRB,*
    424 U.S. 507 (1976)........................................................................28

*In re Dreier,*
    438 B.R. 449 (Bankr. S.D.N.Y. 2010)..............................................21

**AA0984**

| Cases | Page(s) |
|---|---|

*John Doe No. 1 v. Reed,*
    561 U.S. 186, 201 (2010) .................................................................... 27

*Kent Dev. Co. v. Liccione,*
    37 N.Y. 2d 899 (1975) ...................................................................... 18

*L-3 Communications Corp. v. SafeNet, Inc.,*
    45 A.D.3d 1 (1st Dep't 2007) ............................................................. 19

*Matter of American Dental Coop., Inc. v. Attorney-General of
State of N.Y.,*
    127 A.D.2d 274 (1st Dep't 1987) ....................................................... 25

*Matter of Doe v. Kuriansky,*
    91 A.D.2d 1068 (2d Dep't 1983) ......................................................... 4

*Matter of Evergreen Assn., Inc. v. Schneiderman,*
    153 A.D.3d 87 (2d Dep't 2017) .............................................. 24, 31-32

*Matter of Giardina v. James,*
    185 A.D.3d 451 (1st Dep't 2020) ....................................................... 22

*Matter of La Belle Creole Intl., S.A. v. Attorney-General of State of N.Y.,*
    10 N.Y.2d 192 (1961) ......................................................................... 4

*Matter of Libre by Nexus, Inc. v. Underwood,*
    181 A.D.3d 488 (1st Dep't 2020) .............................................. 23, 25-26

*Matter of Nicholson v. State Commn. on Jud. Conduct,*
    50 N.Y.2d 597 (1980) ....................................................................... 22

*Matter of Roemer v. Cuomo,*
    67 A.D.3d 1169 (3d Dep't 2009) ....................................................... 23

*Pirraglia v. Jofsen, Inc.,*
    148 A.D.3d 648 (1st Dep't 2017) ....................................................... 17

*Rand v. Rand,*
    201 A.D.2d 403 (1st Dep't 1994) ....................................................... 17

**AA0985**

| Cases | Page(s) |
|---|---|

*Syncora Guar. Inc. v. J.P. Morgan Sec. LLC,*
    110 A.D.3d 87 (1st Dep't 2013) ............................................................ 19

*Virag v. Hynes,*
    54 N.Y.2d 437 (1981) ............................................................................ 37

*Volokh v. James,*
    No. 22-cv-10195, 2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023) ........... 35

*Walsh v. Goldman Sachs & Co.,*
    185 A.D.2d 748 (1st Dep't 1992) .......................................................... 18

*White Light Prods. v. On the Scene Prods.,*
    231 A.D.2d 90 (1st Dep't 1997) ........................................................ 19-20

*Wiseman v. American Motors Sales Corp.,*
    103 A.D.2d 230 (2d Dep't 1984) ........................................................... 26

## Constitution

N.Y. Const. art. I, § 8 ................................................................................. 12

## Laws

C.P.L.R. § 3211 ........................................................................................... 18

Estates, Powers and Trusts Law § 8-1.4 ..................................................... 3

Executive Law
    art. 7-a .................................................................................................. 24
    § 63 ......................................................................................................... 4
    § 172 ....................................................................................................... 6
    § 172-b ................................................................................................. 29
    § 172-e ................................................................................................. 29

General Business Law § 394-ccc ........................................................... 34-35

| Laws | Page(s) |
|------|---------|

**Not-for-Profit Corporation Law**

§ 112 .................................................................................. 4

§§ 509-511-a ................................................................... 24

§ 509 .................................................................................. 8

§ 510 .................................................................................. 8

§ 515 ................................................................................ 24

§ 715 ........................................................................... 8, 24

§ 715-a ............................................................................ 24

## Miscellaneous Authorities

Davies, Mark, et al., 8 *New York Practice Series, Civil Appellate Practice* § 9:4 (3d ed. May 2022 update) (Westlaw) ..................... 17, 36

The Editorial Board, *All About Nikki Haley's Donors*, Wall St. J. (Sept. 4, 2022), https://www.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-letitia-james-stand-for-america-11662065044 .......................................................... 29

Isenstadt, Alex, *Document Reveals Identity of Donors Who Secretly Funded Nikki Haley's Political Nonprofit*, POLITICO (Aug. 26, 2022), https://www.politico.com/news/2022/08/26/donors-secretly-funded-nikki-haleys-nonprofit-00053963 ............................................ 29

VDARE.com, https://vdare.com/donate .................................................. 37

**AA0987**

# PRELIMINARY STATEMENT

In this special proceeding to compel compliance with a subpoena duces tecum, the New York State Office of the Attorney General (OAG) has amply demonstrated that its subpoena to VDARE Foundation, Inc. is reasonably related to the State's strong interest in the regulation of charitable organizations for the public good. VDARE has stymied OAG's investigation at every turn—first by seeking numerous extensions of the compliance deadline, then by producing a trickle of documents with heavy and unexplained redactions, and finally by filing a preemptive lawsuit in federal district court seeking to enjoin OAG's investigation in its entirety and dallying in seeking relief in even that action. Supreme Court, New York County (Kraus, J.) properly granted OAG's motion to compel VDARE's compliance with the duly issued subpoena and denied VDARE's motion to dismiss or stay the subpoena-compliance proceeding pending resolution of its federal action. This Court should deny VDARE's request for the extraordinary relief of a stay of Supreme Court's order pending appeal.

*First*, VDARE has failed to show that it is likely to succeed on the merits of its appeal. VDARE's insistence that Supreme Court was required

**AA0988**

to defer to the "first-filed" federal case is wrong as a matter of law—both because the "first-filed" rule does not apply where the relief sought in the later-filed action (that is, compliance with an OAG investigative subpoena) is not available in the earlier-filed action, and because it is not controlling where the actions were filed near in time to one another or where one party files first preemptively after learning of the opposing party's intent to commence litigation. In any event, VDARE's assertion that OAG's investigation is motivated by harassment or retaliation is bereft of any evidence and is belied by the facial legitimacy of the subpoena.

*Second*, equitable factors also support denial of VDARE's application for stay pending appeal. VDARE has not put forward any evidence that it faces irreparable harm from the denial of its application; indeed, VDARE's copious litigation delays bely any allegation of harm. By contrast, a stay would prolong OAG's already-delayed investigation by months, to the detriment of the public interest in expeditious investigations and ensuring the compliance by organizations like VDARE with laws governing misuse of charitable assets.

**AA0989**

# BACKGROUND

## A.    Statutory Background

VDARE is a charitable non-profit corporation organized under the laws of the State of New York. <u>Affirm. of Andrew J. Frisch in Supp. of Appl. for Stay & Interim Relief Pending Appeal (Frisch Affirm.) ¶ 4 (Feb. 6, 2023)</u>; *Id.*, Ex. A (Supreme Court Decision & Order on Mot. (Jan. 23, 2023)) at 1.[1] New York charitable organizations and their officers, directors, and trustees are subject to regulation by the State.

As relevant here, OAG is empowered to "investigate transactions and relationships of trustees for the purpose of determining whether or not property held for charitable purposes has been and is being properly administered," including by "subpoena" for the "production of any books or papers" and "examin[ation]" of "any . . . witness under oath." Estates, Powers and Trusts Law § 8-1.4(i); *see id.* § 8-1.4(a)(2) ("trustee" defined to include "any non-profit corporation organized under the laws of this state for charitable purposes").

---

[1] The Frisch Affirmation is <u>NYSCEF Doc. No. 3</u> in this appellate proceeding. All other references to NYSCEF documents herein are to the electronic docket of the trial court. All lettered exhibit references are to the exhibits attached to the Frisch Affirmation.

3

**AA0990**

OAG may also institute an action or special proceeding to seek a variety of remedies relating to the operation or dissolution of not-for-profit corporations, including "[t]o enjoin, void or rescind any related party transaction, seek damages and other appropriate remedies, in law or equity, in addition to any actions pursuant to section 715 (Related party transactions) of this chapter," Not-for-Profit Corporation Law § 112(a)(10), and is authorized to "take proof and issue subpoenas" in connection with any such investigation, *id.* § 112(b)(6). Aside from these specific powers, OAG is broadly authorized to take legal action against "repeated fraudulent or illegal acts or . . . persistent fraud or illegality in the carrying on, conducting or transaction of business" and may "issue subpoenas" in connection with any such investigation. Executive Law § 63(12).

Subpoenas issued by OAG are "presumptively valid," and a challenging party has the burden of proof to establish an investigatory subpoena's invalidity. *Matter of Doe v. Kuriansky*, 91 A.D.2d 1068, 1068 (2d Dep't 1983). To satisfy that heavy burden, a party must show that the information sought by OAG's subpoena is "utterly irrelevant to any proper inquiry." *Matter of La Belle Creole Intl., S.A. v. Attorney-General of State of N.Y.*, 10 N.Y.2d 192, 196 (1961). If the legality of the conduct

4

**AA0991**

being investigated is even "arguable, then the subpoena[] issued pursuant to the Attorney-General's broad powers to investigate possible violations of [New York law] must be sustained." *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 332 (1988).

## B.     Factual and Procedural Background

### 1.     VDARE's suspected violations of New York law

VDARE incorporated in New York in 1999. Ex. A at 1. In 2000, VDARE applied for (and, in 2001, received) charitable tax-exempt status from the federal Internal Revenue Service (IRS) under Section 501(c)(3) of the Internal Revenue Code, stating in its application that it planned to operate from offices in New York and listed two of its four directors at addresses in New York City. *Id.* at 1-2. As reported to the IRS, VDARE's mission is to "[c]reate and manage [an] internet publication." Affirm. of Yael Fuchs in Supp. of OAG's Order to Show Cause to Compel Compliance with Investigative Subpoena ¶ 15 (Dec. 16, 2022), NYSCEF Doc. No. 4 (attached hereto without accompanying exhibits as Ex. 1). It operates a website (www.vdare.com) to that end. *Id.* ¶ 17.

Despite organizing as a New York charitable not-for-profit corporation in 1999, VDARE did not register with OAG until 2009. *Id.*

**AA0992**

¶¶ 10-11; *see* Executive Law § 172(1) (requiring charitable organizations that "intend[] to solicit contributions from persons in this state or from any governmental agency" to register with OAG prior to any solicitation). As of the commencement of this proceeding, VDARE failed to file a required report by an independent auditor for its 2019 filings and has not filed required annual financial reports (or exemption statements) with OAG for the years 2020 or 2021, preventing OAG from exercising its oversight function over VDARE, its fiduciaries, and its assets. Ex. 1 ¶ 16; *see* Executive Law § 172(a)-(c). Nor has VDARE made required disclosures regarding the relationships of its current board members. According to VDARE's publicly available 2020 Form 990 filed with the IRS, its Board consisted of three directors: Peter Brimelow, Lydia Brimelow, and John Brimelow. Ex. 1 ¶ 20. John Brimelow is disclosed on Schedule O of Form 990 as Peter Brimelow's brother. *See id.* ¶ 19. However, Lydia Brimelow is disclosed nowhere on Form 990 as Peter Brimelow's wife, as would otherwise be required by law. *See id.*

OAG became aware of other potential improprieties in VDARE's operations through publicly reported and available materials. For example, in 2019, VDARE reported a six-fold increase in revenue, from

6

**AA0993**

$700,000 in 2018 to approximately $4.3 million in 2019. Ex. A at 2. Also in 2019, VDARE doubled the salary of its Chairman, Peter Brimelow, to approximately $345,000, comprising roughly one-third of VDARE's operating expenses. *Id.*; *see* Ex. 1 ¶ 35(e). VDARE pays Brimelow's salary through an independent contractor, Happy Penguins LLC (Frisch Affirm. ¶ 12), which is owned by Brimelow (Ex. 1 ¶ 35(d)). VDARE's payments to Happy Penguins LLC in 2019 exceeded Brimelow's reported salary by tens of thousands of dollars. *Id.* ¶ 35(e). VDARE also listed Peter Brimelow's residential home address in Connecticut as its corporate address while reporting over $45,000 in "office" and "occupancy" expenses paid to the Brimelows in 2019. *Id.*

In or around February 2020, VDARE purchased Berkeley Springs Castle in West Virginia as a "meeting space" for approximately $1.4 million. Ex. A at 2; Ex. 1 ¶ 23. Public reporting indicates that Brimelow and his family have used the property as their primary residence since March 2020. Ex. A at 2; Ex. 1 ¶¶ 25-27. In December 2020, VDARE conveyed the property to two West Virginia corporations incorporated by Brimelow's wife, Lydia (another VDARE director), with the Berkeley Springs Castle itself going to a non-profit corporation called Berkeley

**AA0994**

Castle Foundation (and the remaining land to a for-profit corporation called BBB, LLC. Ex. A at 2; Ex. 1 ¶¶ 28-33. Not only were these transactions impermissibly omitted from VDARE's 2020 Form 990 (Ex. 1 ¶ 29), under New York law each required approval and written documentation of that approval by disinterested members of the VDARE Board of Directors, *see* Not-for-Profit Corporation Law §§ 509, 715(a)(3), and should have been submitted for review and approval to OAG or to Supreme Court, *see id.* § 510(a)(3). Transfer of charitable assets to a for-profit entity without fair consideration to disqualified persons is a violation of both New York and federal law. Ex. 1 ¶ 28.

In April 2020, Facebook suspended VDARE's Facebook account based on Facebook's determination that VDARE engaged in "coordinated inauthentic behavior" by creating a network of "fake accounts to create fictitious personas . . . [,] drive traffic to off-platform sites, and evade enforcement." *Id.* ¶ 36. Facebook determined that VDARE spent approximately $114,000 buying ads to further these efforts. These expenditures could constitute a waste of charitable assets and breach of the Brimelows' fiduciary duties as VDARE officers and directors. *Id.*

8

**AA0995**

## 2. VDARE's minimal and deficient responses to New York State Office of the Attorney General (OAG) subpoena

On June 24, 2022, OAG served a subpoena duces tecum on VDARE's designated agent and mailed a copy of the subpoena to VDARE's most recent address identified in annual filings with OAG's Charities Bureau. *Id.* ¶¶ 37-38. The subpoena sought documents concerning VDARE's organizational structure, compliance with conflict-of-interest policy requirements under New York law, financial operations, purchase and conveyance of the Berkeley Springs Castle, and transactions with entities controlled by its directors. Ex. A at 3; *see generally* Ex. F (Subpoena Duces Tecum to VDARE (June 23, 2022)).

On July 2, 2022, VDARE's prior counsel demanded that the subpoena be withdrawn and on July 20, 2022, served individual objections to each of the subpoena requests. Ex. 1 ¶¶ 39-41. The initial response deadline of July 24, 2022, passed without the production of a single responsive document.

On July 27, 2022, OAG clarified the subpoena requests by agreeing that the names of certain individuals, including VDARE donors and volunteer supporters, could be redacted from otherwise responsive

records. *Id.* ¶ 42. In August 2022, VDARE obtained new counsel and indicated that it intended to comply with the subpoena but that its new counsel needed additional time to collect and review potentially responsive material. *Id.* ¶ 43.

On September 19, 2022—nearly three months after the subpoena's issuance and two months after its deadline for response and production—VDARE made a production of approximately 27 redacted documents, without Bates numbers or a log explaining the basis for any of the redactions. *Id.* ¶ 44; *see* Ex. A at 3. On September 30, 2022, OAG demanded the production of a redaction log and requested that all future redactions be accompanied by such a log in the first instance. Ex. 1 ¶ 45. In the ensuing 12 weeks, VDARE made modest productions from its hard copy files, but the productions continued to have significant redactions that were not accounted for in any accompanying log. *Id.* ¶ 46; *see* Ex. A at 3. Redactions appear on almost every category of document produced, including board meeting minutes, bank statements, accounting ledgers, credit card statements, invoices from contractors, financial records for Happy Penguins LLC, and Peter and Lydia Brimelow's personal bank statements. Ex. 1 ¶ 46; *see* Ex. A at 3. As a result, OAG has had no means

10

to reliably identify what has been deleted from VDARE's productions and on what legal basis such deletions were made. Ex. 1 ¶ 45.

On October 31, 2022, VDARE represented that its hard-copy document production was substantially complete (despite the absence of entire categories of requested documents from VDARE's production (*see id.* ¶ 47)) and identified for the first time 22 unique email accounts containing approximately 40 gigabytes of potentially responsive data that needed to be reviewed. *Id.* ¶ 48; *see* Ex. A at 3. VDARE stated that its review of these materials would be complete on November 21, 2022. Ex. 1 ¶ 48. But on November 21 and then again on November 28, 2022— now more than five months after the subpoena was issued and four months after the original production deadline—VDARE informed OAG that the review was taking longer than expected. *Id.* ¶ 49. On November 28, 2022, VDARE stated that it would now aim to complete this review and production by December 12, 2022. *Id.*; *see* Ex. A at 4.

On December 2, 2022, OAG sent a letter to VDARE summarizing its concerns about (among other things) VDARE's production delays, VDARE's unfounded objections to some of the specific subpoena requests, and VDARE's repeated failure to provide a privilege or redaction log. *See*

**AA0998**

*generally* Ex. G (Letter from OAG to VDARE (Dec. 2, 2022)). OAG agreed to a sixth deadline extension to December 12 but stated that it would seek judicial intervention if VDARE failed to complete its production by that date. *Id.* at 3.

### 3. VDARE's preemptive federal action

On December 12, 2022, VDARE did not complete its document production. In fact, it produced no documents at all. *See* Ex. 1 ¶¶ 53-54. Instead, VDARE filed a federal lawsuit in the U.S. District Court for the Northern District of New York against Attorney General James in her official capacity, contending that the subpoena *in its entirety* was issued for impermissible pretextual reasons in retaliation for VDARE's exercise of its First Amendment speech rights and violated VDARE's speech and associational rights under the First Amendment and the New York Constitution, art. I, § 8. *See* Ex. B (Verified Compl. for Declaratory & Injunctive Relief (Dec. 12, 2022)) ¶¶ 33-50. VDARE sought compensatory and punitive damages and preliminary and permanent injunctive relief but did not move the federal court for any injunctive relief while its complaint was pending.

**AA0999**

On January 18, 2023, OAG moved to dismiss the federal action, contending that VDARE's claims for damages and its claims based on the New York Constitution are barred by sovereign immunity, that the federal court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and that VDARE's complaint fails to state a First Amendment claim in any event. *See generally* Ex. J (Mem. of Law in Supp. of Def.'s Mot. to Dismiss (Jan. 18, 2023)). VDARE has sought multiple extensions on its deadline to respond to OAG's motion, and its opposition is currently due on February 22, 2023.

### 4. OAG's state-court proceeding

On December 16, 2022, OAG instituted this special proceeding in Supreme Court, New York County and moved by order to show cause to compel VDARE's compliance with the subpoena. *See* <u>NYSCEF Doc. Nos. 1-4</u>. On January 3, 2023, VDARE moved by order to show cause to dismiss or stay the state-court proceeding pending resolution of the federal litigation, contending that the subpoena was pretextual, *see* Ex. H (Affirm. of Andrew J. Frisch in Supp. of Resp't's Order to Show Cause (Jan. 3, 2023)) ¶¶ 6-22, and that the issues raised in both proceedings

**AA1000**

were duplicative, *see id.* ¶¶ 23-24. Argument on both motions was held on January 19, 2023.

On January 23, 2023, Supreme Court (Kraus, J.) issued an order denying VDARE's motion to dismiss or stay the state-court proceeding, and granting OAG's motion to compel. *See* Ex. A. Supreme Court reasoned that OAG is authorized to enforce the State's policy interest in "ensuring the robust regulation of tax-exempt charitable entities like [VDARE] . . . when misconduct is suspected" and that the subpoena "is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations." Ex. A at 6. Supreme Court noted that VDARE "admits the critical facts that first triggered [OAG's] scrutiny," such as the close family relationships among VDARE's directors and the Brimelows' use of a $1.4 million charitable asset as their personal residence. *Id.* at 7-8.

Supreme Court also concluded that VDARE had failed to carry its "initial threshold burden" of showing that the production of outstanding information in response to the subpoena would impair its First Amendment rights (as opposed to those of its donors or volunteers, which it noted OAG agreed to allow to be redacted). *Id.* at 7. The court also found

14

**AA1001**

that the production of a redaction log posed no First Amendment concerns whatsoever, and that the identities of VDARE's contractors were essential to evaluate the legality of the transactions in which they were involved. *Id.* at 8.

Finally, Supreme Court found that VDARE had presented "no compelling basis for a stay of this proceeding in its moving papers, and acknowledged at oral argument [that] it ha[d] not sought a stay of this proceeding from the Federal District Court." *Id.* at 9. Accordingly, Supreme Court ordered VDARE (1) to comply with its outstanding subpoena obligations (while allowing redactions of the names of private attendees or private contributors to the organization); (2) reproduce previously produced documents with redactions consistent with its order along with a log identifying the basis for any remaining redactions by February 10, 2023; and (3) complete review and production of the remaining responsive electronic files along with a log identifying the basis for any redactions in that production by February 24, 2023. *Id.* at 9-10. Supreme Court also advised the parties that they may "enter into a Stipulation for the Production of Confidential Information pursuant to

**AA1002**

this order and submit said stipulation to be so-ordered by the court." *Id.* at 10.

On February 6, 2023, VDARE noticed its appeal and informed this Court that it would be moving for an emergency stay. On February 7, 2023, just three days before its first production deadline under Supreme Court's order, VDARE filed this application for interim relief and emergency stay pending appeal. On February 8, 2023, this Court issued an interim stay and ordered briefing on VDARE's application for an emergency stay pending appeal.

## ARGUMENT

### THIS COURT SHOULD DENY VDARE'S MOTION FOR A STAY PENDING APPEAL

"[T]here is no entitlement to a stay" pending appeal. *Da Silva v. Musso*, 76 N.Y.2d 436, 443 n.4 (1990). To obtain such relief, the applicant must demonstrate both a "reasonable probability of ultimate success in the action, as well as the prospect of irreparable harm" without a stay. *DeLury v. City of New York*, 48 A.D.2d 405, 405 (1st Dep't 1975). This Court also is "duty-bound to consider the relative hardships that would result from granting (or denying)" the application, *Da Silva*, 76 N.Y.2d

**AA1003**

at 443 n.4, which in a government enforcement action entails weighing the potential prejudice to the public from a stay, *see* Mark Davies et al., 8 *New York Practice Series, Civil Appellate Practice* § 9:4 (3d ed. May 2022 update) (Westlaw). Each of these criteria weighs heavily against granting VDARE's motion.

## A. VDARE Is Unlikely to Succeed on the Merits of Its Appeal.

VDARE has failed to demonstrate a "likelihood of success on the merits" of its appeal, as is necessary to obtain a stay in this Court. *Rand v. Rand*, 201 A.D.2d 403, 403 (1st Dep't 1994); *Pirraglia v. Jofsen, Inc.*, 148 A.D.3d 648, 649 (1st Dep't 2017) (same). Indeed, this Court has been clear that a stay pending appeal is improper in cases, such as this one "where the appeal is meritless or taken primarily for the purpose of delay." *Herbert v. City of New York*, 126 A.D.2d 404, 407 (1st Dep't 1987).

### 1. Supreme Court properly denied VDARE's motion to dismiss or, in the alternative, to stay the subpoena-compliance proceeding.

Supreme Court properly denied VDARE's motion to dismiss or stay this subpoena-compliance proceeding in favor of the "first-filed" federal litigation.

17

**AA1004**

Motions to dismiss premised on the prior existence of another action between the parties are governed by C.P.L.R. § 3211(a)(4), which authorizes dismissal or any other "such order as justice requires" where "there is another action pending between the same parties *for the same cause of action* in a court of any state or the United States." C.P.L.R. § 3211(a)(4) (emphasis added). Here, the federal action commenced by VDARE and the subpoena-compliance proceeding initiated by OAG four days later are not the "same cause of action": VDARE and OAG respectively seek different relief, and the relief sought by OAG in the state-court proceeding (that is, an order mandating compliance with an OAG investigative subpoena) is not even available to it in federal court. In such circumstances, New York courts must deny motions brought under C.P.L.R. § 3211(a)(4). *See Walsh v. Goldman Sachs & Co.*, 185 A.D.2d 748, 749 (1st Dep't 1992) (reversing dismissal due to prior pending action where plaintiff could not obtain complete relief in prior action); *Kent Dev. Co. v. Liccione*, 37 N.Y. 2d 899, 901 (1975).[2]

---

[2] VDARE's authorities for the proposition that the "first-filed" rule is sacrosanct in this Court (*see* Frisch Affirm. ¶ 24) are not to the contrary, as none of those cases involved circumstances where, as here, the relief sought by the plaintiff in the later-filed proceeding was unavailable to it

*(continued on the next page)*

18

**AA1005**

Moreover, even if the absence of the availability of relief for OAG in federal court were not dispositive of the issue (though it is), the "first-filed" rule is "not controlling" where, as here, the "commencement of the competing actions has been reasonably close in time," *L-3 Communications Corp.*, 45 A.D.3d at 9, and where "one party files the first action preemptively, after learning of the opposing party's intent to commence litigation," *id.* at 8; *see also White Light Prods. v. On the Scene Prods.*, 231 A.D.2d 90, 98 (1st Dep't 1997). Here, only four days separated the filing of the two proceedings, and VDARE filed its federal court proceeding on the very day by which OAG had demanded that VDARE complete its production so as to avoid the resort to "judicial intervention to obtain compliance." Ex. G at 3; *see L-3 Communications*, 45 A.D.3d at 8-10 (reversing dismissal of later-filed New York action, where only four

---

in the first-filed proceeding. *See, e.g.*, *Syncora Guar. Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 96 (1st Dep't 2013) (noting that the plaintiff sought "the same damages for the same alleged injuries relating to the same transaction from close corporate affiliates" in the two cases, warranting dismissal of the later-filed action); *L-3 Communications Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 5 (1st Dep't 2007) (describing how both cases involved claim for breach of contract based on the same conduct); *Ace Prop. & Cas. Ins. Co. v. Federal-Mogul Corp.*, 55 A.D.3d 479, 479 (1st Dep't 2008) (same).

19

**AA1006**

days separated the lawsuits and first lawsuit was filed "preemptively, in order to gain a tactical advantage," after litigation had been threatened by the other party).

VDARE complains that this exception to the first-filed rule should not apply in the context of investigative subpoenas issued by OAG, because OAG's "resort to litigation is inherent in virtually every subpoena it issues," and thus "every person issued a subpoena by the [OAG]" would be barred from collaterally attacking that subpoena in another venue. Frisch Affirm. ¶ 26. But this premise can be restated to make the opposite point: a rule that allowed every person issued a subpoena by OAG to obtain an indefinite stay of its enforcement merely by filing a preemptive collateral challenge in federal court would reward the very "procedural gamesmanship" and "[d]elaying tactics" that this exception was designed to prevent. *White Light Prods.*, 231 A.D.2d at 98. VDARE's own conduct evidenced that it saw OAG's December 2, 2022, threat to seek "judicial intervention" in the event of VDARE's failure to comply by its self-imposed December 12 deadline (Ex. G at 3) as something more serious than the boilerplate reservation of rights found in the subpoena itself. *See* Frisch Affirm. ¶ 9 (characterizing the December 2 letter as "unduly

20

**AA1007**

heavy-handed"). Aware that OAG's patience had worn thin, VDARE rushed into federal court on the very day it had committed to provide its final production in response to the subpoena, precisely to avoid a motion to compel in state court. Supreme Court properly rejected the application of the first-filed rule here in denying VDARE's motion to dismiss or stay in the alternative.

