# 23-1084(L),

## 23-7409(CON)

IN THE UNITED STATES COURT OF APPEALS FOR THE
SECOND CIRCUIT

VDARE FOUNDATION, INC.,

*Plaintiff-Appellant,*

- v. -

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern
District of New York, Case No. 1:22-cv-01337 (FJS/CHF)

**OPENING BRIEF OF APPELLANT
VDARE FOUNDATION, INC.
AND SPECIAL APPENDIX**

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 888-887-1776
Email: jmw@randazza.com

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
Email: ecf@randazza.com

*Counsel for Appellant*
**Appellant Requests Oral Argument**

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant VDARE Foundation, Inc. ("Appellant" or "VDARE") hereby states, pursuant to Fed. R. App. P. 26.1, that is has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................I

TABLE OF AUTHORITIES......................................................... IV

STATEMENT OF JURISDICTION ........................................... 1

    A. THE DISTRICT COURT'S JURISDICTION ................................ 1

    B. THE COURT OF APPEALS' JURISDICTION............................ 2

    C. TIMELINESS OF THE APPEAL ............................................ 3

STATEMENT OF THE ISSUES ............................................... 4

CONCISE STATEMENT OF THE CASE.................................. 4

    A. NATURE OF THE CASE ...................................................... 4

    B. RELEVANT PROCEDURAL HISTORY .................................... 10

    C. IDENTIFICATION OF THE JUDGE WHO RENDERED THE DECISION BEING APPEALED ................................................................... 12

    D. DISPOSITION BELOW ...................................................... 12

    E. CITATION OF THE DECISION OR SUPPORTING DECISION ................... 13

SUMMARY OF THE ARGUMENT........................................ 14

ARGUMENT................................................................... 17

    A. STANDARD OF REVIEW ................................................... 17

    B. THE RELIEF SOUGHT IS NOT BARRED BY RES JUDICATA................... 17

       1. Equity Does Not Support Application of Res Judicata ............. 20

       2. Appellee Fails to Meet the Elements of Res Judicata............... 29

    C. THE MOTION FOR A PRELIMINARY INJUNCTION SHOULD HAVE BEEN GRANTED................................................................... 33

1.  VDARE has a Strong Likelihood of Success of the Merits ......... 33

2.  The Remaining Preliminary Injunction Factors Favor VDARE 49

CONCLUSION ............................................. 50

CERTIFICATE OF SERVICE ................................. 52

CERTIFICATE OF COMPLIANCE ......................... 53

# TABLE OF AUTHORITIES

## CASES

*A'Hearn v. Committee on Unlawful Practice of Law of NY County Lawyers' Ass'n*, 23 N.Y.2d 916 (1969)................................................... 39

*Agudath Israel v. Cuomo*,
 983 F.3d 620 (2d Cir. 2020)............................................................ 35, 49

*Ams for Prosperity Found. v. Bonta*,
 141 S. Ct. 2373 (2021) ...................................................... 38, 39, 42, 46

*Arista Records LLC v. Doe*,
 604 F.3d 110 (2d Cir. 2010)................................................ 26, 27, 39, 48

*Brown v. Lockwood*,
 432 N.Y.S.2d 186, 200 76 A.D.2d 721 (2d Dept. 1980) ....................... 28

*Brown v. Socialist Workers '74 Committee (Ohio)*,
 459 U.S. 87 (1982) ..................................................................... 42, 46

*Buechel v. Bain*,
 97 N.Y.2d 295 (2001) ....................................................................... 20

*Capasso v. Capasso*,
 119 A.D.2d 268 (1st Dept. 1986)........................................................ 26

*Charette v. Town of Oyster Bay*,
 159 F.3d 749 (2d Cir. 1998)............................................................... 11

*Chevron Corp. v. Naranjo*,
 667 F.3d 232 (2d Cir. 2012).............................................................. 35

*Citibank, N.A. v. Citytrust*,
 756 F.2d 273 (2d Cir. 1985).............................................................. 45

*Citizens United v. FEC*,
 558 U.S. 310 (2010) ....................................................................... 34

*Cullen v. Fliegner*,
 18 F.3d 96 (2d Cir. 1994)................................................................. 36

*Davidson v. Capuano*,
792 F.2d 275 (2d Cir. 1986)...................................................... 31

*Dayton Christian Schools v. Ohio Civil Rights Com.*,
604 F. Supp. 101 (S.D. Ohio Jul. 30, 1984) ......................... 49

*DeRosa v. National Envelope Corp.*,
595 F.3d 99 (2d Cir. 2010).................................................... 21

*Elias v. Artistic Paper Box Co.*,
29 A.D.2d 118 (2d Dept. 1967).............................................. 32

*Elrod v. Burns*,
427 U.S. 347 (1976) .............................................................. 45

*England v. Louisiana State Board of Medical Examiners*,
375 U.S. 411 (1964) ......................................................... 22, 28

*Evergreen Ass'n, Inc. v. Schneiderman*,
153 A.D.3d 87 (2d Dept. 2017)......................................... 42, 46

*Fengler v. Numismatic Americana, Inc.*,
832 F.2d 745 (2d Cir. 1987).................................................. 11

*Gilberg v. Barbieri*,
53 N.Y.2d 285, 441 N.Y.S.2d 49 (1981) .......................... 20, 25

*Gramatan Home Investors Corp. v. Lopez*,
414 N.Y.S.2d 308 (1979)...................................................... 24

*Hartford Courant Co., LLC v. Carroll*,
986 F.3d 211 (2d Cir. 2021).................................................. 50

*Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*,
820 F.3d 58 (2d Cir. 2016)...................................................... 3

*James v. VDARE Foundation, Inc.*,
Index No. 453196/2022 (Sup. Ct. N.Y. Cnty. 2022) ...... 18, 23

*Juan C. v. Cortines*,
657 N.Y.S.2d 581 (1997)....................................................... 20

*Kuczinski v. City of New York,*
 352 F. Supp. 3d 314 (S.D.N.Y. Jan. 18, 2019) ..................................... 34

*La Union Del Pueblo Entero v. Abbott,*
 No. SA-21-CV-00844-XR, 2022 U.S. Dist. LEXIS 222064 (W.D. Tex.
 Dec. 9, 2022) ........................................................................................ 42

*Laundau v. LaRossa, Mitchell & Ross,*
 11 N.Y.3d 8 (2008) ............................................................................... 29

*Martinez v. Sanders,*
 307 Fed. Appx. 467 (2d Cir. 2008) ...................................................... 36

*Matal v. Tam,*
 137 S. Ct. 1744 (2017) .................................................................. 23, 37

*Matusick v. Erie Cnty. Water Auth.,*
 757 F.3d 31 (2d Cir. 2014) .................................................................. 28

*McIntyre v. Ohio Elections Commission,*
 514 U.S. 334 (1995) ............................................................................. 42

*Milligan v. GEICO Gen. Ins. Co.,*
 2022 U.S. App. LEXIS 3922 (2d Cir. Feb. 14, 2022) ........................... 35

*Mohammed v. Reno,*
 309 F.3d 95 (2d Cir. 2002) .................................................................. 50

*Monahan v. N.Y.C. Dep't of Corr.,*
 214 F.3d 275 (2d Cir. 2000) ................................................................ 29

*Mullins v. City of New York,*
 307 Fed. Appx. 585 (2d Cir. 2009) ...................................................... 45

*Myerson v. Lentini Bros. Moving & Storage Co,*
 33 N.Y.2d 250 (1973) ........................................................................... 39

*N.Y. Progress & Prot. PAC v. Walsh,*
 733 F.3d 483 (2d Cir. 2013) .......................................................... 35, 50

*NAACP v. Alabama ex rel. Patterson,*
 357 U.S. 449 (1958) ....................................................................... 38, 45

*NAACP v. Button*,
   371 U.S. 415 (1963) ............................................................................. 37

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ............................................................................ 21

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................ 50

*O'Neill v. Oakgrove Constr., Inc.*,
   71 N.Y.2d 521, 523 N.E.2d 277 (1988) ................................................. 36

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ................................................................. 17

*People of the State of New York, by Letitia James, Attorney General of the State of New York v. VDARE Foundation, Inc.*,
   No. 2023-00672 (1st Dept. 2023) ........................................................ 19

*People v. Roselle*,
   84 N.Y.2d 350 (1994) ......................................................................... 20

*Perry v. Schwarzeneggar*,
   591 F.3d 1147 (9th Cir. 2009) ....................................................... 42, 48

*R.A.V. v. St. Paul*,
   505 U.S. 377 (1992) ........................................................................... 37

*Reilly v. Reid*,
   45 N.Y.2d 24 (1978) ........................................................................... 29

*Republic of Philippines v. New York Land Co.*,
   852 F.2d 33 (2d Cir. 1988) .................................................................. 11

*Rosenblatt v. Baer*,
   383 U.S. 75 (1966) ............................................................................. 37

*Scheff v. Banks*,
   2023 U.S. App. LEXIS 18904 (2d Cir. Jul. 25, 2023) ........................... 13

*Simmons v. Trans Express Inc.*,
   37 N.Y.3d 107 (2021) ......................................................................... 30

*Sprecher v. Graber*,
    716 F.2d 968 (2d Cir. 1983)..................................................... 25

*Talley v. California*,
    362 U.S. 60 (1960) .......................................................... 22, 42

*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995)..................................................... 45

*Trump v. Vance*,
    941 F.3d 631 (2d Cir. 2019) ................................................... 17

*U.S. v. Rumely*,
    345 U.S. 41 (1953) ............................................................ 22

*United States v. El Paso Natural Gas Co*,
    376 U.S. 651 (1964) ........................................................... 26

*VDARE Foundation, Inc. v. James*,
    No. 1:22-CV-1337-FJS-CFH (N.D.N.Y. June 27, 2023)....................... 13

*VDARE Foundation, Inc. v. James*,
    No. 1:22-CV-1337-FJS-CFH, 2023 U.S. Dist. LEXIS 161963
    (N.D.N.Y. Sept. 13, 2023) ..................................................... 13

*Volokh v. James*,
    656 F. Supp. 3d 431 (S.D.N.Y. Feb. 14, 2023)................................ 5, 37

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ............................................................. 33

*Zervos v. Verizon N.Y.*,
    277 F.3d 635 (2d Cir. 2002)..................................................... 2

## STATUTES

28 U.S.C. § 1291 .................................................................. 2

28 U.S.C. § 1292 .................................................................. 2

28 U.S.C. § 1331 .................................................................. 1

28 U.S.C. § 1343 ............................................................... 2

28 U.S.C. § 1367 ............................................................... 2

28 U.S.C. § 1746 ............................................................. 47

42 U.S.C. § 1983 ......................................................... 9, 34

N-PCL § 306 .................................................................. 17

## OTHER AUTHORITIES

Mike Chase, HOW TO BECOME A FEDERAL CRIMINAL: AN ILLUSTRATED
HANDBOOK FOR THE ASPIRING OFFENDER 2 (2019). *Accord* Gary Fields
and John R. Emshwiller, *Many Failed Efforts to Count Nation's
Federal Criminal Laws*, THE WALL STREET JOURNAL (July 23, 2011) 19

Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982) ................ 31

## RULES

22 NYCRR 1200.0, Appendix A ................................................ 23

CPLR 2308 ..................................................................... 18

CPLR 311 ...................................................................... 17

CPLR 403 ...................................................................... 18

CPLR 408 ................................................................. 25, 31

CPLR 602 ...................................................................... 32

Fed. R. App. P. 26.1 .......................................................... ii

Fed. R. Civ. P. 65 ........................................................... 47

## CONSTITUTIONAL PROVISIONS

N.Y. Constitution Art. I, § 8 .............................. 10, 18, 34, 36

U.S. Const., Amd. I ..................................................... passim

U.S. Const., Amd. XIV ................................................ 1, 10, 34

## STATEMENT OF JURISDICTION

This appeal arises from VDARE's efforts to enjoin the enforcement of a subpoena from Letitia James ("Appellee" or "James"), Attorney General of the State of New York, on the basis of the retaliation and unconstitutional probity of anonymous contractors and vendors. VDARE moved for entry of a preliminary injunction. AA0564–AA0567. The District Court, without providing opportunity for oral argument, entered a memorandum-decision and order denying the preliminary injunction (SPA001–SPA021). VDARE appealed that order as Case No. 23-1084. AA1907–AA1908. The District Court subsequently dismissed VDARE's action. SPA042–SPA043. VDARE appealed that order as Case No. 23-7409. AA1984–AA1985.

### A.    The District Court's Jurisdiction

In the underlying litigation, the District Court possessed subject-matter jurisdiction over the action pursuant to 28 U.S.C. § 1331, as this is a civil action on a federal question under the First and Fourteenth Amendments to the United States Constitution, and because the action seeks to prevent state officials from interfering with federal rights.

1

The District Court possessed further subject-matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) because the action sought to redress deprivations under color of state law of rights, privileges, and immunities secured by the United States Constitution.

Further, the District Court had supplemental jurisdiction over state law claims asserted in this action under 28 U.S.C. § 1367. Appellant is aware of no facts that controvert the jurisdictional basis.

## B.  The Court of Appeals' Jurisdiction

This Court had jurisdiction over the initial appeal, Case No. 23-1084, because it related to an interlocutory order refusing an injunction. *See* 28 U.S.C. § 1292(a)(1). An order denying a preliminary injunction is immediately appealable. *See Zervos v. Verizon N.Y.,* 277 F.3d 635, 645 (2d Cir. 2002).  Therefore, Appellant asserts that that appeal is from an interlocutory decision which is immediately appealable as of right.

However, as the District Court, during the pendency of Case No. 23-1084, dismissed the complaint, this consolidated appeal is now an appeal of a final judgment, and this Court has jurisdiction per 28 U.S.C. § 1291.

## C.    Timeliness of the Appeal

On June 27, 2023, the District Court denied VDARE's motion for a preliminary injunction. SPA001–SPA021. VDARE filed its Notice of Appeal on July 27, 2023. AA1907–AA1908.  Such notice was within 30 days of the order being appealed.  Further, to the extent that the denial of the motion for preliminary injunction can be said to have affected the outcome of the matter, the appeal of the dismissal brings that order before the Court under the doctrine of mergers.  *See, e.g., Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown,* 820 F.3d 58, 62 (2d Cir. 2016).  Thus, the appeal in Case No. 23-1084 is timely.

Similarly, on September 13, 2023, the District Court granted Defendant-Appellee Letitia James's motion to dismiss (SPA022–SPA 041) and entered judgment dismissing VDARE's complaint (SPA042– SPA043).  VDARE filed its notice of appeal on October 13, 2023. AA1984– AA1985.   Such notice was within 30 days of the order being appealed. Thus, the appeal in Case No. 23-7409 is timely.

## STATEMENT OF THE ISSUES

1.      Whether the District Court committed reversible error in denying the motion for preliminary injunction on the basis of *res judicata*?

2.      Whether the District Court committed reversible error in dismissing the complaint on the basis of *res judicata*?

## CONCISE STATEMENT OF THE CASE

### A.      Nature of the Case

Defendant-Appellee Attorney General Letitia James has a history of targeting for censorship those she perceives as ideological foes. AA0013–AA0014.  On August 5, 2020, she joined several other attorneys general urging Facebook to clamp down on so-called "hate speech," particularly of the kind associated with the conservative side of the political spectrum.  AA0013.  On January 8, 2020, she gave a media interview regarding a newly formed "Hate Crime Unit" wherein she stated that such unit would be targeting social media companies.  *Id*.  The Attorney General manifestly does not believe that the answer to alleged bad speech is more speech, rather she intended the Hate Crimes Unit to engage social media companies to fight purported "racism, the spread of

4

disinformation and hate" by "strengthen[ing] their policies" which otherwise permit such expressions. *Id.* On December 3, 2022, New York's newly minted, unconstitutional "Hateful Conduct Law" went into effect. Appellee James was subsequently enjoined from using the "Hateful Conduct Law" to prevent what she unilaterally deemed the spread of dangerous and corrosive ideas. *See Volokh v. James,* 656 F. Supp. 3d 431 (S.D.N.Y. Feb. 14, 2023).

