# 23-1084(L)

## 23-7409(CON)

## United States Court of Appeals
### for the Second Circuit

VDARE FOUNDATION, INC.

*Plaintiff-Appellant,*

v.

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of New York

## BRIEF FOR APPELLEE

BARBARA D. UNDERWOOD
  *Solicitor General*
JEFFREY W. LANG
  *Deputy Solicitor General*
JONATHAN D. HITSOUS
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellee
The Capitol
Albany, New York 12224
(518) 776-2044

Dated: April 25, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

PRELIMINARY STATEMENT .............................................................. 1

ISSUES PRESENTED ............................................................................ 3

STATEMENT OF THE CASE ................................................................ 3

    A.    Factual and Procedural Background........................................ 3

        1.    OAG identifies concerns about VDARE that prompt an investigation ................................................................ 4

        2.    VDARE refuses to comply with OAG's subpoena ............. 7

        3.    New York state courts order VDARE to comply with the OAG subpoena .......................................................... 9

    B.    The Current Action ............................................................... 12

        1.    OAG's motion to dismiss................................................. 13

        2.    VDARE's motion for a preliminary injunction................ 15

STANDARD OF REVIEW..................................................................... 16

SUMMARY OF ARGUMENT ............................................................... 17

ARGUMENT ......................................................................................... 20

POINT I

VDARE'S FEDERAL ACTION IS BARRED BY RES JUDICATA .................. 20

    A.    The State-Court Judgment Has Preclusive Effect................. 20

**Page**

B.  VDARE Is Not Entitled to an Equitable Exception to
Res Judicata. .............................................................................. 28

POINT II

THE DISTRICT COURT CORRECTLY DENIED VDARE'S MOTION FOR
A PRELIMINARY INJUNCTION .................................................................. 32

A.  VDARE Has Failed to Demonstrate a Likelihood of
Success on the Merits. ........................................................... 33

1.  Free-association claim .................................................... 33

2.  Retaliation claim ............................................................ 39

3.  State constitutional claim ............................................. 43

B.  VDARE Has Failed to Demonstrate a Risk of
Irreparable Harm .................................................................. 44

C.  VDARE Has Failed to Demonstrate That a Preliminary
Injunction Would Serve the Public Interest. ......................... 47

CONCLUSION ........................................................................................... 49

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*5512 OEAAJB Corp. v. Hamilton Ins. Co.*,
   189 A.D.3d 1136 (2d Dep't 2020) ....................................... 21

*Am. Civil Liberties Union v. Clapper*,
   785 F.3d 787 (2d Cir. 2015) ............................................... 33

*Americans for Prosperity v. Bonta*,
   141 S. Ct. 2373 (2021) ............................................... 34, 38

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) ............................................... 39

*Bennett v. Goord*,
   343 F.3d 133 (2d Cir. 2003) ............................................... 40

*Biben v. Indian Cultural & Cmty. Ctr., Inc.*
   95 A.D.3d 626 (1st Dep't 2012) ......................................... 27

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels &*
   *Resorts Worldwide, Inc.*,
   369 F.3d 212 (2d Cir. 2004) ............................................... 17

*Brody v. Village of Port Chester*,
   261 F.3d 288 (2d Cir. 2001) ............................................... 48

*Broeker v. N.Y. City Dep't of Educ.*,
   No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023) ...................... 32

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ....................................................... 34

*Campbell Soup Co. v. Conagra, Inc.*,
   977 F.2d 86 (3d Cir. 1992) ............................................... 46

*Cent. Hudson Elec. & Gas Corp. v. Empresa Naviera Santa S.A.*,
   56 F.3d 359 (2d Cir. 1995) ............................................... 20

**Cases** **Page(s)**

*Citibank, N.A. v. Citytrust,*
   756 F.2d 273 (2d Cir. 1985) ............................................................... 44

*Citizens United v. Schneiderman,*
   882 F.3d 374 (2d Cir. 2018) ................................................ 35, 42, 45

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ............................................................................ 48

*Corsini v. Nast,*
   613 F. App'x 1 (2d Cir. 2015) ......................................................... 21

*Davidson v. Capuano,*
   792 F.2d 275 (2d Cir. 1986) ............................................................ 26

*DiFolco v. MSNBC Cable L.L.C.,*
   622 F.3d 104 (2d Cir. 2010) ............................................................ 16

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,*
   600 F.3d 190 (2d Cir. 2010) ............................................................ 25

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
   559 F.3d 110 (2d Cir. 2009) ............................................................ 45

*Gilbert v. Ferry,*
   401 F.3d 411 (6th Cir. 2005) ........................................................... 26

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,*
   764 F.3d 210 (2d Cir. 2014) ............................................................ 17

*Hawaii Hous. Auth. v. Midkiff,*
   463 U.S. 1323 (1983) ........................................................................ 31

*Hawkins v. Risley,*
   984 F.2d 321 (9th Cir. 1993) ........................................................... 28

*Hayes v. Dahlke,*
   976 F.2d 259 (2d Cir. 2020) ............................................................ 40

| Cases | Page(s) |
|---|---|

*Hogan v. Fischer*,
   738 F.3d 509 (2d Cir. 2013) ............................................................... 16

*Kane v. DeBlasio*,
   19 F.4th 152 (2d Cir. 2021) ............................................................... 33

*Kent Dev. Co., Inc. v. Liccione*,
   37 N.Y.2d 899 (1975) ......................................................................... 29

*Living Real Estate Group v. Douglas Elliman LLC*,
   220 A.D.3d 573 (1st Dep't 2023) ....................................................... 29

*Matter of Evercare Choice v. Zucker*,
   218 A.D.3d 882 (3d Dep't 2023) ........................................................ 27

*Matter of Friedman v. Hi-Li Manor Home for Adults*,
   42 N.Y.2d 408 (1977) ......................................................................... 26

*Matter of P & E.T. Found.*,
   204 A.D.3d 1460 (4th Dep't 2022) ..................................................... 42

*Matter of Pofit for the Dissolution of St. Clare's Corp.*,
   No. 2019-0653, 2020 WL 3728320 (N.Y. S. Ct., Schenectady
   Cnty. 2020) ......................................................................................... 42

*Mitchell v. Nat'l Broad. Co.*,
   553 F.2d 265 (2d Cir. 1977) ............................................................... 31

*Nieves v. Bartlett*,
   139 S. Ct. 1715 (2019) ........................................................................ 40

*O'Brien v. City of Syracuse*,
   54 N.Y.2d 353 (1981) ......................................................................... 25

*O'Connell v. Corcoran*,
   1 N.Y.3d 179 (2003) ........................................................................... 22

*Paramount Pictures Corp. v. Allianz Risk Transfer AG*,
   31 N.Y.3d 64 (2018) ...................................................................... 21-22

**Cases**                                                                      **Page(s)**

*People by Att'y Gen. of State v. Lutheran Care Network*,
  167 A.D.3d 1281 (3d Dep't 2018) ................................................ 36

*People by James v. VDARE Found., Inc.*,
  224 A.D.3d 516 (1st Dep't 2024) ................................. 11-12, 24, 43, 45

*People v. National Rifle Ass'n of America*,
  223 A.D.3d 84 (1st Dep't 2023) ........................................... 42

*SAM Party of N.Y. v. Kosinski*,
  987 F.3d 267 (2d Cir. 2021) ............................................... 47

*Schwartzreich v. E.P.T. Carting Co., Inc.*,
  246 A.D.2d 439 (1st Dep't 1998) ......................................... 22

*Simmons v. Trans Express Inc.*,
  37 N.Y.3d 107 (2021) .................................................. 22-23

