# 23-1084(L),
## 23-7409(CON)

IN THE UNITED STATES COURT OF APPEALS FOR THE
SECOND CIRCUIT

VDARE FOUNDATION, INC.,

*Plaintiff-Appellant,*

- v. -

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern
District of New York, Case No. 1:22-cv-01337 (FJS/CHF)

**REPLY BRIEF OF APPELLANT
VDARE FOUNDATION, INC.**

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 888-887-1776
Email: jmw@randazza.com

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
Email: ecf@randazza.com

*Counsel for Appellant*
**Appellant Requests Oral Argument**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ II

INTRODUCTION ........................................................................ 1

ARGUMENT ........................................................................ 1

    1.0    The Dismissal Order Should be Reversed ................................. 2

    2.0    The Preliminary Injunction Should have been Allowed ........... 8

CONCLUSION ........................................................................ 14

CERTIFICATE OF SERVICE ................................................. 15

CERTIFICATE OF COMPLIANCE ....................................... 16

# TABLE OF AUTHORITIES

## CASES

*Amarant v D'Antonio*,
 197 A.D.2d 432, 602 N.Y.S.2d 837 (1st Dept. 1993) .............................. 6

*Bailey v. Alabama*,
 219 U.S. 219 (1911) ................................................................. 8

*Citizens United v. Schneiderman*,
 882 F.3d 374 (2d Cir. 2018)....................................................... 9

*Elrod v. Burns*,
 427 U.S. 347 (1976) ............................................................... 13

*Floyd v. Meachum*,
 907 F.2d 347 (2d Cir. 1990)...................................................... 11

*Matter of People v. VDARE Found., Inc.*,
 224 A.D.3d 516 (1st Dept. 2024).................................................. 4

*Minnesota v. Nat'l Tea Co.*,
 309 U.S. 551 (1940) ............................................................... 3

*N.Y. Times Co. v. Sullivan*,
 376 U.S. 254 (1964) ............................................................... 8

*Pennhurst State Sch. & Hosp. v. Halderman*,
 465 U.S. 89 (1984) ................................................................. 1

*People by James v. VDARE Found., Inc.*,
 No. 453196/2022 (N.Y. Sup. Ct., N.Y. Cnty. Mar. 27, 2024) ................ 5

*People v. VDare Found., Inc.*,
 2023 NY Slip Op 30217(U) (Sup. Ct.)....................................... 7

*Roman Catholic Diocese v. Cuomo*,
 141 S. Ct. 63 (2020) .............................................................. 13

*Sanders v. United States*,
 373 U.S. 1 (1963) .................................................................. 3

*Vega v. Semple,*
 963 F.3d 259 (2d Cir. 2020)..................................................... 11

**STATUTES**

New York Criminal Procedure Law § 245................................. 12

New York Public Officers Law § 87 ......................................... 12

**RULES**

CPLR 3211 .................................................................................. 6

CPLR 408 .................................................................................... 6

Fed. R. Civ. P. 26 ........................................................................ 5

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Amd. I.................................................. 8, 10, 13, 14

U.S. Const., Amd. IV ............................................................... 10

U.S. Const., Amd. V................................................................. 10

U.S. Const., Amd. VI ............................................................... 10

U.S. Const., Amd. XIV............................................................. 14

## INTRODUCTION

There is no rule, and this Court should not establish one, that a litigant can be deprived of their right to be heard in Federal court because a State Attorney General rushes into State court after the Federal action is filed. Reversal of the dismissal order and denial of the preliminary injunction, orders based on the inequitable ground of *res judicata*, is "necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (internal quotation marks omitted).

## ARGUMENT

Appellee Letitia James ("Appellee"), the Attorney General of the State of New York, issued a series of subpoenas in retaliation for the speech of Appellant VDARE Foundation ("Appellant" or "VDARE"). Despite VDARE seeking relief in the District Court, Appellee rushed through a limited proceeding in state court (initiated following an apparent misrepresentation as to ability to respond in the District Court), a proceeding that deprived VDARE the right to fully explore and vindicate its charge of First Amendment retaliation, and the District Court, thereupon, determined that *res judicata* mandated that VDARE

1

lose its first-filed case.  This is not how the system is supposed to work; there is no VDARE exception to the Constitution.