Finally, there is no merit to VDARE's contention that OAG's state-court action was itself the product of forum-shopping or "subterfuge." Frisch Affirm. ¶¶ 30, 32. In bringing this subpoena-compliance proceeding, OAG made good on its December 2 threat to seek judicial relief for VDARE's non-compliance with the subpoena in the only forum where such relief was available to it. *See, e.g.*, *In re Dreier*, 438 B.R. 449, 459 (Bankr. S.D.N.Y. 2010) (holding that it is "not forum shopping" where a litigant has pursued litigation in "the only forum where he can press" his claim). And VDARE's allegation that OAG engaged in "subterfuge" (*see* Frisch Affirm. ¶¶ 30-31) in order to obtain a two-week extension over the holidays and due to illness to respond to VDARE's federal complaint is nonsensical. VDARE claims that it was duped into consenting to this request on December 21, 2022, because it did not know at that time of

21

**AA1008**

OAG's state-court petition filed on December 16. (*Id.* ¶ 31.) But even if OAG had control over the timing of the court's issuance of the order to show cause (and it did not), the federal court did not grant OAG's motion for an extension until December 28, 2022, *see VDARE Found.*, No. 22-cv-01337 (N.D.N.Y. Dec. 28, 2022), ECF No. 9—*six days* after VDARE became aware of the proceeding on December 22 (*see* Frisch Affirm. ¶ 31). Yet VDARE did not withdraw its consent to OAG's request at any time after learning of this alleged "subterfuge." VDARE's allegation of misconduct and "subterfuge" should be rejected.

### 2. Supreme Court properly granted OAG's motion to compel.

Supreme Court also properly granted OAG's motion to compel VDARE to comply with the duly issued subpoena.

A motion to compel compliance with a subpoena "raises only the issues of the authority of the investigating body and whether the inquiry falls within the scope of that authority." *Matter of Nicholson v. State Commn. on Jud. Conduct*, 50 N.Y.2d 597, 610 (1980); *see Matter of Giardina v. James*, 185 A.D.3d 451 (1st Dep't 2020). To establish the legitimacy of the inquiry, OAG "need only make a preliminary showing

22

**AA1009**

that the information sought is reasonably related to a proper subject of inquiry." *Matter of Roemer v. Cuomo*, 67 A.D.3d 1169, 1171 (3d Dep't 2009) (quotation marks omitted). Moreover, OAG "enjoys a presumption that [s]he is proceeding in good faith." *Id.*; *see Anheuser-Busch, Inc.*, 71 N.Y.2d at 332. Unless the respondent can demonstrate that "the futility of the process to uncover anything legitimate is inevitable or obvious" or that any "information sought is utterly irrelevant to any proper inquiry," the subpoena will be enforced. *Matter of Libre by Nexus, Inc. v. Underwood*, 181 A.D.3d 488, 488 (1st Dep't 2020) (quotation marks omitted).

OAG has satisfied this standard. There can be no question—and VDARE does not dispute (*see* Frisch Affirm. ¶ 8)—that the subject matter of the subpoena concerns a "proper subject of inquiry." New York has a strong public policy interest in ensuring the robust regulation of the assets of tax-exempt charitable entities like VDARE, *see Citizens United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018) (noting the "important government interests at stake" in the regulation of New York's non-profit sector), and vests significant authority in OAG to enforce those interests, *see, e.g.*, *Abrams v. New York Found. for the Homeless*, 190 A.D.2d 578, 578 (1st Dep't 1993). *See generally* Ex. A at 6.

Moreover, the categories of information sought by OAG (and withheld by VDARE)—the identities of VDARE's contractors, and other redacted information appearing on the likes of bank statements, board minutes, accounting ledgers, credit card statements, invoices from contractors, and financial records for related parties—are "reasonably related" to the State's regulatory interest in the operations of charitable non-profit corporations and specifically in identifying and rooting out improper related party transactions. *See, e.g.*, Not-for-Profit Corporation Law §§ 509-511-a (regulation of real property transactions by non-profit corporations); *id.* §§ 515(a)-(b) (distribution of organization's income or profits to directors and officers, including compensation); *id.* §§ 715, 715-a (related party transactions and conflicts-of-interests); Executive Law art. 7-a (solicitation of funds); Estates, Powers and Trusts Law§ 8.1.4(a), (i) (supervision of non-profit corporations organized for charitable purposes, including "whether or not property held for charitable purposes has been and is being properly administered"). *See generally* Ex. A at 6-7.

Finally, the publicly reported conduct by VDARE more than justifies the State's inquiry. *See Matter of Evergreen Assn., Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2d Dep't 2017) (requiring "an authentic factual basis

24

**AA1011**

to warrant the investigation"); *see also Matter of American Dental Coop., Inc. v. Attorney-General of State of N.Y.*, 127 A.D.2d 274, 280 (1st Dep't 1987) (noting that while OAG must show "some factual basis for [her] investigation," she "is not required to demonstrate probable cause or disclose the details of [her] investigation"). OAG has identified required omissions about the relationships between and among VDARE's directors from its regulatory filings; potential irregularities regarding the compensation paid to VDARE's Chairman, Peter Brimelow, through a separate entity owned by Mr. Brimelow himself; and the questionable use of VDARE's single-biggest asset—the Berkeley Springs Castle in West Virginia—as a personal residence by Brimelow and his family, and subsequent disposition of that property to entities owned or controlled by VDARE director Lydia Brimelow. *See generally* Ex. 1 ¶¶ 19-36; Ex. A at 2-3. These publicly reported incidents call into question VDARE's compliance with the State's requirements for non-profit corporations.

VDARE does not meaningfully argue that the information at issue "is utterly irrelevant to any proper inquiry" by OAG.[3] *Matter of Libre*, 181

---

[3] VDARE cites one only example of a request that is "far afield from legitimate regulatory oversight": deposition transcripts and document

(*continued on the next page*)

25

**AA1012**

A.D.3d at 488 (quotation marks omitted). Instead, it claims that the investigation itself is "retaliatory"—that VDARE is being targeted "for reasons other than regulatory compliance"—because OAG has taken unspecified "unduly aggressive positions" in the course of negotiating the scope and timing of VDARE's response to the subpoena, and because the investigation has coincided with the effective date of a statute aimed at "hateful conduct" on social media as well as the issuance of subpoenas to Facebook and Meta by a newly established "Hate Crimes Unit" within the Office. Frisch Affirm. ¶¶ 19-20. But none of these contentions evinces retaliatory conduct by OAG, particularly in light of the public information that provided a factual basis for OAG's inquiry.

Shifting gears, VDARE next claims that it is entitled to withhold a narrower swath of the information at issue—i.e., "the identities of

---

productions from recent litigation between Peter Brimelow and/or VDARE and the *New York Times* regarding whether certain articles by the *Times* about Brimelow and VDARE were defamatory. Frisch Affirm. ¶ 22. But it was reasonable for OAG to surmise that such materials might have touched on the operations of VDARE, which does fall squarely within the "legitimate regulatory oversight" of OAG. *Cf. Wiseman v. American Motors Sales Corp.*, 103 A.D.2d 230, 237 (2d Dep't 1984) (disclosure "should not be prohibited" where the request "is made in good faith and the information sought is reasonably calculated to lead to the discovery of admissible proof").

contractors who did business with VDARE"—because the disclosure and publicization of those identities could threaten VDARE's "very existence," thereby impinging on its First Amendment rights.[4] Frisch Affirm. ¶ 11. This argument fails for several reasons.

*First*, VDARE has not advanced any evidence of a nexus between the First Amendment harm it alleges and its production of information in response to the subpoena. *See Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 93 (1982) (noting that the person from whom disclosure is sought must establish a "reasonable probability" that disclosure of donors' or members' identities "'will subject them to threats, harassment, or reprisals from either Government officials or private parties'" (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976))); *John Doe No. 1 v. Reed*, 561 U.S. 186, 201 (2010) (compelling disclosure of same-sex marriage ballot petition signatures where plaintiffs provided "scant

---

[4] VDARE makes no argument justifying the numerous redactions it has made to board meeting minutes, bank statements, accounting ledgers, credit card statements, and financial records, or as to its failure to produce responsive documents from the e-mail data that it has identified. To the extent this Court is inclined to grant emergency relief as to the order granting the motion to compel on First Amendment grounds, it should require VDARE to produce any withheld material or information that does not reflect the identity of any VDARE contractor.

27

**AA1014**

evidence or argument beyond the burdens they assert disclosure would impose on R–71 petition signers or the signers of other similarly controversial petitions"). It identifies several purported instances where contractors terminated relationships with VDARE as a result of the "reputational and professional harm" they suffered due to their association with the organization. Frisch Affirm. ¶ 11. But even assuming these terminations were the result of contractors being "deterred by the public enmity attending publicity," *Brown*, 459 U.S. at 98, and not by the contractors' own "disagreement with VDARE's views"[5] (Frisch Affirm. ¶ 11), VDARE fails to explain why the production of the contractors' identities *to the government* would bring about the publicity that VDARE contends would cause it constitutional harm—particularly given Supreme Court's invitation to enter into a confidentiality agreement (*see* Ex. A at 10; Ex. L (Stipulation and [Proposed] Order for the Production of

---

[5] VDARE does not enjoy a First Amendment right to obtain services from providers who are themselves unwilling to associate with its views. *See, e.g.*, *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state.").

28

**AA1015**

Confidential Information)) that would restrict OAG's ability to publicize or utilize such information outside of its investigation.

VDARE's vague allegation that OAG allegedly disclosed confidential information connected to an investigation of "another conservative not-for-profit entity in OAG's cross hairs" (Frisch Affirm. ¶ 16) is insufficient in this regard. For one, VDARE gets the reported facts of this alleged incident wrong. According to the reporting cited by VDARE, the material in question was a "donor tax filing" initially filed with the IRS.[6] These tax returns are also filed with OAG and the New York Department of State annually as a matter of course. *See* Executive Law §§ 172-b(7), 172-e(4). Nothing in the article cited by VDARE suggests that the organization in question was being "investigated" or was in the "cross hairs" of OAG. In any event, the existence of a protective order here would provide recourse to VDARE in the event of an unauthorized disclosure.

---

[6] The Editorial Board, *All About Nikki Haley's Donors*, Wall St. J. (Sept. 4, 2022), https://www.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-letitia-james-stand-for-america-11662065044; Alex Isenstadt, *Document Reveals Identity of Donors Who Secretly Funded Nikki Haley's Political Nonprofit*, POLITICO (Aug. 26, 2022), https://www.politico.com/news/2022/08/26/donors-secretly-funded-nikki-haleys-nonprofit-00053963. All URLs were last visited on February 22, 2023.

29

**AA1016**

*Second*, even if VDARE could show a nexus between complying with the subpoena and its alleged First Amendment harm, VDARE is still unlikely to succeed on its appeal because the disclosure obligation nevertheless satisfies constitutional "exacting scrutiny" under *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021). "Under that standard, there must be 'a substantial relation between the disclosure requirement and a sufficiently important governmental interest,'" *id.* at 2383 (quoting *Reed*, 561 U.S. at 196), and the disclosure requirement must "be narrowly tailored to the interest it promotes, even if it is not the least restrictive means of achieving that end," *id.* at 2384.

Here, the State's interest in ensuring that VDARE is not being used to enrich its insiders is unquestionably important, and the obligation to comply with a subpoena request for the identities of those who have been paid by the organization—particularly in light of public reporting that calls into question VDARE's conduct on this issue—is substantially related to that interest. The disclosure obligation is also narrowly tailored in that: (1) it was imposed by subpoena following public reporting about

**AA1017**

VDARE's potential misconduct;[7] (2) it is limited to contractors and does not seek the identities of donors, volunteers, or other unpaid contributors;[8] (3) per Supreme Court's order, it can be made subject to a protective order that would restrict OAG's ability to use the information for other purposes or disclose the information to third parties; and (4) it is necessary for OAG to be able to evaluate whether impermissible related party transactions have taken place at VDARE.

VDARE contends that the obligation can be narrowed further by requiring VDARE to produce the identities of only those contractors "who might qualify as 'related' within the meaning of Section 715." Frisch Affirm. ¶ 17. But that would allow VDARE to make its own unilateral determination of relatedness—the very legal question that is the subject of the investigation—a scenario that would undermine, rather than further, the State's interests in ensuring that VDARE is being properly

---

[7] *Compare Bonta*, 141 S. Ct. at 2386 (donor disclosure obligation not narrowly tailored where it was imposed annually on all registered charities and where the information was not an "integral part of California's fraud detection efforts").

[8] *Compare Matter of Evergreen Assn.*, 153 A.D.3d at 93 (subpoena seeking information from crisis pregnancy center where organization "did not engage in any commercial transactions and provided all services pro bono, relying heavily on unpaid volunteers").

31

run.[9] Next, VDARE offers an alternative that is narrower still: production of unredacted contractor identities *in camera* to the court, for the court to then determine what contractors were "related parties." Frisch Affirm. ¶ 18; *see* Ex. L. But that proposal would put the *court* in the position of investigating potential misconduct by a charitable investigation and deciding an ultimate legal issue in the case without the benefit of briefing or analysis by the parties. It would also impose a least restrictive means requirement that is at odds with the "exacting scrutiny" standard in *Bonta*, 141 S. Ct. at 2384.

## B. Equitable Factors Weigh against Staying Supreme Court's Order That VDARE Comply with Its Outstanding Subpoena Obligations.

Equitable considerations and the public interest weigh heavily against staying the preliminary injunction pending VDARE's meritless appeal.

---

[9] *Compare Matter of Evergreen Assn.*, 153 A.D.3d at 101 (narrowing OAG's requests for information to those "which pertain to the potential provision of medical or medical-related services," *not* to those which are responsive to the ultimate investigative question of whether Evergreen was engaging in the unauthorized practice of medicine.)

**AA1019**

## 1. VDARE will not be harmed—irreparably or otherwise—by complying with the order.

To obtain a stay pending appeal, VDARE was required to show that it faces "the prospect of irreparable harm" in the absence of a stay. *DeLury*, 48 A.D.2d at 405. Here, VDARE has failed to make any evidentiary showing that complying with the subpoena would interfere with its First Amendment rights, much less that it would be irreparably harmed by such compliance. Nor has VDARE acted with the urgency that would suggest that it even believes that complying with the subpoena would cause it harm. Accordingly, VDARE has provided no basis for this Court to stay the enforcement of Supreme Court's order.

*First*, VDARE has demonstrated no cognizable harm arising from compliance with Supreme Court's order. VDARE's application for stay to this Court consists of an attorney affirmation that largely regurgitates the evidence presented in an attorney affirmation submitted to the court below. *See generally* Frisch Affirm.; Ex. H. No officer or director of VDARE has provided any direct evidence of harm. Nor has VDARE submitted any evidence (even anonymously) on behalf of a contractor, donor, or volunteer explaining that VDARE's compliance with Supreme Court's order will deter that third party from continuing to work with VDARE. All that is

33

**AA1020**

before the Court is the say-so of VDARE's counsel, and references to various media reports suggesting that the *publicization* of a contractor's relationship with VDARE could deter it from working with VDARE in the future.[10] *See* Frisch Affirm. ¶¶ 11-13. This paltry showing is insufficient to establish VDARE's entitlement to a stay.

VDARE's contention that it faces irreparable harm due to the State's ostensibly "retaliatory" investigation (*see* Frisch Affirm. ¶¶ 9-10, 19-22) suffers from a similar lack of proof. Merely alleging, without evidence, that OAG has taken "unduly aggressive positions" in seeking compliance with an otherwise legitimate and narrowly tailored subpoena is not enough to establish irreparable injury. Nor does the arrival of the effective date of a statute "aimed at 'hateful conduct'" on social media (Frisch Affirm. ¶ 19) evidence that OAG's investigation is somehow irreparably harmful: what the identities of VDARE's contractors have to do with that statute is unaddressed by VDARE's application.[11] And

---

[10] Notably, these reports are equally susceptible to the inference that contractors have declined to work with VDARE because of their own disagreement with VDARE's advocacy, in which case VDARE's harm has nothing to do with OAG's subpoena or Supreme Court's order.

[11] That statute, General Business Law § 394-ccc, requires "social media networks"—defined as "service providers, which, for profit-making

<span style="font-style:italic">(continued on the next page)</span>

**AA1021**

finally, the requested stay in this case—even if granted—would have no bearing on the enforceability of OAG's independent subpoena to Facebook and Meta for information regarding VDARE's suspension from that platform. Therefore, VDARE's complaints about that subpoena have no relevance to this stay application.

*Second*, VDARE has not acted with the urgency in this litigation, or in the parallel federal litigation, that would suggest that it believes its very existence to be placed at risk by Supreme Court's order, as it now claims to be the case (*see* Frisch Affirm. ¶ 5). Not only did VDARE wait six months before attempting to seek relief in federal court (on the flimsiest of notions that the State's allegedly improper motives only then became apparent), but it also did not seek emergency relief in that court despite the pendency of this proceeding, and waited more than two weeks

---

purposes, operate internet platforms" designed to allow content-sharing—to maintain a mechanism for users to report hateful conduct and to maintain a policy for how they will respond to such reports. *Id.* § 394-ccc(1)(b), (2), (3). At minimum, VDARE does not fall within the ambit of this statute because it does not operate an internet platform "for profit-making purposes." In any event, a preliminary injunction was recently entered against the enforcement of this statute. *See Volokh v. James*, No. 22-cv-10195, 2023 WL 1991435, at *11 (S.D.N.Y. Feb. 14, 2023).

35

**AA1022**

after the issuance of Supreme Court's order—until just days before its first production deadline under that order—before seeking emergency relief in this Court. These delays call into question whether VDARE truly considers itself likely to be harmed by compliance with OAG's subpoena, and now with Supreme Court's order, or whether VDARE is instead utilizing various options in its toolbox of delay.

### 2. The relative hardships of the parties weigh in favor of denying VDARE's application.

This Court also is "duty-bound to consider the relative hardships that would result from granting (or denying)" the application, *Da Silva*, 76 N.Y.2d at 443 n.4, which in a government enforcement action entails weighing the potential prejudice to the public from a stay, *see* Davies et al., *supra*, § 9:4. This criterion weighs heavily against an appellate stay here.

A stay would prolong OAG's investigation—already delayed by VDARE's dilatory conduct in responding to the subpoena—by months, as the appeal on the merits will require time to be calendared, briefed, argued, and eventually decided by this Court. "Constant delays occasioned by unmeritorious motions to quash followed by routine appeals can lead

**AA1023**

not only to the loss of evidence and the fading of witnesses' memories, but also may completely frustrate the course of legitimate investigation into potentially criminal" or otherwise improper activity. *Virag v. Hynes*, 54 N.Y.2d 437, 443 (1981). There is a strong "public[] interest in the fair and expeditious administration" of the laws governing charitable entities in New York, *cf. id.* at 444, particularly given that VDARE continues to solicit donations from residents of New York (and elsewhere).[12] Delayed resolution of OAG's investigation into the propriety of VDARE's various uses of its solicited funds risks harming the public interest. In light of the absence of any irreparable harm occasioned by the denial of a stay, and the harm to the public interest attendant to the entry of a stay, the Court should deny VDARE's application.

---

[12] *See* VDARE.com, https://vdare.com/donate.

**AA1024**

# CONCLUSION

This Court should deny a stay pending appeal.

Dated:  New York, New York
        February 22, 2023

                                        Respectfully submitted,

                                        LETITIA JAMES
                                          *Attorney General*
                                          *State of New York*
                                        Attorney for Respondent


                                By:  _____
                                        ANDREA W. TRENTO
                                        Assistant Solicitor General


                                        28 Liberty Street
                                        New York, NY 10005
                                        (212) 416-8656
ESTER MURDUKHAYEVA                      andrea.trento@ag.ny.gov
  *Deputy Solicitor General*
ANDREA W. TRENTO
  *Assistant Solicitor General*
      *of Counsel*

**AA1025**

# EXHIBIT 1

Case 1:22-cv-01884-FJS-CFH Document 35-13 filed 04/10/23 Page 98 of 64

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the
State of New York,

                               Petitioner,

          -against-

VDARE FOUNDATION, INC.,

                          Respondent.

Index No. _____

**AFFIRMATION OF GOOD FAITH AND IN SUPPORT OF THE ATTORNEY GENERAL'S ORDER TO SHOW CAUSE TO COMPEL COMPLIANCE WITH AN INVESTIGATIVE SUBPOENA**

-------------------------------------------------------------------x

YAEL FUCHS, an attorney duly admitted to the Bar of this State, affirms under penalties of perjury pursuant to Civil Practice Law and Rules § 2106 as follows:

1.      I am an Assistant Attorney General in the Office of Letitia James, Attorney General of the State of New York, who appears on behalf of the People of the State of New York in this special proceeding.

2.      I submit this Affirmation in support of the Office of the Attorney General's application by order to show cause seeking expedited relief in connection with an investigative subpoena *duces tecum* (the "Subpoena") issued by the Attorney General in connection with an investigation of Respondent VDARE Foundation, Inc. ("VDARE").

3.      I am familiar with the facts and circumstances set forth in this affirmation, which are based upon my personal knowledge and information contained in the files of the Office of the Attorney General ("OAG").

4.      As set forth below and in the accompanying Verified Petition and Memorandum of Law, in connection with a lawful law enforcement investigation, the Attorney General has issued an investigative subpoena and endeavored to resolve the issue of VDARE's compliance

with that subpoena and has been unable to reach a resolution. The OAG now seeks an order

pursuant to CPLR § 2308(b) to enforce its non-judicial subpoena without further delay.

5.      As set forth in greater detail in the accompanying Memorandum of Law, the

Attorney General is vested with expansive oversight authority of not-for-profit entities, their

representations to donors and potential donors, and their use of charitable assets under the New

York Not-for-Profit Corporation Law, the Estates, Powers and Trusts Law and the Executive

Law.

6.      Respondent VDARE is a not-for-profit corporation organized under the laws of

the State of New York. VDARE was previously known as the Lexington Research Institute,

Limited, and incorporated in New York under that name in 1999. A true and correct copy of

VDARE's Certificate of Incorporation is attached hereto as Exhibit A.

7.      VDARE's Certificate of Incorporation provides that:

        ***

        5. Notwithstanding any other provisions of these articles, the Corporation is organized
        exclusively for charitable, educational, and literary purposes and intends at all times to
        qualify as exempt from federal income tax under section 501(c)(3) of the United States
        Internal Revenue Code, as now in effect or as subsequently amended. Accordingly, the
        Corporation shall not be operated for pecuniary profit or financial gain, no part of the net
        earnings of the Corporation shall inure to the benefit of any private individual, no
        substantial part of the Corporation's activities shall consist of carrying on propaganda or
        otherwise attempting to influence legislation, and the Corporation shall not participate or
        intervene in any political campaign on behalf of (or in opposition to) any candidate for
        public office.

        6. The Corporation may pay reasonable compensation to any person for services rendered
        to the Corporation in furtherance of its lawful purposes.

Ex. A at 1.

8.      In 2000, VDARE, then still known as the Lexington Research Institute, Limited,

applied for recognition as a tax-exempt organization by the Internal Revenue Service (IRS). A

Case 1:22-cv-01884-PJS-Client Document35-413dited04/10/236 Page50 of 64

true and correct copy of VDARE's Form 1023 Application for Recognition of Exemption is attached hereto as Exhibit B.

9.      VDARE was recognized as tax-exempt (under I.R.C. section 501(c)(3)) by the IRS in or about May 2001.  A true and correct copy of an IRS confirmation letter addressed to the Lexington Research Institute Limited dated August 9, 2005 is attached hereto as Exhibit C.

10.      In 2009, VDARE registered as a charity with the Charities Bureau of the Office of the Attorney General, under both the Estates, Powers and Trusts Law ("EPTL") and under the Executive Law.  A true and correct copy of VDARE's CHAR 410 initial registration form is attached hereto as Exhibit D.

11.      VDARE filed its initial registration with the Charities Bureau in 2009, despite having begun operations in New York in 2000.  New York law requires that charities register with the Charities Bureau prior to any solicitation in New York, Exec. Law § 172, and within six months "after any property held by [a trustee] or any income therefrom is required to be applied to charitable purposes," EPTL § 8-1.4(d).

12.      In its CHAR 410, VDARE described its purpose as "creat[ing] and manag[ing] internet publications." Ex. D at 3.

13.      As a charity operating and soliciting in New York, VDARE is required to file annually a CHAR500 Registration Form.  The CHAR500 must be signed by two officers and asks for self-reporting regarding certain basic information, including the organization's contact information, the number and identity of board members, and information relating to fundraising.

14.      The CHAR 500 also requires that organizations file and certify a copy of their annual IRS Form 990.  According to the IRS, the Form 990 "is the IRS' primary tool for gathering information about tax-exempt organizations, educating organizations about tax law

Case 1:22-cv-01884-FJS-Ment Document354-13dec04/10/236Page51 of 64

requirements and promoting compliance. Organizations also use the Form 990 to share
information with the public about their programs." https://www.irs.gov/charities-non-
profits/form-990-resources-and-tools (last visited December 14, 2022).

15.     As part of its required filings with the IRS and the Charities Bureau, VDARE,
since its belated registration, files an IRS Form 990 and certifies to its accuracy each year.
According to VDARE's IRS Form 990, the organization's mission is to "Create and manage
internet publication."  True and correct copies of VDARE's Form 990 for 2018-2020 are
attached hereto as Exhibits E-G.

16.     As of the date of this Affirmation, VDARE has not filed its 2020 or 2021
CHAR500 Forms, which would include the IRS Form 990 as an attachment, and is delinquent in
its required annual registration with the Charities Bureau.

17.     VDARE reports on its Form 990 that its website is WWW.VDARE.COM.  Exs.
E-G.

18.     According to VDARE's Form 1023 Application filed with the IRS and the
Charities Bureau, Peter Brimelow ("Brimelow") is the "Director/CEO/Chairman" of VDARE.
Ex. B at 3.  Maggie Brimelow is listed as Secretary/Treasurer on VDARE's Form 1023
Application. *Id.*  Upon information and belief, Maggie Brimelow was Peter Brimelow's wife
prior to her death in 2004.

19.     For certain years, Lydia Brimelow is listed as "Secretary, Treasurer and
Publisher" of VDARE on VDARE's Char500 filed with the Charities Bureau.  Upon information
and belief, Lydia Brimelow is Peter Brimelow's current wife.  This relationship is not listed on
Schedule L or Schedule O of the 2020 IRS Form 990, as is required by law.  Lydia Brimelow is
listed as a director of VDARE in its IRS Form 990 for 2020, but not in other years.  John

**AA1030**

Case 1:22-cv-01384-FJS-CFH Document 35-13 Filed 04/10/23 Page 52 of 64

Brimelow is Peter Brimelow's brother and is listed as a director of VDARE in its Form 990 for 2018-2020. *See* Exs. E-G.

20.     As set forth in its IRS 990 for 2020, the most recent filing that is publicly available, VDARE's board and management for 2020 consisted entirely of members of the Brimelow family: Peter, Lydia, and John.  Ex. G.

21.     VDARE and its current and past board members are the subject of an ongoing investigation by the Attorney General concerning potential financial improprieties, including unlawful related party transactions between VDARE and affiliated entities, officers and board members, excessive compensation, private inurement, and violations of statutory and common law governance standards.

22.     In February 2020, VDARE was publicly reported to have bought a historic, 9,300-square foot castle in a West Virginia resort town for $1.4 million.  *See* Rick Steelhammer, Berkeley Springs Castle Becomes Conference Site for VDARE, an Organization to 'Keep America American,' Charleston Gazette-Mail (Mar. 7, 2020), available at https://www.wvgazettemail.com/news/berkeley-springs-castle-becomes-conference-site-for-vdare-an-organization-to-keep-america-american/article_170131e9-db7c-500f-8a57-91e1fcc1ad66.html (last visited December 14, 2022).

23.     In a February 2020 public announcement on VDARE.com, VDARE described the castle as a meeting space "where we can meet and share ideas without fear of deplatforming." *See* Lydia Brimelow, Lydia Brimelow: We Got the Keys to the Castle!, VDARE.COM (Feb. 26, 2020), https://vdare.com/articles/lydia-brimelow-we-got-the-keys-to-the-castle (last visited December 14, 2022).