Appellant VDARE Foundation, Inc., runs VDARE.com, a web magazine. AA0012. Although organized under New York law, it is now headquartered in West Virginia. AA0010. VDARE has long been tarred by its opponents with pejoratives such as "white nationalist" and "racist." AA0012. Although VDARE rejects these labels and urges that its speech in fact constitutes criticism of current government policies on immigration (AA0012; AA0018), those labels have proved damaging. For example, multiple venues that had agreed to host VDARE conferences in the past have canceled on VDARE due to pressure campaigns and violent threats (AA0012) including the Cheyenne Mountain Resort in Colorado Springs, Colorado in 2017 (AA00224), the Tenaya Lodge in Yosemite

5

National Park in 2017 (*id.*), and a hotel in Tucson Arizona, also in 2017 (*id*).

Because of the antipathy by government and others within our society, many of VDARE's writers and vendors prefer to remain anonymous. AA0012. It is undisputed that, "[o]n occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE's existence have opted to stop providing services." *Id.* Specific businesses which have ceased servicing VDARE include Mailchimp and Constant Contact, PayPal, Amazon, Google Ads, and many smaller businesses. AA0224– AA-0225. Therefore, to protect its right to freedom of speech and association, VDARE remains vigilant about maintaining the privacy and anonymity of its content creators and vendors. *Id.*

In early 2020, VDARE bought a historic castle building in West Virginia for use as a headquarters and conference center. AA0010. The main impetus for the castle purchase was precisely the activity Appellee James is engaged in — deanonymizing vendors who are pressured into terminating their association with VDARE under the threat of "cancellation." AA0228.

6

In December of 2020, as part of its corporate re-organization, VDARE conveyed the castle and grounds to two separate entities, the castle and immediately surrounding lands going to the Berkeley Castle Foundation, Inc., and the remaining lands going to BBB, LLC, a West Virginia Limited Liability Company. AA0695. (VDARE's disposition of the properties in two deeds will often be referred to as the "Berkeley Springs Castle transactions" or the "castle transactions.") The Berkeley Castle Foundation is organized – like VDARE itself – for charitable purposes. AA0245–AA0249. BBB, LLC, by contrast, is a for profit LLC. AA0250–AA0254. Both entities were formed by Lydia Brimelow on behalf of VDARE, as evidenced by the use of an e-mail address and mailing address belonging to VDARE. AA0245–AA0249; AA0250–AA0254.

In the Spring and Summer of 2022, VDARE came into the crosshairs of Appellee's office, as she launched not one, but three separate subpoenas seeking information about VDARE. AA0014–AA0016. Specifically, Appellee served a subpoena dated May 13, 2022, directed at Meta Platforms, Inc., a subpoena dated June 14, 2022, directed at Facebook Payments, Inc, and finally, a subpoena directed at VDARE

7

Foundation, Inc. dated June 23, 2022. AA0261–AA0278; AA0309–AA0355. Together, all three subpoenas sought information across 68 different categories of documents, all aimed at uncovering aspects of VDARE's work and relationships. *Id.*

Apparently, Appellee was making good on the promises of her January 8, 2020, media interview, for the "Special Counsel for Hate Crimes" was responsible for both the Meta Platforms subpoena and the Facebook Payments subpoena. AA0309–AA0345. Appellee's targeting of VDARE was undoubtedly motivated by her disagreement with its constitutionally protected speech. AA0021–AA0023. She likewise cannot dispute that there are valid concerns arising out of the fact that, in 2022, her office leaked confidential information about the donors to another conservative group (the political non-profit "Stand for America"). AA0019. Nevertheless, Appellee argued (and the New York State Supreme Court, in an enforcement action, agreed) that the Berkeley Springs Castle transactions are the alleged "critical facts that first triggered [James's] scrutiny." AA0385; AA0393.

The subpoena directed at VDARE itself, which is the one subject to the instant action and appeal, seeks a broad array of documents across

8

44 categories. AA0261–AA0278. Few of these inquiries are tied to alleged misdeeds regarding the castle transactions, and any substantive inquiry related to it does not begin until the thirtieth request. Moreover, the subpoena constitutes a massive administrative burden for a small organization like VDARE. AA0010.

With grave misgivings, but in an attempted show of good faith (AA0231), VDARE began complying with Appellee's subpoena. However, as the focus was clearly on the castle transactions, VDARE's counsel repeatedly attempted to meet and confer with Appellee in order to narrow the issues and, in particular, to explain any apparent concerns about the castle transactions. AA0228–AA0229. Appellee, however, refused to meet and thus denied VDARE the opportunity to definitely lay any concerns about the castle transactions to rest. AA0229. When it became clear that Appellee was intent on forcing the discovery of even VDARE's writers and vendors, Appellant was forced into court.

VDARE filed a four-count Verified Complaint (AA0009–AA0026) for a) Declaratory Relief under the 1st Amdt., seeking a declaration that the subject subpoena infringes speech and associational rights regarding contractors and vendors; b) Relief under Section 1983 for 1st and 14th

Amdt. Retaliation (subpoena issuance) for protected speech; c) Relief under Art. I, Sec. 8, of the N.Y. Constitution for retaliation (subpoena issuance) for protected speech; and d) Injunctive relief, enjoining the subpoena on the basis of the retaliation and unconstitutional probity of anonymous contractors and vendors.

### B.    Relevant Procedural History

On December 12, 2022, VDARE filed its Verified Complaint for Declaratory and Injunctive Relief. AA0009–AA0026. On March 21, 2023, VDARE filed an emergency motion for temporary restraining order and for preliminary injunction.   AA0564–AA0567; AA0521–AA0550.   The request for a temporary restraining order was denied on March 27, 2023, and a briefing schedule on the request for a preliminary injunction was set, with the District Court asserting it would decide the motion on the papers, without a hearing.   AA0521–AA0550.   Defendant-Appellee, opposed that motion on April 10, 2023 (AA0666-0683; AA0684 – AA0687) and VDARE replied on April 24, 2023 (AA1060–AA1075; AA1076–AA1078).   VDARE then filed additional evidence it obtained in support of its motion.   AA1886.   Appellee objected to some of this additional evidence (AA1880–AA1885), but the District Court declined to strike it,

instead permitting Appellee to file a surreply. AA1893. Thus, on May 10, 2023, Appellee filed her surreply (AA1894–AA1903). No hearing was held on the motion, in contravention of Second Circuit precedent.[1] The motion was denied by order of June 27, 2023. SPA001–SPA021.

Relatedly, on January 18, 2023, Appellee filed her motion to dismiss. AA0075. On January 26, 2023, she filed a supplemental letter arguing that the state court proceeding necessitated dismissal on *res judicata* grounds. AA0384–AA0386. VDARE filed its opposition to dismissal on February 22, 2023. AA0399–AA0401; AA0521–AA0550. Appellee responded on March 8, 2023. AA0551–AA0561. On March 14, 2023, she filed a supplement apprising the District Court of a denial of a stay pending appeal in the state proceeding. AA0562–AA0563. In

---

[1] Although the District Court indicated it would decide the motion "based on the parties' submissions" (Order of Mar. 27, 2023, AA0664–AA0665), Second Circuit caselaw would seem to potentially require an evidentiary hearing, and VDARE did not waive its right to such. To the extent there is a factual dispute, "there must be a hearing . . . and appropriate findings of fact must be made.'" *Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 37 (2d Cir. 1988) (quoting *Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 747 (2d Cir. 1987) (alteration omitted*). See also Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (indicating an evidentiary hearing is required if the facts are in dispute or have not been clearly demonstrated, if the disputed facts are not "amenable to complete resolution on a paper record[.]")

11

denying the motion for preliminary injunction, the District Court ordered the parties to submit supplemental briefing on the *res judicata* effect of the state court decision. SPA001–SPA021. On July 27, 2023, the parties submitted their supplemental briefs. AA1904–AA1906; AA1909–AA1913. Without a hearing, on September 13, 2023, the District Court granted the motion to dismiss on the basis of *res judicata* and entered judgment in favor of Appellee. SPA022–SPA041; SPA042–SPA043.

## C. Identification of the Judge who Rendered the Decision being Appealed

Hon. Frederick J. Scullin, Jr., U.S.D.J.

## D. Disposition Below

On June 27, 2023, the District Court issued a Memorandum-Decision and Order denying VDARE's motion for a preliminary injunction. SPA001–SPA021. Appellant filed a timely appeal from the denial of that motion. AA1907-AA1908.

While the appeal was pending, VDARE moved for an injunction pending appeal (AA1914–AA1916; AA1917–AA1939), to which Appellee responded (AA1971–AA1981). That same day, the District Court dismissed the Complaint on the same *res judicata* basis as it denied the preliminary injunction, and it denied the motion for injunction pending

12

appeal as moot (SPA022–SPA041; SPA042–SPA043). An appeal was taken from that decision and judgment (AA1984–AA1985), and the two appeals were consolidated.

Although this Court typically deems appeals of denials of preliminary injunctions moot when the underlying claim is dismissed, as the denial of the preliminary injunction merges with the final judgment of dismissal, *see, e.g., Scheff v. Banks*, 2023 U.S. App. LEXIS 18904, *6-7 (2d Cir. Jul. 25, 2023), this appeal, unlike *Scheff*, has been consolidated by the Clerk with the appeal of the judgment of dismissal. Thus, as consolidated, the appeals of the order denying the preliminary injunction and the order of dismissal are both properly before the Court.

### E. Citation of the Decision or Supporting Decision

The orders from which this consolidated appeal is taken are cited:

a) *VDARE Foundation, Inc. v. James,* No. 1:22-CV-1337-FJS-CFH (N.D.N.Y. June 27, 2023); and

b) *VDARE Foundation, Inc. v. James,* No. 1:22-CV-1337-FJS-CFH, 2023 U.S. Dist. LEXIS 161963 (N.D.N.Y. Sept. 13, 2023).

## SUMMARY OF THE ARGUMENT

The Court should reverse the order of dismissal and remand for entry of the requested preliminary injunction. In its *de novo* review of the issues of law, the Court should determine that the application of the equitable doctrine of *res judicata* failed to do equity. VDARE filed this action first, but Appellee managed to rush through state court, in a summary procedure without discovery, a petition to enforce her subpoena. It is inequitable to apply *res judicata* where Appellee made inconsistent representations to the different tribunals, failed to act reasonably, and made a misrepresentation to VDARE that enabled her to secure that rushed decision.

VDARE is not seeking two bites at the same apple—it never had a first bite. The state court relied on a state law presumption of Appellee's good faith, without any possibility of that presumption being rebutted, which is anathema to the First Amendment, and, in a proceeding devoid of discovery, failed to hold an evidentiary hearing to determine Appellee's credibility when VDARE presented evidence that it was being retaliated against on account of its speech. Nor did the state court exercise independent judgment—its decision was plagiarized from Appellee's

filing, devoid of any mention, let alone analysis, of the factors courts are supposed to use in stripping third parties of their right to speak and associate anonymously. These issues—First Amendment retaliation and First Amendment anonymity (the *res*)—have never been truly adjudicated, and dismissal of the complaint was, therefore, improper. Moreover, under the "transactional approach," the two proceedings—a civil action and a summary proceeding—do not form a convenient trial unit and treatment as a unit would not conform to VDARE's expectations. Thus, the Court should reverse the order of dismissal.

Once reversed, the preliminary injunction should be granted. The District Court only denied it on *res judicata* grounds, and with that issue decided in VDARE's favor, VDARE is otherwise likely to succeed on the merits of its claims for First Amendment retaliation and invasion of the right to speak and associate anonymously. Appellee's purported good faith basis for the subpoena is mere pretext, as evidenced by her political pronouncements and use of her so-called "Hate Crimes" unit in this matter, rather than the attorneys who ordinarily oversee charities. Nor was the subpoena narrowly tailored to meet the exacting scrutiny required to unmask anonymous citizens, as evidenced by her failure to

meet the *Arista Recs.* factors. The absence of a preliminary injunction will cause irreparable harm to both VDARE and third parties, the balance of equities favors VDARE, and the public interest is vindicated by the preservation of First Amendment rights. Thus, the matter should be remanded for entry of a preliminary injunction enjoining the subpoena.

# ARGUMENT

## A.    Standard of Review

The denial of a preliminary injunction is generally reviewable only for abuse of discretion, however, questions of law decided in connection with requests for preliminary injunctions receive the same *de novo* review that is appropriate for issues of law generally. *See Trump v. Vance*, 941 F.3d 631, 636-637 (2d Cir. 2019).

An order granting a motion to dismiss the complaint on the pleadings is reviewed *de novo* and the Court will construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.  *See Palin v. New York Times Co.,* 940 F.3d 804, 809 (2d Cir. 2019).

## B.    The Relief Sought is Not Barred by *Res Judicata*

On June 24, 2022, Appellee issued a subpoena *duces tecum* to VDARE, ostensibly pursuant to CPLR 311 and N-PCL § 306, commanding production by July 25, 2022.  On July 2 & 20, 2022, VDARE requested the subpoena be withdrawn and, on the latter date, served specific objections to the subpoena, including raising objections where the subpoena infringed upon First Amendment protections of anonymity. AA0336–AA0341.    Following    discussions    and    negotiations,    as

17

acknowledged by Appellee, VDARE produced thousands of pages of documents. *See* AA0084. However, Appellee continued to demand documents that would unmask anonymous vendors and contributors, insisting on production by December 12, 2022. AA0379–AA0383.

To avoid infringement of its First Amendment rights and those anonymous contractors, on December 12, 2022, VDARE filed its Complaint. Rather than face Federal judicial scrutiny over its infringement of the First Amendment, Appellee, two days later, filed a petition under CPLR 403 & 2308, styled *James v. VDARE Foundation, Inc.*, N.Y. County Index No. 453196/2022, to enforce the subpoena in its entirety. AA0108–AA0117. On January 23, 2023, the New York County Supreme Court issued a Decision and Order commanding compliance with the subpoena; though it had some limitations, protection of anonymous contractors (content contributors and vendors) was not among them. AA0384–AA0397. In reaching its decision, the state court made a single determination as to the First Amendment, and nothing under the N.Y. Constitution: that anonymity is unprotected if used to mask violations of the law, in furtherance of investigating conflicts of interest and board independence. This decision eviscerates anonymity,

18

as any pretext can be conjured up,[2] and the state court failed to address Appellee's retaliatory motive and whether the subpoena survives First Amendment scrutiny on that basis.

VDARE appealed the Supreme Court's order to the Appellate Division, First Department Case No. 2023-00672. VDARE sought a stay of enforcement pending appeal, which was denied on March 9, 2023. AA0562–AA0563. Although the state court appeal remains pending, with argument not occurring until January 24, 2024, VDARE was left with no choice but to seek a temporary restraining order and/or preliminary injunction in the District Court, which it filed on March 21, 2023. AA0564–AA0567.

---

[2] "Congress has passed thousands of federal criminal statutes and has allowed federal agencies . . . to make thousands upon thousands more rules that carry criminal penalties," with criminal rules "cover[ing] everything from how runny ketchup can be to . . . just how friendly you can get with a pirate." Mike Chase, HOW TO BECOME A FEDERAL CRIMINAL: AN ILLUSTRATED HANDBOOK FOR THE ASPIRING OFFENDER 2 (2019). *Accord* Gary Fields and John R. Emshwiller, *Many Failed Efforts to Count Nation's Federal Criminal Laws*, THE WALL STREET JOURNAL (July 23, 2011), https://www.wsj.com/articles/SB10001424052702304319804576389601079728920.

In denying VDARE's motion for a preliminary injunction, the District Court determined that the requested relief was barred by *res judicata*, and the District Court reiterated this decision in its order of dismissal. SPA022–SPA041. This was reversible error.