*Smith v. Helzer*,
  95 F.4th 1207 (9th Cir. 2024) ........................................... 34

*Smith v. Russell Sage Coll.*,
  54 N.Y.2d 185 (1981) .................................................... 23

*Tough Traveler, Ltd. v. Outbound Prods.*,
  60 F.3d 964 (2d Cir. 1995) ............................................... 44

*Union St. Tower, LLC v. Richmond*,
  84 A.D.3d 784 (2d Dep't 2011) ........................................... 24

*United State v. El Paso Nat. Gas Co.*,
  376 U.S. 651 (1964) ..................................................... 31

*Vega v. Semple*,
  963 F.3d 259 (2d Cir. 2020) ............................................. 43

*Volokh v. James*,
  656 F. Supp. 3d 431 (S.D.N.Y. 2023) .................................... 41

**Cases**                                                          **Page(s)**

*Whitfield v. City of New York,*
96 F.4th 504 (2d Cir. 2024).................................................................21

*Whole Woman's Health v. Jackson,*
595 U.S. 30 (2021).................................................................32

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012).................................47

*Xiao Yang Chen v. Fischer,*
6 N.Y.3d 94 (2005).................................................................22, 28

**Constitutions**

N.Y. Constitution art. I, § 8.................................................................43

**Statutes**

N.Y. C.P.L.R.
402.................................................................27
408.................................................................27
3211(a)(4).................................................................29

N.Y. Estates, Powers and Trusts Law
§ 8-1.4.................................................................48
§ 8-1.4(i).................................................................4, 7
§ 8-1.4(m).................................................................4

N.Y. Executive Law

§§ 172 to 177.................................................................3

N.Y. Not-for-Profit Corporation Law

§ 102(3-b)................................................................................... 3
§ 112 ................................................................................... 4, 48
§ 112(a)........................................................................................ 4
§ 112(a)(7) ................................................................................... 4
§ 112(b)(6) .............................................................................. 7, 39
§ 509(a)........................................................................................ 5
§ 509(b)........................................................................................ 5
§ 515(a)........................................................................................ 5
§ 706 ......................................................................................... 48
§ 706(d) ...................................................................................... 4
§ 715(a)........................................................................................ 5
§ 715(b)(3) ................................................................................... 5
§ 715(f)......................................................................................... 4
§ 715(h) ....................................................................................... 5
§ 720 ......................................................................................... 48
§ 720(a)(1)(B).............................................................................. 41
§ 720(b) ....................................................................................... 4

## Miscellaneous Authority

Mean, Joseph & Michael Pollack, *Courts, Constituencies, and the Enforcement of Fiduciary Duties in the Nonprofit Sector*, 77 U. Pitt. L. Rev. 281 (2016) .............................................................. 4

## PRELIMINARY STATEMENT

Defendant-appellee Letitia James, the Attorney General of New York State, is entrusted with oversight over New York's charitable corporations, a responsibility that includes investigating charities for potential violations of New York law. In the course of investigating plaintiff-appellant VDARE Foundation, a New York-registered charity, for suspected financial improprieties that included breaches of fiduciary duties and prohibited related-party transactions, the Attorney General served VDARE with a subpoena, as authorized by New York law, that sought, among other things, the identities of its vendors and contractors. VDARE refused to produce this information. Instead, VDARE filed this federal civil action to enjoin the Attorney General from enforcing the subpoena, which VDARE claimed violated its own First Amendment rights and the rights of its vendors and contractors.

Around the same time, the Attorney General commenced a proceeding in state court to compel VDARE's compliance with the subpoena. The state court, ruling first, ordered VDARE to comply with the subpoena. The United States District Court for the Northern District

of New York (Scullin, J.) accordingly dismissed this action as barred by res judicata.

This Court should affirm. The state-court judgment, now affirmed on appeal, followed a proceeding at which VDARE had every opportunity to raise the same First Amendment challenges to the subpoena that it raised in federal court. In fact, VDARE did raise these challenges; the state court addressed and rejected them in concluding that the subpoena was enforceable. The district court thus correctly concluded that, under New York law, the state-court judgment was entitled to preclusive effect.

The district court's order dismissing the action renders moot VDARE's related appeal from the court's earlier ordering denying its motion for a preliminary injunction. But even if this Court were to vacate the dismissal and remand for further proceedings, VDARE would not be entitled to a preliminary injunction while the litigation progresses because it has not established a likelihood of success on its claims, a risk of irreparable harm, or that the public interest favors further delay of the Attorney General's investigation.

## ISSUES PRESENTED

1.    Did the district court correctly dismiss VDARE's action as barred by res judicata?

2.    If the issue is not moot, did the district court act within its discretion in denying VDARE's motion for a preliminary injunction?

## STATEMENT OF THE CASE

### A.    Factual and Procedural Background

Since 1999, VDARE has been a charitable corporation organized under the laws of the State of New York. (Appendix ["A"] 690.) Charitable corporations are nonprofit corporations organized for charitable, educational, scientific, religious, or cultural purposes. N.Y. Not-for-Profit Corporation Law (NPCL) § 102(3-b). VDARE's mission is to "[c]reate and manage [an] internet publication," namely its website, www.vdare.com. (A691-692.)

As a charity, VDARE is subject to the oversight of the Attorney General, who operates through the Office of the Attorney General (OAG). *See* N.Y. Executive Law §§ 172 to 177. OAG's responsibilities include investigating charities' potential noncompliance with New York law and, as necessary, commencing judicial actions to prevent and remedy viola-

3

tions. *See* N.Y. Estates, Powers and Trusts Law (EPTL) § 8-1.4(i), (m); NPCL § 112. The Attorney General may bring direct actions against directors, officers, and key persons of charities, NPCL § 720(b), as well as any action that the charity's directors, officers, or members could bring. NPCL § 112(a)(7). In addition, the Attorney General may independently commence an action to enjoin a charitable corporation from engaging in "unauthorized activities," rescind or obtain restitution for related-party transactions, or even to dissolve the corporation. *Id.* §§ 112(a), 715(f). The statutes granting enforcement authority to the Attorney General recognize the importance of protecting charities' beneficiaries, who often lack effective remedies when harmed by charitable wrongdoing. *See* Joseph Mean & Michael Pollack, *Courts, Constituencies, and the Enforcement of Fiduciary Duties in the Nonprofit Sector*, 77 U. Pitt. L. Rev. 281, 298-301 (2016).

### 1. OAG identifies concerns about VDARE that prompt an investigation

In 2022, OAG began investigating VDARE based on public reports that VDARE had purchased a medieval-style castle in West Virginia for approximately $1.4 million and that two VDARE principals—chairman

Peter Brimelow and his wife and fellow VDARE director Lydia Brimelow (A125)—were using the castle as their private residence. (A684-685, 693-694 [links to web pages], 696.) In December 2020, VDARE conveyed the castle and surrounding grounds to two West Virginia corporations, a nonprofit corporation named Berkeley Castle Foundation (A235-236), and a for-profit corporation named BBB, LLC. (A238-244.) Both corporations were formed by Lydia Brimelow. (A246-254.)

Based on the publicly available information about the castle transactions, OAG had multiple concerns. (A685.) According to VDARE's mandatory filings (A125), its board in 2020 did not include any disinterested directors who could have approved the castle's transfer to the two Brimelow-created corporations, much less verified in writing that the transactions were reasonable and in VDARE's best interest. N-PCL §§ 509(a)-(b), 715(a), (b)(3), (h). Nor were these transactions included in VDARE's annual report to OAG, even though charities are required to document "transactions with interested persons." (*See* A155.) OAG was also concerned that Peter Brimelow and his family may have resided in the castle or on the grounds, because charitable assets are not to be used for the personal benefit of officers or directors. NPCL § 515(a).