### 1.0   The Dismissal Order Should be Reversed

There is no dispute that VDARE, a non-profit corporation nominally organized under the laws of the State of New York, purchased the Berkeley Springs Castle in West Virginia in order to fulfill its charitable mission.  Similarly, it is undisputed that VDARE created two related entities to own and manage the facility and the grounds, a common practice upon the acquisition of real estate.  Nor is it disputed that Peter and Lydia Brimelow, upon relocating to West Virginia, briefly rented the facility at market rates to use as a temporary residence until more permanent accommodations were ready.  These were all above-board transactions, and there is no evidence or finding they were for the benefit of Brimelows, rather than for VDARE.  But, most importantly, neither is there any dispute that Letitia James is personally opposed to VDARE's mission, using her so-called "hate crimes" unit in her mission to "investigate" VDARE.  Political animus is the only rational explanation for a subpoena seeking dozens of categories of documents, far

beyond what a neutral investigator would require to satisfy itself of the legitimacy and propriety of the Brimelows' actions.

It is imperative that "state courts will not be the final arbiters of important issues under the federal constitution[.]" *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940). The Supreme Court has observed that "conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged[.]" *Sanders v. United States*, 373 U.S. 1, 8 (1963). While this observation on *res judicata* is customarily made in the context of a *habeas corpus* petition, there is no good reason why it should not hold when other liberties, including freedom of speech and freedom of association, are at stake.

This Court need look no further than the First Department's decision affirming the state trial court order compelling compliance with the subpoena to understand why *res judicata* should not apply here:

> Respondent is required to make some showing that producing the information would impermissibly infringe on its First Amendment rights such as by showing that the enforcement of the discovery requests will result in harassment, membership withdrawal, or discouragement of new members or other consequences that suggest an impact on, or chilling of, its members' associational rights.

Respondent has not made a *prima facie* showing that producing the information would have an impact on or chill its members' associational rights. Contrary to respondent's claim, anonymity of its vendors and contributors would not be sacrificed, as both the OAG and the court have agreed to a so-ordered confidentiality agreement. Moreover, while respondent has acknowledged having detractors which has resulted in certain adverse consequences, it does not follow that identifying names of vendors subject to a confidentiality agreement would result in harassment, membership withdrawal, or discouragement of new members, or other consequences that would impact its members' associational rights.

We find no support for respondent's contention that the OAG conceded any retaliatory animus or was targeting it for its protected speech.

*Matter of People v. VDARE Found., Inc.*, 224 A.D.3d 516, 517-18 (1st Dept. 2024) (internal citations and quotation marks omitted). The state court repeatedly stated that VDARE did not make a "showing" of an impact or chill on associational rights and that it did not make a "showing" that production would infringe its rights. Yet, there was no full or fair opportunity to make such a "showing." There was no evidentiary hearing. There was no pre-hearing discovery. There was no ability for VDARE to cross-examine Ms. James to elicit her motives and demonstrate that the proffered reasons for the subpoena were mere

pretext and that the purpose of her subpoenas was, in fact, retaliatory animus.

Nor was there an opportunity to make a record on the question of whether "anonymity of its vendors and contributors would not be sacrificed, as both the OAG and the court have agreed to a so-ordered confidentiality agreement." First and foremost, anonymity is sacrificed the moment Appellee acquires the identity of a pseudonymous vendor or contributor, whether or not there is a confidentiality agreement. Second, the Appellate Division lacked the confidentiality order entered a month later—it is one riddled with holes that offers no actual confidentiality.[1]

Appellee does not suggest VDARE had the right to take discovery in the state proceeding in order to make the showing it was denied the opportunity to make. Instead, Appellee says that discovery was not relief sought in the Federal complaint or in the opposition brief. (Appellee Br. at 26). This is a *non sequitur*. Parties do not typically invoke Fed. R. Civ. P. 26 in their prayer for relief—discovery is merely part of the process that leads to the ultimate relief sought. Nor should it have been

---

[1] *People by James v. VDARE Found., Inc.*, No. 453196/2022 (N.Y. Sup. Ct., N.Y. Cnty. Mar. 27, 2024), (NYSCEF Doc. No. 240).

incumbent upon VDARE to seek leave to take discovery (CPLR 408), which, unlike in a civil action, is not automatic, when it was, at that same time, seeking to dismiss or stay the proceeding in favor of the first-filed Federal case.[2]

Further, it is preposterous to suggest that VDARE should have filed, as a counterclaim, the very claims it had already first brought in the District Court. Such would have been directly subject to dismissal under CPLR 3211(a)(4) as a cause of action already pending between the parties. Moreover, such was not yet ripe under CPLR 3211(f), as VDARE had filed a motion to dismiss on the basis of the first-filed Federal action. Simply put, VDARE never had a chance to bring its claims.