24.     Months later, Brimelow continued to represent to donors that the castle was a necessity—stating in a solicitation that VDARE "had to buy the Berkeley Springs Castle." *See* "VDARE.com Editor Peter Brimelow: Please Give By Credit Card BEFORE MIDNIGHT— While You Still Can!", https://vdare.com/articles/vdare-com-editor-peter-brimelow-please-give-by-credit-card-before-midnight-while-you-still-can (last visited December 14, 2022).

25.     Upon information and belief, Peter Brimelow, Lydia Brimelow, and their three children moved into the Berkeley Springs Castle and have been using it as their primary family residence since March 2020.

26.     On VDARE.com, the Brimelows have posted photos of the family celebrating holidays at the castle such as the 4th of July (https://vdare.com/posts/the-brimelow-family-wishes-you-a-happy-independence-day (last visited December 14, 2022)), and Christmas Eve (https://vdare.com/articles/peter-brimelow-merry-christmas-from-vdare-com-f3d0cb33-af41-4d90-93b9-c82cd46c5950 (last visited December 14, 2022)).

27.     In a post dated December 4, 2020, a VDARE.com contributor reported visiting the castle and noted that "Peter and Lydia Brimelow have moved in and spend most of their time there with their [children]….". *See* https://vdare.com/radio-derb/castling-with-vdare-com-senate-visa-giveaway-covid-hypocrisy-and-students-cancel-black-etc (last visited December 14, 2022).

28.     Public filings indicate that, in December 2020, VDARE conveyed the entirety of the Berkeley Springs Castle property in two separate transactions to two West Virginia corporations that had been incorporated by Lydia Brimelow five months earlier.  VDARE conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a putative non-profit corporation. VDARE conveyed the remaining land, consisting of eight

AA1032

parcels, to BBB, LLC, a for-profit corporation. Transfer of charitable assets to a for-profit entity without fair consideration is a violation of both New York and federal law.  True and correct copies of these deeds are attached as Exhibit H and I.

29.     This transaction is not reported on the VDARE 2020 IRS Form 990, as required by law, nor was it submitted to the Charities Bureau for approval, as required by Sections 510 and 511 of the Not-for-Profit Corporation Law.

30.     According to records on file with the West Virginia Secretary of State, Lydia Brimelow incorporated BCF as a West Virginia domiciled nonprofit on July 21, 2020. A copy of the Business Organization Detail page for BCF from the West Virginia Secretary of State's website is attached as Exhibit J.

31.     BCF was recognized as a tax-exempt organization by the IRS by notice dated January 20, 2022.  A copy of BCF's tax exemption recognition notice is attached hereto as Exhibit K.

32.     Using the tagline "When nothing but a castle will do," BCF offers to rent the castle as an event space through its website. According to that website, BCF began taking event reservations in summer 2020.



Case 1:22-cv-01384-FJS-CFH Document 35-13 Filed 04/10/23 Page 55 of 64

https://www.berkeleyspringscastle.com/contact.html (last visited December 14, 2022).

33.  According to records on file with the West Virginia Secretary of State, Lydia

Brimelow incorporated BBB, LLC as a West Virginia domiciled for-profit corporation on July

21, 2020.  Lydia Brimelow is listed as BBB, LLC's organizer and manager.  The organization's

only listed business purpose is "Real Estate and Rental and Leasing—Real Estate—Lessors of

Real Estate." A copy of the Business Organization Detail page from the West Virginia Secretary

of state is attached as Exhibit L.

34.  Announcements posted to VDARE.com in October 2021 indicate that the castle's

"First Public Event" was an "Auction Preview Party" showcasing items from the castle that the

Brimelows were selling in a private auction, including swords, a riding helmet, and a butter

churn.  *See* "Come To Our First Public Event! Castle Auction: Saturday, October 16th" *at*

https://vdare.com/posts/come-to-our-first-public-event-castle-auction-saturday-october-16th

("VDARE.com bought the Berkeley Castle furnished, and we're retaining many of the beautiful

pieces for Castle use. But there are just so many we can't use them all! So, in partnership with

local auction house J Lawyer, we're offering the rest up to our friends and supporters.") (last

visited December 14, 2022) *and* "Downsizing For The Historical Berkeley Springs Castle" at

https://www.jlawyerauctions.com/auctions/detail/bw70268 (last visited December 14, 2022).

35.  Following the public reporting of the castle purchase, personnel in the Office of

the Attorney General reviewed VDARE's Form 990s and other publicly available documents.

The OAG identified several areas of concern which may constitute violations of VDARE's

bylaws and/or New York law.  For example, and without limitation:

a.  According to its IRS Form 990 for 2019, VDARE raised over $4.2 million

in contributions and grants in 2019, which is more than eight times its

publicly reported 2018 revenue and more than ten times its publicly

reported 2017 revenue. VDARE did not file a report by an independent

auditor for that year, as required for organizations soliciting in New York

with revenue of over $1,000,000. VDARE claimed an exemption from the

requirement on the grounds that it raised less than the requisite $25,000

from New York donors.

b.   According to VDARE's disclosures in Schedule J of the 990, VDARE

does not appear to have any process in place for determining Brimelow's

salary.

c.   According to VDARE's IRS Form 990 for 2019, Brimelow's reported

compensation for 2019 nearly doubled from 2018, to $345,364 — an

amount equivalent to nearly half of VDARE's total program service

budget for the year.

d.   According to Schedule L of VDARE's 990, rather than pay Brimelow

directly, VDARE pays Brimelow's salary through an independent

contractor, Happy Penguins LLC, which VDARE reports is owned by

Brimelow. Under this arrangement, Peter Brimelow, VDARE's chief

executive, is technically a Happy Penguins "leased employee" rather than

a VDARE employee.

e.   In 2019, VDARE paid Happy Penguins more than Peter Brimelow's

annual salary. Although Brimelow's reported salary for 2019 was

$345,364, VDARE also reported paying Happy Penguins LLC $411,003.

In 2019, VDARE also listed the Brimelows' residential home address in

Litchfield, Connecticut as its corporate address while reporting $36,142 in "office expenses" and $8,664 in "occupancy expenses" on its Form 990 — additional compensation to the Brimelows that was not properly reported. These financial arrangements may violate express conflict provisions in the N-PCL and VDARE's bylaws.

f.    Lydia Brimelow's position in the organization is inconsistently and incompletely reported. To the extent that she serves as an officer or director of VDARE, that family relationship, which should be disclosed, is not reported on VDARE's Form 990.

g.    The VDARE Form 990 for 2020 contains additional statements which raise significant issues about compliance with governing law and use of charitable assets. For example, in response to Form 990, Part VI, Line 11b: Form 990 Review Process Schedule O represents that "No review was or will be conducted." The IRS 990 at Section VI, question 12 represents that there is a conflict of interest policy (as required by New York Not-for-Profit Law) but the explanation of that policy is nowhere addressed on Schedule O, as required by the IRS. Schedule J, which requires disclosure of certain benefits to officers, leaves blank the question whether the officer receives a housing allowance or residence for personal use. Schedule L, which requires disclosures of transactions with interested persons, makes no mention either of Lydia Brimelow's salary from VDARE or of the transaction providing a residence for use by the Brimelows.

Case 1:22-cv-01884-EJS-GMH Document 35-13 Filed 04/10/23 Page 58 of 64

36.     In April 2020, Facebook suspended VDARE's Facebook account based on Facebook's determination that VDARE engaged in "coordinated inauthentic behavior" by creating a network of "fake accounts to create fictitious personas…drive traffic to off-platform sites, and evade enforcement." According to Facebook's analysis, VDARE's network consisted of "19 Pages, 15 Facebook accounts, and 1 Group" accounting for 207,700 followers. Facebook determined that VDARE's network spent "around $114,000" buying ads to further its inauthentic behavior.  If true, this could constitute a waste of charitable assets and breach of the Brimelows' fiduciary duties as VDARE officers.  VDARE sued Facebook, alleging defamation, when Facebook published a copy of its 2020 report, and VDARE attached a copy of the report to its federal complaint.  A true and correct copy of the April 2020 "Coordinated Inauthentic Behavior Report," as filed by VDARE, is attached as Exhibit M.

37.     On June 24, 2022, the Attorney General personally served a subpoena *duces tecum* on VDARE by delivery to VDARE's designated agent for service, the Secretary of State of New York, in compliance with CPLR 311 and N-PCL § 306.  A true and correct copy of the Subpoena is attached hereto as Exhibit N.

38.     On June 24, 2022, the Attorney General mailed a copy of the Subpoena, by U.S. Mail Certified Return Receipt to the address identified in VDARE's most recent annual filing with the Charities Bureau (276 Cacapon Road, Berkeley Springs, West Virginia 25411), together with a copy of the Affidavit of Service prepared by OAG Investigator Donald C. Anselment and a cover letter confirming the nature of the document. A true and correct copy of the Attorney General's June 24, 2022 letter is attached hereto as Exhibit O.

**AA1037**

Case 1:22-cv-01384-FJS-CFH Document 35-13 Filed 04/10/23 Page 59 of 64

<u>Efforts to Obtain Subpoena Compliance Since July 2022</u>

39.     VDARE responded to receipt of the Attorney General's Subpoena by immediately insisting that the Subpoena be withdrawn as unlawful:  on July 2, 2022, VDARE's then-counsel Frederick Kelly confirmed receipt of the Subpoena, demanded that the Subpoena be withdrawn in its entirety, and requested information regarding, *inter alia*, the subject matter of the investigation and the relevance of the documents sought in the Subpoena.  True and correct copies of Kelly's July 2, 2022 email and its attachments are attached hereto as Exhibit P.

40.     On July 18, 2022, counsel from the Attorney General's Office met telephonically with Kelly.  During that call, Kelly asked the OAG to provide information regarding the nature of the investigation and expressed concerns regarding certain Subpoena requests, including requests that he believed were overbroad or called for production of documents protected by the attorney-client privilege.  OAG counsel responded to Kelly's questions, with a reservation of rights, and identified concerns regarding: (1) the purchase and use of the castle; (2) benefits conferred upon the Brimelows; (3) whether the VDARE board is properly overseeing the finances of the organization; and (4) whether the organization is using charitable assets in accordance with its mission.  The OAG also stated that to the extent counsel believed that production would invade attorney-client privilege, the Subpoena did not seek privileged communications and expressly instructed counsel to withhold such documents and provide a privilege log.

41.     On July 20, 2022, Kelly sent a second letter to the OAG, by which VDARE renewed its request that the Subpoena be withdrawn and set forth individual objections to many of the Subpoena's individual requests on the grounds of overbreadth, vagueness, attorney-client

Case 1:22-cv-01384-FJS-CFH Document 35-41 Filed 04/10/23 Page 50 of 64

privilege, and that its requests sought the identities of VDARE readers, writers, and donors.   A

true and correct copy of VDARE's July 20, 2022 letter is attached hereto as Exhibit Q.

42.     On July 27, 2022, the Attorney General responded by email to the objections

raised in VDARE's July 20 letter.  With a reservation of rights, counsel for the OAG attempted

to address VDARE's concerns by clarifying individual Subpoena requests and agreeing that the

names of certain individuals, including VDARE contributors and volunteer supporters, could be

redacted from otherwise responsive records.  A true and correct copy of the OAG email dated

July 27, 2022 is attached hereto as Exhibit R.

43.     In August 2022, VDARE retained substitute counsel — attorney Andrew Frisch

— and indicated through that new counsel that it intended to comply with the Subpoena.  Frisch

contacted the OAG by phone and letter to identify himself as VDARE's new representative in

connection with the Subpoena response and he requested additional time to collect and review

potentially responsive material for production.  In a letter on September 19, 2022, Frisch wrote:

"I do not stand by my predecessor counsel's position that the Subpoena be withdrawn."  He

noted that there existed "a significant volume of electronically-stored and hard copy documents

that need to be reviewed" and he confirmed that he had prepared the first of what he expected

would be multiple rolling production deliveries.  He also confirmed that he had redacted certain

information in his first production delivery but had not "had ample time to fully evaluate bases

underlying the redactions."  A true and correct copy of Frisch's letter dated September 19, 2022

is attached hereto as Exhibit S.

44.     VDARE made its first production of responsive material to the OAG on

September 19, 2022, nearly two months after the Subpoena's originally stated deadline for

completion of all production.  The September 19 production contained 27 documents produced

without Bates numbers and bearing unmarked redactions.  No log was provided with the production to identify or explain how and why the documents had been redacted.

45.     The OAG requested a redaction log for VDARE's production immediately upon receiving the September 19 delivery and has repeated that request in the three months since.  In an email on September 30, 2022, the OAG expressly insisted that productions be delivered in the form called for by the Subpoena and that all redactions be accompanied by "a log identifying the Bates range for any pages on which redactions appear, the legal basis for those redaction, and a general description of the category of information being withheld."  The OAG's September 30 email explained that, without a redaction log, the Office had no means to "reliably identify what has been deleted from the material [VDARE was] producing and on what legal basis."  A true a correct copy of the OAG's September 30, 2022 email is attached as Exhibit T.

46.     In twelve weeks since its first delivery, VDARE has produced approximately 6,000 pages of material from its hard copy records that it identifies as responsive to the Subpoena.  It has redacted that material without offering any legal basis for individual redactions or any explanation of how otherwise responsive material has been identified and segregated for redaction.  The redactions are extensive, and they have been applied across almost every category of document produced, including VDARE board meeting minutes, VDARE bank statements, internal VDARE accounting ledgers, VDARE credit card statements, invoices sent to VDARE, financial records for the limited liability company (Happy Penguins LLC) from which VDARE has historically leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and Lydia Brimelow.  In one instance, VDARE appears to have redacted a magazine subscription renewal form addressed to Peter Brimelow that it also marked as Confidential.

Case 1:22-cv-01884-FJS-CFH Document 35-13 Filed 04/10/23 Page 52 of 64

47.     On October 31, 2022, Lydia Brimelow certified to the OAG that, with limited

exceptions, VDARE's production from its hard copy files was complete.  A true and correct

copy of Brimelow's October 31 certification is attached as Exhibit U.  As certified, VDARE's

hard copy production contains no responsive material from the following categories of record

called for by the Subpoena:  (i) solicitation materials sent by VDARE to potential contributors;

(ii) documents related to the setting or adjusting VDARE's officer compensation; (iii) documents

concerning past or future VDARE events located at the Berkeley Springs Castle property; (iv)

documents concerning Director and Officer liability insurance held by VDARE for the benefit of

its Board; (v) documents sufficient to demonstrate who controls VDARE's financial accounts;

and (vi) communications between VDARE and its accountants.

48.     On October 31, 2022, VDARE also identified 22 unique email accounts that

together contained approximately 40 gigabytes of potentially responsive electronically-stored

information.  VDARE counsel stated on October 31 that review of those accounts would be

completed on or before November 21, 2022.  A true and correct copy of the October 31, 2022

letter to the OAG from VDARE counsel is attached, without its attached list of email account

names, as Exhibit V.

49.     VDARE did not produce any material from its electronic files as promised on

November 21.  In letters dated November 21 and November 28, attached as Exhibits W and X,

VDARE counsel reported to the OAG that its email review was taking longer than expected.  In

its November 28 letter, VDARE counsel identified December 12, 2022 as a new deadline — set

without input or consent from the OAG — by which it would complete an email production.  No

such production was ever provided.

Case 1:22-cv-01384-FJS-CFH Document 35-13 Filed 04/10/23 Page 53 of 64

50.     The OAG has met with VDARE counsel, in person and by phone, on multiple

occasions in the months since VDARE made its first September 2022 production.  VDARE

counsel has assured the OAG throughout that he was working diligently to comply with the

Subpoena.  The OAG has expressed concern over production delay in each of its contacts with

VDARE counsel and has objected repeatedly to VDARE's continuing production of redacted

material without any identified explanation of or legal basis for redaction.

51.     On December 2, 2022, counsel for the OAG summarized its concerns with the

pace and scope of VDARE's production to date in a letter addressed to VDARE counsel.  A true

and correct copy of the December 2, 2022 letter is attached as Exhibit Y.

52.     As of the date of this filing, the Subpoena's deadline for production has been

extended no fewer than six times — most recently to December 12, 2022.  In total, these

adjournments extended the Subpoena's stated response deadline by approximately twenty weeks.

53.     As of the date of this filing, VDARE has not produced any material from the 22

individual VDARE email accounts that it identified on October 31 as containing potentially

responsive material.

54.     As of the date of this filing, VDARE has refused to produce any log identifying

the material in its production that it has redacted and the legal basis on which it is withholding

the redacted information.

55.     On December 12, 2022, the same date that VDARE counsel independently

selected for complete production of responsive VDARE email, VDARE filed a lawsuit in the

U.S. District Court for the Northern District of New York seeking to have the Attorney General's

investigative Subpoena declared unconstitutional.  A true and correct copy of VDARE's

December 12, 2022 Verified Complaint is attached as Exhibit Z.  The OAG believes that

VDARE's claims in that action are without merit and will seek to dismiss the complaint.

56.      In accordance with CPLR Rule 2217(b), I affirm that the Attorney General has

not previously requested the relief sought by this application.

Dated: New York, New York
           December 16, 2022

                                          LETITIA JAMES
                                          Attorney General of the State of New York

                                          By:  _____

                                          _____
                                          Yael Fuchs
                                          Assistant Attorney General
                                          28 Liberty Street
                                          New York, New York 10005
                                          (212) 416-8391
                                          yael.fuchs@ag.ny.gov

**EXHIBIT L**

FILED: APPELLATE DIVISION – 1ST DEPT 03/09/2023 10:12 AM

NYSCEF DOC. NO. 7

2023-00672

RECEIVED NYSCEF: 03/09/2023

## Supreme Court of the State of New York

## Appellate Division, First Judicial Department

Present – Hon.  Barbara R. Kapnick,                    Justice Presiding,
                Cynthia S. Kern
                Anil C. Singh
                Saliann Scarpulla
                John R. Higgitt,                        Justices.

| People of the State of New York, by Letitia James, Attorney General of the State of New York, | Motion No. | **2023-00691** |
| | Index No. | 453196/22 |
| | Case No. | 2023-00672 |

Petitioner-Respondent,

-against-

VDARE Foundation, Inc.,

Respondent-Appellant.

An appeal having been taken to this Court from an order of the Supreme Court, New York County, entered on or about January 23, 2023,

And respondent-appellant having moved to stay enforcement of the aforesaid order pending the hearing and determination of the appeal taken therefrom,

Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

It is ordered that the motion is denied. The interim relief granted by order of a Justice of this Court, dated February 08, 2023 is hereby vacated.

ENTERED: March 09, 2023

Susanna Molina Rojas
Clerk of the Court

**AA1045**

EXHIBIT M

Case 1:22-cv-01337-BKS-CFH Document 63-13 Filed 04/10/23 Page 97 of 14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,

                              Petitioner,

        - against -

VDARE FOUNDATION, INC.,

                              Respondent.

-------------------------------------------------------------------- x

Index No. 453196/2022

Motion Sequence No. 2
(VDARE's motion for dismissal
or, alternatively, a stay)

AFFIRMATION IN SUPPORT OF RESPONDENT'S ORDER TO SHOW CAUSE
TO DISMISS OR, ALTERNATIVELY, STAY THIS PROCEEDING PENDING
RESOLUTION OF THE DUPLICATIVE AND OVERLAPPING FEDERAL CASE

        Andrew J. Frisch, an attorney duly admitted to practice law in the State of New

York since 1985, affirms the following statements to be true under penalties of perjury:

Introduction

        1.      I am counsel to VDARE Foundation, Inc. ("VDARE"), a non-profit

foundation organized and existing under the laws of the State of New York with a principal place

of business in Berkeley Springs, West Virginia.  The undersigned was engaged by VDARE in

late August 2022 to comply with and otherwise respond to an investigative subpoena issued to

VDARE by the Attorney General of the State of New York ("OAG") on or about June 24, 2022.

This Affirmation is based on personal knowledge, documents attached as exhibits which are true

and accurate copies of the originals, and otherwise on information and belief as noted.

        2.      On December 12, 2022, VDARE filed an action in United States District

Court for the Northern District of New York against the OAG [*VDARE Foundation, Inc. v.*

Case 1:22-cv-01337-BJS-DRH Document 23-13 Filed 04/10/23 Page 2 of 14

*James*, 1:22-cv-01337 (FJS)], alleging, among other things, that the OAG's demands for certain disclosures in response to its subpoena (a) threaten VDARE's ability to conduct business; and (b) reveal the OAG's subpoena to be a retaliatory pretext aimed at interfering with VDARE's rights to freedom of speech and association guaranteed by the United States and New York Constitutions. VDARE's federal complaint seeks declaratory and injunctive relief. *See* VDARE's Complaint in United States District Court (the "Federal Complaint"), attached hereto as Exhibit A.

3.      On December 16, 2022, less than a week *after* December 12, 2022, when VDARE filed its Federal Complaint against the OAG (and simultaneously emailed a courtesy copy to the OAG in advance of formal service), the OAG commenced this special proceeding against VDARE, seeking to compel the very disclosures identified in VDARE's Federal Complaint that threaten its existence and further demonstrating that the OAG's arguments in support of its investigative subpoena are pretextual.

4.      It was not until December 22, 2022, that the OAG first notified VDARE that it had initiated this special proceeding, the day *after* the OAG (on December 21, 2022) requested and secured VDARE's consent to an extension of the OAG's deadline in federal court to respond to VDARE's Federal Complaint. In securing VDARE's consent to an extension of the OAG's deadline in federal court, the OAG did not disclose that it had filed this special proceeding the week before and was apparently awaiting this Court's issuance of an order to show cause, instead claiming: "Because of the holidays and a member of our team who has COVID, we would appreciate an extension until Jan 18 to respond to VDARE's complaint in the NDNY. Can you please confirm your consent?" *See* Email from the OAG to the undersigned,

2

Case 1:22-cv-01337-BJS Orkit Document 25-13 Filed 04/10/2336 Page 3 of 14

dated December 21, 2022, attached hereto as Exhibit B.

      5.    This affirmation is respectfully submitted in support of VDARE's

application, pursuant to CPLR 3211(a)(4), that this special proceeding be dismissed or,

alternatively, stayed until VDARE's pending federal action is resolved.

I.    *VDARE Sought Relief in United States District Court Only After the*
    *OAG's True Motive for Conducting this Investigation Became Apparent,*
    *And the OAG's Position Threatened VDARE's Ability to Conduct Business*

    *(A) VDARE's proposed middle ground and to meet and confer*

      6.    Between September and November 2022, VDARE's undersigned counsel

completed review of records maintained by VDARE electronically and in hard copy and

produced over 6,000 pages to the OAG responsive to its investigative subpoena.  Before

December 2022, VDARE's counsel had provided the OAG with a list of email custodians and was

in the process of completing compliance with the OAG's subpoena by identifying responsive

emails from a universe of 40 gigabytes (the equivalent of millions of pages).

      7.    While working towards completing compliance with the OAG's subpoena,

VDARE's counsel advised the OAG that disclosure of the identities of its employees and contractors

would violate constitutional guarantees of free speech and association.  The subject matter of

VDARE's principal activity - - commentary about immigration policy of the United States

disseminated to the public through its website at www.VDARE.com - - is controversial.  VDARE's

lawful speech has led to reputational and professional harm to people and entities associated with it.

In addition, contractors providing services essential to VDARE's survival have refused to continue to

do business with VDARE, including venues which cancelled contracts with VDARE to host

conferences, sometimes because of disagreement with VDARE's views, and sometimes because of

<div align="center">3</div>

Case 1:22-cv-01337-BJR Document 155-13 Filed 04/10/23 Page 5 of 14

fear of protests. These harms to VDARE have made it increasingly difficult for VDARE to find

alternatives to continue to stay in business. *See* Letter from the undersigned to the OAG, dated

September 26, 2022, attached hereto as Exhibit C; Letter from the undersigned to the OAG, dated

October 31, 2022, attached hereto as Exhibit D; Email from the undersigned to the OAG, dated

October 20, 2022, attached hereto as Exhibit E.

       8.     The OAG knows or should know that VDARE's controversial speech

exposes it to reprisals from those who disagree or fear protests from those who disagree. *See,*

*e.g.*, *"VDARE responds to conference cancellation at Cheyenne Mountain Resort,"* Aug. 15,

2017[1] ("Cheyenne Mountain Resort [in Colorado] will not be hosting the VDARE Foundation in

April of next year. We remain committed to respecting the privacy of guests at the resort.");

Kristine Phillips, The Washington Post, Jan 26, 2017 ("Tenaya Lodge, a resort on the border of

Yosemite National Park, canceled [VDARE's] booking after receiving complaints about the

organization's views.")[2]; *"Cancelled Tucson Conference Produces Five-Figure Settlement - -*

*VDARE.com To Announce New Venue Soon!"* Mar. 7, 2018.[3]

       9.     Likewise, multiple businesses providing services essential to VDARE's

continued operations have terminated their relationships with VDARE, including Mailchimp and

Constant Contact (providers of email marketing services), Paypal, Amazon, Google Ads, and

---

[1] Available at *https://www.kktv.com/content/news/Mayor-Suthers-responds-to-planned-VDARE-conference-in-Colorado-Springs-440537563.html*

[2] Available at *https://www.washingtonpost.com/news/post-nation/wp/2017/01/26/a-resort-canceled-a-white-nationalist-groups-first-ever-conference-because-of-its-views/*

[3] Available at *https://vdare.com/articles/cancelled-tucson-conference-produces-five-figure-settlement-vdare-com-to-announce-new-venue-soon*

many smaller businesses.[4]  VDARE created an entity called "Happy Penguins LLC" for the sole

purpose of paying VDARE's employees so that they could identify a non-controversial entity

(Happy Penguins) - - and not VDARE - - as their employer.  *See* VDARE's Internal Revenue

Form 990 for 2019[5] (identifying "Happy Penguins LLC / Peter Brimelow" (VDARE's founder)

as a service providing leased employees).

10.     While simultaneously working to comply with the OAG's subpoena and

producing documents responsive to the OAG's subpoena, VDARE's counsel provided the OAG

with precedent that established the constitutionally-protected interests.  Exhibit C (citing *NAACP*

*v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of

both public and private points of view, particularly controversial ones" and holding that an order

requiring association to produce membership list interfered with First Amendment freedom of

association); and *Evergreen Ass'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 100 (2d Dep't 2017)

(applying strict scrutiny where anti-abortion advocacy group served with the Attorney General's

investigatory subpoena alleged that subpoena compliance would "have a chilling effect on [the

group's] associations with its employees and potential clients" as well as at least one hospital);

*see also Rosenberger v. Rector & Visitors of the Univ. of Va. ,* 515 U.S. 819, 828 (1995)

("Discrimination against speech because of its message is presumed to be unconstitutional.");

---

[4]  *See https://vdare.com/posts/we-ve-been-purged-from-mail-chimp-vice-gloats-deplatforming-works-update-we-re-back; https://vdare.com/posts/emergency-message-to-vdare-com-readers-from-peter-brimelow; see also "Tourist Town Desperate to Reopen Faces Another Battle" infra.*

[5]  *Available at https://www.charitiesnys.com/RegistrySearch/getcontent?guid= {20D3F877-0000-CCBA-A2A6-DE59F92CA6EF}&orgid=41-37-83&title=IRS%20Annual%20R eturn&project=Charities.*

5

Case 1:22-cv-01337-EJS-DPB Document 25-13 Filed 04/10/23 Page 97 of 14

*Rosenblatt v. Baer,* 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.").