## 1. Equity Does Not Support Application of *Res Judicata*

In determining "whether preclusion, with its severe consequences, would be fair under the particular circumstances. . .[d]oubts should be resolved against imposing. . . ." *Buechel v. Bain*, 97 N.Y.2d 295, 305 (2001). It is axiomatic that estoppel "is grounded on concepts of fairness and should not be rigidly or mechanically applied." *Juan C. v. Cortines*, 657 N.Y.S.2d 581, 585 (1997). Collateral estoppel in particular "should not be mechanically applied" even when "some of its formal prerequisites, like identity of parties, identity of issues, a final and valid prior judgment and a full and fair opportunity to litigate the prior determination, may be present." *People v. Roselle*, 84 N.Y.2d 350, 357 (1994); *see also*, *Gilberg v. Barbieri*, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 51 (1981). "Because the doctrine is based on general notions of fairness there are few immutable rules." *Gilberg,* 441 N.Y.S. 2d at 50. If so, it is certainly not "immutable" that *res judicata* follows from the decision of the state court.

20

There can be no *res judicata* in the sense of claim preclusion because VDARE's claims were not determined by the New York courts. Appellee expressly denied that the same cause of action was involved in the two separate proceedings. To quote Appellee:

> Here, the federal action commenced by VDARE and the subpoena-compliance proceeding initiated by OAG four days later <u>are not the "same cause of action"</u>: VDARE and OAG respectively seek different relief, and the relief sought by OAG in the state-court proceeding (that is, an order mandating compliance with an OAG investigative subpoena) is not even available to it in federal court.

AA0585 (emphasis added). Appellee prevailed in that position, and she is, therefore, herself judicially estopped from arguing *res judicata*. All three elements of judicial estoppel are present: First, Appellee's later position is 'clearly inconsistent' with her earlier position; Second, her former position has been adopted in some way by the court in the earlier proceeding; and Third, the party asserting the two positions (Appellee) would derive an unfair advantage. *DeRosa v. National Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010), *citing New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

What Appellee appeared to be arguing instead was *res judicata* in the sense of "issue  preclusion" or collateral estoppel, although she does

21

couch it in the language of claim preclusion (AA1904–AA1906). But, as set forth above, issue preclusion is not rigid; it always turns on equity. Here, at least three factors bar equitable relief in favor of Appellee.

First, Appellee took inconsistent positions on the need for the identities of VDARE's content creators. To the District Court, Appellee stated that she did "not seek any information regarding the development or publication of VDARE's online content" (*i.e.* the identity of VDARE's writers). AA0083–AA0084. But, in the state court, before a tribunal which was less "likely to enforce the constitutional rights of unpopular minorities[,]"[3] Appellee made a contrary representation: "the identities of contractors — including writers who contribute to the website — these are precisely the records the OAG must examine in its investigation of VDARE's organizational misconduct."[4] AA0457.

Second, Appellee repeatedly rejected VDARE's attempts to meet and confer about the castle purchase and transactions. AA0537–AA0539.

_____

[3] *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 418 (1964) (Douglas, J., concurring).

[4] Appellee's position before the state court was not simply opposed to that here, it was constitutionally repugnant under long-settled precedent. *See e.g. Talley v. California*, 362 U.S. 60, 64-65 (1960); *U.S. v. Rumely*, 345 U.S. 41, 57-58 (1953) (Douglas, J., concurring).

22

Despite Appellee's innuendo, these transactions have all been completely above-board. Were VDARE permitted to lay concerns about the castle to rest, Appellee would be left with *de minimis* regulatory paper cuts which could not possibly justify her harassing, overbroad subpoena.[5]

Third, Appellee was only able to secure her rushed judgment in state court by falsely securing an extension in the action before the District Court. AA0527. Appellee claimed sickness in her office and the Christmas holidays, but she used that time to instead pursue a summary procedure in state court. Had it not been courteous, consistent with the standards of civility set forth in 22 NYCRR 1200.0, Appendix A, VDARE could otherwise have sought and obtained a temporary restraining order

_____

[5] Appellee has never squarely denied that her real intent is to suppress VDARE's speech. *Cf. NYSCEF Doc. 55 and 57 of New York State ECF, NY County Index No. 453196/2022.* Plausible allegations that the chief legal officer of New York state is abusing her office to suppress core First Amendment speech should command the strictest scrutiny from the judiciary, rather than serving as an opportunity to punt on a narrow and rigidly enforced technicality.

Appellee's pattern of regulatory harassment included subpoenas to Facebook on the suspect ground that VDARE was engaged in "hate speech." AA0309–AA0335. Yet, the First Amendment has long been interpreted to protect such speech. In this regard *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017), was no innovation but rested on well-established First Amendment principles.

and/or preliminary injunction in the District Court before the state court acted. Equity dictates against application of issue preclusion.

Further, contrary to the District Court's determinations on pp. 16-17 of its Order denying the preliminary injunction (SPA001–SPA021), VDARE did not receive a full and fair opportunity to litigate its First Amendment claims in the state court. It is telling that, in its Order of dismissal (SPA022–SPA041), the District Court made no mention of there being a full or fair opportunity.

The District Court failed to strictly construe its inquiry in favor of the party hoping to avoid issue preclusion. "As the consequences of a determination that a party is collaterally estopped from litigating a particular issue are great, strict requirements for application of the doctrine must be satisfied to insure that a party not be precluded from obtaining at least one full hearing on his or her claim." *Gramatan Home Investors Corp. v. Lopez*, 414 N.Y.S.2d 308, 311 (1979). Factors to be weighed include "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability

24

of future litigation." *Gilberg v. Barbieri*, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 51-52 (1981). Here the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, and the foreseeability of future litigation all weigh heavily in VDARE's favor and against Appellee.

The prior forum was summary proceeding in a Manhattan state court. Summary proceedings in New York do not provide a right to discovery. CPLR 408; *Sprecher v. Graber*, 716 F.2d 968, 972 (2d Cir. 1983). The District Court asserts that VDARE could have brought a motion to quash or vacate the subpoena in State Court but, again, nothing suggests these mechanisms would have afforded an opportunity to take discovery or present testimony to the state court as to James's retaliatory and unconstitutional motive. Neither Appellee nor her agents were potentially subject to deposition or document production. Nor was there an opportunity to develop a record to show the harms to third parties that would be caused by the unmasking required by the subpoena. AA1862–AA1873; AA1874–AA1876; AA1877–AA1879. The state court undertook no independent analysis of the intrusion into the First Amendment right of anonymity — instead, it copied and pasted directly

25

from Appellee's submission. One need only look at page 8 of that decision to see how the trial court copied, verbatim, Appellee's argument "To the extent anonymity is used to mask violations of the law, 'it is unprotected by the First Amendment.'" (*quoting Arista Recs, LLC, v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010). *Compare* AA0394 *with* AA0461. In fact, nearly every word of the state court decision addressing the First Amendment issue is copied verbatim from Appellee's memorandum. Yet a trial court should not "mechanically adopt[]" a party's submission, as they are "not the product of the workings of the [trial] judge's mind" and fail to provide "the insight of a disinterest mind". *United States v. El Paso Natural Gas Co*, 376 U.S. 651, 656-657 (1964). New York courts agree it is improper for a trial judge to make a "wholesale, verbatim adoption" of a party's submission. *Capasso v. Capasso*, 119 A.D.2d 268, 275 (1st Dept. 1986). Judicial plagiarism cannot be suborned. This alone forecloses preclusive effect on second and third causes of action, which address retaliation.

Similarly, there was no opportunity to take discovery as to the purported permission under *Arista Records LLC v. Doe*, 604 F.3d 110, 118-119 (2d Cir. 2010) on whether contractors and vendors may be

unmasked in these circumstances. *Arista Records* set forth the factors

that must be addressed:

> (1) the concreteness of the [subpoenaing party's] showing of a
> *prima facie* claim of actionable harm, (2) the specificity of the
> discovery request, (3) the absence of alternative means to
> obtain the subpoenaed information, (4) the need for the
> subpoenaed information to advance the claim, and (5) the
> objecting party's expectation of privacy.

604 F.3d at 119 (cleaned up). The state court addressed none of these

factors and, importantly, because it was a summary proceeding, VDARE

was unable to take discovery on 1) concreteness; 3) alternative means; or

4) need. Appellee was on a fishing expedition, with only a threadbare

assertion of impropriety. Absent discovery (or argument by Appellee that

she met the *Arista Records* factors), there was neither full nor fair

opportunity to litigate the claims.

Nor can VDARE be accused of a lack of initiative. VDARE filed its

Complaint in the District Court first and pinned its hopes on the

sophistication of a federal forum. "There are fundamental objections to

any conclusion that a litigant who has properly invoked the jurisdiction

of a Federal District Court to consider federal constitutional claims can

be compelled, without his consent and through no fault of his own, to

27

accept instead a state court's determination of those claims." *England,* 375 U.S. at 415.

Perhaps most telling is the "extent of the litigation" in the state court. This was a summary proceeding concluded only two business days after the initial return date, where the state court held no evidentiary hearings and took no evidence. *See Matusick v. Erie Cnty. Water Auth.,* 757 F.3d 31, 48 n.12 (2d Cir. 2014) (comparing corollary proposition as to whether an issue is "actually litigated"). It would not be accurate to say that the state court granted Appellee's motion over heavily disputed facts because the state court abandoned its obligation to adjudicate factual disputes.

Finally, it was reasonably foreseeable there would be further litigation in Federal court. Indeed, VDARE did not split its claim between two competing forums, but it was forced into piecemeal litigation by Appellee. Insofar as *res judicata* is designed to ensure a party is not unduly "vexed by multiple suits" (*Brown v. Lockwood*, 432 N.Y.S.2d 186, 200 76 A.D.2d 721 (2d Dept. 1980)), it has no application here. The multiple suits are the result of Appellee's needless multiplication of litigation.

28

This is a case where estoppel "if applied too rigidly, could work considerable injustice. "In properly seeking to deny a litigant two 'days in court,' courts must be careful not to deprive him of one." *Laundau v. LaRossa, Mitchell & Ross,* 11 N.Y.3d 8, 14 (2008) (quoting *Reilly v. Reid*, 45 N.Y.2d 24, 28-29 (1978)). That deprivation cannot be used to suborn First Amendment violations. The District Court, while ostensibly applying a doctrine in equity, failed to do equity. On account of the foregoing, the judgment of dismissal should be reversed.

### 2. Appellee Fails to Meet the Elements of *Res Judicata*

Even without a full equity analysis, application of *res judicata* was improper. As the District Court correctly observed, Appellee was required to show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir. 2000); *see* SPA037. VDARE does not dispute that the state court action, as a matter of law, is a final judgment or that the parties are the same, although it is not a "previous action". More important, the claims asserted in the District Court action

were not and could not have been properly raised in the state court proceeding.

As to this third element, the District Court took a naked look at the "transactional approach," without consideration of any equitable factors. SPA038–SPA040. In applying this element, courts must not do so "too rigidly" to avoid "work[ing] considerable injustice"; accordingly, "courts should analyze whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111-112 (2021). Though the District Court cited to *Simmons*, it only analyzed the "related[ness]" factor. While there is no dispute that both actions arise out of the same subpoena, making them related facts, they neither form a convenient trial unit nor conform to expectations.

As discussed above, the claims do not form a convenient trial unit. In fact, it cannot be said they form a "trial unit," let alone a convenient one, where the state court afforded no trial. Unlike in its claims in the District Court, which would afford the full scope of discovery, live

30

testimony, and a jury trial, VDARE had no such opportunities in the state court proceeding.  In fact, there was no procedure for VDARE to even bring its claims as counterclaims (nor should it have been required to do so where VDARE was the first-filer—in Federal court).

Neither is treating the two matters as a unit in conformance with VDARE's expectations.  As the Court is aware, *res judicata* "will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) (citations omitted). "Where 'formal barriers' to asserting a claim existed in the first forum it would be 'unfair to preclude [the plaintiff] from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.'" *Id*. (citing Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982)).  For example, because Appellee's claim was a special proceeding under CPLR Art. 4, it did not afford the full measure of discovery that would be necessary to litigate VDARE's claims, as a party cannot take discovery by right in a special proceeding.  *See* CPLR 408.  In fact, by its own terms, CPLR Art. 4 makes no provision for the bringing of a counterclaim, and this is consistent with the inability to consolidate an

31

action with a special proceeding.[6]  Moreover, since VDARE filed in the

Federal court first, there is no reason why it should be forced to cross-file

those same claims as counterclaims in the state proceeding (assuming

*arguendo* it were even procedurally proper). VDARE had the right to be

in Federal court, and it should not have that right stripped away because

Appellee managed to, thereafter, rush a special proceeding through the

state courts.  This is not what VDARE, or any person afforded rights

under the Constitution, should expect.  Thus, as Appellee met only one of

the three factors under the transactional approach, *res judicata* does not

bar VDARE's claims.  The order of dismissal should be reversed.[7]

---

[6] In *Elias v. Artistic Paper Box Co.*, 29 A.D.2d 118 (2d Dept. 1967), the Second Department held that an action and a special proceeding can be consolidated under the then-recent adoption of CPLR 602.  However, the state court action is not in the Second Department and VDARE is not aware of the First Department or the Court of Appeals having adopted the *Elias* holding, by name or otherwise

[7] VDARE is not contesting the District Court's footnote determinations as to the Eleventh Amendment bar on damages or the state constitutional retaliation claims (SPA039 n. 2 & 3), though VDARE is nevertheless entitled to injunctive relief thereunder.

### C. The Motion for a Preliminary Injunction Should Have Been Granted

VDARE should have been granted a preliminary injunction, and following reversal of dismissal, this matter should be remanded for entry of such injunctive relief. It is well established that, to obtain an injunction from a district court, VDARE must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). All four factors support VDARE.

### 1. VDARE has a Strong Likelihood of Success of the Merits

VDARE has a strong likelihood of success. First, the Court erred in determining that *res judicata* precluded issuance of the requested preliminary injunction. The arguments as to reversing the order of dismissal *supra* are adopted herein as the District Court made a functionally identical determination in both instances.

Second, on the merits of the underlying claims themselves, the First Amendment protections for anonymous contractors overwhelmingly necessitate a stay of the enforcement of Appellee's subpoena, though it

should be entirely enjoined on account of the retaliatory motive.[8]  As the Supreme Court observed, "political speech must prevail against laws that would suppress it by design or inadvertence." *Citizens United v. FEC*, 558 U.S. 310, 312 (2010).  Even if the Attorney General were acting in good faith, the rights of the third parties to speak and associate anonymously with a political organization like VDARE must prevail against a subpoena that infringes on these rights.

As set forth above, VDARE made claims for a) Declaratory Relief under the 1st Amdt., seeking a declaration that the subject subpoena infringes speech and associational rights regarding contractors and vendors; b) Relief under Section 1983 for 1st and 14th Amdt. retaliation (subpoena issuance) for protected speech; c) Relief under Art. I, Sec. 8, of the N.Y. Constitution for retaliation (subpoena issuance) for protected speech; and d) Injunctive relief, enjoining the subpoena on the basis of the retaliation and unconstitutional probity of anonymous contractors

_____

[8] As noted in the Verified Complaint, the analysis of the state and federal claims is the same.  AA0023 at ¶ 50, citing *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 321 (S.D.N.Y. Jan. 18, 2019).

and vendors. A preliminary injunction is warranted on the basis of the second and third causes of action.[9]

VDARE's likelihood of success under its claim of First Amendment retaliation is strong and that alone warrants a preliminary injunction. "Because the deprivation of First Amendment rights is an irreparable harm, in First Amendment cases 'the likelihood of success on the merits is the dominant, if not the dispositive, factor'" in granting a preliminary injunction. *Agudath Israel v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) (*quoting N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). And, similarly, VDARE will succeed in is claim under the New York Constitution. Free-speech violations, such as retaliation, brought

---

[9] VDARE recognizes that "a request for injunctive relief is not a separate cause of action.*" Milligan v. GEICO Gen. Ins. Co.*, 2022 U.S. App. LEXIS 3922, *17 (2d Cir. Feb. 14, 2022) (internal quotation marks and citation omitted). Thus, the fourth count in the Verified Complaint, seeking injunctive relief, is a remedy for the second and third causes of action. The same holds for the first count, seeking declaratory relief. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) ("The [Declaratory Judgment Act] is procedural only, and does not create an independent cause of action[.]") (internal quotation marks and citations omitted). While the District Court also noted additional bases for partial dismissal of VDARE's complaint, these do not, themselves, displace VDARE's ability to succeed on its claims and obtain declaratory relief or a permanent injunction.