While reviewing VDARE's publicly filed documents, OAG discovered irregularities that convinced it of a need to investigate further. (A685, 696.) These included the failure to file mandatory reports and the omission of material information from reports that VDARE did file. (A125, 219, 691-692, 698.) VDARE also appeared to have no process by which to determine its officers' salaries (A697), and its reports provided no explanation for its 2019 doubling of Peter Brimelow's salary to $345,000, comprising over one-third of VDARE's operating expenses. (A161, 186). In addition, even though VDARE pays Brimelow's salary by contracting with a Brimelow-owned company that employs Brimelow and "leases" his services to VDARE, its payments to this contractor in 2019 exceeded Brimelow's reported salary by tens of thousands of dollars. (A169, 188, 199, 218, 697.) VDARE listed Peter Brimelow's home address as its corporate address (A161, 192), while reporting thousands in "office" and "occupancy" expenses paid to the Brimelows in 2018 and 2019 (A171, 201).

OAG subsequently became aware that in April 2020, Facebook suspended VDARE's account upon determining that VDARE had created a network of fake profiles to drive traffic to off-platform sites and evade

detection. (A284, 295-296.) Because VDARE reportedly spent $114,000 on these efforts (A295), OAG determined that VDARE's actions, if substantiated, could constitute an unlawful waste of charitable assets. (A699.)

## 2. VDARE refuses to comply with OAG's subpoena

In the course of investigating a charity, OAG may "take proof and issue subpoenas." NPCL § 112(b)(6); *see also* EPTL § 8-1.4(i). Acting under this authority, on June 24, 2022, OAG served a subpoena on VDARE seeking documents concerning VDARE's organizational structure and financial operations, including documents that would identify VDARE's "current and former independent contractors," and those relating to transactions with vendors. (A266-267.) The subpoena directed VDARE to respond by July 25, 2022. (A262.)

VDARE did not respond by that deadline. Initially, VDARE demanded that OAG withdraw the subpoena, contending that virtually every document request violated its First Amendment right to free association. (A337-341.) VDARE later hired a new attorney who pledged to produce responsive documents but asked for additional time to do so. (A369-370.) In this September 2022 correspondence, VDARE for the first

time produced information—27 documents that purportedly were "the first installment of a rolling production" (A369)—but many of these documents contained unexplained redactions. (A372, 701-702.) In follow-up correspondence concerning the scope of redactions, VDARE proposed to redact the identities of its vendors and contractors unless VDARE determined that any qualified as a related party. (A417-418, 422.) OAG rejected VDARE's proposal. (A372.)

Over the ensuing weeks, VDARE continued to make modest disclosures from its hard-copy records with significant unexplained redactions. (A702.) On October 31, 2022, VDARE represented that its hard-copy document disclosure was substantially complete, but it had newly identified 40 gigabytes of electronic data that still needed to be reviewed. Although VDARE estimated that it could produce responsive electronic information by November 21, 2022, on November 28 it unilaterally revised the disclosure date to December 12. (A378, 419-421.)

As of December 2, 2022, VDARE had produced 6,000 pages of hard-copy material and no electronic material. (A381.) On that date OAG sent a letter to VDARE summarizing its dissatisfaction with VDARE's ongoing delay. (A380-382.) OAG observed that, despite VDARE's stated concern

about maintaining anonymity, its disclosure thus far had identified numerous vendors and contractors. (A382.) OAG agreed to VDARE's proposed December 12 deadline, but warned that it would seek judicial intervention if VDARE missed this deadline as well. (A382.)

### 3. New York state courts order VDARE to comply with the OAG subpoena

Instead of honoring its promise to produce the subpoenaed documents by the December 12, 2022 deadline, VDARE filed the underlying federal lawsuit to bar OAG from continuing to investigate the matter at all. See *infra* at 12.

On December 16, 2022, OAG petitioned New York State Supreme Court for an order compelling VDARE to comply with the subpoena. (A109-115, 458-461.) The state court signed an order to show cause on December 21, 2022, and pursuant to that order OAG served VDARE with its petition the following day. (A91, 527.) VDARE moved to dismiss the petition, arguing that the subpoena violated its own First Amendment free-association rights and the rights of its vendors and contractors. (A224-227.) VDARE also claimed that OAG's "true agenda" was to punish it in retaliation for its speech. (A934-938.)

The state court granted OAG's petition. (A395-396.) The court found that the subpoena was related to an investigation within the scope of OAG's authority. (A392-394.) The court rejected VDARE's First Amendment challenges to the subpoena, reasoning that the identities of VDARE's vendors and contractors were essential to evaluate whether VDARE's payments to them complied with New York law. (R393-394.) The court further observed that the availability of a confidentiality order and the information that VDARE had already released in its partial disclosures undermined its assertion that the disclosure sought would threaten its existence by exerting a chilling effect on potential vendors and contractors. (A394-395; *see also* A793-801 [proposed confidentiality order].) However, the court observed that OAG did not dispute VDARE's First Amendment concerns about its donors and unpaid volunteers. (A393.) Thus, while the court ordered VDARE to comply with the OAG subpoena, it permitted VDARE to redact the identities of donors and volunteers. (A394-395.)

VDARE appealed to the Appellate Division, First Department (A874), and moved for a stay of the trial court's order pending appeal (A892). The First Department granted a temporary stay pending

10

consideration of the motion. (A496-497.) In March 2023, the First Department denied VDARE's motion and vacated the temporary stay. (A563.)

In February 2024, the First Department affirmed the state court's order. *People by James v. VDARE Found., Inc.*, 224 A.D.3d 516 (1st Dep't 2024). The First Department held that the identities of vendors and contractors were "highly relevant" to OAG's investigation into VDARE. *Id.* at 517. The First Department rejected VDARE's argument that the subpoena infringed on those vendors' and contractors' First Amendment rights. Observing that OAG was willing to execute—and the state court was willing to so-order—a confidentiality agreement that would govern VDARE's disclosures, the First Department held that disclosure of those identities would not risk chilling associational rights. *Id.* at 517-18.[1] Finally, the First Department held, VDARE had failed to support its

---

[1] The State Supreme Court has since entered a confidentiality order governing the disclosure of confidential information produced by VDARE to OAG pursuant to the subpoena. *See* Addendum to Decision & Order on Mot., *People by James v. VDARE Found., Inc.*, No. 453196/2022 (N.Y. Sup. Ct., N.Y. Cnty. Mar. 27, 2024), (NYSCEF Doc. No. 240).

contention that OAG had targeted it for investigation on account of its protected speech. *Id.* at 518.

## B. The Current Action

In its December 2022 action in federal court, VDARE sued the Attorney General in her official capacity, seeking a declaratory judgment that the subpoena violated the First Amendment rights of its vendors and contractors, and an order enjoining OAG from enforcing the subpoena. (A10, 24-25.)[2] VDARE maintained that it uses its website to "publish articles critical of the immigration policy of the United States" (A12), and that many people found these articles offensive, rendering the anonymity of its vendors and contractors essential to its continued existence. (A12, 21.) VDARE claimed that the OAG subpoena, which would obligate it to reveal those parties' identities, violated their First Amendment associational rights and, by extension, its own associational rights as an organization. (A21-22, 24.) Pointing to statements from the Attorney General

---

[2] VDARE also sought damages, but the district court found that damages were unavailable against the Attorney General in her official capacity. (SPA39 & n.2.) VDARE has expressly abandoned a challenge to this finding. (Br. at 32 n.7.)

critical of "hate speech" generally, as well as OAG's subpoena to Facebook seeking information about VDARE's activities on that platform (A13-16), VDARE further claimed that OAG had targeted it for investigation in retaliation for its speech, in violation of the First Amendment and its analog under the New York Constitution. (A22-23.)