While Appellee questions whether there are equitable exceptions to the doctrine of *res judicata*, she does not dispute that *res judicata* is an a doctrine in equity. It is well settled that "he who comes to equity must come with clean hands." *Amarant v D'Antonio*, 197 A.D.2d 432, 434, 602 N.Y.S.2d 837 (1st Dept. 1993). Appellee has pursued enforcement of the

---

[2] Nor should the Court accept Appellee's invitation to think there is anything untoward about VDARE having filed first in Federal court because Appellee had communicated an intent to enforce the subpoena. To the contrary, that was what made this action ripe.

subpoena in bad faith. This is not simply about Appellee "declining to accept at face-value" VDARE's representations (Appellee Br. at 30), but rather Appellee ignoring the evidence that had already been presented to her that undermined the pretext for the investigation. Had Appellee simply been looking to ascertain the absence of improper related-party transactions or charitable waste, she would not have needed to propound dozens of categories of discovery and require a costly document production (the cost of which would likely exceed even what Appellee claims to have been evidence of "waste" (*contrast* App. Br. at 41)). Nor would Appellee have resisted an iron-clad confidentiality order or the redaction of non-related-party vendors and contributors.[3]

In rubber-stamping Appellee's request, the state trial court pronounced: "In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith." *People v. VDare Found., Inc.*, 2023 NY Slip Op 30217(U), ¶ 5 (Sup. Ct.). The Appellate Division

---

[3] The Court should not credit any argument that VDARE somehow failed by not seeking a temporary restraining order or preliminary injunction in the District Court sooner. Such would not have been necessary had the motion to dismiss been allowed or the stay pending appeal been granted.

affirmed this decision and did not suggest the presumption did not apply. The First Amendment, however, and the rest of the Bill of Rights for that matter, exists because the government is not so presumed. It is utterly inequitable to apply *res judicata* to a proceeding where VDARE had no opportunity to prove the constitutional infirmities and where Appellee was given a thumb on the scale as an unconstitutional "presumption". *Contrast N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 284 (1964) quoting *Bailey v. Alabama*, 219 U.S. 219, 239 (1911)("The power to create presumptions is not a means of escape from constitutional restrictions[.]") Thus, the order of dismissal should be reversed.

**2.0   The Preliminary Injunction Should have been Allowed**

The only reason the preliminary injunction was denied was the application of *res judicata*. With that out of the way, there is no reason the preliminary injunction should not be granted.

VDARE is likely to succeed on the merits of its claims. As to the free association claim, Appellee argues that her subpoena is narrowly tailored to prevent the misuse of charitable assets. It is not. And the harm potentially suffered by VDARE is broad. For example, notwithstanding this Court's decision in *Citizens United v.*

8

*Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018), upon which Appellee relies (App. Br. at 35), the confidentiality order actually entered below contains a slew of exceptions that would permit Appellee to divulge confidential information to the public.

While Appellee argues the subpoena is narrowly tailored, she fails to identify a single request that is necessary and targeted to her perceived interest. She could have issued a single, narrow request: Produce all documents setting forth transactions with related parties (as that term is used under law). Instead, even now, she seeks to blame the Brimelows for creating and operating companies in a manner consistent with how entities and individuals commonly operate. And, while she purports to argue that she does not have to take VDARE at its word, that is how subpoenas typically operate—in fact, if VDARE had not dared to resist the subpoena and seek to protect anonymous vendors and contributors,[4] the response would have been entirely at VDARE's word (or, at least, counsel for VDARE, about whom there is no basis to assert they would

---

[4] Under a new order, a Special Referee will apply redactions to documents that would otherwise identify anonymous contributors, procured only because two contributors, represented by the Institute for Free Speech, intervened to protect their own interests, notwithstanding they made no arguments VDARE had not already made.

not provide thorough and accurate responses). Even now, despite having thousands of pages of documents and having had the ability to subpoena third-parties, Appellee can point to nothing that VDARE or its affiliated persons did wrong that warrants ongoing enforcement of the subpoena.

Special attention needs to be drawn to a particularly chilling argument—that VDARE should simply comply if it has done nothing wrong. (App. Br. at 39). If this is how Ms. James feels about exercising rights under the First Amendment, one can only imagine how she feels about the exercise of rights under the Fourth, Fifth, and Sixth Amendments. It is a grotesque perversion of American liberty to suggest that rights should be abandoned because they are inconvenient to the government; that is the point of having them. The subpoena unconstitutionally infringes upon the vendors' and contributors' freedom of association and it should be quashed.