      11.    On October 15, 2022, VDARE requested that the OAG explain its purpose in seeking information about contractors in an effort "to narrow issues and move things along." Email from the undersigned to the OAG, dated October 15, 2022, attached hereto as Exhibit F. While the OAG declined to provide any such explanation, VDARE proposed a middle ground to the OAG that addressed the OAG's ostensibly legitimate investigative interest while protecting VDARE's concerns - - with reservation of the OAG's right to revisit the issue at a later date if necessary. VDARE proposed that it identify contractors who are related parties as defined by Article 715 of the New York Not-for-Profit Corporation Law who earn more than $10,000 annually; and would "consider identifying other employees or contractors involved in specific transactions with which your office might be concerned." Email of the undersigned to the OAG, dated October 20, 2022, attached hereto as Exhibit E ("To the extent you continue to have a problem with this protocol for this subset of vendors, we can revisit the issue as your work continues and see if we can resolve it later. I would like to make as robust a production as I can now and deal with this issue later, to the extent that my way forward for now proves not to be a permanent solution.").

      12.    The OAG rejected VDARE's proposed middle ground. The OAG invited VDARE to provide objections in writing to specific requests in the OAG's subpoena, giving the impression that the OAG was keeping an open mind about the issue. VDARE provided objections to specific requests by letter dated October 31, 2022, requesting an opportunity to meet and confer toward resolving the issue. *See* Letter of the undersigned to the OAG, dated Oct. 31, 2022, attached

AA1052
6 of 13

Case 1:22-cv-01337-BKS-DJS   Document 33-13   Filed 04/10/23   Page 98 of 14

hereto as Exhibit D). Even then, VDARE did not take a blanket approach to its continuing objections, but disclosed the identities of all of its employees as part of its continuing production, the identities of contractors who appeared to be related parties within the meaning of Article 715 of the New York Not for Profit Corporation Law (without regard to amount earned), as well as others whose associations with VDARE were apparently already publicly known.

13.     In the undersigned's letter to the OAG dated October 31, 2022 (Exhibit D), VDARE expressed concern to the OAG about its apparent disclosure of constitutionally protected information in another investigation. On October 11, 2022, members of the United States Congress wrote to United States Attorney General Merrick Garland, requesting investigation of apparently undue disclosures provided to or otherwise obtained by the OAG. On August, 26, 2022, Politico had published confidential information about donors to another conservative non-for-profit in the OAG's cross hairs which was reportedly leaked by the OAG.[6]

14.     Despite VDARE's completion of its review of records maintained electronically and in hard copy and attendant production of over 6,000 pages of documents, VDARE's continuing analysis of 40 gigabytes of emails, and its request to meet and confer on disclosure of the identifies of contractors, the OAG notified VDARE's counsel on December 2, 2022, that it required VDARE to complete production by December 12, 2022. Exhibit G. On December 12, 2022, as noted above, VDARE commenced a lawsuit in the Northern District of New York against the OAG. Exhibit A.

---

[6]  *See* https://www.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-letitia-james-stand-for-america.

Case 1:23-cv-01537-PKC-JW Document 25-13 Filed 04/10/23 Page 9 of 14

*(B)  The OAG rejected VDARE's offer to immediately address the OAG's
purported concern about VDARE's purchase and use of a property*

15.      The purported impetus for the OAG's investigation (as disclosed by the OAG

to VDARE's counsel) is VDARE's purchase in 2020 of a castle-styled property in Berkeley Springs,

West Virginia, to host conferences in order to eliminate the risk that VDARE's conferences could

only be conducted at the whim of independent venue owners.  *See* Rachel Olding, *"Tourist Town*

*Desperate to Reopen Faces Another Battle"* Daily Beast (May 29, 2020)[7] (noting that VDARE's

founder, Peter Brimelow, "said they plan to use the castle for meetings and as a studio - - handy

considering at least three hotels have canceled conference contracts on VDARE after learning of

the group's views.").

16.      After VDARE purchased the castle, a cottage on the castle's grounds in

which the Brimelows intended to live was not yet habitable so the Brimelows (Peter and Lydia

Brimelow and their three young children) moved from their home in Connecticut and lived in the

castle for a period of months until the cottage was ready for them.  Among documents produced to

the OAG as part of the 6,000 pages (and separately in undersigned's email to the OAG) is a lease

agreement establishing that the Brimelows paid rent to live in the cottage beginning in April 2021.

*See* Lease Agreement, attached hereto as Exhibit H.  Upon locating and producing the Brimelows'

lease agreement for the cottage to the OAG, the undersigned proposed a meeting with the OAG to

begin addressing the OAG's professed concerns about VDARE's purchase of the castle.  The OAG

rejected that invitation, expressly deferring even an initial discussion about the castle until after

VDARE produced all documents deemed by the OAG to be responsive to its subpoena.

_____

[7]  Available at *https://www.thedailybeast.com/berkeley-springs-west-virginia-freaks-out-
after-vdare-founder-buys-its-castle.*

8

**AA1054**
8 of 13

Case 1:22-cv-01384-FJS-CFH  Document 35-43  Filed 04/10/23  Page 10 of 14

*(C) Additional concerns expressed by the OAG are
pretextual and unfairly insinuate malfeasance*

17.    The OAG has authority to inquire and request documents from charities

registered in New York State, but it may not seek to supercede a previously-filed federal case with

unfair insinuations of malfeasance nor by demanding constitutionally-protected information far

afield from legitimate oversight.

18.    A few examples are illustrative.  The OAG notes in support of its motion that

Lydia Brimelow is identified on filings as VDARE's "Secretary, Treasurer and Publisher," but not

identified as Peter Brimelow's wife on VDARE's Internal Revenue Service Form 990.  AAG Fuchs

Affirmation [NYSCEF Doc. 4] at 19.  Peter and Lydia Brimelow, however, are publicly known to be

married and, on information and belief, file their income tax returns jointly as husband and wife with

the same Internal Revenue Service with which VDARE files Form 990.  The OAG asserts no

connection between this purported misstep in completing an IRS form and the identities of

VDARE's contractors.

19.    Similarly, the OAG insinuates that Peter Brimelow's compensation

reported in from VDARE's 2019 IRS Form 990 was atypically high [AAG Fuchs Affirmation at 9],

but conveniently omits that VDARE's total contributions for 2019 were $4,259,309 [VDARE's

Form CHAR500 for 2019, attached hereto as Exhibit I][8], a far substantially greater amount than in

other years.  Likewise, the OAG insinuates malfeasance from an auction of furnishings from the

castle [AAG Fuchs Affirmation at 8], but, on information and belief, the entirety of *de minimis*

proceeds from the auction went for VDARE's benefit.  None of this innuendo from the OAG

---

[8]  Available at *https://www.charitiesnys.com/RegistrySearch/getcontent?guid=
{30D3F877-0000-CB55-8F8C-8ED446FA3F08}&orgid=41-37-83&title=Annual%20Filing%20
for%20Charitable%20Organizations&project=Charities*

**AA1055**

justifies its demand for the identities of contractors and, instead, demonstrates that the OAG's investigation is pretextual.

### (D) The OAG's complaints about inconsistencies in redactions ignore that the OAG encouraged a rolling production

20.     In the OAG's letter of December 2, 2022, demanding that VDARE complete its production and identify all contractors without redactions by December 12, 2022, the OAG complained that VDARE had inconsistently applied redactions, which had not been accompanied by a log identifying the bases for the redactions.  But the OAG had agreed to "a rolling production" [Email from the OAG to the undersigned, dated August 23, 2022, attached hereto as Exhibit J], which permitted VDARE to act in good faith and reassess the need for redactions as its review continued.  *See, e.g.*, Letter from the undersigned to the OAG, dated September 19, 2022, attached hereto as Exhibit K ("As to redactions in the documents produced today, I have not had ample time fully to evaluate bases underlying the reactions . . . I have opted instead to produce an installment of documents today and will circle back on the redactions once my evaluations are complete."); Exhibit E ("These issues . . . are not present for every vendor, so I am trying to identify precisely which vendors present a problem.").

### (v) The OAG faulted VDARE for attempting to meet its own ambitious deadlines despite knowing that VDARE is a mom-and-pop operation represented by a solo practitioner

21.     As of December 2, 2022, when the OAG declined VDARE's proposal that the parties meet and confer in response to VDARE's letter of October 31, 2022, and, instead, demanded that production be completed within ten days, all that remained was resolution of VDARE's objection to disclosure of contractors' identities and production of emails responsive to the subpoena (and attendant redactions of contractors' identities).  Though the OAG's motion infers undue delay in VDARE's production, the OAG is fully aware that VDARE "is literally a mom-an-

pop operation, with an actual mom who home schools three children, represented by a solo practitioner with no staff," who reviewed all VDARE records himself to determine responsiveness. Email from the undersigned to the OAG, dated September 30, 2022, attached hereto as Exhibit L. VDARE's legitimate efforts to protect its contractors and business interests by redacting identities of contractors was and remains labor-intensive and time-consuming, as VDARE reported to the OAG. Letter from the undersigned to the OAG, dated Oct. 31, 2022, attached hereto as Exhibit D ("The identities of VDARE's donors, content providers, and vendors who provide services to VDARE in its locality or are otherwise indispensable to its work are inextricably intertwined with some of its financial records. For example, some of these entities are identified in bank statements in lists of monthly transactions and associated copies of checks. The work to provide such financial records with redactions is labor-intensive and time-consuming and is ongoing."). Meanwhile, as to the OAG's request for a log of redactions and their bases, the extent of redactions of identities of contractors was significant, favoring one log of redactions after production was complete. Letter from the undersigned to the OAG, dated Nov. 21, 2022, attached hereto as Exhibit M.

22. The undersigned set ambitious deadlines in a good faith effort to show diligence and compliance and, as of December 2, 2022, had completed review and produced 6,000 pages of VDARE's records maintained electronically and in hard copy. Completion of review of emails was in sight when the OAG, on December 2, 2022, unreasonably demanded that VDARE complete all steps necessary for compliance within ten days, apparently requiring that it either disclose the identities of all contractors without redactions or provide a full list of all such redactions from the 6,000 pages and responsive emails, and thereafter moved to compel compliance without meeting and conferring as requested by the undersigned on October 31, 2022, as required by the Court's local rules - - notwithstanding VDARE's previously filed Federal Complaint.

11

Case 1:22-cv-01884-FJS-CFH Document 35-43 Filed 04/10/23 Page 13 of 14

*II*     *Issues Raised by the OAG in this Special Proceeding Duplicate and Overlap Issues Raised by VDARE's First-filed Federal Complaint Against the OAG*

23.     VDARE sought relief in federal court only after the OAG's approach to its subpoena threatened VDARE's ability to conduct business and revealed that the OAG is using its subpoena power as a pretext. VDARE's Federal Complaint is based on many of the same underlying issues raised by the OAG's subsequent special proceeding in this Court.

24.     Thus, VDARE's Federal Complaint (Exhibit A), among other things that duplicate and overlap with this special proceeding, (a) alleges that the OAG unreasonably demands disclosure of identities of contractors indispensable to VDARE's work without any apparent legitimate investigatory purpose; (b) alleges settled principles of constitutional law cited by VDARE to the OAG in redacting identities of contractors; (c) alleges the OAG's demand on December 2, 2022, that VDARE complete its production without redactions by December 12, 2022, and without the meet-and-confer proposed by VDARE's counsel on October 31, 2022; and (d) alleges VDARE's concern about the OAG's leaking of confidential information in another matter.

25.     As noted above, undersigned counsel consented to the OAG's request for an extension of time for the OAG to respond to VDARE's Federal Complaint, which request did not disclose that the OAG had initiated this special proceeding. As of the date of this filing, the OAG's response to VDARE's federal complaint is due by January 18, 2023.

AA1058

26.     I affirm that the relief sought by VDARE in this application has not

previously been requested in this Court.

Dated: January 3, 2023

> _/s/ Andrew J. Frisch_
> Andrew J. Frisch
> The Law Offices of Andrew J. Frisch, PLLC
> 40 Fulton Street, 17th Floor
> New York, New York 10038
> (212) 285-8000
> _afrisch@andrewfrisch.com_
>
> _Attorneys for Respondent_

13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
  VDARE FOUNDATION, INC.,          :
                                       :
               Plaintiff,          :
                                       :    Civil Action No. 22-cv-1337 (FJS/CFH)
     - vs -                  :
                                       :
  LETITIA JAMES, in her official capacity as  :   **REPLY IN SUPPORT OF**
  Attorney General of the State of New York,  :   **PLAINTIFF'S MOTION FOR A**
                                       :   **PRELIMINARY INJUNCTION**
              Defendant.       :
                                       :
                                       :
--------------------------------------------------------x

AA1060

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION ................................ 1

    1.0      VDARE Will Succeed on its Claims and a Preliminary Injunction Should Issue .......... 1

    2.0      The State Court Decision Should Not Preclude Injunctive Relief .................................. 9

    3.0      Conclusion .................................................................................................................... 10

**AA1061**

# TABLE OF AUTHORITIES

## CASES

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
    57 F.4th 85 (2d Cir. 2023) ..................................................................9

*Agudath Israel v. Cuomo*,
    983 F.3d 620 (2d Cir. 2020) ...............................................................1

*Ams for Prosperity Found v Bonta*,
    141 S Ct. 2373 (2021) ....................................................................2, 6

*Arista Recs., LLC, v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ..........................................................2, 3, 9

*Brown v. Socialist Workers '74 Committee (Ohio)*,
    459 U.S. 87 (1982) ...........................................................................6

*Capasso v. Capasso*,
    119 A.D.2d 268 (1st Dept. 1986) .........................................................3

*Charette v. Town of Oyster Bay*,
    159 F.3d 749 (2d Cir. 1998) ...............................................................8

*Citibank, N.A. v. Citytrust*,
    756 F. 2d 273 (2d Cir. 1985) ...............................................................6

*Dow Jones & Co. v. Harrods Ltd.*,
    346 F.3d 357 (2d Cir. 2003) ..............................................................10

*Elrod v. Burns*,
    427 U.S. 347 (1976) ...........................................................................5

*Evergreen Ass'n, Inc. v. Schneiderman*,
    153 A.D.3d 87 (2d Dept. 2017) ...........................................................6

*Exxon Mobil Corp. v. Healey*,
    28 F.4th 383 (2d. Cir. 2022) .............................................................10

*F.T.C. v. Garvey*,
    383 F.3d 891 (9th Cir. 2004) ..............................................................9

*Fengler v. Numismatic Americana, Inc.*,
    832 F.2d 745 (2d Cir. 1987) ...............................................................8

*Hardison v. Alexander*,
    655 F.2d 1281 (D.C. Cir. 1981) .........................................................10

**AA1062**

*Hartford Courant Co., LLC v. Carroll,*
  986 F.3d 211 (2d Cir. 2021)...........................................................................9

*Kuczinski v. City of New York,*
  352 F. Supp. 3d 314 (S.D.N.Y. Jan. 18, 2019) ...........................................1

*Mitchum v. Foster,*
  407 U.S. 225 (1975)...................................................................................10

*Mullins v. City of New York,*
  307 Fed. Appx. 585 (2d Cir. 2009)..............................................................5

*N.Y. Progress & Prot. PAC v. Walsh,*
  733 F.3d 483 (2d Cir. 2013)......................................................................1, 9

*NAACP v. Alabama ex rel. Patterson,*
  357 U.S. 449 (1958).................................................................................2, 6

*Nken v. Holder,*
  556 U.S. 418 (2009)......................................................................................9

*Republic of Philippines v. New York Land Co.,*
  852 F.2d 33 (2d Cir. 1988)...........................................................................8

*Sony Music Entm't Inc. v. Doe,*
  326 F. Supp. 2d 556 (S.D.N.Y. Jul 26, 2004)..............................................3

*Tough Traveler, Ltd. v. Outbound Prods.,*
  60 F.3d 964 (2d Cir. 1995)...........................................................................6

*United States v. El Paso Natural Gas Co.,*
  376 U.S. 651 (1964)......................................................................................3

**STATUTES**

28 U.S.C. § 1746 .................................................................................................7

42 U.S.C. § 1983 ..........................................................................................1, 10

**RULES**

CPLR § 3019 .....................................................................................................10

CPLR § 402 .......................................................................................................10

CPLR § 407 .......................................................................................................10

Fed. R. Civ. P. 65..............................................................................................7

**AA1063**

**CONSTITUTIONAL PROVISIONS**

N.Y. Const. Art. I, Sec. 8................................................................................................1

U.S. Const. Amdt. 1.....................................................................................................1

U.S. Const. Amdt. 14...................................................................................................1

**AA1064**

**REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**

A narrow question is before this Court: Whether Defendant James can compel Plaintiff VDARE Foundation, Inc. ("VDARE"), a political media organization, to disclose its paid contributors and vendors, notwithstanding their First Amendment right to anonymity. The state court did not undertake its own analysis of this issue and the Attorney General of the State of New York failed to demonstrate in her Opposition to Plaintiff's Emergency Motion for a Preliminary Injunction (Doc. No. 34) that she is constitutionally permitted to obtain this information. The preliminary injunction should be granted, and Defendant should be precluded from enforcing her subpoena seeking this information.

### 1.0     VDARE Will Succeed on its Claims and a Preliminary Injunction Should Issue

In its Verified Complaint (Doc. No. 1), VDARE makes claim against Defendant James under 42 U.S.C. § 1983 (invoking U.S. Const. Amdts. 1 & 14) and N.Y. Const. Art. I, Sec. 8,[1] relative to VDARE's exercise of its rights to freedom of speech and association (Counts 2 & 3), with attendant claims that Defendant's subpoena should be declared in violation of the First Amendment (Count 1) and enjoined (Count 4) to the extent of that violation. VDARE has a strong likelihood of success on these claims. "Because the deprivation of First Amendment rights is an irreparable harm, in First Amendment cases 'the likelihood of success on the merits is the dominant, if not the dispositive, factor'" in granting a preliminary injunction. *Agudath Israel v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) (*quoting N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Thus, success under the First Amendment warrants imposition of the requested injunction.

---

[1] As noted in the Verified Complaint, the analysis of the state and federal claims is the same. Doc. No. 1 at ¶ 50, citing *Kuczinski v. City of New York,* 352 F. Supp. 3d 314, 321 (S.D.N.Y. Jan. 18, 2019).

**AA1065**

Defendant misconstrues the claims at issue, arguing that "VDARE's motion barely mentions its only legal claim—First Amendment retaliation—and never discusses its elements." Doc. No. 34 at 15. While Count 2 is for First Amendment retaliation, seeking damages (*see* Doc. No. 1, Prayer for Relief, at 16, ¶ ii), Count 4 is a broader, equitable claim, seeking to preclude enforcement of the subpoena (*see id.* at 17, ¶ iv), and incorporating all preceding paragraphs (*see* Doc. No. 1 at ¶ 51). The issue here is whether Defendant can compel VDARE to violate its contractors' right to anonymous speech, irrespective of whether Defendant does it for retaliatory purposes (though that certainly further demonstrates why the equities tip in VDARE's favor). Defendant cannot do so under the First Amendment, and Plaintiff will succeed in obtaining a permanent injunction on the issue.

Defendant undertakes no meaningful analysis of the First Amendment right to anonymous speech and association issue. Defendant's position is at odds with decades of well-settled precedent, from *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), to *Ams for Prosperity Found v Bonta*, 141 S Ct. 2373 (2021). All Defendant does is point to the state court decision, claiming that these arguments were "rejected". (Doc. No. 34 at 15). The state court undertook no independent analysis—instead, it copied and pasted from Defendant's memorandum to that tribunal. One need only look at page 8 of that decision (Doc. No. 35-08) to see how the state court copied, verbatim, Defendant's argument "To the extent anonymity is used to mask violations of the law, 'it is unprotected by the First Amendment.'" (quoting *Arista Recs., LLC, v. Doe 3,* 604 F.3d 110, 118 (2d Cir. 2010). *Compare* **Exhibit A,**[2] Defendant's Memorandum of Law at 16. In fact, nearly every word of the state court decision addressing the First Amendment issue is copied

---

[2] All exhibit references are to the exhibits attached to the Declaration of Cassidy Curran, filed herewith.

**verbatim** from Defendant's memorandum. A trial court should not "mechanically adopt[]" a party's submission, as they are "not the product of the workings of the [trial] judge's mind" and fail to provide "the insight of a disinterest mind". *United States v. El Paso Natural Gas Co*., 376 U.S. 651, 656-657 (1964). New York courts agree it is improper for a trial judge to make a "wholesale, verbatim adoption" of a party's submission. *Capasso v. Capasso*, 119 A.D.2d 268, 275 (1st Dept. 1986). And, the state court did not otherwise explain its reasoning at oral argument. (Doc. No. 35-7). Judicial plagiarism cannot show the state court actually rejected anything and such a repugnant act is entitled to no deference.

One need only **read** *Arista Recs.* to see that Defendant unethically misrepresented the holding of that case and that the state court should not have blindly copied Defendant's memorandum. *Arista Recs.* was a copyright infringement case where the Doe alleged infringer moved to quash a subpoena that would identify him. In assessing the motion, the District Court, as approved by the Second Circuit in *Arista Recs.*, used the standard laid out in *Sony Music Entm't Inc. v. Doe*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. Jul 26, 2004), setting forth the factors under which a subpoena may be quashed in the face of the First Amendment privilege of anonymity:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

604 F.3d at 119. While that standard references the "plaintiff", it is referring to and placing the burden on the party issuing the subpoena, which would be Defendant James. Neither in the state court nor here has Defendant referenced, let alone attempted, to satisfy her burden. She cannot.

First, Defendant issued an investigatory subpoena, not one issued in the course of pursuing a claim for actionable harm. She is engaged in a mere fishing expedition, with a pretext relating to VDARE's purchase of a building for uses consistent with its charitable mission (and which has

fully been substantiated)[3], but in actuality is retaliatory for VDARE's First Amendment-protected policy statements. The irony, of course, is that VDARE needed to purchase its own facility precisely because of the inability for other vendors to maintain their anonymity. But, Defendant identifies no actionable harm—only vague references to "violations of New York Law" (Doc. No. 34 at 2) *if confirmed. See also,* Fuchs Aff. (Doc. No. 35-1) at ¶¶ 35-36 (discussing "areas of concern which may constitution violations of VDARE's bylaws and/or New York law.")[4] Thus, Defendant fails to meet the first factor.

Second, the subpoena requests, to the extent they require deanonymization of contractors (*i.e.* contributors and vendors), are not specific to the purported potential violations of unspecified law. As outlined in the Fuchs Affidavit (Doc. No. 35-1 at ¶ 35), there is a) the absence of an independent auditor report in 2019, which has nothing to do with the identity of contractors (hereinafter "WHNTDWTIOC"); b) the absence of a process for determining Peter Brimelow's salary, WHNTDWTIOC; c) Mr. Brimelow's 2019 salary, WHNTDWTIOC; d) the payment of Mr. Brimelow's salary through Happy Penguins, LLC, WHNTDWTIOC; e) additional payments to Happy Penguins, WHNTDWTIOC; f) the reporting of the specific position of Lydia Brimelow, WHNTDWTIOC; and g) a conflict of interest policy and disclosures of transactions and benefits to the Brimelows, WHNTDWTIOC. And, Fuchs identifies concerns over ads purchased on Facebook, WHNTDWTIOC (*id.* at ¶ 36). Thus, Defendant fails to meet the second factor.

Similarly, as to the fourth factor,[5] Defendant has not identified her need for the

---

[3] *See, generally,* Verified Complaint, Doc. No. 1, and **Exhibit F**, Declaration of Lydia Brimelow.
[4] Defendant's memorandum misidentifies the relevant paragraphs as being 5 & 6.
[5] Defendant has not argued lack of alternate means (the third factor), but VDARE recognizes that it is, of course, best positioned to know who its anonymous contractors are. And, were VDARE to suggest alternate means, such would defeat the very purpose of maintaining anonymity. Thus, the third factor should not be given significant weight under these circumstances.

deanonymization of contractors with respect to the vague assertions of potential violations of law. While VDARE recognizes that Defendant is looking for potentially improper transactions with the Brimelows, a subpoena request to deanonymize all contractors is not tailored to the question. The Brimelows are not the anonymous contractors at issue. VDARE does not believe it has withheld any documents or redacted any information relating to the Brimelows that is within the purview of the subpoena. If the Court wishes to compare the redacted and unredacted documents *in camera* and under seal to confirm this, VDARE would comply, but the Court may otherwise rely on the fact that VDARE produced these documents with the assistance of counsel who, as officers of the Court, would ethically have been required to ensure the Brimelows' names and transactions relating to them were not redacted. Moreover, Defendant James has stated she does "*not* seek any information regarding the development or publication of VDARE's online content" (Doc. No. 12-1 at 8-9 (emphasis in original)), which eliminates her need to know the identity of anonymous contributors and vendors. Thus, as the issue is solely about the anonymity of non-interested persons, outside the scope of potential conflicts of interest, Defendant fails to meet the fourth factor.

Finally, the anonymous contractors have an expectation of privacy. Defendant incorrectly asserts that VDARE "has not submitted a single affidavit, document, or anything beyond bare allegations to support" its claim of irreparable harm. (Doc. No. 34 at 5). As the Court knows, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Defendant's citation to *Mullins v. City of New York*, 307 Fed. Appx. 585, 587 (2d Cir. 2009) is unavailing—in the event this Court does not issue an injunction, the First Amendment right to anonymous speech and

**AA1069**

association will be immediately lost.[6]  VDARE's position is comparable to *Patterson*, where "an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Patterson*, 357 U.S. at 461.  Where such is the case, it is "apparent that compelled disclosure" is "likely to affect adversely the ability" of VDARE to publish and attempt to persuade others of its mission and will certainly "dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Id.* at 462-463.  Imposing on "associational rights" "cannot be justified on the ground that the regime is narrowly tailored to investigating charitable wrongdoing." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2389 (2021).  Subpoenas which could have "a chilling effect on its associations with its employees and potential clients" by breaking anonymity are invalid. *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 100 (2d Dept. 2017).  *See also Brown v. Socialist Workers '74 Committee (Ohio)*, 459 U.S. 87, 96 (1982) ("Even individuals who receive disbursements for 'merely' commercial transactions may be deterred by the public enmity attending publicity, and those seeking to harass may disrupt commercial activities on the basis of expenditure information.  … Compelled disclosure of the names of such recipients of expenditures could therefore cripple a minor party's ability to operate effectively and thereby reduce the free circulation of ideas both within and without the political arena." (internal quotation marks omitted)).

---

[6] Defendant also claims that VDARE has delayed in seeking injunctive relief and that the request may be denied under *Citibank, N.A. v. Citytrust*, 756 F. 2d 273, 276 (2d Cir. 1985). This is not a requirement, especially where the delay is "explainable". *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995).  There has been no unreasonable delay—the Court is well aware that VDARE attempted to address the issue for months before filing suit and had hoped the state court would do its job, rather than merely be a stenographer for Defendant.

The loss of the First Amendment right to anonymity is fully substantiated by the Verified

Complaint, executed under penalty of perjury by Lydia Brimelow. (Doc. No. 1 at 18). In the

Verified Complaint, Mrs. Brimelow attests to the facts that:

> 10. Use of pejoratives to describe VDARE has led to significant reputational and professional harm for those associated with it. On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE's existence have opted to stop providing services. Venues which have agreed to host VDARE's conferences have faced pressure campaigns and threats. Such venues have sometimes canceled contracts with VDARE.

> 11. To protect its rights of speech and association, VDARE is vigilant about maintaining the privacy of those associated with it and does not disclose their identities unless required by law.

> 53. VDARE will suffer irreparable harm absent injunctive relief, including [enjoining] disclosure of identities of contractors, which disclosure cannot be undone.

(Doc. No. 1 at ¶¶ 10, 11 & 56). A verified complaint is tantamount to an affidavit. *See* 28 U.S.C.

§ 1746. The Federal Rules of Civil Procedure expressly contemplate a Verified Complaint being

sufficient, without separate affidavit, to substantiate the need for injunctive relief. *See, e.g.,* Fed.