35

under Article I, Section 8 ("Article I, Section 8") of the New York State Constitution are judged under the same principles that apply to claims alleging violations of the First Amendment to the United States Constitution (the "First Amendment"). *See Martinez v. Sanders*, 307 Fed. Appx. 467, 468 n.2 (2d Cir. 2008). Moreover, Article I, Section 8 generally offers broader protection than the First Amendment. *See O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 523 N.E.2d 277, 280 n.3 (1988) ("The protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment."). Thus, although VDARE analyzes its claims under First Amendment jurisprudence, those cases also support its New York Constitution claim, and VDARE will prevail on counts 2 and 3 of its Verified Complaint for equitable relief.

The First Amendment does not permit a state actor to initiate a proceeding in retaliation for the exercise of First Amendment rights. *Cullen v. Fliegner*, 18 F.3d 96, 103-104 (2d Cir. 1994). But, that is precisely what the subpoena and the enforcement proceeding were — retaliatory actions. VDARE's speech constitutes criticism is current government policy, on immigration in particular. AA0012. As such, it

stands at the very core of the liberties protected by the First Amendment, *e.g. Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966): "Criticism of government is at the very center of the constitutionally protected area of free discussion." Attorney General James has the unfortunate tendency to target speech that she hates, which in a fit of projection, she dismisses as "hate speech." AA0013–AA0014. Yet, the law is that "the First Amendment protects individuals' right to engage in hate speech, and the state cannot try to inhibit that right, no matter how unseemly or offensive that speech may be to the general public or the state." *Volokh v. James*, 2023 U.S. Dist. LEXIS 25196, *24 (S.D.N.Y. Feb 14, 2023) (*citing Matal v. Tam*, 582 U.S. 218, 245-246 (2017) and *R.A.V. v. St. Paul*, 505 U.S. 377, 391 (1992)); *accord NAACP v. Button*, 371 U.S. 415, 444 (1963) ("The course of our decisions in the First Amendment area makes plain that its protections would apply as fully to those who would arouse our society against the objectives of the petitioner.") Appellee presented no evidence that the subpoena at issue was not served because she disagrees with the constitutionally protected speech of VDARE. *Contrast* AA0021.

Appellee's position is at odds with decades of well-settled First Amendment precedent, from *NAACP v. Alabama ex rel. Patterson*, 357

U.S. 449 (1958), to *Ams for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021). Enforcement of the subpoena requires VDARE to disclose, *inter alia*, the names of its content creators (primarily writers, but creators of other media as well) and vendors. While Appellee narrowed the scope to exclude unpaid content creators, the subpoena nevertheless requires deanonymization of its contractual creators and vendors in violation of their right to anonymity under the First Amendment.

A key issue here is Appellee's lack of narrow tailoring. Indeed, the state court's characterization of the investigation as "targeted" is clear error. This so-called targeted investigation sweeps across more than 40 categories of documents far removed from any conceivable relationship to the castle transactions. Whatever pretext Appellee had to initiate her investigation, she has been given sufficient information regarding the castle transactions to show that there was no impropriety or violation of law, and continued attempts to enforce the subpoena are a mere fishing expedition to unmask those who are entitled to remain anonymous. Whether the rule is derived from the First Amendment ("a reasonable assessment of the burdens imposed by disclosure should begin with an understanding of the extent to which the burdens are unnecessary."

*Americans for Prosperity Foundation v. Bonta*, 141 S. Ct 2373, 2385 (2021)), or New York's own case law ("[No] agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered." *Myerson v. Lentini Bros. Moving & Storage Co*, 33 N.Y.2d 250, 256 (1973) (*quoting Matter of A'Hearn v. Committee on Unlawful Practice of Law of NY County Lawyers' Ass'n*, 23 N.Y.2d 916, 918 (1969)), this harassing inquisition is unlawful and cannot survive scrutiny. Significantly, and as previously argued to the District Court (AA1065–AA1069) (which the Court did not address), the *Arista Recs.* factors preclude enforcement of a subpoena that would unmask anonymous contractors, which, as noted above, set forth the factors that must be addressed, to wit:

> (1) the concreteness of the [subpoenaing party's] showing of a *prima facie* claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy.

604 F.3d at 119 (cleaned up).

First, Appellee had no actionable harm. Appellee issued an investigatory subpoena, not one issued in the course of pursuing a claim

39

for actionable harm. She is engaged in a mere fishing expedition, with a pretext relating to VDARE's purchase of a building for uses consistent with its charitable mission (and which has fully been substantiated),[10] but in actuality is retaliatory for VDARE's First Amendment-protected policy statements.

Given the opportunity to lay the castle transactions to rest, Appellee instead confirmed her intention to enforce her subpoena in court, where she would misrepresent not only the castle transactions, but delve into all manner of irrelevant material, such as alleged violations of *de minimis* technicalities from decades ago. As for the castle transactions, VDARE deeded the castle and grounds to two separate entities, BBB, LLC, and the Berkeley Castle Foundation, Inc., which are controlled by the VDARE Foundation itself. AA0234–AA0236 & AA0237–AA0244. And, whatever concerns Appellee had about the propriety of the transactions, which VDARE disputes and can demonstrate violated no law, they do not justify broad and ongoing enforcement of the subpoena in light of the production that had already

---

[10] *See, generally,* Verified Complaint, AA0009–AA0026, and AA1862–AA1873, Declaration of Lydia Brimelow.

been made. Appellee's putative motives did not justify the breadth of the three subpoenas, especially the attempt to deanonymize those with the right to speak and associate anonymously.

VDARE needed to purchase its own facility precisely because of the inability for other vendors to maintain their anonymity, and VDARE's officers needed to relocate. But, Appellee identified no actionable harm—only vague references to "violations of New York Law" (AA0671) only if confirmed. *See also,* Fuchs Aff. (AA0696–AA0699) at ¶¶ 35-36 (discussing "areas of concern which may constitution violations of VDARE's bylaws and/or New York law.")[11] She had sufficient information already to show these purported violations cannot be confirmed. *See* AA1951–AA1970. Thus, Appellee failed to meet the first factor.

Second, the subpoena requests, to the extent they require deanonymization of contractors (*i.e.* contributors and vendors), were not specific to the purported potential violations of unspecified law. Seeking the identities of anonymous writers engaged in core political speech puts

---

[11] Appellee's memorandum misidentified the relevant paragraphs as being 5 & 6.

Appellee and the District Court squarely at odds with decades of free speech jurisprudence (*Talley v. California*, 362 U.S. 60, 64-65 (1960); *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 342 (1995)), as does Appellee's demand to unmask third party contractors who deal with a controversial entity such as VDARE.  *Evergreen Ass'n, Inc v. Schneiderman,* 153 A.D. 3d 87, 100 (2d Dept. 2017); *Brown v. Socialist Workers '74, Committee (Ohio)*, 459 U.S. 89, 96 (1982).   "A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege." *Perry v. Schwarzeneggar*, 591 F.3d 1147, 1160 (9th Cir. 2009). "That privilege protects against a forced '[d]isclosure[] of political affiliations and activities] that would have a deterrent effect on the exercise of free speech or freedom of association rights." *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 U.S. Dist. LEXIS 222064, *28 (W.D. Tex. Dec. 9, 2022), *quoting Perry* at 1160.  Thus, Appellee was required to justify her invasive subpoena "in light of any less intrusive alternatives." *Bonta* at 2386.

As outlined in the Fuchs Affidavit (AA0696 at ¶ 35), there was a) the absence of an independent auditor report in 2019, which has nothing

to do with the identity of contractors (hereinafter "WHNTDWTIOC"); b) the absence of a process for determining Peter Brimelow's salary, WHNTDWTIOC; c) Mr. Brimelow's 2019 salary, WHNTDWTIOC; d) the payment of Mr. Brimelow's salary through Happy Penguins, LLC, WHNTDWTIOC; e) additional payments to Happy Penguins, WHNTDWTIOC; f) the reporting of the specific position of Lydia Brimelow, WHNTDWTIOC; and g) a conflict of interest policy and disclosures of transactions and benefits to the Brimelows, WHNTDWTIOC. And, Fuchs identified some concerns over ads purchased on Facebook, WHNTDWTIOC (AA0699 at ¶ 36). Thus, Appellee failed to meet the second factor.

Similarly, as to the fourth factor,[12] Appellee had not identified her need for the deanonymization of contractors with respect to the vague assertions of potential violations of law. While VDARE recognizes that Appellee is hoping to find improper transactions with the Brimelows in

---

[12] Appellee has not argued lack of alternate means (the third factor), but VDARE recognizes that it is, of course, best positioned to know who its anonymous contractors are. And, were VDARE to suggest alternate means, such would defeat the very purpose of maintaining anonymity. Thus, the third factor should not be given significant weight under these circumstances.

order to take action against a political enemy, a subpoena request to deanonymize all contractors is not tailored to the question. The Brimelows are not the anonymous contractors at issue. VDARE does not believe it has withheld any documents or redacted any information relating to the Brimelows that is within the purview of the subpoena. Moreover, Appellee James has stated she does "*not* seek any information regarding the development or publication of VDARE's online content" (AA0088–AA0089 (emphasis in original)), which eliminates her need to know the identity of anonymous contributors and vendors. Thus, as the issue is solely about the anonymity of non-interested persons, outside the scope of potential conflicts of interest, Appellee failed to meet the fourth factor, as she does not need such information to advance any claim.

Finally, the anonymous contractors have an expectation of privacy—a constitutional right to anonymous speech and association. Appellee incorrectly asserted that VDARE "has not submitted a single affidavit, document, or anything beyond bare allegations to support" its claim of irreparable harm (which, presumably, she would also argue applies to this factor). (AA0674). The denial of First Amendment protection, as a matter of law, is irreparable harm in and of itself. As the

44

Court knows, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Appellee's citation below to *Mullins v. City of New York*, 307 Fed. Appx. 585, 587 (2d Cir. 2009) is unavailing— in the event enforcement of the subpoena is not stayed, the First Amendment right to anonymous speech and association will be immediately lost.[13] VDARE's position is comparable to *Patterson*, where "an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Patterson*, 357 U.S. at 461. Where such is the case, it is "apparent that compelled disclosure" is "likely to affect adversely the ability" of VDARE to publish and attempt to persuade others of its mission and will certainly "dissuade others from

_____

[13] Appellee also claimed that VDARE has delayed in seeking injunctive relief and that the request may be denied under *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985). This is not a requirement, especially where the delay is "explainable". *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). There has been no unreasonable delay—the Court is well aware that VDARE attempted to address the issue for months before filing suit and had hoped the state court would do its job, rather than merely be a stenographer for Appellee.

45

joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Id.* at 462-463. Imposing on "associational rights" "cannot be justified on the ground that the regime is narrowly tailored to investigating charitable wrongdoing." *Americans for Prosperity Found.*, 141 S. Ct. at 2389. Subpoenas which could have "a chilling effect on its associations with its employees and potential clients" by breaking anonymity are invalid. *Evergreen Ass'n,* 153 A.D.3d at 100; *see also Brown,* 459 U.S. at 96 ("Even individuals who receive disbursements for 'merely' commercial transactions may be deterred by the public enmity attending publicity, and those seeking to harass may disrupt commercial activities on the basis of expenditure information. … Compelled disclosure of the names of such recipients of expenditures could therefore cripple a minor party's ability to operate effectively and thereby reduce the free circulation of ideas both within and without the political arena." (internal quotation marks omitted)).

The loss of the First Amendment right to anonymity is fully substantiated by the Verified Complaint, executed under penalty of perjury by Lydia Brimelow. (AA0026). In the Verified Complaint, Mrs. Brimelow attested to the facts that:

46

10.  Use of pejoratives to describe VDARE has led to significant reputational and professional harm for those associated with it.  On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE's existence have opted to stop providing services.  Venues which have agreed to host VDARE's conferences have faced pressure campaigns and threats.  Such venues have sometimes canceled contracts with VDARE.

11.  To protect its rights of speech and association, VDARE is vigilant about maintaining the privacy of those associated with it and does not disclose their identities unless required by law.

53.  VDARE will suffer irreparable harm absent injunctive relief, including [enjoining] disclosure of identities of contractors, which disclosure cannot be undone.

(AA0012 at ¶¶ 10-11; AA024 at ¶ 56). A verified complaint is tantamount to an affidavit.  *See* 28 U.S.C. § 1746. The Federal Rules of Civil Procedure expressly contemplate a Verified Complaint being sufficient, without separate affidavit, to substantiate the need for injunctive relief.  *See, e.g.,* Fed. R. Civ. P. 65 (b)(1)(A).  Appellee did not and cannot dispute that entities as well-known as PayPal and Amazon and many others have cut ties with VDARE over concern of public backlash from its association with VDARE.  It is also beyond dispute that VDARE acquired its property in West Virginia precisely because venues bent to public pressure and canceled contracts to host conferences.  *See* AA1102–AA1105 ("Cheyenne

47

Mountain Resort [in Colorado] will not be hosting the VDARE Foundation in April of next year. We remain committed to respecting the privacy of guests at the resort."); AA1106–AA1109 ("Tenaya Lodge, a resort on the border of Yosemite National Park, canceled [VDARE's] booking after receiving complaints about the organization's views."). The *Washington Post* published an article whose comments evince abuse of VDARE's neighbors in West Virginia merely for expressing favorable opinions of VDARE or its principals. *See* AA1113–AA1861. A supplemental declaration from Lydia Brimelow detailing the harms and Defendant's bad faith was also submitted to the District Court. (AA1862–AA1873). Additionally, VDARE procured and produced sworn affidavits from writers (redacted for filing) desiring their anonymity be maintained. (AA1874–AA1876; AA1877–AA1879). Thus, VDARE has sufficiently demonstrated both irreparable harm and the contractors' expectations of privacy.

Simply put, Appellee failed to show that the factors endorsed by *Arista Recs.* warrant judicial evisceration of the First Amendment right to anonymous speech and association here. *Perry*, 591 F.3d at 1160. And, Appellee did not show that her interest in the information sought through

48

the subpoena is sufficient to justify the deterrent effect on the free exercise of the constitutionally protected right of association. *Id*. at 1161. The subpoena fails First Amendment (and New York State Constitution) scrutiny. Thus, VDARE is likely to succeed on the merits.

## 2. The Remaining Preliminary Injunction Factors Favor VDARE

VDARE will suffer irreparable harm if enforcement of the subpoena is not stayed. As noted above, even temporary deprivation of First Amendment rights is an irreparable harm. *See Agudath Israel v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020). Moreover, if disclosure is compelled, it cannot be undone, and Appellee is, presently, opprobriously seeking contempt sanctions in the state court. As another court found, in precluding state investigatory proceedings pending an appeal, "[i]n the absence of the requested injunctive relief, the challenged investigations will proceed and appellate review of this Court's decision will have all the practical consequences of 'locking the barn after the horse has been stolen.'" *Dayton Christian Schools v. Ohio Civil Rights Com.,* 604 F. Supp. 101, 104 (S.D. Ohio Jul. 30, 1984). That Court especially noted that, were the investigation to continue, the deprivation of First Amendment rights was not only temporary, but permanent. *Id*. Moreover, the strength of

49

this fact is overwhelming, reducing the amount of the probability of success that need be shown (as they are inversely proportional). *See Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002).