On appeal, VDARE challenges both the district court's final judgment granting OAG's motion to dismiss and its earlier order denying VDARE's motion for a preliminary injunction. Because litigation over these motions overlapped in time, OAG discusses each motion separately.

### 1. OAG's motion to dismiss

In lieu of an answer, OAG moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). Citing the state court's order granting OAG's petition and compelling VDARE to comply with the subpoena, OAG argued that res judicata barred VDARE's federal-court action from continuing. (A384-386.)

VDARE opposed OAG's motion on the ground that res judicata did not apply because the state-court proceeding, due to its summary nature, did not enable VDARE to develop its constitutional claims as fully as it could in a federal forum. (A1910-1912.) In the alternative, VDARE

argued that the district court should recognize an equitable exception to res judicata due to OAG's "gamesmanship" in commencing the state-court proceeding days after VDARE commenced the federal-court action, and OAG's alleged bad faith during the underlying investigation. (A526-528, 544-546, 1910-1911, 1913.)

The district court granted OAG's motion. Applying New York's res-judicata law, the district court found that the state court's order compelling VDARE to comply with the subpoena constituted a final judgment on the merits, and the parties—OAG and VDARE—were the same in both cases. (Special Appendix ["SPA"] 37-38.) Observing that the state and federal cases both arose out of OAG's subpoena to VDARE and raised the same challenges to the subpoena's validity, the court further ruled that the cases involved the same claim under New York's "transactional" approach to res judicata. (SPA33-34, 39-40.) The court added that VDARE "could have, and did," raise First Amendment challenges to the subpoena's validity in the state-court proceeding, albeit without success. (SPA40.) The district court accordingly entered judgment dismissing the action in its entirety. (SPA42.)

### 2. VDARE's motion for a preliminary injunction

On March 21, 2023, over two months after OAG had moved to dismiss its complaint and while that motion remained pending, and nearly two weeks after the First Department had lifted the temporary stay of the order granting OAG's petition (A562), VDARE moved in the district court for a preliminary injunction enjoining OAG's enforcement of those state-court orders. (A564-569.) Although VDARE contended that a preliminary injunction was necessary to prevent irreparable harm (ECF No. 30 at 9-12),[3] it was not until its reply papers that VDARE purported to offer evidence of harm. This evidence included news articles documenting the cancellation of VDARE events (A1103-1109), online comments disparaging VDARE (*see* A1124-1861), declarations from writers that they maintained pseudonyms out of fear of reprisals if their identities became known (A1875-1878), and a declaration from Lydia Brimelow insisting that VDARE did nothing wrong and complaining

---

[3] VDARE's Appendix incorrectly reproduces its memorandum in opposition to OAG's motion to dismiss rather than its memorandum in support of a preliminary injunction.

about cancel culture and OAG's efforts to combat hate crimes generally (A1866-1873).

The district court denied VDARE's motion for a preliminary injunction upon finding that, because res judicata appeared to bar VDARE's claims, its federal action was unlikely to succeed. (SPA17-20.) Having reached this conclusion, the district court did not address any of the other preliminary injunction factors.

VDARE appealed. (A1907.) Approximately one month later, VDARE requested that the district court issue an injunction pending appeal (A1926-1937), which the district court denied when it dismissed VDARE's action in its entirety (SPA41).

## STANDARD OF REVIEW

This Court reviews the district court's ruling on a motion to dismiss de novo, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). Review of a motion to dismiss is limited to the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Courts

16

may also consider "public records," even if not attached to the complaint. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

On appeal from an order granting or denying injunctive relief, this Court reviews the district court's legal holdings de novo and its ultimate decision for abuse of discretion. *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,* 764 F.3d 210, 214 (2d Cir. 2014).

## SUMMARY OF ARGUMENT

The district court correctly dismissed VDARE's federal action as barred by res judicata. While this litigation was pending, a state court issued a judgment granting OAG's petition to compel VDARE to comply with OAG's subpoena. Under New York law, which governs the preclusive effect that federal courts must give to New York state-court judgments, that judgment has preclusive effect here. The two cases involved the same transaction because they both arose from the same facts and underlying dispute. Moreover, VDARE could—and did—raise First Amendment challenges to the subpoena's validity in state court. Had VDARE succeeded in state court, the outcome would have been virtually the same as its desired federal-court outcome: OAG could not enforce the

17

subpoena. Because VDARE did not succeed, the district court appropriately declined to give VDARE a second bite at the apple.

Nor should VDARE have received an equitable exception to the application of res judicata here. New York's existing legal standards governing res judicata already account for equitable considerations. VDARE's accusations that the district court should have estopped OAG from raising a res judicata defense, due either to inconsistent statements or bad faith, find no record support. And if VDARE could receive an equitable exception to res judicata merely by showing that the prior judgment was poorly reasoned, the exception would swallow the rule. Accordingly, this Court should affirm.

The district court's dismissal of the entire action renders moot VDARE's additional challenge to the district court's order denying it a preliminary injunction. If this Court overturns that dismissal and concludes that this action may proceed, it should nonetheless affirm the denial of the preliminary injunction, because VDARE did not make any of the showings necessary for such relief.

First, VDARE has failed to demonstrate a likelihood of success on the merits. As to VDARE's free-association claim, OAG has an important

interest in protecting charitable assets. The subpoena was narrowly tailored to that interest because it sought information that OAG needed to ascertain VDARE's compliance with New York laws governing charities, including those imposing penalties for violations by charitable officers and directors of their fiduciary duties, and those requiring the charity to document and justify related-party transactions. VDARE's retaliation claim is similarly unfounded because VDARE itself admits that OAG served the subpoena in furtherance of an investigation that OAG had the authority to undertake. At the same time, VDARE has not attempted to show that OAG selectively exercises this authority based on speech. And VDARE's final claim, to enjoin OAG's alleged on-going violation of New York law, is foreclosed under settled precedent barring federal courts from enjoining state officials from violating state law.

Nor can VDARE show a risk of irreparable harm given its protracted delay in seeking a preliminary injunction, the entry of a confidentiality order that shields its disclosure from the publicity it professes to fear, and its past disclosure of some of the very information it claims would drive it out of existence. Finally, the public interest does

not favor VDARE's repeated efforts to stonewall a legitimate OAG investigation into charitable wrongdoing.

## ARGUMENT

## POINT I

### VDARE's Federal Action Is Barred By Res Judicata

The district court properly dismissed VDARE's action on res judicata grounds. A prior state-court judgment, which conclusively resolved the same dispute that was before the district court, was entitled to preclusive effect. And VDARE offers no persuasive legal or equitable reasons why res judicata should not apply.

## A.    The State-Court Judgment Has Preclusive Effect.

The district court soundly concluded that res judicata applied to bar VDARE's federal action. Res judicata, also known as claim preclusion, provides that the entry of a judgment finally resolving litigation binds the parties to that litigation in future litigation between them. *Cent. Hudson Elec. & Gas Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 366 (2d Cir. 1995). When a party in federal court asserts res judicata based on a state-court judgment, the preclusion law of the state that

20

issued that judgment, here New York, is controlling. *Whitfield v. City of New York*, 96 F.4th 504, 522-23 (2d Cir. 2024). In New York, res judicata applies when (1) another court has issued a final judgment on the merits; (2) that judgment involves the same parties; and (3) there is an identity of claims. *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 73 (2018).