As to the retaliation claim, VDARE is similarly likely to succeed on the merits. Appellee only challenges the causation prong—that VDARE's speech was the impetus for the subpoena. It is true that VDARE lacks direct evidence—it has not yet had the opportunity to depose Ms. James and her investigatory staff and seek production of a smoking gun, to the

extent they took notes on their conspiracy to deprive VDARE of its rights. But the circumstantial evidence is compelling. Appellee is specifically using her "hate crimes" staff, who were charged with retaliating against people on account of their constitutionally-protected speech, to propound and enforce the subpoenas issued to and on account of VDARE. Though Appellee asserts a pretext, such assertion does nothing to dispel the fact that her speech-penalizing staff are the ones behind the subpoenas. By acknowledging the pretexts, VDARE does not suggest they are apt. That Appellee may have investigated others legitimately does not alter the illegitimacy of this investigation. Appellee presents no record evidence against VDARE's Verified Complaint of retaliation—merely the argument (AA755) of Appellee's counsel that it was their "position" that it was not retaliation. *Floyd v. Meachum*, 907 F.2d 347, 355-56 (2d Cir. 1990) (observing ordinary admonition that "argument of counsel is not evidence.") In the absence of contradictory evidence, VDARE is likely to succeed on its claim of retaliation.[5]

---

[5] VDARE agrees, under current jurisprudence, that the state constitutional claim is barred. *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020). However, VDARE preserves the right to contest this jurisdictional issue.

The remaining factors otherwise warrant injunctive relief. VDARE is at risk of irreparable harm in the absence of an injunction. The harm is from being forced to comply. It was not unreasonable for VDARE to not seek an injunction while the state court proceeding was playing out because, at that time, there was no order mandating compliance. It was only once the order issued and the stay was denied that it became imperative to seek immediate injunctive relief in the Federal court.

As noted above, the purported confidentiality order provides no safe harbor. The order itself highlights that, notwithstanding their confidentiality, they may be produced per New York Public Officers Law § 87 (freedom of information law) and New York Criminal Procedure Law § 245, or per some other unspecified law, as such are "without limitation". VDARE need not show Appellee will "leak" the information—she explicitly represented that she can be compelled to produce it.

As for the fact that VDARE may have made some unintended disclosures, such does not mean it should be compelled to continue to make such. Moreover, none of Appellee's arguments against a finding of irreparable harm undermine binding Supreme Court precedent: "The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020) quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976). By demonstrating success on the merits in a First Amendment case, VDARE has also, necessarily, demonstrated irreparable harm.

Finally, the injunction is in the public interest. Appellee recognizes that demonstrating success on the merits in a First Amendment case, VDARE has also, necessarily, demonstrated public interest. Appellee argues that avoiding the waste of charitable assets and the duties of fiduciaries weigh against the injunction. But, if Appellee had any pretense to a claim against the fiduciaries, she has had years to bring it. Instead, she has been content to let the Brimelows continue to operate VDARE, demonstrating a lack of serious to her pretext arguments of waste and self-dealing. Appellee also fears that granting the injunction would "also encourage federal litigation by others who oppose" her. (App. Br. at 48). Good. Questioning authority is necessary for a free and democratic society. Appellee should not be allowed to get away with abusing her authority merely because it might encourage other people to exercise their rights. If she doesn't want people to challenge her

authority, she should exercise it in a constitutional manner. The whole point of the Fourteenth Amendment's incorporation of the First Amendment is to interfere with States' enforcement of their own laws. The Courts should stand up and tell those who abuse the rights of citizens "No". Thus, upon remand, the preliminary injunction should enter.

## CONCLUSION

In light of the foregoing, the order of dismissal should be vacated and the matter remanded for entry of the preliminary injunction and for further proceedings.

Dated: May 16, 2024.

/s/ Jay M. Wolman
Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
*Office Address:*
353 Ocean Avenue, Ste. 4E
Brooklyn, NY 11226
*Mailing Address:*
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 888-887-1776
jmw@randazza.com
Marc J. Randazza

RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
ecf@randazza.com

*Attorneys for Plaintiff-Appellant,*
*VDARE Foundation, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 16, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman
Jay M. Wolman

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Local Rule 32.1(a)(4)(A) because, excluding the portions exempted by Fed. R. App. R. 32(f), this brief contains 2,797 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Jay M. Wolman
Jay M. Wolman