R. Civ. P. 65(b)(1)(A). Defendant does not and cannot dispute that entities as well known as

Paypal and Amazon and many others have cut ties with VDARE over concern of public backlash

from its association with VDARE. It is also beyond dispute that VDARE acquired its property in

West Virginia precisely because venues bent to public pressure and canceled contracts to host

conferences. *See* "*VDARE Responds to Conference Cancellation at Cheyenne Mountain Resort*,"

KKTV (Aug. 15, 2017)("Cheyenne Mountain Resort [in Colorado] will not be hosting the VDARE

Foundation in April of next year. We remain committed to respecting the privacy of guests at the

resort.");[7] Kristine Phillips, "*Resort Cancels 'White Nationalist' Organization's First-Ever*

---

[7] Available at https://www.kktv.com/content/news/Mayor-Suthers-responds-to-planned-VDARE-conference-in-Colorado-Springs-440537563.html. *See* **Exhibit B**.

*Conference over the Group's Views*", WASHINGTON POST (Jan. 26, 2017)("Tenaya Lodge, a resort

on the border of Yosemite National Park, canceled [VDARE's] booking after receiving complaints

about the organization's views.");[8] Lydia Brimelow, "*Cancelled Tucson Conference Produces*

*Five-Figure Settlement—VDARE.com to Announce New Venue Soon!*" VDARE.com (Mar. 7,

2018).[9]   As recently as three months ago, the *Washington Post* published an article whose

comments evince abuse of VDARE's neighbors in West Virginia merely for expressing favorable

opinions of VDARE or its principals. Ellie Silverman, "*A 'Hate Castle' or Welcome Neighbor?*

*VDare Divides a West Virginia Town*", WASHINGTON POST (Jan. 3, 2023).[10]   A supplemental

declaration from Lydia Brimelow detailing the harms and Defendant's bad faith is filed herewith.

*See* **Exhibit F**.   Additionally, VDARE has procured sworn affidavits from writers (redacted for

filing) desiring their anonymity be maintained, and more may be forthcoming.  *See* **Exhibits G &**

**H**. Thus, VDARE has sufficiently demonstrated both irreparable harm and the contractors'

expectations of privacy.  To the extent there is a factual dispute, "there must be a hearing . . . and

appropriate findings of fact must be made.'" *Republic of Philippines v. New York Land Co*., 852

F.2d 33, 37 (2d Cir. 1988) (quoting *Fengler v. Numismatic Americana, Inc*., 832 F.2d 745, 747

(2d Cir. 1987) (alteration omitted). *See also Charette v. Town of Oyster Bay*, 159 F.3d 749, 755

(2d Cir. 1998) (indicating an evidentiary hearing is required if the facts are in dispute or have not

been clearly demonstrated, if the disputed facts are not "amenable to complete resolution on a

paper record[.]")[11]

---

[8]   Available   at   https://www.washingtonpost.com/news/post-nation/wp/2017/01/26/a-resort-canceled-a-white-nationalist-groups-first-ever-conference-because-of-its-views/. *See* **Exhibit C**.

[9]   Available   at   https://vdare.com/articles/cancelled-tucson-conference-produces-five-figure-settlement-vdare-com-to-announce-new-venue-soon. *See* **Exhibit D**.

[10]  Available at https://www.washingtonpost.com/dc-md-va/2023/01/03/vdare-berkeley-springs-castle-brimelows/. *See* **Exhibit E**.

[11]  Although the Court previously indicated it would decide the motion "based on the parties'

Simply put, Defendant has failed to show that the factors endorsed by *Arista Recs.* warrant judicial evisceration of the First Amendment right to anonymous speech and association here. Thus, VDARE is likely to succeed on the merits, in addition to having demonstrated irreparable harm. Additionally, as the balance-of-equities and public-interest factors "merge when the Government is the opposing party" (*Nken v. Holder*, 556 U.S. 418, 435 (2009)) and "securing First Amendment rights is in the public interest," (*N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)), VDARE has met all four preliminary injunction factors. *Accord Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021).

### 2.0 The State Court Decision Should Not Preclude Injunctive Relief

As Defendant must yield her demands to the First Amendment, she ran to a different court in order to attempt to obtain a decision from a tribunal acting as a stenographer that might have preclusive effect here. Defendant misstates VDARE's position on *res judicata* as merely "distrust[ing] the impartiality of the state court." (Doc. No. 34 at 13). Defendant could have engaged on the merits here, but purposely avoided the superior ability of a Federal court to adjudicate Federal constitutional rights, and then argued that this Court should abstain. Constitutional rights should not be the subject of gamesmanship.

As VDARE has previously pointed out, the Court should not reward a race to judgment under principles of comity.[12] (Doc. No. 30 at 12, citing *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 97 (2d Cir. 2023) (courts should ask "whether the proposed remedy is being used merely for procedural fencing or a race to *res judicata*"); *F.T.C. v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004) ("applying *res judicata* here would likely reward gamesmanship")). Nor does

---

submissions" (Order of Mar. 27, 2023, Doc. No. 32), Second Circuit caselaw would seem to potentially require an evidentiary hearing, and VDARE does not waive its right to such.
[12] Defendant has not sought judgment on the ground of *res judicata*.

Defendant persuasively address her unseemly "race to *res judicata*" rushing to initiate her proceeding in state court after VDARE initiated this federal action. *Dow Jones & Co. v. Harrods Ltd*., 346 F.3d 357, 359 (2d Cir. 2003); *see also Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981) (*res judicata* is designed "to prevent serial forum-shopping," not reward it). This gamesmanship makes cases such as *Exxon Mobil Corp. v. Healey*, 28 F.4th 383 (2d. Cir. 2022) inapt. Unlike in *Healy,* VDARE could not pursue "the same relief", *i.e.* an injunction, in the state court that it seeks here. 28 F.4th at 400. Defendant James was a "petitioner" in the state court special proceeding, and CPLR § 3019 appears to only authorizes a counterclaim against a "plaintiff"; VDARE could not automatically file a counterclaim per CPLR § 402. *See* Advisory Committee Notes to CPLR § 402 ("To insure that the summary nature of special proceedings is not interfered with by the joinder of claims and the interposition of counterclaims or cross-claims, the court is given broad severance powers. *See* new CPLR § 407.") Thus, this Court should not apply *res judicata* to avoid the injunction.

### 3.0    Conclusion

"[T]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights -- to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Mitchum v. Foster*, 407 U.S. 225, 242 (1975) (quotation omitted) (emphasis added). This Court must exercise its constitutional duty and ensure that the First Amendment right to anonymous speech and association is protected, irrespective of Defendant's gamesmanship in the state court. In light of the foregoing, the motion should be allowed and Defendant enjoined from enforcing her subpoena to require identification of anonymous contractors.

Dated: April 24, 2023.

/s/ Jay M. Wolman

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
*Office Address:*
43-10 Crescent Street, Ste. 1217
Long Island City, NY 11101
*Mailing Address:*
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel:    888-887-1776
ecf@randazza.com

Marc J. Randazza (*pro hac vice forthcoming*)
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel:    888-887-1776
ecf@randazza.com

*Attorneys for Plaintiff,*
*VDARE Foundation, Inc.*

**AA1075**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
  VDARE FOUNDATION, INC.,            :
                                  :
              Plaintiff,         :
                                  :    Civil Action No. 22-cv-1337 (FJS/CFH)
     - vs -                 :
                                  :
  LETITIA JAMES, in her official capacity as  :    **DECLARATION OF**
  Attorney General of the State of New York,  :    **CASSIDY S. CURRAN**
                                  :
              Defendant.     :
                                  :
                                  :
-----------------------------------------------------------x

       I, Cassidy S. Curran, hereby declare:

     1.     I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty. I have knowledge of the facts set forth herein, and if called as a witness, could and would testify thereto.

     2.     I am a Paralegal employed at the law firm of Randazza Legal Group, PLLC ("RLG"), counsel for Plaintiff in the above-captioned matter.

     3.     I submit this Declaration in support of Plaintiffs' Reply in Support of Plaintiff's Motion for a Preliminary Injunction ("Reply").

     4.     On April 20, 2023, at 12:21 P.M. Eastern Time, while at the Massachusetts office of RLG and using the Google Chrome browser on a MacBook Air laptop, I visited the New York NYSCEF web page at the URL: https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=XD_PLUS_mVacmNGwyDeFRX/sQlg==. Immediately after visiting this page, I used the Google Chrome print to PDF function. A true and correct copy of this document, which is the Memorandum of Law in Support of the Attorney General's Special Proceeding and Application to Compel Respondent VDARE Foundation, Inc. to Comply with an Investigatory

**AA1076**

Subpoena, in the matter of *James v. VDare Foundation,* Index No. 453196/2022 (N.Y. Sup. Ct. filed Dec. 16, 2022), is attached hereto as **Exhibit A**.

5.      On April 20, 2023, at 1:11 P.M. Eastern Time, while at the Massachusetts office of RLG and using the Google Chrome browser on a MacBook Air laptop, I visited the KKTV 11 News article entitled "VDARE responds to conference cancellation at Cheyenne Mountain Resort" at the URL: https://www.kktv.com/content/news/Mayor-Suthers-responds-to-planned-VDARE-conference-in-Colorado-Springs-440537563.html. Immediately after visiting this page, I used the Google Chrome print to PDF function. A true and correct copy of this document is attached hereto as **Exhibit B**.

6.      On April 20, 2023, at 1:15 P.M. Eastern Time, while at the Massachusetts office of RLG and using the Safari browser on a MacBook Air laptop, I visited The Washington Post article entitled "Resort cancels 'white nationalist' organization's first-ever conference over the group's views" at the URL: https://www.washingtonpost.com/news/post-nation/wp/2017/01/26/a-resort-canceled-a-white-nationalist-groups-first-ever-conference-because-of-its-views/. Immediately after visiting this page, I used the Safari browser print to PDF function. A true and correct copy of this document is attached hereto as **Exhibit C**.

7.      On April 20, 2023, at 1:16 P.M. Eastern Time, while at the Massachusetts office of RLG and using the Google Chrome browser on a MacBook Air laptop, I visited the VDARE article entitled "Cancelled Tucson Conference Produces Five-Figure Settlement – VDARE.com To Announce New Venue Soon!" at the URL: https://vdare.com/articles/cancelled-tucson-conference-produces-five-figure-settlement-vdare-com-to-announce-new-venue-soon. Immediately after visiting this page, I used the web page's print function. A true and correct copy of this document is attached hereto as **Exhibit D**.

**AA1077**

8. On April 20, 2023, at 1:32 P.M. Eastern Time, while at the Massachusetts office of RLG and using the Safari browser on a MacBook Air laptop, I visited The Washington Post article entitled "A 'hate castle' or welcome neighbor? VDare divides a West Virginia town." at the URL: https://www.washingtonpost.com/dc-md-va/2023/01/03/vdare-berkeley-springs-castle-brimelows/. Immediately after visiting this page, I used the Safari browser print to PDF function to save both the article and comments. A true and correct copy of this document is attached hereto as **Exhibit E**.

9. Attached hereto as **Exhibit F** is a true and correct copy of the supplemental declaration of Lydia Brimelow.

10. Attached hereto as **Exhibit G** is a true and correct copy, as redacted for filing, of the affidavit of the VDARE.com pseudonymous writer "VDARE Lady Reader".

11. Attached hereto as **Exhibit H** is a true and correct copy, as redacted for filing, of the affidavit of the VDARE.com pseudonymous writer "Federale".

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 24, 2023

_____
Cassidy S. Curran

# **Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

PEOPLE OF THE STATE OF NEW YORK, by                    Index No. _____
LETITIA JAMES, Attorney General of the
State of New York,

                                        Petitioner,

                -against-

VDARE FOUNDATION, INC.,

                                        Respondent.

---------------------------------------------------------------x

**Memorandum of Law in Support of the
Attorney General's Special Proceeding and Application to
Compel Respondent VDARE Foundation, Inc. to
<u>Comply with an Investigatory Subpoena</u>**

LETITIA JAMES
Attorney General of the
State of New York
28 Liberty Street
New York, NY 10005

James Sheehan
Yael Fuchs
Catherine Suvari
Assistant Attorneys General
    *of Counsel*

i

AA1080

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iii

PRELIMINARY STATEMENT ................................................................ 1

RELEVANT STATUTORY BACKGROUND .......................................... 3

BRIEF STATEMENT OF FACTS ............................................................. 5

    A.    The Attorney General Commenced an Investigation into VDARE's
           Operation and Subpoenaed VDARE Records in Relation to
           that Investigation. ......................................................................... 5

    B.    VDARE Insists that the OAG Must Withdraw the Subpoena and
           Fails to Produce. ............................................................................ 8

ARGUMENT ............................................................................................ 11

    A.    Standard of Review ....................................................................... 11

    B.    The Attorney General's Subpoena Seeks Documents and
           Information Directly Related to a Lawful Regulatory Review. ............... 13

    C.    The Subpoena Poses No Risk of Constitutional Harm. ........................ 14

CONCLUSION ......................................................................................... 17

AA1081

Case 1:22-cv-01837-JHS-OEH 3Document 99-13 Filed 04/24/23 Page 97 of 23

# TABLE OF AUTHORITIES

**CASES**                                                            **Page(s)**

*Abrams* v. *New York Found. for the Homeless*,
    190 A.D.2d 578 (1st Dep't 1993) ...............................................3, 15, 16

*Abrams* v. *Temple of the Lost Sheep, Inc.*,
    148 Misc. 2d 825 (Sup. Ct. N.Y. Cty. 1990) ...........................3, 5, 11

*Ams. for Prosperity Found.* v. *Bonta*,
    141 S. Ct. 2373 (2021)...................................................................17

*Anheuser-Busch, Inc.* v. *Abrams*,
    71 N.Y.2d 327 (1988) ...................................................................12

*Arista Recs., LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) .........................................................16

*Citizens United* v. *Schneiderman*,
    882 F.3d 374 (2d Cir. 2018)...........................................................3

*Condon* v. *Inter-Religious Found. for Community Org.*,
    51 A.D.3d 465 (1st Dep't 2008) ...................................................15

*Giardina* v. *James*,
    185 A.D.3d 451 (1st Dep't 2020) .................................................12

*Hogan* v. *Cuomo*,
    67 A.D.3d 1144 (3d Dep't 2009) .............................................12, 14

*In re McDonell*,
    195 Misc. 2d 277 (Sup. Ct. N.Y. Cty. 2002) ................................3

*Libre by Nexus, Inc.* v. *Underwood*,
    181 A.D.3d 488 (1st Dep't 2020) .................................................12

*Matter of Cuomo* v. *Dreamland Amusements Inc.*,
    22 Misc. 3d 1107 (A), 2009 WL 81139 (Sup. Ct. N.Y. Cty. 2009)...........................12

*Matter of Evergreen Assn., Inc.* v. *Schneiderman*,
    153 A.D.3d 87 (2d Dep't 2017)....................................................16

*Matter of La Belle Creole Int'l, S.A.* v. *Attorney-General of the State of N.Y.*,
    10 N.Y.2d 192, 196 (1961) ...........................................................12

*Mountain View Coach Lines, Inc.* v. *Storms*,
    102 A.D.2d 663 (2d Dep't 1984) ..................................................16

**AA1082**

*New York* v. *Trump Org.*,
No. 451685/2020, 2022 WL 489625 (Sup. Ct. N.Y. Cty. Feb. 17, 2022) ..............................12

*Roemer* v. *Cuomo*,
67 A.D.3d 1169 (3rd Dep't 2009)..........................................................................................12

*Ryan* v. *Lefkowitz*,
18 N.Y.2d 977 (1966) ........................................................................................................11–12

*Schneiderman* v. *Tierney*,
No. 451489/2014, 2015 WL 2378983 (Sup. Ct. N.Y. Cty. May 18, 2015)...........................3-5

*Spitzer* v. *Lev*,
No. 400989/2002, 2003 WL 21649444 (Sup. Ct. N.Y. Cty. June 5, 2003)...............................3

STATE STATUTES

CPLR
§ 2308......................................................................................................................................1, 11

Estates, Powers and Trusts Law
Article 7-A...............................................................................................................................4, 14
Article 8 .......................................................................................................................................13
§ 8-1.1 *et. seq.*.................................................................................................... *passim*

Executive Law
§ 63(12).....................................................................................................................................4, 11
§ 172-d..........................................................................................................................................14
§ 175.........................................................................................................................................4, 11

Not for Profit Corporation Law (N-PCL)
§ 112........................................................................................................................................4, 11
§§ 202, 204, 205............................................................................................................................13
§§ 509, 510, 511, 511-a............................................................................................................6, 13
§ 515.............................................................................................................................................13
§ 519.............................................................................................................................................13
§ 520.............................................................................................................................................13
§§ 715, 715-a................................................................................................................................13

AA1083
4 of 22

Case 1:22-cv-01837-JLS-JJM Document 39-13 Filed 04/24/23 Page 57 of 23

Attorney General Letitia James, on behalf of the People of the State of New York, submits this memorandum of law, along with the accompanying Order to Show Cause, Verified Petition dated December 16, 2022, and Affirmation of Yael Fuchs in Support of Order to Show Cause dated December 16, 2022 ("Fuchs Aff."), together with all exhibits thereto, in support of this special proceeding and her application for a motion to compel and such other relief as the Court deems just, proper, and appropriate under CPLR § 2308.

## PRELIMINARY STATEMENT

The VDARE Foundation, Inc., is a New York not-for-profit charitable corporation registered with the Charities Bureau of the New York Attorney General's Office (OAG). As a New York charitable corporation, its governance must comply with the New York Not-for-Profit Corporation Law; its management of charitable assets must comply with the New York Estates, Powers and Trusts Law; and it must file timely, complete and accurate financial and other disclosures pursuant to the Executive Law. Based on a preliminary investigation, the OAG has reason to believe VDARE has violated each of those requirements.

In 2020, public reporting indicated that VDARE purchased a medieval-style castle that its Chairman and Director Peter Brimelow now uses as a personal residence with his wife (also a director) and family. Following a review of VDARE's public filings and other public material, the Attorney General began investigating VDARE and its leadership concerning misuse of charitable assets, unlawful related-party transactions, unauthorized transfer of charitable assets to for-profit entities (apparently controlled by the Brimelows), and inaccurate filings with the Charities Bureau. Such conduct, if confirmed, would constitute serious violations of New York law.

1

Case 1:22-cv-01337-FJS-CFH   Document 39-13   Filed 04/24/23   Page 7 of 23

As part of its investigation, the Attorney General served VDARE with a subpoena *duces tecum* dated June 23, 2022 (the "Subpoena"). Since then, VDARE has engaged in a series of delaying tactics and obfuscation. Despite several negotiated extensions, VDARE has produced only a fraction of the responsive documents in its possession. Of the documents produced, the majority are redacted beyond comprehension, and VDARE has refused to produce a redaction log justifying those redactions. VDARE has redacted its own board meeting minutes, bank statements, accounting ledgers, and even financial records for Brimelow's privately held company that has received tens of thousands of dollars in unexplained payments from VDARE. And VDARE has yet to review gigabytes of other documents, let alone prepare them for production. When confronted about this delay and given a promised date certain of December 12, 2022, to comply—nearly six months after the Subpoena's issuance—VDARE on that date opted instead to bring a frivolous lawsuit in federal court. *See VDARE Foundation, Inc. v. James*, No. 22-cv-1337 (FJS/CFH) (N.D.N.Y.).

The OAG now seeks judicial supervision to compel compliance with its lawfully issued subpoena. New York law vests the OAG with broad authority to oversee not-for-profit entities and their fiduciaries, and there is no question that VDARE is subject to the OAG's oversight. The delays and gaps in document production have prejudiced the OAG's ability to conduct a timely investigation of VDARE's compliance, and VDARE's extensive redactions have made it impossible for the OAG to confirm or deny its suspicions that VDARE and its fiduciaries have repeatedly violated the law. As set forth below, in light of the OAG's well-established authority to investigate unlawful activity by New York non-profit organizations and because VDARE's objections are unsupported by any showing of actual or likely harm, the OAG is entitled to an order compelling VDARE to comply with the Subpoena.

Case 1:22-cv-01837-JLS-JGH 3 Document 39-13 Filed 04/24/23 Page 7 of 23

## RELEVANT STATUTORY BACKGROUND

Not-for-profit and charitable organizations do not have shareholders or owners to whom they are accountable:  the Attorney General is the primary law enforcement officer in the State vested with broad discretion to oversee such entities, to enforce compliance with the law, to protect the public trust, to ensure that donations and property held for charitable purposes are being properly used for their intended beneficiaries, and to prevent waste and fraud.  *See Abrams* v. *Found for the Homeless*, 190 A.D.2d 578 (1st Dep't 1993); *Schneiderman* v. *Tierney*, No. 451489/2014, 2015 WL 2378983, at *2 (Sup. Ct. N.Y. Cty. May 18, 2015); *Abrams* v. *Temple of the Lost Sheep, Inc*., 148 Misc. 2d 825, 828–29 (Sup. Ct. N.Y. Cty. 1990); *Spitzer* v. *Lev*, No. 400989/2002, 2003 WL 21649444, at *3 (Sup. Ct. N.Y. Cty. June 5, 2003).  Under New York law, the Attorney General is responsible for ensuring that entities like VDARE are not misused and for protecting "the public interest in charitable property." *See Tierney*, 2015 WL 2378983, at *3.  She safeguards that public interest through investigations and enforcement actions to prevent, among other things, fraud and misconduct by not-for-profit charitable organizations. *See In re McDonell*, 195 Misc. 2d 277, 278-79 (Sup. Ct. N.Y. Cty. 2002) ("The State Legislature has given the Attorney General broad supervisory and oversight responsibilities over charitable assets and their fiduciaries, as enumerated in the Not-For-Profit Corporation Law, the EPTL and the Executive Law."); *Citizens United* v. *Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018) (outlining New York's regulatory regime for non-profits and recognizing the "important government interests at stake" in OAG regulation of New York's non-profit sector, including "preventing fraud and self-dealing in charities").

The Attorney General's statutory oversight mandate is expansive: the Not-for-Profit Corporation Law assigns the OAG responsibility for the supervision of not-for-profit

3

**AA1086**

Case 1:22-cv-01837-JLS-JEH Document 39-13 Filed 04/24/23 Page 97 of 23

corporations and grants the OAG broad investigatory powers in furtherance of that authority.
*See Tierney*, 2015 WL 2378983, at *2–3. Under the Estates, Powers and Trusts Law, the
Attorney General "may investigate transactions and relationships of trustees for the purpose of
determining whether or not property held for charitable purposes has been and is being properly
administered" and may take such steps as the OAG deems "relevant to the inquiry." EPTL §
8-1.4(i). The Attorney General also has the authority to subpoena both the subject of an
investigation and any independent entities or persons that may have documents and information
relevant to her review. *See, e.g.*, EPTL § 8-1.4(i) ("The attorney general… [is] empowered to
subpoena any trustee, agent, fiduciary, beneficiary, institution, association or corporation *or
other witness*, examine any such witness under oath and, for this purpose, administer the
necessary oaths, and require the production of any books or papers which they deem relevant to
the inquiry." (emphasis added)); N-PCL § 112(b)(6) (the Attorney General "may take proof and
issue subpoenas in accordance with the civil practice law and rules" in connection with
investigations of potential misconduct giving rise to the remedies set forth in Not-for-Profit
Corporation Law § 112(a)); *Tierney*, 2015 WL 2378983, at *3. Executive Law section 63(12)
similarly authorizes the Attorney General to take proof and make a determination of relevant
facts through the issuance of subpoenas in accordance with the civil practice law and rules
during an investigation of potential repeated fraudulent or illegal acts. *See also* Exec. L. § 175
(authorizing the Attorney General to "take proof, issue subpoenas and administer oaths" in
connection with investigations of potential misconduct in violation of Article 7-A of the
Executive Law, which concerns the solicitation and collection of funds for charitable purposes.).
These standards make clear that the Attorney General has a right to conduct investigations to
determine whether charitable assets are being used properly for the benefit of intended

Case 1:22-cv-01337-JLS-JJM Document 35-1 Filed 04/24/23 Page 10 of 23

beneficiaries. *Temple of the Lost Sheep, Inc.*, 148 Misc 2d at 828–29; *Tierney*, 2015 WL

2378983, at \*2–3. A subpoena issued by the Attorney General in that context is presumptively

valid and, to challenge the subpoena, a challenging party "has the burden of proof to establish"

its invalidity. *Tierney*, 2015 WL 2378983, at \*3.

## BRIEF STATEMENT OF FACTS

### A. The Attorney General Commenced an Investigation into VDARE's Operation and Subpoenaed VDARE Records in Relation to that Investigation.

VDARE is a New York charitable not-for-profit corporation that incorporated in New

York in 1999. Fuchs Aff. ¶ 6. In 2000, VDARE, then known by its previous name, the

Lexington Research Institute, Limited, applied for and received recognition of its tax-exempt

status from the IRS as a 501(c)(3) charitable entity. *Id*. ¶¶ 8, 9. VDARE did not register with

the Attorney General's office (as required by New York law) until 2009. *Id*. ¶¶ 10, 11.

In its application for federal tax-exempt status, VDARE stated its plan to operate from

offices in New York and listed two of its four directors at addresses in New York City. *Id*. ¶ 8.

VDARE described its "primary purpose" as "creating a publication web page and magazine,"

with editorial content focusing on "both foreign and domestic policy issues." *Id*. VDARE failed

to register with the Attorney General until 2009, nine years after its incorporation. In its initial

filing, VDARE described its purpose as "creat[ing] and manag[ing] internet publications." *Id*. ¶

12.

In 2019, VDARE reported a six-fold increase in revenue, from $700,000 in 2018 to

approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-

advised fund. *See id.* at Exs. E and F. In early 2020, VDARE spent $1.4 million of these newly

received funds on the purchase of the Berkeley Springs Castle, a medieval-style castle located in

West Virginia. *Id.* ¶¶ 20, 22. Public postings by VDARE Chairman Peter Brimelow and others

indicate that he and his family have used the castle as their primary residence since at least March 2020:   Brimelow and his wife have posted photos of the family celebrating 4th of July and Christmas Eve holidays at the castle, and a VDARE website contributor reported in December 2020 that "Peter and Lydia Brimelow have moved in and spend most of their time [in the castle]…." *Id.* ¶¶ 25-27.

During this same period, VDARE also substantially increased payments to Brimelow and to third-party, for-profit companies he controls:  in 2019, Brimelow's reported salary more than doubled and comprised roughly one third of VDARE's operating expenditures. *Id.* at Ex. F. VDARE separately reported spending tens of thousands of dollars on "office expenses" and "office occupancy" in 2019 as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based (like VDARE) at Brimelow's residential home address. *Id.*

In December 2020, VDARE conveyed the entirety of the Berkeley Springs Castle property—bought with charitable funds—to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a VDARE director, five months earlier. VDARE conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a putative non-profit corporation. And it conveyed the remaining land, consisting of eight parcels, to BBB, LLC, a for-profit corporation. *Id.* ¶ 28.  These transactions by a New York charitable not-for-profit require submission of a petition by VDARE for review and approval by the Attorney General or the Supreme Court under Sections 510, 511, or 511-a of the Not-for-Profit Corporation Law.  Each transaction also would require, under Section 509 of the N-PCL, approval by disinterested members of the VDARE Board of Directors.  Because the Brimelows were together two of VDARE's three directors according to VDARE's 2020 Form 990 (the third

6

being Peter Brimelow's brother), no approval by disinterested directors could possibly have been granted.