As the Court is aware, the balance-of-equities and public-interest factors "merge when the Government is the opposing party" (*Nken v. Holder*, 556 U.S. 418, 435 (2009)). Since "securing First Amendment rights is in the public interest," (*N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)), the balance of equities also favors VDARE. Thus, VDARE meets all four preliminary injunction factors. *Accord Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021).

## CONCLUSION

In light of the foregoing, VDARE respectfully requests a) that the judgment of dismissal be reversed; and b) that the order denying the motion for preliminary injunction be reversed and the matter remanded for entry of an order granting such preliminary injunction.

Dated: January 25, 2024.

/s/ Jay M. Wolman
Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
*Office Address:*
353 Ocean Avenue, Ste. 4E
Brooklyn, NY 11226

50

*Mailing Address:*
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 888-887-1776
ecf@randazza.com

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
ecf@randazza.com

*Attorneys for Plaintiff-Appellant,*
*VDARE Foundation, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman
Jay M. Wolman

52

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Local Rule 32.1(a)(4)(A) because, excluding the portions exempted by Fed. R. App. R. 32(f), this brief contains 9,874 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Jay M. Wolman
Jay M. Wolman, Esq.

# 23-1084(L),

## 23-7409(CON)

IN THE UNITED STATES COURT OF APPEALS FOR THE
SECOND CIRCUIT

VDARE FOUNDATION, INC.,

*Plaintiff-Appellant,*

- v. -

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern
District of New York, Case No. 1:22-cv-01337 (FJS/CHF)

## SPECIAL APPENDIX

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC.
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 888-887-1776
Email: jmw@randazza.com

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC.
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
Email: ecf@randazza.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Memorandum Decision and Order Denying Motion
for a Preliminary Injunction dated June 27, 2023
[Dkt. No. 50]……..……...……...……...……...……........... SPA001

Memorandum-Decision and Order Granting Motion to
Dismiss dated Sept. 13, 2023 [Dkt. No. 59]……………..…….. SPA022

Judgment dated Sept.13, 2023 [Dkt. No. 60] …………………. SPA042

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

VDARE FOUNDATION, INC.,

                                        **Plaintiff,**

            **v.**                                        **1:22-CV-1337**
                                                          **(FJS/CFH)**

**LETITIA JAMES, in her official capacity as**
**Attorney General of the State of New York,**

                                        **Defendant.**

_____

**APPEARANCES**                          **OF COUNSEL**

**RANDAZZA LEGAL GROUP, PLLC**           **JAY MARSHALL WOLMAN, ESQ.**
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**               **ALEXANDER S. MENDELSON, AAG**
**STATE ATTORNEY GENERAL**               **RICK SAWYER, AAG**
28 Liberty Street
New York, New York 10005
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER[1]

### I. INTRODUCTION

        Pending before the Court is Plaintiff's motion for a preliminary injunction. _See_ Dkt. No.

29.  Defendant opposes the motion.  _See_ Dkt. No. 34.

_____

[1] All references to page numbers in documents filed in this case are to the page numbers that the Court's CM/ECF System generates and appear in the upper right corners of those pages.

## II. DISCUSSION

On December 12, 2022, Plaintiff VDARE Foundation, Inc. (hereinafter "Plaintiff" or "VDARE") commenced this action by the filing of a Verified Complaint for declaratory and injunctive relief. *See* Dkt. No. 1, Complaint. According to the Complaint, VDARE "is a non-profit foundation recognized by the IRS as a 501(c)(3) educational organization organized and existing under the laws of the State of New York, but with a principal place of business in Berkeley Springs, West Virginia." *See id.* at ¶ 1. Furthermore, "VDARE was founded to support the efforts of VDARE.com, a non-profit web magazine . . . [and] is literally a mom-and-pop operation, run by Peter and Lydia Brimelow, husband and wife, with limited staff and resources." *See id.* at ¶ 2.

VDARE states that "the Court has subject matter jurisdiction because this action involves claims based on the First and Fourteenth Amendments to the United States Constitution, and because this action seeks to prevent state officials from interfering with federal rights." *See id.* at 4. Furthermore, VDARE asserts that "subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations under color of state law of rights, privileges, and immunities secured by the United States Constitution." *See id.* Finally, VDARE states that "the Court has supplemental jurisdiction over state law claims asserted in this action[.]" *See id.*

According to VDARE, "Brimelow with an editorial collective of several other journalists started VDARE.com to publish articles critical of the immigration policy of the United States." *See id.* at ¶ 8. "Throughout its existence, VDARE has published pieces that criticize current United States immigration policy for various reasons and from a variety of angles and

**SPA002**

perspectives.  VDARE's editorial position in favor of limiting immigration is not based on any sort of aversion to immigrants.  Brimelow is himself an immigrant and a naturalized United States citizen."  *See id.*  In addition, "[m]any of VDARE's editors and contributors, current and former, are immigrants or foreign nationals."  *See id.*  Plaintiff contends that "[s]tories originally published in VDARE have been positively cited by the New York Times, the Harvard Journal on Law and Public Policy, and many other publications."  *See id.*

However, Plaintiff acknowledges that "VDARE is not without detractors . . . [and] has repeatedly been tarred with pejoratives such as 'white nationalist,' and 'racist[']."  *See id.* at ¶ 9.  "VDARE rejects these labels."  *See id.*  Plaintiff argues that, "[w]hatever the views of VDARE's detractors, its speech is non-violent and lawful and protected by the First Amendment to the United States Constitution."  *See id.*

Plaintiff contends that "[u]se of pejoratives to describe VDARE has led to significant reputational and professional harm for those associated with it.  On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE's existence have opted to stop providing services.  Venues which have agreed to host VDARE's conferences have faced pressure campaigns and threats.  Such venues have sometimes cancelled contracts with VDARE."  *See id.* at ¶ 10.  Finally, Plaintiff asserts that, "[t]o protect its rights of speech and association, VDARE is vigilant about maintaining the privacy of those associated with it and does not disclose their identities unless required by law."  *See id.* at ¶ 11.

According to Plaintiff, on June 24, 2022, Defendant issued a subpoena to VDARE, identifying 44 categories of demanded documents.  *See id.* at ¶ 22.  Among other things, Defendant demanded 'copies of transcripts to each deposition in the litigation between Peter

Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings.'" *See id.* at ¶ 23.  VDARE explains that "[t]his demand referred to a lawsuit for libel filed by Brimelow against the New York Times for calling him an 'open white nationalist,' which he is not." *See id.*

On July 20, 2022, after a meet-and-confer with Assistant Attorneys General on July 18, 2022, an attorney then advising VDARE on responding to Defendant's subpoenas, requested in writing that she withdraw her subpoenas on grounds that they were pretexts aimed at VDARE's rights under the First Amendment to express positions critical of governmental officials and policy. *See id.* at ¶ 24.  Defendant declined to withdraw the subpoenas.  *See id.*

In August 2022, before a revised return date, VDARE engaged new counsel and directed him to comply with Defendant's subpoena.  *See id.* at ¶ 25.  Defendant acknowledged new counsel's need to get up to speed and his competing commitments and requested that VDARE produce "very basic corporate records" to demonstrate its intent to comply in advance of a "rolling production."  *See id.*  Between September 19 and November 21, 2022, VDARE produced approximately 6,000 pages of documents in response to Defendant's subpoena to Plaintiff after completing review of documents that VDARE maintained electronically and in hard copy.  *See id.* at ¶ 25.

While making and before completing the production, VDARE advised Defendant of its position that production of the identities of many of its contractors would violate the First Amendment.  *See id.* at ¶ 26.  VDARE explained to Defendant that some contractors would face retribution if their association with VDARE were revealed and that VDARE otherwise risked losing services of contractors indispensable to its existence if their identities were disclosed, as had happened in the past.  *See id.*  VDARE cited several cases to support its position.  *See id.*

- 4 -

**SPA004**

VDARE proposed that Defendant identify specific contractors about which she was concerned, and VDARE could otherwise identify any contractor that might qualify as a "related party" within the meaning of New York law. *See id.* at ¶ 27. VDARE expressed its desire to make as robust a production as possible, proposing that the issue of disclosure of contractors' identities could be revisited if it did not prove to be an adequate solution or if a specific need arose. *See id.* Defendant rejected VDARE's proposals and requested that VDARE further articulate its objection to disclosure of the identities of vendors. *See id.*

In a letter dated October 31, 2022, VDARE again articulated its objection to disclosure of the identities of contractors and requested that the parties meet and confer on the issue. *See id.* at ¶ 28. VDARE advised Defendant that the identities of its contractors were indispensable to its work and their identities were inextricably intertwined with financial records, including on lists of banking transactions and associated copies of checks. *See id.* VDARE also advised Defendant that the work of its counsel, a sole practitioner reviewing all of its documents himself, to provide documents with redactions was labor-intensive, time-consuming and ongoing. *See id.* VDARE proposed in its letter of October 31, 2022, that the parties meet and confer to determine if they could find at least a temporary resolution of this issue. *See id.*

In addition, Plaintiff states that, in early October 2022, Defendant requested that VDARE provide a general outline of electronically-stored filed (emails) that it would need to collect for review and produce and begin collecting. *See id.* at ¶ 30. VDARE did so, advising that the universe of such files amounted to more than 40 gigabytes of data, providing a list of email custodians, and otherwise keeping Defendant updated as to the status of the review. *See id.* According to VDARE, the emails, like its paper documents, contain information about the identities of contractors whose association with VDARE is not required for any legitimate

**SPA005**

oversight of VDARE by Defendant, and the disclosure of which would violate First Amendment protections and risk VDARE's existence. *See id.*

On December 2, 2022, Defendant demanded VDARE's full compliance with its subpoena by December 12, 2022, or she would deem VDARE to be in non-compliance. *See id.* at ¶ 32. Although VDARE advised Defendant of its concerns about unnecessary disclosure of identities of contractors, Defendant demanded that their identities be disclosed. *See id.* Furthermore, although Defendant had encouraged VDARE to make a rolling production as documents were reviewed, resulting in later decisions not to redact some information that had earlier been redacted, Defendant questioned the validity of VDARE's concerns. *See id.* Although VDARE had advised Defendant that redactions of identities of contractors were intertwined with its records and were otherwise time consuming and labor intensive to apply, Defendant demanded, by December 12, 2022, a log identifying each redaction of each contractor's identity in VDARE's production, and its prospective production of emails, as a precondition to a meet-and-confer about VDARE's constitutional objection to unnecessary disclosure of identities of contractors. *See id.* at ¶ 32. Finally, VDARE contends that Defendant's position threatens its existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected speech. *See id.* at ¶ 33.

Based on these allegations, VDARE asserts the following causes of action: (1) declaratory relief under the First Amendment; (2) violation of VDARE's First and Fourteenth Amendment rights under § 1983 by retaliating against VDARE based on its exercise of its rights of freedom of speech and association; (3) violation of VDARE's rights under Article I, Section 8 of the New York State Constitution by retaliating against VDARE based on the exercise of its

**SPA006**

rights of freedom of speech and association; and (4) preliminary and permanent injunctions barring Defendant from enforcing her unconstitutional demands.

On December 14, 2022, two days after VDARE commenced its action in this Court, Defendant petitioned New York State Supreme Court, pursuant to New York Not for Profit Corporation Law, Estates, Powers and Trusts Law, Executive Law and CPLR Article 4, *see* Dkt. No. 35-6, State Court Petition, at ¶ 9, for an Order (i) compelling VDARE to comply without delay with the June 23, 2022 subpoena; (ii) ordering all documents produced to be unredacted (except for agreed upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate, *see id.* at ¶ 6.

In support of her petition, Defendant asserted that (1) the subpoena was issued pursuant to a legally-authorized investigation for which there was a factual basis and that the requests in the Subpoena were reasonably related to that investigation; (2) VDARE had interposed no cognizable basis for delaying or withholding responsive document productions to Defendant; and (3) as a result, VDARE should be ordered to comply with the Subpoena without further delay. *See id.* at ¶¶ 29-31. Therefore, Defendant requested that the State Supreme Court enter a judgment and order (i) compelling VDARE to comply without delay with the June 23, 2022 Subpoena; (ii) ordering all documents produced to be unredacted (except for agreed upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate. *See id.*

On January 19, 2023, the State Supreme Court heard oral argument and reserved decision on Defendant's petition. On January 23, 2023, the State Supreme Court issued a decision and order noting that the Subpoena sought documents (1) concerning VDARE's organizational structure; (2) compliance with conflict-of-interest policy requirements under New York law and

**SPA007**

financial operations; (3) its purchase and conveyance of the Berkeley Springs Castle; and (4)

transactions between VDARE and entities controlled by the Brimelows.  See Dkt. No. 15, State

Supreme Court Decision, at 6.  The State Supreme Court also noted that, although VDARE had

originally taken "the position that the Subpoena was unlawful and should be withdrawn[, o]n

September 19, 2022, new counsel for [VDARE] agreed to comply with the Subpoena but

asserted that a significant volume of electronically-stored and hard copy documents needed to be

reviewed." *See id.*  VDARE made its first production that day, consisting of 27 documents

produced without Bates numbers and bearing unmarked redactions.  *See id.*  VDARE, however,

provided no log to identify or explain the redactions.  *See id.*

The State Supreme Court further explained that, in the 12 weeks since its first September

delivery, VDARE had produced "approximately 6,000 pages from its hard copy records . . . [and

had] redacted that material without any explanation for how the material was chosen for

redaction. " *See id.*  Defendant asserted that "the redactions [were] extensive and ha[d] been

applied across almost every category of document produced, including board meeting minutes,

bank statements, internal accounting ledgers, credit card statements, invoices, financial records

for the limited liability company (Happy Penguins LLC) from which [VDARE] had historically

leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and

Lydia Brimelow." *See id.*

Furthermore, the State Supreme Court noted that, "on October 23, 2022, Lydia Brimelow

[had] represented that, with limited exceptions, [VDARE's] hard copy production was complete,

and identified 22 unique email accounts containing approximately 40 gigabytes of potentially

responsive electronically stored information." *See id.*  VDARE's counsel had originally "stated

that review of that material would be completed by November 21, 2022.  [VDARE] subsequently

**SPA008**

proposed December 12, 2022, as the new deadline for completing email production." *See id.* at 6-7.

The State Supreme Court further noted that, on December 2, 2022, Defendant wrote to VDARE, "summarizing [her] concerns with the pace and scope of production, including [VDARE's] extensive redactions, and demanded that [VDARE] complete its subpoena compliance and produce a redaction log by December 12, 2022." *See id.* at 9.

In response to the petition, VDARE moved for an Order dismissing the special proceeding or alternatively staying the proceeding pending resolution of VDARE's federal action. *See id.* (footnote omitted). The State Supreme Court granted Defendant's motion to compel and denied VDARE's motion for a stay or dismissal. *See id.*

In its Decision and Order, the State Supreme Court explained that "[t]he requirements for the issuance of an investigatory subpoena duces tecum" were as follows: "'(1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry.'" *See* Dkt. No. 15 at 8 (quoting *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2017) (quoting *Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.*, 147 A.D.2d 143, 147, 541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski*, 59 N.Y.2d 35, 462 N.Y.S.2d 836, 449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.*, 23 N.Y.2d 916, 298 N.Y.S.2d 315, 246 N.E.2d 166)).