All three factors support the district court's application of res judicata to VDARE's action. There is little debate that the state court's order granting OAG's petition to compel VDARE's compliance with the subpoena, which conclusively resolved all claims and defenses and has since been affirmed on appeal, qualified as a final judgment on the merits for res judicata purposes. *See 5512 OEAAJB Corp. v. Hamilton Ins. Co.*, 189 A.D.3d 1136, 1139 (2d Dep't 2020); *see also Corsini v. Nast*, 613 F. App'x 1, 3-4 (2d Cir. 2015) (Appellate Division affirmance supported finality). Nor is there any debate that the second part of New York's test is satisfied, given that the parties to both the state- and federal-court cases are identical.

The third part of the test, the identity of claims, favors res judicata as well. For decades, New York's courts have utilized a "transactional"

approach to answer the question of whether there is an identity of claims. *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021). Under this approach, claims are identical if they arise out of the same "transaction," which is synonymous with the "set of facts" that gave rise to the dispute between the parties. *Schwartzreich v. E.P.T. Carting Co., Inc.*, 246 A.D.2d 439, 441 (1st Dep't 1998). If the prior judgment resolved the same underlying dispute that is present in the pending litigation, it does not matter whether the pending litigation calls upon the court to consider new legal theories or different requests for relief (so long as the relief sought in the subsequent action was available in the earlier one, as it was here). *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100 (2005). Nor does it matter whether the party against whom res judicata would apply was the plaintiff or defendant in the earlier case. *Paramount Pictures Corp.*, 31 N.Y.3d at 77; *see also O'Connell v. Corcoran*, 1 N.Y.3d 179, 184 (2003) (noting that res judicata may bar relitigation of a "claim or defense").

Mindful that "in properly seeking to deny a litigant two days in court, courts must be careful not to deprive the litigant of one," New York has adopted a "pragmatic test" to determine whether two cases involve the same transaction. *Xiao Yang Chen*, 6 N.Y.3d at 100 (quotation marks

22

omitted). The pragmatic test requires courts to consider whether (i) the claims turn on facts that are related in time, space, origin, or motivation; (ii) they form a convenient trial unit; and (iii) their treatment as a unit conforms to the parties' expectations. *Simmons*, 37 N.Y.3d at 111.

The trial court properly applied that test here. The state- and federal-court cases turned on facts that were related in time, space, and origin. At the root of both was OAG's subpoena to VDARE and the surrounding investigation. Likewise, the motivations for both cases represent flip sides of the same coin, in that OAG brought the state-court proceeding to enforce the subpoena, while VDARE brought the federal-court action to resist it. The underlying dispute was thus the same: the enforceability of OAG's subpoena. *See Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 193 (1981) (res judicata applied where resolved case and pending case both turned on validity of the same employee's termination).

Moreover, the disputed issues in the state- and federal-court cases form a convenient trial unit. Success for OAG would require it to establish that the subpoena was tailored to a legitimate investigatory purpose. Conversely, success for VDARE would require it to establish that the

subpoena violated the First Amendment. Relatedly, from VDARE's perspective, success in either the state or district courts would have had essentially the same result: OAG would have lacked any legal means of compelling VDARE to disclose the information it sought in the subpoena. In other words, the parties' legal positions rose and fell together regardless of the forum. *See Union St. Tower, LLC v. Richmond*, 84 A.D.3d 784, 786 (2d Dep't 2011) (defendant's counterclaims in second lawsuit could have been asserted as causes of action in first lawsuit).

Indeed, in state court VDARE not only could have argued that the subpoena would chill its own free-association rights and those of its vendors and contractors and that the overall investigation was a pretext for viewpoint-based retaliation, it *did* make those arguments. (A222-224, 934-938.) The state court addressed and rejected those arguments on the merits in granting OAG's petition, as did the First Department in affirming the order granting OAG's petition. *People by James v. VDARE Found., Inc.*, 224 A.D.3d 516, 517-18 (1st Dep't 2024). Having tried and failed to convince state courts that constitutional infirmities precluded OAG's enforcement of the subpoena, VDARE may not now maintain a separate action "to recover what is essentially the same relief for harm

arising out of the same or related facts." *See O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357-58 (1981).

For similar reasons, the treatment of all disputes related to the subpoena's enforceability as one unit conforms to the parties' expectations. VDARE's own conduct demonstrates its understanding that a respondent in a state petition to compel compliance with an OAG subpoena could use the ensuing special proceeding to challenge the subpoena's constitutionality. In fact, VDARE admits as much on appeal, candidly advising this Court that it "hoped that the state court would do its job." (Br. at 45 n.13.)

Conversely, allowing this challenge to the subpoena's constitutionality to proceed after a judgment enforcing the subpoena has already been rendered would invite the type of piecemeal litigation that res judicata exists to avoid. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 200 (2d Cir. 2010). And under settled federalism principles, no party who lost in state court could reasonably expect that it could ask a federal court to effectively overturn the state court's judgment by enjoining its enforcement, regardless of whether the federal

action had been commenced before the state court issued its judgment. *See Gilbert v. Ferry*, 401 F.3d 411, 417-19 (6th Cir. 2005).

In asserting on appeal that the absence of counterclaims or discovery rendered the state-court proceeding incapable of affording it the "full measure of relief sought in the [federal] litigation" (Br. at 25-27, 31-32), VDARE exalts form over substance. This is not a case where the state forum was incapable of awarding the relief VDARE sought for its constitutional claims. *See Davidson v. Capuano*, 792 F.2d 275, 282 (2d Cir. 1986) (an order in a C.P.L.R. article 78 proceeding is not claim-preclusive in a 42 U.S.C. § 1983 action for damages). It made no difference to the state court's adjudication of VDARE's challenge to the validity of OAG's subpoena that VDARE raised its challenge as a defense on which it moved to dismiss the petition, rather than as a counterclaim. *See Matter of Friedman v. Hi-Li Manor Home for Adults*, 42 N.Y.2d 408, 412-13 (1977) (parties may raise any challenge to subpoena in opposition to a motion to compel). Further, discovery is not the relief that VDARE sought from either the district court in its complaint or the state court in opposition to OAG's petition. (Br. at 25-26.)

Still, VDARE's characterization of the state-court proceeding to compel compliance is inaccurate. If VDARE believed that there was utility in raising its First Amendment issues as a counterclaim, rather than a defense, it could have done so. N.Y. C.P.L.R. 402. As a matter of substance, VDARE's motion to dismiss was no different from a motion to quash the subpoena, a recognized countermeasure in proceedings to compel compliance. *See Biben v. Indian Cultural & Cmty. Ctr., Inc.* 95 A.D.3d 626, 626 (1st Dep't 2012). Similarly, if VDARE had believed that OAG's petition to compel compliance depended on the resolution of factual questions, New York law permitted it to ask for additional fact gathering. N.Y. C.P.L.R. 408; *see Matter of Evercare Choice v. Zucker*, 218 A.D.3d 882, 888-89 (3d Dep't 2023) (remitting special proceeding to trial court to resolve fact questions at an evidentiary hearing). VDARE's related argument that it lacked a "full and fair opportunity to litigate its claims in state court" (Br. at 24) cannot be reconciled with the fact that VDARE did obtain some relief on its First Amendment claim, albeit based in part on OAG's prior agreement (A344-345), in that the state court allowed VDARE to redact the identities of its donors and volunteers. (A394-395.)