Each of the castle and compensation transactions is also a "related-party transaction" under Section 715 of the Not-For-Profit Corporation Law that requires review by disinterested board members to ensure fair consideration and examination of alternatives, contemporaneous record-keeping, and proper disclosure on Schedule L of the IRS 990.  To the extent that the payments to Brimelow or to his related entities constitute "private inurement," or an excess benefit disclosable on VDARE's IRS 990 return for 2019, and Brimelow could be required to pay a significant excise tax.  *See* Internal Revenue Service Filing Information, Intermediate Sanctions - Excise Taxes, *at* https://www.irs.gov/charities-non-profits/charitable-organizations/intermediate-sanctions-excise-taxes (last visited Dec. 15, 2022).

These transactions also raise serious concerns about whether VDARE's board is fulfilling its fiduciary duties under New York law to oversee VDARE's finances, the implementation of its conflict-of-interest policy, and Brimelow's actions as a director, officer and chief manager of the organization, as well as the board's independence from Brimelow.  As of November 2020, according to VDARE's Form 990, VDARE's reported board consisted of four people—and three of them were Brimelows. A review of VDARE's Form 990s and other publicly available documents support these concerns and raise questions regarding the truth and accuracy of those filings.

Based on the information it had obtained, the Attorney General began an investigation of VDARE and its leadership for potential violations of the New York law applicable to charities. The Subpoena seeks documents relating to the misconduct described above—documents, for example, concerning VDARE's organizational structure, compliance conflict-of-interest policy

requirements under New York law, and financial operations; its purchase and conveyance of the Berkeley Springs Castle, including whether its use as the Brimelows' private residence violates the law; and transactions between VDARE and entities controlled by the Brimelows.

The Subpoena does *not* seek any information regarding the development or publication of VDARE's online opinion or analytical content. In response to concerns expressed by VDARE counsel, the Attorney General has also clarified that any responsive material produced pursuant to particular requests that address VDARE fundraising may be redacted in the first instance to omit identifying name and address information for donor-supporters and uncompensated volunteers. Fuchs Aff. ¶ 42.

**B. VDARE Insists that the OAG Must Withdraw the Subpoena and Fails to Produce.**

VDARE does not dispute that it is a New York-incorporated entity subject to the Attorney General's regulatory oversight. VDARE nonetheless refused to comply with the Subpoena immediately upon receipt: in a letter dated July 2, 2022, VDARE asked the Attorney General to withdraw the Subpoena in its entirety without any reference to individual categories of requested information or material. *Id*. ¶ 39. On July 20, 2022, following a telephonic meet and confer with the Attorney General's Office, VDARE asserted that the Subpoena was "incredibly unlawful" and repeated its request that the Subpoena be withdrawn. *Id*. ¶ 41. VDARE argued in its July 20 letter that because it operates as an online publisher of "controversial" speech by anonymous writers and for anonymous readers, the First Amendment entirely prohibits thirty-two of the forty-four individual requests in the Attorney General's investigative demand.

The parties have met and discussed VDARE's position on multiple occasions since July. The OAG responded by email on July 27 to the objections raised in VDARE's July 20 letter and

attempted to address VDARE's concerns by clarifying certain individual terms and requests that
VDARE had identified as potentially including protected agent or donor information. *Id.* ¶ 42.
The OAG also consented to extensions of the Subpoena's deadline to accommodate vacation,
holidays, and other unrelated work obligations for VDARE counsel. *Id.* ¶ 43. Beginning in late
July, the OAG also repeatedly offered to meet and confer to confirm whether any remaining
objections existed – these proposed meetings, once scheduled, were themselves adjourned on
multiple occasions at VDARE's request.

On September 19, 2022, new counsel for VDARE wrote to the OAG, "I do not stand by
my predecessor counsel's position that the Subpoena be withdrawn" and noted in his letter "a
significant volume of electronically-stored and hard copy documents that need to be reviewed."
*Id.* ¶ 43. VDARE made its first production that day, nearly two months after the Subpoena's
original deadline for production. The September 19 production contained 27 documents
produced without Bates numbers and bearing unmarked redactions. No log was provided to
identify or explain the redactions. The OAG immediately demanded a redaction log and repeated
that demand for the ensuing three months without any compliance. *Id.* ¶¶ 44-45.

In the twelve weeks since its first September delivery, VDARE has produced
approximately 6,000 pages from its hard copy records. *Id.* ¶ 46. It has redacted that material
without offering any legal basis for individual redactions or any explanation for how material
was chosen for redaction. *Id.* The redactions are extensive, and they have been applied across
almost every category of document produced, including VDARE board meeting minutes,
VDARE bank statements, internal VDARE accounting ledgers, VDARE credit card statements,
invoices sent to VDARE, financial records for the limited liability company (Happy Penguins
LLC) from which VDARE has historically leased Peter Brimelow's services, and bank

9

Case 1:23-cv-01337-DJS Document 5941 36iled 04/24/23 Page 15 of 23

statements to accounts held personally by Peter and Lydia Brimelow. *Id.* In one instance, VDARE appears to have redacted a magazine subscription renewal form addressed to Peter Brimelow. *Id.*

On October 31, 2022, Lydia Brimelow represented that, with limited exceptions, VDARE's hard copy production was complete. *Id.* ¶ 47. On that date, VDARE identified 22 unique email accounts containing approximately 40 gigabytes of potentially responsive electronically stored information. *Id.* ¶ 48. VDARE's counsel stated that review of that material would be completed by November 21, 2022. *Id.*

VDARE did not produce any material from its electronic files as promised on November 21. *Id.* ¶ 49. Instead, VDARE counsel unilaterally established December 12, 2022, as a new deadline for completing email production. *Id.* On December 2, the OAG wrote to VDARE, summarizing its concerns with the pace and scope of VDARE's production, including its extensive redactions, and demanded that VDARE complete its subpoena compliance and produce a redaction log by December 12, 2022. *Id.* ¶ 51. VDARE did not comply, instead filing a frivolous lawsuit in federal court.

Despite twenty weeks of extensions, to date, VDARE has failed to produce responsive material from the following categories of records called for by the Subpoena: (i) solicitation materials sent by VDARE to potential contributors; (ii) documents related to the setting or adjusting VDARE's officer compensation; (iii) documents concerning past or future VDARE events located at the Berkeley Springs Castle property; (iv) documents concerning Director and Officer liability insurance held by VDARE for the benefit of its Board; and (v) documents sufficient to demonstrate who controls VDARE's financial accounts. The documents it has produced contain heavy redactions unexplained and unjustified by any redaction log.

Case 1:23-cv-01537-EGS Document 2694-1 Filed 04/24/23 Page 215 of 23

# ARGUMENT

The Attorney General has broad and well-established authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law §§ 63(12), 175; N-PCL § 112; EPTL § 8-1.4(m).  *See also Temple of the Lost Sheep*, 148 Misc. 2d at 828–29 ("There is no doubt that the Attorney General has a right to conduct investigations to determine if charitable solicitations are free from fraud and whether charitable assets are being properly used for the benefit of intended beneficiaries. This authority is granted to the Attorney General pursuant to the various articles of the Not-For-Profit Corporation Law and the Estates, Powers and Trusts Law identified in the challenged subpoena here.").  VDARE has not articulated any plausible basis for refusing to comply with the Subpoena and the Attorney General now asks the Court to issue an order pursuant to CPLR § 2308 to ensure that VDARE promptly responds to the Attorney General's investigative requests without further limitation or delay.

## A.  Standard of Review

The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828 ("It is well settled that one who challenges a subpoena issued by the Attorney General, which is presumptively valid, has the burden of proof to establish the invalidity of the subpoena[.]"); CPLR § 2308(b)(1) (where a subpoenaed party has failed to comply with a non-judicial subpoena, the issuer of the subpoena may seek a court order to compel a response and the court must order compliance if it finds that the subpoena was authorized.).

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review:  it is presumed that the Attorney General acts in good faith.  *See*

Case 1:23-cv-01537-BS-Uronf Document 394 1 36ded 04/24/2823 Page 217 of 23

*Ryan* v. *Lefkowitz*, 18 N.Y.2d 977, 979 (1966); *Hogan* v. *Cuomo*, 67 A.D.3d 1144, 1145 (3d Dep't 2009); *New York* v. *Trump Org.*, No. 451685/2020, 2022 WL 489625, at *5 (Sup. Ct. N.Y. Cty. Feb. 17, 2022) (quoting *Anheuser-Busch. Inc.* v. *Abrams*, 71 N.Y.2d 327, 332 (1988)), *aff'd* 205 A.D.3d 625 (2022)) ("In defending his inquiry, the Attorney-General enjoys a presumption that he is acting in good faith"). The Attorney General's subpoena requests must demonstrate a "reasonable relationship to the subject matter under investigation and the public interest to be served." *Giardina* v. *James*, 185 A.D.3d 451 (1st Dep't 2020) (affirming denial of petition to quash and grant of motion to compel compliance with investigative subpoenas). *See also Matter of La Belle Creole Int'l, S.A.* v. *Attorney-General of the State of N.Y.*, 10 N.Y.2d 192, 196 (1961); *Roemer* v. *Cuomo*, 67 A.D.3d 1169, 1171 (3rd Dep't 2009) ("[The Attorney General] enjoys a presumption that [s]he is proceeding in good faith. A motion to quash…raises only the issues of the authority of the investigating body and whether the inquiry falls within the scope of that authority and, to be sustained, [the Attorney General] need only make a preliminary showing that the information sought is reasonably related to a proper subject of inquiry.") (internal quotations and citations omitted); *Matter of Cuomo* v. *Dreamland Amusements Inc.*, 22 Misc. 3d 1107 (A), 2009 WL 81139, at *6 (Sup. Ct. N.Y. Cty. 2009). A party must respond to an investigative subpoena unless the information sought is "utterly irrelevant to any proper inquiry." *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 331–32 (1988).

VDARE has not demonstrated, as it must to lawfully defy the Subpoena's demands, that "the futility of the process to uncover anything legitimate is inevitable or obvious" or that any "information sought is utterly irrelevant to any proper inquiry." *Libre by Nexus, Inc.* v. *Underwood*, 181 A.D.3d 488 (1st Dep't 2020) (citing *Matter of Kapon* v. *Koch*, 23 N.Y.3d 32, 38 (2014), and affirming denial of motion to quash investigative subpoena *duces tecum*).

Case 1:23-cv-01537-BJR-SN Document 26-1 Filed 04/24/23 Page 217 of 23

**B. The Attorney General's Subpoena Seeks Documents and Information Directly Related to a Lawful Regulatory Review.**

New York State's public policy interest in ensuring the robust regulation of tax-exempt charitable entities like VDARE is beyond question, as is the Attorney General's authority to supervise and investigate such entities when misconduct is suspected. The Attorney General's investigation and Subpoena are narrowly focused on well-established principles within this regime: the subject matter areas identified by the Subpoena fall squarely within the statutory provisions that govern not-for-profit corporations like VDARE. The Not-for-Profit Corporation Law, for example, provides that entities like VDARE may be formed only for charitable purposes, *see, e.g.*, N-PCL §§ 202, 204, 205, and that charitable assets may not be distributed to members, directors or officers, N-PCL § 515(a). Charitable entities are also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition" of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-PCL § 715); and a process for managing conflicts of interest. (N-PCL § 715-a). The Subpoena's requests demand exactly the type of material that will permit the Attorney General to determine whether VDARE has complied with these requirements, including, for example, complete copies of VDARE annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review.

Article 8 of the Estates Powers and Trusts Law similarly authorizes the Attorney General to supervise the operation and administration of entities, trusts and persons holding and administering charitable assets, and VDARE qualifies as exactly such an entity. EPTL §§ 8-1.4, 8-1.9. The EPTL vests the Attorney General with express authority to "represent the

beneficiaries of such [charitable] dispositions," to "enforce the rights of such beneficiaries by appropriate proceedings in the courts," to supervise and to "institute appropriate proceedings . . . to secure the proper administration of any [charitable] trust." *See generally id.* § 8-1.1 *et. seq*. The Subpoena's requests call for documents that will permit the Attorney General to determine whether there has been any diversion of charitable assets—for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries.

Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that, *inter alia*, a charity does not solicit contributions under false pretenses or use the contributions it receives in a manner that is not "substantially consistent" with the charity's stated purposes. *See generally* Executive Law § 172-d.  Review of VDARE's public statements demonstrates that VDARE has sought funding to fund alleged programmatic use of the castle, and the Subpoena demands information related to that use.

Given these standards, and the conduct already identified through review of publicly available information regarding VDARE's spending and operation, there is no question that the Attorney General's regulatory mandate and preliminary investigation establish a reasonable basis for the document and information demands in her investigative subpoena. *Hogan*, 67 A.D.3d at 1146 ("Respondent had more than an adequate basis to issue the subpoenas here. The information forming the factual basis need not be sufficient to establish fraud or illegality, or even provide probable cause, as long as the futility of the process is not inevitable or obvious."). VDARE has not identified any facts or circumstances that demonstrate otherwise.

**C.  The Subpoena Poses No Risk of Constitutional Harm.**

In response to the OAG's investigatory subpoena for documents related to VDARE's corporate conduct, VDARE has raised constitutional objections related to its *donors'* First

14

**AA1097**

Amendment rights. But merely invoking the First Amendment does not shield a non-profit from investigative review. Because the OAG has agreed, in the first instance, to redact donors' and volunteers' identities, VDARE must show how this Subpoena will cause the organization itself any First Amendment injury.[1] *See New York Found. For the Homeless*, 190 A.D.2d at 578 (affirming finding of contempt for "persistent and willful defiance of Supreme Court subpoena") ("The mere utterance of First Amendment privileges…cannot shield defendants from the scrutiny of the Attorney General…and to enjoin them from soliciting funds improperly (EPTL 8-1.4)."). *See also Condon* v. *Inter-Religious Found. for Community Org.*, 51 A.D.3d 465, 466 (1st Dep't 2008) (affirming grant of petition to compel compliance with DOE investigative subpoenas that did not seek "membership lists" and did not "on their face implicate core First Amendment concerns of freedom of association that would require some heightened showing to warrant disclosure").

VDARE has not, and cannot, show that the subpoena would impair its own First Amendment rights. Despite the parties' agreement to redact *donor* information, VDARE has redacted much more, including its own board meeting minutes, bank statements, accounting ledgers, credit card statements, invoices it received from third parties, and even financial records for the Brimelows' own for-profit businesses (that have received thousands of dollars in unexplained payments from VDARE). None of these redactions are remotely proper or related to protected First Amendment interests.

But even if VDARE could show a potential First Amendment injury, it would still find no help from *Matter of Evergreen Assn., Inc.* v. *Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017), a case it cited in support of its position. There, the court upheld an investigative subpoena

---

[1] The OAG reserves the right to seek donor identities when and if those identities become relevant to its lawful investigation.

examining a crisis pregnancy center's unlawful practice of medicine despite the possibility of First Amendment chill, compelling compliance with demands tailored to its investigation. The Attorney General maintains that *Evergreen*'s recognition of a First Amendment harm was wrongly decided as a matter of law and reserves the right to challenge it on appeal, while recognizing that this Court is bound by its holding. *See, e.g.*, *Mountain View Coach Lines, Inc.* v. *Storms*, 102 A.D.2d 663, 664–65 (2d Dep't 1984). But even under *Evergreen*'s reasoning, the Subpoena survives review. The Subpoena's requests are narrowly tailored to investigate VDARE's financial and governance misconduct and have been clarified to eliminate the possibility of First Amendment concerns from anonymous VDARE donors or volunteers.

Although VDARE may claim that redactions are required to protect the identities of contractors—including writers who contribute to the website—these are precisely the records the OAG must examine in its investigation of VDARE's organizational misconduct. To the extent anonymity is used to mask violations of the law, "it is unprotected by the First Amendment." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (affirming decision not to quash a subpoena on First Amendment grounds because it would reveal the identity of alleged copyright violator). Given the web of transactions among VDARE and Brimelow-controlled entities *already* discovered by the OAG, the identities of contractors are central to the OAG's investigation. VDARE, and the Brimelows, cannot hide behind the First Amendment to shield self-interested transactions from regulatory scrutiny. *See New York Found. for the Homeless*, 190 A.D.2d at 578. As another example, the only board member among four who is not a Brimelow family member is a known VDARE contributor. The Attorney General may probe this contributor's compensation as part of its investigation of conflicts of interest and board independence. And the Attorney General may seek the identities of other contributors to

16

determine whether further conflicts of interest may exist.

VDARE's reliance on *Americans for Prosperity v. Bonta*, 141 S.Ct. 2373 (2021), is equally unavailing. That decision concerned only donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation. *See Ams. for Prosperity Found.*, 141 S. Ct. at 2386–87 (noting the obvious, and "substantial," governmental interest in protecting the public from the harms caused by fraud, misuse, misappropriation, and diversion of charitable assets and observing, "Such offenses cause serious social harms. And the Attorney General is the primary law enforcement officer charged with combating them under California law."). Here, that decision is doubly irrelevant because the OAG seeks to compel subpoena compliance (as that case permits) and has already agreed to redactions to unrelated donor identifying information (the only category of First Amendment-protected information at issue there).

## CONCLUSION

For all the foregoing reasons, the Attorney General respectfully requests that the Court issue an order: (i) compelling VDARE to comply without delay with the June 23, 2022 subpoena; (ii) ordering all documents produced to be unredacted (except for agreed-upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate.

17

**AA1100**

Case 1:22-cv-01537-DLC Document 39-1 Filed 04/24/23 Page 23 of 23

Dated: New York, New York
       December 16, 2022

LETITIA JAMES
Attorney General of the State of New York

By:   /s/ *James G. Sheehan*
      James G. Sheehan
      Yael Fuchs
      Catherine Suvari
      Assistant Attorneys General
      28 Liberty Street
      New York, New York 10005
      (212) 416-8490
      James.Sheehan@ag.ny.gov

18

# **Exhibit B**

Case 1:22-cv-01337-FJS-CFH Document 39-2 Filed 04/24/23 Page 2 of 4
Case 23-1004, Document 36, 01/25/2024, 3606197, Page240 of 297

 **11 NEWS** YOUR BREAKING NEWS LEADER

 42°
Colorado Springs, CO

☰  News   Weather   Sports   11 Cares   Live Newscasts   🔍

# VDARE responds to conference cancellation at Cheyenne Mountain Resort



(KKTV)

By KKTV

*Published: Aug. 15, 2017 at 11:00 AM EDT*

👍 ✉ 🐦 📌 in

**AA1103**



MEDIA_ELEMENT_ERROR: Format error

**UPDATE (8/16):**

An anti-immigration organization's planned conference in Colorado Springs next year has been canceled.

Cheyenne Mountain Resort canceled the conference following an outcry from many in the community who said they did not want a white nationalist or white nationalist-sympathetic group coming to Colorado Springs.

Cheyenne Mountain Resort issued a brief statement, but did not give an official reason for the event's cancellation.

*"Cheyenne Mountain Resort will not be hosting the VDARE Foundation in April of next year. We remain committed to respecting the privacy of guests at the resort."*

Nonetheless, Colorado Springs Mayor John Suthers said he was pleased with the resort's decision and speculated why they may have made it.

"I think what happened here is that this conference was booked without their full knowledge of what the full nature of this organization was. Once they realized it, they made a business decision ... that this was not a group they wanted to host. And I applaud them for it."

"It's not the city dictating any particular result, but it's the marketplace ... I suspect they heard from members of their golf course, I suspect they heard from other potential conference attendees that were planning on conferences there that this could have repercussions for them."

Suthers had previously said that had the conference gone on as planned, the city would not provide any resources for it unless there had been any trouble at the event that law enforcement would have to respond to.

VDARE posted the following statement on its website Wednesday night:

*On the night of Tuesday August 15, VDARE.com received an email from Cheyenne Mountain Resort in Colorado Springs, Colorado cancelling our April 2018 conference. Attached were a copy of the credit card receipt for our refunded deposit -- and a copy of a check for the very significant liquidated damages payment Cheyenne Mountain Lodge had to make to us for breaking its contract. After forty years in financial journalism (The Wall Street Journal, Barron's, Fortune, Forbes, MarketWatch), the cowardice and stupidity of corporate America are no surprise to me. But I would like to pay tribute to the professionalism and courtesy of the individual staff members at Cheyenne Mountain Lodge over the several months we worked together. I regret that their innocent belief they live in a free country has proved unfounded. Cheyenne Mountain Resort's cancellation is a further example of what President Trump has correctly called the Alt-Left: a conspiracy against the civil liberties of Americans by internet vigilantes (such as Media Matters, Southern Poverty Law Center), and their allied troll army, and the violent Communist gang (the so-called AntiFa), plus complicit elected officials. This has resulted in the extraordinary situation where policies that have won at the ballot box (a recent example: El Paso County voted overwhelmingly 56%-36% for Trump and his party controls both branches of Congress) can no longer be discussed in public meetings. Contrary to widely-repeated lies: VDARE.com has never advocated violence or any form of illegality (unlike AntiFa). We focus entirely on providing facts and analysis with the aim of influencing public debate. We believe the last election shows that this strategy has been working—which is why the*

**AA1104**

*Left's Reign of Terror is intensifying. VDARE.com had absolutely nothing to do with last Saturday's Unite The Right Rally in Charlottesville, VA. We were not invited to speak, we did not attend, we did not even publicize the event beforehand. There have been unscrupulous efforts to claim that because, early in the year, we published a few articles by a freelancer who subsequently helped organize the rally, we are somehow "linked" to it. But the DAILY CALLER also published articles by the same free-lancer. Is the DAILY CALLER "linked" to the rally? We have writers who are Democrats. Does that mean we are "linked" to James Hodgkins' shooting up the GOP Congressional baseball team? VDARE.com is not a "white nationalist" site. We are a forum site, publishing writers of differing political persuasions, interests (and races) who agree only on one thing: that America's post-1965 immigration policy has been a disaster. We certainly do include a few writers who are explicitly concerned with the interests of whites. This may not be a point of view often seen in the Main Stream Media, but its emergence is inevitable as immigration policy pushes whites into minority status, and every bit as legitimate as Black Nationalism or La Raza. Everyone should just get used to it. VDARE.com has been arguing for immigration control since 1999, but its position is substantially the same as President Trump's immigration policy paper released in August 2015. Trump's stand on immigration was key to his victory in the subsequent primaries and in the general election. Thus our position can no longer be dismissed as extreme or even unusual. The citizens of Colorado cannot reasonably have denied the opportunity to get to understand it better. If President Trump wanted to speak in Colorado Springs, would he be denied a platform? Of course, the answer is probably yes. A Totalitarian Left has emerged in America. It is above all desperate to suppress a debate on immigration policy—because it absolutely intends to Elect A New People (as per Bertolt Brecht). Cheyenne Mountain Resort, Mayor Suther and much of the media are helping them to achieve their goal. On a brighter note: each time a VDARE.com conference is cancelled, we see a great outpouring of support, new readers, donors etc. Thank you all.*

_____

**PREVIOUS (8/15):**

Mayor John Suthers has released a statement in response to a planned conference by anti-immigration organization VDARE in Colorado Springs next year.

The event, scheduled at Cheyenne Mountain Resort for the 19th-22nd of April according to VDARE's website, has been under more scrutiny following a deadly clash between white supremacist groups and counter-protesters in Charlottesville, Virginia over the weekend.

VDARE calls itself a "patriotic immigration reform" organization that believes diversity "is not strength, but vulnerability." Its founder has denied that the organization is white nationalist, but acknowledged in a 2006 article on VDARE.com that the site does publish some white nationalist writers. One of the site's contributors is the Charlottesville resident who organized the "Unite the Right" rally.

The Southern Poverty Law Center has designated VDARE.com an anti-immigration hate website.

Suthers released a statement to his website about the upcoming VDARE conference:

*The City of Colorado Springs does not have the authority to restrict freedom of speech, nor to direct private businesses like the Cheyenne Mountain Resort as to which events they may host. That said, I would encourage local businesses to be attentive to the types of events they accept and the groups that they invite to our great city. The City of Colorado Springs will not provide any support or resources to this event, and does not condone hate speech in any fashion. The City remains steadfast in its commitment to the enforcement of Colorado law, which protects all individuals regardless of race, religion, color, ancestry, national origin, physical or mental disability, or sexual orientation to be secure and protected from fear, intimidation, harassment and physical harm.*

Taboola Feed

**How Much Does A Walk-In Shower Actually Cost?**
Brilliant custom solutions for every budget
Kohler Showers | Sponsored                                    Learn More

**Amazon Hates When Prime Members Do This, But They Can't Stop You**
Online Shopping Tools | Sponsored

**13-year-old dies from overdose after attempting TikTok challenge**
The boy's father says his son's friends filmed the boy attempting the social media challenge when all of a sudden his body started seizing.
KKTV11

**Johnson & Johnson to Pay $4.7 Billion in Talc Powder Lawsuit**
Smart American Settlements | Sponsored                        Learn More

**AA1105**

# <u>Exhibit C</u>

# The Washington Post

*Democracy Dies in Darkness*

**POST NATION**

# Resort cancels 'white nationalist' organization's first-ever conference over the group's views

 By <u>Kristine Phillips</u>

January 26, 2017 at 7:49 a.m. EST

A small organization, which calls diversity "a vulnerability" and immigration — both legal and illegal — the driving force toward the country's bankruptcy, was supposed to hold its first-ever national conference at a Northern California resort this spring.

But Tenaya Lodge, a resort on the border of Yosemite National Park, canceled the booking after receiving complaints about the organization's views.

VDARE Foundation, a supporter of President Trump, <u>describes itself</u> as a nonprofit "journalistic enterprise" that publishes analysis and editorial commentary to "preserve and celebrate the distinctive culture of America."

"We inform the fight to keep America *American,*" according to its website, VDARE.com.

**AA1107**

Resort cancels 'white nationalist' organization's first-ever conference over the group's views - The Washington Post                    4/20/23, 1:15 PM

Case 1:23-cv-01887-DEH-SLC  Document 29-36  Filed 04/24/23  Page 3 of 4

The Southern Poverty Law Center, an Alabama-based civil rights organization that tracks hate groups, describes VDARE.com as an "extremist" and "white nationalist" website that publishes works from authors who "decry the demise of white America."

The group, based in Connecticut, booked Tenaya Lodge for a three-day conference this spring. Organizers had planned a series of debates and presentations "that will establish guideposts for the incoming administration and burgeoning movement around patriotic immigration reform," Lydia Brimelow, VDARE's advancement officer, said in an email to The Washington Post.

But the conference, scheduled for March 31 to April 2, was abruptly canceled after two organizations, the Southern Poverty Law Center and Media Matters for America, a liberal research center, published two articles Monday criticizing the event and prompting complaint calls to Tenaya Lodge. Brimelow said the resort's sales manager told her that Tenaya Lodge was being called a white supremacist "for doing business with us."

Brimelow said VDARE is neither a white supremacist nor a white nationalist group.

"What we are is politically correct," she said, citing Trump, his chief strategist, Stephen Bannon, and his counselor, Kellyanne Conway, as examples.

Glen White, a spokesman for Delaware North, which operates the resort, said in a statement that Tenaya Lodge was initially not aware of VDARE's views and that booking the group's event was a "mistake" and that the resort does not endorse the group.

"We did not realize this group has values that are in conflict with our embracement of diversity among our employees and guests, including people of different cultures, lifestyles, creeds, nationalities, races and ages," White said in the statement. "We are also concerned that providing meeting space and rooms to this group could be disruptive to our other guests' enjoyment of Tenaya Lodge and the services we provide to those guests."

But Brimelow said organizers were "completely transparent" with the resort about VDARE's views.

"They were alerted of our controversial, immigration-politics mission. We told them there would be security concerns. They were fine with it," Brimelow said.

Brimelow wrote in a recent article posted on VDARE.com that there has been increasing demand for the group to have a conference. Organizers chose Tenaya Lodge because it's on government property, meaning the resort has "to honor freedom of speech and assembly," she wrote.

AA1108

One of the planned speakers was former Colorado congressman Tom Tancredo, an advocate of hard-line immigration policy. Tancredo, who ran for the GOP presidential nomination in 2008, is a columnist for Breitbart News. Bannon, Breitbart's former chief executive, once called the news site "the platform of the alt-right," a small, far-right movement that seeks a whites-only state.