The State Supreme Court found that "New York State ha[d] a public policy interest in ensuring the robust regulation of tax-exempt charitable entities like [VDARE], and [Defendant] ha[d] authority to supervise and investigate such entities when misconduct was suspected." *See*

**SPA009**

*id.* at 9.  The State Supreme Court also found that Defendant's Subpoena was "focused on subject matter areas that f[e]ll within the statutory provisions that govern[ed] not-for-profit corporations."  *See id.*  Furthermore, the State Supreme Court noted that "[t]he Not-for-Profit Corporation Law [("N-PCL")] provide[d] that entities like VDARE may be formed only for charitable purposes . . . and that charitable assets may not be distributed to members, directors or officers, . . ."  *See id.* (internal citations omitted).  Moreover, the State Supreme Court found that "[c]haritable entities [were] also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set, . . .; processes for acquisition and 'sale or other disposition' of property . . .; creating and presenting complete and accurate financial reports . . .; a process for considering related party transactions, . . .; and a process for managing conflicts of interest. . . ."  *See id.* (internal citations omitted).

The State Supreme Court concluded that "[t]he Subpoena's requests demand[ed] the type of material that [would] permit [Defendant] to determine whether [VDARE] ha[d] complied with these requirements, including complete copies of [VDARE's] annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review."  *See id.* at 9-10.  The State Supreme Court found these documents would "permit [Defendant] to determine whether there ha[d] been any diversion of charitable assets, [*e.g.*,] through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries.  *See id.* at 10.  Furthermore, the State Supreme Court noted that "Article 7-A of the Executive Law authorize[d] [Defendant] to supervise charitable organizations that solicit in New York, and Article 7-A required [Defendant] to monitor such organizations to ensure that  . . .  a charity d[id] not solicit contributions under false pretenses or use the contributions it receive[d] in a manner

- 10 -

**SPA010**

that [was] not 'substantially consistent' with the charity's stated purposes." *See id.* (citing Executive Law § 172-d).

In addition, the State Supreme Court noted that VDARE had "raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights." *See id.* (citations omitted). The State Supreme Court, however, concluded that VDARE made "this argument on behalf of its donors and [Defendant] ha[d] agreed, initially to redact donors' and volunteers' identities." *See id.* Thus, the State Supreme Court concluded that VDARE had "not established that the Subpoena would impair [its] own First Amendment rights." *See id.*

Additionally, the State Supreme Court found that VDARE's "filings . . . underscore[d] the reasonableness of the Subpoena." *See id.* VDARE "admit[ed] the critical facts that first triggered [Defendant's] scrutiny – Peter Brimelow, [VDARE's] founder and director, and his wife, Lydia Brimelow, also a director, [had] used and continue[d] to use a $1.4 million charitable asset as their personal residence." *See id.* at 10-11 (citing Frisch Aff. (Doc. No. 37)). The State Supreme Court noted that VDARE argued that "the Brimelows paid rent to live in the cottage beginning in April 2021, however, the lease [was] between Lydia Brimelow and BBB, LLC, a West Virginia for-profit corporation she manage[d], and Lydia Brimelow [had] signed the document as both landlord and tenant." *See id.* (citing Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia Brimelow as manager)).

The State Supreme Court also found that VDARE's motion and accompanying papers fail[ed] to meet its burden of establishing the Subpoena's invalidity" and that VDARE, "which ha[d] partially complied with the [S]ubpoena for months, ha[d] not established why providing a redaction log for its already-produced documents raise[d] any First Amendment concerns or why

- 11 -

SPA011

continuing production would pose a threat to its existence." *See id.* The State Supreme Court stated that, although VDARE argued "that redactions [were] required to protect the identities of contractors – including writers who contribute[d] to the website – these were precisely the records [Defendant sought] to examine in [her] investigation of [VDARE's] alleged organizational misconduct." *See id.* The State Supreme Court noted that, "[t]o the extent anonymity is used to make violations of law, 'it is unprotected by the First Amendment.'" *See id.* (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)).

The State Supreme Court also addressed the fact that "the only board member among four who [was] not a Brimelow family member was a known contributor." *See id.* The State Supreme Court found that Defendant could "probe this contributor's compensation as part of [her] investigation of conflicts of interest and board independence." *See id.* The State Supreme Court also found that Defendant could "seek the identities of other contributors to determine whether further conflicts of interest [might] exist." *See id.*

In addition, the State Supreme Court found VDARE's reliance on *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021), unavailing because "[t]hat decision concerned only donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation." *See id.* at 11-12 (citing *Ams. for Prosperity Found.*, 141 S. Ct. at 2386-87). Moreover, the State Supreme Court noted that Defendant had "indicated a willingness to enter into a stipulation/order of confidentiality to further address any of [VDARE's] concerns. *See id.* at 12. Finally, the State Supreme Court found that VDARE had not presented any "compelling basis for a stay of [the] special proceeding in its moving papers and acknowledged at oral argument that it had not sought a stay of this proceeding from the Federal District Court." *See id.*

SPA012

Based on these findings, the State Supreme Court ordered VDARE to "comply with the Subpoena, subject to the agreement of July 27, 2022, . . . that VDARE may redact the following from otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE) attendees present at VDARE events conducted at or broadcast from the 276 Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying information in any responsive record of private contributions to the organization and/or purchases from the October 16, 2021 'Castle Auction' (transaction amounts, dates, and other details must be disclosed)"; and "such redactions [were] without prejudice to [Defendant's] right to seek modification of these agreed redaction terms by written application to the Court on notice to VDARE"; and "on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to [Defendant], in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log"; and "on or before February 24, 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter . . .; on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production[.]" *See id.* at 12-13. Finally, the State Supreme Court directed that "the parties, if so advised, [might] forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court[.]" *See id.* at 13.

After the State Supreme Court entered its Order, VDARE moved for a stay and interim relief pending appeal. *See generally* Dkt. 35-10, VDARE's motion for a stay. As grounds for its

**SPA013**

motion, VDARE argued that (1) Defendant's demand for immediate disclosure of constitutionally protected information extraneous to any legitimate investigative need warranted the inference that Defendant's pursuit of VDARE was retaliation for VDARE's exercise of its constitutional rights, *see id.* at 8-15; (2) Defendant's erroneous challenge to the first-filed rule, *see id.* at 15-18; and (3) the State Supreme Court had unduly deferred to Defendant at the expense of VDARE's right to seek redress in federal court for the state's unconstitutional retaliation and demand for disclosures of constitutionally protected information extraneous to any truly overriding investigative need, *see id.* at 18-25..

In opposition to VDARE's motion for a stay, Defendant argued that the court should deny the stay pending appeal because VDARE was unlikely to succeed on the merits of its appeal; equitable factors weighed against staying the State Supreme Court's Order that VDARE comply with its outstanding Subpoena obligations, *i.e.*, VDARE would not be harmed – irreparably or otherwise – by complying with that Order and the relative hardships of the parties weighed in favor of denying VDARE's application. *See generally* Dkt. No. 35-11. New York State, Appellate Division, First Department, denied VDARE's motion for a stay pending appeal. *See generally* Dkt. No. 35-12.

On March 21, 2023, Plaintiff filed the pending motion for a preliminary injunction. *See* Dkt. No. 29.[2] Before it can address the merits of Plaintiff's motion, it must address whether the doctrine of *res judicata* bars the Court from granting the relief that Plaintiff seeks.

"To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state[,]" in this case New York. *Conopco, Inc. v. Roll Int'l*,

---

[2] Plaintiff's motion also requested that the Court issue a temporary restraining order. After conferring with counsel, the Court denied that request. *See* Dkt. No. 32.

231 F.3d 82, 87 (2d Cir. 2000) (citations omitted).  Under New York's doctrine of *res judicata*, a "disposition on the merits bars litigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions as a cause of action that either was raised or could have been raised in the prior proceeding[.]"  *Blue Sky, LLC v. Jerry's Self Storage, LLC*, 145 A.D.3d 945, 946 (2d Dep't 2016) (citations omitted).  Therefore, because Defendant is invoking *res judicata* in opposition to [VDARE's] motion for preliminary injunction, she must show "'(1) a final judgment on the merits, (2) identity or privity of parties, and (3) identity of claims in the two actions.'"  *Divito v. Glennon*, 193 A.D.3d 1326, 1328 (4th Dep't 2021) (quotation and other citations omitted).

In this case, there is no dispute that the State Supreme Court entered a final judgment when it compelled VDARE to comply with Defendant's Subpoena.  In fact, VDARE appealed that judgment and requested a stay pending the outcome of the appeal, which the Appellate Division denied.  There is also no dispute that the parties in the two actions are the same – VDARE and the Attorney General of the State of New York.  Thus, the only issue in dispute is the identity of the claims in this action and the state-court action.

As the court explained in *Trump v. Jones*, No. 1:21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022), "[a] 'final judgment' includes 'any judicial decision upon a question of fact or law which is not provisional and subject to change and modification in the future by the same tribunal.'"  *Id.* at *16 (quoting *Bannon v. Bannon*, 270 N.Y. 484, 489, 1 N.E.2d 975 (1936)).  "The 'final judgment on the merits' requirement may therefore be satisfied by a 'final order in a special proceeding [which] conclusively determine[s] every question at issue therein.'"  *Id.* (quoting [*Bannon*, 270 N.Y.] at 489-90, 1 N.E.2d 975 ("The essential element of a conclusive adjudication is finality of the proceedings.  A judicial decision can constitute a

conclusive adjudication of question of fact or law only when rendered in a proceeding in which a court had jurisdiction to render an irrevocable and final decision upon such question."); *see also Slater v. Am. Mineral Spirits Co.*, 33 N.Y.2d 443, 446, 354 N.Y.S.2d 620, 310 N.E.2d 300 (1974) (finding "no occasion" to "attach significance to any such distinction" between final orders and final judgments); *Sabatino v. Capco Trading, Inc.*, 27 A.D.3d 1019, 1020, 813 N.Y.S.2d 237 (3d Dep't 2006) ("[I]f finality is clear, the source of it should be secondary." (quoting Siegel, N.Y. Prac. § 444, at 751 [4th ed.])); *Aziz v. Butt*, 156 N.Y.S.3d 832, 73 Misc. 3d 1233A (Sup. Ct. Westchester Cty. 2021) (giving res judicata effect to prior special proceeding)).

Finally, Defendant argues that Plaintiff had a full and fair opportunity to litigate the propriety of Defendant's investigation in the New York proceeding. "In determining whether a claim 'could have been raised,' New York has adopted the 'transactional analysis approach.'" *Trump*, 2022 WL 1718951, at *18 (quoting *O'Brien*, 54 N.Y.2d at 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (citing *Reilly v. Reid*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978))). "Under this approach, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Id.* (quoting [*O'Brien*, 54 N.Y.2d at 357]). To determine whether claims arise out of the same transaction or series of transactions, a court must analyze "'whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111-12, 170 N.E.3d 733 (2021) (citations and internal quotation marks omitted)). "Th[is] approach is 'pragmatic and flexible.'" *Id.* (quoting [*Simmons*, 37 N.Y.3d at 111-12]).

- 16 -

**SPA016**

In this case, all of VDARE's claims in this action arise out of Defendant's investigation into VDARE; and, therefore, those claims arise out of the same transaction or series of transactions as those involved in the State Supreme Court proceeding.  Moreover, it is beyond dispute that, if VDARE believed that Defendant's Subpoena was overbroad or unconstitutional, it could have brought a motion to quash or vacate that Subpoena in State Supreme Court challenging the validity of Defendant's Subpoena or her authority to issue that Subpoena.  Rather than do so, however, VDARE, at least initially, partially complied with the Subpoena.  Moreover, in response to Defendant's filing of the special proceeding in State Supreme Court to compel VDARE to comply fully with the Subpoena, Plaintiff could have, and did, raise many issues in opposition to certain aspects of the Subpoena, including its constitutionality.

Finally, VDARE argues that it could not pursue an injunction in the State Supreme Court proceeding because Defendant was a "petitioner" in that special proceeding and CPLR § 3019 appears only to authorize a counterclaim against a "plaintiff."  *See* Dkt. No. 38 at 15.[3]  Although New York's "permissive counterclaim rule may save from the bar of res judicata those claims for separate or different relief that could have been but were not interposed in the parties' prior

---

[3] Defendant brought her petition in State Supreme Court pursuant to Article 4 of the N.Y. C.P.L.R.  In such a proceeding, the notes to N.Y. C.P.L.R. § 402 specifically provide that

> [t]he adverse party . . . must serve an answer, responding to the allegations of the petition.  CPLR 402.  Here again, the general pleading rules of CPLR Article 30 are applicable unless superseded by the statute governing the particular special proceeding.  In addition to denials and affirmative defenses (CPLR 3018), the respondent may assert any counterclaim against the petitioner, a point made clear by the reference in the second sentence of CPLR 402 to the requirement that a reply be served in response to a counterclaim.

N.Y. C.P.L.R. § 402 (C402:2 Answer).

**SPA017**

action,' it does not allow a party 'to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action.'" *Trump*, 2022 WL 1718951, at *18 (quoting *67-25 Dartmouth St. Corp. v. Syllman*, 29 A.D.3d 888, 889-90, 817 N.Y.S.2d 299 (2d Dep't 2006)). Even to the extent VDARE's federal claims are permissive counterclaims, they are not saved from the bar of *res judicata* because VDARE's claims for relief in this action would "impair the rights or interests established" in the subpoena enforcement proceeding. *Id.* (quoting [*67-25 Dartmouth St. Corp.*, 29 A.D.3d at 889-90]). Specifically, the State Supreme Court has determined that Defendant's Subpoena was authorized, she had the right to conduct the investigation, and VDARE must comply with the Subpoena. Clearly, an order from this Court enjoining Defendant's investigation, even temporarily, would impair those rights.

Although VDARE argues that the scope of the State Supreme Court special proceeding was narrow and that it did not have a full and fair opportunity to litigate its constitutional claims in that forum, it has not provided any authority to support its contention that the State Supreme Court did not "have the power to award the full measure of relief" it seeks or that there were any formal barriers to the assertion of its federal claims in the State Supreme Court proceeding; and the cases it cites for that proposition are distinguishable. In fact, the record clearly demonstrates that VDARE raised its constitutional claims in State Supreme Court in opposition to Defendant's petition. *See Trump*, 2022 WL 1718951, at *19 (*cf. Exxon Mobil Corp*, 28 F.4th at 400 (noting that the "specific relief that Exxon now claims was available only in federal court – namely, an injunction prohibiting pretextual investigations and ending the Massachusetts Attorney General's investigation – was equally available in state court."); *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 184 (2d Cir. 1991) (noting that the district court judge "properly found" that the federal

- 18 -

**SPA018**

plaintiffs "[could] adequately raise their [Section 1983] constitutional challenges to the Attorney General's conduct in pending state proceedings" involving a motion to compel compliance with subpoenas and a cross-motion to quash)).

With regard to VDARE's argument that the Court should not apply *res judicata* because this action preceded the filing of Defendant's state-court special proceeding, there is no support for that argument. The law is clear that the sequence of the filing of the actions is not relevant to determining whether *res judicata* applies. As the court noted in *Forte v. Kaneka Am. Corp.*, although "it is true that the present action cannot be classified as 'future litigation on the same cause' because it was pending when the stipulations were entered into, for purposes of res judicata the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect[.]" *Forte v. Kaneka Am. Corp.*, 110 A.D.2d 81, 86 (2d Dep't 1985) (citing *Williams v. Ward*, 556 F.2d 1143, 1154; Restatement [Second] of Judgments § 14 comment a).

Furthermore, Comment a to the Restatement (Second) of Judgments § 14 provides as follows:

> [i]n order that a final judgment shall be given res judicata effect in a pending action, it is not required that the judgment shall have been rendered before that action commenced. Nor is a judgment, otherwise entitled to res judicata effect in a pending action, to be deprived of such effect by the fact that the action in which it was rendered was commenced later than the pending action. It is merely required that rendition of the final judgment shall antedate its application as res judicata in the pending action. Thus when two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action (assuming any further prerequisites are met), regardless of which action was first brought.