27

VDARE attempts to graft onto the test for res judicata the condition that the party asserting that defense be the one who "first" filed the action. (Br. at 14, 27, 31-32.) Courts have squarely rejected this argument: "[t]he date of judgment, not the date of filing, controls the application of res judicata principles." *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993) (quotation marks omitted). VDARE also neglects to mention that the only reason it filed first was because OAG had openly communicated its intent to commence a state-court proceeding to compel compliance if VDARE failed to produce responsive documents by the agreed-upon December 12, 2022 deadline. (A757; *see also* A382.) Thus, if anyone is guilty of a "rush" to court (Br. at 32), it is VDARE, not OAG.

**B.    VDARE Is Not Entitled to an Equitable Exception to Res Judicata.**

In the alternative, VDARE argues that the district court erred by declining to find that "[e]quity dictates against" claim preclusion. (Br. at 24.) Preliminarily, it is questionable whether New York recognizes a general equitable exception to res judicata, given that its "pragmatic" test already incorporates fairness principles. *See generally Xiao Yang Chen*, 6 N.Y.3d at 100. VDARE fails to offer a single example where a New York

court, upon determining that all of the pragmatic factors favored res judicata, nonetheless declined to apply the doctrine due to generalized notions of equity.

Even if such an exception did exist, however, VDARE would not be entitled to it. VDARE's first basis for an exception, that OAG should be estopped from raising res judicata due to inconsistent statements (Br. at 21), fails because it was accurate for OAG to represent that the two cases did not involve the "same cause of action" (A585) for purposes of New York's "first-filed rule," *see* N.Y. C.P.L.R. 3211(a)(4), but did for purposes of res judicata. Unlike res judicata, the first-filed rule depends on whether the relief *actually sought* in both cases is the same or substantially the same. *See Kent Dev. Co., Inc. v. Liccione*, 37 N.Y.2d 899, 901 (1975); *see also Living Real Estate Group v. Douglas Elliman LLC*, 220 A.D.3d 573, 574 (1st Dep't 2023) (even though second case arose from the same transaction, first-filed rule did not apply because the relief sought in each was different). As to this issue, OAG accurately advised that the relief was not the same because only the state court could order VDARE's compliance with the subpoena. By contrast, VDARE could contest the subpoena's constitutionality in either state or federal court.

29

VDARE's second basis for an exception, OAG's purported bad faith, is based on accusations that are demonstrably false. Contrary to VDARE's assertion (Br. at 22), OAG and VDARE discussed the investigation regularly between July and December 2022. (*See* A337, 344, 369, 382.) VDARE cannot fault OAG for declining to accept at face-value its representation that its operations were "completely above-board" as a substitute for meaningful disclosure. (Br. at 23.) Nor can VDARE credibly describe the state-court proceeding as the result of its consent to an extension in the federal action obtained under false pretenses. (Br. at 23-24.) As OAG explained, it promptly notified VDARE of the state proceeding, as required by the state court's order to show cause. Nothing prevented VDARE from seeking to revoke its consent to an extension of time in the federal proceeding upon learning of the state-court proceeding, or, as VDARE suggests (Br. At 24), from promptly asking the federal court for a temporary restraining order enjoining OAG from taking any action to enforce the subpoena. Where VDARE did not complain about the commencement of the state-court proceeding and first sought a temporary restraining order three months after that proceeding had commenced, VDARE is ill-positioned to rely on this perceived affront now.

30

Finally, VDARE's third basis for an exception, the asserted inferiority of state courts to adjudicate constitutional questions, is misplaced. As the Supreme Court has recognized, state courts are no less capable than federal courts of safeguarding the rights afforded under the United States Constitution. *Hawaii Hous. Auth. v. Midkiff*, 463 U.S. 1323, 1325 (1983). VDARE argues that res judicata should not apply because the state court's order copied language from OAG's papers. (Br. at 26-27.) But this shows only that the state court was persuaded by OAG's arguments. In the very decision that VDARE cites to criticize the state court for having adopted verbatim certain portions of OAG's papers (Br. at 26), the Supreme Court observed that a court's findings, even if adopted verbatim from a party, "are not to be rejected out-of-hand, and they will stand if supported by evidence." *United State v. El Paso Nat. Gas Co.*, 376 U.S. 651, 657 (1964). In any event, arguments that the state court served as a "rubber stamp" do not negate res judicata. *See Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 272 n.9 (2d Cir. 1977). And despite VDARE's assertions that federal-court actions are better-equipped to adjudicate constitutional arguments than "rushed" state-court proceedings (Br. at 14, 22-23, 27), "those seeking to challenge the constitution-

ality of state [acts] are not always able to pick and choose the timing and preferred forum for their arguments." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). In short, VDARE is not entitled to an equitable exception to res judicata. This Court should therefore affirm the district court's dismissal of the action.

## POINT II

### THE DISTRICT COURT CORRECTLY DENIED VDARE'S MOTION FOR A PRELIMINARY INJUNCTION

VDARE additionally challenges the district court's order denying its earlier motion for a preliminary injunction. As an initial matter, if this Court affirms the district court's judgment dismissing the action, it need not consider this challenge at all, because the dismissal rendered academic any issues relating to the motion for a preliminary injunction. *Broeker v. N.Y. City Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *3 (2d Cir. Dec. 26, 2023) (relying on *Ruby v. Pan Am. World Airways, Inc.*, 360 F.2d 691, 691-92 (2d Cir. 1966)).

Even if this Court were to vacate the dismissal, it should not pair the resulting remand with an order directing the district court to enter a preliminary injunction. When determining a movant's entitlement to a

preliminary injunction against a governmental actor, courts must consider whether (1) the movant is likely to succeed on the merits; (2) the movant will suffer irreparable harm absent an injunction; and (3) an injunction is in the public interest. *Kane v. DeBlasio*, 19 F.4th 152, 163 (2d Cir. 2021). Each of these factors weighs against a preliminary injunction here.

## A.   VDARE Has Failed to Demonstrate a Likelihood of Success on the Merits.

In its complaint, VDARE claimed that OAG's subpoena (1) violates the First Amendment right to free association; (2) retaliates against VDARE for engaging in First Amendment protected speech; and (3) violates the New York Constitution due to the same retaliation. (A21-23.) Even if res judicata did not bar VDARE from maintaining these claims, the claims would likely have failed on the merits.

### 1.   Free-association claim

The First Amendment's right to free association includes an implied right to anonymity that prevents the government from compelling individuals to disclose their associations. *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 802 (2d Cir. 2015). Claims of a violation of these anonymity

rights are reviewed under a standard of "exacting scrutiny." *Buckley v. Valeo*, 424 U.S. 1, 64 (1976). To survive exacting scrutiny, the disclosure requirement must be narrowly tailored to an important government interest, although not necessarily the least restrictive means. *Americans for Prosperity v. Bonta*, 141 S. Ct. 2373, 2383 (2021). This is a "heavy burden" that is borne by the party challenging the disclosure. *Smith v. Helzer*, 95 F.4th 1207, 1215 (9th Cir. 2024).

In *Americans for Prosperity*, the Supreme Court recognized that preventing the "misuse, misappropriation, and diversion of charitable assets" is an important government interest. 141 S. Ct. at 2385-86. On the facts of that case, however, the Court held that the challenged statute was not narrowly tailored to that interest. The Court observed that the statutory disclosure requirement—that charities disclose the names and addresses of all donors who contributed over $5,000 in a given year— carried a large risk of unnecessarily chilling donors' associations with these groups. *Id.* at 2387-88. Yet the state had not shown a strong countervailing interest that could justify this chilling effect, because it had never relied on the statutory disclosure in the investigatory and enforcement efforts it took to protect charitable assets. *Id.* at 2385-86.