Another was Jared Taylor, editor of the white nationalist magazine American Renaissance.

Brimelow's husband, Peter Brimelow, a British anti-immigration activist, launched VDARE.com in 1999 as an extension of his book, "Alien Nation: Common Sense About America's Immigration Disaster," according to the website.

A promotional image of the conference was posted to VDARE's Facebook page this month. After Tenaya Lodge canceled the event, the image was altered to include, in bright red letters, "COWARDLY VENUE BACKED OUT!"

Asked whether the organization is looking for another venue for its conference, Lydia Brimelow said the group has limited resources.

"We will have conferences again in the future, but we don't have the money or staff to pull off another conference on such short notice," she said.

**READ MORE:**

Montana governor, legislators condemn plans for white-nationalist march

How Breitbart could lose its alt-right street cred

The alt-right isn't only about white supremacy. It's about white male supremacy.

AA1109

# **Exhibit D**

4/20/23, 1:16 PM
Cancelled Tucson Conference Produces Five-Figure Settlement—VDARE.com To Announce New Venue Soon! | Articles | VDARE.com

Case 1:22-cv-01387-LJS-RTH 3 Document 39-46 Filed 04/24/23 48 Page 2 of 3



### Cancelled Tucson Conference Produces Five-Figure Settlement— VDARE.com To Announce New Venue Soon!



Lydia Brimelow ( https://vdare.com/writers/lydia-brimelow )

03/07/2018

VDARE.com has been trying to get an immigration conference together for some time. For discussions of our first and second venue cancellations under Leftist pressure, see here ( /articles/cultural-marxism-in-action-media-matters-engineers-cancellation-of-vdare-com-conference ) and here ( /posts/vdare-com-editor-peter-brimelow-on-the-cancellation-of-our-colorado-conference ). Now, here's the official statement on our third cancellation ( /posts/garret-lewis-arizona-radio-790-interviews-peter-brimelow-re-latest-conference-cancellation ), in Tucson AZ:

> On October 19, 2017, Hilton cancelled our contract to host our 2018 Immigration Reform Conference. After some negotiation, VDARE.com and Hilton have agreed to settle matters arising from Hilton's termination of its contract for a five-figure sum. This settlement is satisfactory to us, and we look forward to hosting the Immigration Reform Conference at a different venue.

Of course, it's nice to get money—and to demonstrate again that patriots have legal rights ( /posts/glenn-reynolds-it-is-a-civil-rights-felony-to-conspire-against-free-speech ) and that corporate caving to Leftist pressure ( /posts/mark-steyn-defends-vdare-com-on-against-paypal-on-tucker-carlson-tech-companies-are-making-us-less-free ) has costs—but we would much prefer to have a conference. And it's a terrible comment on the emerging Totalitarian Left ( /articles/gop-must-confront-americas-emerging-totalitarian-left-or-die )'s Reign of Terror ( /posts/the-silencing-of-the-journal-of-american-greatness ) that a peaceful conference designed basically to discuss the immigration agenda ( /posts/trump-administration-launches-campaign-against-legal-immigration ) of the President ( /posts/breaking-news-donald-trump-is-

AA1111

Case 1:22-cv-01337-JLS-MJR Document 39-46 Filed 04/24/23 Page 3 of 3

stateof.jhsstudent/) in the United States cannot publish in a state that he cannot nullify. Cruz https://www.chicagotribune.com/news/nationworld/politics/ct-trump-wins-arizona-20161110-story.html ) in the 2016 election. (Some small comfort is that these cancellations always produce local expressions of support from Americans who are shocked to realize that they no longer live in the Land of the Free, ( /articles/this-isn-t-a-free-country-the-fate-of-jason-richwine ) so they do play a cumulative educational role).

#

But don't get demoralized! I expect to announce our next conference venue soon!

#

And I will continue until we find a solid venue to host us—or until no other venue is willing to contract with us.

#

I've gotten feedback from potential attendees suggesting that I contract with a public facility so as to invoke First Amendment protections—which is what American Renaissance now does ( /articles/jared-taylor-the-2018-amren-conference-a-time-for-courage-and-perseverance ). That is something that I continue to explore, but the Reagan Center ( /posts/j20-trials-finally-underway-antifa-defendants-already-condemned-out-of-own-mouths ) apparently figured out a way around its First Amendment obligations to the National Policy Institute last fall ( /articles/derbs-november-diary-mencken-club-dissolution-of-the-universities-etc ) and I want to be careful how much we expose ourselves. To have a venue cancel at the last minute with no financial penalty and expensive litigation as our only recourse would be a very bad scenario indeed.

#

Some others have suggested I wait to announce the location of the conference until the last minute, or never announce it at all, and just shuttle people from the airport without notice of their destination.

#

In my observation, this doesn't always work (again, Richard Spencer's attempts ( https://www.metrotimes.com/news-hits/archives/2018/03/04/we-found-out-where-the-alt-right-is-holding-its-secret-conference-in-metro-detroit ) at this sort of strategy have been lessons learned at a distance) plus it's a terrible burden to organize.

#

And we may decide to have another webinar ( /articles/vdarecom-first-webinar-now-available-james-kirkpatrick-s-address-the-end-of-conservatism-in ).

#

*But I want to have a conference! In a nice venue!*

#

So, for now, I plan on continuing down this path. We may be canceled by more venues yet – although I hope not – and I'm prepared for that

#

But VDARE.com isn't going away. And the more pressure they put on us, the more inventive we will become.

#

For the sake of our children—mine at right, from 2017 Official Brimelow Christmas photo shoot—we won't be silenced!

#

( /wp-content/uploads/2018/03/JPEG-0053.jpg ) *A native Texan, Lydia Brimelow [email her ( mailto:lbrimelow@vdare.com )] graduated from Loyola University Chicago in 2006. She is fundraiser and office manager, lion tamer, fire extinguisher and miscellany handler at VDARE.com. She and Peter married in 2007 and have three daughters together. (Pictured right: Karia, Bo, Lydia, and Felicity in 2017. )*



<< Previous ( /articles/ann-coulter-racial-quotas-in-school-discipline-kill-kids )
Next >> ( /articles/in-pa-18-democrats-lamb-supports-amnesty-gop-s-saccone-doesn-t-even-bleat )



**AA1112**

# **<u>Exhibit E</u>**

VDare's Berkeley Springs Castle divides a West Virginia town | The Washington Post
Case 1:22-cv-01337-RJS-OTW Document 39-5 Filed 04/24/23 Page 227 of 749
4/20/23, 1:18 PM

SOCIAL ISSUES

# A 'hate castle' or welcome neighbor? VDare divides a West Virginia town.

In Berkeley Springs, the purchase of an iconic castle by VDare, which some consider a hate group, has led to angst and ugliness



By Ellie Silverman

January 4, 2023 at 7:00 a.m. EST

BERKELEY SPRINGS, W.Va. — The little town was sparkling.

White lights gleamed from the garlands and wreaths adorning the gazebo in Berkeley Springs State Park. A large Christmas tree was lit next to the courthouse. Even the parking meters downtown were decorated for the holiday, transformed into snowmen, garden gnomes and the Grinch.

And looming above it all: the Berkeley Castle, a 19th-century structure that has become as much a symbol of this tourist town two hours northwest of Washington as the flowing hot springs that gave this Appalachian community its name.

For a few nights in December, the castle was offering visitors a chance to peek inside — a Christmas gift to the curious, organized by a local nonprofit that decorates the town for the holidays.

But not everyone in Berkeley Springs was happy to see people dressed in their Christmas best, being shuttled up to the castle to admire the roaring fire in its great hall or take their children to see Santa.

AA1114

Case 1:22-cv-01337-RJS-CFH Document 92-5 Filed 04/24/23 Page 297 of 749

Nearly three years ago, the historic 9,300-square-foot castle was purchased by the VDare Foundation, a group that gives a platform to white nationalists, and it now serves as its headquarters. Its founder, Peter Brimelow, 75, who runs VDare with his 38-year-old wife, Lydia, denies being a white nationalist or white supremacist.

He described them as "'devil terms,' aimed at suppressing debate," in response to questions from The Washington Post. "I refuse to accept that wanting to reduce immigration is 'hate.' "

But VDare regularly publishes writers who argue that America's White majority and essential character are being threatened by people of color and who use racist pseudoscience to argue that White people are superior to other races. Its website has featured virulent anti-immigration articles for years, including warnings of "white genocide" from Jason Kessler, the organizer of the deadly 2017 Unite the Right rally in Charlottesville. The Southern Poverty Law Center considers VDare a hate group and has published critical articles about the organization's presence in Berkeley Springs.



Peter Brimelow
@peterbrimelow · Follow

Lydia and I just had same burka-free experience in Prague.
frontpagemag.com/fpm/269421/gli...

AA1115



9:31 PM · Feb 27, 2018 ⓘ

♥ 33    💬 **Reply**    ⬆ **Share**

**Read 22 replies**

The Brimelows have long made their disdain for a multicultural America clear.

"One of the things we talk about at VDare.com is this idea that diversity is strength, which could not be less true," Lydia Brimelow said on the conservative podcast "Coffee and a Mike" in November. "Diversity is weakness."

After a leaked draft in May indicated the Supreme Court was preparing to overturn *Roe v. Wade* and the right to an abortion, Peter Brimelow wrote on Gab: "Next stop Brown vs. Board!" He was referring to the landmark 1954 Supreme Court decision that ended school segregation in America.

That kind of rhetoric has appalled some Berkeley Springs residents, who refer to VDare's headquarters as the "hate castle."

The group's presence in an overwhelmingly White town of fewer than 800 people, where nearly everyone knows one another, has led to ugly exchanges on social media, a defamation lawsuit and letters from VDare's attorneys that its critics say are aimed at silencing them. Its purchase of the castle has also prompted the New York attorney general's office to launch an investigation into possible financial misconduct by the organization and its leaders, a Dec. 16 court filing shows — news that is likely to fuel more controversy over VDare's influence in Berkeley Springs.

"The castle comes up and then there's this sort of awkward moment where people are like: 'Are we gonna talk about the castle?'" said Trey Johanson, the owner of the Fairfax Coffee House, where she has hosted meetings for people disturbed by VDare. "I am concerned about our little town suddenly coming to be known as that place where VDare is — you know, the cute little white-supremacist town in West Virginia. That scares the crap out of me."

But many of Johanson's neighbors aren't bothered by VDare. They said it was none of their business what the "castle people" published on their website.

"They are not white supremacists. They're anti-immigration. They don't like people just coming over the borders.

**AA1116**

There's a lot of people like that," said Barb Wolfe, 75, who owns a souvenir and gift shop in Berkeley Springs and has socialized with Lydia Brimelow. "Whatever they want to do, it's not my concern."

The angst over VDare, especially its involvement with the annual project to bedazzle Berkeley Springs for Christmas, has laid bare divisions about politics and identity that many residents prefer to avoid.

As a Jewish man married to a Japanese woman, Eddy Rubin said it pained him to see his neighbors eagerly awaiting their castle tour.

Rubin loves working in Berkeley Springs, especially during the holidays. Every year, the community turns into a town right out of a Hallmark movie.

One night in December, he and his wife, Hiroko, went for a stroll to enjoy the lights. Then Rubin looked up at the castle.

"In other circumstances," he recalled telling his wife, "this would be so beautiful."

# A 'fortress'

Berkeley Springs, also known by its historic name of Bath, bills itself as America's "first spa."

It celebrates its history with downtown information markers, including a plaque for "George Washington's Bath Tub," the area where the nation's first president would bathe during his Colonial-era getaways. People can still dip their feet in the town park's stone pools and feel the mineral water, which flows down from the base of Warm Springs Ridge at 74 degrees.

Though it is located in deeply conservative Morgan County, where 75 percent of voters chose Donald Trump for president in 2020, downtown Berkeley Springs has an artsy, liberal vibe.

Local businesses fly rainbow flags in support of LGBTQ rights and display a sticker cutout of West Virginia with the words "All Kinds Are Welcome Here." The town is home to more than 125 independent artists, and the local Pride group hosts an annual drag show.

The castle is an iconic part of the Berkeley Springs landscape. Built by Maryland businessman Samuel Taylor Suit in the late 19th century and listed on the National Register of Historic Places, it has stood above the mountain town since the 1890s. The sandstone edifice has hosted ghost tours, wedding receptions and class trips. Tourists look up

AA1117

in fascination at a form of architecture more likely to be seen in Europe than nestled in the Appalachians.

It had been on the market for 18 months when some welcome news was splashed across the Feb. 26, 2020, front page of the Morgan Messenger: "Berkeley Castle has new owners."

Underneath was a photo of a smiling family of five outside the castle doors, holding up a set of keys.

Peter Brimelow, the newspaper reported, led an organization called VDare, which many people in Berkeley Springs had never heard of before.

The British-born anti-immigration activist launched VDare on Christmas Eve 1999 as an "extension" of his book, "Alien Nation: Common Sense About America's Immigration Disaster," according to the group.

VDare is named after Virginia Dare, the first English child born in what is now the United States, who has become a symbol for white nationalists opposed to immigration.

The castle would allow the Brimelows to host meetings after other venues canceled conferences upon learning about their ideology.

It would be a "fortress," Lydia Brimelow told their followers, from which they could proclaim their views.

The VDare Foundation spent $1.4 million to buy 54 acres that included the castle and three houses. On the November podcast, Lydia Brimelow credited two unidentified donors to the VDare Foundation with funding the purchase.

Public tax records show the foundation raised more than $4.25 million in fiscal year 2019, its best in a decade. A chunk of that money — $1.5 million — came from Donors Trust, a charity that gives to conservative and libertarian causes.

That year, Peter Brimelow's salary increased by more than $160,000 to $345,364, according to tax filings.

With the acquisition of the castle and nearby properties, VDare moved its headquarters from Litchfield, Conn. It also sold the castle in December 2020 to a new nonprofit, formed by Lydia, called the Berkeley Castle Foundation.

These transactions and Brimelow's compensation increase are part of the investigation by the New York attorney general's office into the organization's use of charitable funds, according to court documents that accuse VDare of withholding subpoenaed information about its operations.

## AA1118

The subpoenas prompted VDare to sue New York Attorney General Letitia James on Dec. 12 in federal court, calling her office's demands for information unreasonable, unconstitutional and politically motivated.

The attorney general's office also alleges that the Brimelows have used the castle as their "primary residence," which could violate laws governing nonprofits in New York.

The Brimelows did live in the castle "for a period of months" until a cottage on the property grounds was ready for them to occupy, Andrew J. Frisch, an attorney representing VDare, wrote in a Jan. 3 court filing. The family is paying $21,624 a year to rent the cottage, according to a lease agreement that Lydia Brimelow signed as both the landlord and tenant.

"There are no financial improprieties," Frisch said in a statement to The Post. "VDARE has endeavored in good faith to comply with New York's regulatory requirements, and the Attorney General's innuendo to the contrary is a pretext aimed at impairing VDARE's constitutional rights to speech and association."

There is no mention of VDare on the Berkeley Castle website.

But Oscar Robles, a Honduran who owns a Mexican restaurant in town called Mi Ranchito, said he knows what the group stands for and would not take his family to the castle for Christmas.

"They don't support us. They are not happy that we are here," said Robles, a father of five and mariachi singer. "They see us like a threat, and they think that we don't have nothing to add to United States."

The Brimelows have embraced Berkeley Springs as their home, attending local church services and dining at the Country Inn. Lydia Brimelow has participated in public yoga classes in the park and joined the board of the Bath Christmas Project, the group leading the holiday tours at the castle.

Hunter Clark, the president and founder of the Bath Christmas Project, said he ignores criticism from people upset that his group is organizing castle tours. "It's 98 percent of the community who is behind us, and the other 2 percent just want to raise their voice up," he said. "I don't pay attention to it anymore."

On the November podcast, Lydia Brimelow said she wants the castle to be a "sort of a hub of American patriotism." And she described the community surrounding them as "incredibly supportive."

## 'What Berkeley Springs is about'

From the start, people in Berkeley Springs took sides about VDare's purchase of the castle.

"My heart sank when I heard about the new owners," Dina Coe, 79, wrote in a letter to the editor published in the Messenger. She called the idea of the castle being sold to an anti-immigration group "a disheartening shock."

The Messenger wrote an editorial after the sale, affirming the town's values as apprehension spread about the new owners:

"Unlike some folks, we don't believe VDARE has the power to ruin the local economy or make a dent in who we are to the rest of the world," the editorial read. "Truth is, it's more likely that a new visitor or resident will be enlisted to judge a contest at the Apple Butter Festival or the County Expo than to be told to go back where they came from. That's what Berkeley Springs is about."

The letters about VDare published in the newspaper eventually slowed. But that was before a Black Lives Matter rally in the summer of 2020.

The town was already on edge ahead of the Aug. 21 demonstration.

Larry Schultz, the 64-year-old organizer of the rally, said there was a false rumor "that we were going to bring busloads of people from Philadelphia, busloads of African American people that were going to burn Berkeley Springs to the ground."

The courthouse, located across from the park, closed early. People canceled their Friday night reservations, the Messenger reported. Barb Wolfe said she and her husband guarded their shop with guns.

Hundreds of people showed up for the two-hour demonstration, most of whom were counterprotesters. Some were armed.

Men waved American flags and shouted "All Lives Matter!" and "U.S.A.!" Schultz said he saw Confederate flags, too.

Kurt Griffith, now 64, a mixed-race Berkeley Springs resident who attended the rally, called the experience "a little bit terrifying."

The next day, a local man, Ted Stein, blamed VDare for the rancor at the rally.

"A racist org (@vdare) bought a literal castle in my town," Stein wrote in a tweet that VDare would eventually cite in legal action against him. "They organized this violent counter protest to locals having a BLM vigil in the park. Biker gang. A militia. And hundreds of armed racists. Never happened before VDARE."

**AA1120**

VDare responded with a post on its website, calling Stein's accusations "a lie."

Seven months after the rally, Stein responded to a different tweet from Peter Brimelow, writing "BTW, the whole town knows it was you who brought the racists with guns in."

This time, an attorney representing VDare and Peter Brimelow emailed Stein demanding he retract his allegations, according to court documents. Stein did not — and VDare sued him in August 2021 for defamation.

VDare had previously sued the city of Colorado Springs and the New York Times. Both cases were dismissed.

At first, Stein attempted to fight the defamation lawsuit. But eventually, the parties reached a settlement, which stipulated that Stein pay $20,000, post a retraction on Twitter and publish that retraction as an advertisement in the Messenger, Peter Brimelow wrote on VDare.

"I regret the harm my false charges caused to Mr. Brimelow or the VDARE Foundation, and will endeavor in the future to accord those I perceive as political opponents with greater respect and dignity," the apology read. Stein, who declined to comment, has made his Twitter account private.

Two other locals received legal warnings from VDare, Peter Brimelow said.

One of them was Lisa Marie Briggs, a 35-year-old trans woman. During the 2021 Christmas at the Castle event, Briggs stood outside the Country Inn and held a sign that read "There is HATE at the CASTLE."

After reading a Dec. 17, 2021, post on VDare's website that read, "Trust all transgenders, just like you'd trust any autistic schizo drug addict with HIV," Briggs began going to the Brimelows' local Catholic church.

During a Mass, Briggs, who said she open carries a 9mm pistol everywhere she goes, shook hands with Lydia Brimelow and recalls telling her, "Peace be with you, Black Lives Matter." She said she also waved at the Brimelow children.

Two months later, she received a letter accusing her of harassment which stated that if she did not cease her activities, the Brimelows would file a harassment complaint with the county sheriff's office, initiate a civil cause of action and pursue a restraining order.

Asked about the legal warnings, Peter Brimelow described Briggs as "a local Leftist transsexual who was posting salacious online comments about our little girls and stalking my family at church with guns."

AA1121

Briggs hasn't been back to their church since August and did not protest Christmas at the Castle last year. But she worries about what she sees as an acceptance of VDare in Berkeley Springs.

"I feel like they are starting to become normalized," Briggs said.

In contrast, Scott Collinash, the chef at the Country Inn and co-founder of Berkeley Springs Pride, said he's talked to the Brimelows when they've come into the restaurant and called Lydia Brimelow "a delightful woman."

"I'm sure they both know that I'm gay, and they have not said anything to me," Collinash said. "They have caused me no trouble at all. And they have caused Berkeley Springs Pride no trouble at all either."

The Brimelows haven't offended Hiroko Rubin, either: "If they want to preach [to] people, they can, but they don't do it." She described Lydia Brimelow, who has taken her yoga classes, as a "very sweet, down-to-the-earth woman."

When she and her husband took their walk to see the Christmas lights, she said she wasn't troubled by the sight of the castle the way he was.

# Christmas at the castle

When visitors filled the great hall of the castle on an early December evening, no one mentioned VDare.

Strangers came together, waving their arms to get a crying baby to smile for a photo.

Families walked up the staircase covered in red carpet and saw a display of a toy penguin diving down a mini slide. Kids picked up faux snowballs and tried to sink them through a basketball hoop.

There was no sign of the Brimelows. There were no Confederate flags or talk of an immigrant invasion.

As people left the castle, they looked out over the town. They were on the grounds of VDare's headquarters, but all they saw were twinkling lights.

**CLARIFICATION**

AA1122

Case 1:23-cv-01091-RJS-CFH Document 96-04 (of 339-5, Filed 07/24/23 Page 297 of 749

An earlier version of this story noted that in 2019, Donors Trust was a charity associated with billionaire industrialists Charles and David Koch. The reference to the Kochs was removed from the story because public tax filings show the Charles Koch Foundation gave Donors Trust only $25,000 in 2019 after sometimes giving more in previous years.

*Story editing by Lynda Robinson, photo editing by Mark Miller, copy editing by Gaby Morera Di Núbila, video editing by Alexa Juliana Ard, design by Andrew Braford.*

**AA1123**

# Comments

This conversation is moderated according to The Post's community rules. Please read the rules before joining the discussion. If you're experiencing any technical problems, please contact our customer care team.

**Comments are now closed.**

**All Comments 3.5k**

Newest ⌄

⌃ **TJ Eckleburg** 3 months ago

Never going there again.

⤴

⌃ **PollyStew** 3 months ago **(Edited)**

I am from WV, but I don't recognize it. I avoid going there except to visit a sister and two brothers. One brother with advanced degrees is one of the angry, old white men who hates anything about all Democrats. I used to love going to this little hamlet, BS, every year. No more!!!

And he who hates immigration is "English born." Try to wrap that around your brain.

⤴

⌃ **Jodie68** 3 months ago

There's no hate like Christian love.

And the local Catholic Church welcomes these people? Enough said.

⤴

AA1124

∧ **HerderOfCats** 3 months ago

It ain't defamation if it's the truth.

⤳

∧ **Swine_Under_Trump** 3 months ago

Exporting Victorian England to anywhere possible...

⤳

∧ **enkay** 3 months ago

You have to hand it to Brits like Brimelow. "Divide and Conquer" must be in their DNA. Never mind this imbecile is himself an immigrant, he and his ilk have the gall to protest against immigration. Go back to where you came from Brimelow, and take your kind back with you.

⤳

∧ **RLTfreedom** 3 months ago  **(Edited)**

If we're going to go hard right on immigration then he needs to go back to where he came from. What a hypocrite.

⤳

∧ **VotingMatters** 3 months ago  **(Edited)**

Yuck. What a repulsive couple. Guess they don't know what "native American" implies.

So sorry Berkley Springs. You were a fun place. I'll keep driving....or at least steer clear of the castle.

The other residents normally welcome tourists.

⤳

**AA1125**

⌃ **justtryingtokeepup** 3 months ago

I'm surprised he gave permission for Washington Post to use his photos.

⤳

> ⌃ **JustMeToo1** 3 months ago
>
> He will figure out a way in private communication to spin this as an endorsement by the main stream.
>
> ⤳

⌃ **clark glymour** 3 months ago

Unfortunately, money does not require a common sense or good will test before one takes possession of it.

⤳

⌃ **AZHenry** 3 months ago

Another white evangelical Christian bunch who feel their whiteness is under attack.

Perhaps the Somalis and H.ong will speak of these rich yahoos better than those yahoos speak of them

Maybe this Boris Johnson like immigrant will go back to where he came from.

⤳

> ⌃ **utopia27** 3 months ago
>
> another bunch of self-righteous, privileged white nationalist theocrats, bullying their way around accountability for the harm they do. And their privilege is actually under assault - because they should not be elevated - privileged - in the land of the Free.
>
> ⤳

**AA1126**

**SpiritWinds** 3 months ago

Berkley Springs is a sweet place for a weekend trip. If you go, sign up for the hot baths and massages at the state park. There are lots of good eateries in town. Oh, and skip the fake castle.....

<

**Terzana** 3 months ago

Are there any people of color who live in castles?

<

**Alexandria_Va** 3 months ago

British born anti-immigration immigrant. Oh the irony. Maybe he should self-deport.

<

**steveh46** 3 months ago

The Brimelows named their organization after an immigrant's baby who was probably killed by Native Americans. But the Native Americans aren't the kind of native Americans the Brimelows seem to approve of.
That they don't get it is part of their stupidity.

<

**lisaswanson** 3 months ago

And what approval? Lydia Brimelow has said: "When I say **"native Americans"** I don't mean American Indians, I mean people who were born in America; they were pre-American." Then she disparages Somalis in Maine, Hmong in Minnesota, Iraqis in Arkansas and asks, "How are these people supposed to get along?"

<

AA1127

∧ **AQB24712**  3 months ago

Well, that's revolting. I can't help wondering about brainwashing when it comes to the missus; she was only 22 when she married that prize (then in his 50s).

≺

∧ **LivingintheCouv**  3 months ago

He's not the only anti-immigration immigrant. I know several Latinx people that are anti-immigration. The proverbial do as I say, not as I do.

It's the Brown vs Board comment that offends and really shows their colors. With the money they have, I'm sure they can afford private school but I'm certain they're home-schooling their little darlings.

≺

∧ **paintnputty**  3 months ago

LatinX says it best....

≺

∧ **The Jimbonomicon**  3 months ago

An anti-immigration group named after the original "Anchor Baby."The irony is coming from inside the house.

≺

AA1128

**∧ Carlamoo** 3 months ago

So, they're only anti-immigration, eh? With a declining birth rate, more than a million people dead of COVID, and an aging population, who needs immigrants, right?

On another topic, does anyone know someone who would be willing to look after my husband and me so we can age in place? We are only considering native English speakers with Ivy League degrees. We are willing to pay $8.00 for the right candidate.

I'll be waiting with bated breath.

≺

> **∧ BlessingsOnTheWay** 3 months ago
>
> Your willingness to pay an immigrant $8 an hour to look after you and your husband is truly telling. So basically, you're telling immigrants that you're okay with them living in poverty.
> I'm hoping that you forgot the /s
>
> ≺

**∧ Caps Fan Dad** 3 months ago

I'm as pro-immigration as they come, and couldn't disagree with VDare's platform any more vigorously. But the problem is... reading the comments below, I hear just as much hateful speech/stereotyping/labeling coming from my side of the argument as I do from VDare.

Two wrongs don't make a right, and just because you think you're on the side of the angels doesn't mean you can say or do whatever you want. Live and let live. Or to make make the point differently, if the gay chef and founder of the Berkley Springs Pride chapter can find a way to co-exist peacefully, even pleasantly, with these people, why can't we?

≺

**AA1129**

⌃ **Blue State Joe**   3 months ago

**"The only thing necessary for the triumph of evil is that good men should do nothing."**

Attributed to William Burke

⌃ **LIB100845** 3 months ago

So an immigrant from Britain runs an anti-immigrant organisation in America? Perhaps he should deport himself.

⌃ **Brent McGillis** 3 months ago

First they came for the socialists, and I did not speak out—because I was not a socialist.