Restatement (Second) of Judgments, § 14, comment a; *see also Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir. 1977) (stating that "it is clear that even though the Southern District action

was filed before the Eastern District action, when the latter proceeded to final judgment first it became a bar to the former if the underlying claims are the same" (citing Restatement of Judgments s 43 (1943); Restatement of Judgments Second s 41.1 (Tentative Draft No. 1, March 28, 1973))).

A review of the State Supreme Court's decision/judgment makes clear that the State Supreme Court's decision was a final judgment on the merits of Defendant's petition to compel VDARE to comply with its Subpoena on the merits, that the parties in the State Supreme Court and in this case are the same, that the claims in both actions arise out of the same series of transactions and that VDARE raised or could have raised all of its constitutional claims in the special proceeding in State Supreme Court. Therefore, for all these reasons, the Court concludes that *res judicata* bars the relief that VDARE seeks in its motion for a preliminary injunction, *i.e.*, an order temporarily restraining and enjoining Defendant during the pendency of this action from enforcing the Decision and Order of the Appellate Division, First Department dated March 9, 2023, and entered on March 10, 2023, which reinstated the Order of the Honorable Sabrina Kraus, Justice of the Supreme Court of the State of New York, directing VDARE to comply with Defendant's Subpoena.

## III. CONCLUSION

Accordingly, after reviewing the entire file in this case, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that VDARE's motion for a preliminary injunction, *see* Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that each of the parties may supplement their prior submissions supporting or opposing Defendant's motion to dismiss, to address the issue of the effect of *res judicata* on that

- 20 -

**SPA020**

motion in a letter brief, not to exceed five pages, within thirty (30) days of the date of this

Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated:  June 27, 2023
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

**SPA021**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

VDARE FOUNDATION, INC.,

                              Plaintiff,

                v.                                          1:22-CV-1337
                                                              (FJS/CFH)
LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                              Defendant.

_____

APPEARANCES                          OF COUNSEL

**RANDAZZA LEGAL GROUP, PLLC**       **JAY MARSHALL WOLMAN, ESQ.**
100 Pearl Street, 14th Floor         **MARC J. RANDAZZA, ESQ.**
Hartford, Connecticut 06103
              - and –
4974 South Rainbow Boulevard, Suite 100
Las Vegas, Nevada 89118
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE**     **ALEXANDER S. MENDELSON, AAG**
**ATTORNEY GENERAL**                 **RICK SAWYER, AAG**
28 Liberty Street
New York, New York 10005
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendant's motion to dismiss Plaintiff's complaint for lack

of subject matter jurisdiction and, alternatively, for failure to state a claim.  *See* Dkt. No. 12, 51.

Plaintiff opposes the motion.  *See* Dkt. Nos. 25-26, 54.

## SPA022

## II. BACKGROUND

On December 12, 2022, Plaintiff VDARE Foundation, Inc. (hereinafter "Plaintiff" or "VDARE") commenced this action by filing a Verified Complaint for declaratory and injunctive relief and, for certain causes of action, sought compensatory and punitive damages. *See generally* Dkt. No. 1, Complaint. According to the Complaint, VDARE "is a non-profit foundation recognized by the IRS as a 501(c)(3) educational organization organized and existing under the laws of the State of New York, but with a principal place of business in Berkeley Springs, West Virginia." *See id.* at ¶ 1. Furthermore, "VDARE was founded to support the efforts of VDARE.com, a non-profit web magazine . . . [and] is literally a mom-and-pop operation, run by Peter and Lydia Brimelow, husband and wife, with limited staff and resources." *See id.* at ¶ 2.

VDARE states that "the Court has subject matter jurisdiction because this action involves claims based on the First and Fourteenth Amendments to the United States Constitution, and because this action seeks to prevent state officials from interfering with federal rights." *See id.* at ¶ 4. Furthermore, VDARE asserts that 'subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations under color of state law of rights, privileges and immunities secured by the United States Constitution." *See id.* Finally, VDARE states that "the Court has supplemental jurisdiction over state law claims asserted in this action[.]" *See id.*

According to VDARE, "[Peter] Brimelow with an editorial collective of several other journalists started VDARE.com to publish articles critical of the immigration policy of the United States." *See id.* at ¶ 8. "Throughout its existence, VDARE has published pieces that

**SPA023**

criticize current United States immigration policy for various reasons and from a variety of

angles and perspectives.  VDARE's editorial position in favor of limiting immigration is not

based on any sort of aversion to immigrants.  Brimelow is himself an immigrant and a

naturalized United States citizen."  *See id.*  In addition, "[m]any of VDARE's editors and

contributors, current and former, are immigrants or foreign nationals."  *See id.*

      Plaintiff contends that "[s]tories originally published in VDARE have been positively

cited by the New York Times, the Harvard Journal on Law and Public Policy, and many other

publications."  *See id.*  However, Plaintiff acknowledges that "VDARE is not without detractors .

. . [and] has repeatedly been tarred with pejoratives such as 'white nationalist,' and 'racist[']."  *See

id.* at ¶ 9.  "VDARE rejects these labels."  *See id.*  Plaintiff argues that, "[w]hatever the views of

VDARE's detractors, its speech is non-violent and lawful and protected by the First Amendment

to the United States Constitution."  *See id.*

      Plaintiff states that the "[u]se of pejoratives to describe VDARE has led to significant

reputational and professional harm for those associated with it.  On occasions when associations

with VDARE have been disclosed or become public, people have lost employment, and

contractors essential to VDARE's existence have opted to stop providing services.  Venues

which have agreed to host VDARE's conferences have faced pressure campaigns and threats.

Such venues have sometimes cancelled contracts with VDARE."  *See id.* at ¶ 10.  Finally,

Plaintiff asserts that, "[t]o protect its rights of speech and association, VDARE is vigilant about

maintaining the privacy of those associated with it and does not disclose their identities unless

required by law."  *See id.* at ¶ 11.

      On June 24, 2022, Defendant issued a subpoena to VDARE, identifying 44 categories of

demanded documents.  *See id.* at ¶ 22.  Among other things, Defendant demanded "copies of

transcripts of each deposition in the litigation between Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings." *See id.* at ¶ 23. VDARE explained that "[t]his demand referred to a lawsuit for libel filed by Brimelow against the New York Times for calling him an 'open white nationalist,' which he is not." *See id.*

Thereafter, on July 20, 2022, after a meet-and-confer with Assistant Attorneys General on July 18, 2022, an attorney then advising VDARE on responding to Defendant's subpoena, requested in writing that she withdraw her subpoenas on grounds that they were pretexts aimed at VDARE's rights under the First Amendment to express positions critical of governmental officials and policy. *See id.* at ¶ 24. Defendant declined to withdraw the subpoenas. *See id.*

In August 2022, before a revised return date, VDARE engaged new counsel and directed him to comply with Defendant's subpoena. *See id.* at ¶ 25. Defendant acknowledged new counsel's need to get up to speed and his competing commitments and requested that VDARE produce "very basic corporate records" to demonstrate its intent to comply in advance of a "rolling production." *See id.* Between September 19 and November 21, 2022, VDARE produced approximately 6,000 pages of documents in response to Defendant's subpoena to Plaintiff after completing review of documents that VDARE maintained electronically and in hard copy. *See id.* at ¶ 25.

While making and before completing the production, VDARE advised Defendant of its position that production of the identities of many of its contractors would violate the First Amendment. *See id.* at ¶ 26. VDARE explained to Defendant that some of the contractors would face retribution if their association with VDARE were revealed and that VDARE otherwise risked losing services of contractors indispensable to its existence if their identities

SPA025

were disclosed, as had happened in the past. *See id.* VDARE cited several cases to support its position. *See id.*

VDARE proposed that Defendant identify specific contractors about which she was concerned, and VDARE could otherwise identify any contractor that might qualify as a "related party" within the meaning of New York law. *See id.* at ¶ 27. VDARE expressed its desire to make as robust a production as possible, proposing that the issue of disclosure of contractors' identities could be revisited if it did not prove to be an adequate solution or if a specific need arose. *See id.* Defendant rejected VDARE's proposals and requested that VDARE further articulate its objection to disclosure of the identities of vendors. *See id.*

In a letter dated October 31, 2022, VDARE again articulated its objection to disclosure of the identities of contractors and requested that the parties meet and confer on the issue. *See id.* at ¶ 28. VDARE advised Defendant that the identities of its contractors were indispensable to its work and their identities were inextricably intertwined with financial records, including on lists of banking transactions and associated copies of checks. *See id.* VDARE also advised Defendant that the work of its counsel, a sole practitioner reviewing all of its documents himself, to provide documents with redactions was labor-intensive, time-consuming and ongoing. *See id.* VDARE proposed in its letter of October 31, 2022, that the parties meet and confer to determine if they could find at least a temporary resolution of the issue. *See id.*

In addition, in early October 2022, Defendant requested that VDARE provide a general outline of electronically-stored files (emails) that it would need to collect for review and produce and begin collecting. *See id.* at ¶ 30. VDARE did so, advising that the universe of such files amounted to more than 40 gigabytes of data, providing a list of email custodians, and otherwise keeping Defendant updated as to the status of the review. *See id.* According to VDARE, the

**SPA026**

emails, like its paper documents contain information about the identities of contractors whose association with VDARE is not required for any legitimate oversight of VDARE by Defendant, and the disclosure of which would violate First Amendment protections and risk VDARE's existence. *See id.*

On December 2, 2022, Defendant demanded VDARE's full compliance with its subpoena by December 12, 2022, or she would deem VDARE in non-compliance. *See id.* at ¶ 32. Although VDARE advised Defendant of its concerns about unnecessary disclosure of identities of contractors, Defendant demanded that their identities be disclosed. *See id.* Furthermore, although Defendant had encouraged VDARE to make a rolling production as documents were reviewed, resulting in later decisions not to redact some information that had earlier been redacted, Defendant questioned the validity of VDARE's concerns. *See id.* Although VDARE had advised Defendant that redactions of identities of contractors were intertwined with its records and were otherwise time consuming and labor intensive to apply, Defendant demanded, by December 12, 2022, a log identifying each redaction of each contractor's identity in VDARE's production, and list prospective production of emails, as a precondition to meet-and-confer about VDARE's constitutional objection to unnecessary disclosure of identities of contractors. *See id.* at ¶ 32. Finally, VDARE contends that Defendant's position threatens its very existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected speech. *See id.* at ¶ 33.

Based on these allegations, VDARE asserts the following causes of action: (1) declaratory relief under the First Amendment, i.e., a declaration that the subpoena's attempts to compel First Amendment speech and association rights are unconstitutional; (2) violation of VDARE's First and Fourteenth Amendment rights under § 1983 by retaliating against VDARE

**SPA027**

based on its exercise of its rights of freedom of speech and association for which it seeks compensatory and punitive damages; (3) violation of VDARE's rights under Article I, Section 8 of the New York State Constitution by retaliating against VDARE based on its exercise of its rights of freedom of speech and association, for which it seeks compensatory and punitive damages; and (4) injunctions barring Defendant from enforcing her subpoena.

On December 14, 2022, two days after VDARE commenced the present action, Defendant petitioned New York State Supreme Court, pursuant to New York Not-for-Profit Corporation Law, Estates, Powers and Trusts Law, Executive Law and CPLR Article 4, *see* Dkt. No. 35-6, State Court Petition, at ¶ 9, for an Order (i) compelling VDARE to comply without delay with the June 23, 2022 subpoena; (ii) ordering all documents produced to be unredacted (except for agreed upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate, *see id.* at ¶ 6.

In support of her petition, Defendant asserted that (1) the Subpoena was issued pursuant to a legally-authorized investigation for which there was a factual basis and that the requests in the Subpoena were reasonably related to the investigation; (2) VDARE had interposed no cognizable basis for delaying or withholding responsive document productions to Defendant; and (3) as a result, VDARE should be ordered to comply with the Subpoena without further delay. *See id.* at ¶¶ 29-31.

On January 18, 2023, Defendant filed the pending motion to dismiss in this Court. *See* Dkt. No. 12. The next day, January 19, 2023, the State Supreme Court heard oral argument and reserved decision on Defendant's petition. On January 23, 2023, the State Supreme Court issued a decision and order, in which it noted that the Subpoena sought documents (1) concerning VDARE's organizational structure; (2) compliance with conflict-of-interest policy requirements

**SPA028**

under New York law and financial operations; (3) its purchase and conveyance of the Berkeley

Springs Castle; and (4) transactions between VDARE and entities controlled by the Brimelows.

*See* Dkt. No. 15, State Supreme Court Decision, at 6.  The State Supreme Court also noted that,

although VDARE had originally taken "the position that the Subpoena was unlawful and should

be withdrawn[, o]n September 19, 2022, new counsel for [VDARE] agreed to comply with the

Subpoena but asserted that a significant volume of electronically-stored and hard copy

documents needed to be reviewed."  *See id.*  VDARE made its first production that day,

consisting of 27 documents produced without Bates numbers and bearing unmarked redactions.

*See id.*

The State Supreme Court further explained that, in the 12 weeks since its first September

delivery, VDARE had produced "approximately 6,000 pages from its hard copy records . . . [and

had] redacted that material without any explanation for how the material was chosen for

redaction."  *See id.*  Defendant asserted that "the redactions [were] extensive and ha[d] been

applied across almost every category of document produced, including board meeting minutes,

bank statements, internal accounting ledgers, credit card statements, invoices, financial records

for the limited liability company (Happy Penguins LLC) from which [VDARE] had historically

leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and

Lydia Brimelow."  *See id.*

Furthermore, the State Supreme Court noted that, "on October 23, 2022, Lydia Brimelow

[had] represented that, with limited exceptions, [VDARE's] hard copy production was complete,

and identified 22 unique email accounts containing approximately 40 gigabytes of potentially

responsive electronically stored information."  *See id.*  VDARE's counsel had originally "stated

that review of that material would be completed by November 21, 2022.  [VDARE] subsequently

**SPA029**

proposed December 12, 2022, as the new deadline for completing email production." *See id.* at 6-7.

The State Supreme Court further noted that, on December 2, 2022, Defendant wrote to VDARE, "summarizing [her] concerns with the pace and scope of production, including [VDARE's] extensive redactions, and demanded that [VDARE] complete its subpoena compliance and produce a redaction log by December 12, 2022." *See id.* at 9.

In response to the petition, VDARE moved for an Order dismissing the special proceeding or alternatively staying the proceeding pending resolution of VDARE's federal action. *See id.* (footnote omitted). The State Supreme Court granted Defendant's motion to compel and denied VDARE's motion for a stay or dismissal. *See id.*

In its Decision and Order, the State Supreme Court explained that "[t]he requirements for the issuance of an investigatory subpoena duces tecum" were as follows: "'(1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry.'" *See* Dkt. No. 15 at 8 (quoting *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2017) (quoting *Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.*, 147 A.D.2d 143, 147, 541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski*, 59 N.Y.2d 35, 462 N.Y.S.2d 836, 449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.*, 23 N.Y.2d 916, 298 N.Y.S.2d 315, 246 N.E.2d 166)).

The State Supreme Court found that "New York State ha[d] a public policy interest in ensuring the robust regulation of tax-exempt charitable entities like [VDARE], and [Defendant] ha[d] authority to supervise and investigate such entities when misconduct was suspected." *See*

**SPA030**

*id.* at 9.  The State Supreme Court also found that Defendant's Subpoena was "focused on subject matter areas that f[e]ll within the statutory provisions that govern[ed] not-for-profit corporations."  *See id.*  Furthermore, the State Supreme Court noted that "[t]he Not-for-Profit Corporation Law [("N-PCL")] provide[d] that entities like VDARE may be formed only for charitable purposes . . . and that charitable assets may not be distributed to members, directors or officers, . . ."  *See id.* (internal citations omitted).  Moreover, the State Supreme Court found that "[c]haritable entities [were] also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set, . . .; processes for acquisition and 'sale or other disposition' of property . . .; creating and presenting complete and accurate financial reports . . .; a process for considering related party transactions, . . .; and a process for managing conflicts of interest. . . ."  *See id.* (internal citations omitted).