Highlighting alternative means of obtaining information, "such as a subpoena or audit letter," that the state could employ if its goal were investigating fraud rather than administrative ease, the Court concluded that the state could not burden associational rights for the mere convenience of having charities' information "close at hand, just in case." *Id.* at 2386-87.

The governmental interest here, preventing the misuse of charitable assets, is identical to that in *Americans for Prosperity*, and thus identically important. VDARE's comparative fear of chilling association, by contrast, is minimal because its fear is based on the identities of its vendors and contractors becoming public, a fear that is unfounded as discussed *infra* at 45-46. *See Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) (rejecting the proposition that disclosure of donors to OAG was "tantamount to opening that list up to anybody interested in viewing it").

Whatever chilling effect the subpoena may carry, the disclosure it entails is more narrowly tailored than the indiscriminate disclosure regime the Supreme Court considered in *Americans for Prosperity*. OAG issued the subpoena to a single charity, VDARE, after launching an

35

investigation into its operations based on publicly available information that strongly suggested that VDARE had violated New York law governing the use of charitable assets. The potential wrongdoing included breaches of fiduciary duties and undisclosed related-party transactions arising from VDARE's use of $1.4 million in charitable assets to buy a medieval-style castle that the Brimelow family—VDARE's principal directors and officers—used as a private residence, VDARE's payment of "office" and "occupancy" expenses to the Brimelows for use of their home address, and the unexplained payment of tens of thousands of dollars to a Brimelow-owned company beyond what it documented as a "lease" of Peter Brimelow's services, effectively making VDARE's chairman a "contractor" as well. (*See* A697-699.)

The subpoenaed information was necessary to OAG's investigation into VDARE. Misappropriation of charitable assets is inextricably intertwined with the identity of the parties on both sides of a transaction, whose relationships are not always readily apparent. For example, in *People by Att'y Gen. of State v. Lutheran Care Network*, 167 A.D.3d 1281 (3d Dep't 2018), the court found that OAG made a prima facie case for breaches of fiduciary duty where its investigation revealed that a parent

charitable corporation used "management fees" to divert an independent affiliate's assets to other corporate affiliates and the parent corporation's own officers. *Id.* at 1283-84. Here, OAG had ample basis to question whether, for instance, VDARE had concealed business transactions with other Brimelow-connected vendors, paid disproportionately high amounts to Brimelow-related contractors, or paid the Brimelows themselves amounts beyond their disclosed salaries in their capacity as "contractors" operating under alternate identities. Thus, a logical starting point in OAG's investigation was to acquire information about all parties that receive money from VDARE. (A266-267.)

The subpoenaed information may well be the only way for OAG to meaningfully scrutinize VDARE's financial operations. Contrary to VDARE's allegation (A18), OAG cannot single out specific vendors or contractors with whom it is concerned because it does not know who they are. What is more, the Brimelows have proven adept at creating and conducting business through a web of non-for-profit and for-profit corporations. (*See* A218, 246-254.) Indeed, they have already rested on technicalities about corporate ownership to justify aspects of the castle transactions, claiming the Brimelows paid rent to live there even though, as a practical

matter, Lydia Brimelow signed the lease as both the "landlord" and the "tenant." (A260, 1956.) OAG therefore could not be confident that if it permitted VDARE to decide for itself which contractors and vendors were really of interest—as VDARE proposed (A422)—VDARE would not rely on such technicalities to evade its disclosure obligations. In short, OAG's subpoena to VDARE is exactly the type of compelled disclosure that the Supreme Court recognized would survive First Amendment scrutiny. *See Americans for Prosperity*, 141 S. Ct. at 2386.

On appeal, VDARE asserts that OAG's subpoena was not narrowly tailored because many of OAG's stated concerns about VDARE's operations "have nothing to do with the identity of contractors" (Br. at 42-43.) But this is an ongoing investigation, and some of OAG's concerns did relate to possible improper transactions with contractors. Given what OAG already knows about VDARE's apparent self-interested transactions, OAG has every reason to scrutinize other VDARE's transactions for self-interested characteristics.

VDARE's protests that it has done nothing wrong, rendering OAG's investigation a mere "fishing expedition" (Br. at 27, 38, 40-41), are irrelevant to the First Amendment analysis. Having reason to believe

that VDARE is violating New York's law governing charities, OAG is empowered to investigate VDARE and obtain information from it through subpoenas. NPCL § 112(b)(6). No aspect of the right to free association demands that OAG take VDARE at its word that its vendors and contractors are all "non-interested persons, outside the scope of potential conflicts of interest." (Br. at 44.) If VDARE is correct, then its disclosure should dispel OAG's suspicions of wrongdoing. But OAG cannot make this determination until it reviews that information. The First Amendment does not empower anyone, including organizations that engage in speech, to anonymously violate New York's laws. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010). For the same reason, the First Amendment does not permit VDARE to invoke the anonymity of its vendors and contractors to stifle a duly authorized investigation into whether VDARE broke any laws in the first place.

## 2. Retaliation claim

VDARE's additional First Amendment claim, for retaliation, fares no better. To prove retaliation, VDARE would need to demonstrate that (1) it engaged in constitutionally protected speech or conduct; (2) OAG took adverse action against it; and (3) there was a causal connection

between the protected speech and the adverse action. *Hayes v. Dahlke*, 976 F.2d 259, 272 (2d Cir. 2020).

Even if VDARE's postings on its website qualify as protected speech and even if the subpoena constitutes an adverse action, the retaliation claim fails because VDARE failed to demonstrate that its protected speech caused OAG's subpoena or the surrounding investigation. For purposes of causation, the protected activity must be a but-for cause of the adverse action, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). A plaintiff may establish this element with direct evidence or "sufficiently compelling" circumstantial evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003).

VDARE has not marshaled any direct evidence that OAG's investigation into its operations as a charitable corporation was a pretext for retaliation. And the circumstantial evidence invoked by VDARE was far from compelling. The Attorney General's creation of a "hate crime unit" to enforce a state law regulating online hate speech (A13-14) does not establish animus toward VDARE. Neither does any enforcement effort OAG took against unrelated people or entities. (A1872-1873.)

40

Further, no retaliatory motive is suggested by OAG's subpoena to Facebook seeking information concerning VDARE in connection with an investigation into online hate speech in violation of N.Y. General Business Law § 394-ccc (*see* A309-334).[4] In fact, the information sought in connection with the Facebook subpoena, though part of a different investigation into hate speech, was also relevant to the investigation of VDARE because of the $114,000 that VDARE spent toward its Facebook activity, suggesting a waste of charitable assets. (A669.) *See* NPCL § 720(a)(1)(B) (permitting actions against charities for waste of assets).

Ultimately, VDARE admits that OAG's subpoena was in furtherance of its efforts to uncover "potentially improper transactions." (A1933.) It also admits much of the conduct that gave rise to OAG's initial suspicions. (*See* A645-646, 651-653, 1870-1871.) VDARE does not—and could not— allege that OAG targets for investigation only those charities whose viewpoints it opposes. Indeed, the record shows that OAG has investigated charitable organizations without regard to any particular viewpoints

---

[4] A district court entered a preliminary injunction against enforcement of General Business Law § 394-ccc. *Volokh v. James*, 656 F. Supp. 3d 431, 447 (S.D.N.Y. 2023). OAG appealed and is awaiting decision from this Court. *See* 2d Cir. No. 23-356.

held by the organization. *See, e.g.*, *Matter of P & E.T. Found.*, 204 A.D.3d 1460, 1462 (4th Dep't 2022); *Matter of Pofit for the Dissolution of St. Clare's Corp.*, No. 2019-0653, 2020 WL 3728320 at *2-3 (N.Y. S. Ct., Schenectady Cnty. 2020); *see also People v. National Rifle Ass'n of America*, 223 A.D.3d 84, 90-91 (1st Dep't 2023) (rejecting nonprofit corporation's retaliation argument against OAG for failure to offer evidence of selective enforcement).