> Then they came for the trade unionists, and I did not speak out—because I was not a trade unionist.
>
> Then they came for the Jews, and I did not speak out—because I was not a Jew.
>
> Then they came for me—and there was no one left to speak for me.
>
> —Martin Niemöller
>
> https://encyclopedia.ushmm.org/content/en/article/martin-niemoeller-first-they-came-for-the-socialists

The cruelty of the human race is scrawled across the pages of history throughout time, and it is always one society believing that THEY are the superior race that will subvert their racist ideology on to another race.

And that folks its the roots of cultural genocide, this is what white people did to the

**AA1130**

native peoples of the Americas. It was justified and carried out by agents of the Catholic, Lutheran and Orthodox churches of Christianity.

There has been NO other religion on Earth that carries the baggage of; causing MOST of the World Wars and genocides across the globe like Christianity has. That is factual, who supports Vladimir Putin? The Russian Orthodox Church https://www.dw.com/en/what-is-the-orthodox-church/a-45973747

Christianity has slaughtered Millions upon millions of indigenous peoples across the Americas in the name of their religion, accusing these tribes of heresy. Christianity has a whole TON of responsibility for the normalization of genocide by European (White) governments, armies, churches and their agents for more than a thousand years now.

White people accusing Muslims or any crime truly is Rich, that is what Trump is and what Trumpism IS: Sociopaths with severe narcissistic personality disorder ALWAYS "Project their crimes onto thir Foes!"

It is their natural deflection defense mechanisms kicking in to distract an audience of their severe Racist personality traits they cannot hide.

Narcissistic racists are always bombastic spreaders of hyperbole, you know, like the GOP in a nutshell.

<

---

^ **thisisendlesss** 3 months ago

That Barb Wolfe lady looks like the Trumpiest, most racist
Karen grandma I've even seen! She says stuff is "none of her business" but I bet she would be the first one peering out her blinds and calling the cops on some random Black person minding their own business.

<

**AA1131**

∧ **Caps Fan Dad**  3 months ago

So... you just dismissed a person you don't know anything about based on what she "looks like" and what you "bet she would" do.

And she's the bigot?

&lt;

∧ **Ethereal Fairy**  3 months ago

She believes the same hateful stuff they do.

&lt;

∧ **SoulfulMama**  3 months ago

I want to know how the heck they got that castle, 3 houses, and 54 acres for 1.4 million. What an awesome deal.

&lt;

∧ **DCkat3**  3 months ago

Real estate isn't expensive in this area. But the maintenance will be costly.

&lt;

∧ **Frustrated Progressive Coyote**  3 months ago

America's Eagle Nest?

&lt;

∧ **DCkat3**  3 months ago

While only 800 people live within the town of Bath's boundaries, the area people refer to as Berkeley Springs contains a whole lot more residents. Many are only vaguely aware of VDARE's presence, let alone the particulars - including the perceptions of outsiders. Some residents are liberal; most are not. But all resent being stereotyped as stereotypers, even the ones who are.

To those ready to blacklist Berkeley Springs: believing its brand of intolerance would be tolerated isn't the *only* reason the VDARE chose this spot to be born. Other towns with far more sympathizers exist. And even those have some opponents.

Anyone who is otherwise interested in Berkeley Springs should visit. The only way to teach tolerance is to *be* tolerant. The only way to eliminate prejudice is through familiarity: face to face, human to human. Just stay one mile below the speed limit. Seriously.

≺

> ∧ **2112syrinx**  3 months ago
>
> Many Americans don't care about racism or bigotry until it personally impacts their lives. Maybe the presence of VDare will wake a few residents up.
>
> ≺

>> ∧ **DCkat3**  3 months ago
>>
>> Hoping. There are more and more mixed race grandchildren too, which may help.
>>
>> ≺

>> ∧ **AQB24712**  3 months ago
>>
>> Thank you. We welcome all y'all.
>>
>> ≺

**AA1133**

**beached56**  3 months ago

VDare could also stand for venereal diseases are white supremacy organizations.

<

**VegFarmer**  3 months ago

More on who else is " just fine" with the vdare people can be found here:

https://www.splcenter.org/hatewatch/2022/12/15/berkeley-springs-hate-group-who-stole-christmas

<

**Kit Traverse**  3 months ago

Nothing says "diversity is a weakness" quite like the gene pool of inbred country people ;)

You can ask the Romanovs and Habsburgs about it, too ;)

<

**EnnCeeNative**  3 months ago  **(Edited)**

That's such an ugly stereotype about WVA. Did you even read the article? This particular town attracts a diversity of people. Plus, the Head of Hate for the Vdare group is British. IMO, Stereotypes are for lazy people who can't be bothered with reality and nuance.

<

**AA1134**

⌃ **Kit Traverse** 3 months ago **(Edited)**

Well that's why I made sure to include the decidedly elite and aristocratic Habsburgs and Romanovs. Diversity is an unambiguous strength biologically, which was my point. I was casting aspersions on the idea of inbreeding itself (and by implication VDare's biologically disastrous ideology), not on the town or any particular group of residents.

And of course I read the article. More carefully than you read my post ;)

⌃ **IdiAminDada** 3 months ago

Real "diversity of people." More than 96% White and 0 African Americans.

⌃ **LIB100845** 3 months ago

So this anti-immigrant organisation is run by an immigrant from Britain, known for a sense of irony in humour?

⌃ **Sebos2** 3 months ago **(Edited)**

A wonderful example of hate itself!!!

**Kit Traverse** 3 months ago

Would you care to defend the biological utility of inbreeding to our studio audience? Can you justify it? Can you defend the notion that "diversity is weakness" when revealed at the genomic level?

If you can't, it's like saying I hate inbreeding the way doctors hate disease – a hatred they'd readily cop to ;)

<

**IdiAminDada** 3 months ago

And the Mountbatten-Windsors.

<

**MissBianca2U** 3 months ago

Brimelow is an anti-immigration immigrant. Huh. "I got mine. Now close the hatch and pull up the ladder."

<

**wjy123** 3 months ago

What a great story on the various "White saviors" seeking to virtue signal in Berkeley Springs! Be sure to read to the end to learn that those complaining the most are those "coming to the rescue" of people who don't seem to have any problem with the new owners.

<

**Finn NaCasur** 3 months ago

I think it's hysterical that they named their org after the first anchor baby.

<

**AA1136**

**Ethereal Fairy**  3 months ago

Named by an immigrant dude, no less.

<

---

**mzander**  3 months ago  **(Edited)**

"...we don't believe VDARE has the power to ruin the local economy or make a dent in who we are to the rest of the world", says the editorial in the local rag.

Well, they're wrong. We've enjoyed visiting Berkeley Springs in past years, but will avoid it now, even if the racist organization leaves. The bulk of the townspeople (98% according to Hunter Clark) find the Nazis in the castle to be "delightful". The town has shown itself to be perfectly fine, if not actively supportive of, the modern Klan in its midst. And if we did find ourselves broken down in the town, we certainly would not be patronizing the Country Inn or the souvenir shop owned by Barb Wolfe; that they're welcome in the Catholic church is a particular blasphemy.

Altogether, a disgusting and dismaying picture yet again of how deplorable much of this country is, and how emboldened they've become in the past seven years to flaunt their hate.

<

**EnnCeeNative**  3 months ago  **(Edited)**

@ meander That's right — quit going there and supporting the blue dot people — the artists and creatives who gather there. That'll teach them to try to turn red areas purple. To wit see @sls4686 's comment below.

<

**AA1137**

∧ **DCkat3**  3 months ago

That's what *Clark* said. And it sounds like he meant the Christmas castle tours, not VDARE.

<

---

∧ **VegFarmer**  3 months ago  **(Edited)**

That's a shame, because not everyone (including businesses) support this vdare stuff. We didn't get to vote on who bought the castle.

<

---

∧ **InsightDrivenDude**  3 months ago

It's funny how the racists at VDare (let's call them what they are) continually insist that diversity is a weakness. After all, any uniformity that would be imposed would not default to their 1930s segregationist views but would rather seek to remove them and their fellow travelers from society.

Be careful what you wish for, anti-American right wing. You might get it — and not in the way you think.

<

---

∧ **LIB100845**  3 months ago

You mean the immigrant leader may himself get deported?

<

---

∧ **Ethereal Fairy**  3 months ago

It looked like he had at least 5 anchor-babies, too.

<

---

**AA1138**

∧ **treesbysea**  3 months ago

Ellie Silverman has written a balanced article on a controversial matter—a feat not to be taken for granted these days.

⤳

---

∧ **sls4686**  4 months ago

This castle–and the store owner, with her very ignorant comment, mentioned in this article–are NOT reflective of this town I know very well–as I live here, too. A massive amount of people here–so much more than this article seems to reflect—are entirely disgusted with this organization being here. There was little to nothing anyone could do to prevent the private sale of a property, but the views of that organization are not reflected as you walk around downtown. The real shame is people now associating an entire town with one crappy organization that it had nothing to do with...and the town's tourism (which it greatly depends on) now suffering for it. Please don't let this awful organization now effect the livelihoods of everyone within unfortunate proximity to its building.

⤳

---

> ∧ **LIB100845**  3 months ago
>
> Tourist industry groups in this town might wish to display signs proclaiming "We Welcome Diversity" to encourage visitors
>
> ⤳

---

∧ **tbox1**  4 months ago

The Man in the High Castle

⤳

---

∧ **Kit Traverse** 3 months ago **(Edited)**

Philip K Dick forever ;)

<

∧ **WVblues** 4 months ago **(Edited)**

This article is the kind of both-sides-ism that newspapers in the pre-WWII era wrote about the rise of National Socialism in Germany and Italy. The Post should do better than a feature fluff piece based on a few days of interviewing residents of the town. There is a long history of extremism establishing itself in this state and region. The premise of this article is that it's something novel for a Christmas story. Do your research to make a difference and stop parachuting in to extract and profit just as the coal companies did for decades. This isn't the journalism I learned and teach. Shameful.

<

∧ **tbox1** 4 months ago

Robert Bryd, for one

<

∧ **InsightDrivenDude** 3 months ago

Byrd is nothing like VDare. He renounced his racist past quite vehemently long before entering the Senate — while these guys (and you as well) insist that racism and white supremacism are no big deal.

<

∧ **NKB000** 4 months ago

The irony of an immigrant naming his anti-immigration organization after another immigrant.

<

**AA1140**

∧ **KevInPDX**  4 months ago

Thank you! My first thought was Virginia Dares parents were immigrants (!!!) and this dude is an ex-Pat Brit and I assume naturalized citizen? Or just has a green card?

≺

∧ **InsightDrivenDude**  3 months ago  **(Edited)**

Green cards are granted conditionally on good character. Given this man's odious activities, his green card should be revoked and he should be deported home to Britain. If he gained citizenship as a result of his green card, that should be revoked on bad character grounds and he should be sent home to the UK on the next available flight.

The right to reside in the United States and gain US citizenship is a privilege. It should be barred to foreigners like this man, who undermine our values and seek to destroy our diverse republic.

≺

∧ **LIB100845**  3 months ago

Ultimate irony

≺

∧ **YodaTheOpinionated**  4 months ago

The disease of pan-Europeanism continues on. This is why America needs fewer of those of European descent, more of color.

≺

**AA1141**

⌃ **MNNelly** 4 months ago

Interesting that Brimilow is himself an immigrant. So, apparently, white immigrants from Britain don't count as a problem.

\<

> ⌃ **cathy t** 3 months ago
>
> They aren't anti-immigration. They're white nationalists who want to only allow in people they consider white.
>
> \<

⌃ **Anne Bracewell** 4 months ago

I especially love his complaint that someone came to his church with a gun. The right thinks they can carry guns any and everywhere. But of course, same way they acted when Black Panthers started carrying, it's different when someone they don't like is doing it.

\<

> ⌃ **LIB100845** 3 months ago
>
> This whole story is riddled with irony. An immigrant running an anti-immigration organisation whose name derives from the name given to a child born of immigrants. Gun trotting right wingers being unsettled by guns being carried by those that are not members of right wing groups
>
> \<

**AA1142**

︿ **northernfox** 4 months ago

> But many of Johanson's neighbors aren't bothered by VDare. They said it was none of their business what the "castle people" published on their website.

In other words...

⌁

---

︿ **jackattack949** 4 months ago

How about the irony of Brimelow being an immigrant, that was the first thing that caught my attention. If his immigration status is irrelevant because of his whiteness isn't that the epitome of being a racist and white supremacist?

⌁

---

> ︿ **tmmm** 4 months ago
>
> Apparently it doesn't matter if you're an immigrant, as long as you're from the white–er, I mean *right* country.
>
> ⌁
>
> ---
>
> > ︿ **IdiAminDada** 3 months ago
> >
> > Reicht.
> >
> > ⌁

**AA1143**

Case 1:22-cv-01087-RJS-OTW Document 39-5 Filed 07/24/23 Page 32 of 749

∧ **NTNR20** 4 months ago

How long would America be around with its aging population if everyone was white? The pilgrims wouldn't have survived without the Native Americans. Also, some of the "diversity" people seem to think handicaps America did not come here by choice.

≺

∧ **WmThackeray** 4 months ago

> "Whatever they want to do, it's not my concern."

Well, what a good little German. Jeez.

≺

∧ **NTNR20** 4 months ago

Why didn't VDare go down to Florida? Fertile ground for their ideas.

≺

∧ **Incorrigible-Idealist** 4 months ago

No medieval castles overlooking the town for sale there?

≺

∧ **OldH2OMaker** 3 months ago

There's Disney World...right?

≺

**AA1144**

**^ Ethereal Fairy** 3 months ago

Solomon's Castle is one, but I think it is still in the family, and nowhere near as big.

<

**^ ALP** 4 months ago

Since Brimelow is an immigrant–He should go home. I will not visit Berkeley Springs again until his white supremacist organization is gone.

<

**^ DCkat3** 3 months ago

Just curious about how anyone expects that to play out. Pitchforks and torches? Tar and feathers? Not even in West Virginia ...

<

**^ Catherine** 4 months ago

The British-born anti-immigration activist

Oh, the irony…

<

**^ John Iwaniszek** 4 months ago

They used to say that nasty racist Jesse helms was "courtly"

<

**AA1145**

**^ Ethereal Fairy** 3 months ago

He must have been, he seduced the family maid, who was all of 15 at the time and had a secret daughter with her. The family acknowledged her after he died.

&lt;

---

**^ Denver View** 4 months ago **(Edited)**

Living in Colorado, you get used to stretching "live and let live" to the breaking point with having organizations like this as part of the landscape. The secret to maintaining social harmony is to make sure you keep the property looking nice. IDK why, but running a hate group HQ means you better mow the lawn regularly. I wouldn't worry too much, if you don't like what happens there don't visit, and if people pre judge you for living in the same place as someone else, well now you know that that person isn't worth your time.

&lt;

---

**^ Kat10132** 4 months ago

I haven't read any of the comments, yet, but found it ironic that the organization is named after one of the earliest of IMMIGRANTS to the continental US. And that b/c she was white blinds the group to the irony.

&lt;

**^ Incorrigible-Idealist** 4 months ago

I think their point is that she was the first non-immigrant white person because of her birth here. (historical fiction, I know).

&lt;

**⌃ J D Riggle**  4 months ago

Who wants to debate white nationalism or white supremacism?

I think I'll go to the burka store today, get a nice one, a full one with that face mask thingy, and parade around in front of his dopey "castle."

⌃

> **⌃ clevis**  4 months ago
>
> Yeah, that's the ticket!!!
>
> ⌃

**⌃ BreatheStillness**  4 months ago  (Edited)

Not sure I will go to Berkeley Springs anymore. Trump votes and Brinklow family hate is no place to enjoy. And that gift shop woman too. Sorry.

⌃

> **⌃ AQB24712**  3 months ago
>
> There's more to Berkeley Springs than those stains. Come on back!
>
> ⌃

**⌃ THC456**  4 months ago

So Vdare top funders include Donors Trust and the Kochs. Not mentioned - maybe the reporters were unaware - both dark money orgs just happen to be among Leonard Leo's top funders. From far right racist anti-immigration to the far right Catholic takeover of the Supreme Court. Probably just an unrelated coincidence.

⌃

**AA1147**

∧ **Incorrigible-Idealist** 4 months ago

Catholic takeover? Really?

<

---

∧ **THC456** 3 months ago

Six out of nine far right Catholics. Leo, a far right Catholic, responsible for five - he hand picked, vetted and campaigned for each, spending tens of millions in dark money to see them seated. So yes. Really.

<

---

∧ **Major Deegan** 4 months ago

"Its founder, Peter Brimelow, 75, who runs VDare with his 38-year-old wife, Lydia, denies being a white nationalist or white supremacist."

Got it. Big age discrepancy.

<

---

∧ **clevis** 4 months ago

Yours is a bigoted statement.
I thought "love is love"??

<

---

∧ **Anne Bracewell** 4 months ago

All is he did was note the difference.

<

---

**AA1148**

 **Molly Goodwin Landerkin**  4 months ago  (Edited)

The townspeople of Berkeley Springs who don't see a problem with the Brimleys and their "hate" CASTLE and VDare are just like the German people who looked the other way as the Nazis inseminated their way into German society in the 1930's. History repeating itself. In order for America to stay FREE, everyone must be vigilant and call out the hate no matter how "pretty" it looks. We are a nation of immigrants.

&lt;

 **rzzzzz**  4 months ago

Wait. VDare celebrates British immigration. I'm sure the local folks who they supplant were happy to be chased off their land.

&lt;

⌃ **Moor2itthanthat** 4 months ago

Another immigrant not wanting immigrants in the country. If these people belong to, give voice to or support white supremacy, they are probably against only certain people immigrating here-people who are not white. It's sad that anyone sees themselves as special because of their race. It's plainly obvious that diversity has been key to America's strengths, survival & victories in times of war. Too few white people seem to know it. The Italians, Irish & other Europeans not considered "white" were viewed as unacceptable, but fought in wars & contributed to the diversity of America's population, eventually being accepted into "whiteness" (just as people of color began to become part of the political & social network. Another effort to maintain a white political majority). Despite being enslaved, kept ignorant, ostracized & demonized, Black people fought in all of America's wars & contributed to its building. Now, this racist Brit comes here & wants to stir the racial discord pot, by giving voice & support to white supremacists. He, the Australian (who bought up news organizations & T.V. stations to spread his poisonous b.s.) Rupert Murdoch & the South African (who bought Twitter) Elon Musk, need to butt out of America's social strife & take their racist behavior & beliefs back to their own countries. They're the kind of immigrants we don't need. We have more than a sufficient number of home grown white supremacists. The immigration policy of allowing people from outside the U.S. to gain citizenship, if they provided employment for people, has led to white supremacists finding fertile ground for propagation of their racist ideals. This guy is just one more of them. Racists can be some of the most polite, charming, socially acceptable human beings you could meet. Their behavior doesn't announce their beliefs or convictions. White enslavers were the top of the social order. Everyone in this country is an immigrant or descendant of one, except Native people & Black people.

⤳

**AA1150**

**∧ David Hindman** 4 months ago

How ironic that VDare is led by an immigrant. I guess that's OK as long as you're White. Also ironic that it is named for Virginia Dare, an undocumented immigrant who came across the border under subterfuge and opened a tidal wave of similar undocumented immigrants who eventually took over everything. Again, I guess that's OK as long as you're White. Sadly, VDare believes that diversity is a bad thing, but genetic scientists have long known that diversity is essential for a thriving community, and that diminished diversity can even lead to the death of a species.

<

**∧ EmmaMC** 4 months ago

Imagine being this guy and thinking you're superior to...well, anyone really. God grant me the confidence of a mediocre white man.

<

> **∧ Steve Prefontaine** 4 months ago
>
> 'Mediocre' is a compliment for this geriatric loser.
>
> <

> **∧ DCkat3** 3 months ago
>
> Yes, prejudice against a person on the basis of his membership in a particular group is just awful.
>
> <

**AA1151**

**^ Tmamacv**   4 months ago

They're well funded and disguised racial ideologues with pleasant temperaments and enough money to sue the crap out of anyone they feel threatened by.

Other than that, they're fine neighbors, and generously open their grand home to visitors over the holidays. They're a bit like the Bailey Family of Bedford Falls with a 21st century, out in the open, monetized, white grievance, sort of twist. Not surprising over 70% of the town voted for Trump.

‹

---

**^ Teddnj**   4 months ago

When Brimelow said he wants the Supreme Court to get rid of Brown v Board of Education that tells you all you need to know about him and his crazy family. How can any rational thinking person say it doesn't concern them?

‹

---

> **^ KingCrab**   4 months ago
>
> Why do you think people send their kids to private schools? And that includes liberals and wokesters. Not just 'white supremacists.'
>
> ‹

---

> > **^ IdiAminDada**   3 months ago
> >
> > > Why do you think people send their kids to private schools?
> >
> > I did so my kids wouldn't have to go to school with the Brimelows of the world.
> >
> > ‹

**AA1152**

**⌃ appalachian** 4 months ago

Don't like them don't support them. Protest legally and loudly understanding that they have the same legal protections as their opponents. Hell, it might even eventually run them out of town. But note that going over the top forces legal retractions, restraining orders, and lost lawsuits, all of which add to their strength. Confusing stupid with righteous keeps them in the castle.

≺

**⌃ Demrep007** 4 months ago

Diversity today Diversity tomorrow Diversity for ever should be the saving grace for USA.

≺

> **⌃ AntiPopulist** 4 months ago
>
> I don't agree with the Brimelows that diversity is a weakness. I'm not sure it is such a great strength either, seems like a wash to me.
>
> ≺

> **⌃ IdiAminDada** 3 months ago
>
> > I'm not sure it is such a great strength either, seems like a wash to me.
>
> Explain?
>
> ≺

**AA1153**

**∧ Fed Up**  4 months ago  **(Edited)**

The US was founded on principles of free speech. You can't try to silence people because you don't agree with them. Anyone who tries to do that should be prosecuted.

‹

> **∧ IdiAminDada**  3 months ago
>
> Well, I'm funny about Nazis trying to do anything or say anything. I think they and their beliefs should be eliminated from the face of the Earth.
>
> ‹

**∧ kjr2016**  4 months ago

> Whatever they want to do, it's not my concern."

I am deeply ashamed of my fellow white women. And this one claims to be a good Christian.

‹

> **∧ Cape Cod 65**  4 months ago
>
> This jumped out at me as well. "Whatever they want to do, it's not my concern" is not an acceptable response to hypocritical bullies like VDare. So many people said that in the latter 1930's in Germany.
> Trying to deflect what VDare is really doing by saying its only about immigration not white nationalism is a typical tactic of Fascist ideology. And it is not acceptable.
>
> ‹

∧ **ddwoods**  4 months ago

Just shows that all "christians" aren't Christ followers

‹

∧ **Ethereal Fairy**  3 months ago

The worst ones always do. And very loudly, too

‹

∧ **Discernment - Please**  4 months ago

Looks like VDare is attempting to silence those who hold views different from thier own. Threats to sue others who see anti-diversity for what it is, suggests they cannot tolerate diverse opinions as well as diverse culture, diverse society, diversity itself.

‹

∧ **Pluckhead**  4 months ago

I didn't read ALL the comments, but I read enough to judge that the Post readers are largely idiots.
Not once did I see any reference to ILLEGAL immigration. That's the problem.
Not the immigrants who's very first action in our country is breaking the law.

‹

∧ **EmmaMC**  4 months ago

I'd love to see you pass the test that people have to take to become citizens. I daresay the average immigrant - legal or otherwise - knows more about our history and how our government is intended to work than you.

‹

**AA1155**

ᐱ **cathy t**  3 months ago

That's because your scary bogeyman "illegal immigration" has nothing to do with the story. Vdare opposes legal immigration of anyone they don't consider white, and also opposes civil rights for American citizens.

<

ᐱ **IdiAminDada**  3 months ago

> Not once did I see any reference to ILLEGAL immigration. That's the problem. Not the immigrants who's very first action in our country is breaking the law.

Well, you do realize that Virginia Dare's parents were ILLEGAL immigrants?

<

ᐱ **Jsch88**  4 months ago

Being opposed to chaotic immigration policies and outcomes is one thing. Almost everyone I know wants this fixed in a fair but firm way. Promulgating the notion that only white America is the true culture and that diversity is a weakness could not be farther from the truth. I served in the Air Force for over a decade and deployed worldwide. Our air crew had every race, creed color and religion. Typical America. We all got along and got the job done well. Most countries were remarkably homogeneous and simply could not figure us out. It was with admiration that they watched us. Our diversity is a huge American strength and the envy of the world. If we can continue to make it work our future will be bright.

<

ᐱ **Clawhammer**  4 months ago

Opposition to unfettered illegal trespassing is not racism.

<

**AA1156**

**^ Random Individual** 4 months ago

It is when only certain people are opposed. Does the group also stand against white British folk coming over?

<

**^ colonial annie** 4 months ago

Wasn't Virginia Dare the first English child born in a New World Engish colony?

<

**^ GregPittsburgh** 4 months ago

It is when the definition of legal and illegal is based on race. What exactly do you think Trump meant when he said he wanted "Norwegians" to immigrate?

<

**^ o12thes** 4 months ago

If the country is so much better without immigrants, what is Brimelow doing here? Never mind their English mascots (early settlers) were...illegal immigrants, pushed out of a continent that was sick of their religious antics.

<

**^ anothertoom** 4 months ago

Brimelow the immigrant is doing OK peddling anti-immigrant slogans. He is trying to be another Trump/GOP

<

**AA1157**

**^ JAH2017**  4 months ago

Brimelow is a recent immigrant who has made his career virulently opposing...immigrants. This says it all.

All those W.Va. neighbors saying "It's not my business what VDare does" might learn from the Germans who stood by during Kristallnacht. "Those who do not learn history are doomed to repeat it."

I certainly wouldn't spend money in their town.

<

---

**^ DemocratAbroad85**  4 months ago

I live in a small town. We talk to each other face-to-face to solve our differences. We don't involve lawyers.

The Brimelow family should be ashamed of their hypocritical behavior...touting free speech rights and need to be treated like everyone else, but using methods that create distrust and tear apart the local social fabric to be treated "fairly".

I've been to Berkeley Springs for vacation and it was lovely. I don't think I'll visit again, now that VDARE has turned it into their fortress thinktank :(

<

---

> **^ katrose99**  4 months ago
>
> It was on my list of places for a small vacation - now it is not.
>
> <

**AA1158**

**∧ ddwoods** 4 months ago

I'm with you. I enjoyed my time there. However, if the town is willing to just roll over for them I'll spend my money someplace else.

<

**∧ lisaswanson** 4 months ago

Just so you know, this is a story because of the many of us who live in the town who object and resist. Come see the spas, the music venues, the drag show!, the two state parks, the farmers market...

<

**∧ passport holder** 4 months ago

Wonder if he's (or his wife) ever done a DNA test to find out exactly where HIS ancestors came from. It's also a bit absurd form him to dislike immigrants when he is an immigrant!

<

**∧ NiknNY** 4 months ago

What the Brimelows dislike are immigrants and anyone else who are not lily white, Christian, of Northern European ancestry.

<

**∧ SF1900** 4 months ago

Maybe we should pass a law that makes any profits derived from hate speech illegal.

<

**AA1159**

⌃ **clevis**  4 months ago

Unconstitutional

⌵

---

⌃ **Bantry Bay**  4 months ago

Consumed by fear. Build that wall..er...Castle.

⌵

---

⌃ **clevis**  4 months ago

Fear of what?

⌵

---

⌃ **Random Individual**  4 months ago

Change apparently

⌵

---

⌃ **Tlayacapan**  4 months ago

Hmmmm....let's not be so harsh. I'm sure every Native American feels the same way.

⌵

---

⌃ **Nice Guy JD**  4 months ago

The real threat is from the lizard people. We will need, all of us, to be united in our racism against the lizard people.

⌵

---

**AA1160**