The State Supreme Court concluded that "[t]he Subpoena requests demand[ed] the type of material that [would] permit [Defendant] to determine whether [VDARE] ha[d] complied with these requirements, including complete copies of [VDARE's] annual regulatory filings, financial transaction records, compensation records of Board meetings and review."  *See id.* at 9-10.  The State Supreme Court found these documents would "permit [Defendant] to determine whether there ha[d] been any diversion of charitable assets, [*e.g.*] through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries."  *See id.* at 10.  Furthermore, the State Supreme Court noted that "Article 7-A of the Executive Law authorize[d] [Defendant] to supervise charitable organizations that solicit in New York, and Article 7-A required [Defendant] to monitor such organizations to ensure that . . . a charity d[id] not solicit contributions under false pretenses or use the contributions it receive[d] in a manner that [was]

not 'substantially consistent' with the charity's stated purposes." *See id.* (citing Executive Law § 172-d).

In addition, the State Supreme Court noted that VDARE had "raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights." *See id.* (citations omitted). The State Supreme Court, however, concluded that VDARE made "this argument on behalf of its donors and [Defendant] ha[d] agreed, initially, to redact donors' and volunteers' identities." *See id.* Thus, the State Supreme Court concluded that VDARE had "not established that the Subpoena would impair [its] own First Amendment rights." *See id.*

Additionally, the State Supreme Court found that VDARE's "filings . . . underscore[d] the reasonableness of the Subpoena." *See id.* VDARE "admit[ted] the critical facts that first triggered [Defendant's] scrutiny – Peter Brimelow, [VDARE's] founder and director, and his wife, Lydia Brimelow, also a director, [had] used and continue[d] to use a $1.4 million charitable asset as their personal residence." *See id.* at 10-11 (citing Frisch Aff. (Doc. No. 37)). The State Supreme Court noted that VDARE argued that "the Brimelows paid rent to live in the cottage beginning in April 2021, however, the lease [was] between Lydia Brimelow and BBB, LLC, a West Virginia for-profit corporation that she manage[d], and Lydia Brimelow [had] signed the document as both landlord and tenant." *See id.* (citing Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia Brimelow as manager)).

The State Supreme Court also found that VDARE's motion and accompanying papers fail[ed] to meet its burden of establishing the Subpoena's invalidity" and that VDARE, "which ha[d] partially complied with the [S]ubpoena for months, ha[d] not established why providing a redaction log for its already-produced documents raise[d] any First Amendment concerns or why

- 11 -

**SPA032**

continuing production would pose a threat to its existence." *See id.* The State Supreme Court stated that, although VDARE argued "that redactions [were] required to protect the identities of contractors – including writers who contribute[d] to the website – these were precisely the records [Defendant sought] to examine in [her] investigation of [VDARE's] alleged organizational misconduct." *See id.* The State Supreme Court noted that, "[t]o the extent anonymity is used to make violations of law, 'it is unprotected by the First Amendment.'" *See id.* (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)).

The State Supreme Court also addressed the fact that "the only board member among four who [was] not a Brimelow family member was a known contributor." *See id.* The State Supreme Court found that Defendant could "probe this contributor's compensation as part of [her] investigation of conflicts of interest and board independence." *See id.* The State Supreme Court also found that Defendant could "seek the identities of other contributors to determine whether further conflicts of interest [might] exist." *See id.*

In addition, the State Supreme Court found VDARE's reliance on *Americans for Prosperity Found. v. Bonita*, 141 S. Ct. 2373 (2021), unavailing because "[t]hat decision concerned only donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation." *See id.* at 11-12 (citing *Ams. for Prosperity Found.*, 141 S. Ct. at 2386-87). Moreover, the State Supreme Court noted that Defendant had "indicated a willingness to enter into a stipulation/order of confidentiality to further address any of [VDARE's] concerns. *See id.* at 12. Finally, the State Supreme Court found that VDARE had not presented any "compelling basis for a stay of [the] special proceeding in its moving papers and acknowledged at oral argument that it had not sought a stay of this proceeding from the Federal District Court." *See id.*

**SPA033**

Based on these findings, the State Supreme Court ordered VDARE to "comply with the Subpoena, subject to the agreement of July 27, 2022 . . . that VDARE may redact the following from otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE) attendees present at VDARE events conducted at or broadcast from the 276 Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying information in any responsive record of private contributions to the organization and/or purchases from the October 16, 2021 'Castle Auction' (transaction amounts, dates, and other details must be disclosed)"; and "such redactions [were] without prejudice to [Defendant's] right to seek modification of these agreed redaction terms by written application to the Court on notice to VDARE"; and "on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to [Defendant], in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log"; and "on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production[.]" *See id.* at 12-13.  Finally, the State Supreme Court directed that "the parties, if so advised, [might] forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court[.]"  *See id.* at 13.

After the State Supreme Court entered its Order, VDARE moved for a stay and interim relief pending appeal.  *See generally* Dkt. No. 35-10, VDARE's motion for a stay.  As grounds for its motion, VDARE argued that (1) Defendant's demand for immediate disclosure of constitutionally protected information extraneous to any legitimate investigative need warranted

- 13 -

the inference that Defendant's pursuit of VDARE was retaliation for VDARE's exercise of its constitutional rights, *see id.* at 8-15; (2) Defendant's erroneous challenge to the first-filed rule, *see id.* at 15-18; and (3) the State Supreme Court had unduly deferred to Defendant at the expense of VDARE's right to seek redress in federal court for the state's unconstitutional retaliation and demand for disclosure of constitutionally protected information extraneous to any truly overriding investigative need, *see id.* at 18-25.

In opposition to VDARE's motion for a stay, Defendant argued that the court should deny the stay pending appeal because VDARE was unlikely to succeed on the merits of its appeal; equitable factors weighed against staying the Supreme Court's Order that VDARE comply with its outstanding Subpoena obligations, *i.e.*, VDARE would not be harmed – irreparably or otherwise – by complying with that Order and the relative hardships of the parties weighed in favor of denying VDARE's application. *See generally* Dkt. No. 35-11. On March 23, 2023, New York State Court, Appellate Division, First Department denied VDARE's motion for a stay pending appeal. *See generally* Dkt. No. 35-12.

On March 21, 2023, Plaintiff filed a motion requesting that this Court enter a Temporary Restraining Order or, in the alternative, a preliminary injunction. *See* Dkt. No. 29. After consulting with counsel, the Court denied the motion for a Temporary Restraining Order, *see* Dkt. No. 32, and issued a scheduling order for Defendant to file its opposition to Plaintiff's motion for a preliminary injunction and for Plaintiff to file its reply to Defendant's opposition. *See id.* After the briefing was complete and the Court had reviewed the parties' submissions, the Court issued a Memorandum-Decision and Order, dated June 27, 2023, denying VDARE's motion for a preliminary injunction. *See* Dkt. No. 50. In that Memorandum-Decision and Order, the Court also ordered that each of the parties could supplement their prior submissions

- 14 -

**SPA035**

supporting or opposing Defendant's motion to dismiss to address the issue of the effect of *res judicata* on that motion within 30 days. *See id.* Both parties filed their submissions on July 27, 2023. *See* Dkt. Nos. 51, 52. On that same date, VDARE filed a Notice of Appeal regarding this Court's denial of its motion for a preliminary injunction. *See* Dkt. No. 53.[1]

### III. DISCUSSION

Defendant has moved to dismiss VDARE's complaint based on *res judicata* and for failure to state a claim. The Court will address the parties' *res judicata* arguments first.

"A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached to or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine S.A. v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (citation omitted). In addition, the court "'may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.'" *Simpson v. Melton-Simpson*, No. 10 Civ. 6347 (NRB), 2011 WL 4056915, *2 (S.D.N.Y. Aug. 29, 2011) (quoting *Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels and Resorts, Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)) (other citation omitted); *see also Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (noting that courts may take judicial notice of state-court judgments and filings); *Staehr v. Hartford Fin. Servs. Grp., Inc.* 547 F.3d 406, 426 (2d Cir. 2008) (holding that matters judicially noticed by a court "are not considered matters outside the pleadings" (citation omitted)).

---

[1] According to the Second Circuit's Docket for this case, VDARE's brief is due on November 8, 2023. *See VDARE Found., Inc. v. James*, No. 23-1084, Dkt. No. 23.

**SPA036**

In its previous Memorandum-Decision and Order, in which it denied VDARE's motion for a preliminary injunction, the Court addressed the necessary elements for a *res judicata* defense. *See* Dkt. No. 50. As the Court explained, "[t]o determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state[,]" in this case New York. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) (citations omitted). Under New York's doctrine of *res judicata*, "a disposition on the merits bars litigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions as a cause of action that either was raised or could have been raised in the prior proceeding[.]" *Blue Sky, LLC v. Jerry's Self Storage, LLC*, 145 A.D.3d 945, 946 (2d Dep't 2016) (citations omitted). Therefore, because Defendant is invoking *res judicata* as a defense in opposition to VDARE's motion to dismiss, she must show that "'(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *TechnoMarine SA*, 758 F.3d at 499 (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).

In this case, there can be no dispute that the State Supreme Court entered a final judgment when it compelled VDARE to comply with Defendant's Subpoena. *See Trump v. Jones*, No. 1:21-cv-1352 (BKS/CFH), 2022 WL 1718951, *16 (N.D.N.Y. May 27, 2022) (explaining that "[t]he 'final judgment on the merits' requirement may . . . be satisfied by a 'final order in a special proceeding [which] conclusively determine[s] every question at issue therein'" (quoting [*Bannon*, 270 N.Y.] at 489-90, 1 N.E.2d 975 ("The essential element of a conclusive adjudication is finality of the proceedings. A judicial decision can constitute a conclusive adjudication of question of fact or law only when rendered in a proceeding in which a court had

- 16 -

**SPA037**

jurisdiction to render an irrevocable and final decision upon such question.")) (other citations

omitted).  In this case, the State Supreme Court had jurisdiction to conduct a special proceeding

in which Defendant sought an Order compelling VDARE to comply with her Subpoena.

Furthermore, the State Supreme Court granted Defendant's request and ordered VDARE to

comply with that subpoena, which was a final order and, thus, should be given *res judicata*

effect.  *See Aziz v. Butt*, 156 N.Y.S.3d 832, 73 Misc. 3d 1233A (Sup. Ct. Westchester Cty. 2021)

(giving *res judicata* effect to prior special proceeding).

Furthermore, there is no dispute that the parties in the state-court action and in this action

are the same – VDARE and the Attorney General of the State of New York.  Thus, the only

dispute is whether the causes of action that VDARE raises in this action arise out of the same

transaction or series of transactions as the causes of action that either were raised or could have

been raised in the state-court proceeding.[2]

Under New York's transactional analysis approach, "'once a claim is brought to a final

conclusion, all other claims arising out of the same transaction or series of transactions are

barred, even if based upon different theories or if seeking a different remedy.'"  *Trump*, 2022 WL

1718951, at *18 (quoting [*O'Brien*, 54 N.Y.2d at 357]).  To determine whether claims arise out

of the same transaction or series of transactions, a court must analyze "'whether the claims turn

on facts that are related in time, space, origin, or motivation, whether they form a convenient trial

unit, and whether their treatment as a unit conforms to the parties' expectations or business

understanding or usage.'"  *Id.* (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111-12,

170 N.E.3d 733 (2021) (citations and internal quotation marks omitted)).

---

[2] The Court notes that VDARE incorrectly argues that *res judicata* requires that the causes of
action in the two proceedings must be the same and must seek the same relief.

In this action, VDARE raises four claims: (1) a declaration that Defendant's Subpoena's attempt to compel First Amendment speech and associational rights is unconstitutional; (2) a claim that Defendant violated its First Amendment rights by retaliating against it based on its exercise of its rights of freedom of speech and association and that her Subpoena is an offshoot of Defendant's targeting of VDARE because of its viewpoints;[3] (3) a claim that Defendant violated its rights under Article I, Section 8 of the New York State Constitution by retaliating against it based on its exercise of its rights of freedom of speech and association;[4] and (4) injunctive relief barring Defendant from enforcing her unconstitutional demands. *See generally* Complaint.

All of VDARE's claims in this action arise out of Defendant's investigation into VDARE and her issuance of a Subpoena seeking certain documents as part of that investigation. Likewise, the state-court action involved the same investigation and the issue of whether VDARE should be compelled to provide certain documents to Defendant as part of that investigation. Thus, the Court concludes that the claims in this action clearly arise out of the

---

[3] The Court notes that the only Defendant in this action is the New York State Attorney General, whom VDARE has sued in her official capacity. In Count Two, VDARE seeks compensatory and punitive damages against Defendant for violations of its First Amendment rights. However, the Eleventh Amendment bars such claims. *See Lewis v. Stango*, No. 3:22-cv-1248 (OAW), 2023 WL 4684666, *10 (D. Conn. July 21, 2023) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985))

[4] The Court notes that, in Count Three, VDARE seeks compensatory and punitive damages against Defendant for violating its rights under Article I, Section 8 of the New York State Constitution by retaliating against it based on exercise of its rights of freedom of speech and association. However, "[s]overeign immunity bars state constitutional claims against the state, its agencies, or against its employees in their official capacity, regardless of the relief sought." *Alleyne v. New York State Educ. Dep't*, 691 F. Supp. 2d 322, 335 (N.D.N.Y. 2010) (Sharpe, J.) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105-106, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (finding sovereign immunity bars federal courts from adjudicating state claims against the state); *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 604 (2d Cir. 1988); *Diamond v. Pataki*, No. 03 Civ. 4642, 2007 WL 485962, at *7 (S.D.N.Y. Feb. 14, 2007)).

same transaction or series of transactions as the claims involved in the State Supreme Court proceeding.

The Court also notes that there is no reason why, if VDARE believed that Defendant's Subpoena was overbroad or unconstitutional, it could not have brought a motion to quash or vacate that Subpoena in State Supreme Court challenging the validity of Defendant's Subpoena or her authority to issue that Subpoena. Rather than do so, however, VDARE at least initially, partially complied with the Subpoena. Moreover, in response to Defendant's filing of the special proceeding in State Supreme Court to compel VDARE to comply fully with the Subpoena, VDARE could have, and did, raise many of the same issues in opposition to certain aspects of the Subpoena, including its constitutionality.

For all of the above-stated reasons, the Court concludes that *res judicata* bars the Court from considering VDARE's claims in this action.

## IV. CONCLUSION

Having reviewed the entire file in this case, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's complaint, *see* Dkt. No. 12, is **GRANTED**; and the Court further

**SPA040**

ORDERS that VDARE's motion for an injunction pending appeal, *see* Dkt. No. 56, is

**DENIED as moot**; and the Court further

ORDERS that the Clerk of the Court shall enter judgment in favor of Defendant and

close this case.

**IT IS SO ORDERED.**

Dated: September 13, 2023
      Syracuse, New York

                           Frederick J. Scullin, Jr.
                           Senior United States District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

## <u>JUDGMENT IN A CIVIL CASE</u>

**VDARE Foundation, Inc.**
      Plaintiff

   vs.                     **CASE NUMBER: 1:22-cv-1337 (FJS/CFH)**

**Letitia James**
      Defendant

**Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that Defendant's motion to dismiss Plaintiff's complaint, *see* Dkt. No. 12, is **GRANTED**; and the Court further **ORDERS** that VDARE's motion for an injunction pending appeal, *see* Dkt. No. 56, is **DENIED as moot**; and the Court further **ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

All of the above pursuant to the order of the Honorable **Frederick J. Scullin, Jr.**, dated September 13, 2023.

DATED: September 13, 2023

_____
Clerk of Court

_____
Rose Pieklik
Deputy Clerk

**SPA042**

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

### (a) Appeal in a Civil Case.

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice

of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.