VDARE's argument that the Attorney General has a "tendency" to target speech with which she disagrees (Br. at 37) amounts to "a bare assertion that the Attorney General has a vendetta against [it]"—the exact type of argument this Court has rejected as insufficient to survive a motion to dismiss. *Citizens United*, 882 F.3d at 385. VDARE does not add substance to its conclusory assertion by claiming that OAG has never squarely denied retaliating against it (Br. at 23 n.5, 37), particularly because VDARE is wrong: OAG has overtly denied commencing the investigation to retaliate against VDARE (A755). And throughout the proceedings in federal court, OAG has explained that it is concerned with VDARE's potential violation of New York's laws governing charities. (*E.g.*, A684-685, 692-699). As the First Department held in rejecting the

same retaliation argument in VDARE's state-court appeal, VDARE simply has not offered adequate support for unconstitutional retaliation. *VDARE*, 224 A.D.3d at 518.

### 3. State constitutional claim

VDARE's argument that it will succeed on its final claim, for a violation of New York Constitution article I, § 8 (Br. at 35-36), can easily be set aside. VDARE proceeded against the Attorney General solely in her official capacity. (A10.) As VDARE agrees (Br. at 32 n.7), it could not seek damages against the Attorney General in her official capacity. While the doctrine announced in *Ex parte Young*, 209 U.S. 123 (1906), would nonetheless permit VDARE to ask a district court to enjoin ongoing violations of *federal* law, no such relief is available to enjoin violations of state law, including a state Constitution. *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020). VDARE thus cannot show a likelihood of success on this claim.

**B.    VDARE Has Failed to Demonstrate a Risk
of Irreparable Harm.**

VDARE has also failed to demonstrate a risk of irreparable harm, for three reasons.

First, VDARE's delay in seeking relief weighs against a preliminary injunction. *See, e.g.*, *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). Faced with the risk that a state court would order it to comply with OAG's subpoena, and the preclusive effect of such a judgment, VDARE had strong reasons to seek a preliminary injunction immediately upon learning that OAG had commenced the state-court proceeding. Yet VDARE inexplicably waited until two months after the state court issued its judgment, and two weeks after the First Department denied a stay. Nor did it seek an injunction pending appeal in this Court. On the contrary, VDARE obtained an extended deadline by consolidating the appeal from the denial of the preliminary injunction with the appeal from the final judgment, and waited until the last day of its deadline to perfect—six months after the district court had denied a preliminary injunction. VDARE's delay at every turn strongly "suggests that there is, in fact, no irreparable injury." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (quotation marks omitted).

44

Contrary to VDARE's justification (Br. at 45 n.13), its pre-litigation interactions with OAG—which included OAG's warning that it would seek judicial intervention if VDARE continued to stonewall (A382)—only amplified VDARE's need to proceed with haste. VDARE's other justification, its hope that "the state court would do its job" (Br. at 45 n.13), signals its acquiescence to the state-court proceeding, a strategic choice that is in tension with VDARE's newfound sense of urgency.

Second, and even if the delay were justified, VDARE's claim of irreparable harm is premised entirely on a nonexistent risk of publicity. (*See* A1103-1109, 1875-1878.) That concern is not implicated here because VDARE cannot demonstrate that disclosing the subpoenaed information to OAG will cause that information to enter the public domain. *See Citizens United*, 882 F.3d at 384-85. In fact, a now-ordered confidentiality protocol may be used to protect against the very publicity VDARE fears. *VDARE Found.*, 224 A.D.3d at 518. See *supra* at 11 n.1. VDARE's unsubstantiated concern that OAG will nonetheless "leak" its information (Br. at 8) is too speculative to demonstrate irreparable harm. *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 120 (2d Cir.

45

2009) (vacating preliminary injunction premised on the district court's speculation of harm to the movant).

Third, VDARE cannot square its assertions of a risk of irreparable harm with the fact that it already has disclosed the identities of many vendors and contributors in its partial subpoena disclosure. (A676.) Whether or not VDARE intended to disclose those identities, OAG has possessed those identities since 2022, without any harm resulting. As the Third Circuit explained when reversing a preliminary injunction based on the breach of an agreement not to disclose a trade secret, a "threat of disclosure may establish immediate irreparable harm but further disclosure of something already revealed cannot." *Campbell Soup Co. v. Conagra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992). So too here, affirming the denial of the preliminary injunction would result merely in the further disclosure to OAG of the same type of contractor and vendor information that VDARE has already disclosed. Its assertion that disclosure "cannot be undone" (Br. at 49), and that harm will inevitably result from disclosure, thus rings hollow.

46

**C.  VDARE Has Failed to Demonstrate That a Preliminary Injunction Would Serve the Public Interest.**

Finally, VDARE cannot demonstrate that the public interest favors a preliminary injunction. It is the moving party's burden to convince the court that the requested preliminary injunction would not harm the public interest. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012). VDARE bases its public-interest argument on the assumption that it will vindicate its First Amendment rights (Br. at 50.) For the reasons discussed at length above, VDARE's assumption is incorrect. Even if the equities might favor a party with meritorious First Amendment claims, "that is of no help to a plaintiff like [VDARE] that is not likely to succeed on its First Amendment claim." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021).

Weighing against an injunction, by contrast, is the strong public interest in ensuring that charities abide by the laws that govern the proper use of their assets, the fiduciary duties of their principals, and their disclosure of material information. The statutory framework that OAG is entrusted to enforce reflects New York's strong public policy of preventing the harm caused by the misuse of charitable assets, which affects not only the donors from whom charities solicit funds, but also the

47

beneficiaries to whom those assets are supposed to be devoted. *See* NPCL §§ 112, 706, 720; EPTL § 8-1.4. Not only would a preliminary injunction serve to indefinitely delay OAG's ability to vindicate these interests, it would also encourage federal litigation by others who oppose OAG investigation into charitable wrongdoing. *See Brody v. Village of Port Chester*, 261 F.3d 288, 290-91 (2d Cir. 2001) (vacating preliminary injunction where district court failed to consider the harm of further delay to the defendant). This case is a fitting occasion for the federal courts to exercise restraint when asked to use their equitable power to interfere with States' enforcement of their own laws. *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983). Accordingly, even if the Court were to reverse the dismissal of the case, the Court should not disturb the district court's denial of VDARE's motion for a preliminary injunction.

# CONCLUSION

This Court should affirm the district court's judgment.

Dated: April 25, 2024
        Albany, New York

Respectfully submitted,

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Defendants-
 Appellees

By: */s/ Jonathan D. Hitsous*

BARBARA D. UNDERWOOD      JONATHAN D. HITSOUS
 *Solicitor General*            Assistant Solicitor General
JEFFREY W. LANG
 *Deputy Solicitor General*     The Capitol
JONATHAN D. HITSOUS       Albany, New York 12224
 *Assistant Solicitor General*    (518) 776-2044
  *of Counsel*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Jonathan D. Hitsous, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 9,143 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

*/s/ Jonathan D. Hitsous*